Cory S. Fein
(California Bar No. 250758)
Cory Fein Law Firm
712 Main St., #800
Houston, TX 77002
Telephone: (281) 254-7717
Facsimile: (530) 748-0601
Email:cory@coryfeinlaw.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

JONATHAN
MAKCHAROENWOODHI,
COLTON WINFIELD and
EDWARD BEHELER,
individually and on behalf of all
others similarly situated,

Plaintiffs,

v.

HUAWEI DEVICE USA, INC.
and GOOGLE, INC.,

Defendants.

Case No. 5:17-cv-2185

**COMPLAINT**
**CLASS ACTION**

**DEMAND FOR JURY TRIAL**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs Jonathan Makcharoenwoodhi, Colton Winfield and Edward Beheler ("Plaintiffs"), individually and on behalf of all others similarly situated, bring this class action against Defendants Huawei Device USA, Inc. ("Huawei") and Google, Inc. ("Google") (collectively "Defendants"), and in support thereof aver the following based upon personal information and the investigation of their counsel, and upon information and belief as to all other allegations:

Complaint, Case No. 5:17-cv-2185

1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**INTRODUCTION**

1.      This is a class action lawsuit brought by Plaintiffs on behalf of themselves and a class of similarly situated consumers who purchased Google Nexus 6P smartphones (the "Phones" or "Class Phones").

2.      Defendants touted the Nexus 6P as a first-class smartphone with best-in-class battery capabilities, including battery charging and lifespan.

3.      Below is an advertisement in which Defendants prominently promoted and advertised these battery-related capabilities in Class Phones:[1]



---

[1] Image from https://www.google.com/nexus/6p/ (last visited April 19, 2017).

Complaint, Case No. 5:17-cv-2185

2

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

4.     Defendants also touted the Class Phones through other mediums as having superb battery life and performance:[2]



5.     As discussed below, Google executives also touted the Nexus 6P as superior to the iPhone 6 Plus in charging capabilities.

6.     Despite these large claims about battery capabilities and Class Phone performance, and as discussed in detail below, the Class Phones are defective because they are prone to (i) enter an endless bootloop cycle which renders them unresponsive and unusable (the "Bootloop Defect") and (ii) severe battery drainage which causes Class Phones to stop working prematurely (the "Battery Drain Defect") (collectively the "Defect"). As the numerous complaints posted on product reviews, blogs and other consumer resources reveal, countless consumers have experienced this Defect in their Class Phones. At all relevant times, Defendants knew of or should have known of these

---

[2] Image from http://www.androidauthority.com/leaked-presentation-reveals-the-nexus-6p-will-feature-a-big-3450mah-battery-644759/ (last visited April 19, 2017)

Complaint, Case No. 5:17-cv-2185

3

issues in the Class Phones, yet failed to disclose them in order to increase their sales of Class Phones.

7.     When the Bootloop Defect occurs, it will often manifest without warning, and puts the Phones into a death-spiral wherein they will suddenly switch off and then turn back on, and remain stuck on the Google boot-up screen. When this occurs, the Class Phones are completely unresponsive and non-functional, and they fail to proceed past the start-up screen and on to the home screen.

8.     When the Defect manifests as the Battery Drain Defect, it causes Class Phone batteries to die and Class Phones to turn off despite showing as high as 70-80% battery life in some cases. In the case of Plaintiff Makcharoenwoodhi, his phone began shutting down with 80-85% battery charge remaining. His Phone would only get about 10 minutes of use when he would remove the Phone from a charger, even though the Phone displays a full charge.

9.     This early shut off/battery drain problem is reportedly exacerbated by cold weather. When the battery issues manifest, the Phones will not turn back on until they are plugged into a charger.  When the Phones do eventually turn back on, the battery life remains right around the level they were at when the Phone turned off and the battery died.

10.     The Defect manifests both while Class Phones are inside and outside of the warranty period. It has left consumers across the country with Google Nexus 6P smartphones that do not work as intended and, in instances where the Defect manifests even slightly outside of the warranty period, with no recourse. For those Class Phones that manifest the Defect out of warranty, Defendants typically decline to provide any remedy whatsoever, leaving consumers with the option to accept a Phone that has reduced and operability or to procure a repair or replacement at their own expense. Several consumers, including Plaintiff Makcharoenwoodhi, experienced the Defect while still in warranty, yet still had their warranty claim or efforts rejected and denied.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Other consumers similarly report that during the warranty period, Defendants decline to provide warranty coverage for the Defect, or hide behind a cosmetic issue (such as a cracked bezel or scratched screen) in order to avoid providing a replacement under the warranty.

11.     Even in instances where Defendants have replaced or repaired Class Phones under warranty, consumers have had to wait several days or weeks to receive an accommodation, which often ends up being a refurbished Phone that suffers from the same Defect. Indeed, numerous consumers report that they have had to obtain multiple replacement Phones for the same problem.  As such, the repair/replacement warranties offered by Defendants fail in their essential purpose.

12.     Defendants knew or should have known about the Defect, and despite this knowledge, they fail to disclose the Defect to purchasers of Class Phones. They then cashed in on this omission by routinely refusing to provide repairs free of charge.

13.     As a result of the Defect, and the monetary costs associated with repairs and replacements, Plaintiffs and Class members have suffered injury in fact, incurred damages, and have otherwise been harmed by Defendants' conduct.

14.     Accordingly, Plaintiffs seek redress for Defendants' breach of express and implied warranties and violations of numerous federal and state consumer protection laws. Plaintiffs also seek recovery for monetary and equitable relief for Defendants' conduct described herein.

## JURISDICTION

15.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States and pursuant to 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members; (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs; and (iii) because at least one plaintiff and defendants are citizens of different

states.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

## INTRADISTRICT ASSIGNMENT

16.     Pursuant to Civil Local Rules 3-5(b) and 3-2(c) and (e), this action arose in Santa Clara County and should be assigned to the San Jose Division.

## VENUE

17.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants transact business in this district, are subject to personal jurisdiction in this district, and are therefore deemed to be citizens of this district. Additionally, Defendants have advertised in this district and have received substantial revenue and profits from their sales of Class Phones in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district. Specifically, Defendant Google principally operates and has corporate headquarters located within this district.

18.     This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district and intentionally and purposefully placed the Class Phones into the stream of commerce within this district and throughout the United States.

## PARTIES

**A.     California Plaintiff**

**Plaintiff Jonathan Makcharoenwoodhi**

19.     Plaintiff Jonathan Makcharoenwoodhi ("Plaintiff Makcharoenwoodhi") is an adult individual residing in Monterey Park, Los Angeles County, California.

20.     In or about April 2016, Plaintiff purchased his Class Phone from Best Buy. The Phone began experiencing problems in or around late February or early March 2017.

Complaint, Case No. 5:17-cv-2185

21.     At first his phone would start shutting off at 25%. The Phone would be at around 25% battery life, and it would go to 0% instantaneously and shut off. Over the coming months, this issue became worse.  Plaintiff would charge the Phone fully, but the Phone would begin turning off at 80-85%.  If he connected the Phone to a charger and fully charged the Phone, it would turn back on and the battery would operate for approximately 10 minutes or so off the charger before the battery would run out and the Phone would turn off again.

22.     Plaintiff Makcharoenwoodhi tried numerous troubleshooting methods, including a factory reset, but none of these methods worked to resolve the issue in his Phone.

23.     Plaintiff contacted Huawei and attempted to go through the warranty process, but Huawei informed Plaintiff that his warranty was voided due to a minor cosmetic issue, *i.e.* a small dent by the volume button. This small dent had no effect on the operability of the Phone whatsoever.

24.     Huawei instructed Plaintiff that he should seek a repair from a third party repair shop, but he ended up just buying a new phone.

25.     Plaintiff became stuck with a Phone that was unreliable and achieved only a portion of the battery life that he thought it would when he purchased the device, to the point that he had to simply go out and buy a brand new phone.

26.     Plaintiff has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Defect, including, but not limited to, loss of use, out-of-pocket losses, future repairs, and diminished value of his Class Phone.

27.     Plaintiff Makcharoenwoodhi would not have purchased his Class Phone had he known that it contained the Defect and the issues discussed herein.

Complaint, Case No. 5:17-cv-2185

7

**B.    Florida Plaintiff**

**Plaintiff Colton Winfield**

28.    Plaintiff Colton Winfield ("Plaintiff Winfield") is an adult individual residing in Tampa, Hillsborough County, Florida. On October 30, 2015, he purchased a Google Nexus 6P smartphone on from the online Google Store. Plaintiff Winfield paid $533.93 for his Phone (serial number 510KPNY0013975).

29.    Approximately 11 months later, near the end of the warranty on his Phone, Plaintiff's Phone battery started experiencing problems. Any processor-heavy task would shut down the Phone. Furthermore, any time the battery percentage fell below 20%, the Phone immediately dropped to 0% battery and would turn off. The only way to restore functionality in the Phone is to plug the Phone into A/C power. Once the Phone turns back on, the battery charge is right around the level where it was prior to shutting off, *i.e.* 20%.

30.    The below image of battery diagnostics on Plaintiff's Phone provides an example of sharp drop-offs in battery performance and battery failure:



Complaint, Case No. 5:17-cv-2185

8

31.    On occasion, Plaintiff will experience battery drain and early shut-off with battery levels as high as 25-28%.

32.    Plaintiff submitted a claim under the warranty as the end of his warranty period was nearing. Plaintiff was provided with a replacement device that had significant physical damage, namely screen defects.  The color gradient was off, and parts of the screen were green, bright yellow, and red. Plaintiff shipped this phone back and was sent a second replacement device.  This phone, too, had damage – the power button was bent and the bottom speaker did not work properly. Plaintiff again requested a (third) replacement device, and upon receipt, this phone had more physical damage than any of the prior replacement phones.

33.    Each time that Plaintiff sought a replacement phone, Google required a hold on his checking account of $533, essentially depriving Plaintiff of the use of those funds until the previous phone was returned to Google. Plaintiff ultimately returned his third replacement phone and is now using his original Phone, which remains plagued by the Defect.

34.    Because of the Defect, Plaintiff has – on multiple occasions – become lost while driving due to inability to access the Phone's navigation features, and has not been able to locate fueling stations for his car when his tank is nearing empty.

35.    Plaintiff's Phone is now out of warranty and he is stuck with a Phone that is unreliable and achieves only a portion of the battery life that he thought it would when he purchased the device.

36.    Plaintiff has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Defect, including, but not limited to, loss of use, loss of intellectual property, out-of-pocket losses, future repairs, and diminished value of his Class Phone.

