Daniel C. Girard (State Bar No. 114826)
Jordan Elias (State Bar No. 228731)
Simon S. Grille (State Bar No. 294914)
**GIRARD GIBBS LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Tel: (415) 981-4800
*dcg@girardgibbs.com*
*je@girardgibbs.com*
*sg@girardgibbs.com*

*Attorneys for Plaintiffs*

[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| ROY BERRY, JONATHAN MAKCHAROENWOODHI, ALEX GORBATCHEV, BRIAN CHRISTENSEN, ANTHONY MARTORELLO, KHANH TRAN, EDWARD BEHELER, YURIY DAVYDOV, REBECCA HARRISON, ZACHARY HIMES, TAYLOR JONES, PAUL SERVODIO, JUSTIN LEONE, JAMES POORE, JR., and KENNETH JOHNSTON, individually and on behalf of all others similarly situated, | Case No. 5:17-cv-02185-BLF<br><br>**CONSOLIDATED AMENDED COMPLAINT** |
|       Plaintiffs, | |
|    v. | **CLASS ACTION** |
| HUAWEI DEVICE USA, INC. and GOOGLE, INC., | **JURY TRIAL DEMANDED** |
|       Defendants. | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## TABLE OF CONTENTS

SUMMARY OF THE ACTION ......................................................................................1

JURISDICTION AND VENUE .....................................................................................4

PARTIES .........................................................................................................................4

A.      California Plaintiffs ...........................................................................................4

B.      Florida Plaintiff ..................................................................................................7

C.      Illinois Plaintiff ..................................................................................................9

D.      Indiana Plaintiff .................................................................................................9

E.      Michigan Plaintiff ............................................................................................12

F.      New York Plaintiff ...........................................................................................13

G.      North Carolina Plaintiffs ...............................................................................14

H.      North Dakota Plaintiff ....................................................................................17

I.      Ohio Plaintiff ....................................................................................................18

J.      Pennsylvania Plaintiff .....................................................................................20

K.      Texas Plaintiff ..................................................................................................21

L.      Washington Plaintiff .......................................................................................22

M.      Defendants ........................................................................................................23

COMMON FACTUAL ALLEGATIONS ....................................................................24

A.      The Google Nexus 6P .......................................................................................24

B.      The Widespread Bootloop and Battery Drain Defects Become Apparent ....27

C.      The Impact of the Battery Drain and Bootloop Defects on Consumers .........28

D.      Defendants' Continued Failure to Remedy the Defects .................................35

CLASS ACTION ALLEGATIONS .............................................................................39

CAUSES OF ACTION .................................................................................................42

i

COUNT I
BREACH OF EXPRESS WARRANTY
(Against Defendants)................................................................................42

COUNT II
BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY
(Against Defendants)................................................................................46

COUNT III
VIOLATIONS OF THE MAGNUSON-MOSS
WARRANTY ACT, 15 U.S.C. §§ 2301 et seq. ("MMWA")
(Against Defendants)................................................................................48

COUNT IV
DECEIT AND FRAUDULENT CONCEALMENT
(Against Defendants)................................................................................50

COUNT V
UNJUST ENRICHMENT
(Against Defendants)................................................................................52

COUNT VI
VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF
IMPLIED WARRANTY OF MERCHANTABILITY (CAL. CIV. CODE §§ 1791.1 & 1792)
(Against Defendants)................................................................................52

COUNT VII
VIOLATIONS OF THE UNFAIR COMPETITION LAW
(CAL. BUS. & PROF. CODE § 17200, et seq.) ("UCL")
(Against Defendants)................................................................................54

COUNT VIII
VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT
(CAL. CIV. CODE § 1750, et seq.) ("CLRA")
(Against Defendants)................................................................................56

COUNT IX
VIOLATIONS OF THE FALSE ADVERTISING LAW
(CAL. BUS. & PROF. CODE § 17500, et seq.) ("FAL")
(Against Defendants)................................................................................59

COUNT X
VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR
TRADE PRACTICES ACT ("FDUTPA")
FLA. STAT. §§ 501.204, et seq.
(Against Defendants)................................................................................61

COUNT XI
VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND  DECEPTIVE BUSINESS
PRACTICES ACT ("Illinois CFA") 815 ILL. COMP. STAT. §§ 505/1, *et seq.*
(Against Defendants)........................................................................................................62

COUNT XII
VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE
TRADE PRACTICES ACT ("Illinois DTPA")
815 ILL. COMP. STAT. §§ 510/1, *et seq.*
(Against Defendants)........................................................................................................65

COUNT XIII
VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
IND. CODE §§ 24-5-0.5-1, *et seq.* ("IDCSA")
(Against Defendants)........................................................................................................66

COUNT XIV
VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT
MICH. COMP. LAWS § 445.903, *et seq.* ("Michigan CPA")
(Against Defendants)........................................................................................................68

COUNT XV
VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
N.Y. GEN. BUS. LAW § 349
(Against Defendants)........................................................................................................71

COUNT XVI
VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350 N.Y. GEN. BUS. LAW § 350
(Against Defendants)........................................................................................................72

COUNT XVII
VIOLATIONS OF THE NORTH CAROLINA UNFAIR AND DECEPTIVE TRADE PRACTICES
ACT N.C. GEN. STAT. §§ 75-1.1, *et seq.* ("NCUDTPA")
(Against Defendants)........................................................................................................73

COUNT XVIII
VIOLATIONS OF THE NORTH DAKOTA CONSUMER FRAUD ACT
N.D. CENT. CODE §§ 51-15-01, *et seq.* ("North Dakota CFA")
(Against Defendants)........................................................................................................75

COUNT XIX
VIOLATIONS OF THE OHIO DECEPTIVE TRADE PRACTICES ACT
OHIO REV. CODE §§ 4165.01, *et seq.* ("ODTPA")
(Against Defendants)........................................................................................................77

COUNT XX

VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT
OHIO REV. CODE §§ 1345.01, *et seq.* ("OCSPA")
(Against Defendants)....................................................................................................79

COUNT XXI
VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE
PRACTICES AND CONSUMER PROTECTION LAW
PA. STAT. ANN. §§ 201-1, *et seq.* ("PAUTPCPL")
(Against Defendants)....................................................................................................81

COUNT XXII
VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT
TEX. BUS. & COM. CODE §§ 17.41, *et seq.* ("TDTPA")
(Against Defendants)....................................................................................................83

COUNT XXIII
VIOLATIONS OF WASHINGTON CONSUMER PROTECTION ACT
WASH. REV. CODE §§ 19.86, *et seq.* ("WCPA")
(Against Defendants)....................................................................................................85

PRAYER FOR RELIEF ................................................................................................87

DEMAND FOR JURY TRIAL......................................................................................88

iv

Roy Berry, Jonathan Makcharoenwoodhi, Alex Gorbatchev, Brian Christensen, Anthony Martorello, Khanh Tran, Edward Beheler, Yuriy Davydov, Rebecca Harrison, Zachary Himes, Taylor Jones, Paul Servodio, Justin Leone, James Poore, Jr., and Kenneth Johnston, individually and on behalf of all others similarly situated, bring this class action against Defendants Huawei Device USA, Inc. ("Huawei") and Google, Inc. ("Google") (collectively "Defendants"), and allege the following.

## SUMMARY OF THE ACTION

1.      This is a consumer protection case on behalf of purchasers of Google Nexus 6P smartphones (the "Phones"). Defects in the Phones give them a propensity to (i) experience an endless bootloop cycle rendering them unresponsive and forever unusable (the "Bootloop Defect") and (ii) suffer severe battery drainage causing them to stop working prematurely, even when the screen indicates ample battery life remains (the "Battery Drain Defect") (collectively, the "Defects"). Thousands of consumers have experienced these Defects, both of which cause the Phones to fail. Defendants' warranties and the remedies thereunder also fail of their essential purpose because Defendants have not been able to remove or resolve the Defects. Each defect existed in the Phones when Defendants marketed and sold them.

2.      The Bootloop Defect often manifests without warning. When it manifests, the Phones go into a death spiral. They suddenly turn off, turn back on, and remain stuck at the Google boot-up screen. At that point, the Phones are completely unresponsive and non-functional—they do not proceed past the start-up screen to the home screen. To the extent photographs and other data on the Phones have not been backed up, these data are permanently lost.

3.      When the Battery Drain Defect manifests, the Phones shut down despite the screen indicator showing remaining battery life of as high as 70-80%. Once shut down, the Phones fail to turn on unless and until they are plugged into a charger. At that point, the screens show remaining battery life at the same level as immediately preceding the shut-off, and the battery soon drains again, causing shut downs in an endless cycle. Cold weather appears to exacerbate this problem.

4.      The Bootloop and Battery Drain Defects have manifested thousands of times, both within and shortly outside the one-year warranty period for the Phones. As a result, consumers across the country have found themselves with Google Nexus 6P smartphones that do not work as intended

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

(or at all). Where the Defects have manifested outside of the warranty period, Defendants have refused to provide any remedy, leaving consumers with the choice of retaining an unreliable, poorly performing Phone or obtaining a repair or replacement at their own cost. Defendants also have repeatedly denied warranty claims of consumers whose Phones experienced the Defects while still under warranty. Defendants have engaged in a pattern and practice of blaming a minor cosmetic issue—such as a cracked bezel or scratched screen on a Phone that was otherwise working fine, but for the Defects—as a pretext to avoid providing warranty service. Similarly, when consumers have contacted Google or Huawei about the Defects, instead of providing assistance, Defendants have routinely stated that the problem is the other Defendants' fault.

5.      Where Defendants have processed warranty claims, they have replaced defective Phones with equally defective Phones of the same model. Further, Defendants have forced consumers to wait several weeks or even several months to receive an accommodation. These excessive delays in Defendants' warranty service have caused consumers, who rely on working cell phones in their daily lives, to lose both time and money. Repaired or replacement phones provided by Defendants suffer from the same Defects and associated problems as the original Phones. As such, numerous consumers have obtained multiple replacement Phones due to the same problems.

6.      At all relevant times, Defendants knew or should have known of the Phones' propensity to experience excessive battery drain and total bootloop failure. Although these Defects involved material facts that would have been highly important to consumers looking to purchase a cell phone, Defendants failed to disclose either defect. This concealment served to induce their sales of the defective Phones and enabled them to later charge the consumers for repairs or new Phones.

7.      Google executives touted the Nexus 6P as superior to the iPhone 6 Plus specifically with regard to its battery charging capabilities. Defendants falsely promoted the Nexus 6P as a high-end smartphone with best-in-class battery charging capabilities and lifespan, as shown in the Google advertisements reproduced on the next page.[1]

---

[1] Images available at: https://www.google.com/nexus/6p/ (last visited April 19, 2017); http://www.androidauthority.com/leaked-presentation-reveals-the-nexus-6p-will-feature-a-big-3450mah-battery-644759/ (last visited April 19, 2017).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15





16

17

18

19

20

21

22

23    8.       As a direct and proximate result of the Defects and Defendants' unfair and deceptive

24    practices relating to them, Plaintiffs have suffered injury in fact and incurred damages, such as

25    monetary costs to repair and replace their Phones. Plaintiffs accordingly seek redress for Defendants'

26    breaches of express and implied warranties and violations of consumer protection law.

27

28

**JURISDICTION AND VENUE**

9.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because it arises under the laws of the United States and pursuant to 28 U.S.C. § 1332(d) because: (i) there are 100 or more class members; (ii) the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and (iii) at least one plaintiff and defendants are citizens of different states. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants transact business and are subject to personal jurisdiction in this district. A substantial part of the conduct giving rise to these claims occurred within this district. Defendants advertised in this district and gained substantial revenue and profits from their sales of Phones in this district.

11.     This Court has personal jurisdiction over Defendants because they have conducted substantial business in this judicial district and intentionally and purposefully placed the Phones into the stream of commerce within this district and throughout the United States.

**PARTIES**

**A.     California Plaintiffs**

**Plaintiff Jonathan Makcharoenwoodhi**

12.     Makcharoenwoodhi is a citizen of California who resides in Monterey Park, California. In or about April 2016, he purchased his Phone from Best Buy (IMEI 867686022575458) for $544.99. The Phone began experiencing the Battery Drain Defect and early shut-off problems in or around February 2017.

13.     At first his phone would start shutting off with 25% battery life purportedly still remaining. The Phone would have approximately 25% battery life, then go to 0% instantaneously and shut off. Over the following months, this issue became worse. Makcharoenwoodhi would charge the Phone fully, but the Phone would turn off with 80-85% battery life purportedly still remaining. If he connected the Phone to a charger and fully charged the Phone, it would turn back on and the battery would operate for approximately 10 minutes before the battery would run out and the Phone would turn off again.

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

14.     Makcharoenwoodhi tried numerous troubleshooting methods, including a factory reset, but none of these methods resolved the problems with his Phone.

15.     Makcharoenwoodhi contacted Huawei in an effort to obtain relief under the warranty. Huawei informed Makcharoenwoodhi that his warranty was voided because his Phone had a small dent by the volume button. This cosmetic flaw had no effect on the Phone's functioning. As a result of Huawei's failure to resolve the Defect in Makcharoenwoodhi's Phone, Makcharoenwoodhi was left with an unreliable Phone with battery life and functionality far worse than he expected when he purchased the device.

16.     Huawei instructed Makcharoenwoodhi that he should seek a repair from a third party, at his own cost. Makcharoenwoodhi bought a new cell phone instead.

17.     Makcharoenwoodhi suffered ascertainable loss as a direct and proximate result of the Battery Drain Defect and Defendants' concealment of this defect, including loss of use, payment for a new placement phone, and diminished value.

18.     Makcharoenwoodhi would not have purchased his Phone had he known that it contained the Battery Drain Defect.

**Plaintiff Alex Gorbatchev**

19.     Gorbatchev is a citizen of California who resides in Oakland, California. On October 29, 2015, he purchased a Google Nexus 6P smartphone from the Google Store. Gorbatchev paid $546.40 for his Phone (serial number 510KPNY0013975).

20.     During his first few months of owning the Phone, Gorbatchev regularly experienced incidents in which it would suddenly shut down and restart without warning, sometimes on a daily basis.

21.     On the morning of March 17, 2017, Gorbatchev attempted to use his Phone to request a car ride using the Uber app. When he pressed the screen to submit his request for a ride, his Nexus 6P froze and stopped responding to touch for ten to fifteen seconds. After this brief pause, the Phone's screen went black and then cycled through the boot-up process to a screen showing the Google logo. The boot-up process stalled at this screen, again going black before proceeding to the

Google logo screen and going black again. The Phone continued to repeat this loop ceaselessly for much of the day.

22.     Later that day, Gorbatchev learned his Uber request was processed before the Phone entered the bootloop. Uber consequently charged him a cancellation fee.

23.     That same day, Gorbatchev contacted Google's customer technical support. A Google representative told him that his warranty had expired and that Google would not provide him with any relief.

24.     Gorbatchev's Phone never proceeded past the Google logo screen again.

25.     Gorbatchev purchased a new phone to replace his inoperable Nexus 6P.

26.     Gorbatchev suffered ascertainable loss as a direct and proximate result of the Bootloop Defect and Defendants' concealment of this defect, including loss of use, payment for a new replacement phone, and diminished value of his Phone.

27.     Gorbatchev would not have purchased his Phone had he known that it contained the Bootloop Defect.

**Plaintiff Brian Christensen**

28.     Christensen is a citizen and resident of California. On or about November 27, 2015, Christensen purchased his Google Nexus 6P Phone directly from Huawei. He paid $700.93 for his Phone (IMEI 867980020315169). Huawei shipped the Phone to Christensen on December 9, 2015.

29.     Christensen's Phone began malfunctioning in early December 2016 when it experienced the Battery Drain Defect. It would power down without warning despite showing a battery charge of as high as 27%.

30.     Christensen contacted Google customer service about the issue. He learned from Google that there was a known hardware defect with the Nexus 6P, but Google would not provide any support because Christensen purchased the Phone directly from Huawei.

31.     Christensen next contacted Huawei. A Huawei representative informed him that the problems with the Nexus 6P were software related and that Huawei could not help him.

32.     Approximately two weeks after these calls, the Phone manifested the Bootloop Defect—the phone would reboot continuously to the "Google" screen, failing to turn on.

33.     Christensen again contacted Huawei, and was refused customer service on the basis that the Phone's warranty had expired. Christensen then participated in a three-way call with Google and Huawei. During this call, a Google representative stated that Christensen's Nexus 6P failed because of a known hardware defect. The Huawei representative responded by offering to handle the call.

34.     Google's representative then left the call, after which Huawei's representative told Christensen that Huawei would not repair or replace his Phone because his warranty had expired. Christensen even offered to pay for the cost of repairs, but the Huawei representative said there was nothing Huawei could do for him.

35.     Defendants have done nothing to fix the problems with Christensen's Phone and have not offered or provided an adequate remedy.

36.     Christensen suffered ascertainable loss as a direct and proximate result of the Bootloop Defect and Defendants' concealment of this defect, including loss of use, out-of-pocket losses, and diminished value.

37.     Christensen would not have purchased his Phone had he known that it contained the Bootloop Defect.

**B.     Florida Plaintiff**

**Plaintiff Anthony Martorello**

38.     Martorello is a citizen and resident of Florida. On May 24, 2016 he purchased a Google Nexus 6P smartphone directly from Google (IMEI 867979021949067). Martorello paid $549 for his Phone, in addition to a Nexus Protect insurance plan for which he paid an additional $89.

39.     On or around June 7, 2016, Martorello began experiencing the Battery Drain Defect shortly after he downloaded an update from Google to his Phone's software. His Phone's battery frequently drained to 60% shortly after he unplugged it from the charger. When plugged back in, the Phone almost immediately returned to a 100% charge. The Phone also experienced early shut offs, often shutting off when the battery retained a charge as high as 80%. This problem frequently occurred. After these shut down incidents, Martorello's Phone would not power back on unless it was plugged into a charger.

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

40.     On or around July 7, 2016, Martorello experienced the Bootloop Defect. His Phone randomly shut off, then proceeded through the boot up process, stalled before fully turning on, and then shut down again, repeating this loop *ad infinitum* until he shut the Phone down completely.

41.     On July 16, 2016, Martorello contacted Google regarding his bootlooped Phone. The Google representative informed him Google could not provide him with a solution and direction him to contact Huawei for warranty coverage.

42.     Also on July 16, 2016, Martorello emailed Huawei to make a warranty claim for his bootlooped Phone. The Huawei representative offered him various ineffective troubleshooting suggestions but no further assistance or relief. The Huawei representative then suggested Martorello contact Google, because the Phone's IMEI number showed the Phone was within Google's one-year warranty and Google was the only entity that could process the return.

43.     On July 19, 2016, Martorello again contacted Google to make a warranty claim. The Google representative again informed Martorello that Google could offer no solution.

44.     Although Martorello experienced the Bootloop Defect less than a year after purchasing the Phone—within the warranty period—he was denied warranty coverage by both Google and Huawei.

45.     Martorello purchased a new Google Nexus 6P at a cost of $549.

46.     On or around January 26, 2017, Martorello began experiencing the Battery Drain Defect in his second Phone shortly after he downloaded an update from Google to his Phone's software. His Phone's battery frequently drained to 60% shortly after he unplugged it from the charger.

47.     Days after the Battery Drain Defect manifested in his second Phone, Martorello experienced the Bootloop Defect again.

48.     On February 5, 2017, Martorello made a claim under his Nexus Protect insurance. He paid a deductible of $89.99 and received a refurbished Phone.

