# EXHIBIT A

Davidson v. Kimberly-Clark Corporation, 873 F.3d 1103 (2017)
17 Cal. Daily Op. Serv. 10,192, 2017 Daily Journal D.A.R. 10,134

Case 5:17-cv-02185-BLF   Document 103-1   Filed 01/03/18   Page 2 of 11

873 F.3d 1103
United States Court of Appeals,
Ninth Circuit.

Jennifer DAVIDSON, an individual on behalf of herself, the general public and those similarly situated, Plaintiff-Appellant,
v.
KIMBERLY–CLARK CORPORATION; Kimberly–Clark Worldwide, Inc.; Kimberly–Clark Global Sales, LLC, Defendants-Appellees

No. 15-16173
|
Argued and Submitted May 18, 2017—San Francisco, California
|
Filed October 20, 2017

**Synopsis**
**Background:** Consumer brought state action against manufacturer of personal cleansing wipes, alleging that manufacturer falsely advertised that wipes were "flushable," in violation of California's Consumer Legal Remedies Act (CLRA), California's False Advertising Law (FAL), and California's Unfair Competition Law (UCL). Following removal, the United States District Court for the Northern District of California, No. 4:14-cv-01783-PJH, Phyllis J. Hamilton, Chief Judge, 76 F.Supp.3d 964, dismissed. Consumer appealed.

**Holdings:** The Court of Appeals, Murgia, Circuit Judge, held that:

[1] consumer pled with sufficient particularity that term "flushable" was false;

[2] consumer sufficiently alleged economic injury;

[3] as matter of first impression, previously deceived consumer could have standing to seek injunction against false advertising or labeling; and

[4] consumer had standing to seek injunctive relief.

Reversed and remanded.

Berzon, Circuit Judge, filed concurring opinion.

**\*1106** Appeal from the United States District Court for the Northern District of California, Phyllis J. Hamilton, Chief Judge, Presiding, D.C. No. 4:14-cv-01783-PJH.

**Attorneys and Law Firms**

Matthew T. McCrary (argued), Kristen G. Simplicio, Seth A. Safier, and Adam J. Gutride, Gutride Safier LLP, San Francisco, California, for Plaintiff-Appellant.

Constantine L. Trela, Jr. (argued), Sidley Austin LLP, Chicago, Illinois; Michelle Goodman and Amy Lally, Sidley Austin LLP, Los Angeles, California; Naomi Igra, Sidley Austin LLP, San Francisco, California; for Defendants-Appellees.

Before: Marsha S. Berzon and Mary H. Murguia, Circuit Judges, and Jon P. McCalla,[*] District Judge.

[*] The Honorable Jon P. McCalla, United States District Judge for the Western District of Tennessee, sitting by designation.

Concurrence by Judge Berzon

OPINION

MURGIA, Circuit Judge:

Under California's consumer protection laws, a consumer who pays extra for a falsely labeled or advertised product may recover the premium she paid for that product. California law also permits that consumer to seek a court order requiring the manufacturer of the product to halt its false advertising. California has decided that its consumers have a right, while shopping in a store selling consumer goods, to rely upon the statements made **\*1107** on a product's packaging. Today, we hold that California consumers who can seek in California state court an order requiring the manufacturer of an allegedly falsely advertised product to cease the false advertising may also seek such an order in federal court. A consumer's inability to rely in the future upon a representation made on a package, even if the consumer knew or continued to believe the same representation was false in the past, is an

ongoing injury that may justify an order barring the false advertising.

In this case, Jennifer Davidson paid extra for wipes labeled as "flushable" because she believed that flushable wipes would be better for the environment, and more sanitary, than non-flushable wipes. Davidson alleges that the wipes she purchased, which were manufactured and marketed by Kimberly–Clark Corporation, were not, in fact, flushable. Davidson seeks to recover the premium she paid for the allegedly flushable wipes, as well as an order requiring Kimberly–Clark to stop marketing their wipes as "flushable." Davidson has plausibly alleged that Kimberly–Clark engaged in false advertising. Davidson has also plausibly alleged that she will suffer further harm in the absence of an injunction. We therefore reverse the district court and remand this case for further proceedings.

## I. BACKGROUND

### A. Factual Allegations [1]

[1] The following allegations are taken from the operative first amended complaint ("FAC"). At this stage of the proceedings, we must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

Defendants-appellees Kimberly–Clark Corporation, Kimberly–Clark Worldwide, Inc., and Kimberly–Clark Global Sales, LLC (collectively "Kimberly–Clark") manufacture and market four types of pre-moistened wipes: Cottonelle Wipes, Scott Wipes, Huggies Wipes, and Kotex Wipes. Each of the four products are marketed and sold as "flushable." Kimberly–Clark charges a premium for these flushable wipes, as compared to toilet paper or wipes that are not marketed as "flushable." Each of the four flushable wipes products contains a statement on the package (or on the website associated with the product) stating, in various ways, that the product "breaks up after flushing."

