# EXHIBIT C

No *Shepard's* Signal™
As of: January 2, 2018 8:17 PM Z

# *Morcom v. LG Elecs. USA, Inc.*

United States District Court for the District of New Jersey

November 30, 2017, Decided; November 30, 2017, Filed

Civil Action No.: 16-cv-4833

**Reporter**
2017 U.S. Dist. LEXIS 198935 *

STEVE MORCOM and DAVID MCGEOWN, on behalf of themselves and all others similarly situated, Plaintiffs, v. LG ELECTRONICS USA, INC., Defendant.

**Notice:** NOT FOR PUBLICATION

## Core Terms

washing machine, warranty, Defects, machine, consumer, loads, manufacturer, omission, alleges, parties, pleads, consumer fraud, bulletin, purchaser's, repair, Notice, implied warranty, Technology, fail to disclose, misrepresentation, replace, particular purpose, choice of law, advertising, argues, seller, Unfair, unjust enrichment, concealment, disclose

**Counsel: [*1]** For STEVEN MORCOM, on behalf of himself and all others similarly situated, DAVID MCGEOWN, Plaintiffs: RANDEE M. MATLOFF, LEAD ATTORNEY, NAGEL RICE, LLP, ROSELAND, NJ; JOSEPH LOPICCOLO, POULOS LOPICCOLO PC, OCEAN, NJ.

For LG ELECTRONICS USA, INC., Defendant: STEPHEN ALLEN LONEY, JR., LEAD ATTORNEY, HOGAN LOVELLS US LLP, PHILADELPHIA, PA.

**Judges:** CLAIRE C. CECCHI, United States District Judge.

**Opinion by:** CLAIRE C. CECCHI

## Opinion

**CECCHI, District Judge**.

## I. INTRODUCTION

This matter comes before the Court on the motion of Defendant LG Electronics USA, Inc. ("Defendant" or "LG") (ECF No. 13) to dismiss the Amended Class Action Complaint (ECF No. 7, hereafter, "ACAC"). The Court has considered the submissions made in support of and in opposition to the instant motion. The motion is decided without oral argument pursuant to *Fed. R. Civ. P. 78(b)*.[1] For the reasons set forth below, Defendant's motion is GRANTED in part and DENIED in part.

## II. BACKGROUND

In deciding the pending motion, the Court accepts as true all well-pleaded factual allegations in the ACAC and draws all reasonable inferences in Plaintiffs' favor.

This putative class action concerns LG's sale of allegedly defective washing machines.

### A. The Defects

LG's high efficiency top-loading **[*2]** washing

---

[1] The Court considers any new arguments not presented by the parties to be waived. See *Brenner v. Local 514. United Bhd. of Carpenters & Joiners of Am., 927 F.2d 1283, 1298 (3d Cir. 1991)*.

machines come equipped with what LG calls "TrueBalance Technology." (ACAC ¶ 9). These machines are designed to "spin faster than washers with agitators to extract more water and cut down on drying time." (Id. ¶ 2). LG states on its website, "TrueBalance Technology automatically counter-balances uneven loads and adjusts spin speeds to further reduce vibration. Now you can wash large loads of jeans, sweatshirts or towels and enjoy a quiet, smooth wash with no concerns of vibrations." (Id. ¶ 9). The website further states TrueBalance Technology is "designed to minimize washer noise and vibration for smooth, quiet performance in any room of the house — even on the 2nd floor." (Id. ¶ 38).

As a consequence of their design, however, some of these washing machines may unintentionally cause loads of laundry to become "imbalanced[,]" which the Court understands to mean that the load of laundry is not evenly distributed throughout the machine's tub. (Id. ¶¶ 1-2). If the machines detect an imbalanced load, they either: (1) automatically "fill the tub with water to try to rebalance the load," often multiple times for the same load (the "Water Defect"); or (2) stop spinning and display an [*3] error code to prompt the user to rebalance the load manually, often repeatedly even after the user attempts to rebalance the load (the "Message Defect"). (Id. ¶¶ 1, 2,, 4). These alleged defects (together, the "Imbalance Defects") can cause wash cycles to take up to six hours, and the Water Defect can greatly increase a machine's water usage. (Id.). Plaintiffs claim these defects affect model nos. WT1101CW, WT1201CW, WT1201CV, WT5001CW, WT5101HW, WT5101HV, and WT5170HV (the "Affected Models"). (Id. ¶ 12).

B. The Named Plaintiffs

There are two named Plaintiffs: Steve Morcom and David McGeown.

Morcom resides in Washington State. (Id. ¶ 18). He purchased one of the Affected Models, WT5170HV, at a Best Buy store in Washington on February 9, 2013, for $967.49. (Id. ¶¶ 18-19). In March 2014, Morcom's machine began to exhibit the Water Defect, which substantially increased his water utility bill. (Id. ¶¶ 20, 25). Morcom "immediately contacted LG and was given the proverbial run-around." (Id. ¶ 21). LG told Morcom it was unaware of the Water Defect and instructed Morcom on how to load the machine, but following these instructions did not remedy the Water Defect. (Id. ¶¶ 22-23). In approximately [*4] September 2014, Morcom called LG again, but LG did not return his call. (Id. ¶ 24). At some point thereafter, Morcom purchased a replacement washing machine for $150.00. (Id. ¶ 25).

McGeown resides in New Jersey. (Id. ¶ 26). He purchased one of the Affected Models, WT1101CW, at a Best Buy store in New Jersey on March 22, 2013, for $629.99. (Id.). McGeown "was attracted to the LG Washing Machine because of the advertised TrueBalance technology and LG's advertisements that the Washing Machine was highly energy efficient." (Id. ¶ 27). McGeown's machine began exhibiting the Imbalance Defects[2] within days of purchase. (Id. ¶ 28). McGeown called LG immediately to report the defect, and, to the best of McGeown's recollection, LG sent a repair person to his home to replace the sensors in the machine. (Id.). A few days after the repair visit, the machine exhibited the Imbalance Defects again, (Id. ¶ 29). McGeown immediately called LG, who told him over the phone how to "override the [imbalanced load] code[,]" but this did not fix the defect. (Id.). When McGeown called LG a third time, LG told him to "keep the Washing Machine on a basic setting[,]" but this did not fix the defect. (Id.). McGeown's [*5] loads of laundry "took upwards of five hours each to complete" because of the Imbalance Defects. (Id. ¶ 30). McGeown purchased a new washing machine three years after he purchased one of the Affected Models. (Id.).

LG expressly warranted both of Plaintiffs'

---

[2] It is unclear whether he experienced the Water Defect, Message Defect, or both. (Id. ¶¶ 26-31).

machines against "defects 'in materials and workmanship under normal household use[,]'" and promised to replace or repair the machine for free during the warranty period applicable to the type of defect. (Id. ¶ 96). Specifically, LG promised to cover defective "internal functional parts and labor" for one year; "the Drum Motor (Stator, Rotor, and Hall Sensor)" for ten years; and the "Stainless Ste[e]l Drum" for life. (Id.). These warranties contain the following disclaimer written visibly in all capital letters: "This warranty is in lieu of any other warranty, express or implied, including and without limitation to, any warranty of merchantability or fitness for a particular purpose . . . . Repair or replacement as provided under this warranty is the exclusive remedy for the customer." (Chwe Decl. in Support of Defendant's Motion to Dismiss ("Chwe Decl."), ECF No. 13-2, Ex. A & B).[3]

### C. LG's Awareness of the Imbalance Defects

Plaintiffs [*6] claim LG "knew, or was reckless in not knowing" about the Imbalance Defects before Plaintiffs purchased their washing machines, yet concealed this knowledge from plaintiffs. (ACAC ¶¶ 51, 62, 70). Plaintiffs base this allegation primarily on three sources: consumer reviews, a service bulletin, and a statement from LG's Vice President of Communications.

