**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE NEXUS 6P PRODUCTS LIABILITY LITIGATION | Case No. 17-cv-02185-BLF<br><br>**ORDER GRANTING WITH LEAVE TO AMEND MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION AS TO HUAWEI**<br><br>[Re: ECF 38] |

In this putative consumer class action, Plaintiffs Roy Berry, Jonathan Makcharoenwoodhi, Alex Gorbatchev, Brian Christensen, Anthony Martorello, Khanh Tran, Edward Beheler, Yuriy Davydov, Rebecca Harrison, Zachary Himes, Taylor Jones, Paul Servodio, Justine Leone, James Poore, Jr., and Kenneth Johnston (collectively, "Plaintiffs") allege severe defects in their Nexus 6P smartphones. In the operative complaint, Plaintiffs assert causes of action for breach of warranty, fraud, and unjust enrichment against the companies that developed the phone—Huawei Device USA, Inc. ("Huawei") and Google LLC ("Google"). Here, the Court considers the personal jurisdiction arguments in Huawei's Motion to Dismiss the Consolidated Amended Complaint and to Strike Class Allegations ("Motion to Dismiss"). Huawei Mot., ECF 38.

The Court held a hearing on Huawei's Motion to Dismiss on January 18, 2018. The Court has considered the arguments presented at oral argument and in the briefing, as well as the submitted evidence and applicable law. For the reasons that follow, the Court hereby GRANTS Huawei's Motion to Dismiss for lack of personal jurisdiction with leave to amend.

## I. BACKGROUND

The following facts are drawn from the Consolidated Amended Complaint ("CAC"), ECF 28. In September 2015, Google unveiled the Nexus 6P, the newest version of its Nexus 6

smartphone. CAC ¶ 165. Google and Huawei created the Nexus 6P together, with Google handling software development and Huawei handling device manufacture. *Id.* At the launch event and in advertising, Google touted many of the superior features of the phone. *See id.* ¶¶ 7, 169, 171.

Unfortunately, according to the CAC, the Nexus 6P suffers two major defects. First, some phones unexpectedly turn off and, upon turning back on, experience an endless bootloop cycle. *Id.* ¶ 174. Second, some phones prematurely shut off despite showing a battery charge and will not turn back on until the user connects the phone to power. *Id.* ¶¶ 177–78.

This putative class action against Huawei and Google was commenced on April 19, 2017. ECF 1. Plaintiffs filed the operative complaint—the CAC—on May 23, 2017. Plaintiffs seek to represent a nationwide class and twelve statewide subclasses of customers who purchased or own a Nexus 6P. CAC ¶¶ 1, 205. Plaintiffs rely on a litany of state laws and one federal statute to assert twenty-three causes of action, ranging from breach of express and implied warranty to fraud and unjust enrichment. *Id.* ¶¶ 213–535.

The allegations in the CAC relevant to whether this Court may properly exercise personal jurisdiction over Huawei are limited. The CAC alleges that Huawei's place of incorporation and principal place of business are located in Texas. *Id.* ¶ 160. According to the CAC, "[t]his Court has personal jurisdiction over Defendants [Huawei and Google] because they have conducted substantial business in this judicial district and intentionally and purposefully placed the Phones into the stream of commerce within this district and throughout the United States." *Id.* ¶ 11.

In June 2017, Huawei filed its Motion to Dismiss, asserting that all of Plaintiffs' claims against Huawei should be dismissed because the CAC's allegations are insufficient to establish personal jurisdiction over Huawei. Huawei Mot. 6–8. Huawei also contends that Plaintiffs have failed to allege sufficient facts entitling them to relief on their claims, but the Court does not address those contentions in this order.[1] *Id.* at 9–28. Plaintiffs opposed and filed a request for

---

[1] For the reasons stated below, the Court grants Huawei's motion to dismiss on the ground that the Court lacks personal jurisdiction over Huawei. Because this dismissal is with leave to amend, for the sake of efficiency, the Court will address Huawei's remaining arguments (along with the arguments in Google's motion to dismiss) in a separate order.

2

judicial notice in connection with the personal jurisdiction issue. Opp'n, ECF 53; Pls.' RJN, ECF 54. Huawei filed a reply. Reply, ECF 61.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(2) authorizes a defendant to seek dismissal of an action for lack of personal jurisdiction. Fed. R. Civ. P. 12(b)(2). "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss." *Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015) (internal quotation marks and citation omitted). Uncontroverted allegations in the complaint are taken as true, *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004), and factual disputes contained within declarations or affidavits are resolved in the plaintiff's favor, *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir. 2008).