37.    Plaintiff Winfield would not have purchased his Class Phone had he known that it contained the Defect.

Complaint, Case No. 5:17-cv-2185

9

**C.     Indiana Plaintiff**

**Plaintiff Edward Beheler**

38.     Plaintiff Edward Beheler is an adult individual residing in Lafayette, Tippecanoe County, Indiana. On July 12, 2016, he purchased a Google Nexus 6P smartphone from Amazon (IMEI number 867979022017799). Plaintiff Beheler paid $509.99 for his Phone. He also bought a Huawei smartwatch for $299.95 in the same transaction. As part of Amazon's "Prime Day" promotion, he received a $230.20 discount on the transaction total.

39.     One of the primary factors in Plaintiff Beheler's decision to purchase his Nexus 6P primarily was the long battery life it was advertised as having, as well as the large screen.  In the months immediately after his purchase, his Nexus 6P's battery operated satisfactorily and generally held a charge from morning until evening.

40.     In or around March 2017, Plaintiff Beheler began to experience sudden and severe drain of his Nexus 6P's battery. He began to notice that the battery life of his Nexus 6P was very short and that the Phone started running out of battery and powering off shortly after removing the Phone from a charger, often powering off when the battery had as much as 70% of its charge remaining and sometimes even as much as 90%. Plaintiff has observed his Phone go from a fully charged battery immediately after removing it from a charger to powering off due to battery drain in under an hour while the Phone is in safe mode and he was using only Google's Chrome browser.

41.     The following screenshot, taken on Plaintiff Beheler's Phone in or about March/April 2017, demonstrate the sudden shut off, even where the Phone retains much of its charge, and then the restoration of battery charge to where it was prior to the shut off once the battery is put on A/C power:



42.    On April 3, 2017, Plaintiff Beheler took a business trip to a factory in Kansas.  During that trip, Plaintiff Beheler was unable to charge his Nexus 6P frequently and experienced several battery drains and shut offs in a short period. On April 5, 2017, Plaintiff Beheler had dinner with colleagues and then a tour of an antique shop. Prior to dinner, Plaintiff Beheler's Phone was fully charged. However, midway through the tour of the antique shop, the battery suddenly drained and the Phone shut off. On April 7, 2017, the Phone again died several times in a few hour period while he waited to travel home at the Minneapolis airport. Plaintiff Beheler was only able to get the Phone charged and running again by plugging it into an external battery pack.

43.    Following Plaintiff's business trip, he contacted Google's customer support using their callback feature.  The Google representative walked him through some troubleshooting steps, and determined that the Phone was defective and needed replaced due to a hardware defect.  However, because he purchased the Phone from Amazon rather than from Google, Google would not provide any assistance and

declined to provide Plaintiff Beheler any relief.  The Google representative direct him to contact Huawei's customer support.

44.    Thereafter, on or around April 11, 2017, Plaintiff Beheler called Huawei's customer support. The Huawei representative Plaintiff spoke to agreed that the Phone was defective, and told him that he could send the Phone in to be repaired or replaced, leaving Plaintiff Beheler without his Nexus 6P for seven to ten days at minimum.  The representative informed Plaintiff Beheler Huawei does not perform advance replacements. Huawei requested Plaintiff Beheler send Huawei photos of his Phone, which he did. The Huawei representative initiated a ticket number but did not create a mailing label or issue a Return Merchandise Authorization.

45.    Through online research, Plaintiff Beheler found that consumers were reporting that Huawei's repair department was completely overwhelmed by warranty claims and other repairs related to the Defect, with some consumers reporting that they had been without a phone for up to four weeks, with no return date in sight. Due to personal circumstances, such as work and family obligations, Plaintiff Beheler is unable to be without a cell phone or other means of contact for such an extended period of time.

46.    Plaintiff contacted Huawei support by phone again, and the representative he spoke to confirmed that Huawei was then unable to estimate repair times.  Plaintiff requested that his call be escalated. The representative told Plaintiff he would escalate the call and that Plaintiff would be called back shortly.  Huawei did not call Plaintiff back following that conversation.

47.    Plaintiff Beheler also contacted Amazon to see if it would accept a return, but it would not, as nine months has passed since the date of purchase.

48.    Plaintiff contacted Google customer support several more times regarding his Phone's severe battery drain.  He was repeatedly told that Google would not provide any form of service or support for a Nexus 6P that was not purchased directly

Complaint, Case No. 5:17-cv-2185

12

through the Google Play store and that Plaintiff's concerns should be directed to Huawei.

49.     Plaintiff Beheler has suffered an ascertainable loss as a result of Defendants' omissions and/or misrepresentations associated with the Defect, including, but not limited to, loss of use, out-of-pocket losses, future repairs, and diminished value of his Class Phone.

50.     Plaintiff Beheler would not have purchased his Class Phone had he known that it contained the Defect.

**D.   Defendants**

51.     Defendant Huawei Device USA, Inc. is, upon information and belief, a corporation organized and existing under the laws of the state of Texas, with its principal place of business located at 5700 Tennyson Parkway, Suite 500 Plano, Collin County, Texas 75024.

52.     Defendant Google, Inc. is, upon information and belief, a corporation organized and existing under the laws of the state of Delaware, with its principal place of business located at 1600 Ampitheatre Parkway, Mountain View, Santa Clara County, California 94043.

53.     Defendants, and each of them, are now, and/or at all times mentioned in this complaint were in some manner legally responsible for the events, happenings and circumstances alleged in this complaint. Defendants proximately caused Plaintiffs, all others similarly situated to be subjected to the unlawful practices, wrongs, complaints, injuries, and/or damages alleged in this complaint. Defendants, and each of them, are now, and/or at all times mentioned in this complaint were the agents, servants, and/or employees of some or all other Defendants, and vice-versa, and in doing the things alleged in this complaint, Defendants are now and/or at all times mentioned in this complaint were acting within the course and scope of that agency, servitude, and/or employment.

Complaint, Case No. 5:17-cv-2185

54.     Defendants, and each of them, at all times mentioned in this complaint concurred and contributed to the various acts and omissions of each and every one of the other Defendants in proximately causing the complaints, injuries, and/or damages alleged in this complaint. Defendants, and each of them, at all times mentioned in this complaint approved of, condoned and/or otherwise ratified each and every one of the acts and/or omissions alleged in this complaint.

55.     Defendants, and each of them, at all times mentioned in this complaint aided and abetted the acts and omissions of each and every one of the other Defendants thereby proximately causing the damages alleged in this complaint.

## FACTUAL ALLEGATIONS

**A.     The Google Nexus 6P**

56.     On a stage in San Francisco on the morning of September 29, 2015, Google unveiled the newest version of its Nexus 6 smartphone, called the Nexus 6P. In conjunction with its release, Google touted the Nexus 6P as its "most premium phone yet."[3]

57.     The Nexus 6P was released for pre-order on September 29, 2015 through the Google Store in the United States, United Kingdom, Ireland, and Japan, with release in additional countries in the weeks that followed.[4] Images of the Nexus 6P are below:

---

[3] http://www.theverge.com/2015/9/29/9410551/google-nexus-6p-announced-size-price-release-date (last visited April 14, 2017).

[4] http://www.androidpolice.com/2015/09/28/exclusive-nexus-6p-will-be-available-for-pre-order-on-september-29th-starting-499-99-in-the-u-s-uk-ireland-canada-and-japan/ (last visited April 14, 2017).

Complaint, Case No. 5:17-cv-2185





58.    The Nexus 6P is equipped with a 5.7-inch WQHD display and a completely new design, at 7.3mm thick.[5] The Nexus 6P is also equipped with a 3450mAh battery, dual front-facing speakers, and the Snapdragon 810 v2.1 processor.[6] An 8-megapixel camera is on the front of the Nexus 6P. The camera is supposed to be

---

[5] http://www.theverge.com/2015/9/29/9410551/google-nexus-6p-announced-size-price-release-date (last visited April 14, 2017).

[6] http://www.androidpolice.com/2015/09/28/exclusive-nexus-6p-will-be-available-for-pre-order-on-september-29th-starting-499-99-in-the-u-s-uk-ireland-canada-and-japan/ (last visited April 14, 2017).

Complaint, Case No. 5:17-cv-2185

optimized for indoor photography and features slow-motion video, 4K video, and burst mode for photos.[7]

59.     The Phones were offered for \$499 (32 GB), \$549 (64 GB), and \$649 (128 GB).[8] Furthermore, the Nexus 6P was marketed as "unlocked" such that consumers are not tied to a contract and can use the Phones with many different carriers.[9]

60.     At the launch event, Google claimed that the Nexus 6P would possess best in class features, including support for ultra-fast charging allowing it to charge twice as fast as the iPhone 6 Plus.[10]

61.     At the launch event, Google's Vice President of Engineering Dave Burke touted the Nexus 6P as:

- "the most advanced Android software built into innovative hardware";
- "the very latest and best in material design"; and
- capable of "charg[ing] fully in about half the time of an iPhone 6 Plus".[11]

62.     At the launch event, Google's Product Management Director Sabrina Ellis also described the Nexus Protect package, which she characterized as providing coverage for those "drops, spills, and cracks we all worry about."  She also stated that because Nexus Protect support would be offered 24/7, when consumers need to file a claim, they can "get a new device as early as the next business day."[12]

---

[7] http://www.theverge.com/2015/9/29/9410551/google-nexus-6p-announced-size-price-release-date (last visited April 14, 2017).

[8] *Id.*, at embedded videos.

[9] *Id.*

[10] *Id.*

[11] https://www.youtube.com/watch?v=-THMyqbmiYk (last visited April 14, 2017).

[12] http://www.theverge.com/2015/9/29/9410551/google-nexus-6p-announced-size-price-release-date (last visited April 14, 2017), at embedded video.

63.    As recently as April 2017, Google's website advertises the Nexus 6P as containing a battery that "keeps you talking, texting, and apping into the night."[13] Neither Google's nor Huawei's websites mention the Defect.

64.    Despite Google's high remarks about the Nexus 6P Phones and their performance, countless consumers report having quite a different experience in terms of quality, operability, and battery performance.

## B.    The Widespread Defect Becomes Apparent in All of the Class Phones

65.    Unbeknownst to consumers, Nexus 6P Phones suffer from the Defect that inevitably causes the Phones to experience severe battery drainage or get stuck on the home screen and in the bootup process. When the Defect manifests as the Bootloop Defect, the Phone will unexpectedly turn off, then upon turning back on, get stuck in the bootup process, and fail to proceed beyond the start-up screen. When this Defect manifests as the Battery Drain Defect, the Phone will experience severely diminished battery life and premature shut-off.

66.    When bootlooping occurs, the phone is essentially a very expensive paperweight. After the Defect occurs, the Phone no longer operates whatsoever. It cannot be used to make calls, send text messages, access the internet, or use any other function available on the Phone. Consumers lose all access to any data or information stored on the Phone, including any photographs or other intellectual property.

67.    Consumer complaints regarding bootlooping in the Nexus 6P began appearing online at least as early as September 2016.