49.     Martorello's refurbished Phone also suffers from the Battery Drain Defect and his Phone's battery drains much more quickly than normal. The Phone also experiences random shut downs, much like the one that precipitated the bootloop and total failure of his first Phone.

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

50.     Martorello suffered ascertainable loss as a direct and proximate result of the Bootloop and Battery Drain Defects and Defendants' concealment of these defects, including lost time, loss of use, out-of-pocket losses, and diminished value.

51.     Martorello would not have purchased his Phone had he known that it contained the Bootloop and Battery Drain Defects.

**C.     Illinois Plaintiff**

**Plaintiff Khanh Tran**

52.     Tran is a citizen of Illinois who resides in Chicago, Illinois. Tran saw online advertisements representing that the Google Nexus 6P had a superior battery life. These advertisements materially influenced Tran's decision to purchase a Nexus 6P Phone for $672, through the Google Store, on or about January 25, 2016 (IMEI 867979020909724), inclusive of a Nexus Protect insurance plan for which he paid $89.

53.     Tran's Phone worked normally until the end of February 2017—mere weeks after his warranty period lapsed—when the Phone began shutting down randomly. Tran ran the Phone through recovery mode and was able to recover personal data. The Phone then worked for approximately a day, after which the Bootloop Defect manifested and rendered Tran's Phone useless.

54.     Tran contacted Google support and was informed that he needed to file a Nexus Protect insurance claim and pay a deductible in order to obtain a refurbished replacement device.

55.     Tran paid a $79 deductible. He received a refurbished Phone in March 2017.

56.     Tran suffered ascertainable loss as a direct and proximate result of the Bootloop Defect and Defendants' concealment of this defect, including lost time, loss of use, payment of a deductible, and diminished value.

57.     Tran would not have purchased his Phone had he known that it contained the Bootloop Defect.

**D.     Indiana Plaintiff**

**Plaintiff Edward Beheler**

58.     Beheler is a citizen of Indiana who resides in Lafayette, Indiana. On July 12, 2016, he purchased a Google Nexus 6P smartphone from Amazon (IMEI 867979022017799). Beheler paid

9

$509.99 for his Phone. He also bought a Huawei smartwatch for $299.95 in the same transaction. As part of Amazon's "Prime Day" promotion, he received a $230.20 discount on the transaction total.

59.     The Nexus 6P's purportedly long battery life factored heavily into Beheler's decision to purchase this Phone. In the months following his purchase, his Nexus 6P's battery operated satisfactorily and generally held a charge from morning until evening.

60.     In or around March 2017, Beheler began to experience sudden and severe drain of his Nexus 6P's battery. The Phone's battery life became very short—the Phone started running out of battery and turning off shortly after being taken off a charger, often turning off when the battery had as much as 70% of its charge remaining and sometimes even as much as 90%. In less than one hour his Phone would go from a fully charged battery to shutting down, despite being in safe mode with Google's Chrome browser the only open application. When plugged back in, the Phone would show the same battery charge level as immediately prior to its shutting down.

61.     The below April 2017 screenshot of Beheler's Phone demonstrates the sudden shut off, even where the Phone shows a relatively high battery charge, followed by the restoration of battery charge, after the Phone is connected to A/C power, to the same level indicated prior to the shut off:



10

62.     On April 3, 2017, Beheler took a business trip to a factory in Kansas in which he was unable to charge his Nexus 6P frequently. He experienced several battery drains and shut offs during a short period. On April 5, 2017, prior to a business dinner, Beheler's Phone was fully charged, but midway through the dinner the battery suddenly drained and the Phone shut off. On April 7, 2017, the Phone again died several times in the span of a few hours while Beheler was trying to use it in an airport.

63.     Beheler contacted Google's customer support after his business trip. The Google representative walked him through some troubleshooting steps, and stated that the Phone was defective and needed to be replaced due to a hardware defect. But Google would not provide any assistance or relief, on the basis that Beheler bought the Phone from Amazon instead of Google. The Google representative told him to contact Huawei's customer support.

64.     On or about April 11, 2017, Beheler called Huawei's customer support. A Huawei representative agreed that the Phone was defective, and told Beheler that he could send the Phone in to be repaired or replaced.

65.     Through online research, Beheler found that consumers were reporting that Huawei's repair department was overwhelmed by warranty claims and repairs related to the Defects, with some consumers reporting that they had gone without a phone for up to four weeks. Because of his work and family obligations, Beheler cannot go without a cell phone or other means of contact for such an extended period of time.

66.     Beheler contacted Google customer support several more times about his Phone's severe battery drain. Each Google representative reiterated Google's refusal to provide any form of service or support for a Nexus 6P not purchased directly through the Google Store, and that Beheler should direct his concerns to Huawei.

67.     Beheler recently bought an iPhone for $250 to replace his Nexus 6P.

68.     Beheler suffered ascertainable loss as a direct and proximate result of the Bootloop Defect and Defendants' misrepresentations and omissions relating to this defect, including lost time, loss of use, purchase of a replacement phone, and diminished value.

69.    Beheler would not have purchased his Phone had he known that it contained the Battery Drain Defect.

**E.    Michigan Plaintiff**

**Plaintiff Roy Berry**

70.    Berry is a citizen of Michigan who resides in Pinckney, Michigan. On or about November 3, 2015, he purchased his Google Nexus 6P Phone on the Google Store. Berry paid $776.94 for his Phone (IMEI 867980020165655), inclusive of a Nexus Protect plan for which he paid $89.

71.    Approximately six months after his purchase, while his Phone was still under warranty, Berry's Phone began experiencing the Battery Drain Defect: the Phone would shut off with approximately 20-30% battery life remaining. When this happened, Berry would need to put his Phone on a charger to get it to turn on again.

72.    Berry contacted Google support and was told that Google would fix the problem with its next software update. The problem persisted, however, and Berry later learned that Google deems the Battery Drain Defect an "unwarrantable issue."

73.    While his Phone was still under warranty, Berry contacted Google to discuss his options. Google advised him to file an insurance claim and state that he had experienced a power port issue (even though his problem stemmed from his Phone battery) so that his Nexus Protect plan claim would be approved. Google informed that once the claim was approved, Berry would need to pay an insurance deductible before receiving a refurbished Phone.

74.    Berry filed a claim under his Nexus Protect plan and paid an $89 deductible. He received a refurbished Phone in early February 2017.

75.    Approximately two months after receiving his replacement Phone, Berry experienced the Bootloop Defect. He contacted Google support and was advised to wipe user data and flash the factory image, but neither troubleshooting method worked. After Berry had tried everything Google suggested, Google told Berry that Google could not do anything more for him free of charge, and that he must either pay a fee for a repair or contact Huawei.

76.   Berry paid $687.94 to obtain a new (third) Phone from Google, which he received in or about mid-April 2017.

77.   Berry suffered ascertainable loss as a direct and proximate result of the Battery Drain and Bootloop Defects and Defendants' concealment of these defects, including lost time, loss of use, purchase of a replacement phone, and diminished value.

78.   Berry would not have purchased his Phone had he known that it contained the Battery Drain and Bootloop Defects.

**F.     New York Plaintiff**

**Plaintiff Yuriy Davydov**

79.   Davydov is a citizen of New York who resides in Rego Park, New York. On or about December 21, 2015, Davydov purchased his Google Nexus 6P Phone through Amazon. He paid $557.35 for his Phone (IMEI 867979020959901) together with a Nexus 6P case for it.

80.   Within a few months, Davydov noticed that the Phone's battery had begun depleting more quickly than usual. With each software update, the problem became worse.

81.   Approximately six months into owning his Phone, Davydov began to notice additional power problems with the Phone. It randomly turned on and off throughout the day. When Davydov was talking on the Phone, calls suddenly dropped and the Phone turned off without warning. Davydov performed a factory reset of the Phone, but this did not help.

82.   The next month, Davydov started noticing that the Phone would completely turn off despite showing approximately 20% battery life remaining. When this happened, he needed to plug the Phone into a charger to get it to reboot.

83.   Davydov contacted Google about these problems and was told that Google could do nothing to help because he did not buy the Phone from Google. Google told Davydov to contact Huawei.

84.   Davydov then spoke with a Huawei support technician who recommended a series of troubleshooting methods, none of which succeeded in fixing the problems with the Phone. Instead, Davydov again had to plug the Phone into a charger to get it to turn on.

85.     During this call, the Huawei representative informed Davydov that slightly over a month remained on his warranty and he could send his Phone in for possible warranty repair or replacement, but that Huawei could not guarantee that the service would be free. The Huawei representative further disclosed that this process could take at least a month and Huawei does not provide loaner or temporary phones. The Huawei representative suggested that, instead, Davydov might buy a temporary phone to use during the month (or longer period) in which Huawei would be examining his Phone, and then simply return the temporary phone later. Because Davydov could not go a month without a phone, he declined to send his Phone to Huawei for possible repair or replacement.

86.     Davydov's Phone still experiences the Battery Drain Defect. To keep the Phone operable, he is forced to carry around a 12000 mAh portable battery, which is the size of his Phone.

87.     Davydov is now burdened with an unreliable Phone that achieves only a portion of the battery life that he thought it would when he purchased the device. Defendants have done nothing to correct the problems with his Phone and have failed to offer or provide an adequate remedy. Davydov has had to purchase a new Phone due to the unreliability of his Nexus 6P Phone.

88.     Davydov suffered ascertainable loss as a direct and proximate result of the Battery Drain Defect and Defendants' concealment of it, including lost time, loss of use, payment for the portable battery to keep the Phone operational, and diminished value.

89.     Davydov would not have purchased his Phone had he known that it contained the Battery Drain Defect.

**G.    North Carolina Plaintiffs**

**Plaintiff Rebecca Harrison**

90.     Harrison is a citizen of North Carolina who resides in Asheville, North Carolina.

91.     Harrison saw advertisements representing that the Nexus 6P's battery life was very good and touting the Nexus 6P as Google's top-of-the-line phone. These advertisements materially influenced Harrison's decision to purchase a Nexus 6P Phone for $552.99, through Amazon, on or about April 11, 2016 (IMEI 867979021864183).

92.    Beginning in around February 2017, Harrison's Phone began shutting down unexpectedly, exhibiting the Battery Drain Defect. Her Phone shuts down with anywhere between 30-80% battery life remaining. Once the Phone turns off, Harrison must attach it to a charger to get it to turn back on, and when it does turn on, the Phone displays the approximately the same battery life as was displayed just before the early shut-off.

93.    This problem creates a significant burden for Harrison as she is a realtor who routinely uses her Phone for work, including by communicating via e-mail and text message, taking and reviewing photos, and accessing the SentriLock system to obtain entry to homes listed for sale. The Battery Drain Defect has caused Harrison's Phone to malfunction and turn off in the middle of many work-related appointments.

94.    On March 19, 2017, Harrison called Huawei to make a warranty claim. The Huawei representative told Harrison that she would receive an e-mail requesting information, and would need to respond to the information request in order to get a shipping label for return merchandise authorization. Harrison sent in the requested information but has yet to hear back from Huawei. Nor has Huawei responded to her follow-up e-mails. Thus, despite its promises, Huawei has failed to provide a remedy for Harrison's defective Phone.

95.    Harrison also contacted Amazon, whose representative informed her that her only option at this point would be to return the Phone for a partial refund.

96.    Harrison purchased a replacement battery, for $75, on March 28, 2017.

97.    Harrison suffered ascertainable loss as a direct and proximate result of the Battery Drain Defect and Defendants' concealment of it, including lost time, loss of use, payment for the replacement battery, and diminished value.

98.    Harrison would not have purchased her Phone had she known that contained the Battery Drain Defect.

**Plaintiff Zachary Himes**

99.    Himes is a citizen of North Carolina who resides in Midland, North Carolina. On March 25, 2016, he purchased a Google Nexus 6P smartphone from Best Buy (IMEI 867686022513335). He paid $449.99 for his Phone.

15

100. In or around January 2017, the battery in Himes's Phone began shutting down while the screen still showed a charge on the battery.

101. As time wore on, Himes began experiencing shut-offs at higher and higher percentages of battery charge. Within a few weeks after the early shut-off problem started, the Phone was turning off regularly at around a 30% battery charge.

102. In February 2016, Himes contacted Google about these problems. Google suggested several troubleshooting steps, none of which succeeded in resolving the problems.

103. Himes contacted Google by e-mail on February 8, 2017, after Google's troubleshooting steps proved ineffective, and was advised that he needed to contact the manufacturer, Huawei. On February 10, 2017, Himes contacted Huawei about his battery problems. Huawei also suggested several troubleshooting steps, none of which succeeded in fixing his battery problems.

104. Himes followed up with Huawei again after these steps failed to resolve the problems. The Huawei representative informed him the device would require a software update to return to normal functioning, and that such a software update would be forthcoming shortly, after which the problem would be resolved. Himes never received any such update.

105. The problems with Himes's Phone have continued to worsen. His Phone is now essentially a landline—it must be plugged into a power source to work. If he tries to use Phone while not plugged in, the battery usually dies within minutes. The Phone can then only be turned back on by plugging it in, and when the Phone subsequently turns on, it usually shows at least 80% battery remaining.

106. Himes's Phone has even died several times while plugged into a power source.

107. Even in "safe mode," which only allows the Phone to perform basic functions, such as phone calls and texting, Himes's Phone often still shuts off with a significant amount of battery remaining.

108. Himes is now burdened with a Phone that is reliable only in its dysfunction and which achieves only a portion of the battery life he expected at the time of purchase. This issue has become so disruptive for Himes that Himes has been forced to purchase a new phone. Because he could only

afford half of the price of the new phone, he was forced to finance the remaining price of the new phone.

109.    Himes suffered ascertainable loss as a direct and proximate result of the Battery Drain Defect and Defendants' concealment of it, including lost time, loss of use, and diminished value.

110.    Himes would not have purchased his Phone had he known that contained the Battery Drain Defect.

**H.     North Dakota Plaintiff**

**Plaintiff Taylor Jones**

111.    Jones is a citizen of North Dakota who resides in Grand Forks, North Dakota. On or about January 13, 2016, he purchased his Phone through Google. Jones paid $649 for the Phone (IMEI 867980020268988).

112.    Jones began experiencing severe battery drain and early shut-off in his Phone approximately nine months after his purchase. His Phone shut down without warning any time the battery dropped below a 30% charge. When the Phone was exposed to cold or freezing temperatures, the early shut-off often occurred with a battery charge of as high as 80%.

113.    Jones contacted Google, which sent him a replacement Phone. Before starting to use this new Phone, Jones tested it to see if it would exhibit the same problems. He fully charged and then discharged the replacement Phone to determine if it would experience early shut-off and, if so, at what battery charge percentage. This testing revealed that the replacement Phone had the same problem as his initial Phone. Therefore, on or about February 28, 2017, Jones contacted Google again, requesting to send back the replacement device. Google indicated that it would send a refurbished device to Jones when it received the first replacement Phone.

114.    Thereafter, Jones experienced the same severe battery drain and early shut-off incidents with his second replacement Phone. On or about March 10, 2017, Jones contacted Google to request a non-defective replacement. This time, Google informed Jones that it was refusing to provide another replacement because his original Phone was out of warranty. By that point, however, Google had already sent him multiple Phones after his initial warranty had expired, each of which was defective.

115.   On March 21, 2017, Jones escalated his complaint to a supervisor, who explained that Google has a policy and practice of providing only a limited number of device replacements before referring Nexus 6P customers to Huawei. The Google supervisor stated that the Battery Drain Defect was "not in fact a software issue. It is a hardware issue caused by the battery."

116.   By this point, Huawei's warranty had expired. Because Jones could not rely on the Nexus 6P for day-to-day operation—it had become useless to him—he purchased a new cell phone. He sold his replacement Nexus 6P for a loss, at approximately $360 (well below what Jones paid for his Phone).

117.   Jones suffered ascertainable loss as a direct and proximate result of the Battery Drain Defect and Defendants' concealment of it, including lost time, loss of use, payment for a replacement phone, and diminished resale value.

118.   Jones would not have purchased his Phone had he known that it contained the Battery Drain Defect.

## I.   Ohio Plaintiff

**Plaintiff Paul Servodio**

119.   Servodio is a citizen of Ohio who resides in Akron, Ohio. On or about March 12, 2016, he purchased his Phone through Newegg. Servodio paid $452.99 for his Phone (IMEI 867686022413478).

120.   While on vacation, on February 15, 2017, Servodio's Phone unexpectedly shut down when he was in the middle of sending a text message. The battery showed an approximately 30% charge. The Phone then started to re-boot, but never completed the boot cycle. Over a two-hour drive, Servodio tried to charge the Phone and restart it several times, to no avail.

121.   That same day Servodio called Google's Project Fi support. Heather at Google walked him through various troubleshooting steps, none of which worked. Heather said that his Phone may have been experiencing the infinite bootloop problem, but she could not be sure. She suggested that Servodio call Project Fi later, when he had access to a computer. Later in the day, Servodio called Project Fi again, and again tried the same troubleshooting methods at Google's advice. None of these methods succeeded in bringing his Phone back to life. Servodio was transferred to an employee in

hardware support who informed him that the Phone was experiencing the Bootloop Defect and he should call Huawei.

122.    Huawei determined that Servodio's Phone qualified for refurbishment. Servodio was told he would receive an e-mail with instructions concerning the process to receive a refurbished Phone. He was issued Huawei Ticket/Issues number T486035-021517. Later that night Servodio received an e-mail from Huawei requesting that he take pictures of his Phone and provide other details, which Servodio did. Huawei told Servodio it would take at least 10 days for the necessary repairs to be made and for his repaired Phone to arrive at his home. Servodio indicated that this was unacceptable because he was on vacation for another 13 days, owns a business, and cannot go without access to a cell phone. Huawei refused to expedite the repairs or to ship Servodio a loaner Phone to use in the interim. Servodio was then transferred to a Huawei supervisor, Lidia, who reviewed the photos he had sent of his Phone and saw a small dent on its side. Lidia then told Servodio that Huawei could not guarantee the return process would be authorized or that any refurbished Phone would work, given the small dent. Servodio said that he nonetheless wanted to go forward with the repair process.

123.    After the call with Huawei, Servodio spoke to Google again and was offered $30.00 off the purchase of a new phone, and a statement credit equivalent to expedited shipping. Servodio agreed and purchased a new Pixel 32G for $649.00. He received the new phone and Project Fi SIM card on February 17, 2017.

124.    Later that night, Servodio received an e-mail from Lidia at Huawei. Her message stated that after she had reviewed the photos of the Nexus 6P (and its IMEI number), she had determined that Servodio's Phone was not eligible for warranty coverage (even though the Phone remained within the 12-month warranty). Although Servodio responded to the e-mail the next day, he never received a response from Lidia or from anyone else at Huawei.

125.    The failure of his Phone caused Servodio to miss e-mails from airlines concerning flights for the second leg of his vacation. As a result, he was forced to make new flight, hotel, and rental car arrangements, at considerable expense.

126. Servodio suffered ascertainable loss as a direct and proximate result of the Bootloop Defect and Defendants' concealment of it, including lost time, loss of use, travel expenses, and diminished value.

127. Servodio would not have purchased his Phone had he known that it contained the Bootloop Defect.

**J.    Pennsylvania Plaintiff**

**Plaintiff Justin Leone**

128. Leone is a citizen of Pennsylvania who resides in Monroeville, Pennsylvania.

129. Leone watched the live stream of the Nexus 6P release event in San Francisco and was exposed to Google's representations regarding the Phone at that event. Based on those representations, Leone understood that one of Google's main selling points for the Phone was its superior battery life.