In 2013, Davidson was shopping at a Safeway in San Francisco when she came across Scott Wipes. Davidson saw the word "flushable" on the Scott Wipes package and noticed that the Scott Wipes were more expensive than wipes that did not have the word "flushable" on the package. According to Davidson, flushable ordinarily means "*suitable* for disposal down a toilet," not simply "*capable* of passing from a toilet to the pipes after one flushes." Davidson maintains that this ordinary meaning of flushable is understood by reasonable consumers, who expect a flushable product to be suitable for disposal down a toilet. Consistent with that understanding, the Merriam-Webster dictionary defines flushable as "suitable for disposal by flushing down a toilet," and a nonprofit organization of water quality professionals states that a flushable item must completely disperse within five minutes of flushing. In other words, "truly flushable products, such as toilet paper, ... disperse within seconds or minutes."

Davidson was concerned about products that were not suitable for flushing because she remembered hearing stories about people flushing items that should not be flushed, which then caused problems with home plumbing systems and municipal wastewater treatment facilities. Davidson **\*1108** did not want to cause such damage to her plumbing or to San Francisco's wastewater treatment facilities. Davidson reviewed the front and back of the Scott Wipes package and did not see anything indicating that the wipes were not suitable for flushing. Believing it would be easier and more sanitary to flush wipes than to throw them in the garbage, Davidson purchased the Scott Wipes.

Once Davidson began using the Scott Wipes, she noticed that each wipe felt sturdy and thick, unlike toilet paper. Davidson also noticed that the wipes did not disperse in the toilet bowl like toilet paper. After using the wipes several times, Davidson became concerned that the wipes were not truly flushable, so she stopped using the Scott Wipes altogether. Davidson investigated the matter further and learned that flushable wipes caused widespread damage to home plumbing and municipal sewer systems. This research "further[ed] her concerns that the [Scott] Wipes were not in fact appropriate for disposal by flushing down a toilet."

Davidson has never again purchased flushable wipes. Yet Davidson "continues to desire to purchase wipes that are suitable for disposal in a household toilet," and "would purchase truly flushable wipes manufactured by [Kimberly–Clark] if it were possible to determine prior to purchase if the wipes were suitable to be flushed." Davidson regularly visits stores that sell Kimberly–Clark's flushable wipes but is unable to determine, based on

Case 5:17-cv-02185-BLF Document 103-1 Filed 01/03/18 Page 4 of 11

Davidson v. Kimberly-Clark Corporation, 873 F.3d 1103 (2017)
17 Cal. Daily Op. Serv. 10,192, 2017 Daily Journal D.A.R. 10,134

the packaging, whether the wipes are truly flushable. Davidson would not have purchased the Scott Wipes, or would have paid less for the Scott Wipes, had Kimberly–Clark not "misrepresented (by omission and commission) the true nature of their Flushable Wipes."

In addition to her experience with the Scott Wipes she purchased, Davidson alleges more broadly that all four flushable wipes products Kimberly–Clark manufactured and marketed "are not in fact flushable, because the wipes are not suitable for disposal by flushing down a household toilet." Kimberly–Clark manufactures these products with strong fibers that do not efficiently disperse when placed in a toilet. Kimberly–Clark's own testing demonstrates that the flushable wipes products break down in water at a significantly lower rate than toilet paper. Numerous news stories describe how flushable wipes have clogged municipal sewage systems, thereby requiring costly repairs. Consumers who have purchased some of the Kimberly–Clark flushable wipes products have lodged complaints on Kimberly–Clark's website that the flushable wipes damaged their septic tanks or plumbing.

Based on these allegations, Davidson brought four California state law causes of action against Kimberly–Clark, including for common law fraud and for violations of the Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*, False Advertising Law ("FAL"), California Business & Professions Code § 17500, *et seq.*, and Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.* Davidson sought restitution, injunctive relief, and actual, punitive, and statutory damages on her CLRA claim; restitution and injunctive relief on her FAL and UCL claims; and compensatory and punitive damages on her common law fraud claim. Davidson sought to certify a class of all persons who purchased Cottonelle Wipes, Scott Wipes, Huggies Wipes, and Kotex Wipes in California between March 13, 2010 and the filing of the FAC on September 5, 2014.

### B. Procedural History

Davidson initially filed this case in state court, but Kimberly–Clark removed it to federal court pursuant to the Class Action **\*1109** Fairness Act, 28 U.S.C. § 1332(d)(2). The district court denied in part and granted in part Kimberly–Clark's motion to dismiss the original complaint. In response, Davidson filed the operative FAC. Kimberly–Clark moved to dismiss the FAC, and the district court granted the motion, this time with prejudice. First, the district court granted Kimberly–Clark's Federal Rule of Civil Procedure ("Rule") 12(b)(1) motion to dismiss Davidson's injunctive relief claims, finding that Davidson lacked standing to seek injunctive relief because she was unlikely to purchase Kimberly–Clark's flushable wipes in the future. Second, the district court granted Kimberly–Clark's motion to dismiss the FAC pursuant to Rules 9(b) and 12(b)(6), concluding that Davidson had failed to adequately allege why the representation "flushable" on the package was false. Finally, the district court concluded that Davidson "failed to allege damage under the UCL/FAL/CLRA or common law fraud" causes of action, because Davidson had not alleged that she suffered any harm due to her use of the Scott Wipes.