First, Plaintiffs quote consumer reviews from the internet. (Id. ¶¶ 56-57). Five of the reviews—all posted on consumeraffairs.com—predate Plaintiffs' purchases, (id. ¶ 57(c)-(g)). Of these five, two appear relevant to the Imbalance Defects present in the Affected Models.[4] A January 8, 2012 review describes one of the Affected Models, WT5001CW, experiencing the Water Defect "[e]very other load[.]" (Id. ¶ 57(c)). A March 24, 2012 review describes a different model, not one of the Affected Models, taking a long time to rebalance loads, though not in a way that resembles either of the Imbalance Defects described in the ACAC. (Id. ¶ 57(f)).

Second, the ACAC attaches a service bulletin that LG sent to its dealers dated February 15, 2013. (Id. ¶ 71(b), Ex. A). The bulletin indicates that three of the Affected Models—WT5101HW, WT5101HV, and WT5001CW—had [*7] been the subject of consumer complaints. (Id. Ex. A at 1). The bulletin also appears to describe both Imbalance Defects and gives guidance on what to tell consumers who complain of these defects. (Id. Ex. A at 3).

Third, the ACAC cites to a Consumer Reports article from December 2014, which quotes LG's Vice President of Communications as saying LG knew about the Imbalance Defects in December 2013 and updated the machines' software in response. (Id. ¶ 58).

### D. Plaintiffs' Claims

The ACAC brings nine claims: Breach of Express Warranty (Count One); Breach of Implied Warranty (Count Two); Violation of the *Magnuson-Moss Warranty Act* (Count Three); "Injunctive and Equitable Relief' (Count Four); Unjust Enrichment (Count Five); Common Law Fraud (Count; Six); Violation of the *New Jersey Consumer Fraud Act* (Count Seven); Violation of the *New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act* (Count Eight); and for Morcom, Violation of the *Washington Unfair Business Practices Act* (Count Nine).

### III. LEGAL STANDARD

---

[3] Defendant submitted the written warranties that would have been included with the machines Plaintiffs purchased on the dates they purchased their machines. (Chwe Decl. ¶¶ 4-5). The Court considers them because the ACAC relies upon the written warranties sold with Plaintiffs' washing machines. See *In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (3d Cir. 1997)*.

[4] The other three reviews discuss front-loading washing machines and/or do not appear to discuss the Imbalance Defects at all. (Id. ¶ 57(d), (e), (g)).

For a complaint to survive dismissal pursuant to *Federal Rule of Civil Procedure 12(b)(6)*, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009)* (quoting **[*8]** *Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007))*. In evaluating the sufficiency of a complaint, the Court must accept all well-pleaded factual allegations in the complaint as true and draw all reasonable inferences in favor of the non-moving party. See *Phillips v. Cty. of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008)*. "Factual allegations must be enough to raise a right to relief above the speculative level." *Twombly, 550 U.S. at 555*. "A pleading that offers labels and conclusions will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Iqbal, 556 U.S. at 678* (internal citations omitted). However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. Thus, when reviewing complaints for failure to state a claim, district courts should engage in a two-part analysis: "First, the factual and legal elements of a claim should be separated . . . . Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)* (citations omitted).

Certain claims subject to this motion implicate choice of law analysis. "[A] **[*9]** federal court sitting in diversity must apply the forum state's choice of law rules." *Snyder v. Famam Cos., 792 F. Supp. 2d 712, 717 (D.N.J. 2011)* (citing *Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941))*. New Jersey uses the "most significant relationship" test in the Restatement (Second) of Conflict of Laws. *P.V. v. Camp Jaycee, 197 N.J. 132, 135-36, 962 A.2d 453 (2008)*. Under this test, "[t]he first step is to determine whether an actual conflict of law exists, for if no conflict exists, the law of the forum state applies." *Snyder, 792 F. Supp. 2d at 717*. If a conflict exists, "the Court must determine which state has the most significant relationship to the claim by weighing the factors set forth in the Restatement section corresponding to the plaintiffs cause of action." Id. (internal quotations and alterations omitted). In addition to the claim-specific factors, the Court must also consider the general principles in *§ 6 of the Restatement:* "(1) the interests of interstate comity; (2) the interests of the parties; (3) the interests underlying the [relevant legal] field . . .; (4) the interests of judicial administration; and (5) the competing interests of the states." *Camp Jaycee, 197 N.J. at 147*. Choice of law analysis proceeds claim by claim. *Snyder, 792 F. Supp. 2d at 718*.

## IV. DISCUSSION

### A. Breach of Express Warranty (Count One)

The parties agree New Jersey law applies to the express warranty claim.

To state a claim for breach of express warranty, Plaintiffs must **[*10]** allege (1) Defendant made an affirmation, promise or description about the product; (2) which became part of the basis of the bargain for the product; and (3) to which the product ultimately did not conform. *Id. at 721* (citing *N.J.S.A. § 12A:2-313*). An express warranty need not use "formal words such as 'warrant' or 'guarantee[,]'" but mere affirmations of the value of the goods or the seller's "opinion or commendation" of the goods do not create a warranty. *N.J.S.A. § 12A:2-313*.

Plaintiffs allege two express warranties: the written warranty promising to repair or replace defects for one year, ten years, or life depending on the type of defect (ACAC ¶ 96); and LG's advertising materials concerning the TrueBalance Technology present in their machines (id. ¶ 95).

Based on the written warranty, Plaintiffs state a claim. First, Defendant made a promise about the product. LG warranted that it would fix or replace defective materials and workmanship in the Drum Motor, which includes the stator, rotor, and hall sensor, for ten years under normal household use. (Id. ¶ 96). Second, the promise was part of the basis of the bargain, because LG sold Plaintiffs the machines with these warranties; thus they are "fairly to be regarded as part of the **[*11]** contract." Liberty Lincoln-Mercury, Inc. v. Ford Motor Co., 171 F.3d 818, 825 (3d Cir. 1999) (quoting N.J.S.A. § 12A:2-313, Official Comment 7). Third, the machines did not conform to the warranty: within ten years under normal household use, Plaintiffs' machines allegedly began to suffer from a defect involving the rotor, which Defendant has not fixed or replaced. (ACAC ¶ 5 ("The washing machines require ... an updated circuit board and rotor in order to correct the Imbalance Defect[.]")). Thus, the elements for breach of express warranty are met.

Defendant's arguments to the contrary lack merit.

Defendant argues that Plaintiffs have alleged a design defect—rather than a manufacturing defect—which is not covered under the express written warranty. (Def.'s Br. at 10-11). But the ACAC alleges both a design defect and a manufacturing defect. (See, e.g., ACAC ¶¶ 40, 61 ("LG failed to adequately design, manufacture, and/or test the Washing Machines to ensure they were free from [the Imbalance Defects at the time of sale].")). To the extent it is inconsistent to attribute the Imbalance Defects to both defective design and defective manufacture, at this stage, Plaintiffs are allowed to plead alternative and inconsistent claims. See Fed. R. Civ. P. 8(d).[5]

Defendant also argues McGeown's claim fails because **[*12]** he did not afford Defendant a sufficient opportunity to repair his washing machine, and thus the warranty did not "fail[] of its essential purpose[.]" (Def.'s Br. at 13-14). The Court disagrees.

Although a warranty can limit the available remedies for a defect, "where circumstances cause an exclusive or limited remedy to fail of its essential purpose, a [general] remedy may be available[.]" Argabright v. Rheem Mfg. Co., 201 F. Supp. 3d 578, 593 (D.N.J. 2016) (internal quotations and alterations omitted). "[T]he key inquiry in determining whether a limited remedy failed of its essential purpose is whether the buyer is given, within a reasonable time, goods that conform to the contract." Id. at 594 (quotations omitted). Thus, a plaintiff who alleges she has unsuccessfully made "repeated attempts" to exercise the limited remedy has adequately pleaded that the warranty failed of its essential purpose. In re Caterpillar, Inc., C13 & C15 Engine Prods. Liab. Litig., No. 14-3722, 2015 U.S. Dist. LEXIS 98784, 2015 WL 4591236, at *23 (D.N.J. July 29, 2015). Whether a warranty fails of its essential purpose is a question of fact. Id.