Under Federal Rule of Civil Procedure 4(k)(1)(A), this Court has personal jurisdiction if the defendant would be "subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located," here California. Because California's long-arm statute is coextensive with federal due process requirements, the Court may exercise personal jurisdiction so long as it comports with due process. *See Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011). "[D]ue process requires that the defendant 'have certain minimum contacts' with the forum state 'such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."'" *Ranza*, 793 F.3d at 1068 (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

The Supreme Court has recognized two types of personal jurisdiction: (1) general (or all-purpose) jurisdiction and (2) specific (or case-specific) jurisdiction. *See Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 927 (2011). General jurisdiction is based on certain limited affiliations that the defendant has with the forum state. *Id.* at 919. In contrast, specific jurisdiction is based on the defendant's connections to the state with regard to the particular controversy at issue. *Id.*

## III. DISCUSSION

### A. Request for Judicial Notice

Before turning to the merits of Huawei's personal jurisdiction arguments, the Court addresses Plaintiffs' request for judicial notice. Pls.' RJN. Because that request went beyond Plaintiffs' allowed page limit, the Court rejected it. ECF 56. Plaintiffs are not the only page-limit offenders in the case, but they were unable to file a corrected request for judicial notice because all of their available pages had already been used. Nevertheless, because Plaintiffs will be afforded leave to amend, efficiency warrants consideration of the evidence submitted in Plaintiffs' request for judicial notice. The Court examines that evidence below.

### B. Personal Jurisdiction

Huawei moves under Federal Rule of Civil Procedure 12(b)(2), seeking dismissal of Plaintiffs' claims against Huawei for lack of personal jurisdiction. Plaintiffs assert that Huawei is subject to both general and specific jurisdiction in California.

#### 1. General Jurisdiction

The Court finds unavailing Plaintiffs' contention regarding general jurisdiction. A court may exercise general jurisdiction only when the defendant's "affiliations with the State are so 'continuous and systematic' as to render [the defendant] essentially at home in the forum State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 754 (2014) (quoting *Goodyear*, 564 U.S. at 919). For a corporate defendant, like Huawei, the place of incorporation and the principal place of business are the paradigm places for general jurisdiction. *Id.* at 760. Here, neither of those locations is in California—Huawei is incorporated and has its principal place of business in Texas. CAC ¶ 160.

Plaintiffs' remaining evidence supporting the exercise of general jurisdiction comes not from the CAC, but instead from exhibits attached to Plaintiffs' rejected request for judicial notice. Opp'n 8. Even if the Court were to consider these materials, general jurisdiction would still be lacking. Plaintiffs point to Huawei's research and development operations in Santa Clara, California but make no showing that those activities go beyond a "substantial, continuous, and systematic course of business" to contacts so "continuous and systematic" as to render Huawei "essentially at home" in California. *See Daimler*, 134 S. Ct. at 761 (citations omitted). Moreover,

4

under California law, it is not enough that Huawei maintains a California agent for service of process and has registered to do business in California. *See Thomson v. Anderson*, 6 Cal. Rptr. 3d 262, 268 (Ct. App. 2003) ("[D]esignation of an agent for service of process and qualification to do business in California alone are insufficient to permit general jurisdiction."); *see also AM Tr. v. UBS AG*, 681 F. App'x 587, 588 (9th Cir. 2017) (same).

Plaintiffs fall far short of demonstrating that this Court may properly exercise general jurisdiction over Huawei.

### 2. Specific Jurisdiction

Plaintiffs' allegations of specific jurisdiction are also deficient, due in part to a recent U.S. Supreme Court decision. Less than a month after Plaintiffs filed the CAC, the U.S. Supreme Court issued its opinion in *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017). In *Bristol-Myers*, the U.S. Supreme Court clarified and reiterated the principles animating the specific jurisdiction inquiry.

*Bristol-Myers* arose in the context of a mass tort action in California state court.[2] 137 S. Ct. at 1778. A group of California residents and non-California residents brought suit against Bristol-Myers Squibb Co. ("Bristol-Myers") regarding the effects of its drug Plavix. *Id.* Bristol-Myers asserted that the California Superior Court lacked personal jurisdiction as to the non-residents' claims. *Id.* Specifically, Bristol-Myers noted that while it sells Plavix in California, it did not develop, manufacture, label, package, or seek regulatory approval of the product in California, and none of the non-residents claimed that they obtained, ingested, or were injured by Plavix in California. *Id.* The California Supreme Court held that the non-residents were properly subject to specific jurisdiction, but the U.S. Supreme Court reversed. *Id.* at 1782.