68.    Manifestation of the Defect as the Battery Drain Defect is also a widespread issue in Class Phones.  When this issue manifests, consumers experience a complete loss of operability in their Class Phones despite that the battery on their Phones show a partial charge.  Consumers report the same common experience: the

---

[13] https://www.google.com/nexus/6p/ (last visited April 14, 2017).

Complaint, Case No. 5:17-cv-2185

Phone will be working fine, and the battery will have a partial charge (e.g. between 15-45%) when suddenly, their Phone will just turn off and will not turn back on. Some consumers report that this occurs with as high as 80% battery life remaining.

69.     When this happens, consumers are only able to get the Phone to start operating again by plugging the Phone into a charger.  Eventually, the Phone turns back on and the battery life shows that the Phone has been charged slightly above the point or percentage where it was before the Phone failed and died due to the Defect.

70.     Despite Defendants' awareness of the Defect and countless reports of these issues from consumers – including directly to Huawei and Google, on Defendants' message boards, and on consumer websites – Defendants continue to sell Class Phones without informing consumers of the Defect.

71.     Defendants have refused to confirm the presence of these issues in Class Phones and provide relief to consumers whose Nexus 6P Phones bootloop or suffer from battery drain or early shut-off.

## C.     The Impact of the Battery Drain and Bootloop on Consumers

72.     As discussed above, Plaintiffs have experienced the Defect in his Class Phone.  His experience is by no means an isolated occurrence.

73.     The internet is replete with complaints by consumers who purchased a Nexus 6P phone, only to experience the same bootloop and battery drain problems.  Examples of some of these complaints are below:

[–] AlphaM93  2 points 10 days ago
I am extremely disappointed that a big company like Google does not know how to fix this problem.
I bought a Google Nexus 6P in February 2016. The phone came with a 1 year warranty. One week after the warranty expired, the Nexus 6P decided to freeze after taking a photo and thereafter rebooted. (17/02.2017) Since then, my Nexus 6P has been in a never-ending boot loop. The 6P was running Android Nougat 7.1.1 (N4F26O) at the time it froze. To think that Google has flagged this as a minor bug/defect is absurd and not acceptable. If this is not fixed, I am not buying another Google phone and I will make sure that others in my region do not fall into the same rip off!
Kind regards,
Huawei Nexus 6P (H1512) 64GB - Aluminium Owner.

https://www.reddit.com/r/Nexus/comments/4zhx53/never_ending_boot_loop_with_android_7_nougat/de0d4k3/ (last visited March 3, 2017)

[–] JRTStudio 1 point 28 days ago

FYI for others finding this issue. If it happens 11 days after your warranty expires, don't expect a replacement from Google if you purchased from them. Here is the experience my wife had with her Nexus 6P I bought her to encourage testing of my Android apps. Spoiler alert, it's going to be tuff to keep her using an Android phone.

Over the last couple days, I would look over and see my phone was trying to reboot. It would get stuck at the very beginning with the Google logo flashing (long before you even get to sign in to start Android). I couldn't even get the phone to turn off.

So I called Google for help and they alerted me there was nothing they could do since my warranty expired just 6 days ago. I told them my phone was bricked at 53 weeks and they said it was "expected wear and tear." So I said, "to confirm, you are telling me that this is expected behavior after only a year and you won't do anything to help" and they said "yes". When I tried getting their full name or ID numbers, they would tell me they can't give those. It took a while of prodding before they would even give me a case number. I talked to 3 managers there who all said I was out of luck by 11 days with my now bricked phone.

permalink  embed  save  parent  give gold

https://www.reddit.com/r/Nexus/comments/4zhx53/never_ending_boot_loop_with_android_7_nougat/dd9lj2q/ (last visited March 3, 2017)

Nexus 6P bootloop - stuck on Google logo

Don Lew

▶ Subscribe  25

14,309 views

+ Add to   ↱ Share   ••• More

👍 57   👎 16

Share   Embed   Email                                                    ×

f  t  G+  b  reddit  t  P  VK  in  SU  OK  🔗  digg

https://youtu.be/9iqpfUqb8gU

☐ Start at:  5:45

Published on Oct 1, 2016

Very sad-- my Nexus 6P froze and restarted, getting stuck at the Google logo. Bootloop happened about a week after OTA update to Android 7.0 Nougat. ::cries::

Video recorded on my Nexus 5X, apparently now my daily driver. ::cries some more::

https://www.youtube.com/watch?v=9iqpfUqb8gU (last visited March 3, 2017)

fl0wmastr 1 month ago

most users have tried re-flashing factory images or wiping their data to no avail. Once you contact Google, the company will send you a refurbished unit. Though Google says the bootloop is strictly a hardware issue, it is curious that both Nexus 6P and Nexus 5X devices are suddenly affected by it after the most recent Nougat update.

Reply • 1  👍  👎

*Id.* (last visited March 3, 2017)

David Schwab 2 months ago (edited)

Happened to mine too! Google sabotage? Super pissed off. Weirdly right after 12 month warranty and right after 7.1.1 update. Coincidence? Super expensive phone that was still WAY in it's prime. I was looking forward to at least another year. Thinking about never buying a Google phone again.

Reply •  👍  👎

View all 3 replies ⌄

*Id.* (last visited March 3, 2017)

Complaint, Case No. 5:17-cv-2185

19

1

2  **Ramtin Irandost** · 2 months ago

3 This article is really late. My 6p was effected by the bootloop before 7.1 update.
Google was making it really difficult for me to get a replacement so I had to just deal

4 with it. I wiped catch reset my phone couple of times but didn't seem to help and then
the problem just went away by itself. I was beta tester for couple of Google's apps

5 and I opted out of those I feel like thats what helped but I'm not quite sure. It's also
noteworthy to mention that my phone only restarted when I wasn't using it.

6 1 ∧ | ∨ · Reply · Share ›

7 http://www.androidauthority.com/nexus-6p-bootloop-issues-738275/ (last visited
March 3, 2017)

8

9  **Os Portillo** · 2 months ago

10 My 6P just "died" on me back on the 25th. Was working normal, then went dead with
65%+ charge. Won't turn on while charging, it's actually not even holding any

11 charge.

12 I'm sending it today to Huawei to work it out with the warranty. Such a great phone,
affected so we are tempted to buy the new Pixels. Shame on you Google, never

13 been so disappointed with them.

14 ∧ | ∨ · Reply · Share ›

15 *Id.* (last visited March 3, 2017)

16  **Thomas Cole** · 2 months ago

This issue is older than this. I had one of my 6P's (my wifes) get stuck in a bootloop

17 months ago. We had to argue with Huawei and get Google involved just to get them
to take the phone on the warranty that was almost up. Google offered to charge me

18 full price for the phone and then release the money back on return of the old phone. I
can't afford to do that and would not even if I could afford it. The 6P was the last

19 purchase I will ever make from Google because of their customer service issues, I
don't even use their software anymore.

20 ∧ | ∨ · Reply · Share ›

21 *Id.* (last visited March 3, 2017)

22 **thejaycan** · 2 months ago
My 6P bit the dust in this manner. I'm glad to see it getting more attention, because I thought it was just my phone. I

23 only had flashed up to 7.0 (pure nexus ROM) when it died. The flash went fine as did all the app reinstalls (did a
clean flash) and it was working for half the day and then I launched Google Maps and it did a hard crash, all the way

24 back to the Google screen and then proceeded to do its bootloop thing (no boot animation). I tried reflashing the
ROM, the boot IMG, thebstox recovery, cleared data, cache, system, and even internal storage, no dice. Then I

25 tried flashing back to Google stock from the official sources, nothing. Relocked the bootloader and reflashed stock
source, still nothing. At that point, RMA'd it. Got new one and no problems on 7.1.1 on the pure nexus ROM. Just a

26 bummer as I've had good luck recovering "bricked" devices until this one.

3 ∧ | ∨ · Reply · Share ›

27 https://www.xda-developers.com/nexus-6p-users-experiencing-random-bootloops/ (last
visited March 3, 2017)

28

Complaint, Case No. 5:17-cv-2185



**thejaycan** · 2 months ago

My 6P bit the dust in this manner. I'm glad to see it getting more attention, because I thought it was just my phone. I only had flashed up to 7.0 (pure nexus ROM) when it died. The flash went fine as did all the app reinstalls (did a clean flash) and it was working for half the day and then I launched Google Maps and it did a hard crash, all the way back to the Google screen and then proceeded to do its bootloop thing (no boot animation). I tried reflashing the ROM, the boot IMG, thebstock recovery, cleared data, cache, system, and even internal storage, no dice. Then I tried flashing back to Google stock from the official sources, nothing. Relocked the bootloader and reflashed stock source, still nothing. At that point, RMA'd it. Got new one and no problems on 7.1.1 on the pure nexus ROM. Just a bummer as I've had good luck recovering "bricked" devices until this one.

3 ∧ ∨ · Reply · Share ›

http://www.androidauthority.com/amazon-alexa-based-voice-call-754631/#comment-2910821891 (last visited March 3, 2017)

**AlexFarr** ➤ freddie andersson · 5 months ago                                    – │

I've had the same issue, phone draining quickly and shutting down normally at 15% but I've had it happen at 25%. RMA'd my 6P and I have a fresh one sitting at home now, updated it to last Marshmallow update and think I'll leave it there until Google address the problem... I shouldn't have to do that though and it seems like more than just a knackered battery with people reporting the exact same thing.

∧ ∨ Reply · Share ›

http://www.androidauthority.com/samsung-lg-lcd-delay-764136/#comment-2994769785 (last visited April 14,2017)



**DevD** · 4 months ago

Mine started the 2nd day after i installed the 7.1.1 which was last Monday. My phone randomly shuts down when i receive a call. The phone battery would be anywhere between 20%-65%. When it reboots the phone shows switched on the battery saver mode and charge would be 10%-15%. I can;t see the last caller id when shutdown happened. This is crazy. I am missing calls with no idea who called. This is critical. Hope Google and Huawei is working on this. Else the best phone of 2015-2016 is going to be the worst phone ever.

∧ ∨ · Reply · Share ›

http://www.androidauthority.com/samsung-lg-lcd-delay-764136/#comment-3065853865 ( last visited April 14, 2017)



**Pavan** · 5 months ago                                                          – │

+1. Battery is draining at a jet speed. I thought my 6P battery is getting old

∧ ∨ · Reply · Share ›

http://www.androidauthority.com/samsung-lg-lcd-delay-764136/#comment-2978851185 (last visited April 14,2017)

**Yash Mehta** · 5 months ago

Battery is draining so fast and takes hell lot of time to charge back. First it used to tak 1 hr or 1 and half hr max. And now it takes almost 3 hrs to charge and sometimes it shows '5 hrs for full'. This is really frustrating and not what I expected from 7.0 update. I have also tweeted about this to nexus but no replies. Please fix Google.