130. On or about October 5, 2015, partly in reliance on Google's representations regarding the Phone's battery life, Leone purchased his Phone through the Google Store. Leone paid $623.28 for his Phone (IMEI 867686020737555), inclusive of a Nexus Protect plan for which he paid $89.

131. In late September 2016, while still under warranty, Leone's Phone manifested the Battery Drain Defect. His Phone shut off at random while he was using it, with anywhere from 40-80% battery charge showing. This happened a few times a week, more often when the weather was cold.

132. After Leone upgraded to Android Nougat, the Battery Drain Defect began occurring much more often, almost daily. Leone tried flashing the latest factory image from Google, to no avail.

133. Leone contacted Google support on December 14, 2016, in an effort to get his Phone repaired or replaced. But, because Leone's Phone had cosmetic damage (screen scratches, dents in the metal frame, cracked rear glass), Google refused to provide any repair or replacement and transferred him to Nexus Protect.

134. Google represented to Leone that he would have been eligible for an extended warranty for the battery drain problems if not for the cosmetic damage to his Phone. This cosmetic damage had no effect on his Phone's functionality.

135.    Through Nexus Protect, Leone paid a $79 deductible to have his Phone replaced based on physical damage (rather than the Defect).

136.    Not long after receiving his replacement Nexus 6P Phone in early January 2017, Leone again began experiencing the Battery Drain Defect. His Phone shuts off with anywhere between 20-100% battery life remaining. Sometimes after Leone removes his Phone from the charger, the Phone turns off within a few minutes.

137.    When Leone's Phone experiences these early shut-off problems due to the Battery Drain Defect, the Phone will not power back on unless and until it is connected to a charger. Once the Phone turns back on, the battery indicator does not show any material loss in battery power—the percentage charge is right around its level immediately prior to the shut-off.

138.    Leone's Phone experiences battery drain incidents almost daily and sometimes multiple times a day, sometimes only lasting for mere minutes before failure.

139.    Leone is stuck with an unreliable Phone that achieves only a portion of the battery life that he thought it would when he purchased the device.

140.    Leone suffered ascertainable loss as a direct and proximate result of the Battery Drain Defect and Defendants' concealment of it, including lost time, loss of use, and diminished value.

141.    Leone would not have purchased his Phone had he known that contained the Battery Drain Defect.

**K.    Texas Plaintiff**

**Plaintiff James Poore, Jr.**

142.    Poore is a citizen of Texas who resides in Austin, Texas. In or about February 2016, he purchased his Phone from Huawei through Amazon. Poore paid $604.02 for his Phone (IMEI 867979021283293).

143.    In or around October and November 2016, Poore's Phone began manifesting the Battery Drain Defect. The Phone would turn off despite 10-15% battery life showing. When this occurred, the Phone would not turn back on unless and until it was plugged into a charger.

144.    When Poore's Phone would power back on, the display would show that the Phone had roughly the same remaining battery life as when it experienced the shutoff.

145.   During the next few months, this problem worsened. Currently, Poore's Phone will power off with 25-30% battery charge remaining, and will not turn back on unless plugged into power.

146.   During a trip to Seattle in January 2017, Poore's Phone powered off with 45% battery remaining. At the time of this incident, Poore needed to use his Phone to request an Uber ride for an important appointment, but could not do so because the Phone unexpectedly failed.

147.   While his Phone was still covered by the one-year warranty, Poore contacted Huawei to request that his Phone be repaired or replaced. Huawei informed Poore that the issue was "still under investigation" and that Huawei would not authorize (and was not authorizing) repairs or replacements for these battery problems. Huawei advised Poore to contact Google.

148.   When Poore called Google, a Google representative told him that since he had not bought the Phone through the Google Play Store, Google was refusing to provide any repair or replacement. The Google representative told Poore that he needed to contact Huawei.

149.   Poore is now stuck with a Phone that is unreliable and achieves only a portion of the battery life that he thought it would when he purchased the device. Instead of taking any steps to make Poore whole, Defendants have blamed each other.

150.   Poore suffered ascertainable loss as a direct and proximate result of the Battery Drain Defect and Defendants' concealment of it, including lost time, loss of use, and diminished value.

151.   Poore would not have purchased his Phone had he known that it contained the Battery Drain Defect.

**L.     Washington Plaintiff**

**Plaintiff Kenneth Johnston**

152.   Johnston is a citizen of Washington who resides in Spokane Valley, Washington.

153.   Johnston viewed television and online advertisements regarding the Nexus 6P Phone. The advertisements that Johnson viewed promoted the Phone in part on the basis of its superior battery life. These advertisements materially influenced Johnston's decision to purchase a Nexus 6P Phone for $489.14, from Best Buy, in October 2016 (IMEI 86768602288042).

154.    In or around December 2016, Johnston's Phone began experiencing intermittent, random reboots. Around the same time, the battery on his Phone began failing even when a charge remained on the battery—generally when it reached a 30-40% charge.

155.    In mid-December, Johnston contacted Google, whose representative told him that Google does not provide support for these battery problems and that he should contact Huawei.

156.    Thereafter, a Huawei representative offered Johnston two options: (1) uninstall all non-factory apps that did not come with the Phone, which might solve the problem; or (2) send the Phone to Huawei and for troubleshooting. Johnston further learned that if he were to choose option (2), he would be left indefinitely without a smartphone while Huawei attempted to identify and solve the problem.

157.    Johnston is now burdened with a Phone that is reliable only in its dysfunction and achieves only a portion of the battery life that he expected at the time of purchase. On April 18, 2017, Johnston's Phone shut down without warning in the middle of the night, causing him to be extremely late to work and nearly costing him his job and livelihood. Johnston's Phone continues to experience random reboots and shut-offs from early battery drain.

158.    Johnston suffered ascertainable loss as a direct and proximate result of the Battery Drain Defect and Defendants' concealment of it, including lost time, loss of use, and diminished value.

159.    Johnston would not have purchased his Phone had he known that contained a Battery Drain Defect.

**M.    Defendants**

160.    Defendant Huawei Device USA, Inc. is a corporation organized and existing under the laws of the state of Texas, with its principal place of business located at 5700 Tennyson Parkway, Suite 500 Plano, Texas 75024.

161.    Defendant Google, Inc. is a corporation organized and existing under the laws of the state of Delaware, with its principal place of business located at 1600 Amphitheatre Parkway, Mountain View, California 94043.

162.    Defendants, and each of them, are now, and/or at all times mentioned in this complaint were legally responsible for the events, happenings and circumstances alleged in this complaint. Defendants proximately caused Plaintiffs and all others similarly situated to be subjected to the unlawful practices, wrongs, complaints, injuries, and damages alleged in this complaint.

163.    Defendants, and each of them, at all times mentioned in this complaint concurred and contributed to the various acts and omissions of the other Defendant in proximately causing the complaints, injuries, and damages alleged in this complaint. Defendants, and each of them, at all times mentioned in this complaint approved of, condoned and/or otherwise ratified each of the acts and omissions described in this complaint.

164.    Defendants, and each of them, at all times mentioned in this complaint aided and abetted the acts and omissions of the other Defendant thereby proximately causing the damages set forth in this complaint.

## COMMON FACTUAL ALLEGATIONS

**A.**    **The Google Nexus 6P**

165.    On September 29, 2015, in San Francisco, California, Google unveiled the newest version of its Nexus 6 smartphone, called the Nexus 6P. In conjunction with its release, Google touted the Nexus 6P as its "most premium phone yet."[2] The Nexus 6P resulted from a collaborative effort between Google and Huawei and displays trademarks from both companies. Huawei manufactured the device and Google developed its software. Both companies market and distribute the Phones.

166.    Defendants released the Nexus 6P for pre-order on September 29, 2015 through the Google Store in the United States, United Kingdom, Ireland, and Japan, with release in additional countries in the weeks that followed.[3] Images of the Nexus 6P from advertisements appear below.

---

[2] http://www.theverge.com/2015/9/29/9410551/google-nexus-6p-announced-size-price-release-date (last visited April 14, 2017).
[3] http://www.androidpolice.com/2015/09/28/exclusive-nexus-6p-will-be-available-for-pre-order-on-september-29th-starting-499-99-in-the-u-s-uk-ireland-canada-and-japan/ (last visited April 14, 2017).

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF





CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

167.    The Nexus 6P has a 5.7-inch WQHD display and a completely new design, at 7.3mm thick.[4] The Nexus 6P is equipped with a 3450mAh battery, dual front-facing speakers, and the Snapdragon 810 v2.1 processor.[5] The front of the Nexus 6P contains an 8-megapixel camera that Defendants advertised as optimized for indoor photography and featuring slow-motion video, 4K video, and burst mode for photos.[6]

168.    Nexus 6P Phones are premium smartphones. Defendants priced the Phones at $499 (32 GB), $549 (64 GB), and $649 (128 GB).[7] Further, Defendants marketed the Nexus 6P as "unlocked," meaning that consumers could use it with many different carriers without being required to enter into a particular cellular service agreement.[8] Defendants sell the Phones to consumers directly as well as through authorized retailers, including Newegg and Best Buy.

169.    At the Nexus 6P launch event, Google claimed that the Nexus 6P would possess best-in-class features, including ultra-fast battery charging by which it would charge twice as fast as the iPhone 6 Plus.[9] Google's Vice President of Engineering Dave Burke stated that the Nexus 6P is:

- "the most advanced Android software built into innovative hardware";
- "the very latest and best in material design"; and
- capable of "charg[ing] fully in about half the time of an iPhone 6 Plus."[10]

170.    Google's Product Management Director Sabrina Ellis also discussed the Nexus Protect insurance package at the launch event. Ellis characterized Nexus Protect as providing coverage for those "drops, spills, and cracks we all worry about." She stated that because Nexus

---

[4] http://www.theverge.com/2015/9/29/9410551/google-nexus-6p-announced-size-price-release-date (last visited April 14, 2017).
[5] http://www.androidpolice.com/2015/09/28/exclusive-nexus-6p-will-be-available-for-pre-order-on-september-29th-starting-499-99-in-the-u-s-uk-ireland-canada-and-japan/ (last visited April 14, 2017).
[6] http://www.theverge.com/2015/9/29/9410551/google-nexus-6p-announced-size-price-release-date (last visited April 14, 2017).
[7] Id., at embedded videos.
[8] Id.
[9] Id.
[10] https://www.youtube.com/watch?v=-THMyqbmiYk (last visited April 14, 2017).

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

1    Protect support would be offered 24/7, consumers with valid claims would "get a new device as early
2    as the next business day."[11]

3        171.    As recently as April 2017, Google's website advertised the Nexus 6P as containing a
4    battery that "keeps you talking, texting, and apping into the night."[12]

5        172.    Neither Google's nor Huawei's website mentions the Battery Drain Defect or the
6    Bootloop Defect.

7    **B.    The Widespread Bootloop and Battery Drain Defects Become Apparent**

8        173.    Unbeknownst to consumers, Nexus 6P Phones suffer from two Defects that inevitably
9    cause the Phones to experience either total failure (*i.e.*, the Bootloop Defect) or severe battery
10   drainage with early shut-off (*i.e.*, the Battery Drain Defect).

11       174.    When the Bootloop Defect manifests, the Phone unexpectedly turn off, and upon
12   turning back on get stuck in the bootup process, failing to proceed beyond the start-up screen.

13       175.    A bootlooped Phone is thus essentially an expensive paperweight. Once the Bootloop
14   Defect occurs, the Phones no longer operate and cannot be used to make calls, send text messages,
15   access the internet, or perform any other function. Consumers permanently lose all access to any data
16   or information stored on their Phone, including photographs, videos, text messages, and contact lists,
17   to the extent such data have not been backed up. Consumer complaints of bootlooping in the Nexus
18   6P began appearing online at least as early as September 2016.

19       176.    The Battery Drain Defect in the Phones has also caused widespread problems in the
20   form of severely diminished battery life and premature shut-off incidents.

21       177.    When the Battery Drain Defect manifests, consumers experience a complete loss of
22   operability in their Phones, even though the screens show that the battery is still partially (and in
23   some cases almost fully) charged. Consumers report having the same experience: the Phone will be
24   working fine, and the battery will show a partial charge remaining (*e.g.*, between 15-45%) when
25   suddenly, the Phone turns off and will not turn back on. This problem sometimes occurs with as much
26   as 80-90% battery life remaining.

27   _____

[11] http://www.theverge.com/2015/9/29/9410551/google-nexus-6p-announced-size-price-release-date
28   (last visited April 14, 2017), at embedded video.
[12] https://www.google.com/nexus/6p/ (last visited April 14, 2017).

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

178.     The early shut-off occurs contemporaneously with the battery drain; when this happens, the consumer can get the Phone to turn back on only by plugging it into a charger or other power source. Eventually, after being on a charger for some period of time, the Phone turns back on and the screen indicates that the battery has nearly the same or similar charge as the screen indicated just before the premature shut-off.

179.     Cold weather appears to exacerbate the Battery Drain Defect and early shut-off problems. The Battery Drain Defect manifested more often and at higher charges in Plaintiffs Jones's and Leone's Phones at colder temperatures.

180.     By causing the Phones to stop working unexpectedly, the Defects raise serious safety concerns. One Nexus 6P owner was temporarily stranded on a freezing night after her Phone abruptly died when she was trying to request a ride from the ride-sharing app Uber.[13]

181.     Despite Defendants' awareness of the Defects and countless reports of the associated problems from consumers—including in complaints made directly to Huawei and Google, on Defendants' message boards, and on consumer websites—Defendants continue to sell Phones without fixing or disclosing the Defects.

182.     Defendants have refused to confirm the existence of these problems in the Phones and refuse to provide relief to consumers whose Nexus 6P Phones experience bootlooping or battery drain and early shut-off.

**C.     The Impact of the Battery Drain and Bootloop Defects on Consumers**

183.     As discussed above, all Plaintiffs have experienced one or both of the Defects in their Phones. Their experiences are by no means isolated occurrences.

184.     The internet is replete with complaints by consumers who purchased a Nexus 6P Phone, only to experience the same bootloop and battery drain/early shut-off problems. Examples of some of these complaints are below:

---

[13] *See* http://www.androidpolice.com/2016/12/20/some-nexus-6ps-have-developed-a-battery-early-shutoff-problem-and-itsbecoming-a-safety-issue/ (last visited April 18, 2017).

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

[−] **AlphaM93**  2 points 10 days ago

I am extremely disappointed that a big company like Google does not know how to fix this problem.

I bought a Google Nexus 6P in February 2016. The phone came with a 1 year warranty. One week after the warranty expired, the Nexus 6P decided to freeze after taking a photo and thereafter rebooted. (17/02.2017) Since then, my Nexus 6P has been in a never-ending boot loop. The 6P was running Android Nougat 7.1.1 (N4F26O) at the time it froze. To think that Google has flagged this as a minor bug/defect is absurd and not acceptable. If this is not fixed, I am not buying another Google phone and I will make sure that others in my region do not fall into the same rip off!

Kind regards,

Huawei Nexus 6P (H1512) 64GB - Aluminium Owner.

[https://www.reddit.com/r/Nexus/comments/4zhx53/never_ending_boot_loop_with_android_7_nougat/d e0d4k3/](https://www.reddit.com/r/Nexus/comments/4zhx53/never_ending_boot_loop_with_android_7_nougat/de0d4k3/) (last visited March 3, 2017)

[−] **JRTStudio**  1 point 28 days ago

FYI for others finding this issue. If it happens 11 days after your warranty expires, don't expect a replacement from Google if you purchased from them. Here is the experience my wife had with her Nexus 6P I bought her to encourage testing of my Android apps. Spoiler alert, it's going to be tuff to keep her using an Android phone.

Over the last couple days, I would look over and see my phone was trying to reboot. It would get stuck at the very beginning with the Google logo flashing (long before you even get to sign in to start Android). I couldn't even get the phone to turn off.

So I called Google for help and they alerted me there was nothing they could do since my warranty expired just 6 days ago. I told them my phone was bricked at 53 weeks and they said it was "expected wear and tear". So I said, "to confirm, you are telling me that this is expected behavior after only a year and you won't do anything to help" and they said "yes". When I tried getting their full name or ID numbers, they would tell me they can't give those. It took a while of prodding before they would even give me a case number. I talked to 3 managers there who all said I was out of luck by 11 days with my now bricked phone.

permalink   embed   save   parent   give gold

[https://www.reddit.com/r/Nexus/comments/4zhx53/never_ending_boot_loop_with_android_7_nougat/d d9lj2q/](https://www.reddit.com/r/Nexus/comments/4zhx53/never_ending_boot_loop_with_android_7_nougat/dd9lj2q/) (last visited March 3, 2017)



[https://www.youtube.com/watch?v=9iqpfUqb8gU](https://www.youtube.com/watch?v=9iqpfUqb8gU) (last visited March 3, 2017)

29

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF



**fl0wmastr** 1 month ago

most users have tried re-flashing factory images or wiping their data to no avail. Once you contact Google, the company will send you a refurbished unit. Though Google says the bootloop is strictly a hardware issue, it is curious that both Nexus 6P and Nexus 5X devices are suddenly affected by it after the most recent Nougat update.

Reply • 1  👍  👎

*Id.* (last visited March 3, 2017)



**David Schwab** 2 months ago (edited)

Happened to mine too! Google sabotage? Super pissed off. Weirdly right after 12 month warranty and right after 7.1.1 update. Coincidence? Super expensive phone that was still WAY in it's prime. I was looking forward to at least another year. Thinking about never buying a Google phone again.

Reply •  👍  👎

View all 3 replies ⌄

*Id.* (last visited March 3, 2017)



**Ramtin Irandost** • 2 months ago

This article is really late. My 6p was effected by the bootloop before 7.1 update. Google was making it really difficult for me to get a replacement so I had to just deal with it. I wiped catch reset my phone couple of times but didn't seem to help and then the problem just went away by itself. I was beta tester for couple of Google's apps and I opted out of those I feel like thats what helped but I'm not quite sure. It's also noteworthy to mention that my phone only restarted when I wasn't using it.

1 ⌃ | ⌄ • Reply • Share ›

http://www.androidauthority.com/nexus-6p-bootloop-issues-738275/ (last visited March 3, 2017)

**Os Portillo** • 2 months ago

My 6P just "died" on me back on the 25th. Was working normal, then went dead with 65%+ charge. Won't turn on while charging, it's actually not even holding any charge.

I'm sending it today to Huawei to work it out with the warranty. Such a great phone, affected so we are tempted to buy the new Pixels. Shame on you Google, never been so disappointed with them.

⌃ | ⌄ • Reply • Share ›

*Id.* (last visited March 3, 2017)

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

1



**Thomas Cole** · 2 months ago

2

This issue is older than this. I had one of my 6P's (my wifes) get stuck in a bootloop

3

months ago. We had to argue with Huawei and get Google involved just to get them

to take the phone on the warranty that was almost up. Google offered to charge me

4

full price for the phone and then release the money back on return of the old phone. I

can't afford to do that and would not even if I could afford it. The 6P was the last

5

purchase I will ever make from Google because of their customer service issues, I

don't even use their software anymore.