Davidson filed a motion for reconsideration under Rules 59(e) and 60(b), which the district court denied. First, the district court rejected Davidson's argument that it should have remanded the injunctive relief claims to state court. Second, the district court rejected Davidson's argument that it should have dismissed the FAC without prejudice so that Davidson could file a second amended complaint curing the alleged defects in the FAC. Third, the district court rejected Davidson's argument that the district court erred by ruling that Davidson had not adequately pled damages. Davidson timely appealed.

Davidson appeals six of the district court's rulings. First, Davidson argues that the district court erred by dismissing the FAC pursuant to Rule 9(b) for failure to adequately allege why the representation "flushable" was false. Second, Davidson argues that the district court erred by dismissing the FAC pursuant to Rule 12(b)(6) on the basis that Davidson had not suffered any damages. Third, Davidson argues that the district court erred by dismissing the original complaint pursuant to Rule 12(b)(6) for failing to plead how she came to believe the wipes were not flushable. Fourth, Davidson argues that the district court abused its discretion in striking, pursuant to Rule 12(f), references to newspaper reports in the original complaint. Fifth, Davidson argues that the district court abused its discretion by denying Davidson leave to amend her FAC. Finally, Davidson argues that the district court erred by dismissing her injunctive relief claims pursuant to Rule 12(b)(1) for lack of standing.

Davidson v. Kimberly-Clark Corporation, 873 F.3d 1103 (2017)
17 Cal. Daily Op. Serv. 10,192, 2017 Daily Journal D.A.R. 10,134

Case 5:17-cv-02185-BLF   Document 103-1   Filed 01/03/18   Page 5 of 11

## II. STANDARD OF REVIEW

[1] [2] [3] [4] [5] We review de novo dismissals under Rule 9(b) for failure to plead fraud with particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). We review de novo dismissals under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Crowley v. Nevada ex. rel. Nev. Sec'y of State*, 678 F.3d 730, 736 (9th Cir. 2012). A district court's decision granting a motion to strike allegations in a complaint pursuant to Rule 12(f) is reviewed for abuse of discretion. *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). Similarly, a district court's decision dismissing a complaint with prejudice, which thereby denies the plaintiff an opportunity to amend her complaint, is reviewed for abuse of discretion. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009). Finally, we review de novo dismissals under Rule 12(b)(1) for lack of subject-matter jurisdiction. *Novak v. United States*, 795 F.3d 1012, 1017 (9th Cir. 2015).

## *1110 III. DISCUSSION

### A. Theory of Fraud

[6] The district court dismissed the FAC pursuant to Rule 9(b) because it concluded that Davidson failed to adequately allege "why" the representation that the wipes were flushable was false. Davidson argues that the district court overlooked the FAC's "numerous, detailed factual allegations establishing that Defendants' wipes fail to disperse and therefore cause clogs and problems with sewer and septic systems." Kimberly–Clark argues that Davidson must allege that she experienced problems with her home plumbing or the relevant water treatment plant —allegations that are indisputably lacking in the FAC.

[7] Because Davidson's common law fraud, CLRA, FAL, and UCL causes of action are all grounded in fraud, the FAC must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b). *Kearns*, 567 F.3d at 1125 ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (explaining that even "[i]n cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct," and in such cases, Rule 9(b)'s heightened pleading requirement must be met). "In alleging fraud ... a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To properly plead fraud with particularity under Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks and alterations omitted); *Vess*, 317 F.3d at 1106 ("The plaintiff must set forth what is false or misleading about a statement, and why it is false." (quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994))).

Assuming the truth of the allegations and construing them, as we must, in the light most favorable to Davidson, *Daniels-Hall*, 629 F.3d at 998, we hold that the FAC adequately alleged why the term "flushable" is false.[2] Davidson's theory of fraud is simple: "Unlike truly flushable products, such as toilet paper, which disperse and disintegrate within seconds or minutes, [Kimberly–Clark's flushable wipes] take hours to break down" or disperse, creating a risk that the wipes will damage plumbing systems, septic tanks, and municipal wastewater treatment facilities. Davidson alleged that flushable means "suitable for being flushed," which requires an item to be capable of dispersing within a short amount of time. This definition of flushable is supported by multiple allegations in the FAC, including dictionary definitions and Kimberly–Clark's own *1111 statement on its website that its flushable wipes "are flushable due to patented technology that allows them to lose strength and *break up when moving through the system after flushing*." In contrast to truly flushable or dispersible products, Davidson alleged, Kimberly–Clark's flushable wipes "take hours to begin to break down."