Here, McGeown alleges he timely reported the issue three times to LG, and LG's attempts to remedy the defect, either by repairing the machine or advising McGeown over the phone on how to use the machine differently, all failed. (ACAC ¶¶ 28-29). The Court finds **[*13]** this is sufficient at the pleading stage to allege failure of essential purpose.

---

[5] The Court is not persuaded by Defendant's argument (Def.'s Reply Br. at 1-2) based on Hughes v. Panasonic Consumer Elec. Co., No. 10-846, 2011 U.S. Dist. LEXIS 79504, 2011 WL 2976839 (D.N.J. July 21, 2011). In Hughes, Plaintiffs argued that televisions had a manufacturing defect in addition to a design defect because the televisions' computer programming was improper. 2011 U.S. Dist. LEXIS 79504, [WL] at *19. The court rejected this argument because a product's computer programming is part of its design, not its manufacture, and Plaintiffs' sole allegation that the televisions suffered from "manufacturing errors" was conclusory and implausible. Id. Here, by contrast, Plaintiffs have identified a part of the washing machines—the rotor—that is at least partially responsible for the Imbalance Defects, and it appears plausible that this type of defect stems from the machines' manufacture, rather than or in addition to their design. See Coba v. Ford Motor Co., No. 12-1622, 2013 U.S. Dist. LEXIS 8366, 2013 WL 244687, at *2, *7 (D.N.J. Jan. 22, 2013) (declining to dismiss an express warranty claim when the defect plausibly "could relate to either a design defect or a defect in materials and workmanship").

Because Plaintiffs state a claim for breach of express warranty based on the written warranty, the Court need not decide at this time whether they also state a claim based on Defendant's advertising. Therefore, dismissal of Count One is not warranted.

**B. Breach of Implied Warranty (Count Two)**

The Court analyzes this claim for each Plaintiff because it implicates choice of law.

1. Morcom

First, there is a conflict between the laws of Washington and New Jersey regarding breach of implied warranty. New Jersey law has no requirement that a plaintiff purchaser and a defendant manufacturer are in privity of contract, *Dzielak v. Whirlpool Corp., 26 F. Supp. 3d 304, 326 (D.N.J. 2014)*, whereas Washington law holds that "in cases where a commercial purchaser seeks to recover economic damages from a remote manufacturer, implied warranties do not arise absent privity or an underlying contract to which the remote commercial purchaser is a third-party beneficiary[,]" *Tex. Enters., Inc. v. Brockway Standard. Inc., 149 Wash. 2d 204, 214, 66 P.3d 625 (2003)*. Plaintiff Morcom does not appear to contest that there is a conflict, but rather argues that Morcom needs discovery to determine whether he is a third-party beneficiary of a contract to which Defendant is a party. (Pls.' **[*14]** Br. at 18).

In determining which state has the most significant relationship to this claim, the Court is guided by the *Restatement (Second) of Conflict of Laws § 188*. See *Miller v. Samsung Elecs. Am. Inc., No. 14-4076, 2015 U.S. Dist. LEXIS 84359, 2015 WL 3965608, at *12 (D.N.J. June 29, 2015)* (applying *§ 188* to implied warranty claim). Under *§ 188*, the Court finds "the place of contracting," "the place of negotiation[,]" "the place of performance," and "the location of the subject matter[,]" see *Restatement (Second) of Conflict of Laws § 188*, to weigh in favor of Washington State, because Morcom's washing machine was purchased there, rather than New Jersey. The only neutral factor is the "domicil[e], residence, nationality, place of incorporation and place of business of the parties[,]" see id., because Morcom is in Washington and Defendant is in New Jersey. Nor do the interests of interstate cqmity, the parties, the field of implied warranty law, judicial administration, or the competing states mandate the application of New Jersey law over Washington law. See *Camp Jaycee, 197 N.J. at 147*. Therefore, Washington law applies to this claim. See *Miller, 2015 U.S. Dist. LEXIS 84359, 2015 WL 3965608, at *12* (underNew Jersey choice of law analysis of implied warranty claim, applying the law of the state where plaintiff lived and purchased the product at issue).

"Under Washington State law, 'lack of privity has historically been a defense to claims of breach of warranty.'" *Lohr v. Nissan N. Am., Inc., No. C16-1023, 2017 U.S. Dist. LEXIS 38934, 2017 WL 1037555, at *7 (W.D. Wash. Mar. 17, 2017)* (quoting *Tex. Enters., Inc., 149 Wash. 2d at 209*). Nonetheless:

> [A]n exception **[*15]** to the privity requirement exists for implied warranties where plaintiffs are the intended third-party beneficiaries of an underlying contract between a manufacturer and intermediate dealer. Plaintiffs can demonstrate they are third-party beneficiaries where a manufacturer knew a purchaser's identity, knew the purchaser's purpose for purchasing the manufacturer's product, knew a purchaser's requirements for the product, delivered the product, and/or attempted repairs of the product in question.

Id. (emphasis added). Courts applying Washington law "consider these factors in a 'sum of the interaction' test, to 'determine whether the manufacturer was sufficiently involved in the transaction (including post-sale) with the remote purchaser to warrant enforcement of an implied warranty.'" Id. (citations omitted).

Under Washington law, Morcom states a claim.

Although Morcom concedes that he purchased his washing machine from Best Buy, and is thus not in privity with Defendant, Morcom sufficiently pleads intended third-party beneficiary status. Here, Morcom pleads that Defendant "knew the purchaser's purpose for purchasing the manufacturer's product." (ACAC ¶ 113 ("The Class and Subclass Members [*16] purchased the Washing Machines for a particular purpose of being able to complete a washing cycle without interruption and for its ability to 'automatically counterbalance uneven loads.' LG knew that the Class and Subclass Members were purchasing the Washing Machine for this purpose[.]")). Further, Morcom also pleads that Defendant "knew a purchaser's requirements for the product." (Id. ¶ 64 ("LG knew that consumers . . . reasonably expected the Washing Machines to complete loads within a reasonable amount of time. LG also knew that customers expected LG to disclose a defect that would prevent the Washing Machines from performing their function long before the end of their expected useful lives[.]")). Finally, Morcom pleads that Defendant "attempted repairs of the product in question." (Id. ¶¶ 21-23 (describing the instructions Morcom received from Defendant on the phone regarding how to repair his washing machine); see also id. ¶ 28 ("LG sent a repair person to [McGeown's] home.")).

The Court finds that at this preliminary stage of the litigation, Morcom states a claim upon which relief may be granted. Accordingly, dismissal of Count Two as to Morcom is not warranted.

2. McGeown

The [*17] parties appear to agree, at least for the purposes of this motion, that the Court should evaluate McGeown's implied warranty claim under New Jersey law.

Plaintiffs contend Defendant impliedly warranted that the washing machines were of "good and merchantable quality" and were "fit[] for a particular purpose." (Id. ¶¶ 112-13). However, Defendant disclaimed all "express or implied [warranties], including and without limitation to, any warranty of merchantability or fitness for a particular purpose." (Chwe Decl. Exs. A & B). New Jersey law allows a seller of goods to exclude both of these types of implied warranties where, as here, the exclusion is in writing, conspicuous, and, in the case of merchantability, contains the word "merchantability." *N.J.S.A. § 12A:2-316(2)*. Defendant contends dismissal is warranted because of this disclaimer. (Def.'s Br. at 19-20).