---

[2] The Court pauses upfront to note two potentially relevant differences between *Bristol-Myers* and the instant case. First, this case was filed in federal—not state—court, and the U.S. Supreme Court in *Bristol-Myers* explicitly left open "the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court." 137 S. Ct. at 1784. Second, this case involves a class action—not a mass action—and the applicability of *Bristol-Myers* in the class-action setting is still an open question. *See id.* at 1789 (Sotomayor, J., dissenting) ("The Court today does not confront the question whether its opinion here would also apply to a class action in which a plaintiff injured in the forum State seeks to represent a nationwide class of plaintiffs, not all of whom were injured there."). Because the parties do not raise either argument, the Court does not address those arguments here.

5

As the U.S. Supreme Court emphasized, specific jurisdiction requires a careful examination of the nature of the asserted claims because the underlying controversy must arise out of or relate to the defendant's contacts with the forum. *Id.* at 1780–81. Put another way, "the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden v. Fiore*, 134 S. Ct. 1115, 1121 (2014); *see also Bristol-Myers*, 137 S. Ct. at 1780 ("[T]here must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" (quoting *Goodyear*, 564 U.S. at 919)). As those standards indicate, the focus is on whether each individual defendant's suit-related conduct forms a connection with the forum itself, so the mere fact of a "relationship with a [resident] plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden*, 134 S. Ct. at 1123.

The necessary "connection between the forum and the specific claims at issue" was exactly what the non-residents' case against Bristol-Myers was missing. *Bristol-Myers*, 137 S. Ct. at 1781. The non-residents' state-law claims alleged that Plavix damaged their health, but Bristol-Myers did not create or manufacture the drug in California. *Id.* Although Bristol-Myers sold Plavix in California, the non-residents could not avail themselves of that fact because they did not allege that they bought or were injured by the drug in California. *Id.* at 1781–82. Moreover, the fact that Bristol-Myers contracted with a California company to distribute Plavix nationally did not change the analysis, at least when the non-residents did not allege that Bristol-Myers "engaged in relevant acts together with [the distributor] in California" or that Bristol-Myers was "derivatively liable for [the distributor's] conduct in California." *Id.* at 1783. Accordingly, for the non-residents' claims, the requisite connection to California was absent.

Operating without the benefit of the Supreme Court's articulation of the standards governing specific jurisdiction in *Bristol-Myers*,[3] Plaintiffs' allegations in the CAC are off-point and incomplete. For example, the CAC states that this Court may exercise specific jurisdiction

---

[3] The Court notes, however, that the Supreme Court in *Bristol-Myers* stated that the result flowed from a "straightforward application . . . of settled principles of personal jurisdiction." *Id.*; *see also id.* at 1781 ("Our settled principles regarding specific jurisdiction control this case.").

6

because Huawei "intentionally and purposefully placed the Phones into the stream of commerce within this district and throughout the United States," CAC ¶ 11, but Plaintiffs do not repeat that argument in their opposition, *see generally* Opp'n 5–8. Similarly, the CAC's suggestion that specific jurisdiction exists because Huawei "ha[s] conducted substantial business in this judicial district," CAC ¶ 11, misses the mark, as there is no alleged link between that business and Plaintiffs' claims. More broadly, the CAC does not indicate where Plaintiffs purchased their phones, where Plaintiffs experienced the defects, or even where Plaintiffs were residing at the time that they purchased their phones.

Nor does the CAC establish a prima facie case of specific jurisdiction based on the allegation that "[t]he Nexus 6P resulted from a collaborative effort between Google and Huawei," with "Huawei manufactur[ing] the device and Google develop[ing] its software." CAC ¶ 165. Like Bristol-Myers's contract with the California distributor, Huawei's relationship with California-based Google does not by itself confer specific jurisdiction. *See Bristol-Myers*, 137 S. Ct. at 1783; *see also Walden*, 134 S. Ct. at 1123 ("[A] defendant's relationship with a . . . third party, standing alone, is an insufficient basis for jurisdiction."). The CAC does not specify whether all or some of Huawei's and Google's collaboration took place in California or otherwise describe Huawei's case-related activities in California. As presently pled, these allegations do not fulfill Plaintiffs' obligation to provide "an affiliation between the forum and the underlying controversy [with Huawei], principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers*, 137 S. Ct. at 1780 (second alteration in original) (quoting *Goodyear*, 564 U.S. at 919).