∧ ∨ · Reply · Share ›

http://www.androidauthority.com/samsung-lg-lcd-delay-764136/#comment-2978082660 (last visited April 14, 2017)

Complaint, Case No. 5:17-cv-2185

1

2

3

**Cara Leigh**
@psychicstorm

**Follow** ⌄

4

5

6

7

@GoogleStore why does my nexus 6p shut down when it claims to have 90% battery? won't turn on until plug it in and sure enough 90% battery 😭

8

9

RETWEET  LIKE
1       1

10

11

https://twitter.com/psychicstorm/status/852146771354628096 (last visited April a14, 2017)

12

13

**Chris Holley**
@sdfitnoexcuses

**Follow** ⌄

14

15

16

@Google Please fix your battery issues with your Nexus 6P.  Your service with this has been horrible.  #googlefails

17

LIKE
1

18

19

https://twitter.com/sdfitnoexcuses/status/851661079914532864 (last visited April 14, 2017)

20

21

**Ckmk**
@chukumukoo

**Follow** ⌄

22

23

24

Google still ignores Nexus 6p users. For months customers suffer from battery shutdowns. And nothing. Silence @GoogleNexus

25

LIKE
1

26

27

11:16 AM - 8 Apr 2017

↩    ⟲    ♥ 1

28

Complaint, Case No. 5:17-cv-2185

22

https://twitter.com/chukumukoo/status/850744112190038017 (last visited April 14, 2017)



Kevin Annand @AnnandKevin · Mar 29
@googlenexus tried all the troubleshooting for **battery** issues with my **Nexus 6P**, is there a fix coming? Drains faster, dies randomly at 15%

https://twitter.com/AnnandKevin/status/847110772941606912 (last visited April 14,2017)



Jaden Ng Donq Sheng Yes yess yesss!!!! Android Authority i love you for bringing this issue in social media.. I used this phone for less than a year.. i think Google is not working on it... My nexus 6p having a huge battery draining for the past few months and it's really ridiculous..
Google just want us to change to PIXEL maybe??
Like · Reply · 🔘 79 · October 31, 2016 at 9:06am

https://www.facebook.com/androidauthority/posts/1137761776273542?comment_id=1137787889604264&comment_tracking=%7B%22tn%22%3A%22R0%22%7D (last visited April 14, 2017)



⭐☆☆☆☆ **Died after 11 months.**
By Tommy on January 31, 2017
Offer Type: Phone | Color: Graphite | Size: 64 GB | Verified Purchase

purchased in 2/2016, phone just died 1/31/2017. Warranty only good for 1 year.

Phone has been doing great up until last month or so. Battery will suddenly say low and shut down. Even if I have 20%+. The highest it shut down was at 49%. It will reboot but will shut down right after it loads.

Now, the phone is bricked. It restarted on me in the middle of a text message, and started to boot but the phone never loaded comepletely and now won't turn on and won't charge. Tried everything in google support with no success.

I guess I'll go back to apple. Never had any issue this early in the phones life.

▸ 1 comment | 2 people found this helpful. Was this review helpful to you? [Yes] [No]  Report abuse

https://www.amazon.com/gp/customer-reviews/R15DQL12OO5EVM/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B015YCRYZM (last visited April 14,2017)

★☆☆☆☆ Great software at the price of unreliable hardware!
By Gsdotwq on June 22, 2016
Offer Type: Phone | Color: Graphite | Size: 64 GB | Verified Purchase

Specs for this phone are great on paper. So is the user experience with google's vanilla android. But beware of hardware durability. After about 4 months of use, one day the battery died and it refused to recharge. Huawei's disappointing customer service wants me to send it in for 2 weeks. I don't blame them, they are after all playing by the book. So read the warranty before you buy this phone.

Reliability of our smartphones is so important in today's world that maybe, just maybe it doesn't matter how good the software ecosystem is, if the hardware is not durable for you to enjoy it.

▸ 5 comments | 18 people found this helpful. Was this review helpful to you? [Yes] [No] Report abuse

https://www.amazon.com/gp/customer-reviews/R121YD5FSNCG3Z/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B015YCRYZM (last visited April 14,2017)

74.    Consumers have even initiated a petition on change.org to get Defendants to address the Defect in the 6P.[14] As of April 14, 2017, the petition had garnered signatures from 125 supporters.

**D.    Defendants' Continued Failure to Remedy the Defect**

75.    Despite the fact that Defendants know of or are on notice of the issues in Class Phones described herein, Defendants have failed to disclose these issues to consumers prior to purchase, and once the issues manifest in the Class Phones, Defendants fail to provide an adequate remedy.

76.    Defendants often fail to provide a remedy or relief for consumers even in warranty, often pointing to a cosmetic issue (such as a cracked screen) as an excuse not to provide a repair or replacement. Often times the problems in Nexus 6P Phones occur just outside of the warranty.

77.    Consumers report that they have been required to obtain a repair or replacement at their own expense and that Defendants are not standing behind their product or their promises to repair Class Phones. Many consumers have already paid

---

[14] *See* https://www.change.org/p/google-inc-get-repair-replacement-support-from-google-and-huawei-for-the-nexus-6p?source_location=topic_page (last visited April 14, 2017).

Complaint, Case No. 5:17-cv-2185

out of pocket for the costly repairs associated with fixing the battery drain and bootloop problems in Class Phones.

78.    Although Google and Huawei appear to offer some consumers repairs or refurbished devices at no cost, this is not the norm, and Defendants have refused to acknowledge these issues and provide the same relief, or any relief at all, for other consumers.

79.    On calls to customer support, consumers typically experience Google and Huawei representatives pointing fingers at one another and bouncing consumers back and forth to each other on series of calls.  These calls often end in no recourse.

80.    Other consumers are forced to either pay a repair price or submit a damage claim through Assurant, which requires payment of a costly deductible.

81.    Consumers who are able to obtain a replacement device – whether free of charge or (more likely) after paying out of pocket – are routinely provided with refurbished, used phones. This leaves consumers in a situation where they have paid full-freight for a brand new phone, but are left with a refurbished phone that will likely (and often does) experience the same issues again, and in some cases multiple additional times. Many consumers, like Plaintiff Poore, report receiving refurbished devices containing cosmetic or other physical damage, and have had to seek multiple refurbished devices.

82.    Defendants should not be permitted to continue concealing the Defect while fleecing consumers with the costs of repairing Class Phones and making consumers overpay for defective Class Phones when Defendants are well aware of these issues.

83.    It is apparent that Defendants know of these issues but have no intention of universally remedying these problems, as Defendants routinely decline to repair defective Phones that are clearly affected by the issues described herein under the guise of cosmetic or other reasons.

Complaint, Case No. 5:17-cv-2185

84.     To date, Defendants have failed to acknowledge that Nexus 6P Phones are plagued by defects resulting in battery drainage/early shut-off and bootlooping, and Defendants continue to fail to repair the defective Phones free of charge to consumers. Even as consumer reports begin to rapidly emerge online about these problems, Defendants have not acknowledged these widespread problems.

85.     Had these issues been known and disclosed to Plaintiffs and consumers, they would not have purchased their Class Phones (or at a minimum would have paid significantly less for them). At the time of purchase, Plaintiffs were not aware of the issues in the Class Phones.

86.     Defendants have made affirmative representations about the quality of the Class Phones and failed to disclose, or suppressed, a material fact about the Class Phones, namely that they are plagued by a defect that results in battery drain or bootlooping that inevitably renders Class Phones completely useless.

87.     Defendants had a duty to disclose these issues based upon its exclusive knowledge thereof – a material fact that, had it been disclosed to consumers (including Plaintiffs), would have resulted in consumers not purchasing their Class Phones.

88.     Defendants have and had exclusive knowledge of the defect in the Class Phones.

89.     As a result of the Defect and Defendants' refusal to adequately address and remedy these issues, consumers across the United States have paid and continue to pay large sums of money out of pocket to repair the Defect in Class Phones or to obtain a replacement, including money paid for repairs, insurance deductibles paid in conjunction with insurance claims, and other out of pocket costs.

90.     In addition, the Defect has caused countless consumers to experience loss of use of their Class Phones, loss in value of their Class Phones, and loss of access to photos and other valuable intellectual property accessible only through their Class Phones, which can no longer be accessed due to Class Phones being bricked.

Complaint, Case No. 5:17-cv-2185

91.     Under these circumstances – Defendants' superior bargaining power, exclusive knowledge of the Defect, and failure to disclose the same – any attempt to limit the warranty period to a period of one year or other limitations on the rights of consumers to vindicate these claims are unenforceable as procedurally and substantively unconscionable.

## CLASS ACTION ALLEGATIONS

92.      Plaintiffs bring this lawsuit on behalf of themselves and all similarly situated individuals and entities, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and 23(b)(3). Specifically, the classes consist of:

### Nationwide Class

All persons or entities who purchased a defective Nexus 6P Phone.

### California Subclass

All persons or entities in the state of California who purchased a defective Nexus 6P Phone.

### Florida Subclass

All persons or entities in the state of Florida who purchased a defective Nexus 6P Phone.

### Indiana Subclass

All persons or entities in the state of Indiana who purchased a defective Nexus 6P Phone.

93.      Excluded from the Classes are Defendants, its affiliates, subsidiaries, parents, successors, predecessors, any entity in which Defendants or their parents have a controlling interest; Defendants' current and former employees, officers and directors; the Judge(s) and/or Magistrate(s) assigned to this case; any person who properly obtains exclusion from the Classes; any person whose claims have been finally adjudicated on the merits or otherwise released; and the parties' counsel in this litigation. Plaintiffs reserve the right to modify, change, or expand the Classes definitions based upon discovery and further investigation.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

94.     **Numerosity**: Upon information and belief, the Class is so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information being in the sole possession of Defendants and/or third parties and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that thousands upon thousands of Class members have been subjected to the conduct by Defendants herein alleged. Plaintiffs' counsel has been contacted by nearly two thousand consumers who claim to have experienced one or both of the Defects.

95.     **Existence and Predominance of Common Questions of Fact and Law**: Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include, but are not limited to:

a)     Whether the Phones are defective in that they were prone to failing prematurely due to the Defect;

b)     Whether Defendants knew of the Defect but failed to disclose the problem and its consequences to their customers;

c)     Whether a reasonable consumer would consider the Defect or its consequences to be material;

d)     Whether Defendants' conduct violates state consumer protection laws and other laws as asserted herein;

e)     Whether Plaintiffs and the other Class members overpaid for their Phones as a result of the Defect alleged herein;

f)     Whether Defendants' conduct was fraudulent;

g)     Whether Plaintiffs and the other Class members are entitled to equitable relief, including, but not limited to, restitution or injunctive relief; and

h)     Whether Plaintiffs and the other Class members are entitled to damages and other monetary relief and, if so, in what amount.