6

∧  |  ∨  · Reply · Share ›

7

8    *Id.* (last visited March 3, 2017)

9



**thejaycan** · 2 months ago
My 6P bit the dust in this manner. I'm glad to see it getting more attention, because I thought it was just my phone. I

10

only had flashed up to 7.0 (pure nexus ROM) when it died. The flash went fine as did all the app reinstalls (did a
clean flash) and it was working for half the day and then I launched Google Maps and it did a hard crash, all the way

11

back to the Google screen and then proceeded to do its bootloop thing (no boot animation). I tried reflashing the
ROM, the boot IMG, thebstokx recovery, cleared data, cache, system, and even internal storage, no dice. Then I

12

tried flashing back to Google stock from the official sources, nothing. Relocked the bootloader and reflashed stock
source, still nothing. At that point, RMA'd it. Got new one and no problems on 7.1.1 on the pure nexus ROM. Just a

13

bummer as I've had good luck recovering "bricked" devices until this one.
3 ∧  |  ∨  · Reply · Share ›

14

15    https://www.xda-developers.com/nexus-6p-users-experiencing-random-bootloops/ (last visited March

3, 2017)

16

**thejaycan** · 2 months ago
My 6P bit the dust in this manner. I'm glad to see it getting more attention, because I thought it was just my phone. I

17

only had flashed up to 7.0 (pure nexus ROM) when it died. The flash went fine as did all the app reinstalls (did a
clean flash) and it was working for half the day and then I launched Google Maps and it did a hard crash, all the way

18

back to the Google screen and then proceeded to do its bootloop thing (no boot animation). I tried reflashing the
ROM, the boot IMG, thebstokx recovery, cleared data, cache, system, and even internal storage, no dice. Then I

19

tried flashing back to Google stock from the official sources, nothing. Relocked the bootloader and reflashed stock
source, still nothing. At that point, RMA'd it. Got new one and no problems on 7.1.1 on the pure nexus ROM. Just a

20

bummer as I've had good luck recovering "bricked" devices until this one.                                          ady
3 ∧  |  ∨  · Reply · Share ›

21                                                                                                                  ne

22    battery drain I had read about online. Google Support as always is totally useless &         l (last

on complete denial

23    ∧  |  ∨  · Reply · Share ›

24                                                                                                              )

25

26

27

28

31



**AlexFarr** ➜ freddie andersson • 5 months ago

I've had the same issue, phone draining quickly and shutting down normally at 15% but I've had it happen at 25%. RMA'd my 6P and I have a fresh one sitting at home now, updated it to last Marshmallow update and think I'll leave it there until Google address the problem... I shouldn't have to do that though and it seems like more than just a knackered battery with people reporting the exact same thing.

⌃ | ⌄ • Reply • Share ›

http://www.androidauthority.com/samsung-lg-lcd-delay-764136/#comment-2994769785  (last  visited April 14,2017)



**DevD** • 4 months ago

Mine started the 2nd day after i installed the 7.1.1 which was last Monday. My phone randomly shuts down when i receive a call. The phone battery would be anywhere between 20%-65%. When it reboots the phone shows switched on the battery saver mode and charge would be 10%-15%. I can;t see the last caller id when shutdown happened. This is crazy. I am missing calls with no idea who called. This is critical. Hope Google and Huawei is working on this. Else the best phone of 2015-2016 is going to be the worst phone ever.

⌃ | ⌄ • Reply • Share ›

http://www.androidauthority.com/samsung-lg-lcd-delay-764136/#comment-3065853865  (  last  visited April 14, 2017)



**Pavan** • 5 months ago

+1. Battery is draining at a jet speed. I thought my 6P battery is getting old

⌃ | ⌄ • Reply • Share ›

http://www.androidauthority.com/samsung-lg-lcd-delay-764136/#comment-2978851185  (last  visited April 14,2017)



**Yash Mehta** • 5 months ago

Battery is draining so fast and takes hell lot of time to charge back. First it used to tak 1 hr or 1 and half hr max. And now it takes almost 3 hrs to charge and sometimes it shows '5 hrs for full'. This is really frustrating and not what I expected from 7.0 update. I have also tweeted about this to nexus but no replies. Please fix Google.

⌃ | ⌄ • Reply • Share ›

http://www.androidauthority.com/samsung-lg-lcd-delay-764136/#comment-2978082660  (last  visited April 14, 2017)

32

1
2
3
4
5
6
7
8



9  https://twitter.com/psychicstorm/status/852146771354628096 (last visited April a14, 2017)

10
11
12
13
14
15
16

17  https://twitter.com/sdfitnoexcuses/status/851661079914532864 (last visited April 14, 2017)

18
19
20
21
22
23
24
25
26

27  https://twitter.com/chukumukoo/status/850744112190038017 (last visited April 14, 2017)

28

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

Kevin Annand @AnnandKevin · Mar 29

@googlenexus tried all the troubleshooting for **battery** issues with my **Nexus 6P**, is there a fix coming? Drains faster, dies randomly at 15%

https://twitter.com/AnnandKevin/status/847110772941606912 (last visited April 14,2017)

Jaden Ng Donq Sheng Yes yess yesss!!!! Android Authority i love you for bringing this issue in social media.. I used this phone for less than a year.. i think Google is not working on it... My nexus 6p having a huge battery draining for the past few months and it's really ridiculous.. Google just want us to change to PIXEL maybe??

Like · Reply · 79 · October 31, 2016 at 9:06am

https://www.facebook.com/androidauthority/posts/1137761776273542?comment_id=1137787889604264&comment_tracking=%7B%22tn%22%3A%22R0%22%7D (last visited April 14, 2017)

⭐ Died after after 11 months.

By Tommy on January 31, 2017

Offer Type: Phone | Color: Graphite | Size: 64 GB | Verified Purchase

purchased in 2/2016, phone just died 1/31/2017. Warranty only good for 1 year.

Phone has been doing great up until last month or so. Battery will suddenly say low and shut down. Even if I have 20%+. The highest it shut down was at 49%. It will reboot but will shut down right after it loads.

Now, the phone is bricked. It restarted on me in the middle of a text message, and started to boot but the phone never loaded completely and now won't turn on and won't charge. Tried everything in google support with no success.

I guess I'll go back to apple. Never had any issue this early in the phones life.

▸ 1 comment | 2 people found this helpful. Was this review helpful to you? | Yes | No | Report abuse

https://www.amazon.com/gp/customer-reviews/R15DQL12OO5EVM/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B015YCRYZM (last visited April 14,2017)

34

https://www.amazon.com/gp/customer-reviews/R121YD5FSNCG3Z/ref=cm_cr_getr_d_rvw_ttl?ie=UTF8&ASIN=B015YCRYZM (last visited April 14, 2017).

185.    A consumer-initiated petition on change.org demands that Defendants address the Defects in the Nexus 6P.[14]

**D.    Defendants' Continued Failure to Remedy the Defects**

186.    Defendants are aware that the Phones are defective and that the defects have had a massive effect on consumers across the country.

187.    At first, Google downplayed the situation despite numerous consumer complaints. In September 2016, a Google representative responded to consumer complaints about the Bootloop Defect:

> We understand that a very small number of users are experiencing a bootloop issue on your device. We are continuing to investigate the situation, but can confirm that this is strictly a hardware related issue. For those of you that are currently experiencing this, please contact your place of purchase for warranty or repair options.
>
> We're sorry for the inconvenience and appreciate your continued patience.[15]

---

[14] *See* https://www.change.org/p/google-inc-get-repair-replacement-support-from-google-and-huawei-for-the-nexus-6p?source_location=topic_page (last visited April 14, 2017).

[15] https://www.xda-developers.com/nexus-6p-users-experiencing-random-bootloops/ (last visited April 18, 2017); *see also* https://www.reddit.com/r/Nexus/comments/4zhx53/never_ending_boot_loop_with_android_7_nougat/ (last visited April 18, 2017).

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

188.     But then, in October 2016, the same Google representative confirmed that Google was aware of the malfunctioning batteries in Nexus 6P phones. Google announced that it was investigating the problem and monitoring consumer posts on social websites like Twitter:

> Just want to let you all know that this is something we have been keeping track of, and our team is investigating.
>
> As most of you know, poor battery life immediately after an update is not uncommon, given the way system updates happen. That being said, many of you are reporting that you have been experiencing abnormal battery drain for multiple days now . . . . Thanks for all the relevant data on usage, and please continue to post your experiences here and elsewhere we monitor (Forum, Twitter, etc).[16]

189.     Despite this acknowledgement, and the reality that (a) thousands of consumers have complained about both the Bootloop Defect and Battery Drain Defect, (b) countless consumers have contacted both Defendants about repairing and/or replacing their Phones, and (c) Defendants know of the problems with Phones described herein, Defendants failed to disclose these problems to consumers prior to purchase and, once the problems manifested in the Phones, failed to provide an adequate remedy.

190.     Defendants consistently fail to provide a non-defective replacement or repaired phone to consumers, even when their Phones remain under warranty. Defendants often point to a cosmetic issue (such as a cracked screen) as an excuse not to provide a repair or replacement.

191.     Oftentimes the problems in Nexus 6P Phones manifest soon after the warranty period expires. In those cases, Defendants deny relief to the consumers unless they pay out of pocket for repairs.

192.     Thus, consumers report that they have been required to obtain a repair or replacement at their own expense. Defendants are not standing behind their product or their promises to repair Phones. It is unusual for Defendants to offer any given Nexus 6P consumer a repair or a refurbished device at no cost. Even where consumers have received repaired or refurbished Phones from

---

[16] https://www.reddit.com/r/Nexus6P/comments/53xt82/nougat_ota_battery_drain_whats_the_official_word/ (last visited April 18, 2017).

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

Defendants, those Phones contain the same Defects as the originally purchased Phones. As a result, Defendants' warranties fail of their essential purpose.

193.    When consumers call Google or Huawei customer support, consumers typically experience Google and Huawei representatives pointing fingers at one another and bouncing them back and forth between companies on a series of calls. These calls often end in no ultimate recourse for the consumers. Google consistently turns away consumers who call about Nexus 6P problems stemming from the Defects, advising the consumers to speak to Huawei because "it's a hardware issue." Google also consistently informs consumers who purchased their Phones through the Google Store that (a) there is nothing Google can do, and/or (b) the consumers should file an insurance claim through Assurant (Nexus Protect), which requires payment of a deductible typically exceeding $75.

194.    Likewise, Huawei consistently turns away consumers who call to report Nexus 6P problems, telling them to "go talk to Google, it's a software issue." Huawei also employs run-around tactics with consumers who have experienced the Defects, whether in or out of warranty. Ordinarily, Huawei tells consumers with out-of-warranty Phones that experienced either Defect that Huawei will not do anything for them. Other consumers, however, report that Huawei has said or done any of the following, among other things:

    a.    Huawei is investigating the issue and there is nothing that can be done at this time, but Huawei will follow up when it determines the problem—Huawei rarely follows up with these customers;

    b.    The consumers can send in their device to Huawei, but Huawei cannot promise that a repair or replacement will be cost free, or even possible at all, and when consumers ask what they ought to do in the interim so that they have a phone, Huawei advises them to go buy a new one and then return that phone at a later date (consumers generally are not receptive to (a) going without their Phone for an extended period of time and (b) buying a new phone with the intent to return it later);

    c.    Huawei will issue a return merchandise authorization for a Phone, but will not make a repair or provide replacement for weeks or months; when consumers follow up regarding the status of their Phones, Huawei "promises" that the matter is being "escalated" or fails to respond at all; or

    d.    Huawei simply denies relief to consumers with in-warranty Phones for no apparent reason and without explanation.

195.     When Defendants are not playing the blame game, they often walk consumers through a series of troubleshooting steps that provide no benefit and do not fix the Defects.

196.     Defendants require consumers to pay full-freight shipping costs and other fees out of their own pockets for a repair or replacement, or to pay a costly deductible when submitting a damage claim through Assurant under a Nexus Protect plan.

197.     Consumers who are able to obtain a replacement device are routinely provided with refurbished or used phones. This leaves consumers in a situation where they have paid for a brand new Phone, but are receiving something of less value. Further, the refurbished replacement Phones contain the same Defects and are highly susceptible and prone to experiencing the same problems again—in some cases multiple additional times. Many consumers received obviously damaged refurbished devices and spent time requesting multiple replacements or return merchandise authorizations.

198.     Although Defendants know of the Bootloop Defect and the Battery Drain Defect, they engage in a pattern and practice of refusing to repair Phones in which one or both defects have manifested.

199.     Even after consumer complaints relating to the Bootloop and Battery Defect proliferated, Defendants failed to acknowledge that Nexus 6P Phones contain Defects that cause fatal bootlooping and early shut-off from battery drainage. Defendants continue to fail to adequately repair or replace the defective Phones.

200.     Had these problems been known and disclosed to Plaintiffs and other consumers who purchased the Phones, they would not have made the purchases. At the time they purchased their Phones, Plaintiffs were unaware and had no reasonable way to learn of the problems with the Phones.

201.     Defendants made affirmative representations about the quality of the Phones while failing to disclose and suppressing a material fact about the Phones, namely that they contain defects that result in either bootlooping or excessive battery drain, each of which inevitably renders the Phones inoperable or, in the case of bootlooped Phones, completely useless.

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

202.    Defendants had a duty to disclose these problems because they had exclusive knowledge of the problems. Had Defendants disclosed the material facts relating to the Defects to Plaintiffs and Class members, they would not have bought these Phones.

203.    As a result of the Defects and Defendants' refusal to adequately address and remedy the associated product failures, consumers across the United States have paid and continue to pay significant sums for repairs, replacements, insurance deductibles connected with insurance claims, and other out-of-pocket costs.

204.    The Defects have also caused numerous consumers to experience loss of use of their Phones, loss in value of their Phones, and loss of access to photos and other valuable intellectual property accessible only through their Phones.

## CLASS ACTION ALLEGATIONS

205.    Plaintiffs bring this lawsuit on behalf of themselves and all similarly situated individuals and entities, pursuant to Federal Rule of Civil Procedure 23(a), 23(b)(2) and 23(b)(3). The proposed class and subclasses are defined as follows:

**Nationwide Class**
All persons or entities in the United States who purchased or own at least one Nexus 6P Phone.

**California Subclass**
All persons or entities in the state of California who purchased or own at least one Nexus 6P Phone.

**Florida Subclass**
All persons or entities in the state of Florida who purchased or own at least one Nexus 6P Phone.

**Illinois Subclass**
All persons or entities in the state of Illinois who purchased or own at least one Nexus 6P Phone.

**Indiana Subclass**
All persons or entities in the state of Indiana who purchased or own at least one Nexus 6P Phone.

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

**Michigan Subclass**
All persons or entities in the state of Michigan who purchased or own at least one Nexus 6P Phone.

**New York Subclass**
All persons or entities in the state of New York who purchased or own at least one Nexus 6P Phone.

**North Carolina Subclass**
All persons or entities in the state of North Carolina who purchased or own at least one Nexus 6P Phone.

**North Dakota Subclass**
All persons or entities in the state of North Dakota who purchased or own at least one Nexus 6P Phone.

**Ohio Subclass**
All persons or entities in the state of Ohio who purchased or own at least one Nexus 6P Phone.

**Pennsylvania Subclass**
All persons or entities in the Commonwealth of Pennsylvania who purchased or own at least one Nexus 6P Phone.

**Texas Subclass**
All persons or entities in the state of Texas who purchased or own at least one Nexus 6P Phone.

**Washington Subclass**
All persons or entities in the state of Washington who purchased or own at least one Nexus 6P Phone.

206.    Excluded from the Class and Subclasses are Defendants, their affiliates, subsidiaries, parents, successors, predecessors, any entity in which Defendants or their parents have a controlling interest; Defendants' current and former employees, officers and directors; the Judge(s) and/or Magistrate(s) assigned to this case and their staffs and immediate family members; any person who properly obtains exclusion from the Classes; any person whose claims have been finally adjudicated on the merits or otherwise released; and the parties' counsel in this litigation. Plaintiffs reserve the right to modify, change, or expand the Class and Subclass definitions based upon discovery and further investigation.

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

207.    **Numerosity.** The Class is so numerous that joinder of all members is impracticable. At least tens of thousands of Class members have been subjected to Defendants' conduct described herein. Over 3,500 consumers have contacted counsel for Plaintiffs to report having experienced one or both of the Defects. The Class is objectively defined and presently ascertainable by reference to records in the possession of Defendants or third parties.

208.    **Existence and Predominance of Common Questions of Fact and Law.** Common questions of law and fact exist as to all members of the Class. These questions predominate over the questions affecting individual Class members. These common legal and factual questions include:

a)    Whether the Phones are defective in that they were prone to failing prematurely due to the Bootloop Defect and the Battery Drain Defect;

b)    Whether Defendants knew of the Defects but failed to disclose the problems and their consequences to consumers;

c)    Whether a reasonable consumer would consider the Defects and their consequences to be material;

d)    Whether Defendants breached express and implied warranties relating to the Phones;

e)    Whether Defendants' conduct violates state consumer protection laws and other laws as asserted herein;

f)    Whether Plaintiffs and Class members overpaid for their Phones as a result of the Defects alleged herein;

g)    Whether Defendants' conduct was deceitful;

h)    Whether Plaintiffs and Class members are entitled to equitable relief, including restitution or injunctive relief; and

i)    Whether Plaintiffs and Class members are entitled to damages and other monetary relief and, if so, in what amount.

209.    **Typicality.** Plaintiffs' claims are typical of the claims of the Class in that Plaintiffs and all Class members purchased or own defective Phones and sustained economic injury in the same manner by reason of Defendants' uniform course of conduct described herein. Plaintiffs and all Class

members have the same claims against Defendants relating to the conduct alleged herein, and the events and conduct giving rise to Plaintiffs claims for relief are identical to those giving rise to the claims of all Class members.

210. **Adequacy.** Plaintiffs are adequate representatives for the Class because their interests do not conflict with the interests of the Class that they seek to represent. Plaintiffs have retained counsel competent and highly experienced in complex class action litigation, including consumer protection class actions, and counsel intends to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and their counsel.

211. **Superiority.** A class action is superior to all other available means of fair and efficient adjudication of the claims of Plaintiffs and Class members. The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of these claims. Even if Class members could afford to pursue individual litigation, the court system could not. Individualized litigation would risk inconsistent or contradictory judgments while increasing the delay and expense to all parties, and to the judicial system, from the complex legal and factual issues presented here. By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court. Members of the Class can be readily identified and notified of this action based upon, *inter alia*, the records (including databases and e-mails) that Defendants or third parties maintain regarding sales of Phones. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action.

212. Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and Class members, making final injunctive relief and declaratory relief appropriate with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### BREACH OF EXPRESS WARRANTY
#### (Against Defendants)

213. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

214.    Plaintiffs assert this claim on behalf of the Nationwide Class.

215.    In the alternative, this claim is brought by Makcharoenwoodhi, Gorbatchev, and Christensen on behalf of the California Subclass; Martorello on behalf of the Florida Subclass; Tran on behalf of the Illinois Subclass; Beheler on behalf of the Indiana Subclass; Berry on behalf of the Michigan Subclass; Davydov on behalf of the New York Subclass; Harrison and Himes on behalf of the North Carolina Subclass; Jones on behalf of the North Dakota Subclass; Servodio on behalf of the Ohio Subclass; Leone on behalf of the Pennsylvania Subclass; Poore on behalf of the Texas Subclass; and Johnston on behalf of the Washington Subclass, under, respectively, CAL. COM. CODE § 2313; FLA. STAT. § 672.313; 810 ILL. COMP. STAT. § 5/2-313; IND. CODE § 26-1-2-313; MICH. COMP. LAWS § 440.2313; N.Y. U.C.C. § 2-313; N.C. GEN. STAT. § 25-2-313; N.D. CENT. CODE § 41-02-30; OHIO REV. CODE § 1302.26; 13 PA. STAT. ANN. § 2313; TEX. BUS. & COM. CODE § 2.313; and WASH. REV. CODE § 62A.2-313.