[2] Davidson argues that to survive Rule 12(b)(6), she need only plead enough facts to plausibly demonstrate that a reasonable consumer may be misled. Her observation is correct. *See Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (finding that UCL, CLRA, and FAL claims are governed by the "reasonable consumer standard," under which a plaintiff need only "show that members of the public are likely to be deceived" (internal quotation marks omitted)). The

district court, however, did not dismiss the FAC only under Rule 12(b)(6), but also under Rule 9(b). Under Rule 9(b), Davidson was required not simply to adequately plead that reasonable consumers are likely to be deceived by Kimberly–Clark's use of the designation "flushable," but also *why* the designation "flushable" is false. See Kearns, 567 F.3d at 1125.

Importantly, Davidson alleged that the actual wipes she purchased failed to "disperse and disintegrate within seconds or minutes." For example, Davidson alleged that after using the wipes, she "noticed that each individual wipe felt very sturdy and thick, unlike toilet paper" and that "[s]he also noticed that the wipes did not break up in the toilet bowl like toilet paper but rather remained in one piece." Her personal experience is supported by additional allegations, including Kimberly–Clark's own testing of the wipes.

[8] Kimberly–Clark argues that Davidson was required to allege damage to her pipes or her sewage system because "suitable for flushing" means that the wipes "would not cause problems in her plumbing or at the water treatment plant." But Kimberly–Clark justifies this theory by taking a single allegation in the FAC out of context. The FAC admittedly contains many allegations about how Kimberly–Clark's flushable wipes and other wipes marketed as "flushable" can cause damage to pipes and sewage systems. But these allegations are extraneous and do not detract from Davidson's basic theory of fraud: that "truly flushable products ... disperse and disintegrate within seconds or minutes," and Kimberly–Clark's flushable wipes do not "disperse and disintegrate within seconds or minutes." Since "[d]ismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory," Navarro v. Block, 250 F.3d 729, 732 (9th Cir. 2001), and since Davidson alleged a cognizable legal theory, dismissal was not appropriate in this case. See Deutsch v. Flannery, 823 F.2d 1361, 1365 (9th Cir. 1987) ("[A] pleading satisfies the particularity requirement [of Rule 9(b)] if it identifies the circumstances constituting fraud so that the defendant can prepare an adequate answer from the allegations." (internal quotation marks omitted)).

For these reasons, we hold that the FAC adequately alleged that Kimberly–Clark's use of the word "flushable" was false because the Scott Wipes Davidson purchased did not disperse as a truly flushable product would have.

**B. Harm**

[9] The district court also dismissed Davidson's FAC in part because Davidson had not alleged that she suffered any damages. When Davidson questioned this conclusion in her motion for reconsideration, the district court clarified that Davidson "had not pled facts showing that her use of the wipes damaged her plumping, pipes, or septic system."

[10] However, Davidson was not required to allege damage to her plumbing or pipes. Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action. *See, e.g.*, Cal. Bus. & Prof. Code § 17203 (requiring that an individual plead that she lost "money or property" because of the alleged deceptive conduct); Cal. Civ. Code § 1780(a) (stating that a plaintiff asserting a cause of action under the CLRA need only plead that she suffered "any damage"); Hinojos v. Kohl's Corp., 718 F.3d 1098, 1104 (9th Cir. 2013) ("The lost money or property requirement therefore requires a plaintiff to demonstrate some form of economic injury as a result of his transactions with the defendant." (internal quotation marks omitted)). Thus, a consumer's **\*1112** allegation that "she would not have bought the product but for the misrepresentation ... is sufficient to allege causation ... [and] to allege economic injury." Kwikset Corp. v. Superior Court, 51 Cal.4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877, 890 (2011).

[11] To properly plead an economic injury, a consumer must allege that she was exposed to false information about the product purchased, which caused the product to be sold at a higher price, and that she "would not have purchased the goods in question absent this misrepresentation." Hinojos, 718 F.3d at 1105. Davidson did that here. Davidson alleged that "[h]ad [Kimberly–Clark] not misrepresented (by omission and commission) the true nature of their Flushable Wipes, [she] would not have purchased [Kimberly–Clark's] product or, at a very minimum, she would have paid less for the product," and that "[Kimberly–Clark] charge[d] a premium price for flushable wipes." Because Davidson only needed to allege an economic injury to state a claim for relief, and because Davidson alleges that she paid a premium price for the Scott Wipes, Davidson has properly alleged that she was injured by Kimberly–Clark's allegedly false advertising.

### C. Dismissal of the Original Complaint

The district court stated in its order dismissing the original complaint that "plaintiff has not alleged facts showing how she came to believe that the [Scott Wipes] were not flushable." Davidson argues that this requirement "does not exist in law." According to Kimberly–Clark, the statement simply reflected the district court's observation that Davidson had not alleged facts about her own experience.