Defendant's disclaimer of implied warranties will bar this claim unless the Court ultimately finds these exclusions to be unconscionable as a matter of law. *In re AZEK Building Prods., Inc. Mktg. & Sales Practices Litig., 82 F. Supp. 3d 608, 616 (D.N.J. 2015)* ("In re AZEK"). "Unconscionability is determined on a case-by-case basis considering procedural and substantive unconscionability—unfairness in the contract's formation and excessively disproportionate [*18] terms, respectively." *Id. at 616-17* (citing *Sitogum Holdings, Inc. v. Ropes, 352 N.J. Super. 555, 564, 800 A.2d 915 (Ch. Div. 2002))*. Courts in this District have found unconscionability to be well-pleaded—and have thus allowed claims for breach of warranty to survive a motion to dismiss—when defendants allegedly (1) knew about a defect in the product but made misrepresentations or omissions to customers about it; and (2) exercised unequal bargaining power, such as by using contracts of adhesion with layperson consumers. See, e.g., *In re AZEK, 82 F. Supp. 3d at 617-18*; *Skeen v. BMW of N. Am., LLC, No. 13-1531, 2014 U.S. Dist. LEXIS 9256, 2014 WL 283628, at *14-16 (D.N.J. Jan. 24, 2014)*; *Payne v. Fujifilm U.S.A., Inc., No. 07-385, 2007 U.S. Dist. LEXIS 94765, 2007 WL 4591281, at *3-6 (D.N.J. Dec. 28, 2007)*.

McGeown adequately pleads unconscionability. First, McGeown pleads that Defendant knew about the Imbalance Defects in the Affected Models before he purchased his machine on March 22, 2013, yet failed to disclose this information. Specifically, viewing the allegations most favorably to Plaintiffs, Defendant had learned about the

Imbalance Defects from consumer complaints early enough to issue the February 15, 2013 service bulletin describing them. (See ACAC ¶ 71(b), Ex. A).[6] Although the bulletin concerns different Affected Models than the one McGeown purchased, it is plausible based on this bulletin that Defendant would know the TrueBalance Technology common to all Affected Models was not working properly.

Second, McGeown pleads unequal bargaining power. **[*19]** Specifically, the ACAC states he "had no meaningful opportunity to bargain over, let alone expand, the Washing Machine warranty terms. These warranties are classic adhesion contracts, produced by the manifest and massive differences between LG's and [McGeown's] bargaining power, whose terms were uniform and uniformly of the 'take it or leave it' variety." (Id. ¶ 105).[7] The Court does not agree with Defendant (Def.'s Reply Br. at 7) that this allegation is conclusory. LG is much larger than any individual consumer, and it is plausible that a consumer at Best Buy would be unable to renegotiate a written warranty with the manufacturer prior to purchasing a washing machine.

Defendant further argues dismissal is warranted as to the implied warranty of merchantability because McGeown alleges he used his machine for three years before getting rid of it, which indicates the machine "satisf[ied] a minimum level of quality" and thus did not breach the implied warranty of merchantability. (Def.'s Br. at 19-20 (quoting *Sheris v. Nissan N. Am. Inc., No. 07-2516, 2008 U.S. Dist. LEXIS 43664, 2008 WL 2354908, at *6 (D.N.J. June 3, 2008)))*. The Court disagrees.

"'Merchantability' requires that a product conform to its ordinary and intended use." *Montich v. Miele USA, Inc., 849 F. Supp. 2d 439, 458 (D.N.J. 2012)*. While Defendant is correct that the implied warranty of merchantability only guarantees **[*20]** "the goods satisfy a minimum level of quality," *Sheris, 2008 U.S. Dist. LEXIS 43664, 2008 WL 2354908, at *6* (internal quotations omitted), the case upon which Defendant relies, Sheris, is factually distinguishable. In Sheris, the defect at issue was that an automobile's front brakes and rotors needed to be replaced after two years and approximately 20,000 miles. See *2008 U.S. Dist. LEXIS 43664, [WL] at *5*. Before that, plaintiff had not experienced problems. See id. For that reason, plaintiff could not "allege factually what made his G35 unmerchantable or unsafe for driving." See id.

Here, by contrast, McGeown alleges he experienced the Imbalance Defects within days of beginning to use his washing machine, and that the defects persisted throughout his ownership of the machine. (ACAC ¶¶ 28-30). His loads of laundry took five hours or more to complete. (Id. ¶ 30). At this stage, McGeown has thus adequately pleaded that his washing machine did not "conform to its ordinary and intended use." *Montich, 849 F. Supp. 2d at 458*.

Finally, Defendant argues dismissal is warranted as to the implied warranty of fitness for a particular purpose because McGeown only alleges he used his washing machine for an ordinary purpose, not a particular one. (Def.'s Br. at 20-21). The Court disagrees.

In New Jersey, the implied warranty **[*21]** of fitness for a particular purpose may arise "[w]here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods." *N.J.S.A. § 12A:2-315*. "A 'particular purpose' differs from the ordinary purpose for which the goods are used in that it envisages a specific use by the buyer which is peculiar to the nature of his business whereas the ordinary purposes for which goods are used are

---

[6] The Court can consider this bulletin at the pleading stage for reasons discussed infra Part IV.F.1.

[7] Although this allegation appears in the paragraphs pertaining to Count One, not Count Two, it is worded broadly enough to apply to the warranty as a whole. Moreover, Count Two incorporates all previous allegations by reference. (ACAC ¶ 108).

those envisaged in the concept of merchantability and go to uses which are customarily made of the goods in question." Id. cmt. 2.

McGeown contends that he purchased his washing machine "for a particular purpose of being able to complete a washing cycle without interruption and for its ability to 'automatically counter-balance uneven loads,'" (ACAC ¶ 113), which his washing machine failed to do. McGeown further alleges that not only did he not receive the washing machine he purchased for the specific purpose of automatically counter-balancing uneven loads, his ordinary use of the washing machine to wash his clothing was precluded by the consequences of the defective washing machine. These **[*22]** allegations adequately state a claim for breach of the implied warranty of fitness for a particular purchase, and this claim may proceed. See _Kuzian v. Electrolux Home Prods., Inc., 937 F. Supp. 2d 599, 613 (D.N.J. 2013)_ (holding that where plaintiffs alleged that defendant "sold them refrigerators that did not produce ice properly . . . purchased those particular refrigerators for their purported ice making capabilities . . . . [and] their ordinary use of the refrigerator to properly store perishable food was precluded by the consequences of the defective ice makers," plaintiffs stated a claim for breach of the implied warranty of fitness for a particular purpose). Thus, dismissal of Count Two is not warranted as to McGeown.

### C. Magnuson-Moss Warranty Act (Count Three)

Under the _Magnuson-Moss Warranty Act ("MMWA")_, "a consumer who is damaged by the failure of a supplier . . . to comply with any obligation . . . under a written warranty [or] implied warranty . . . may bring suit for damages and other legal and equitable relief . . . (B) in an appropriate district court of the United States" subject to exceptions not raised here. _15 U.S.C. § 2310(d)_. "[W]ritten warranty" includes "any written affirmation or fact or written promise made in connection with the sale of a consumer product by a **[*23]** supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance over a specified period of time[.]" _15 U.S.C. § 2301(6)(A)_. "[I]mplied warranty" is one arising under state law in connection with the sale of a consumer product. _15 U.S.C. § 2301(7)_. Thus, the MMWA creates a federal cause of action for state law express and implied warranty claims. See _Dzielak, 26 F. Supp. 3d at 331_.

Plaintiffs base their MMWA claims on the underlying state law claims for breach of express and implied warranty. (See Pls.' Br. at 23). As discussed above, the ACAC states a claim for breach of express warranty, supra Part IV.A, and for breach of the implied warranties of merchantability and fitness for a particular purpose, supra Part IV.B. Thus, both Plaintiffs state a claim under the MMWA and dismissal of Count Three is not warranted.