In light of Plaintiffs' forthcoming amendments to the complaint, the Court also addresses Plaintiffs' extra-complaint evidence. First, Plaintiffs point to a press release by Huawei which admits that Huawei was present with Google at the September 2015 unveiling of the Nexus 6P in San Francisco. ECF 55, Ex. A. But Huawei's appearance in California to promote its new product with Google was a simple photo op that Plaintiffs have not connected to their lawsuit. Indeed, Plaintiffs do not suggest that Huawei took any actions or made any statements at the San Francisco event that have anything to do with Plaintiffs' warranty, fraud, or unjust enrichment

7

claims. Plaintiffs need more than conduct by Huawei in California; they need "*suit-related conduct*" by Huawei that occurs in California or "create[s] a substantial connection" with California. *See Walden*, 134 S. Ct. at 1121 (emphasis added).

Although Plaintiffs' remaining evidence is also wanting, it has a more-apparent connection to the underlying controversy. Plaintiffs cite sources indicating that Huawei has research and development facilities in Santa Clara, California. ECF 55, Exs. B, C. Obviously, as *Bristol-Myers* instructs, these contacts are irrelevant for purposes of specific jurisdiction if Huawei's research and development there was unrelated to the Nexus 6P which underlies this lawsuit. *See* 137 S. Ct. at 1781 ("Nor is it sufficient—or even relevant—that [Bristol-Myers] conducted research in California on matters unrelated to Plavix."). However, one of Plaintiffs' other sources—a complaint filed by Huawei in another suit—reveals that Huawei's research and development teams in Santa Clara "focus on" topics such as "Android interoperability," ECF 55, Ex. B, and the Nexus 6P utilizes Google's Android software, CAC ¶ 169. Those facts leave room for the possibility that Huawei either did or did not perform relevant development of the Nexus 6P in California. Given that the particular research subjects at Huawei's internal facility are unlikely to be publicly accessible, the Court will allow limited jurisdictional discovery on this subject and, relatedly, the extent to which Huawei and Google collaborated on development of the Nexus 6P in California. *See Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) ("Discovery may be appropriately granted where . . . a more satisfactory showing of the facts is necessary." (citation omitted)); *Harris Rutsky & Co. Ins. Servs. v. Bell & Clements Ltd.*, 328 F.3d 1122, 1135 (9th Cir. 2003) (stating that jurisdictional discovery is appropriate where "[f]urther discovery on this issue might well demonstrate facts sufficient to constitute a basis for jurisdiction"). The parties should present a jurisdictional discovery plan for approval by the Court on or before February 27, 2018.

Because the quality of the evidence uncovered will need to be judged on its own merit, the Court does not purport to rule on what evidence would be sufficient to establish specific jurisdiction. But, unlike the other allegations and evidence, the facts about Huawei's Santa Clara facility and Huawei's California-based collaboration with Google warrant further exploration because they go to the central controversy—namely, the development of allegedly defective

8

Nexus 6Ps—that underlie at least some of Plaintiffs' claims. In a similar vein, Judge Tigar recently explained that, under *Bristol-Myers*, a district court may exercise specific jurisdiction when a plaintiff adequately ties the defendant's conduct in the forum to the basis for the claims. *See Cortina v. Bristol-Myers Squibb Co.*, No. 17-CV-00247-JST, 2017 WL 2793808, at *4 (N.D. Cal. June 27, 2017). There, the plaintiff's allegation that "nearly every pivotal clinical trial . . . involved studying [the challenged drug] throughout the State of California" created a direct connection between the defendant's conduct in California—critical clinical trials on the challenged drug—and the basis for the plaintiff's claims—the inadequacy of those trials. *Id.*; *see also In re Dental Supplies Antitrust Litig.*, No. 16-CV-00696-BMC, 2017 WL 4217115, at *9 (E.D.N.Y. Sept. 20, 2017) (finding no specific jurisdiction in New York where the defendant's "limited sales to New York dentists lack a nexus to this action"). Plaintiffs' amended allegations, including those derived from the limited jurisdictional discovery, must similarly demonstrate the requisite link between Huawei's California conduct and Plaintiffs' underlying claims.

Because *Bristol-Myers* was unavailable when Plaintiffs filed the CAC, Plaintiffs did not have the opportunity to develop their complaint in light of the newly articulated personal jurisdiction standards. Therefore, the Court deems it appropriate to grant Plaintiffs leave to amend the CAC to allege facts about the connection between California and Plaintiffs' claims against Huawei. *See Bristol-Myers*, 137 S. Ct. at 1781.

**IV.  ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that Huawei's Motion to Dismiss for lack of personal jurisdiction is GRANTED WITH LEAVE TO AMEND.

Counsel shall submit an agreed jurisdictional discovery plan and deadline for filing an amended complaint no later than February 27, 2018.

**IT IS SO ORDERED.**

Dated: February 12, 2018

_____
BETH LABSON FREEMAN
United States District Judge