96.     **Typicality**: All of Plaintiffs' claims are typical of the claims of the Class since Plaintiffs and all Class members were injured in the same manner by Defendants' uniform course of conduct described herein.  Plaintiffs and all Class members have the same claims against Defendants relating to the conduct alleged herein, and the same events giving rise to Plaintiffs claims for relief are identical to those giving rise to the claims of all Class members.  Plaintiffs and all Class members sustained monetary and economic injuries including, but not limited to, ascertainable losses arising out of Defendants' wrongful conduct as described herein. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

97.     **Adequacy:** Plaintiffs are adequate representative for the Class because his interests do not conflict with the interests of the Class that they seek to represent; Plaintiffs have retained counsel competent and highly experienced in complex class action litigation – including consumer fraud class action cases – and counsel intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

98.     **Superiority:** A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and all Class members. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendants' conduct. It would be virtually impossible for members of the Class individually to redress effectively the wrongs done to them by Defendants. Even if Class members could afford such individual litigation, the court system could not. Individualized litigation presents a potential for inconsistent or contradictory judgments. Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case. By contrast, the class action device presents far fewer management

difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Upon information and belief, members of the Class can be readily identified and notified based on, *inter alia*, the records (including databases, e-mails, etc.) Defendants maintain regarding sales of Class Phones. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

99.     Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and the other members of the Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class as a whole.

100.     Given that Defendants have engaged in a common course of conduct as to Plaintiffs and the Class, similar or identical injuries and common law and statutory violations are involved and common questions far outweigh any potential individual questions.

## CAUSES OF ACTION

**A.     Nationwide Class**

### COUNT I
### BREACH OF EXPRESS WARRANTY
### (Against Huawei)
### (On Behalf of the Nationwide Class)

101.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

102.   Plaintiffs bring this claim on behalf of the Nationwide Class.

103.    Huawei is a "merchant" as defined under the Uniform Commercial Code ("UCC").

104.   The Class Phones are "goods" as defined under the UCC.

105.    Huawei expressly warranted that the Class Phones were of free from material defects and, at a minimum, would actually work properly. Huwaei also

Complaint, Case No. 5:17-cv-2185

expressly warranted that they would repair and/or replace "any parts of the [Phone] that are defective or malfunctioning during normal usage."[15]

106.    For example, Huawei's warranty for each Class Phone provides:

> Huawei Device USA Inc., ("Huawei") represents and warrants to the original purchaser ("Purchaser") that Huawei's phones and accessories ("Product") are free from material defects, including improper or inferior workmanship, materials, and design, during the designated warranty period[.][16]

107.    Huawei breached its warranty by selling to Plaintiffs and class members Class Phones equipped with the Defect, which is material, causing Class Phones to fail to function properly or at all.

108.    Huawei further breached the warranty by failing to repair and/or replace Plaintiffs' and other Class members' Phones when they failed during the warranty period.

109.    This intended failure to disclose the known Defect is malicious, and it was carried out with willful and wanton disregard for the rights and economic interests of Plaintiffs and Class members.

110.    As a result of Huawei's actions, Plaintiffs and Class members have suffered economic damages including but not limited to costly repairs, loss of use, substantial loss in value and resale value of the Phones, and other related damage.

111.    Huawei's attempt to disclaim or limit its express warranties vis à-vis consumers is unconscionable and unenforceable under the circumstances here. Specifically, Huawei's warranty limitation is unenforceable because it knowingly sold a defective product without informing consumers about the Defect.

---

[15] http://consumer.huawei.com/us/support/warranty-policy/mobile-phone/index.htm (last visited April 14, 2017).
[16] *Id.*

Complaint, Case No. 5:17-cv-2185

112.   Furthermore, the time limits contained in Huawei's warranty period are also unconscionable and inadequate to protect Plaintiffs and members of the Class. Among other things, Plaintiffs and Class members have had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Huawei. A gross disparity in bargaining power existed between Huawei and class members, and Huawei knew or should have known that the Class Phones were defective at the time of sale, and would fail well before their useful lives. Furthermore, consumers had no way of knowing of the concealed Defect.

113.   Plaintiffs and Class members have complied with all obligations under the warranty, or otherwise have been excused from performance of said obligations as a result of Huawei's conduct described herein.

114.   Huawei was provided notice of these issues by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Defect became public.

<u>**COUNT II**</u>
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(Against Defendants)**
**(On Behalf of the Nationwide Class)**

115.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

116.   Plaintiffs bring this claim on behalf of the Nationwide Class.

117.   Huawei and Google are "merchants" as defined under the UCC.

118.   The Class Phones are "goods" as defined under the UCC.

119.   Huawei and Google impliedly warranted that the Class Phones were of a merchantable quality.

120.   Defendants breached the implied warranty of merchantability because the Class Phones were not of a merchantable quality due to the Defect.

121.    Plaintiffs and Class members' interactions with Huawei and Google suffice to create privity of contract between Plaintiffs and Class members, on the one hand, and Defendants, on the other hand; however, privity of contract need not be established nor is it required because Plaintiffs and Class members are intended third-party beneficiaries of contracts between Huawei and Google and the retailers who sell the Phones, and specifically, of Defendants' implied warranties. Defendants' warranties were designed for the benefit of consumers who purchase(d) Class Phones.

122.    As a direct and proximate result of the breach of said warranties, Plaintiffs and Class members were injured and are entitled to damages.

123.    Defendants' attempts to disclaim or limit the implied warranty of merchantability vis-à-vis consumers is unconscionable and unenforceable here. Specifically, Defendants' warranty limitations are unenforceable because Defendants' knowingly sold a defective product without informing consumers about the Defect.

124.    Furthermore, the time limits contained in Defendants' warranty period were also unconscionable and inadequate to protect Plaintiffs and members of the Class. Among other things, Plaintiffs and members of the Class had no meaningful choice in determining these time limitations, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Class members, and Defendants knew or should have known that the Class Phones were defective at the time of sale and that the Phones would fail well before their useful lives.

125.    Plaintiffs and Class members have complied with all obligations under the warranty or otherwise have been excused from performance of said obligations as a result of Defendants' conduct described herein.

126.    Defendants were provided notice of these issues by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Defect became public.

Complaint, Case No. 5:17-cv-2185

33

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT III
### VIOLATION OF THE MAGNUSSON-MOSS
### WARRANTY ACT, 15 U.S.C. §§ 2301 *et seq.* ("MMWA")
### (Against Huawei)
### (On Behalf of the Nationwide Class)

127.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

128.   Plaintiffs and Class members are "consumers" within the meaning of the MMWA. 15 U.S.C. § 2301(3).

129.   The Phones are "consumer products" within the meaning of the MMWA. 15 U.S.C. § 2301(1).

130.   Huawei is a "supplier" and "warrantor" within the meaning of the MMWA. 15 U.S.C. § 2301(4)-(5).

131.   Section 2310(d) of the MMWA provides a cause of action for consumers who are harmed by the failure of a warrantor to comply with a written or implied warranty.

132.   Huawei's express warranties are written warranties within the meaning of Section 2301(6) of the MMWA. The Phones' implied warranties are accounted for under Section 2301(7) of the MMWA, which warranties Huawei cannot disclaim under the MMWA, when they fail to provide merchantable goods.

133.   As set forth herein, Huawei breached their warranties with Plaintiffs and Class members.

134.   Additionally, 15 U.S.C. § 2304(d) provides in pertinent part:

> [T]he warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted consumer product. . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be

Complaint, Case No. 5:17-cv-2185

1
2

> entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor.

*Id*.

3

4    135.    The Nexus 6P phones share a common defect in that they are equipped
5    with the Defect.

6    136.    Despite demands by Plaintiffs and the Class for Huawei to pay the
7    expenses associated with diagnosing and repairing the defective phones, Huawei has
8    refused to do so.

9    137.    As a direct and proximate result of Huawei's breach of implied and
10   express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and Class members
11   have suffered damages in an amount to be proven at trial.

12   138.    Plaintiffs and the other Class members would suffer economic hardship if
13   they returned their Phones but did not receive the return of all payments made by them.
14   Because Huawei is refusing to acknowledge any revocation of acceptance and return
15   immediately any payments made, Plaintiffs and the other Class members have not re-
16   accepted their Phones by retaining them.

17   139.    The amount in controversy of Plaintiffs' individual claims meets or
18   exceeds the sum of $25. The amount in controversy of this action exceeds the sum of
19   $50,000, exclusive of interest and costs, computed on the basis of all claims to be
20   determined in this lawsuit.

21   140.    Plaintiffs and Class members are entitled to recover damages as a result
22   of Defendants' breach of warranties.

23   141.    Plaintiffs and Class members are also entitled to seek costs and expenses,
24   including attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

25
26
27
28

**B.    California Subclass**

**COUNT IV**
**BREACH OF EXPRESS WARRANTY**
**CAL. COM. CODE § 2313**
**(Against Huawei)**
**(On Behalf of the California Subclass)**

142.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

143.   This claim is brought by Plaintiff Makcharoenwoodhi on behalf of the California Subclass.

144.   Huawei is and was at all relevant times a merchant with respect to smartphones. CAL. COM. CODE § 2104.

145.   Pursuant to CAL. COM. CODE § 2313:

> (1) Express warranties by the seller are created as follows:

>> (a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

*Id.*

146.   In its warranty and in advertisements, brochures, and through other statements in the media, Huawei expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, Huwaei also expressly warranted that they would repair and/or replace "any parts of the [Phone] that are defective or malfunctioning during normal usage."

147.   Huawei's warranty, as well as advertisements, brochures, and other statements in the media regarding the Class Phones, formed the basis of the bargain that

was reached when Plaintiff Makcharoenwoodhi and the other Class members purchased their Class Phones.

148.   Huawei breached the express warranty to repair and adjust to correct defects in materials and workmanship in the Phones. Huawei has not repaired or adjusted, and has been unable to repair or adjust, the Defect in Class Phones.

149.   At the time of selling Class Phones, Huawei did not provide Class Phones that conformed to its express warranties.

150.   Furthermore, the warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Makcharoenwoodhi and the other Class members whole and because Huawei has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

151.   Accordingly, recovery by Plaintiff Makcharoenwoodhi and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

152.   Also, as alleged in more detail herein, at the time that Huawei warranted and sold the Class Phones it knew that the Class Phones did not conform to the warranties and were inherently defective, and Huawei wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Phones. Plaintiff Makcharoenwoodhi and the other Class members were therefore induced to purchase the Class Phones under false and/or fraudulent pretenses.

153.   Moreover, many of the injuries flowing from the Class Phones cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Huawei's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's

Complaint, Case No. 5:17-cv-2185

1
2
and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

3
4
5
6
154.   Huawei was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual communications sent by the other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

7
8
9
10
155.   As a direct and proximate result of Huawei's breach of express warranties, Plaintiff Makcharoenwoodhi and the other Class members have been damaged in an amount to be determined at trial.