216.    Huawei and Google are each a "merchant" as defined under the Uniform Commercial Code ("U.C.C.") and by the respective state statutes under which Plaintiffs alternatively assert this claim.

217.    The Phones are "goods" as defined under the U.C.C. and by the respective state statutes under which Plaintiffs alternatively assert this claim.

218.    Huawei created an express warranty within the meaning of the U.C.C. and the respective state statutes under which Plaintiffs alternatively assert this claim.

219.    Huawei expressly warranted that the Phones were free from material defects and, at a minimum, would work properly. Huawei also expressly warranted that it would repair or replace "any parts of the [Phone] that are defective or malfunctioning during normal usage."[17]

220.    Huawei's warranty for each Phone provides:

> Huawei Device USA Inc., ("Huawei") represents and warrants to the original purchaser ("Purchaser") that Huawei's phones and accessories ("Product") are free from material defects, including improper or inferior

---

[17] http://consumer.huawei.com/us/support/warranty-policy/mobile-phone/index.htm (last visited April 14, 2017).

workmanship, materials, and design, during the designated warranty period[.][18]

221.    At all relevant times, including prior to and at the time of their purchases of Phones, Plaintiffs and Class members relied on the promises in Huawei's express warranty. These promises were part of the basis of the bargain connected with these transactions for the sale of goods.

222.    Huawei breached its express warranty by:

a.    selling Plaintiffs and Class members Phones containing Defects substantially certain to cause the Phones to fail to function properly, or at all; and

b.    failing to adequately repair or replace Plaintiffs' and Class members' Phones that failed during the warranty period.

223.    Huawei did not furnish an effective remedy to Plaintiffs and Class members. Despite reasonable opportunities to honor the promises in its express warranty, Huawei failed to provide Plaintiffs and Class members with conforming Nexus 6P Phones free of defects.

224.    Plaintiffs and Class members experienced the Defects within the warranty period. In breach of Huawei's express warranty, Huawei failed to inform Plaintiffs and Class members that the Phones were defectively designed and failed to fix the defective Phones free of charge (and altogether).

225.    Huawei breached its express warranty that promised to repair and correct manufacturing, materials or workmanship, and design defects and to provide Phones conforming to the warranty. To date, Huawei has not repaired or adjusted, and has been unable to repair or adjust, the Defects in the Phones.

226.    The time limit connected with Huawei's warranty is unconscionable and inadequate to protect Plaintiffs and Class members. Plaintiffs and Class members had no meaningful choice in determining the one-year time limit, the terms of which unreasonably favored Huawei. A gross disparity in bargaining power existed between Huawei and Class members. Huawei knew or should have known that the Phones were defective at the time of sale and would fail. Consumers had no reasonable means of learning of the concealed Defects.

---

[18] *Id.*

227.     Through its advertisements, public statements, and other statements disseminated through consumable media, Google expressly warranted several attributes and qualities of the Phones by representation as detailed above, such as:

a.     "Get up to seven hours of use after only ten minutes of charging";

b.     "Battery life keeps you going all day and into the night";

c.     that Phones contain a battery that "keeps you talking, texting, and apping into the night"; and

d.     that when consumers need to file a warranty claim for Phones, they can "get a new device as early as the next business day."

228.     These statements included objective affirmations of fact and promises. Plaintiffs and Class members were exposed to and relied on the foregoing statements when they decided to buy Nexus 6P Phones. Accordingly, Google's express warranties formed part of the basis of the bargain that was reached when Plaintiffs and Class Members purchased their Phones.

229.     Google breached these express warranties in part because the Phones did not, in fact, get up to seven hours of use after only ten minutes of charging, and because Google did not provide any warranty claimant with a new device on the next business day. Instead, Google failed to adequately repair or replace Plaintiffs' and Class members' Phones whose batteries failed during the warranty period. Despite reasonable opportunities to honor the promises in its express warranty, Google failed to provide Plaintiffs and Class members with conforming, non-defective Nexus 6P Phones.

230.     Defendants received timely notice of the breaches experienced by Plaintiffs and Class members. Defendants were provided notice of the Defects by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Defects became public.

231.     Plaintiffs and Class members used their Nexus 6P Phones in a manner consistent with the Phones' operating instructions. Plaintiffs and Class members performed their duties under the terms of the foregoing express warranties or have been excused from such performance as a result of Defendants conduct described herein.

232.     Any attempt by Defendants to disclaim or limit their express warranties vis-à-vis consumers would be inappropriate under these circumstances. Any such asserted limitation is

unconscionable and unenforceable because Defendants knowingly sold a defective product without informing consumers and because they failed to honor their express promises.

233. As a direct and proximate result of Defendants' breaches of express warranty, Plaintiffs and Class members have suffered economic damages, including costly repairs, loss of use, replacement costs, substantial loss in value and resale value of the Phones, and other harm.

**COUNT II**
**BREACH OF THE IMPLIED WARRANTY OF MERCHANTABILITY**
**(Against Defendants)**

234. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

235. Plaintiffs assert this claim on behalf of the Nationwide Class.

236. In the alternative, this claim is brought by Makcharoenwoodhi, Gorbatchev, Christensen on behalf of the California Subclass; Martorello on behalf of the Florida Subclass; Tran on behalf of the Illinois Subclass; Beheler on behalf of the Indiana Subclass; Berry on behalf of the Michigan Subclass; Davydov on behalf of the New York Subclass; Harrison and Himes on behalf of the North Carolina Subclass; Jones on behalf of the North Dakota Subclass; Servodio on behalf of the Ohio Subclass; Leone on behalf of the Pennsylvania Subclass; Poore on behalf of the Texas Subclass; and Johnston on behalf of the Washington Subclass, under, respectively, CAL. COM. CODE § 2314; FLA. STAT. § 672.314; 810 ILL. COMP. STAT. § 5/2-314; IND. CODE § 26-1-2-314; MICH. COMP. LAWS § 440.2314; N.Y. U.C.C. § 2-314; N.C. GEN. STAT. § 25-2-314; N.D. CENT. CODE § 41-02-31; OHIO REV. CODE § 1302.27; 13 PA. STAT. ANN. § 2314; TEX. BUS. & COM. CODE § 2.314; and WASH. REV. CODE § 62A.2-314.

237. Huawei and Google are "merchants" as defined under the U.C.C. and by the respective state statutes under which Plaintiffs alternatively assert this claim.

238. The Phones are "goods" as defined under the U.C.C. and by the respective state statutes under which Plaintiffs alternatively assert this claim.

239. Huawei and Google impliedly warranted that the Phones were of a merchantable quality. The law implies a warranty that the Nexus 6P smartphones were merchantable in the relevant

1  transactions. These phones, when sold and at all times thereafter, were not in merchantable condition

2  and are not fit for the ordinary purpose for which phones are used.

3          240.    At the point of sale, the Nexus 6P Phones contained unseen manufacturing or design

4  defects whose manifestation renders the product inoperable during its useful life. The defects in the

5  Nexus 6P Phones existed when the Phones left Defendants' possession and rendered them unfit for

6  their ordinary and intended purpose. At all relevant times, including when the Phones entered the

7  stream of commerce and were purchased by Plaintiffs and Class members, the Phones were defective

8  and substantially certain to fail.

9          241.    Defendants breached the implied warranty of merchantability because the Phones they

10  sold are not of a merchantable quality, but instead contain a Bootloop Defect and a Battery Drain

11  Defect. Had Plaintiffs and Class members known of the embedded defects in the Nexus 6P, they

12  would not have purchased their Phones.

13          242.    Plaintiffs and Class members were in privity of contract with Huawei and Google by

14  virtue of their interactions with Huawei and Google. Alternatively, privity of contract need not be

15  established, and is not required, because Plaintiffs and Class members are the intended third-party

16  beneficiaries of the implied warranties and other contracts between Defendants and the retailers who

17  sell the Phones. Defendants' warranties were designed for the benefit of consumers who purchase(d)

18  Phones.

19          243.    Plaintiffs furnished Defendants an opportunity to cure their breach of warranty, to no

20  avail. Defendants have refused to recall, adequately repair, replace, or refund the purchase price of

21  failed Nexus 6P Phones.

22          244.    Any attempt by Defendants to disclaim the implied warranty of merchantability

23  imposed by law would be inappropriate, particularly given the parties' unequal bargaining power and

24  Defendants' exclusive knowledge of the Defects and true quality of the Phone.

25          245.    Google's express attempt to disclaim or limit the implied warranty of merchantability

26  vis-à-vis consumers is unconscionable and unenforceable. Google knowingly sold a defective product

27  without disclosing the Defects, while affirmatively misrepresenting purported attributes of the

28  product that were important to consumer purchasers. Moreover, the remedies Google offered injured

purchasers were inadequate and unconscionable. Fairness therefore requires invalidating the disclaimer of the implied warranty of merchantability in Google's form document.

246.    The strict time limit of Defendants' warranty period is also unconscionable and was inadequate to protect Plaintiffs and Class members. Among other things, Plaintiffs and Class members had no meaningful choice in determining the one-year time limit, the terms of which unreasonably favored Defendants. A gross disparity in bargaining power existed between Defendants and Class members, and Defendants knew (or exercising due diligence should have known) that the Phones were defective at the time of sale and that the Phones would fail well before their useful lives.

247.    Plaintiffs and Class members have complied with any and all obligations under the implied warranty of merchantability or otherwise have been excused from such compliance by reason of Defendants' conduct described herein.

248.    Defendants' breach of the implied warranty of merchantability damaged Plaintiffs and Class members in an amount to be determined at trial.

## COUNT III
## VIOLATIONS OF THE MAGNUSON-MOSS
## WARRANTY ACT, 15 U.S.C. §§ 2301 *et seq.* ("MMWA")
### (Against Defendants)

249.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

250.    Plaintiffs and Class members are "consumers" within the meaning of the MMWA. 15 U.S.C. § 2301(3).

251.    The Phones are "consumer products" within the meaning of the MMWA. 15 U.S.C. § 2301(1).

252.    Huawei is a "supplier" and "warrantor" within the meaning of the MMWA. 15 U.S.C. § 2301(4)-(5).

253.    Google is a "supplier" and "warrantor" within the meaning of the MMWA. 15 U.S.C. § 2301(4)-(5).

254.    Section 2310(d) of the MMWA provides a cause of action for consumers harmed by the failure of a warrantor to comply with a written or implied warranty.

255.    Huawei's express warranties are written warranties within the meaning of Section 2301(6) of the MMWA. The Phones' implied warranties are accounted for under Section 2301(7) of the MMWA, which warranties Huawei cannot disclaim under the MMWA, when it fails to provide merchantable goods.

256.    As set forth herein, Huawei breached its warranties with Plaintiffs and Class members.

257.    Additionally, 15 U.S.C. § 2304(d) provides in pertinent part:

> [T]he warrantor may not assess the consumer for any costs the warrantor or his representatives incur in connection with the required remedy of a warranted consumer product. . . . [I]f any incidental expenses are incurred because the remedy is not made within a reasonable time or because the warrantor imposed an unreasonable duty upon the consumer as a condition of securing remedy, then the consumer shall be entitled to recover reasonable incidental expenses which are so incurred in any action against the warrantor.

*Id.*

258.    The Nexus 6P phones share common defects and are prone to failure in that the Phones bootloop or experience battery drain/early shutoff.

259.    Despite demands by Plaintiffs and the Class for Huawei to pay the expenses associated with diagnosing and repairing the defective phones, Huawei routinely refuses to do so.

260.    Google also breached the implied warranty of merchantability as alleged herein by offering for sale and selling Phones that were not in merchantable condition at the time they were sold. The Phones were not merchantable because, when sold, the Phones contained latent defects which cause the Phones to bootloop and experience severe battery drain and early shut-off.

261.    Any disclaimer of implied warranties by Google was unconscionable due to the parties' unequal bargaining power and Google's exclusive knowledge of the Defects and true quality of the Phones.

262.    Defendants' attempts to disclaim or limit the implied warranty of merchantability vis-à-vis consumers are unconscionable and unenforceable. Defendants' unilateral warranty limitations are unenforceable because Defendants' knowingly sold a defective product without informing consumers about the Defects. Moreover, the remedies offered by Defendants to buyers were unfair,

inadequate, and unconscionable. Fairness requires invalidating the disclaimer of the implied warranty of merchantability in Google's form document.

263.    As a direct and proximate result of Defendants' breaches of implied and express warranties pursuant to 15 U.S.C. § 2310(d)(1), Plaintiffs and Class members have suffered damages in an amount to be proven at trial.

264.    Plaintiffs and Class members would suffer economic hardship if they returned their Phones but did not receive the return of all payments made by them. Because Defendants are refusing to acknowledge any revocation of acceptance and return immediately any payments made, Plaintiffs and Class members have not reaccepted their Phones by retaining them.

265.    The amount in controversy for Plaintiffs' individual claims meets or exceeds the sum of $25. The amount in controversy of this action exceeds the sum of $50,000, exclusive of interest and costs, computed on the basis of all claims proposed to be adjudicated in this lawsuit.

266.    Plaintiffs and Class members are entitled to recover damages as a result of Defendants' breach of warranties.

267.    Plaintiffs and Class members are also entitled to seek costs and expenses, including reasonable attorneys' fees, under the MMWA. 15 U.S.C. § 2310(d)(2).

## COUNT IV
### DECEIT AND FRAUDULENT CONCEALMENT
#### (Against Defendants)

268.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

269.    This claim is brought by Makcharoenwoodhi, Gorbatchev, and Christensen on behalf of the California Subclass; Martorello on behalf of the Florida Subclass; Tran on behalf of the Illinois Subclass; Beheler on behalf of the Indiana Subclass; Berry on behalf of the Michigan Subclass; Davydov on behalf of the New York Subclass; Harrison and Himes on behalf of the North Carolina Subclass; Jones on behalf of the North Dakota Subclass; Servodio on behalf of the Ohio Subclass; Leone on behalf of the Pennsylvania Subclass; Poore on behalf of the Texas Subclass; and Johnston on behalf of the Washington Subclass.

270.    Defendants concealed and suppressed material facts concerning the performance and quality of the Phones, and the quality of the Huawei, Google, and Nexus brands. Specifically,

50

Defendants knew (or in the exercise of reasonable diligence should have known) of the Defects, but failed to disclose them prior to or at the time they marketed Phones and sold them to consumers. Defendants engaged in this concealment in order to boost sales of their Nexus 6P smartphones.

271. Plaintiffs and Class members had no reasonable way of knowing that Defendants' representations were false and misleading, or that Defendants had omitted to disclose highly important details relating to the Defects. Plaintiffs and Class members did not and could not reasonably discover Defendants' deception on their own.

272. Defendants had a duty to disclose the true performance of the Phones because the scheme and its details were known and accessible only to Defendants; Defendants had superior knowledge and access to the relevant facts; and Defendants knew these facts were neither known to, nor reasonably discoverable by, Plaintiffs and the Class. Defendants also had a duty to disclose the Defects because they made many general, partial representations about the qualities of the Phones.

273. Defendants still have not made full and adequate disclosures, and continue to defraud consumers by concealing material information regarding the true performance of Phones.

274. Plaintiffs and Class members were unaware of the omitted material facts and would not have acted as they did, in that they would not have purchased the Phones, had they known of the facts Defendants suppressed. Plaintiffs' and Class members' actions in purchasing Phones were justified. Defendants were in exclusive control of the material facts and such facts were not reasonably known to the public, Plaintiffs, or Class members.

275. Plaintiffs and Class members relied to their detriment upon Defendants' reputations, fraudulent misrepresentations, and material omissions regarding the quality of Phones and the Defects in deciding to purchase their Phones.

276. Plaintiffs and Class members sustained damage as a direct and proximate result of Defendants' deceit and fraudulent concealment. Among other damages, Plaintiffs and Class members did not receive the value of the premium price they paid for their Phones. Plaintiffs and Class members would not have purchased Phones had they known of the Defects.

277. Defendants' acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and Class members' rights and well-being, to enrich

Defendants. Defendants' conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

### COUNT V
### UNJUST ENRICHMENT
### (Against Defendants)

278.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

279.     Plaintiffs assert this claim on behalf of the nationwide Class based upon universal principles in equity.

280.     As the intended and expected result of its conscious wrongdoing, Defendants have unfairly profited and benefited from Plaintiffs' and Class members' purchase of defective Phones.

281.     Defendants have voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Defendants' misconduct alleged herein, Plaintiffs and the Class were not receiving Phones of the quality, nature, fitness, or value that had been represented by Defendants, and that a reasonable consumer would expect.

282.     Defendants have been unjustly enriched by their fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale of Phones and by withholding benefits from Plaintiffs and the Class at the expense of these parties.

283.     Equity and good conscience militate against permitting Defendants to retain these profits and benefits. Defendants should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

### COUNT VI
### VIOLATIONS OF THE SONG-BEVERLY CONSUMER WARRANTY ACT FOR BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### (CAL. CIV. CODE §§ 1791.1 & 1792)
### (Against Defendants)

284.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

285.     Makcharoenwoodhi, Gorbatchev, and Christensen assert this claim on behalf of the California Subclass.

286.     Plaintiffs and California Subclass members, who purchased Nexus 6P smartphones, are "buyers" within the meaning of CAL. CIV. CODE § 1791(b).

287.    The Nexus 6P smartphones are "consumer goods" within the meaning of CAL. CIV. CODE § 1791(a).

288.    Huawei is a "manufacturer" of the Nexus 6P smartphones within the meaning of CAL. CIV. CODE § 1791(j).

289.    Defendants impliedly warranted to Plaintiffs and California Subclass members that their Nexus 6P smartphones were "merchantable" within the meaning of CAL. CIV. CODE §§ 1791.1(a) & 1792; however, the Nexus 6P smartphones are not of the quality that a buyer would reasonably expect.

290.    CAL. CIV. CODE § 1791.1(a) states:

> "Implied warranty of merchantability" or "implied warranty that goods are merchantable" means that the consumer goods meet each of the following:
>
> (1)    Pass without objection in the trade under the contract description.
>
> (2)    Are fit for the ordinary purposes for which such goods are used.
>
> (3)    Are adequately contained, packaged, and labeled.
>
> (4)    Conform to the promises or affirmations of fact made on the container or label.

291.    Because of the Defects, the Nexus 6P smartphones would not pass without objection in the smartphone trade.

292.    Defendants breached the implied warranty of merchantability by manufacturing and selling Nexus 6P smartphones containing the Defects. The Defects deprived Plaintiffs and California Subclass members of the benefit of their bargain.

293.    As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Plaintiffs and California Subclass members received goods whose defective condition substantially impairs their value to Plaintiffs and California Subclass members. Plaintiffs and California Subclass members have been damaged as a result of the diminished value of Defendants' products, the products' malfunctioning, and the nonuse of their Nexus 6P smartphones.

294.    Plaintiffs and California Subclass members have had sufficient direct dealings with either Defendants or their agents (*e.g.*, dealerships and technical support) to establish privity of

contract between Defendants on one hand, and Plaintiffs and California Subclass members on the other hand. Nonetheless, privity is not required because Song-Beverly expressly imposes warranty duties upon "manufacturers" and because Plaintiffs and California Subclass members are the intended third-party beneficiaries of the implied warranties that run from Defendants to their retailers. The retailers were not intended to be the ultimate consumers of the Nexus 6P smartphones and have no rights under the warranty agreements connected with the Nexus 6P smartphones; these agreements were designed for and intended to benefit the end-users only.

295.    Pursuant to CAL. CIV. CODE §§ 1791.1(d) & 1794, Plaintiffs and California Subclass members are entitled to damages and other legal and equitable relief, including, at their election, the purchase price of their Nexus 6P smartphones, or the overpayment or diminution in value of their Nexus 6P smartphones.