Davidson was required to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso*, 637 F.3d at 1055 (internal quotation marks and alterations omitted). To the extent the district court dismissed the original complaint because Davidson failed to allege facts "showing how she came to believe that the [Scott Wipes] were not 'flushable,'" the district court erred. We are aware of no authority that specifically requires a plaintiff bringing a consumer fraud claim to allege how she "came to believe" that the product was misrepresented when, as in this case, all the Rule 9(b) considerations have been met.

### D. Article III Standing for Injunctive Relief

Finally, we address the most challenging issue in this case: whether Davidson has standing to seek injunctive relief.[3] The district court concluded that Davidson lacked standing to assert a claim for injunctive relief, because Davidson "has no intention of purchasing the same Kimberly–Clark product in the future." Davidson argues that she has alleged a cognizable injury that establishes Article III standing to seek injunctive relief because (1) she will be unable to rely on the label "flushable" when deciding in the future whether to purchase Kimberly–Clark's wipes, and (2) Kimberly–Clark's false advertising threatens to invade her statutory right, created by the UCL, CLRA, and FAL, to receive truthful information from Kimberly–Clark **\*1113** about its wipes. We hold that Davidson properly alleged that she faces a threat of imminent or actual harm by not being able to rely on Kimberly–Clark's labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief. We therefore do not reach Davidson's alternative statutory standing argument.

---

[3] We do not address the district court's order granting the motion to strike allegations in the original complaint, as that complaint was replaced by the FAC, and we conclude that the FAC is sufficient as is to survive the heightened pleading requirements of Rule 9(b). Similarly, we do not address the district court's order denying leave to amend the FAC, as we conclude that the FAC is adequate as it stands.

[12] [13] [14] [15] Article III of the U.S. Constitution authorizes the judiciary to adjudicate only "cases" and "controversies." The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992). The three well-known "irreducible constitutional minim[a] of standing" are injury-in-fact, causation, and redressability. *Id.* at 560–61, 112 S.Ct. 2130. A plaintiff bears the burden of demonstrating that her injury-in-fact is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149, 130 S.Ct. 2743, 177 L.Ed.2d 461 (2010).

[16] [17] [18] [19] [20] A plaintiff must demonstrate constitutional standing separately for each form of relief requested. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000). For injunctive relief, which is a prospective remedy, the threat of injury must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493, 129 S.Ct. 1142, 173 L.Ed.2d 1 (2009). In other words, the "threatened injury must be *certainly impending* to constitute injury in fact" and "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409, 133 S.Ct. 1138, 185 L.Ed.2d 264 (2013) (internal quotation marks and alteration omitted). Past wrongs, though insufficient by themselves to grant standing, are "evidence bearing on whether there is a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983) (internal quotation marks omitted). Where standing is premised entirely on the threat of repeated injury, a plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way." *Id.* at 111, 103 S.Ct. 1660. In determining whether an injury is similar, we "must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to parse too

finely, and consider instead the context of the inquiry." *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 125 S.Ct. 1141, 160 L.Ed.2d 949 (2005).

It is an open question in this circuit to what extent a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief. With no guidance from our court, district courts applying California law have split dramatically on this issue. *See Pinon v. Tristar Prods., Inc.*, No. 1:16-cv-00331-DAD-SAB, 2016 WL 4548766, at *4 (E.D. Cal. Sept. 1, 2016) ("The Ninth Circuit has not addressed the specific question ... [and] district courts within this circuit are divided about whether a plaintiff seeking to bring injunctive relief claims over deceptive labeling can establish Article III standing once they are already aware of an alleged misrepresentation."); *see also Russell v. Kohl's Dep't Stores, Inc.*, No. ED CV 15-1143 RGK (SPx), 2015 WL 12781206, at *5 (C.D. Cal. Oct. 6, 2015) (describing the "split among the district courts in the Ninth Circuit as to whether a plaintiff lacks Article III standing to seek injunctive relief under the UCL and FAL when **\*1114** the plaintiff has knowledge of the defendant's alleged misconduct").

Courts concluding that such a plaintiff lacks standing to seek injunctive relief generally reason that "plaintiffs who are already aware of the deceptive nature of an advertisement are not likely to be misled into buying the relevant product in the future and, therefore, are not capable of being harmed again in the same way." *Pinon*, 2016 WL 4548766 at *4. For example, in *Machlan v. Procter & Gamble Company*, the plaintiff alleged that the defendant deceptively marketed its wipes as flushable, even though the wipes did not disperse like toilet paper and clogged pipes and sewage systems—facts nearly identical to those here. 77 F.Supp.3d 954, 957 (N.D. Cal. 2015). The district court in *Machlan* concluded that the plaintiff lacked Article III standing for injunctive relief because the plaintiff had alleged that the use of the term "flushable" was deceptive, so the plaintiff could not be deceived again, even if he purchased the same wipes in the future. *Id.* at 960 ("[W]hen the alleged unfair practice is deception, the previously-deceived-but-now-enlightened plaintiff simply does not have standing under Article III to ask a federal court to grant an injunction."). [4] Multiple district courts have held similarly. *See Pinon*, 2016 WL 4548766 at *4 (collecting cases).