### D. Injunctive and Equitable Relief (Count Four)

Defendant contends Plaintiffs' claim for injunctive and equitable relief should be dismissed because it is not a separate claim, but rather a remedy for other claims. (Def.'s Br. at 37-38). This claim seeks "a Judicial Order compelling LG to pay for a notice process in which **[*24]** LG notifies the Class and Subclass Members about the Washing Machines' Imbalance Defect, and, as and if requested, fully repair such defects at LG's cost." (ACAC ¶ 129). The claim does not specify a legal theory under which such relief is appropriate. (Id. ¶¶ 127-29).

This claim does not state a separate cause of action under either New Jersey or Washington law. See _StrikeForce Techs., Inc. v. WhiteSky, Inc., No. 13-1895, 2013 U.S. Dist. LEXIS 96832, 2013 WL 3508835, at *10 (D.N.J. July 11,2013)_ ("[A] claim for injunctive relief pleads for a remedy but does not constitute an independent cause of action."); _Krusee v. Bank of Am., N.A., No. C13-824, 2013_

U.S. Dist. LEXIS 107701, 2013 WL 3973966, at *5 (W.D. Wash. July 30, 2013) ("[A]n injunction is not a cause of action, but rather a remedy[.]"). To the extent Plaintiffs are seeking injunctive or equitable relief as a result of the alleged wrongdoing set forth elsewhere in the ACAC, dismissal of Count Four does not preclude them from seeking such relief where appropriate. To the extent Plaintiffs are seeking an order providing notice to potential class members concerning this lawsuit, this will not be addressed before a class certification motion or other motion has been made.

Therefore, dismissal of Count Four is warranted.

### E. Unjust Enrichment (Count Five)

"[U]njust enrichment law[] do[es] not vary in any substantive manner from state to state." Snyder, 792 F. Supp. 2d at 723 (collecting cases). Moreover, the parties appear to agree [*25] New Jersey law applies. (Def.'s Br. at 23-24; Pls.' Br. at 24-25).

Unjust enrichment is a quasi-contractual remedy to prevent one party from unjustly benefiting at the other's expense, despite the lack of a formal, enforceable contract. Castro v. NYT Television, 370 N.J. Super. 282, 299, 851 A.2d 88 (App. Div. 2004). "To establish unjust enrichment, a plaintiff must show both that defendant received a benefit and that retention of that benefit without payment would be unjust." VRG Corp. v. GKN Realty Corp., 135 N.J. 539, 554, 641 A.2d 519 (1994). More specifically, a plaintiff must "show that it expected remuneration from the defendant at the time it performed or conferred a benefit on defendant and that the failure of remuneration enriched defendant beyond its contractual rights." Id. Retention of a benefit without payment is not unjust unless "the plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred." Assocs. Comm. Corp. v. Wallia, 211 N.J. Super. 231, 244, 511 A.2d 709 (App. Div. 1986) (quoting Callano v. Oakwood Park Homes Corp., 91 N.J. Super. 105, 109, 219 A.2d 332 (App. Div. 1966)). Thus, unjust enrichment cases "involve[] either a direct relationship between the parties or a mistake on the part of the person conferring the benefit." Fasching v. Kallinger, 211 N.J. Super. 26, 36, 510 A.2d 694 (App. Div. 1986); accord Castro, 370 N.J. Super. at 299.

Plaintiffs describe their unjust enrichment claim as follows: "Plaintiffs . . . conferred a benefit on Defendant LG, but Defendant [*26] LG failed to disclose its knowledge that Plaintiffs did not receive what they paid for and misled Plaintiffs and the Class and Subclass Members regarding the misstatements of their Washing Machines while profiting from this deception." (ACAC ¶ 133). Plaintiffs argue a direct relationship arose between them and Defendant based on Defendant's false claims to Plaintiffs regarding the washing machines. (Pls.' Br. at 24). Plaintiffs rely on Stewart v. Beam Global Spirits & Wine, Inc., 877 F. Supp. 2d 192, 199 (D.N.J. 2012), which held that "where a plaintiff alleges that a defendant manufacturer has made false claims or misrepresentations directed for the purpose of generating retail sales, and where those retail sales could have the effect of increasing the amount of wholesale sales to the manufacturer," the "direct relationship" requirement may be satisfied. Id. at 200.

In Stewart, a court in this District allowed an unjust enrichment claim to go forward against a defendant who allegedly falsely marketed a beverage as "all-natural." Id. at 199-201. The Stewart court examined the New Jersey Supreme Court's decision in VRG Corp. and the Appellate Division's decision in Callano and concluded that the "direct relationship" requirement "is simply meant to preclude a plaintiff from seeking recovery [*27] from a defendant whose involvement is too far removed or too attenuated from the facts and circumstances giving rise to the plaintiff's claims[,]" and thus only protects "innocent third-parties." Id. at 200. The court reasoned that the defendant's false marketing campaign, "which

included the use of product packaging, taxi cab signboards, billboards, the Internet, and print publications specifically designed to entice consumers to buy [defendant's product]" meant it was not an innocent third party and thus gave rise to a sufficiently direct relationship with consumers. Id.

The Court finds Plaintiffs' reliance on Stewart persuasive. Like in *Stewart*, Plaintiffs allege that "in its uniform marketing and advertising, LG falsely represented that the Washing Machines in fact have technology that keeps the Washing Machines balanced and quiet while operating." (ACAC ¶ 63). Plaintiffs further allege that Defendant's false marketing campaign includes "promot[ing] . . . LG's 'True Balance Technology' on its HE top-loader-washing machines," publishing "on its website a video emphasizing the benefits of LG's 'True Balance Technology,'" and "representing that 'TrueBalance Technology automatically counter-balances uneven **[*28]** loads and adjusts spin speeds to further reduce vibration. Now you can wash large loads of jeans, sweatshirts or towels and enjoy a quiet, smooth wash with no concerns of vibrations.'" (Id. ¶¶ 9, 63). "Accordingly, this Court finds that [Plaintiffs have] allege[d] that . . . [D]efendant[, a] manufacturer[,] has made false claims or misrepresentations directed for the purpose of generating retail sales, and [because] those retails sales could have the effect of increasing the amount of wholesale sales to the manufacturer, . . . [P]laintiff[s] [have pled] a sufficiently direct relationship between the parties under New Jersey law." *Stewart, 877 F. Supp. 2d at 200*; see also *Pontrelli v. MonaVie, Inc., No. 13-4649, 2014 U.S. Dist. LEXIS 114718, 2014 WL 4105417, at \*7 (D.N.J. Aug. 19, 2014)*; *Lynch v. Tropicana Prods., Inc., No. 11-7382, 2013 U.S. Dist. LEXIS 82829, 2013 WL 2645050, at \*10 (D.N.J. June 12, 2013)*. As such, dismissal of Count Five is not warranted.

**F. Common Law Fraud (Count Six)**

In Federal Court, fraud claims must "be stated with particularity." *Fed. R. Civ. P. 9(b)*. To comply with *Rule 9(b)*, the circumstances surrounding the alleged fraud must be sufficiently pleaded to notify the defendant of the "precise misconduct with which [it is] charged." *Lum v. Bank of Am., 361 F.3d 217, 223 (3d Cir. 2004)*, abrogated in part on other grounds by *Twombly, 550 U.S. at 557*. A plaintiff can meet this requirement by specifying "the who, what, when, where, and how: the first paragraph of any newspaper story." See *Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir. 1999)* (quotation omitted), abrogated on other grounds by *Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 127 S. Ct. 2499, 168 L. Ed. 2d 179 (2007)*. A plaintiff may identify **[*29]** "the date, place or time of the fraud," or use "alternative means of injecting precision and some measure of substantiation into their allegations of fraud[,]" but must allege "who made a misrepresentation to whom and the general content of the misrepresentation." Id. (citations omitted).