11
12
13
14
**COUNT V**
**VIOLATION OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. CIV. CODE §§ 1791.1 & 1792)**
**(Against Defendants)**
**(On Behalf of the California Subclass)**

15
16
156.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

17
18
157.   Plaintiff Makcharoenwoodhi brings this Count on behalf of the California Subclass.

19
20
21
158.   Plaintiff and the other Class members who purchased Nexus 6P smartphones in California are "buyers" within the meaning of CAL. CIV. CODE § 1791(b).

22
23
159.   The Nexus 6P smartphones are "consumer goods" within the meaning of CAL. CIV. CODE § 1791(a).

24
25
160.   Huawei is a "manufacturer" of the Nexus 6P smartphones within the meaning of CAL. CIV. CODE § 1791(j).

26
27
28
161.   Defendants impliedly warranted to Plaintiff and the other Class members that their Nexus 6P smartphones were "merchantable" within the meaning of CAL. CIV. CODE §§ 1791.1(a) & 1792; however, the Nexus 6P smartphones do not have the

quality that a buyer would reasonably expect.

162.   CAL. CIV. CODE § 1791.1(a) states:

"Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:

(1)   Pass without objection in the trade under the contract description.

(2)   Are fit for the ordinary purposes for which such goods are used.

(3)   Are adequately contained, packaged, and labeled.

(4)    Conform to the promises or affirmations of fact made on the container or label.

163.   The Nexus 6P smartphones would not pass without objection in the smartphone trade because of the Defect.

164.   Defendants breached the implied warranty of merchantability by manufacturing and selling Nexus 6P smartphones containing the Defect. Furthermore, this Defect has caused Plaintiff and the other Class members to not receive the benefit of their bargain.

165.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff and the other Class members received goods whose defective condition substantially impairs their value to Plaintiff and the other Class members. Plaintiff and the other Class members have been damaged as a result of the diminished value of Defendants' products, the products' malfunctioning, and the nonuse of their Nexus 6P smartphones.

166.   Plaintiff and the other Class members have had sufficient direct dealings with either Defendants or their agents (*e.g.*, dealerships and technical support) to establish privity of contract between Defendants on one hand, and Plaintiff and each of the other Class members on the other hand. Nonetheless, privity is not required here because Plaintiff and each of the other Class members are intended third-party

Complaint, Case No. 5:17-cv-2185

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

beneficiaries of contracts between Defendants and their retailers, and specifically, of Defendants' implied warranties. The retailers were not intended to be the ultimate consumers of the Nexus 6P smartphones and have no rights under the warranty agreements provided with the Nexus 6P smartphones; the warranty agreements were designed for and intended to benefit the consumers only.

167.    Pursuant to CAL. CIV. CODE §§ 1791.1(d) & 1794, Plaintiff and the other Class members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Nexus 6P smartphones, or the overpayment or diminution in value of their Nexus 6P smartphones .

168.    Pursuant to CAL. CIV. CODE § 1794, Plaintiff and the other Class members are entitled to costs and attorneys' fees.

**COUNT VI**
**BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY**
**(CAL. COM. CODE § 2314)**
**(Against Defendants)**
**(On Behalf of the California Subclass)**

169.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

170.    Plaintiff Makcharoenwoodhi brings this Count on behalf of the California Subclass.

171.    Defendants are and were at all relevant times merchants with respect to smartphones under CAL. COM. CODE § 2014.

172.    A warranty that the Nexus 6P smartphones were in merchantable condition is implied by law in the instant transactions, pursuant to CAL. COM. CODE § 2314. These phones, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which phones are used.

173.    Defendants were provided notice of these issues by complaints lodged by consumers with blogs, warranty claims and elsewhere.

Complaint, Case No. 5:17-cv-2185

174.   As a direct and proximate result of Defendants' breach of the warranties of merchantability, Plaintiff and the other Class members have been damaged in an amount to be proven at trial.

### COUNT VII
### VIOLATIONS OF THE CALIFORNIA UNFAIR COMPETITION LAW
#### (CAL. BUS. & PROF. CODE § 17200, *et seq.*) ("UCL")
#### (Against Defendants)
#### (On Behalf of the California Subclass)

175.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

176.   This claim is brought on behalf of Plaintiff Makcharoenwoodhi and the California Subclass.

177.   The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising."

178.   Defendants' conduct, as described herein, was and is in violation of the UCL. Defendants' conduct violates the UCL in at least the following ways:

    a.   Knowingly and intentionally concealing from Plaintiff and the other Class members the existence of the Defect in the Class Phones;

    b.   Marketing the Class Phones as being functional and not possessing a defect that would render them useless; and

    c.   Violating other California laws, including California laws governing false advertising and consumer protection.

179.   Defendants' misrepresentations and omissions alleged herein caused Plaintiff and the other Class members to purchase their Class Phones. Absent these misrepresentations and omissions, Plaintiff and the other Class members would not have purchased their Class Phones at the prices they paid (had they purchased them at all).

Complaint, Case No. 5:17-cv-2185

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

180.   Defendants had a duty to disclose the Defect because they had exclusive knowledge of the Defect prior to making sales of Class Phones and because Defendants made partial representations about the quality of the Phones, but failed to fully disclose the Defect too.

181.   Accordingly, Plaintiff and the other Class members have suffered injury in fact, including lost money or property, as a result of Defendants' misrepresentations and omissions.

182.   Plaintiff seeks to enjoin further unlawful, unfair, and/or fraudulent acts or practices by Defendants under CAL. BUS. & PROF. CODE § 17200.

183.   Plaintiff requests that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices, and to restore to Plaintiff and members of the Class any money they acquired by unfair competition, including restitution and/or restitutionary disgorgement, as provided in CAL. BUS. & PROF. CODE §§ 17203 & 3345; and for such other relief set forth below.

## COUNT VIII
### VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT
### (CAL. BUS. & PROF. CODE § 1750, *et seq.*) ("CLRA")
### (Against Defendants)
### (On Behalf of the California Subclass)

184.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

185.   This claim is brought on behalf of Plaintiff Makcharoenwoodhi and the California Subclass.

186.   The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale of goods or services to any consumer."

Complaint, Case No. 5:17-cv-2185

187.   The Class Phones are "goods" as defined in CAL. BUS. & PROF. CODE § 1761(a).

188.   Plaintiff and the other Class members are "consumers" as defined in CAL. BUS. & PROF. CODE § 1761(d), and Plaintiff, the other Class members, and Defendants are "persons" as defined in CAL. BUS. & PROF. CODE § 1761(c).

189.   As alleged above, Defendants made numerous representations concerning the benefits, performance, and capabilities of the Class Phones that were misleading. In purchasing the Class Phones, Plaintiff and the other Class members were deceived by Defendants' failure to disclose that the Class Phones are highly susceptible to the Defect.

190.   Defendants' conduct, as described herein, was and is in violation of the CLRA.   Defendants' conduct violates at least the following enumerated CLRA provisions:

  a.    § 1770(a)(2): Misrepresenting the approval or certification of goods;

  b.    § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

  c.    § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

  d.    § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

  e.    § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

191.   Plaintiff and the other Class members have suffered injury in fact and actual damages resulting from Defendants' material omissions and misrepresentations because, *inter alia,* they lost money when they purchased their Class Phones or paid an inflated purchase price for the Class Phones.

192.   Defendants knew, should have known, or were reckless in not knowing

Complaint, Case No. 5:17-cv-2185

43

that the Defect in the Class Phones rendered them not suitable for their intended use.

193.    Defendants had a duty to disclose the Defect because Huawei and Google had exclusive knowledge of the Defect prior to making sales of Class Phones and because Defendants made partial representations about the quality of the Phones, but failed to fully disclose the Defect.

194.    The facts concealed and omitted by Defendants to Plaintiff and the other Class members — that the Phones are defective and fail prematurely — are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Class Phones or pay a lower price. Had Plaintiff and the other Class members known about the defective nature of the Class Phones, they would not have purchased their Class Phones, or would not have paid the prices they paid.

195.    This cause of action seeks injunctive relief at this time. However, Plaintiff sent a demand letter to each Defendant via certified mail pursuant to the requirements of the CLRA on April 19, 2017 providing the notice required by CAL. CIV. CODE § 1782(a).  The CLRA letter advised Defendants that they are in violation of the CLRA and must correct, replace or otherwise rectify the goods alleged to be in violation of CAL. CIV. CODE § 1770. Defendants were further advised that in the event the relief requested has not been provided within thirty (30) days, Plaintiff will amend his complaint to include a request for monetary damages pursuant to the CLRA. If Defendants do not correct, replace, or otherwise rectify the goods and issues alleged in either Plaintiff's CLRA notice or this complaint within the statutorily proscribed 30-day period, Plaintiff will amend this complaint to seek both injunctive relief and monetary damages against Defendants pursuant to the CLRA, CAL. CIV. CODE §§ 1781 and 1782.

196.    Plaintiff further seeks an order awarding costs of court and attorneys' fees under CAL. CIV. CODE § 1780(e).

1

2

3

4

## COUNT IX
## VIOLATION OF CALIFORNIA'S FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE § 17500, *et seq.*) ("FAL")
### (Against Defendants)
### (On Behalf of the California Subclass)

5

6

197.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

7

8

198.   This claim is brought on behalf of Plaintiff Makcharoenwoodhi and the California Subclass.

9

199.   The California FAL states:

10

11

12

13

14

15

16

17

"It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

18

19

CAL. BUS. & PROF. CODE § 17500

20

21

22

23

200.   Defendants caused to be made or disseminated through California and the United States, through advertising, marketing and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Plaintiff and the other Class members.

24

25

26

201.   Defendants have violated the California FAL because the misrepresentations and omissions regarding the reliability and functionality of Class Phones, as set forth herein, were material and likely to deceive a reasonable consumer.

27

28

202.   Plaintiff and the other Class members have suffered an injury in fact,

including the loss of money or property, as a result of Defendants' unfair, unlawful, and/or deceptive practices. In purchasing their Class Phones, Plaintiff and the other Class members relied on the misrepresentations and/or omissions of Defendants with respect to the performance and reliability of the Class Phones. Defendants' representations turned out not to be true because the Class Phones are defective.

203.   All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still perpetuated and repeated, both in the state of California and nationwide.

204.   Plaintiff, individually and on behalf of the other Class members, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and/or deceptive practices and to restore to Plaintiff and the other Class members any money Defendants acquired by unfair competition, including restitution and/or restitutionary disgorgement, and for such other relief set forth below.

## COUNT X
### FRAUD/FRAUDULENT CONCEALMENT
**(Against Defendants)**
**(On Behalf of the California Subclass)**

205.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

206.   This claim is brought on behalf of all Plaintiff Makcharoenwoodhi and the California Subclass.

207.   Defendants concealed and suppressed material facts concerning the performance and quality of the Class Phones, and the quality of the Huawei, Google, and Nexus brands. Specifically, Defendants knew of (or should have known of) the Defect, but failed to disclose it prior to or at the time they sold Class Phones to consumers. Defendants did so in order to boost sales of their Nexus 6P smartphones.