296.    Pursuant to CAL. CIV. CODE § 1794, Plaintiffs and California Subclass members are entitled to reasonable attorneys' fees and costs.

### COUNT VII
### VIOLATIONS OF THE UNFAIR COMPETITION LAW
#### (CAL. BUS. & PROF. CODE § 17200, *et seq.*) ("UCL")
#### (Against Defendants)

297.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

298.    Makcharoenwoodhi, Gorbatchev, and Christensen assert this claim on behalf of the California Subclass.

299.    The UCL proscribes acts of unfair competition, including "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." CAL. BUS. & PROF. CODE § 17200.

300.    Defendants' conduct is unlawful, in violation of the UCL, because it contravenes the legislatively declared policy against unfair methods of business competition. Additionally, Defendants' conduct is unlawful because it violates the Magnusson-Moss Warranty Act, the Song-Beverly Warranty Act, the California Consumers Legal Remedies Act, California's False Advertising Law and constitutes breach of express and implied warranties, fraudulent concealment, and unjust enrichment.

301.    Defendants' conduct is unfair because it violated California public policy, legislatively declared in the Song-Beverly Consumer Warranty Act, requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes. Defendants acted in an immoral, unethical, oppressive, and unscrupulous manner, including by:

   a.    Knowingly selling Plaintiffs and California Subclass members Phones with the Defects;

   b.    Refusing to repair or replace Phones with Defects where the Defects manifest outside the warranty period;

   c.    Engaging in a pattern and practice of blaming minor cosmetic issues as a pretext to avoid providing warranty service;

   d.    Requiring consumers to wait several weeks to several months to receive accommodation for warranty claims;

   e.    Providing repaired or replacement phones that contain the same Defects as the original Phones.

302.    The gravity of the harm resulting from Defendants' unfair conduct outweighs any potential utility of the conduct. The practice of selling defective phones without providing an adequate remedy to cure the Defects harms the public at large and is part of a common and uniform course of wrongful conduct. There are reasonably available alternatives that would further Defendants' business interests of increasing sales and preventing false warranty claims. The harm from Defendants' unfair conduct was not reasonably avoidable by consumers.

303.    Defendants' conduct, as described herein, is fraudulent in violation of the UCL. Defendants fraudulent acts include:

   a.    Knowingly and intentionally concealing from Plaintiffs and California Subclass members the existence of the Defects in the Phones;

   b.    Falsely marketing the Phones as being functional and not possessing defects that would render them useless; and

   c.    Promoting the battery capabilities and lifespan despite knowing of the significant Defects in the Phones.

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

304. Defendants' misrepresentations and omissions alleged herein caused Plaintiffs and California Subclass members to purchase their Phones.

305. Defendants had a duty to disclose the Defect because they had exclusive knowledge of the Defects prior to making sales of Phones and because Defendants made partial representations about the quality of the Phones, but failed to fully disclose the Defects too.

306. Plaintiffs and California Subclass members have suffered injury in fact, including lost money or property, as a result of Defendants' unlawful, unfair and fraudulent acts. Absent Defendants' unlawful, unfair and fraudulent acts, Plaintiffs and California Subclass members would not have purchased their Phones at the prices they paid (had they purchased them at all).

307. Plaintiffs seek to enjoin further unlawful, unfair, and fraudulent acts or practices by Defendants under CAL. BUS. & PROF. CODE § 17200.

308. Plaintiffs request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and fraudulent practices, and to restore to Plaintiffs and California Subclass members any money Defendants acquired by unfair competition, including restitution, as provided for under CAL. BUS. & PROF. CODE § 17203, in addition to reasonable attorneys' fees and costs.

## COUNT VIII
### VIOLATIONS OF THE CONSUMER LEGAL REMEDIES ACT
#### (CAL. CIV. CODE § 1750, *et seq.*) ("CLRA")
#### (Against Defendants)

309. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

310. Makcharoenwoodhi, Gorbatchev, and Christensen assert this claim on behalf of the California Subclass.

311. The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or which results in the sale of goods or services to any consumer." CAL. CIV. CODE § 1770(a)

312. The Phones are "goods" as defined in CAL. CIV. CODE § 1761(a).

313.    Plaintiffs and California Subclass members are "consumers" as defined in CAL. CIV. CODE § 1761(d), and Plaintiffs, California Subclass members, and Defendants are "persons" as defined in CAL. CIV. CODE § 1761(c).

314.    The purchases by Plaintiffs and California Subclass members are "transactions" as defined by CAL. CIV. CODE § 1761(e).

315.    Defendants' conduct, as described herein, was and is in violation of the CLRA. Defendants' conduct violates at least the following enumerated CLRA provisions:

      a.    § 1770(a)(5): Representing that goods have sponsorship, approval, characteristics, uses, benefits, or quantities which they do not have;

      b.    § 1770(a)(7): Representing that goods are of a particular standard, quality, or grade, if they are of another;

      c.    § 1770(a)(9): Advertising goods with intent not to sell them as advertised; and

      d.    § 1770(a)(16): Representing that goods have been supplied in accordance with a previous representation when they have not.

316.    As alleged above, Defendants made numerous representations concerning the benefits, performance, and capabilities of the Phones that were misleading. In purchasing the Phones, Plaintiffs and California Subclass members were deceived by Defendants' failure to disclose that the Phones are highly susceptible to the Defects.

317.    Plaintiffs and California Subclass members have suffered injury in fact and actual damages resulting from Defendants' material omissions and misrepresentations because, *inter alia,* they lost money when they purchased their Phones or paid an inflated purchase price for the Phones.

318.    Defendants knew, should have known, or were reckless in not knowing that the Defects in the Phones rendered them not suitable for their intended use.

319.    Defendants had a duty to disclose the Defects because Huawei and Google had exclusive knowledge of the Defects prior to making sales of Phones and because Defendants made partial representations about the quality of the Phones, but failed to fully disclose the Defects.

320.    Huawei represented that its phones were free from material defects and, at a minimum, would actually work properly. But the Phones suffer from the Bootloop Defect and the Battery Drain Defect, and do not work properly once the Defects manifest.

321.    Likewise, Google executives promoted the quality of the Phones, and Google advertised the Phones' battery power, claiming that the Phones:

      a.    "Get up to seven hours of use after only ten minutes of charging";

      b.    "Battery life keeps you going all day and into the night"; and

      c.    contain a battery that "keeps you talking, texting, and apping into the night".

322.    Google executives' representations were false—Google was aware that the Phones suffered from the Defects.  And Google was aware that their Phones' battery did not perform as advertised.

323.    The facts concealed and omitted by Defendants to Plaintiffs and California Subclass members—that the Phones are defective and fail prematurely—are material in that a reasonable consumer would have considered them to be important in deciding whether to purchase the Phones or pay a lower price. Had Plaintiffs and California Subclass members known about the defective nature of the Phones, they would not have purchased their Phones.

324.    Under CAL. CIV. CODE § 1780(a), Plaintiffs and California Subclass members seek actual damages, an order enjoining Defendants from further engaging in the unfair and deceptive acts and practices alleged herein, and restitutionary relief to remedy Defendants' violations of the CLRA as set forth herein.

325.    Under CAL. CIV. CODE § 1780(b), Plaintiffs seek an additional award against Defendants of up to $5,000 for each California Subclass member who qualifies as a "senior citizen" or "disabled person" under the CLRA. Defendants knew or should have known that its conduct was directed to one or more Class members who are senior citizens or disabled persons. Defendants' conduct caused one or more of these senior citizens or disabled persons to suffer a substantial loss of property set aside for retirement or for personal or family care and maintenance, or assets essential to the health or welfare of the senior citizen or disabled person. One or more California Subclass members who are senior citizens or disabled persons are substantially more vulnerable to Defendants'

conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and each of them suffered substantial physical, emotional, or economic damage resulting from Defendants' conduct.

326.    Pursuant to CLRA section 1780(a)(4), Plaintiffs also seek punitive damages against Defendants because they carried out reprehensible conduct with willful and conscious disregard of the rights of others, subjecting Plaintiffs and the California Subclass to potential cruel and unjust hardship as a result. Defendants intentionally and willfully concealed material facts that only they knew. Defendants' unlawful conduct likewise constitutes malice, oppression, and fraud warranting exemplary damages under CAL. CIV. CODE § 3294.

327.    Plaintiffs further seek an order awarding costs of court and reasonable attorneys' fees under CAL. CIV. CODE § 1780(e), and any other just and proper relief available under the CLRA.

328.    Gorbatchev sent CLRA notices to Huawei and Google on March 30, 2017.

329.    Makcharoenwoodhi sent CLRA notices to Huawei and Google on April 19, 2017.

330.    Christensen sent CLRA notices to Huawei and Google on May 23, 2017.

331.    These letters provided the notice required by CAL. CIV. CODE § 1782(a). Plaintiffs sent the CLRA notices via certified mail, return receipt requested, to Huawei's and Google's principal place of business, advising them that they are in violation of the CLRA and must correct, replace or otherwise rectify the goods alleged to be in violation of CAL. CIV. CODE § 1770. Defendants were further advised that in the event the relief requested has not been provided within thirty (30) days, Plaintiffs would amend this complaint to include a request for monetary damages pursuant to the CLRA.

### COUNT IX
### VIOLATIONS OF THE FALSE ADVERTISING LAW
#### (CAL. BUS. & PROF. CODE § 17500, *et seq.*) ("FAL")
#### (Against Defendants)

332.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

333.    Makcharoenwoodhi, Gorbatchev, and Christensen assert this claim on behalf of the California Subclass.

334.    The FAL provides, in pertinent part:

> "It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property . . . to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement . . . which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

CAL. BUS. & PROF. CODE § 17500.

335.    Defendants violated the FAL by using false and misleading statements, and material omissions to promote the Phones. Defendants promoted false and misleading through advertising, marketing and other publications. Defendants knew, or through the exercise of reasonable care should have known, that their statements and material omissions were untrue and misleading to Plaintiffs and California Subclass members.

336.    Defendants' misrepresentations and omissions regarding the reliability and functionality of Phones were material and likely to deceive a reasonable consumer.

337.    Plaintiffs and California Subclass members have suffered an injury in fact, including the loss of money or property, as a result of Defendants' material misstatements and omissions. In purchasing their Phones, Plaintiffs and California Subclass members relied on the misrepresentations and/or omissions of Defendants with respect to the performance and reliability of the Phones. Defendants' representations were false: the Phones are defective.

338.    All of the wrongful conduct alleged herein occurred, and continues to occur, in the conduct of Defendants' business. Defendants' wrongful conduct is part of a pattern or generalized course of conduct that is still being perpetuated and repeated, both within California and nationwide.

339.    Plaintiffs, individually and on behalf of the California Subclass, request that this Court enter such orders or judgments as may be necessary to prohibit Defendants from continuing their pattern of using misleading statements and omissions and to restore to Plaintiffs and California Subclass members the money Defendants acquired through such statements and omissions, including restitution or restitutionary disgorgement, and for such other relief set forth below.

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

## COUNT X
### VIOLATIONS OF THE FLORIDA DECEPTIVE AND UNFAIR
### TRADE PRACTICES ACT ("FDUTPA")
### FLA. STAT. §§ 501.204, *et seq.*
### (Against Defendants)

340.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

341.    Martorello asserts this claim on behalf of the Florida Subclass.

342.    The FDUPTA prohibits "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce." FLA. STAT. § 501.204(1).

343.    Defendants' acts and practices are unfair in at least the following respects: Defendants knowingly sold Martorello and Florida Subclass members Phones with the Defects, refused to honor warranties, required consumers to wait several weeks to several months on warranty claims, and replaced Phones under warranty with other defective Phones.

344.    Defendants' acts and practices are contrary to Florida law and policy and constitute immoral, unethical, oppressive, and unscrupulous business practices that caused substantial injury to Martorello and Florida Subclass members. The gravity of the harm resulting from Defendants' unfair conduct outweighs any potential utility of the conduct. The practice of selling defective phones without providing an adequate remedy to cure the Defects harms the public at large and is part of a common and uniform course of wrongful conduct. There are reasonably available alternatives that would further Defendants' business interests of increasing sales and preventing false warranty claims. The harm from Defendants' unfair conduct was not reasonably avoidable by consumers.

345.    Defendants' acts and practices are deceptive because Defendants willfully failed to disclose and actively concealed the Defects in Phones; represented that Phones have characteristics, uses, benefits, and qualities which they do not have; represented that Phones are of a particular standard and quality when they are not; advertised Phones with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

346.    Defendants' deceptive acts and practices were likely to mislead consumers in acting reasonably in the circumstances, causing Martorello, and Florida Subclass members to purchase Phones with the Defects.

347.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

348.    Martorello and Florida Subclass members relied on Defendants to make full disclosure as to the true nature of the Phones, namely the existence of the Defects, and in reliance thereupon and in light of this omission, Martorello and Florida Subclass members were deceived. Had the Defects been disclosed, Martorello and Florida Subclass members would not have paid for their Phones, or would have paid less for them.

349.    Defendants' conduct proximately caused injuries to Martorello and Florida Subclass members.

350.    Martorello and Florida Subclass members were injured as a result of Defendants' conduct in that Martorello and Florida Subclass members overpaid for their Phones and did not receive the benefit of their bargain, and their Phones have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions.

351.    Martorello and Florida Subclass members are entitled to actual damages and, pursuant to FLA. STAT. § 501.2105, reasonable costs and attorneys' fees.

## COUNT XI
### VIOLATIONS OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT ("Illinois CFA")
### 815 ILL. COMP. STAT. §§ 505/1, *et seq.*
### (Against Defendants)

352.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

353.    Tran asserts this claim on behalf of the Illinois Subclass.

354.    Tran and Illinois Subclass members are "consumers" as that term is defined in 815 ILL. COMP. STAT. § 505/1(e).

355.    Defendants' acts or practices as set forth above occurred in the conduct of "trade" or "commerce" under 815 ILL. COMP. STAT. § 505/2.

356.    Defendants' acts and practices are unfair in at least the following respects: Defendants knowingly sold Tran and Illinois Subclass members Phones with the Defects, refused to honor warranties, required consumers to wait several weeks to several months on warranty claims, and replaced Phones under warranty with other defective Phones.

357.    Defendants' acts and practices are contrary to Illinois law and policy and constitute immoral, unethical, oppressive, and unscrupulous business practices that caused substantial injury to Tran and Illinois Subclass members. The gravity of the harm resulting from Defendants' unfair conduct outweighs any potential utility of the conduct. The practice of selling defective phones without providing an adequate remedy to cure the Defects harms the public at large and is part of a common and uniform course of wrongful conduct. There are reasonably available alternatives that would further Defendants' business interests of increasing sales and preventing false warranty claims. The harm from Defendants' unfair conduct was not reasonably avoidable by consumers.

358.    Defendants' acts and practices are deceptive because Defendants willfully failed to disclose and actively concealed the Defects in Phones; represented that Phones have characteristics, uses, benefits, and qualities which they do not have; represented that Phones are of a particular standard and quality when they are not; advertised Phones with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

359.    Defendants were aware that they were manufacturing, selling, and distributing Phones throughout the United States that did not perform as advertised, including in terms of quality, workmanship, and performance.

360.    Defendants' conduct and false representations/omissions were material to Tran and Illinois Subclass members.

361.    Defendants used deceptive acts and practices with intent that consumers, such as Tran and Illinois Subclass members, would rely upon Defendants representations and omissions in selecting and purchasing their Phones.

362.    Defendants intentionally and knowingly misrepresented or omitted material facts regarding the Phones with an intent to mislead Tran and Illinois Subclass members.

363.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Tran and Illinois Subclass members, about the true performance of Phones, the quality of Phones and the Google and Huawei brands, and the true value of the Phones.

364.    Defendants knew or should have known that its conduct violated the Illinois CFA.

365.    Defendants owed Tran and Illinois Subclass members a duty to disclose the Defects and the true performance of Phones because Defendants possessed exclusive knowledge of the Defects; because the Phones did not contain the qualities or characteristics, or perform, as advertised; because Defendants intentionally concealed the foregoing from Tran and Illinois Subclass members; and because Defendants made incomplete representations about the Phones while purposefully withholding material facts from and Tran and Illinois Subclass members that contradicted these representations.

366.    Because Defendants fraudulently concealed the Defects, the value of the Phones has greatly diminished and Tran and Illinois Subclass members overpaid for their Phones.

367.    Tran and Illinois Subclass members suffered ascertainable loss caused by Defendants' misrepresentations and concealment of material information relating to the Defects. Tran and Illinois Subclass members would have paid less for their Phones or would not have purchased them at all but for Defendants' violations of the Illinois CFA.

368.    As a direct and proximate result of Defendants' violations of the Illinois CFA, Tran and Illinois Subclass members have suffered injury in fact and actual damage.

369.    Pursuant to 815 ILL. COMP. STAT. § 505/10a(a), Tran, individually and on behalf of Illinois Subclass members, seeks actual damages as well as punitive damages (pursuant to 815 ILL. COMP. STAT. § 505/10a(c)), because Defendants acted with fraud and malice and were grossly negligent in selling phones they knew were substantially certain to fail.

370.    Tran and Illinois Subclass members also seek an order enjoining Defendants' unfair and deceptive acts or practices, reasonable attorneys' fees, and any other just and proper relief available under 815 ILL. COMP. STAT. § 505/1, *et seq.*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## COUNT XII
### VIOLATIONS OF THE ILLINOIS UNIFORM DECEPTIVE
### TRADE PRACTICES ACT ("Illinois DTPA")
### 815 ILL. COMP. STAT. §§ 510/1, *et seq.*
### (Against Defendants)

371.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

372.    Tran asserts this claim on behalf of the Illinois Subclass.

373.    Defendants are "persons" as defined in 815 ILL. COMP. STAT. § 510/1(5).

374.    In the course of Defendants' business, they willfully failed to disclose and actively concealed the Defects in Phones as described herein. Accordingly, Defendants engaged in deceptive trade practices as defined in 815 ILL. COMP. STAT. § 510/2, including representing that Phones have characteristics, uses, benefits, and qualities which they do not have; representing that Phones are of a particular standard and quality when they are not; advertising Phones with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

375.    Defendants intended for Tran and Illinois Subclass members to rely on their aforementioned unfair and deceptive acts and practices, including the misrepresentations and omissions alleged hereinabove.

376.    Defendants' actions as set forth above occurred in the course of their business.

377.    Defendants' knew or should have known that their conduct violated the Illinois DTPA.

378.    Defendants possessed exclusive knowledge of the Defects; the Phones did not contain the qualities or characteristics, or perform, as advertised; Defendants intentionally concealed the foregoing from Tran and Illinois Subclass members; and Defendants made incomplete representations about the Phones while purposefully withholding material facts from Tran and Illinois Subclass members that contradicted these representations. For each of these reasons, Defendants had a duty to disclose the Defects to Tran and Illinois Subclass members.

379.    Defendants' conduct and false representations and omissions were material to Tran and Illinois Subclass members in connection with their purchases of Phones.

65

380.     Tran and Illinois Subclass members suffered ascertainable loss caused by Defendants' misrepresentations and its concealment of and failure to disclose material information. Class members who purchased Phones either would have paid less for their Phones or would not have purchased them at all but for Defendants' violations of the Illinois DTPA.

381.     Defendants' conduct alleged herein proximately caused injuries to Tran and Illinois Subclass members.

382.     Tran and Illinois Subclass members were injured as a result of Defendants' conduct. Tran and Illinois Subclass members overpaid for their Phones and did not receive the benefit of their bargain. These injuries were the direct and natural consequence of Defendants' misrepresentations and omissions in violation of the Illinois DTPA.