[4] Interestingly, the *Machlan* court remanded the portions of the plaintiff's claims that sought injunctive relief, and then proceeded in federal court on some of the claims seeking monetary damages. *Id.* at 960–62, 964–65. The court reasoned that injunctive relief is an important remedy in California's consumer protection statutes and that allowing a defendant to undermine those statutes through removal to federal court "is an unnecessary affront to federal and state comity." *Id.* at 961. Here, Davidson similarly argues that the district court erred by denying her request to remand the injunctive relief "claim" to state court. Because we conclude that Davidson's alleged future injury justifies Article III standing for injunctive relief, we need not reach this issue.

Other district courts in this circuit have concluded that a plaintiff has standing to seek an injunction against a product's misleading representation, even though the plaintiff already knows or has reason to believe that the representation is false. *See id.* (collecting cases). These courts generally reason that the plaintiff faces an actual and imminent threat of future injury because the plaintiff may be unable to rely on the defendant's representations in the future, or because the plaintiff may again purchase the mislabeled product.

For example, in *Ries v. Arizona Beverages USA LLC*, the plaintiffs alleged that the defendants engaged in false advertising by marketing their "AriZona Iced Tea" beverages as "All Natural" and "100% Natural" even though the product contained the non-natural ingredients high fructose corn syrup and citric acid. 287 F.R.D. 523, 527 (N.D. Cal. 2012). The defendants argued that the plaintiffs were not threatened by future harm because the plaintiffs became aware of the contents of the drink and could no longer be deceived. *Id.* at 533. The district court rejected this argument, reasoning that "[s]hould plaintiffs encounter the denomination 'All Natural' on an AriZona beverage at the grocery store today, they could not rely on that representation with any confidence." *Id.* The district court in *Ries* also explained that "the record is devoid of any grounds to discount plaintiffs' stated intent to purchase [the product] in the future." *Id.*; *see also Weidenhamer v. Expedia, Inc.*, No. C14-1239RAJ, 2015 WL 1292978, at *5 (W.D. Wash. Mar. 23, 2015) (explaining that the plaintiff "is entitled to rely on the statements made in [the] ad, even if he previously learned

**Davidson v. Kimberly-Clark Corporation, 873 F.3d 1103 (2017)**
17 Cal. Daily Op. Serv. 10,192, 2017 Daily Journal D.A.R. 10,134

Case 5:17-cv-02185-BLF   Document 103-1   Filed 01/03/18   Page 9 of 11

that some of those statements were false or deceptive," and that the plaintiff had adequately alleged *1115 that he likely would continue to be an Expedia customer); *Richardson v. L'Oreal USA, Inc.*, 991 F.Supp.2d 181, 194–95 (D.D.C. 2013) (finding that "the named plaintiffs, knowledgeable about the misrepresentations, are likely to suffer future harm in the absence of an injunction," because they will be unable "to rely on the [misleading] label with any confidence" and "will have no way of knowing" whether defendants "boost[ed] the label's veracity").

[21] Today, we resolve this district court split in favor of plaintiffs seeking injunctive relief. We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm. *Summers*, 555 U.S. at 493, 129 S.Ct. 1142. Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future. In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. *See, e.g.*, *Ries*, 287 F.R.D. at 533; *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JT, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015) ("[U]nless the manufacturer or seller has been enjoined from making the same representation, [the] consumer ... won't know whether it makes sense to spend her money on the product."). In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved. *See, e.g.*, *L'Oreal*, 991 F.Supp.2d at 194–95. Either way, we share one district court's sentiment that we are "not persuaded that injunctive relief is *never* available for a consumer who learns after purchasing a product that the label is false." *Duran v. Creek*, 2016 WL 1191685, at *7 (N.D. Cal. Mar. 28, 2016) (emphasis added).

We observe—although our conclusion is not based on this consideration—that our holding alleviates the anomalies the opposite conclusion would create. As the *Machlan* court aptly recognized, "[a]llowing a defendant to undermine California's consumer protection statutes and defeat injunctive relief simply by removing a case from state court is an unnecessary affront to federal and state comity [and] ... an unwarranted federal intrusion into California's interests and laws." 77 F.Supp.3d at 961; *see also Henderson v. Gruma Corp.*, 2011 WL 1362188, at *8 (C.D. Cal. Apr. 11, 2011) ("[T]o prevent [plaintiffs] from bringing suit on behalf of a class in federal court would surely thwart the objective of California's consumer protection laws."). This is because "the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction," *In re Tobacco II*, 46 Cal.4th 298, 93 Cal.Rptr.3d 559, 207 P.3d 20, 34 (2009)—a principle that the California Supreme Court recently reaffirmed. *See McGill v. Citibank, N.A.*, 216 Cal.Rptr.3d 627, 393 P.3d 85, 90, 93 (Cal. 2017) (explaining that "public injunctive relief under the UCL, the CLRA, and the false advertising law is relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public," and that "public injunctive relief remains a remedy to private plaintiffs" under the UCL, FAL, and CLRA (internal quotation marks omitted)).