The Court analyzes this claim for each Plaintiff because it implicates choice of law.

1. Morcom

First, Washington and New Jersey law conflict regarding a defendant's duty to disclose in fraudulent omission claims. Under Washington law, although "silence as to material facts is not fraud where there is no duty to disclose[,]" that duty may arise if, inter alia, "a seller has knowledge of a material fact not easily discoverable by the buyer[.]" *Favors v. Matzke, 53 Wash. App. 789, 796, 770 P.2d 686 (Ct. App. Div. 1 1989)*; accord *Alexander v. Sanford, 181 Wn. App. 135, 177, 325 P.3d 341 (Ct. App. Div. 1 2014)*. Courts in Washington have imposed that duty on manufacturers who failed to disclose a latent defect in a product about which the manufacturer allegedly knew. See, e.g., *Zwicker v. Gen. Motors Corp., No. C07-0291, 2007 U.S. Dist. LEXIS 99310, 2007 WL 5309204, at \*1, 3-4 (W.D. Wash. July 26, 2007)*. By contrast, in New Jersey, "where a claim for fraud is based on silence or

concealment," there is no duty to disclose "unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" *Lightning Lube. Inc. v. Witco Corp., 4 F.3d 1153, 1185 (3d Cir. 1993)* (quoting *Berman v. Gurwicz, 189 N.J. Super. 89, 458 A.2d 1311 (Ch. Div. 1981))*.

Thus, the Court looks to the *Restatement (Second) of Conflict of Laws § 148*, which **[*30]** concerns fraud and misrepresentation. Under *§ 148*, the proper analysis changes depending on whether a plaintiff s reliance takes place in the same state as the defendant's false representations:

> (1) When the plaintiff has suffered pecuniary harm on account of his reliance on the defendant's false representations and when the plaintiffs action in reliance took place in the state where the false representations were made and received, the local law of this state determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in *§ 6* to the occurrence and the parties, in which event the local law of the other state will be applied.
> (2) When the plaintiffs action in reliance took place in whole or in part in a state other than that where the false representations were made, the forum will consider such of the following contacts, among others, as may be present in the particular case in determining the state which, with respect to the particular issue, has the most significant relationship to the occurrence and the parties:
>
>> (a) the place, or places, where the plaintiff acted in reliance **[*31]** upon the defendant's representations,
>> (b) the place where the plaintiff received the representations,
>> (c) the place where the defendant made the representations,
>> (d) the domicil[e], residence, nationality, place of incorporation and place of business of the parties,
>> (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and
>> (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant.

*Restatement (Second) of Conflict of Laws § 148*.

Here, Defendant's alleged fraudulent omission arguably took place in Washington, because that is where Morcom encountered and purchased Defendant's product. The factors of *§ 6 of the Restatement* do not counsel against applying Washington law. Thus, under *§ 148(1)*, Washington law applies because it is the state in which Morcom took action in reliance on the omission by purchasing the washing machine. But even if the alleged fraudulent omission somehow took place in New Jersey, the analysis under *§ 148(2)* yields the same result. Factors (a), (b), and (e) weigh toward Washington because that is where Morcom received and acted on the alleged fraudulent omission and where the washing machine was situated **[*32]** at the time. Factor (d) is neutral because Morcom resides in Washington while LG resides in New Jersey. Factor (f) is inapplicable because Morcom was not induced to render performance under a contract. Assuming for the sake of the analysis that the omission took place in New Jersey, only factor (c) would weigh in favor of New Jersey. Thus, on balance, Washington law would still apply.

Applying Washington law, Morcom states a claim for fraudulent concealment.

"A party has engaged in fraud or inequitable conduct if it conceals a material fact from the other party[,]" so long as "the party possessing the knowledge has a duty to disclose that knowledge to the other party." *Wash. Mut. Sav. Bank v. Hedreen, 125 Wash. 2d 521, 526, 886 P.2d 1121 (1994)*. Here, as alleged, LG's duty to disclose arose because it had "knowledge of a material fact not

easily discoverable" by Morcom before Morcom purchased his machine on February 9, 2013. See *Favors*, 53 Wash. App. at 796. Specifically, viewing the allegations most favorably to Plaintiffs, Defendant had learned about the Imbalance Defects from consumer complaints early enough to issue the February 15, 2013 service bulletin describing them, yet failed to disclose them to consumers. (See ACAC ¶ 71(b), Ex. A). Moreover, the Court finds these alleged defects **[*33]** material—a reasonable consumer would likely care to know that a washing machine would repeatedly stop in the middle of a cycle and take up to six hours to complete a single load.

Defendant's arguments that Morcom does not state a claim are unpersuasive.

First, Defendant contends the Court should not consider the service bulletin as evidence of fraudulent concealment "because such an approach would discourage companies from responding to customer complaints or regulatory agencies." (Def.'s Br. at 24 (citing *Glass v. BMW of N. Am., LLC*, No. 10-5259, 2011 U.S. Dist. LEXIS 149199, 2011 WL 6887721, at *8 n.11 (D.N.J. Dec. 29, 2011)*; *St. Gregory Cathedral Sch. V. LG Elecs., Inc.*, No. 12-739, 2014 U.S. Dist. LEXIS 28678, 2014 WL 979196, at *4 (E.D. Tex. Mar. 5, 2014)*; *Alban v. BMW of N. Am.*, No. 09-5398, 2011 U.S. Dist. LEXIS 26754, 2011 WL 900114, at *12 (D.N.J. Mar. 15, 2011))*. None of the cases Defendant cites ground their refusal to consider service bulletins in any substantive or procedural law, or Federal Rule of Evidence. Two of the cases merely express they are "hesitant" to consider this evidence. *Glass*, 2011 U.S. Dist. LEXIS 149199, 2011 WL 6887721, at *8 n.11*; *Alban*, 2011 U.S. Dist. LEXIS 26754, 2011 WL 900114, at *12*. Thus, the Court is not persuaded it has any basis at the pleading stage to disregard otherwise well-pleaded allegations that Defendant was aware of the Imbalance Defects. See *Majdipour v. Jaguar Land Rover N. Am., LLC*, No. 12-7849, 2013 U.S. Dist. LEXIS 146209, 2013 WL 5574626, at *18 (D.N.J. Oct. 9, 2013)* (considering a service bulletin because "[e]ven if there is a public policy rationale for excluding [service bulletins] as evidence of a defect or an admission of liability, the Court will not now stretch that rationale to raise the bar that Plaintiffs must meet at the pleading **[*34]** stage").[8]

Second, Defendant argues Morcom's claim is not pleaded with particularity. However, Morcom identifies the omission upon which this claim is based (failure to disclose the Imbalance Defects) and the time and place at which Defendant failed to disclose it (before Morcom purchased his machine). (ACAC ¶ 137). This is sufficient for a fraudulent omission claim in Washington.

Accordingly, dismissal of Count Six as to Morcom is not warranted.

2. McGeown

The parties appear to agree New Jersey law applies to McGeown's claim.

In New Jersey, fraud requires "(1) a material misrepresentation of fact; (2) knowledge or belief by the defendant of its falsity; (3) intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damage." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)*. In a claim based on an omission, no duty to disclose arises "unless such disclosure is necessary to make a previous statement true or the parties share a 'special relationship.'" *Lightning Lube, Inc.*, 4 F.3d at 1185 (quoting *Berman*, 189 N.J. Super. at 89).

McGeown states a claim for fraud under New Jersey law. Here, McGeown alleges the material misrepresentation of fact as Defendant's advertisement "that its Washing Machines were

---

[8] On reply, Defendant also argues the service bulletin does not show knowledge of the Imbalance Defects as to Plaintiffs' machines because Plaintiffs purchased different Affected Models than those covered by the bulletin. (Def.'s Reply Br. at 12 n.6). However, as discussed above, supra Part IV.B, it is plausible based on the service bulletin that Defendant would know the TrueBalance Technology common to all Affected Models was not working properly.