Complaint, Case No. 5:17-cv-2185

46

208.   Plaintiff and Class members had no way of knowing that Defendants' representations were false and misleading, or that Defendants had omitted these imperative details. Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own.

209.   Defendants had a duty to disclose the true performance of the Class Phones because knowledge of the scheme and its details were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiff and the Class. Defendants also had a duty to disclose because they made many general affirmative representations about the about the qualities of the Class Phones.

210.   On information and belief, Defendants still have not made full and adequate disclosures, and continue to defraud consumers by concealing material information regarding the performance of Class Phones.

211.   Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased the Class Phones. Plaintiff's and the Class's actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or the Class.

212.   Because of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage because they did not receive the value of the premium price paid for their Class Phones. Plaintiff and Class members would have paid less for Class Phones had they known about the Defect and the entire truth about them, or they would not have purchased Class Phones at all.

213.   Accordingly, Defendants are liable to the Class for damages in an amount to be proven at trial.

214.   Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and

well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

215.    Defendants have been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale of Class Phones and by withholding benefits from Plaintiff and the Class at the expense of these parties.

216.    Equity and good conscience militate against permitting Defendants to retain these profits and benefits, and Defendants should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

## C.    Florida Subclass

### COUNT XI
### BREACH OF EXPRESS WARRANTY
### FLA. STAT. § 672.313
### (Against Huawei)
### (On Behalf of Plaintiff Winfield and the Florida Subclass)

217.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

218.    This claim is brought by Plaintiff Winfield on behalf of the Florida Subclass.

219.    Huawei is and was at all relevant times a merchant with respect to smartphones. FLA. STAT. § 672.104.

220.    Pursuant to FLA. STAT. § 672.313:

(1) Express warranties by the seller are created as follows:

(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

*Id.*

221.   In its warranty and in advertisements, brochures, and through other statements in the media, Huawei expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, Huwaei also expressly warranted that they would repair and/or replace "any parts of the [Phone] that are defective or malfunctioning during normal usage."

222.   Huawei's warranty, as well as advertisements, brochures, and other statements regarding the Class Phones, formed the basis of the bargain that was reached when Plaintiff Winfield and the other Class members purchased their Class Phones.

223.   Huawei breached the express warranty to repair and adjust to correct defects in materials and workmanship in the Phones. Huawei has not repaired or adjusted, and has been unable to repair or adjust, the Defect in Class Phones.

224.   At the time of selling Class Phones, Huawei did not provide Class Phones that conformed to its express warranties.

225.   Furthermore, the warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Winfield and the other Class members whole and because Huawei has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

226.   Accordingly, recovery by Plaintiff Winfield and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

227.   Also, as alleged in more detail herein, at the time that Huawei warranted and sold the Class Phones it knew that the Class Phones did not conform to the warranties and were inherently defective, and Huawei wrongfully and fraudulently

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

misrepresented and/or concealed material facts regarding its Class Phones. Plaintiff Winfield and the other Class members were therefore induced to purchase the Class Phones under false and/or fraudulent pretenses.

228.   Moreover, many of the injuries flowing from the Class Phones cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Huawei's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

229.   Huawei was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual communications sent by the other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

230.   As a direct and proximate result of Huawei's breach of express warranties, Plaintiff Winfield and the other Class members have been damaged in an amount to be determined at trial.

231.   Due to Huawei's breach of warranties as set forth herein, Plaintiff Winfield and the other Class members assert as an additional and/or alternative remedy, as set forth in FLA. STAT. § 672.608, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the other Class members of the purchase price of all Class Phones currently owned for such other incidental and consequential damages as allowed under FLA. STAT. §§ 672.711 and 672.608.

1

2

3

4

## COUNT XII
## BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
### FLA. STAT. § 672.314
### (Against Defendants)
### (On Behalf of Plaintiff Winfield and the Florida Subclass)

232.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

233.   This claim is brought by Plaintiff Winfield on behalf of the Florida Subclass.

234.   Defendants are and were at all relevant times merchants with respect to smartphones. FLA. STAT. § 672.104.

235.   A warranty that the Class Vehicles were in merchantable condition is implied by law. FLA. STAT. § 672.314.

236.   The Class Phones, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which smartphones are used.

237.   Defendants were provided notice of these issues by numerous complaints filed against them, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

238.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Winfield and the other Class members have been damaged in an amount to be proven at trial.

239.   To the extent it is required, the parties are in privity or, alternatively, Plaintiff and Class members are the intended beneficiaries of Defendants' contracts.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

<u>**COUNT XIII**</u>
**VIOLATION OF THE FLORIDA DECEPTIVE & UNFAIR TRADE PRACTICES ACT ("FDUTPA")**
**FLA. STAT. §§ 501.204, *et seq.***
**(Against Defendants)**
**(On Behalf of Plaintiff Winfield and the Florida Subclass)**

240. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

241. This claim is brought on behalf of Plaintiff Winfield and the Florida Subclass.

242. The FDUPTA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1).

243. In the course of Defendants' business, they willfully failed to disclose and actively concealed the Defect in Class Phones as described herein.

244. Accordingly, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in FLA. STAT. § 501.204(1), including representing that Class Phones have characteristics, uses, benefits, and qualities which they do not have; representing that Class Phones are of a particular standard and quality when they are not; advertising Class Phones with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

245. Defendants' actions as set forth above occurred in the conduct of trade or commerce.

246. Defendants' conduct proximately caused injuries to Plaintiff Winfield and the other Florida Subclass members.

247. Plaintiff Winfield and the other class members were injured as a result of Defendants' conduct in that they overpaid for their Class Phones and did not receive the benefit of their bargain, they suffered out of pocket losses, and/or their Class Phones

have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

248. Plaintiff is entitled to actual damages and, pursuant to FLA. STAT. § 501.2105, reasonable costs and attorneys' fees.

**COUNT XIV**
**FRAUD/FRAUDULENT CONCEALMENT**
**(Against Defendants)**
**(On Behalf of Plaintiff Winfield and the Florida Subclass)**

249. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

250. This claim is brought on behalf of all Plaintiff Winfield and the Florida Subclass.

251. Defendants concealed and suppressed material facts concerning the performance and quality of the Class Phones, and the quality of the Huawei, Google, and Nexus brands. Specifically, Defendants knew of (or should have known of) the Defect, but failed to disclose it prior to or at the time they sold Class Phones to consumers. Defendants did so in order to boost sales of their Nexus 6P smartphones.

252. Plaintiff and Class members had no way of knowing that Defendants' representations were false and misleading, or that Defendants had omitted these imperative details. Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own.

253. Defendants had a duty to disclose the true performance of the Class Phones because knowledge of the scheme and its details were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiff and the Class. Defendants also had a duty to disclose because they made many general affirmative representations about the about the qualities of the Class Phones.

Complaint, Case No. 5:17-cv-2185

254.    On information and belief, Defendants still have not made full and adequate disclosures, and continue to defraud consumers by concealing material information regarding the performance of Class Phones.

255.    Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased the Class Phones. Plaintiff's and the Class's actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or the Class.

256.    Because of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage because they did not receive the value of the premium price paid for their Class Phones. Plaintiff and Class members would have paid less for Class Phones had they known about the Defect and the entire truth about them, or they would not have purchased Class Phones at all.

257.    Accordingly, Defendants are liable to the Class for damages in an amount to be proven at trial.

258.    Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

## COUNT XV
### UNJUST ENRICHMENT
#### (Against Defendants)
#### (On Behalf of Plaintiff Winfield and the Florida Subclass)

259.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

260.    This claim is brought by Plaintiff Winfield on behalf of the Florida Subclass. This claim is pled in the alternative to the other claims set forth herein.

Complaint, Case No. 5:17-cv-2185

261.   As the intended and expected result of its conscious wrongdoing, Defendants have profited and benefited from Plaintiff's and Class members' purchase of Class Phones containing the Defect.

262.   Defendants have voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of their misconduct alleged herein, Plaintiff and the Class were not receiving Phones of the quality, nature, fitness, or value that had been represented by Defendants, and that a reasonable consumer would expect.

263.   Defendants have been unjustly enriched by their fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale of Class Phones and by withholding benefits from Plaintiff and the Class at the expense of these parties.

264.   Equity and good conscience militate against permitting Defendants to retain these profits and benefits, and Defendants should be required to make restitution of their ill-gotten gains resulting from the conduct alleged herein.

**D.   Indiana Subclass**

**COUNT XVI**
**BREACH OF EXPRESS WARRANTY**
**IND. CODE § 26-1-2-313**
**(Against Huawei)**
**(On Behalf of Plaintiff Beheler and the Indiana Subclass)**

265.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

266.   This claim is brought by Plaintiff Beheler on behalf of the Indiana Subclass.

267.   Huawei is and was at all relevant times a merchant with respect to smartphones. IND. CODE § 26-1-2-104.

268.   Pursuant to IND. CODE § 26-1-2-313:

(1) Express warranties by the seller are created as follows:

Complaint, Case No. 5:17-cv-2185

(a) any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise.

*Id.*

269.   In its warranty and in advertisements, brochures, and through other statements in the media, Huawei expressly warranted that it would repair or replace defects in material or workmanship free of charge if they became apparent during the warranty period. For example, Huwaei also expressly warranted that they would repair and/or replace "any parts of the [Phone] that are defective or malfunctioning during normal usage."

270.   Huawei's warranty, as well as advertisements, brochures, and other statements in the media regarding the Class Phones, formed the basis of the bargain that was reached when Plaintiff Beheler and the other Class members purchased their Class Phones, thereby constituting express warranties under IND. CODE § 26-1-2-313.

271.   Huawei breached the express warranty to repair and adjust to correct defects in materials and workmanship in the Phones. Huawei has not repaired or adjusted, and has been unable to repair or adjust, the Defect in Class Phones.

272.   At the time of selling Class Phones, Huawei did not provide Class Phones that conformed to its express warranties.

273.   Furthermore, the warranty of repair and/or adjustments to defective parts fails in its essential purpose because the contractual remedy is insufficient to make Plaintiff Beheler and the other Class members whole and because Huawei has failed and/or has refused to adequately provide the promised remedies within a reasonable time.

274.   Accordingly, recovery by Plaintiff Beheler and the other Class members is not limited to the limited warranty of repair or adjustments to parts defective in

Complaint, Case No. 5:17-cv-2185

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

materials or workmanship, and Plaintiff, individually and on behalf of the other Class members, seeks all remedies as allowed by law.