383.     Pursuant to 815 ILL. COMP. STAT. § 510/3, Tran and Illinois Subclass members are entitled to an award of injunctive relief to prevent Defendants' deceptive trade practices and, because Defendants' conduct was willful, an award of reasonable attorneys' fees and costs.

## COUNT XIII
### VIOLATIONS OF THE INDIANA DECEPTIVE CONSUMER SALES ACT
IND. CODE §§ 24-5-0.5-1, *et seq.* ("IDCSA")
(Against Defendants)

384.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

385.     Beheler asserts this claim on behalf of the Indiana Subclass.

386.     The IDCSA provides for a private right of action by a person damaged by "relying upon an uncured or incurable deceptive act." IND. CODE 24-5-0.5-4(a).

387.     Additionally, the IDCSA expressly allows persons damaged by a "deceptive act" to maintain a class action. *Id.* § 24-5-0.5-4(b).

388.     The IDCSA defines a "deceptive act" as when a supplier commits an "unfair, abusive, or deceptive act, omission, or practice in connection with a consumer transaction" whether such conduct occurred before, during, or after the transaction. *Id.* § 24-5-0.5-3(a). Further, deceptive acts "include both implicit and explicit misrepresentations." *Id.*

389. The IDCSA enumerates some "representations as to the subject matter of the consumer transaction, made orally, in writing, or by electronic communication, by a supplier" that are considered *per se* deceptive acts. *Id*. § 24-5-0.5-3(b). Pertinent here are the following deceptive acts which Defendants have committed as alleged herein:

    a.    (b)(1): That such subject of a consumer transaction has sponsorship, approval, performance, characteristics, accessories, uses, or benefits it does not have which the supplier knows or should reasonably know it does not have.

    b.    (b)(2): That such subject of a consumer transaction is of a particular standard, quality, grade, style, or model, if it is not and if the supplier knows or should reasonably know that it is not.

    c.    (b)(8): That such consumer transaction involves or does not involve a warranty, a disclaimer of warranties, or other rights, remedies, or obligations, if the representation is false and if the supplier knows or should reasonably know that the representation is false.

390. Defendants represented that Phones are premium products of high quality, including (among other representations) that the Phones have high-performing batteries that will keep consumers "talking, texting, and apping into the night."

391. But Defendants sold Phones to Beheler and Indiana Subclass members that do not perform or have the characteristics, uses, benefits or quality that Defendants represented its Phones to have. Instead, Defendants sold Beheler and Indiana Subclass members smartphones that bootloop and cease operating despite indicating high percentages of remaining battery life.

392. Defendants have refused and continue to refuse to provide an adequate remedy for the problems that plague Phones.

393. As set forth herein, Defendants have engaged in multiple deceptive acts in violation of the IDCSA. Therefore, Beheler and Indiana Subclass members seek both injunctive relief and monetary damages against Defendants pursuant to the IDCSA, §§ 2, 4.

394. Furthermore, Defendants omitted and concealed information about the Defects from Beheler and Indiana Subclass members. Defendants had a duty to disclose the truth about Phones,

including the Defects, and Beheler and Indiana Subclass members could not have discovered the truth on their own. Beheler relied upon Defendants' representations and omissions with respect to Phones, and it was Defendants' concealment of the Defects that induced Beheler to purchase his Phone.

395. The Defects are incurable and cannot be remedied as indicated by the fact that attempted repairs and replacement devices result in the same problems for consumers.

396. As a result of Defendants' conduct alleged herein, Beheler and Indiana Subclass members have suffered irreparable harm. Beheler's and Indiana Subclass members' injuries were proximately caused by Defendants' conduct as alleged herein. Beheler, individually and on behalf of the Indiana Subclass, seek an award of damages for Defendants' willful violations of the IDCSA, costs, reasonable attorneys' fees, and such other relief deemed appropriate and proper by the Court.

### COUNT XIV
### VIOLATIONS OF THE MICHIGAN CONSUMER PROTECTION ACT
#### MICH. COMP. LAWS § 445.903, *et seq.* ("Michigan CPA")
#### (Against Defendants)

397. Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

398. Berry asserts this claim on behalf of the Michigan Subclass.

399. Berry and Michigan Subclass members are "person[s]" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d).

400. At all relevant times, Defendants were "persons" engaged in "trade or commerce" within the meaning of the MICH. COMP. LAWS § 445.902(1)(d) and (g).

401. The Michigan CPA prohibits "[u]nfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce . . . ." MICH. COMP. LAWS § 445.903(1). Defendants engaged in unfair, unconscionable, or deceptive methods, acts or practices prohibited by the Michigan CPA, including: "(c) Representing that goods or services have . . . characteristics . . . that they do not have"; "(e) Representing that goods or services are of a particular standard . . . if they are of another"; "(s) Failing to reveal a material fact, the omission of which tends to mislead or deceive the consumer, and which fact could not reasonably be known by the consumer"; "(y) Gross discrepancies between the oral representations of the seller and the written agreement covering the same transaction or failure of the other party to the transaction to provide the promised benefits";

"(bb) Making a representation of fact or statement of fact material to the transaction such that a person reasonably believes the represented or suggested state of affairs to be other than it actually is"; and "(cc) Failing to reveal facts that are material to the transaction in light of representations of fact made in a positive manner." MICH. COMP. LAWS § 445.903(1).

402.    In the course of its business, Defendants touted Phones as being of high quality while willfully failing to disclose the Defects discussed herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, and concealment, suppression, or omission of material facts with intent that others rely upon these methods in connection with the sale Phones.

403.    By failing to disclose the Defects, by marketing Phones as of high quality, and by presenting themselves as reputable manufacturers and distributors that stood behind their products after they were sold, Defendants engaged in deceptive business practices in violation of the Michigan CPA.

404.    Defendants' deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Berry and Michigan Subclass members, about the true performance of Phones, the quality of Defendants' brand, and the true value of the Phones.

405.    Defendants knew or should have known that their conduct violated the Michigan CPA.

406.    Defendants owed Berry a duty to disclose the Defects and the true performance of Phones because they possessed exclusive knowledge of the Defects in Phones; because the Phones did not contain the qualities or characteristics, or perform, as advertised; because Defendants intentionally concealed the foregoing from Berry and the Michigan Subclass; and because Defendants made incomplete representations about the Phones while purposefully withholding material facts from the Class that contradicted these representations.

407.    Defendants' false representations and omissions related to facts that were material to Berry and the Michigan Subclass. The concealed and misrepresented facts would have been highly important to a reasonable consumer in determining whether to purchase a Phone.

408.    Defendants' acts and practices are also unfair in at least the following respects: Defendants knowingly sold Berry and Michigan Subclass members Phones with the Defects, refused to honor warranties, required consumers to wait several weeks to several months on warranty claims, and replaced Phones under warranty with other defective Phones.

409.    Defendants' acts and practices are contrary to Michigan law and policy and constitute immoral, unethical, oppressive, and unscrupulous business practices that caused substantial injury to Berry and Michigan Subclass members. The gravity of the harm resulting from Defendants' unfair conduct outweighs any potential utility of the conduct. The practice of selling defective phones without providing an adequate remedy to cure the Defects harms the public at large and is part of a common and uniform course of wrongful conduct. There are reasonably available alternatives that would further Defendants' business interests of increasing sales and preventing false warranty claims. The harm from Defendants' unfair conduct was not reasonably avoidable by consumers.

410.    Berry and Michigan Subclass members suffered ascertainable loss caused by Defendants' misrepresentations and concealment of and failure to disclose material information, and failure to honor promised benefits in the form of express and implied warranties. Michigan Subclass members who purchased Phones either would have paid less for their Phones or would not have purchased them at all but for Defendants' violations of the Michigan CPA. Michigan Subclass members also suffered ascertainable loss through Defendants' failure to honor the warranties as promised.

411.    Defendants' conduct alleged herein proximately caused injuries to Berry and Michigan Subclass members.

412.    Berry and Michigan Subclass members were injured as a result of Defendants' conduct. Berry and Michigan Subclass members overpaid for their Phones and did not receive the benefit of their bargain. These injuries are the direct and natural consequence of Defendants' misrepresentations and omissions in violation of the Michigan CPA.

413.    Berry seeks injunctive relief to enjoin Defendants from continuing their unfair and deceptive acts; monetary relief against Defendants measured as the greater of (a) actual damages in an amount to be determined at trial and (b) statutory damages in the amount of $250 for Berry and

each Michigan Subclass member; reasonable attorneys' fees; and any other just and proper relief available under MICH. COMP. LAWS § 445.911.

414.    Berry also seeks punitive damages against Defendants because the conduct herein was willful and carried out with conscious disregard of the rights of others. Defendants intentionally and willfully misrepresented the qualities and characteristics of Phones, concealed material facts that only they knew, and repeatedly gave Michigan Subclass members the run-around, pointing fingers at one another and generally declining to take ownership of the problems alleged herein—all to avoid the expense and public relations nightmare of correcting the Defects in Phones. Defendants' unlawful conduct constitutes malice, oppression, and fraud warranting punitive damages.

## COUNT XV
## VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 349
### N.Y. GEN. BUS. LAW § 349
### (Against Defendants)

415.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

416.    Davydov asserts this claim on behalf of the New York Subclass.

417.    New York's General Business Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce."

418.    In the course of Defendants' business, they willfully failed to disclose and actively concealed the Bootloop Defect and Battery Drain Defect in Phones as described above.

419.    Accordingly, Defendants engaged in unfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices as defined in N.Y. GEN. BUS. LAW § 349, including representing that Phones have characteristics, uses, benefits, and qualities which they do not have; representing that Phones are of a particular standard and quality when they are not; advertising Phones with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

420.    Defendants' actions as set forth above occurred in the conduct of trade or commerce.

421.    Defendants' deception relates to widely consumed consumer products and therefore affects the public interest. Defendants' unlawful conduct constitutes unfair acts or practices that have the capacity to deceive consumers and are harmful to the public at large.

422.    Defendants' conduct proximately caused injuries to Davydov and New York Subclass members.

423.    Davydov and New York Subclass members have suffered ascertainable loss as a result of Defendants' conduct in that Davydov and New York Subclass members overpaid for their Phones and did not receive the benefit of their bargain, paid out of pocket costs relating to the Defect, and their Phones have suffered a diminution in value (to the extent they are even operable). These injuries are the direct and natural consequence of LG's misrepresentations and omissions.

424.    Davydov, individually and on behalf of the New York Subclass, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and deceptive practices. Davydov and New York Subclass members are entitled to recover their actual damages or $50, whichever is greater. Defendants acted willfully or knowingly, so Davydov and New York Subclass members are entitled to recover three times their actual damages. Davydov is also entitled to reasonable attorneys' fees.

**COUNT XVI**
**VIOLATIONS OF NEW YORK GENERAL BUSINESS LAW § 350**
**N.Y. GEN. BUS. LAW § 350**
**(Against Defendants)**

425.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

426.    Davydov asserts this claim on behalf of the New York Subclass.

427.    New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade or commerce[.]" False advertising includes "advertising, including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light of . . . representations [made] with respect to the commodity . . . ." N.Y. GEN. BUS. LAW § 350-a.

428.    Defendants caused to be made or disseminated through New York, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendants, to be untrue and misleading to consumers, including Davydov and New York Subclass members.

72

429.    Defendants have violated N.Y. GEN. BUS. LAW § 350 because the representations or omissions regarding the Defects in Phones as described above were material and likely to deceive a reasonable consumer.

430.    Davydov and New York Subclass members have suffered injury, including the loss of money or property, as a result of Defendants' false advertising. In purchasing Phones, Davydov and Class members relied on the misrepresentations and/or omissions of Defendants with respect to the quality, functionality, and performance of the Phones. Defendants' representations turned out to be untrue because the Phones are prone to failure, diminished or complete loss of functionality, and other failures as described hereinabove due to the Defects. Had Davydov and the New York Subclass members known this, they would not have purchased their Phones and/or paid as much for them.

431.    Accordingly, Davydov and New York Subclass members overpaid for their Phones and did not receive the benefit of the bargain.

432.    Davydov, individually and on behalf of the New York Subclass, request that this Court enter such orders or judgments as may be necessary to enjoin Defendants from continuing their unfair, unlawful, and deceptive practices. Davydov and New York Subclass members are entitled to recover their actual damages or $50, whichever is greater. Defendants acted willfully or knowingly, and Davydov and New York Subclass members are entitled to recover three times their actual damages (of up to $10,000 per individual). Davydov is also entitled to reasonable attorneys' fees.

### COUNT XVII
### VIOLATIONS OF THE NORTH CAROLINA UNFAIR
### AND DECEPTIVE TRADE PRACTICES ACT
### N.C. GEN. STAT. §§ 75-1.1, *et seq.* ("NCUDTPA")
### (Against Defendants)

433.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

434.    Harrison and Himes assert this claim on behalf of the North Carolina Subclass.

435.    The NCUDTPA prohibits a person from engaging in "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce[.]" The NCUDTPA provides a private right of action for any person injured "by reason of any act or thing

done by any other person, firm or corporation in violation of" the NCUDTPA. N.C. GEN. STAT. § 75-16.

436.    Defendants' acts and practices complained of herein were performed in the course of Defendants' trade or business and thus occurred in or affected "commerce," as defined in N.C. GEN. STAT. § 75-1.1(b).

437.    Defendants' acts and practices are unfair in at least the following respects: Defendants knowingly sold Harrison, Himes, and North Carolina Subclass members Phones with the Defects, refused to honor warranties, required consumers to wait several weeks to several months on warranty claims, and replaced Phones under warranty with other defective Phones.

438.    Defendants' acts and practices are contrary to North Carolina law and policy and constitute immoral, unethical, oppressive, and unscrupulous business practices that caused substantial injury to Harrison, Himes, and North Carolina Subclass members. The gravity of the harm resulting from Defendants' unfair conduct outweighs any potential utility of the conduct. The practice of selling defective phones without providing an adequate remedy to cure the Defects harms the public at large and is part of a common and uniform course of wrongful conduct. There are reasonably available alternatives that would further Defendants' business interests of increasing sales and preventing false warranty claims. The harm from Defendants' unfair conduct was not reasonably avoidable by consumers.

439.    Defendants' acts and practices are deceptive because Defendants willfully failed to disclose and actively concealed the Defects in Phones; represented that Phones have characteristics, uses, benefits, and qualities which they do not have; represented that Phones are of a particular standard and quality when they are not; advertised Phones with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

440.    Defendants' conduct proximately caused injuries to Harrison, Himes and North Carolina Subclass members.

441.    Defendants acted with willful and conscious disregard of the rights of others, subjecting Harrison, Himes, and North Carolina Subclass members to unjust hardship as a result, such that an award of punitive damages is appropriate.

442.    Harrison, Himes, and North Carolina Subclass members were injured as a result of Defendants' conduct in that Harrison, Himes, and North Carolina Subclass members overpaid for their Phones and did not receive the benefit of their bargain, and their Phones (to the extent operable) have suffered a diminution in value. These injuries are the direct and natural consequence of Defendants' violations alleged herein.

443.    Harrison and Himes, individually and on behalf of North Carolina Subclass, seek treble damages pursuant to N.C. GEN. STAT. § 75-16, and an award of reasonable attorneys' fees pursuant to N.C. GEN. STAT. § 75-16.1.

**COUNT XVIII**
**VIOLATIONS OF THE NORTH DAKOTA CONSUMER FRAUD ACT**
**N.D. CENT. CODE §§ 51-15-01, *et seq.* ("North Dakota CFA")**
**(Against Defendants)**

444.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

445.    Jones brings this claim on behalf of the North Dakota Subclass.

446.    The North Dakota CFA prohibits a person from engaging in "any deceptive act or practice, fraud, false pretense, false promise, or misrepresentation, with the intent that others rely thereon in connection with the sale or advertisement of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby." N.D. CENT. CODE § 51-15-02. The Phones are "merchandise" as defined by the North Dakota CFA. N.D. CENT. CODE § 51-15-02(3).

447.    The North Dakota CFA provides a private right of action against any person who has acquired money or property "by means of any practice declared to be unlawful" by the North Dakota CFA. N.D. CENT. CODE § 51-15-09.

448.    In the course of its business, Defendants willfully failed to disclose and actively concealed the defects discussed herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Phones.

449.    Defendants knew that Phones had defective components and knew that the Phones were equipped with the Bootloop and Battery Drain Defects, but concealed that information.

450.    By failing to disclose that the Phones were equipped with the defects, by marketing their Phones as reliable and of high quality, and by presenting themselves as reputable businesses in the smartphone industry that stand behind their Phones after they were sold, Defendants engaged in deceptive business practices in violation of the North Dakota CFA.

451.    Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Jones and North Dakota Subclass members, about the true performance of the Phones, the quality of the Google, Huawei, and Nexus brands, and the true value of the Phones.

452.    Defendants intentionally and knowingly misrepresented material facts regarding the Phones with an intent to mislead Jones and the North Dakota Subclass.

453.    As alleged above, Defendants made material statements about the quality and reliability of the Phones that were false and misleading.

454.    Defendants owed Jones and North Dakota Subclass members a duty to disclose the true performance and reliability of the Phones, because Defendants:

        a.    Possessed exclusive knowledge that the Phones included and are equipped with serious defects;

        b.    Intentionally concealed the foregoing from Jones and North Dakota Subclass members; and

        c.    Made incomplete representations about the reliability and performance of the Phones generally, and the Bootloop and Battery Drain Defects in particular, while purposefully withholding material facts from Jones and North Dakota Subclass members that contradicted these representations.

455.    Because Defendants fraudulently concealed the defects and the true performance of the Phones, the value of the Phones has greatly diminished (to the extent they are even operable).

456.    The true performance of Phones, fraudulently concealed by Defendants, was highly important and material to Jones and the North Dakota Subclass in connection with their Phone purchases.

457.    Jones and North Dakota Subclass members suffered ascertainable loss caused by Defendants' misrepresentations and concealment of and failure to disclose material information. Class members who purchased the Phones either would have paid less for their Phones or would not have purchased them at all but for Defendants' violations of the North Dakota CFA.

458.    Defendants' unlawful acts and practices complained of herein affect the public interest.

459.    As a direct and proximate result of Defendants' violations of the North Dakota CSPA, Jones and North Dakota Subclass members have suffered injury in fact and actual damage.

460.    Defendants knowingly committed the conduct described herein, and thus, under N.D. CENT. CODE § 51-15-09, are liable to Jones and the North Dakota Subclass for treble damages, as well as for reasonable attorneys' fees and costs.

**COUNT XIX**
**VIOLATIONS OF THE OHIO DECEPTIVE TRADE PRACTICES ACT**
**OHIO REV. CODE §§ 4165.01, *et seq.* ("ODTPA")**
**(Against Defendants)**

461.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

462.    Servodio asserts this claim on behalf of the Ohio Subclass.

463.    A "person" who is injured or who is likely to be injured as a result of a deceptive practice may maintain an action for relief under the statute. OHIO REV. CODE § 4165.03(A)(1)-(2).

464.    The ODTPA defines a "person" broadly to include, *inter alia*, a corporation, business trust, partnership, unincorporated association, and limited liability company. OHIO REV. CODE § 4165.01(D). As such, Servodio and Class members are "persons" within the meaning of the ODTPA.

465.    Defendants' conduct alleged herein violated the ODTPA by reason of Defendants doing the following in the course of business:

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

a. Representing that goods have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have or that a person has a sponsorship, approval, status, affiliation, or connection that the person does not have;

b. Representing that goods are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another; and

c. Advertising goods with intent not to sell them as advertised.