Were injunctive relief unavailable to a consumer who learns after purchasing a *1116 product that the product's label is false, California's consumer protection laws would be effectively gutted, as defendants could remove any such case. *Machlan*, 77 F.Supp.3d at 961. As the district court in *Machlan* explained, by finding that these plaintiffs fail to allege Article III standing for injunctive relief, we risk creating a "perpetual loop" of plaintiffs filing their state law consumer protection claims in California state court, defendants removing the case to federal court, and the federal court dismissing the injunctive relief claims for failure to meet Article III's standing requirements. *Id.* On our Article III standing analysis, fully supported for the reasons we have explained by established standing principles, this "perpetual loop" will not occur.

[22] Since we hold that a previously deceived plaintiff may have standing to seek injunctive relief, we must turn our attention to whether Davidson adequately alleged that she faces an imminent or actual threat of future harm caused by Kimberly–Clark's allegedly false advertising. Davidson alleged that she "continues to desire to purchase wipes that are suitable for disposal in a household toilet"; "would purchase truly flushable wipes manufactured by

[Kimberly–Clark] if it were possible"; "regularly visits stores ... where [Kimberly–Clark's] 'flushable' wipes are sold"; and is continually presented with Kimberly–Clark's flushable wipes packaging but has "no way of determining whether the representation 'flushable' is in fact true."

We are required at this stage of the proceedings to presume the truth of Davidson's allegations and to construe all of the allegations in her favor. *Daniels-Hall*, 629 F.3d at 998. Though we recognize it is a close question, based on the FAC's allegations, we hold that Davidson adequately alleged that she faces an imminent or actual threat of future harm due to Kimberly–Clark's false advertising. Davidson has alleged that she desires to purchase Kimberly–Clark's flushable wipes. Her desire is based on her belief that "it would be easier and more sanitary to flush the wipes than to dispose of them in the garbage." As in *Ries*, the FAC is "devoid of any grounds to discount [Davidson's] stated intent to purchase [the wipes] in the future." 287 F.R.D. at 533. And "[s]hould [Davidson] encounter the denomination ['flushable'] on a [Kimberly–Clark wipes package] at the grocery store today, [she] could not rely on that representation with any confidence." *Id.* We therefore hold that Davidson's allegation that she has "no way of determining whether the representation 'flushable' is in fact true" when she "regularly visits stores ... where Defendants' 'flushable' wipes are sold" constitutes a "threatened injury [that is] certainly impending," thereby establishing Article III standing to assert a claim for injunctive relief. *See Clapper*, 568 U.S. at 409, 133 S.Ct. 1138.

### IV. CONCLUSION

We hold that the FAC adequately alleges that Kimberly–Clark's use of the word "flushable" was false because the Scott Wipes that Davidson purchased did not adequately disperse as a truly flushable product would have. The district court erred in concluding that Davidson failed to allege harm and how she came to believe the wipes were not flushable. Finally, because Davidson's allegations sufficiently identified a certainly impending risk of her being subjected to Kimberly–Clark's allegedly false advertising, Davidson had standing to pursue injunctive relief. We therefore **REVERSE** and **REMAND.**

BERZON, Circuit Judge, concurring:

I concur in the majority opinion with the following caveat:

**\*1117** As to prospective relief, the majority opinion rests on the proposition that we are required to perform a separate standing analysis for each "form of relief," and concludes that Davidson's claims for restitution and for an injunction each qualify as having established standing. There is case law supporting both points, as the opinion states.

I write separately to note that duplicating the standing analysis in this way does not give effect to the "case or controversy" requirement of Article III. Instead, it appears to be an artifact of the discredited practice of conflating the prerequisites for injunctive relief with the Article III prerequisites for entry into federal court. Although we held in *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999) (en banc), overruling earlier precedents,[1] that *City of Los Angeles v. Lyons*, 461 U.S. 95, 103 S.Ct. 1660, 75 L.Ed.2d 675 (1983), requires this result, in my view it does not.

[1] See *Smith v. City of Fontana*, 818 F.2d 1411, 1423 (9th Cir. 1987) (holding that a damages claim satisfies Article III standing with respect to other forms of relief "involv[ing] the same operative facts and legal theory"); *Giles v. Ackerman*, 746 F.2d 614, 619 (9th Cir. 1984) (treating the presence of a related damages claim as satisfying Article III standing, thereby allowing the court to consider "whether relief in addition to damages is appropriate"); *Gonzales v. City of Peoria*, 722 F.2d 468, 481 (9th Cir. 1983) (concluding that the presence of a damages claim "present[ed] a case in controversy as to injunctive relief").