Case 5:17-cv-02185-BLF   Document 103-3   Filed 01/03/18   Page 15 of 19

Page 14 of 18
2017 U.S. Dist. LEXIS 198935, *34

equipped with 'TrueBalance Technology [which] **[*35]** automatically counter-balances uneven loads . . .'" (ACAC ¶ 138). McGeown further alleges that "LG knew, or should have known, that the Washing Machines could not 'automatically counter-balance uneven loads,'" (id.), and that "Defendant intended that the Plaintiffs and the other members of the Class and Subclass rely upon the above-described uniform misrepresentations, concealment and omissions." (Id. ¶ 139). Although Defendant contends that McGeown has not sufficiently pled reliance, McGeown states that "Plaintiffs and other Class and Subclass Members justifiably relied upon Defendant's misrepresentations, concealment and omissions to their damage and detriment," (id. ¶ 141), and that McGeown was specifically "attracted to the LG Washing Machine because of the advertised TrueBalance technology and LG's advertisements[.]" (Id. ¶ 27). The Court finds that McGeown has sufficiently pled reliance. Finally, McGeown maintains that "Plaintiffs and the Class and Subclass suffered the damage described in this complaint as a proximate result thereof." (Id. ¶ 142). Accordingly, dismissal of Count Six as to McGeown is not warranted.[9]

## G. New Jersey Consumer Fraud Act (Count Seven)

### 1. Morcom

Statutory **[*36]** consumer fraud claims, like common law fraud claims, require choice of law analysis to determine which state's statute appropriately governs the claim. See *Cooper v. Samsung Elecs. Am., Inc., 374 F. App'x 250, 255 (3d Cir. 2010)* (plaintiff could not bring a New Jersey consumer fraud statutory claim when the "most significant relationship" test pointed to the consumer fraud laws of a different state). The elements of a New Jersey Consumer Fraud Act ("NJCFA") claim are "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland v. Wamock Dodge, Inc., 197 N.J. 543, 557, 964 A.2d 741 (2009)*. The elements of a Washington Unfair Business Practices Act ("WUBPA") claim are: "(1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered." *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc., 162 Wash. 2d 59, 73, 170 P.3d 10 (2007)*. These two statutes have different, conflicting elements. Thus, choice of law analysis is necessary.

New Jersey's choice of law analysis for consumer fraud claims is governed by the *Restatement (Second) of the Conflict of Laws § 148*. See *Cooper, 374 F. App'x at 254-55*. The Court already found under *§ 148* that Washington law applied to Morcom's common law fraud claim. See supra Part **[*37]** IV.F. Using substantially the same analysis, the Court reaches the same result for his consumer fraud claims—the WUBPA applies rather than the NJCFA. Because Morcom cannot bring a NJCFA claim when the "most significant relationship" test points to Washington law instead, see *Cooper, 374 F. App'x at 255*, dismissal of Count Seven as to Morcom is warranted.

### 2. McGeown

The parties do not appear to dispute that New Jersey law governs McGeown's consumer fraud claim—indeed, McGeown does not bring a consumer fraud claim under Washington law.

The NJCFA requires showing "(1) unlawful conduct by defendant; (2) an ascertainable loss by plaintiff; and (3) a causal relationship between the unlawful conduct and the ascertainable loss." *Bosland, 197 N.J. at 557*. "Unlawful" conduct includes, inter alia, "any unconscionable

---

[9] Because the Court finds that dismissal of McGeown's common law fraud claim is not warranted, the Court does not reach the question of whether McGeown's common law fraud claim may be based on a theory of omission, rather than a theory of misrepresentation.

commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise . . . whether or not any person has in fact been misled, deceived or damaged thereby[.]" *N.J.S.A. § 56:8-2*. Ascertainable loss can mean "the consumer **[*38]** was misled into buying a product that was ultimately worth less to the consumer than the product he was promised." *Smajlaj v. Campbell Soup Co., 782 F. Supp. 2d 84, 99 (D.N.J. 2011)*. It can also mean out-ofpocket loss. See *Thiedemann v. Mercedes-Benz USA, LLC, 183 N.J. 234, 248, 872 A.2d 783 (2005)*.

McGeown states a claim under the NJCFA based on Defendant's alleged failure to disclose the Imbalance Defects. (ACAC ¶ 152). Unlawful conduct includes knowing, material omissions. *N.J.S.A. § 56:8-2*. Here, as discussed supra Part IV.B and Part IV.F, Plaintiffs have adequately pleaded that Defendant knew of the Imbalance Defects before Plaintiffs purchased their washing machines, and that said defects were material, yet Defendant failed to disclose them. McGeown also pleads an "ascertainable loss" because the washing machine he purchased took much longer to complete a single wash cycle than one would normally expect, and was thus worth less than the working washing machine he was promised; moreover, McGeown incurred out-of-pocket "repair and/or replacement costs" for the machine. (See ACAC ¶¶ 30-31). Finally, McGeown pleads a causal relationship because the Imbalance Defects that Defendant failed to disclose are what caused his washing machine to complete its wash cycle so slowly, rendering it less valuable.

Defendant's arguments to the contrary **[*39]** are unpersuasive.

Defendant first argues this claim is not pleaded with particularity. (Def.'s Br. at 33-34). However, McGeown identifies the omission upon which this claim is based (failure to disclose the Imbalance Defects) and the time and place at which Defendant failed to disclose it (before McGeown purchased his machine). (ACAC ¶ 137). This is sufficient at the pleading stage.

Defendant further argues McGeown has not pleaded ascertainable loss because he does not identify "any actual repair or replacement costs incurred" or "the market price of [any comparable] products" to help quantify the lost value of the allegedly defective machine. (Def.'s Br. at 35). This is unpersuasive. First, McGeown does identify out-of-pocket replacement costs, namely, the purchase of a new washing machine to replace Defendant's allegedly defective product. (ACAC ¶ 30). Second, the Court finds at this stage that the nature of the alleged defect itself makes it plausible that the washing machine McGeown purchased is less valuable than what was promised. McGeown paid $629.99 for a new washing machine that immediately and consistently malfunctioned despite multiple attempts to repair it, resulting in wash **[*40]** cycles lasting five hours or more. (Id. ¶¶ 27-30). It is plausible such a defect would measurably diminish the machine's value. As such, McGeown's failure to identify the price of a comparable product is not fatal to his claim.

Finally, Defendant argues McGeown has not pleaded causation because he did not allege seeing any marketing materials from Defendant. (Def.'s Br. at 35-36). However, McGeown's NJCPA claim is based partially on omissions. (ACAC ¶ 152). It is plausible McGeown would not have purchased his washing machine if Defendant had not failed to disclose the Imbalance Defects that rendered the machine very difficult to use. This is sufficient at the pleading stage. See, e.g., *McCalley v. Samsung Elecs. Am., Inc., No. 07-2141, 2008 U.S. Dist. LEXIS 28076, 2008 WL 878402, at *9 (D.N.J. Mar. 31, 2008)* (denying motion to dismiss NJCFA claim because "Plaintiff claims that had the alleged Defect been disclosed, consumers would not have purchased the Televisions").

Therefore, dismissal of Count Seven as to McGeown is not warranted.

## H. New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act (Count Eight)

### 1. Morcom

As stated above, statutory consumer fraud claims, like common law fraud claims, require choice of law analysis to determine which state's statute appropriately governs the claim. See *Miller, 2015 U.S. Dist. LEXIS 84359, 2015 WL 3965608, at \*12*. The **[\*41]** Truth-in-Consumer Contract, Warranty, and Notice Act ("TCCWNA") provides:

> No seller, lessor, creditor, lender or bailee shall in the course of his business offer to any consumer or prospective consumer or enter into any written consumer contract or give or display any written consumer warranty, notice or sign after the effective date of this act which includes any provision that violates any clearly established legal right of a consumer or responsibility of a seller, lessor, creditor, lender or bailee as established by State or Federal law at the time the offer is made or the consumer contract is signed or the warranty, notice or sign is given or displayed.