275.   Also, as alleged in more detail herein, at the time that Huawei warranted and sold the Class Phones it knew that the Class Phones did not conform to the warranties and were inherently defective, and Huawei wrongfully and fraudulently misrepresented and/or concealed material facts regarding its Class Phones. Plaintiff Beheler and the other Class members were therefore induced to purchase the Class Phones under false and/or fraudulent pretenses.

276.   Moreover, many of the injuries flowing from the Class Phones cannot be resolved through the limited remedy of "replacement or adjustments," as many incidental and consequential damages have already been suffered due to Huawei's fraudulent conduct as alleged herein, and due to its failure and/or continued failure to provide such limited remedy within a reasonable time, and any limitation on Plaintiff's and the other Class members' remedies would be insufficient to make Plaintiff and the other Class members whole.

277.   Huawei was provided notice of these issues by numerous complaints filed against it, including the instant complaint, and by numerous individual communications sent by the other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

278.   As a direct and proximate result of Huawei's breach of express warranties, Plaintiff Beheler and the other Class members have been damaged in an amount to be determined at trial.

279.   Due to Defendant's breach of warranties as set forth herein, Plaintiff and the other Indiana Subclass members assert as an additional and/or alternative remedy, as set forth in IND. CODE § 26-1-2-313, for a revocation of acceptance of the goods, and for a return to Plaintiff and to the other Class members of the purchase price of all

Class Phones currently owned, and for such other incidental and consequential damages as allowed under IND. CODE §§ 26-1-2-711 and 26-1-2-608.

**COUNT XVII**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**IND. CODE § 26-1-2-314**
**(Against Defendants)**
**(On Behalf of Plaintiff Beheler and the Indiana Subclass)**

280.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

281.   This claim is brought by Plaintiff Beheler on behalf of the Indiana Subclass.

282.   Defendants are and were at all relevant times merchants with respect to smartphones. IND. CODE § 26-1-2-104.

283.   A warranty that the Class Phones were in merchantable condition is implied by law in the instant transactions. IND. CODE § 26-1-2-314.

284.   The Class Phones, when sold and at all times thereafter, were not in merchantable condition and are not fit for the ordinary purpose for which smartphones are used.

285.   Defendants were provided notice of these issues by numerous complaints filed against then, including the instant Complaint, and by numerous individual letters and communications sent by Plaintiffs and other Class members before or within a reasonable amount of time after the allegations of the Defect became public.

286.   As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiff Beheler and the other Class members have been damaged in an amount to be proven at trial.

287.   To the extent it is required, the parties are in privity or, alternatively, Plaintiff and Class members are the intended beneficiaries of Defendants' contracts.

## COUNT XVIII
### VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
### IND. CODE §§ 24-5-0.5-1, *et seq.* ("IDCSA")
### (Against Defendants)
### (On Behalf of Plaintiff Beheler and the Indiana Subclass)

288.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

289.   This claim is brought by Plaintiff Beheler on behalf of the Indiana Subclass.

290.   The IDCSA allows a person to bring an action for damages from "relying upon an uncured or incurable deceptive act." IND. CODE 24-5-0.5-4(a).

291.   Additionally, the IDCSA expressly allows persons damaged by a "deceptive act" to bring a class action. *Id.* § 24-5-0.5-4(b).

292.   The IDCSA defines a "deceptive act" as when a supplier commits an "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction" whether such conduct occurred before, during, or after the transaction. *Id.* § 24-5-0.5-3(a). Further, deceptive acts "include both implicit and explicit misrepresentations." *Id.*

293.   The IDCSA enumerates some "representations as to the subject matter of the consumer transaction, made orally, in writing, or by electronic communication, by a supplier" that are considered *per se* deceptive acts. *Id.* § 24-5-0.5-3(b). Pertinent here are the following deceptive acts which Defendants have committed as alleged herein:

      a.    (b)(1): That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have.

      b.    (b)(2): That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

      c.     (b)(8): That such consumer transaction involves or does not involve a warranty, a disclaimer of warranties, or other rights, remedies, or obligations, if the representation is false and if the supplier knows or should reasonably know that the representation is false.

294.   Defendants represented that Class Phones are premium products of high quality, including (among other things) that the Phones have high-performing batteries that will keep consumers "talking, texting, and apping into the night."

295.   But Defendants sold Class Phones to Plaintiff and the Indiana Subclass that do not perform or have the characteristics, uses, benefits or quality that Defendants represented its Class Phones to have. Instead, Defendants sold to Plaintiff and members of the Indiana Subclass smartphones that either bootloop or, more commonly, cease operating despite indicating high percentages of remaining battery life.

296.   The Defect is incurable and cannot be remedied as indicated by the fact that attempted repairs and replacement devices result in the same issues for consumers.

297.   Defendants have refused and continue to refuse to provide an adequate remedy for the issues that plague Class Phones.

298.   As set forth herein, Defendants have engaged in multiple deceptive acts in violation of the IDCSA. Therefore, Plaintiff Beheler seeks both injunctive relief and monetary damages against Defendants pursuant to the IDCSA, §§ 2, 4.

299.   Furthermore, Defendants omitted and concealed information about the Defect from Plaintiff and Indiana Subclass members.  Defendants had a duty to disclose the truth about Class Phones, including the Defect, and Plaintiff and Class members could not have discovered the truth on their own.  Plaintiff and Class members relied upon Defendants' representations and omissions with respect to Class Phones, and it was Defendants' concealment of the Defect that induced Plaintiff and Class members to purchase Class Phones.

300.   As a result of Defendants' conduct alleged herein, Plaintiff and members of the Indiana Subclass have suffered irreparable harm. Plaintiff's and the other Indiana Subclass members' injuries were proximately caused by Defendants' conduct as alleged herein. Plaintiff, individually and on behalf of all other Indiana Subclass members, seek an award of damages for Defendants' willful violations of the IDCSA, costs, attorneys' fees, and such other relief as deemed appropriate and proper by the Court.

## COUNT XIX
### FRAUD/FRAUDULENT CONCEALMENT
**(Against Defendants)**
**(On Behalf of Plaintiff Beheler and the Indiana Subclass)**

301.   Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

302.   This claim is brought on behalf of all Plaintiff Beheler and Indiana Subclass.

303.   Defendants concealed and suppressed material facts concerning the performance and quality of the Class Phones, and the quality of the Huawei, Google, and Nexus brands. Specifically, Defendants knew of (or should have known of) the Defect, but failed to disclose it prior to or at the time they sold Class Phones to consumers. Defendants did so in order to boost sales of their Nexus 6P smartphones.

304.   Plaintiff and Class members had no way of knowing that Defendants' representations were false and misleading, or that Defendants had omitted these imperative details. Plaintiff and Class members did not, and could not, unravel Defendants' deception on their own.

305.   Defendants had a duty to disclose the true performance of the Class Phones because knowledge of the scheme and its details were known and/or accessible only to Defendants; Defendants had superior knowledge and access to the facts; and Defendants knew the facts were not known to, or reasonably discoverable, by Plaintiff

and the Class. Defendants also had a duty to disclose because they made many general affirmative representations about the about the qualities of the Class Phones.

306.     On information and belief, Defendants still have not made full and adequate disclosures, and continue to defraud consumers by concealing material information regarding the performance of Class Phones.

307.     Plaintiff and the Class were unaware of these omitted material facts and would not have acted as they did if they had known of the concealed and/or suppressed facts, in that they would not have purchased the Class Phones. Plaintiff's and the Class's actions were justified. Defendants were in exclusive control of the material facts and such facts were not known to the public, Plaintiff, or the Class.

308.     Because of the concealment and/or suppression of the facts, Plaintiff and the Class sustained damage because they did not receive the value of the premium price paid for their Class Phones. Plaintiff and Class members would have paid less for Class Phones had they known about the Defect and the entire truth about them, or they would not have purchased Class Phones at all.

309.     Accordingly, Defendants are liable to the Class for damages in an amount to be proven at trial.

310.     Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being to enrich Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT XX
### UNJUST ENRICHMENT
**(Against Defendants)**
**(On Behalf of Plaintiff Beheler and the Indiana Subclass)**

311.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

Complaint, Case No. 5:17-cv-2185

312.    This claim is brought by Plaintiff Beheler on behalf of the Indiana Subclass. This claim is pled in the alternative to the other claims set forth herein.

313.    As the intended and expected result of its conscious wrongdoing, Defendants have profited and benefited from Plaintiff's and Class members' purchase of Class Phones containing the Defect.

314.    Defendants have voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of their misconduct alleged herein, Plaintiff and the Class were not receiving Phones of the quality, nature, fitness, or value that had been represented by Defendants, and that a reasonable consumer would expect.

315.    Defendants have been unjustly enriched by their fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale of Class Phones and by withholding benefits from Plaintiff and the Class at the expense of these parties.

316.    Equity and good conscience militate against permitting Defendants to retain these profits and benefits, and Defendants should be required to make restitution of their ill-gotten gains resulting from the conduct alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and similarly situated members of the Classes, respectfully requests that this Court:

(a)    Determine that this action is a proper class action, certifying Plaintiffs as class representatives under Federal Rule of Civil Procedure 23 and Plaintiffs' counsel  as Class Counsel;

(b)    Award all actual, general, special, incidental, statutory, punitive and consequential damages to which Plaintiffs and Class members are entitled;

(c)    Award pre-judgment and post-judgment interest on such monetary relief;

(d)    Grant appropriate injunctive and/or declaratory relief, including, without limitation, an order that requires Defendants to repair, recall, and/or replace the Class

Complaint, Case No. 5:17-cv-2185

Phones and to extend the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and Class members with appropriate curative notice regarding the existence and cause of the Defect;

(e)     Award Plaintiffs and Class members restitutionary or other equitable relief;

(f)     Award Plaintiffs and Class members their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(g)     Award such other and further relief as the Court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff respectfully demands a jury trial for all claims so triable.

Dated:  April 19, 2017                    Respectfully submitted,


          By:                    /s/ Cory S. Fein
                                 Cory S. Fein
                                 (California Bar No. 250758)
                                 Cory Fein Law Firm
                                 712 Main St., #800
                                 Houston, TX 77002
                                 Telephone: (281) 254-7717
                                 Facsimile: (530) 748-0601
                                 Email: cory@coryfeinlaw.com


                                 Benjamin F. Johns (*pro hac vice to be filed*)
                                 Andrew W. Ferich (*pro hac vice to be filed*)
                                 Jessica L. Titler (*pro hac vice to be filed*)
                                 **CHIMICLES & TIKELLIS LLP**
                                 One Haverford Centre
                                 361 West Lancaster Avenue
                                 Haverford, PA 19041
                                 Phone: (610) 642-8500
                                 Fax: (610) 649-3633
                                 Email:  bfj@chimicles.com
                                 Email:  awf@chimicles.com
                                 Email:  jlt@chimicles.com


                                 *Counsel for Plaintiffs and*
                                   *the Proposed Class*