466. In the course of its business, Defendants willfully failed to disclose and actively concealed the defects discussed herein and otherwise engaged in activities with a tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression, or omission, in connection with the sale of Phones.

467. Defendants knew that Phones were defective and knew that the Phones were equipped with the Bootloop and Battery Drain Defects, but concealed that information.

468. By failing to disclose that the Phones were equipped with the defects, by marketing their Phones as reliable and of high quality, and by presenting themselves as reputable businesses in the smartphone industry that stand behind their Phones after they were sold, Defendants engaged in deceptive business practices in violation of the ODTPA.

469. Defendants' unfair or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Servodio and Ohio Subclass members, about the true performance of the Phones, the quality of the Google, Huawei, and Nexus brands, and the true value of the Phones.

470. Defendants intentionally and knowingly misrepresented material facts regarding the Phones with intent to mislead and induce purchases by Servodio and Ohio Subclass members.

471. As alleged above, Defendants made material statements about the quality and reliability of the Phones that were false and misleading.

472. Because Defendants fraudulently concealed the defects and the true performance of the Phones, the value of the Phones has greatly diminished (to the extent they are even operable).

473.    The true performance of Phones, fraudulently concealed by Defendants, was highly important and material to Servodio and the Ohio Subclass in connection with their Phone purchases.

474.    Servodio and Ohio Subclass members suffered ascertainable loss caused by Defendants' misrepresentations and concealment of and failure to disclose material information. Ohio Subclass members who purchased the Phones either would have paid less for their Phones or would not have purchased them at all but for Defendants' violations of the WCPA.

475.    As a direct and proximate result of Defendants' conduct as alleged herein and resulting violations of the ODTPA, Servodio and Ohio Subclass members have been injured, entitling Servodio and Ohio Subclass members to actual damages, injunctive relief, reasonable attorneys' fees due to Defendants' willful engagement in the conduct described herein, and all other relief that this Court deems appropriate.

### COUNT XX
### VIOLATIONS OF THE OHIO CONSUMER SALES PRACTICES ACT
#### OHIO REV. CODE §§ 1345.01, *et seq.* ("OCSPA")
#### (Against Defendants)

476.    Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

477.    Servodio asserts this claim on behalf of the Ohio Subclass.

478.    The OCSPA is broadly drafted, applying to the sale of consumer goods "to an individual for purposes that are primarily personal, family, or household [uses]." OHIO REV. CODE § 1345.01(A). Accordingly, the conduct at issue in this case clearly falls within the scope of the OCPSA.

479.    The OCSPA prohibits unfair, deceptive, and unconscionable practices in consumer sales transactions. OHIO REV. CODE § 1345.02(A).

480.    The OCSPA further provides that "a consumer" has a private cause of action for violations of the statute, and expressly allows for class actions. OHIO REV. CODE § 1345.09.

481.    Defendants' conduct, as alleged herein, is unfair, deceptive, and unconscionable in violation of the OCSPA.

482.    Defendants acted in the face of prior notice that their conduct was deceptive, unfair, or unconscionable. Material omissions and misrepresentations concerning Phones constitute a violation

of the statute. It is also a deceptive act or practice for purposes of the OCSPA if a supplier makes representations, claims, or assertions of fact in the absence of a reasonable basis in fact. *See* OHIO ADMIN CODE § 109:4-3-10(A).

483.    Defendants had specific notice that failing to honor express and implied warranties violates the OCSPA. *See, e.g.*, *Nee v. State Indus., Inc.*, 3 N.E.3d 1290, 1306 (Ohio Ct. App. 2013) (recognizing that "failure to honor an express warranty can constitute an unfair or deceptive act or practice under CSPA."); *Brown v. Decorator Carpets of Canton, Inc.*, 1979 WL 185083, at *2 (Ohio Ct. Com. Pl. Nov. 5, 1979) (finding suppliers who failed to honor express warranties liable under the OCSPA); *Mason v. Mercedes-Benz USA, LLC*, 2005 WL 1995087 at *5 (Ohio Ct. App. Aug. 18, 2005) (recognizing a breach of implied warranty of merchantability as the basis for OCSPA liability).

484.    Defendants' conduct is unfair in at least the following respects: Defendants sold Servodio and Ohio Subclass members Phones with the Defects, refused to honor warranties, required consumers to wait several weeks to several months on warranty claims, and replaced Phones under warranty with other defective Phones.

485.    Defendants' acts and practices are contrary to Ohio law and policy and constitute immoral, unethical, oppressive, and unscrupulous business practices that caused substantial injury to Servodio and Ohio Subclass members. The gravity of the harm resulting from Defendants' unfair conduct outweighs any potential utility of the conduct. The practice of selling defective phones without providing an adequate remedy to cure the Defects harms the public at large and is part of a common and uniform course of wrongful conduct. There are reasonably available alternatives that would further Defendants' business interests of increasing sales and preventing false warranty claims. The harm from Defendants' unfair conduct was not reasonably avoidable by consumers.

486.    As a direct and proximate result of Defendants' violations of the OCSPA, Servodio and the Ohio Subclass have been injured.

487.    Servodio and the Ohio Subclass have suffered injuries in fact and actual damages, including financial losses from out-of-pocket expenses, fees, loss of use, loss of personal intellectual property such as photos, and devaluation of Phones, resulting from Defendants' conduct and practices

in violation of the OCSPA. These injuries are of the type that the OCSPA was designed to prevent and are the direct and proximate result of Defendants' unlawful conduct.

**COUNT XXI**
**VIOLATIONS OF THE PENNSYLVANIA UNFAIR TRADE**
**PRACTICES AND CONSUMER PROTECTION LAW**
**PA. STAT. ANN. §§ 201-1, *et seq*. ("PAUTPCPL")**
**(Against Defendants)**

488.    Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

489.    Leone asserts this claim on behalf of the Pennsylvania Subclass.

490.    By failing to disclose and actively concealing the Defects in Phones, Defendants engaged in unlawful acts and practices prohibited by the PAUTPCPL, including (1) representing that the Phones have characteristics, uses, benefits, and qualities which they do not have, (2) representing that the Phones are of a particular standard, quality, and grade, or of a particular style or model when they are not, (3) advertising the Phones with the intent not to sell them as advertised, (4) engaging in acts or practices which are otherwise unfair, misleading, false, or deceptive to the consumer, and (5) failing to comply with the terms of any written guarantee or warranty given to the buyer at, prior to or after a contract for the purchase of goods or services made.

491.    Defendants' acts and practices are unfair in at least the following respects: Defendants knowingly sold Leone and Pennsylvania Subclass members Phones with the Defects, refused to honor warranties, required consumers to wait several weeks to several months on warranty claims, and replaced Phones under warranty with other defective Phones.

492.    Defendants' acts and practices are contrary to Pennsylvania law and policy and constitute immoral, unethical, oppressive, and unscrupulous business practices that caused substantial injury to Leone and Pennsylvania Subclass members. The gravity of the harm resulting from Defendants' unfair conduct outweighs any potential utility of the conduct. The practice of selling defective phones without providing an adequate remedy to cure the Defects harms the public at large and is part of a common and uniform course of wrongful conduct. There are reasonably available alternatives that would further Defendants' business interests of increasing sales and preventing false

warranty claims. The harm from Defendants' unfair conduct was not reasonably avoidable by consumers.

493. As alleged above, Defendants made numerous material statements about the characteristics, capabilities, and qualities of Phones that were either false or misleading. Each of these statements contributed to the deceptive context of Defendants' unlawful advertising and representations (and omissions) as a whole.

494. Defendants owed Leone and Pennsylvania Subclass members a duty to disclose the defective nature of the Phones because Defendants:

     a.    Possessed exclusive knowledge of the Defects;

     b.    Intentionally concealed the Defects in order to avoid an obligation to recall Phones or remedy the battery drain and bootlooping; and

     c.    Made incomplete representations about the characteristics and performance Phones, while purposefully withholding material facts from Leone and Pennsylvania Subclass members that contradicted these representations.

495. Defendants' deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Leone and Pennsylvania Subclass members, about the true performance and characteristics of Phones.

496. Leone and Pennsylvania Subclass members relied on Defendants' reputations and representations—along with Defendants' failure to disclose the Defects—in purchasing Phones.

497. As a result of their reliance, Leone and Pennsylvania Subclass members have been injured in an amount to be proven at trial, including, but not limited to, their lost benefit of the bargain and overpayment at the time of purchase and/or the diminished value of their Phones. If not enjoined, Defendants will continue to harm Leone and Pennsylvania Subclass members.

498. Among other injurious consequences attributable to the Defects, they caused the value of Phones to decrease.

499. Leone and Pennsylvania Subclass members are entitled to $100 or actual damages, whichever is greater. Leone and Pennsylvania Subclass members are also entitled to other relief as provided under the UTPCPL, including treble damages.

500.     Further, as provided for under PA. STAT. ANN. § 201-9.2, Leone seeks court costs and reasonable attorneys' fees as a result of Defendants' violations of the UTPCPL.

**COUNT XXII**
**VIOLATIONS OF THE TEXAS DECEPTIVE TRADE PRACTICES ACT**
**TEX. BUS. & COM. CODE §§ 17.41, *et seq.* ("TDTPA")**
**(Against Defendants)**

501.     Plaintiffs repeat and reallege the allegations above as if fully set forth herein.

502.     Poore asserts this Count on behalf of the Texas Subclass.

503.     The TDTPA provides that a person may not engage in any fraud, misleading or deceptive trade practice in the sale of any consumer good. *See* TEX. BUS. & COM. CODE § 17.46.

504.     Poore and Defendants are "persons" within the meaning of the TDTPA. *See* TEX. BUS. & COM. CODE § 17.45(3).

505.     The Phones are "goods" under the TDTPA. *See id.* § 17.45(1).

506.     Poore and Texas Subclass members are "consumers" as defined in the TDTPA. *See id.* § 17.45(4).

507.     Defendants have at all relevant times engaged in "trade" and "commerce" as defined under TDTPA Section 17.45(6), by advertising, offering for sale, selling, and/or distributing the Phones in Texas, directly or indirectly affecting Texas citizens through that trade and commerce.

508.     In the course of its business, Defendants sold Phones with the Battery Drain and Bootloop Defects. Defendants concealed and omitted to disclose these problems and otherwise engaged in activities with the tendency or capacity to deceive. Defendants also engaged in unlawful trade practices by employing deception, deceptive acts or practices, fraud, misrepresentations, or concealment, suppression or omission, in connection with sales of Phones.

509.     Defendants acted in violation of the TDTPA by, among other violations:

  a.     representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which the person does not;

b.    representing that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another;

c.    advertising goods or services with intent not to sell them as advertised; and

d.    failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed.

TEX. BUS. & COM. CODE § 17.46(b)(5), (7), (9), (24).

510.    Defendants have known of the Defects in Phones from complaints and communications by Poore and Texas Subclass members, but continued to conceal the Defects in order to induce sales.

511.    By willfully failing to disclose and actively concealing the Defects, by marketing Phones as of high quality, and by presenting themselves as reputable smartphone manufacturers and distributors that stood by their products after they were sold when Defendants in fact do not, Defendants engaged in false, misleading, and deceptive business practices in violation of the TDTPA.

512.    Defendants' false, misleading, or deceptive acts or practices were likely to and did in fact deceive reasonable consumers, including Poore and Texas Subclass members, about the quality, workmanship, performance, and true value of the defective Phones.

513.    Defendants intentionally and knowingly misrepresented material facts regarding the Phones with intent to mislead Poore and Texas Subclass members.

514.    Defendants owed Poore and Texas Subclass members a duty to disclose the Defects because Defendants possess exclusive knowledge about the Defects; because the Phones did not contain the qualities or characteristics, or perform, as advertised; because Defendants intentionally concealed the foregoing from Poore and Texas Subclass members; and because Defendants made incomplete, false or misleading representations about the characteristics, quality, workmanship, value, and performance of Phones while purposefully withholding material facts from Poore and Texas Subclass members that contradicted these representations.

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

515. Poore and Texas Subclass members overpaid for Phones due to Defendants' conduct described herein. The Defects in Phones caused to incur out-of-pocket expenses and other damages. Poore and Texas Subclass members have suffered ascertainable losses.

516. Poore and Texas Subclass members seek an injunction forbidding Defendants from committing similar violations, as provided by TEX. BUS. & COM. CODE § 17.50(b)(2), as well as court costs and reasonable and necessary attorneys' fees as provided for by TEX. BUS. & COM. CODE § 17.50(d).

517. On or about April 19, 2017, Poore notified Defendants of the damage and Defect in his Phone in satisfaction of TEX. BUS. & COM. CODE § 17.505. Poore has made pre-suit attempts to remedy the Defect in his Phone, to no avail.

## COUNT XXIII
### VIOLATIONS OF WASHINGTON CONSUMER PROTECTION ACT
#### WASH. REV. CODE §§ 19.86, *et seq.* ("WCPA")
#### (Against Defendants)

518. Plaintiffs reallege and incorporate by reference all paragraphs as though fully set forth herein.

519. Johnston asserts this claim on behalf of himself and the Washington Subclass.

520. The WCPA broadly prohibits and makes unlawful to commit "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." WASH. REV. CODE ANN. § 19.86.020. The WCPA provides a private right of action for "[a]ny person who is injured in his or her business or property" by violations of the Act. WASH. REV. CODE § 19.86.090.

521. Defendants' actions as set forth herein occurred in the conduct of "trade" or "commerce" under the WCPA. WASH. REV. CODE § 19.86.010(2).

522. Defendants' acts and practices are unfair in at least the following respects: Defendants knowingly sold Johnston and Washington Subclass members Phones with the Defects, refused to honor warranties, required consumers to wait several weeks to several months on warranty claims, and replaced Phones under warranty with other defective Phones.

523.    Defendants' acts and practices are contrary to Washington law and policy and constitute immoral, unethical, oppressive, and unscrupulous business practices that caused substantial injury to Johnston and Washington Subclass members. The gravity of the harm resulting from Defendants' unfair conduct outweighs any potential utility of the conduct. The practice of selling defective phones without providing an adequate remedy to cure the Defects harms the public at large and is part of a common and uniform course of wrongful conduct. There are reasonably available alternatives that would further Defendants' business interests of increasing sales and preventing false warranty claims. The harm from Defendants' unfair conduct was not reasonably avoidable by consumers.

524.    Defendants' acts and practices are deceptive because Defendants willfully failed to disclose and actively concealed the Defects in Phones; represented that Phones have characteristics, uses, benefits, and qualities which they do not have; represented that Phones are of a particular standard and quality when they are not; advertised Phones with the intent not to sell them as advertised; and otherwise engaging in conduct likely to deceive.

525.    Defendants' acts or practices were likely to and did in fact deceive reasonable consumers, including Johnston and Washington Subclass members, about the true performance of the Phones, the quality of the Google, Huawei, and Nexus brands, and the true value of the Phones.

526.    Defendants intentionally and knowingly misrepresented material facts regarding the Phones with an intent to mislead Johnston and Washington Subclass members.

527.    As alleged above, Defendants made material statements about the quality and reliability of the Phones that were either false or misleading.

528.    Defendants owed Johnston and Washington Subclass members a duty to disclose the true performance and reliability of the Phones, because Defendants:

a.    Possessed exclusive knowledge that the Phones included and are equipped with defects;

b.    Intentionally concealed the foregoing from Johnston and Washington Subclass members; and/or

c.     Made incomplete representations about the reliability and performance of the Phones generally, and the Bootloop and Battery Drain Defects in particular, while purposefully withholding material facts from Johnston and the Class that contradicted these representations.

529.    Because Defendants fraudulently concealed the defects and the true performance of the Phones, the value of the Phones has greatly diminished (to the extent they are even operable).

530.    The true performance of Phones, fraudulently concealed by Defendants, was highly important and material to Johnston and the Washington Subclass in connection with their Phone purchases.

531.    Johnston and Washington Subclass members suffered ascertainable loss caused by Defendants' misrepresentations and concealment of and failure to disclose material information. Class members who purchased the Phones either would have paid less for their Phones or would not have purchased them at all but for Defendants' violations of the WCPA.

532.    As a direct and proximate result of Defendants' violations of the WCPA, Johnston and Washington Subclass members suffered injury in fact and actual damage.

533.    Defendants' actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and wanton and reckless with respect to the rights of Johnston and Washington Subclass members.

534.    Johnston, on behalf of himself and the Washington Subclass members, seeks relief under WASH. REV. CODE § 19.86.090, including, but not limited to, actual damages, treble damages, injunctive relief, and reasonable attorneys' fees and costs.

535.  In accordance with WASH. REV. CODE § 19.86.095, a copy of this Consolidated Amended Complaint has been served on the Attorney General of Washington.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and the members of the Class, respectfully request that this Court:

A.     Certify this case as a class action under FED. R. CIV. P. 23 and appoint Plaintiffs as class representatives and counsel for Plaintiffs as Class Counsel;

1          B.     Award all actual, general, special, rescissory, incidental, statutory, punitive and

2   consequential damages to which Plaintiffs and Class members are entitled;

3          C.     Award pre-judgment and post-judgment interest on such monetary relief;

4          D.     Grant appropriate injunctive and/or declaratory relief, including, without

5   limitation, an order that requires Defendants to repair, recall, and/or replace the Phones and to extend

6   the applicable warranties to a reasonable period of time, or, at a minimum, to provide Plaintiffs and

7   Class members with appropriate curative notice regarding the existence and cause of the Defect;

8          E.     Award Plaintiffs and Class members restitution or other equitable relief;

9          F.     Award Plaintiffs and Class members their reasonable costs and expenses

10  incurred in this action, including counsel fees and expert fees; and

11         G.     Award such other and further relief as the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

12  

13     Plaintiffs respectfully demand a jury trial for all claims so triable.

14

15  Dated: May 23, 2017         Respectfully submitted,

16

17                    By:    */s/ Benjamin F. Johns*

18                    Benjamin F. Johns (*pro hac vice*)

19                    Andrew W. Ferich (*pro hac vice*)
                        Jessica L. Titler (*pro hac vice*)

20                    **CHIMICLES & TIKELLIS LLP**

21                    361 W. Lancaster Avenue
                        Haverford, Pennsylvania 19041

22                    Tel: (610) 642-8500
                        bfj@chimicles.com

23                    awf@chimicles.com
                        jt@chimicles.com

24

25                    Daniel C. Girard (State Bar No. 114826)
                        Jordan Elias (State Bar No. 228731)

26                    Simon S. Grille (State Bar No. 294914)

27                    **GIRARD GIBBS LLP**
                        601 California Street, 14th Floor

28                    San Francisco, California 94108
                        Tel: (415) 981-4800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

dcg@girardgibbs.com
je@girardgibbs.com
sg@girardgibbs.com

Cory S. Fein (State Bar No. 250758)
**Cory Fein Law Firm**
712 Main St., #800
Houston, TX 77002
Tel: (415) 981-4800
Fax: (530) 748-0601
cory@coryfeinlaw.com

*Attorneys for Plaintiffs and the Proposed Class*

CONSOLIDATED AMENDED COMPLAINT
CASE NO. 5:17-CV-02185-BLF

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **CERTIFICATE OF SERVICE**

I, Benjamin F. Johns, certify that on May 23, 2017, I caused the foregoing Consolidated Amended Complaint to be filed using the Court's CM/ECF system, thereby causing it to be served upon all registered ECF users in this case.


*Benjamin F. Johns*
Benjamin F. Johns