Davidson seeks restitution for the premium she paid for a falsely labeled product, and no one doubts that she has standing in federal court to do so. Under California law, if Davidson prevails on her false advertising claim and is entitled to restitution, she is equally entitled to an injunction. *See* Cal. Bus. & Prof. Code §§ 17202–03; *see also Kwikset Corp. v. Superior Court*, 51 Cal.4th 310, 120 Cal.Rptr.3d 741, 246 P.3d 877, 894–95 (2011). No additional showing, equitable or otherwise, is needed to trigger her right to injunctive relief. It follows that we have a single dispute—a single case, a single controversy—giving rise to multiple forms of relief.

**Davidson v. Kimberly-Clark Corporation, 873 F.3d 1103 (2017)**
17 Cal. Daily Op. Serv. 10,192, 2017 Daily Journal D.A.R. 10,134

Case 5:17-cv-02185-BLF   Document 103-1   Filed 01/03/18   Page 11 of 11

It is mechanically possible, in this case, to define Davidson's "case or controversy" differently, and to assign the requirements of injury, causation, and redressability separately to each remedy she seeks. But it turns Article III on its head to let the remedies drive the analysis, where state law clearly envisions those remedies as the product of a single adjudication of a single issue. See _Korea Supply Co. v. Lockheed Martin Corp._, 29 Cal.4th 1134, 131 Cal.Rptr.2d 29, 63 P.3d 937, 943 (2003). And proceeding in that way fundamentally undermines, substantively, the enforcement of state laws in federal court. Cf. _Erie R. Co. v. Tompkins_, 304 U.S. 64, 78, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) ("Congress has no power to declare substantive rules of common law applicable in a state .... And no clause in the Constitution purports to confer such a power upon the federal courts.").

It was in recognition of this anomaly that the district court in _Machlan v. Procter & Gamble Co._ remanded only the prospective relief aspect of that similar false advertising case to state court. 77 F.Supp.3d 954, 960–61 (N.D. Cal. 2015). I doubt that is an acceptable option. But the impetus to do that springs from the same problem I have identified—that a defendant should not be able to strip a plaintiff of remedies dictated by state law by removing to federal court a case over which there surely _is_ Article III jurisdiction over the liability issues. Cf. _Larson v. Valente_, 456 U.S. 228, 238–39, 102 S.Ct. 1673, 72 L.Ed.2d 33 (1982) ("The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction *1118 have alleged such a personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues ...." (internal quotation marks omitted)).

Federal courts have a history of improperly elevating the prerequisites for relief to the status of jurisdictional hurdles. See _Lexmark Int'l, Inc. v. Static Control Components, Inc._, —— U.S. ——, 134 S.Ct. 1377, 1387–88 & n.4, 188 L.Ed.2d 392 (2014). Notably, although _Lyons_ is now widely credited as the origin of the rule that injunctive relief always requires its own standing inquiry, _see, e.g._, _Hodgers-Durgin_, 199 F.3d at 1040 n.1, that case, as I read it, did _not_ make that jurisdiction/remedy mistake. Rather, _after_ determining that there was no independent standing to seek injunctive relief, _Lyons_ separately noted that there was also a pending request for damages. _Lyons_, 461 U.S. at 111, 103 S.Ct. 1660. The Court then inquired into whether the _nonjurisdictional_ requirements for equitable prospective relief were met, and concluded they were not. _Id._ at 111–12, 103 S.Ct. 1660. In my view, this aspect of _Lyons_ recognized that there _was_ a case or controversy regarding liability issues because of the damages claim, but precluded injunctive relief on nonjurisdictional grounds specific to the equitable requirements for such relief—the absence of irreparable harm. _Id._ Were this not what _Lyons_ meant, the entire discussion of the equitable principles governing prospective relief would have been superfluous.

Conflating the elements of relief with the elements of standing is of little consequence in most cases following _Lyons_. Where the availability of injunctive relief is governed by federal common law, the common-law prerequisites for injunctive relief must eventually be satisfied, and largely mirror the standing prerequisites. See also, e.g., _Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc._, 528 U.S. 167, 184–88, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (conducting a separate standing analysis of civil penalties, but concluding that deterrence of ongoing harm suffices for constitutional standing). But collapsing the inquiries becomes problematic when it imposes _substantive_ limits on the availability of relief under state law, in the service of constitutional interests that aren't actually under threat.

I nonetheless concur fully in the majority opinion. _Hodgers-Durgin_ is binding law, and it does require a separate standing analysis with regard to prospective relief. As the majority opinion well explains, as long as a separate standing analysis is necessary despite the state prescription of more or less automatic prospective relief, that requirement is met here.

**All Citations**

873 F.3d 1103, 17 Cal. Daily Op. Serv. 10,192, 2017 Daily Journal D.A.R. 10,134

---

**End of Document**

© 2017 Thomson Reuters. No claim to original U.S. Government Works.

WESTLAW  © 2017 Thomson Reuters. No claim to original U.S. Government Works.