*N.J.S.A. § 56:12-15*.

To state a claim under the TCCWNA, Plaintiffs must allege "(1) the plaintiff is a consumer; (2) the defendant is a seller; (3) the 'seller offers a consumer a contract' or gives or displays any written notice, or sign; and (4) the contract, notice or sign includes a provision that 'violate[s] any legal right of a consumer' or responsibility of a seller." *Watkins v. DineEquity, Inc., 591 F. App'x 132, 135 (3d Cir. 2014)* (quoting *Bosland v. Wamock Dodge, Inc., 396 N.J. Super. 267, 278, 933 A.2d 942 (App. Div. 2007))*.

New Jersey's choice of law analysis for consumer fraud claims is governed by the *Restatement (Second) of the Conflict of Laws § 148*. See *Miller, 2015 U.S. Dist. LEXIS 84359, 2015 WL 3965608, at \*12*. The Court already found under *§ 148* that Washington law applied to Morcom's common and consumer **[\*42]** law fraud claims. See supra Parts IV.F, IV.G. Using substantially the same analysis, the Court reaches the same result for his TCCWNA claims. Because Morcom cannot bring a TCCWNA claim when the "most significant relationship" test points to Washington law instead, see *Miller, 2015 U.S. Dist. LEXIS 84359, 2015 WL 3965608, at \*12*, dismissal of Count Eight as to Morcom is warranted.

### 2. McGeown

The parties do not appear to dispute that New Jersey law governs McGeown's TCCWNA claim, the elements of which are stated above. The TCCWNA "does not establish consumer rights or seller responsibilities." *Watkins, 591 F. App'x at 134*. Instead, "[t]he rights and responsibilities to be enforced by TCCWNA are drawn from other legislation . . . . [such as] the [NJCFA]." Id.

Defendant argues that "NJTCCWNA claims must be dismissed where the plaintiff fails to identify which provisions of the purported consumer contract or notice violate a clearly established right of the plaintiff or responsibility of the defendant." (Def.'s Br. at 36-37). "However, as stated above, [McGeown] has sufficiently alleged a violation of the NJCFA." *Munning v. Gap. Inc., 238 F. Supp. 3d 1195, 1202 (N.D. Cal. 2017)* (applying New Jersey law). "Thus, [McGeown's] NJCFA claim may serve as the predicate violation for a TCCWNA claim." Id. "Because 'New Jersey courts have held that a [NJ]CFA violation **[\*43]** constitutes a violation of a "clearly established legal right" for TCCWNA purposes,' the Court finds [McGeown] has a valid TCCWNA claim." Id. (holding that even where "Plaintiff failed to expressly mention an alleged violation of the NJCFA in support of her TCCWNA claim, Plaintiff incorporated the violation by reference," and therefore stated a claim upon which relief may be granted under the TCCWNA). Accordingly, dismissal of Count Eight as to McGeown is not

warranted.

## I. Morcom's Washington Unfair Business Practices Act Claim (Count Nine)

The elements of a WUBPA claim are: "(1) an unfair or deceptive act or practice, (2) that occurs in trade or commerce, (3) a public interest, (4) injury to the plaintiff in his or her business or property, and (5) a causal link between the unfair or deceptive act and the injury suffered." Indoor Billboard/Washington, Inc., 162 Wash. 2d at 73. "The non-disclosure of a material fact" can constitute an unfair or deceptive act or practice under the WUBPA. See Vernon v. Qwest Commc'ns Intl. Inc., 643 F. Supp. 2d 1256, 1268 (W.D. Wash. 2009).

One way to satisfy the causation element of the WUBPA is by showing reliance. See Schnall v. AT&T Wireless Servs., Inc., 171 Wash. 2d 260, 277-78, 259 P.3d 129 (2011). "Washington courts do not require a plaintiff to allege individual reliance on Defendants' conduct, particularly where the non-disclosure of a material fact is alleged." **[*44]** Vernon, 643 F. Supp. 2d at 1268. Instead, under the WUBPA, reliance is presumed in cases where plaintiffs primarily allege fraudulent omissions. Grays Harbor Adventist Christian Sch. v. Carrier Corp., 242 F.R.D. 568, 573 (W.D. Wash. 2007).

Defendant's sole challenge to Morcom's WUBPA claim is that he fails to allege causation because he never saw any of Defendant's advertisements. (Def.'s Br. at 32-33; Def.'s Reply Br. at 17-18). However, this is unpersuasive because under the WUBPA, Morcom's claim can be based on material omissions, such as the failure to disclose, the Imbalance Defects, instead of statements, such as Defendant's advertising. See Vernon, 643 F. Supp. 2d at 1268; Weske v. Samsung Elecs., Am., Inc., 42 F. Supp. 3d 599, 611-12 (D.N.J. 2014) (applying the WUBPA). Indeed, Morcom alleges material omission as part of this claim. (ACAC 170). Thus, at the pleading stage, to the extent Morcom's claim is based on Defendant's failure to disclose the Imbalance Defects, reliance, and thus causation, is presumed. Grays Harbor, 242 F.R.D. at 573; see also Weske, 42 F. Supp. 3d at 611-12 (allowing WUBPA claim based on omissions to go forward despite plaintiff not having received any communications from defendant manufacturer).

Accordingly, dismissal of Count Nine is not warranted.

## V. CONCLUSION

Defendant's motion to dismiss is GRANTED as to Count Four (injunctive and equitable relief); Count Seven (New Jersey Consumer Fraud Act) as to Morcom; and Count Eight (New Jersey Truth-in-Consumer **[*45]** Contract, Warranty, and Notice Act) as to Morcom. Defendant's motion to dismiss is DENIED as to Count One (breach of express warranty); Count Two (breach of implied warranty); Count Three (Magnuson-Moss Warranty Act); Count Five (unjust enrichment); Count Six (common law fraud); Count Seven (New Jersey Consumer Fraud Act) as to McGeown; Count Eight (New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act) as to McGeown; and Count Nine (Washington Unfair Business Practices Act). An appropriate Order accompanies this Opinion.

Dated: November 30, 2017

/s/ Claire C. Cecchi

**CLAIRE C. CECCHI, U.S.D.J.**

## ORDER

**CECCHI, District Judge**.

This matter comes before the Court on the motion of Defendant LG Electronics USA, Inc. ("Defendant") (ECF No. 13) to dismiss the Amended Class Action Complaint (ECF No. 7).

The Court has considered the submissions made in support of and in opposition to the instant motion. The motion is decided without oral argument pursuant to *Fed. R. Civ. P. 78(b)*. For the reasons set forth in the Court's corresponding Opinion:

**IT IS**, on this 30 day of November, 2017,

**ORDERED** that Defendant's motion to dismiss is GRANTED as to Count Four (injunctive and equitable relief); Count Seven (New Jersey **[*46]** Consumer Fraud Act) as to Morcom; and Count Eight (New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act) as to Morcom; and it is further

**ORDERED** that Defendant's motion to dismiss is DENIED as to Count One (breach of express warranty); Count Two (breach of implied warranty); Count Three (Magnuson-Moss Warranty Act); Count Five (unjust enrichment); Count Six (common law fraud); Count Seven (New Jersey Consumer Fraud Act) as to McGeown; Count Eight (New Jersey Truth-in-Consumer Contract, Warranty, and Notice Act) as to McGeown; and Count Nine (Washington Unfair Business Practices Act).

**SO ORDERED**.

/s/ Claire C. Cecchi

**CLAIRE C. CECCHI, U.S.D.J.**

**End of Document**