# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| IN RE NEXUS 6P PRODUCTS LIABILITY LITIGATION | Case No. 17-cv-02185-BLF |
| | **ORDER GRANTING WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART AND DENYING IN PART HUAWEI'S MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT AND TO STRIKE CLASS ALLEGATIONS; GRANTING WITH LEAVE TO AMEND IN PART AND WITHOUT LEAVE TO AMEND IN PART AND DENYING IN PART GOOGLE'S MOTION TO DISMISS CONSOLIDATED AMENDED COMPLAINT** |
| | [Re: ECF 38, 39] |

In this putative consumer class action, Plaintiffs Roy Berry, Jonathan Makcharoenwoodhi, Alex Gorbatchev, Brian Christensen, Anthony Martorello, Khanh Tran, Edward Beheler, Yuriy Davydov, Rebecca Harrison, Zachary Himes, Taylor Jones, Paul Servodio, Justin Leone, James Poore, Jr., and Kenneth Johnston (collectively, "Plaintiffs") allege severe defects in their Nexus 6P smartphones. Plaintiffs sued the companies that developed the phone—Huawei Device USA, Inc. ("Huawei") and Google LLC ("Google")—for breach of warranty, fraud, and unjust enrichment. Their twenty-three causes of action span a litany of state laws and one federal statute.

Presently before the Court are Huawei's Motion to Dismiss the Consolidated Amended Complaint and to Strike Class Allegations ("Huawei's Motion to Dismiss"), Huawei Mot., ECF 38; and Google's Motion to Dismiss Consolidated Amended Complaint ("Google's Motion to Dismiss"), Google Mot., ECF 39. In a previous order, the Court granted with leave to amend

Huawei's Motion to Dismiss on the ground that the Court lacks personal jurisdiction over Huawei. ECF 113. Here, the Court dives into the merits of Huawei's and Google's Motions to Dismiss, which assert that Plaintiffs have failed to state a claim on which relief can be granted and that Plaintiffs' class allegations should be stricken.

The Court held a hearing on these motions on January 18, 2018. The Court has considered the arguments presented at oral argument and in the briefing, as well as the submitted evidence and applicable law. For the reasons that follow, the Court hereby GRANTS WITH LEAVE TO AMEND IN PART, GRANTS WITHOUT LEAVE TO AMEND IN PART, AND DENIES IN PART Huawei's and Google's Motions to Dismiss. The Court DENIES Huawei's and Google's motions to strike Plaintiffs' class allegations.

## I. BACKGROUND

The following facts are drawn from the Consolidated Amended Complaint ("CAC"), ECF 28. In September 2015, Google unveiled the Nexus 6P, the newest version of its Nexus 6 smartphone. CAC ¶ 165. Google and Huawei created the Nexus 6P together, with Google handling software development and Huawei handling device manufacture. *Id.* At the launch event and in advertising, Google touted many of the superior features of the phone. *See id.* ¶¶ 7, 169, 171.

Unfortunately, according to the CAC, the Nexus 6P suffers from two defects. First, some phones unexpectedly turn off and, upon turning back on, experience an endless bootloop cycle (the "Bootloop Defect"). *Id.* ¶ 174. When the Bootloop Defect manifests, the phone becomes nonoperational and all unsaved data is lost because the phone cannot proceed beyond the start-up screen. *Id.* ¶ 175. Second, some phones prematurely shut off despite showing a battery charge of anywhere from 15–90% (the "Battery Drain Defect"). *Id.* ¶ 177. When the Battery Drain Defect manifests, the phone remains dead until the user reconnects it to power. *Id.* ¶ 178. After some charging, the battery shows the same or similar charge as indicated before the premature shut-off. *Id.*; *see also id.* ¶ 61. Complaints about the Bootloop and Battery Drain Defects began cropping up online as early as September and October 2016. *Id.* ¶¶ 175, 184, 187–88.

This putative class action was commenced on April 19, 2017. ECF 1. Plaintiffs filed the

operative complaint—the CAC—on May 23, 2017. Plaintiffs seek to represent a nationwide class of customers who purchased or own a Nexus 6P. CAC ¶¶ 1, 205. They also propose twelve statewide subclasses, which cover all persons or entities in the states of California, Florida, Illinois, Indiana, Michigan, New York, North Carolina, North Dakota, Ohio, Pennsylvania, Texas, and Washington who purchased or own at least one Nexus 6P. *Id.* ¶ 205.

Plaintiffs bring twenty-three causes of action against both Huawei and Google under a spattering of state laws and one federal law. At the high level, their claims fall into three buckets: (1) warranty claims, (2) fraud claims, and (3) unjust enrichment claims. Their warranty claims consist of claims for (1) breach of express warranty on behalf of the nationwide class or each statewide subclass, (2) breach of the implied warranty of merchantability on behalf of the nationwide class or each statewide subclass, (3) violation of the California Song–Beverly Consumer Warranty Act on behalf of the California subclass, and (4) violation of the federal Magnuson–Moss Warranty Act presumably on behalf of the nationwide class. *Id.* ¶¶ 213–67, 284–96. Their fraud claims consist of (1) a common-law claim for deceit and fraudulent concealment on behalf of each statewide subclass and (2) claims for violations of state consumer protection statutes on behalf of the relevant statewide subclass.[1] *Id.* ¶¶ 268–77, 297–535. Finally, their unjust enrichment claims are asserted on behalf of the nationwide class based on the universal principles of equity. *Id.* ¶¶ 278–83.

In June 2017, Huawei and Google filed their Motions to Dismiss. Huawei's argument regarding lack of personal jurisdiction was addressed in a prior order. *See* ECF 113. Here, the Court focuses on the sufficiency of the CAC. Specifically, both Huawei's and Google's Motions to Dismiss assert that Plaintiffs have failed to allege sufficient facts entitling them to relief on their

---

[1] Specifically, the state consumer protection statutes are: the California Unfair Competition Law, the California Consumer Legal Remedies Act, the California False Advertising Law, the Florida Deceptive and Unfair Trade Practices Act, the Illinois Consumer Fraud and Deceptive Business Practices Act, the Illinois Uniform Deceptive Trade Practices Act, the Indiana Deceptive Consumer Sales Act, the Michigan Consumer Protection Act, New York General Business Law §§ 349–350, the North Carolina Unfair and Deceptive Trade Practices Act, the North Dakota Consumer Fraud Act, the Ohio Deceptive Trade Practices Act, the Ohio Consumer Sales Practices Act, the Pennsylvania Unfair Trade Practices and Consumer Protection Law, the Texas Deceptive Trade Practices Act, and the Washington Consumer Protection Act.

claims. Huawei Mot. 9–28; Google Mot. 3–29. Huawei and Google also request that the Court strike Plaintiffs' class allegations. Huawei Mot. 26–28; Google Mot. 29.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

"A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).

However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible when the alleged facts "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

### B. Rule 12(f)

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." The function of a motion made under this rule is "to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi–Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds by Fogerty v. Fantasy, Inc.*, 510 U.S. 517 (1994)). "While a Rule 12(f) motion provides the means to excise improper materials from pleadings, such motions are generally disfavored because the motions may be used

4

as delaying tactics and because of the strong policy favoring resolution on the merits." *Barnes v. AT & T Pension Ben. Plan–Nonbargained Program*, 718 F. Supp. 2d 1167, 1170 (N.D. Cal. 2010).

The decision to strike a portion of a party's pleading is within the sound discretion of the court. *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). If allegations are stricken, leave to amend should be freely given when doing so would not cause prejudice to the opposing party. *See Wyshak v. City Nat'l Bank*, 607 F.2d 824, 826 (9th Cir. 1979) (per curiam).

## III. DISCUSSION

Both Huawei and Google contend that Plaintiffs have failed to allege sufficient facts entitling them to relief on their claims. Before turning to the merits of those arguments, the Court addresses Google's request for judicial notice.

### A. Request for Judicial Notice

In connection with its Motion to Dismiss, Google seeks judicial notice of two documents: Google's U.S. Terms of Sale and the Nexus 6P webpage. ECF 57. Portions of the documents are referenced in the CAC, and both are capable of accurate and ready determination because they are publicly available online. These documents are properly subject to judicial notice. *See* Fed. R. Evid. 201(b); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005). Plaintiffs did not formally object to Google's request. Accordingly, Google's request for judicial notice is GRANTED.

### B. Motions to Dismiss for Failure to State a Claim

Huawei and Google contend that Plaintiffs' CAC provides insufficient allegations to properly plead their causes of action. The Court begins by making some general observations about changes that should be made to any amended pleading. The Court then addresses the sufficiency of an allegation important to many of Plaintiffs' claims—namely, whether Huawei and Google had knowledge of the defects at the time of sale. Finally, the Court proceeds to analyze separately the claims asserted against Huawei and the claims asserted against Google.

#### 1. General Observations

The Court starts with a couple general observations about the pleadings. First, in their twenty-three causes of actions, Plaintiffs often lump Huawei and Google together, alleging

conduct by "Defendants" without distinguishing what Huawei did from what Google did. *See, e.g.*, CAC ¶¶ 230 ("Defendants received timely notice of the breaches experienced by Plaintiffs and Class members. Defendants were provided notice of the Defects by complaints lodged by consumers before or within a reasonable amount of time after the allegations of the Defects became public."), 241 ("Defendants breached the implied warranty of merchantability because the Phones they sold are not of a merchantable quality, but instead contain a Bootloop Defect and a Battery Drain Defect."), 270 ("Defendants concealed and suppressed material facts concerning the performance and quality of the Phones, and the quality of the Huawei, Google, and Nexus brands. Specifically, Defendants knew (or in the exercise of reasonable diligence should have known) of the Defects, but failed to disclose them prior to or at the time they marketed Phones and sold them to consumers."). As discussed in more detail below with respect to particular causes of action, this setup obfuscates what roles Huawei and Google independently played in the alleged harm and whether either is liable for its own conduct. *See Adobe Sys. Inc. v. Blue Source Grp., Inc.*, 125 F. Supp. 3d 945, 964 (N.D. Cal. 2015). In an amended pleading, Plaintiffs "must identify what action each Defendant took that caused Plaintiffs' harm, without resort to generalized allegations against Defendants as a whole." *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011).

Second, Plaintiffs assert claims for breach of express warranty, breach of implied warranty, and unjust enrichment on behalf of a nationwide class but do not specify what law governs.[2] As discussed in more detail below with respect to these individual causes of action, the failure to identify the relevant law makes it difficult, if not impossible, for the Court to provide a thorough analysis of Plaintiffs' claims. Throughout this order, the Court often uses the law that the parties apply in their briefing without elaborating on other potentially applicable state laws.[3] In any

---

[2] For the breach of express warranty and breach of implied warranty claims, Plaintiffs alternatively assert that the claims may proceed under the applicable state law as to each of the twelve statewide subclasses. CAC ¶¶ 215, 236.

[3] The parties are advised that in future briefing, to the extent they ask the Court to decide matters on the basis of several states' laws, they should be mindful of, and squarely address, whether there are material variations in state law. *Cf. In re Hyundai and Kia Fuel Economy Litig.*, 881 F.3d 679, 702 (9th Cir. 2018) (holding that district court abused its discretion in certifying a settlement class "by failing to acknowledge . . . that the laws in various states were materially different than those

amended version of the pleadings, Plaintiffs should clarify what law governs each cause of action. Additionally, causes of action should not group together multiple sources of law; rather, Plaintiffs should plead separate causes of actions for each source of law, whether federal or state.

### 2. Huawei's and Google's Knowledge of Defects at the Time of Sale

Whether Huawei and Google had knowledge of the defects at the time that Plaintiffs purchased their phones is a common thread through many of the Plaintiffs' claims. Indeed, many of Plaintiffs' causes of action either start from the premise or entirely depend on the fact that Huawei and Google knew, or reasonably should have had known, of the defects at the time of sale. Therefore, the Court begins by examining the sufficiency of the Plaintiffs' allegations on that score, as the answer colors the analysis of many of the Plaintiffs' claims.

At multiple points in the CAC, Plaintiffs allege that "Defendants knew (or exercising due diligence should have known) that the Phones were defective at the time of sale." CAC ¶ 246; *see also, e.g.*, *id.* ¶¶ 6, 186, 226, 270, 281, 318, 322, 335, 359. However, that statement is conclusory, and the CAC does not contain sufficient factual matter to make that inference plausible.

The key issue here is timing. The Nexus 6P was released in September 2015. *Id.* ¶ 165. In the CAC, Plaintiffs provide multiple examples of consumers posting online about the Bootloop and Battery Drain Defects, but do not provide specific dates for any of those postings. *Id.* ¶ 184. Plaintiffs do not allege that Huawei ever saw or responded to these online complaints, let alone that Huawei knew about them *before* Plaintiffs purchased their phones. *See Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1147 (9th Cir. 2012) ("[C]ourts have rejected undated customer complaints offered as a factual basis for a manufacturer's knowledge of a defect because they provide no indication whether the manufacturer was aware of the defect *at the time of sale*.").

Although Plaintiffs allege particular dates for Google's online responses to the postings, those responses postdate Plaintiffs' purchases. Specifically, Plaintiffs allege that a Google representative responded to customer complaints about the Bootloop Defect in September 2016,

---

in California, and that these variations prevented the court from applying only California law" and "failing to make a final ruling as to whether the material variations in state law defeated predominance under Rule 23(b)(3)").

stating: "We understand that a very small number of users are experiencing a bootloop issue on your device. We are continuing to investigate the situation, but can confirm that this is strictly a hardware related issue." CAC ¶ 187. Nevertheless, all Plaintiffs who allege that their phones manifested the Bootloop Defect purchased their phones before September 2016. *See id.* ¶¶ 19 (Gorbatchev: Oct. 2015), 28 (Christensen: Nov. 2015), 38 (Martorello: May 2016), 52 (Tran: Jan. 2016), 70 (Berry: Nov. 2015), 119 (Servodio: Mar. 2016).

Similarly, Plaintiffs allege that a Google representative responded to customer complaints about the Battery Drain Defect in October 2016, stating: "Just want to let you all know that [the Battery Drain Defect] is something we have been keeping track of, and our team is investigating. . . . [M]any of you are reporting that you have been experiencing abnormal battery drain for multiple days now." *Id.* ¶ 188. Again, no Plaintiffs who allege that their phones manifested the Battery Drain Defect purchased their phones after the October 2016 statement by Google's representative. *See id.* ¶¶ 12 (Makcharoenwoodhi: Apr. 2016), 28 (Christensen: Nov. 2015), 38 (Martorello: May 2016), 58 (Beheler: July 2016), 70 (Berry: Nov. 2015), 79 (Davydov: Dec. 2015), 91 (Harrison: Apr. 2016), 99 (Himes: Mar. 2016), 111 (Jones: Jan. 2016), 130 (Leone: Oct. 2015), 142 (Poore: Feb. 2016), 153 (Johnston: Oct. 2016).

Without that crucial temporal element, Plaintiffs have not adequately alleged that Huawei or Google knew (or reasonably should have known) of the defects when Plaintiffs purchased their phones. This factual gap is not filled by allegations that some Plaintiffs contacted Huawei and Google about the defects, as most of those conversations took place after October 2016 or are not alleged to have taken place on a specific date. *See id.* ¶¶ 15, 23, 30–31, 33, 54, 63–64, 67, 72–73, 83–85, 94, 113, 133, 147, 155. The two Plaintiffs who contacted Huawei and Google before September 2016 are not enough, *see id.* ¶¶ 41–43, 102, because a handful of complaints do not, by themselves, plausibly show that Huawei or Google had knowledge of the defects and concealed the defects from customers. *See Berenblat v. Apple, Inc.*, No. 08-CV-04969-JF, 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9, 2010) (reaching the same conclusion and explaining that allegations about "complaints posted on Apple's consumer website merely establish the fact that some consumers were complaining"); *see also Baba v. Hewlett-Packard Co.*, No. 09-CV-05946-

RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) ("Awareness of a few customer complaints, however, does not establish knowledge of an alleged defect.").

Perhaps sensing this deficiency, Plaintiffs shift gears in their opposition, positing that "[t]he Nexus 6P phones contain core component flaws that basic product testing would have disclosed at or near the time of manufacture." Opp'n 42. Whatever the viability of that theory, it finds no basis in the CAC. Contrary to Plaintiffs' suggestion, the allegation that "Defendants had superior knowledge and access to the relevant facts," CAC ¶ 272, does not equate to an allegation that straightforward testing would have revealed the defects.

Plaintiffs have not adequately alleged that Huawei or Google had knowledge of the defects at the time that Plaintiffs purchased their phones. Plaintiffs may amend the CAC to allege further facts in support of knowledge. With that conclusion in mind, the Court turns first to the claims asserted against Huawei and then to the claims asserted against Google.

### 3. Claims Asserted Against Huawei

In broad strokes, the CAC asserts three categories of claims against Huawei—warranty claims, fraud claims, and unjust enrichment claims. The Court addresses each of these categories one at a time.

#### a. Warranty Claims

Plaintiffs assert four sets of warranty claims: (1) breach of express warranty, (2) breach of the implied warranty of merchantability, (3) violation of the California Song–Beverly Consumer Warranty Act, and (4) violation of the federal Magnuson–Moss Warranty Act. Huawei moves to dismiss all four causes of action. The Court addresses each in turn.

##### i. Breach of Express Warranty

Plaintiffs bring their first cause of action for breach of express warranty on behalf of a putative nationwide class but do not specify which law governs the claim. CAC ¶ 214. Alternatively, they assert claims for breach of express warranty on behalf of the putative statewide subclasses under the laws of the respective states. *Id.* ¶ 215.

Huawei provides a written Limited Warranty for phones, tablets, wearables, PCs, and accessories. Huawei Mot., Ex. A. The Limited Warranty provides: "Huawei Device USA Inc.,

('Huawei') represents and warrants to the original purchaser ('Purchaser') that Huawei's phones and accessories ('Product') are free from material defects, including improper or inferior workmanship, materials, and design, during the designated warranty period . . . when used normally and in accordance with all operating instructions." *Id.*, Preamble. For phones, the "designated warranty period" is "12 months from the date of purchase." *Id.* ¶ 1.

Under the terms of the Limited Warranty, Huawei agrees to "repair or replace at Huawei's sole option, any parts of the Product that are defective or malfunctioning during normal usage." *Id.* ¶ 4. However, "Huawei does not warrant that the operation of [the phone] will be uninterrupted or error-free." *Id.* ¶ 8. Moreover, the Limited Warranty becomes "null and void" if the Purchaser does not notify Huawei "of the alleged defect or malfunction of the Product during the applicable warranty period." *Id.* ¶ 9.

Huawei moves to dismiss Plaintiffs' express warranty claims. Huawei first contends that, for a handful of Plaintiffs, there are insufficient allegations to establish that Huawei breached the Limited Warranty. Huawei Mot. 10–11. Huawei then asserts a number of inadequacies applicable to different groupings of Plaintiffs. Specifically, Huawei contends that certain Plaintiffs have not adequately alleged that they provided Huawei notice and an opportunity to cure, that they relied on Huawei's Limited Warranty, or that they were in privity with Huawei. *Id.* at 11–12. The Court trudges through each of these various grounds for dismissal.

**(1)      Breach and Unconscionability**

Huawei contends that it did not breach the Limited Warranty for those Plaintiffs whose phones manifested the defects outside the one-year warranty period and those Plaintiffs who did not notify Huawei of defects during the one-year warranty period. Huawei Mot. 10. Specifically, Plaintiffs Gorbatchev, Christensen, and Tran allege that their phones failed more than a year after purchase. CAC ¶¶ 19, 21 (Gorbatchev), 28–29 (Christensen), 52–53 (Tran). Plaintiffs Berry, Jones, and Leone do not allege that they notified Huawei of any defect before the expiration of one year. *Id.* ¶¶ 70–78 (Berry), 111–18 (Jones), 128–41 (Leone). Plaintiffs do not dispute that these Plaintiffs fall outside the Limited Warranty but instead argue that the one-year warranty limitation

is unconscionable.[4]

Because Plaintiffs and Huawei address the unconscionability issue under California law and identify no material differences in other state laws, the Court uses California law as the basis for its analysis. Under California law, a contract provision is "unconscionable, and therefore unenforceable, only if it is *both* procedurally and substantively unconscionable." *In re iPhone*, 2011 WL 4403963, at *7 (citing *Armendariz v. Found. Health Psychcare Servs., Inc.*, 6 P.3d 669, 690 (Cal. 2000)); *see also Pokorny v. Quixtar, Inc.*, 601 F.3d 987, 996 (9th Cir. 2010) (explaining that, under California law, "both procedural and substantive unconscionability must be present for the contract to be declared unenforceable"). "The procedural element of unconscionability focuses on two factors: oppression and surprise." *Aron v. U-Haul Co. of Cal.*, 49 Cal. Rptr. 3d 555, 564 (Ct. App. 2006). "The substantive element of unconscionability focuses on the actual terms of the agreement and evaluates whether they create 'overly harsh' or 'one-sided' results as to 'shock the conscience.'" *Id.* (citation omitted).

At most, Plaintiffs have made a weak showing that the Limited Warranty's one-year duration provision is procedurally unconscionable. Plaintiffs contend that the Limited Warranty is unconscionable because Huawei and its customers are in an unequal bargaining position, where customers cannot negotiate warranty terms. CAC ¶¶ 226, 246. The bargaining positions of Huawei and its customers are not as imbalanced as Plaintiffs suggest because Plaintiffs have not adequately alleged that Huawei knew of and concealed the defects at the time of sale. *See In re Sony Grand Wega KDF-E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F. Supp. 2d 1077, 1101 (S.D. Cal. 2010) (rejecting argument that defendant had superior bargaining power where plaintiffs had not sufficiently alleged that the defendant knew of the defect before the point of sale). Even if the terms of the Limited Warranty are non-negotiable, Plaintiffs do not plead that they had no meaningful alternatives; they could have purchased other phones or obtained additional warranty protections from Huawei. *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK,

---

[4] The Court finds it unnecessary at this stage to address Plaintiffs' contention that Huawei's Limited Warranty fails of its essential purpose, Opp'n 19–21, because that does not appear to be a ground on which Huawei argues for dismissal of Plaintiffs' express warranty claims.

2017 WL 976048, at \*12 (N.D. Cal. Mar. 14, 2017). Moreover, the CAC does not allege that Plaintiffs were "surprised" by the Limited Warranty's terms or that they could not or did not access Huawei's Limited Warranty online at the time of purchase. *See id.*

Plaintiffs make no allegations relevant to substantive unconscionability. Courts have rejected substantive unconscionability arguments where, as here, the duration of the express warranty "corresponds to the maximum limit permitted under [state] law" for implied warranties. *Marchante v. Sony Corp. of Am.*, 801 F. Supp. 2d 1013, 1023 (S.D. Cal. 2011); *see also Bros. v. Hewlett-Packard Co.*, No. 06-CV-02254-RMW, 2006 WL 3093685, at \*8 (N.D. Cal. Oct. 31, 2006) (explaining that, in general, "a time limitation, by itself, is not unconscionable"). Plaintiffs' allegations do not show that the one-year duration "create[s] overly harsh or one-sided results as to shock the conscience," and thus Plaintiffs have not established substantive unconscionability. *Aron*, 49 Cal. Rptr. 3d at 564 (internal quotation marks and citation omitted).

Based on the allegations in the CAC, Huawei's one-year Limited Warranty is not unconscionable, and the Limited Warranty is enforceable. Accordingly, Plaintiffs have not stated a claim for breach of express warranty for Plaintiffs Gorbatchev, Christensen, and Tran whose phone defect manifested after the one-year Limited Warranty expired or for Plaintiffs Berry, Jones, and Leone who did not notify Huawei of a defect within the one-year Limited Warranty period. The Court GRANTS Huawei's Motion to Dismiss the express warranty claim of Plaintiffs Gorbatchev, Christensen, Tran, Berry, Jones, and Leone with leave to amend to allege further facts in support of Plaintiffs' unconscionability argument.

**(2)    Notice and Opportunity to Cure**

For many of those same Plaintiffs, Huawei relatedly argues that the failure to give Huawei notice or an opportunity to cure is fatal to their claims. Huawei Mot. 11–12. In particular, Plaintiffs Gorbatchev, Tran, Berry, and Leone do not allege that they contacted Huawei to seek repairs. *Id.* at 12. Additionally, Plaintiff Beheler does not allege that he allowed Huawei to act on its offer to repair or replace his phone. *Id.* Due to the variations in state law on this issue, the Court proceeds through each Plaintiff's state-law claim individually.

United States District Court
Northern District of California

**(a)     California**

Beyond California Plaintiff Gorbatchev's falling outside the terms of Huawei's Limited Warranty, California law does not supply an independent notice-related bar to his express warranty claim.  As a general matter, a "buyer must, within a reasonable time after he or she discovers or should have discovered any breach, notify the seller of breach or be barred from any remedy."  Cal. Com. Code § 2607(3)(A).  And it is true that Plaintiff Gorbatchev does not allege that he contacted Huawei to seek repairs.  CAC ¶¶ 19–27.  But notice is not required in an action by consumers "against manufacturers with whom they have not dealt."  *Greenman v. Yuba Power Prods., Inc.*, 377 P.2d 897, 900 (Cal. 1963).  Other district courts have applied this exception to the specific notice provision at issue here, § 2607(3)(A).  *See, e.g.*, *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 754 F. Supp. 2d 1145, 1180 (C.D. Cal. 2010) (denying motion to dismiss for failure to provide § 2607(3)(A) notice); *Aaronson v. Vital Pharm., Inc.*, No. 09-CV-01333-W, 2010 WL 625337, at *5 (S.D. Cal. Feb. 17, 2010) (same).

Here, Plaintiff Gorbatchev asserts his express warranty claim against Huawei.  The allegations in the CAC support that Huawei is a manufacturer with whom Plaintiff Gorbatchev has never dealt.  Plaintiff Gorbatchev did not purchase his Nexus 6P phone from Huawei; instead, he purchased his phone through the Google Store.  CAC ¶ 19.  After his phone began exhibiting the Bootloop Defect, he interacted solely with Google in an unsuccessful attempt to secure a new phone under the warranty.  *Id.* ¶¶ 23–24.  Because Plaintiff Gorbatchev is not required to provide notice to manufacturer Huawei, his claim cannot be dismissed on this ground.

**(b)     Illinois**

Under Illinois law, notice is an "essential element" of a breach of warranty claim.  *Maldonado v. Creative Woodworking Concepts, Inc.*, 694 N.E.2d 1021, 1025 (Ill. App. Ct. 1998).  Thus, "failure to allege sufficient notice may be a fatal defect in a complaint alleging breach of warranty."  *Id.*  A manufacturer's general awareness of problems is insufficient; to fulfill the notice obligation, the buyer normally must contact the manufacturer directly and inform the manufacturer of the defect in the particular product he purchased.  *Connick v. Suzuki Motor Co.*,

13

675 N.E.2d 584, 589 (Ill. 1996).  The Illinois Supreme Court has enumerated two exceptions: direct notice is unnecessary (1) when the seller has actual knowledge of the defect of the particular product and (2) when a buyer files a complaint claiming personal injuries.  *Id.* at 590.

The allegations of Illinois Plaintiff Tran do not withstand scrutiny under these standards.  As noted above, Plaintiff Tran is not alleged to have informed Huawei of the Bootloop Defect in his phone.  Indeed, there is no allegation that he contacted Huawei at all.  CAC ¶¶ 52–57.  Nor can Plaintiff Tran rely on the first notice exception because the CAC does not aver that other circumstances put Huawei on notice that there was an issue with Plaintiff Tran's phone.  Under the cases, Huawei's alleged general awareness of the defects in Nexus 6P phones is insufficient.  *See Connick*, 675 N.E.2d at 590 ("[G]eneralized knowledge about the safety concerns of third parties is insufficient to fulfill plaintiffs' UCL notice requirement.").  The second exception also is inapplicable in this consumer defect suit where none of the Plaintiffs, let alone Plaintiff Tran, assert that he or she suffered any personal injury.  Accordingly, the Court GRANTS Huawei's Motion to Dismiss Plaintiff Tran's express warranty claim with leave to amend to allege further facts about Huawei's awareness of the defects in Plaintiff Tran's phone, either through direct notice from Plaintiff Tran or other circumstances.

### (c)    Indiana

Indiana law, too, requires that the buyer give notice to the seller before bringing suit for breach of warranty.  Ind. Code Ann. § 26-1-2-607(3)(a).  But unlike similar provisions in other states, Indiana's notification law "is satisfied if the seller has 'actual knowledge' that the goods are nonconforming."  *Anderson v. Gulf Stream Coach, Inc.*, 662 F.3d 775, 782 (7th Cir. 2011); *see also Agrarian Grain Co. v. Meeker*, 526 N.E.2d 1189, 1193 (Ind. Ct. App. 1988) ("[T]he notice required by [the Indiana statute] is satisfied by the [seller's] actual knowledge there are some problems with the goods.").  Here, the allegations demonstrate that Huawei knew that Indiana Plaintiff Beheler's Nexus 6P phone manifested the Battery Drain Defect and that he was dissatisfied with the phone.  *See* CAC ¶ 64 (alleging that Plaintiff Beheler "called Huawei's customer support" and "[a] Huawei representative agreed that the Phone was defective").  That Huawei offered to repair or replace the phone and Plaintiff Beheler apparently never responded,

14

*id.*, does not change the analysis, as the Limited Warranty does not explicitly require Plaintiff Beheler to give Huawei a reasonable opportunity to cure. *See Anderson*, 662 F.3d at 782 ("[T]he only Indiana court to have squarely addressed this issue has concluded that the buyer only has to give the seller a reasonable opportunity to cure if the terms of the warranty impose that requirement."). Accordingly, Plaintiff Beheler's express warranty claim cannot be dismissed for failure to allege notice and an opportunity to cure.

#### (d)    Michigan

Under Michigan law, it appears that "[t]he buyer must provide reasonable notice in order to recover for a breach of warranty." *Eaton Corp. v. Magnavox Co.*, 581 F. Supp. 1514, 1531 (E.D. Mich. 1984). Plaintiffs do not cite any contrary authority. The CAC does not allege that Michigan Plaintiff Berry provided any notice to Huawei. CAC ¶¶ 70–78. Accordingly, the Court GRANTS Huawei's Motion to Dismiss Plaintiff Berry's express warranty claim with leave to amend to allege further facts about Plaintiff Berry's notice to Huawei.

#### (e)    Pennsylvania

The Court rejects Huawei's notice argument as to Pennsylvania Plaintiff Leone. The Pennsylvania statute says that "the buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach." 13 Pa. Stat. and Cons. Stat. Ann. § 2607(c)(1). However, while many states require pre-suit notice, Pennsylvania appears not to have the same limitation. Pennsylvania state courts have held that the filing of a complaint may satisfy the notice requirement for a breach of warranty claim. *See Precision Towers, Inc. v. Nat-Com, Inc.*, No. 2143, 2002 WL 31247992, at *5 (Pa. Com. Pl. Sept. 23, 2002) ("The filing of a complaint has been held to satisfy the notice requirement for a breach of warranty claim."); *cf. Yates v. Clifford Motors, Inc.*, 423 A.2d 1262, 1270 (Pa. Super. Ct. 1980) (holding that the filing of the complaint constituted adequate notice that the plaintiff consumer was rejecting the truck at issue). While the timeliness of the notice is a factual issue better resolved at a later stage of the litigation, the filing of this action is sufficient to preclude dismissal of Plaintiff Leone's express warranty claim for failure to provide notice. *See In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d 936, 978 (N.D. Cal. 2014).

In sum, the Court GRANTS WITH LEAVE TO AMEND Huawei's Motion to Dismiss the express warranty claim of Plaintiffs Tran and Berry—but not Plaintiffs Gorbatchev, Beheler, or Leone—for failure to adequately plead notice and an opportunity to cure.

(3)      **Basis of the Bargain and Reliance**

Huawei next contends that the Court should dismiss the express warranty claims of certain Plaintiffs who do not plead that they saw or relied on Huawei's warranty.  Huawei Mot. 11. Huawei's argument covers Plaintiffs from California (Makcharoenwoodhi, Gorbatchev, and Christensen), Florida (Martorello), Illinois (Tran), New York (Davydov), North Carolina (Harrison and Himes), Ohio (Servodio), Pennsylvania (Leone), Texas (Poore), and Washington (Johnston).  *Id.*

In all of the relevant states, an express warranty is created only when an "affirmation of fact or promise" or a "description of the goods" is part of the "basis of the bargain."  Cal. Com. Code § 2313(1)(a)–(b); Fla. Stat. Ann. § 672.313(1)(a)–(b); 810 Ill. Comp. Stat. Ann. 5/2-313(1)(a)–(b); N.Y. U.C.C. Law § 2-313(1)(a)–(b); N.C. Gen. Stat. Ann. § 25-2-313(1)(a)–(b); Ohio Rev. Code Ann. § 1302.26(A)(1)–(2); 13 Pa. Stat. and Cons. Stat. Ann. § 2-313(a)(1)–(2); Tex. Bus. & Com. Code Ann. § 2.313(a)(1)–(2); Wash. Rev. Code Ann. § 62A.2-313(1)(a)–(b). The relevant question is whether Plaintiffs must show reliance on the statement or representation for it to be considered part of the "basis of the bargain."  Because states are split on the question whether reliance is necessary, the Court analyzes the relevant state laws in turn.

(a)      **California**

In adopting the Uniform Commercial Code ("UCC"), California has shifted its view of whether a plaintiff must allege reliance on specific promises to sustain express warranty claims. Comment 3 to the analogous UCC provision, UCC § 2-313, provides:

> The present section deals with affirmations of fact by the seller, descriptions of the goods or exhibitions of samples, exactly as any other part of a negotiation which ends in a contract is dealt with.  No specific intention to make a warranty is necessary if any of these factors is made part of the basis of the bargain.  In actual practice affirmations of fact made by the seller about the goods during a bargain are regarded as part of the description of those goods; hence *no particular reliance on such statements need be shown in order to weave them into the fabric of the agreement*.  Rather, any fact which is to take such affirmations, once made,

16

out of the agreement requires clear affirmative proof.  The issue normally is one of fact.

UCC § 2-313, cmt. 3 (emphasis added).  While pre-UCC California law required proof of reliance on specific promises, comment 3 to UCC § 2-313 expressly signals a departure from that requirement.  *See Keith v. Buchanan*, 220 Cal. Rptr. 392, 397–98 (Ct. App. 1985) (explaining that, under the UCC, "the concept of reliance has been purposefully abandoned").  Because California's express warranty statute conforms to the UCC, the California Court of Appeal has held that a buyer need not show reliance because the California statute "creates a presumption that the seller's affirmations go to the basis of the bargain."  *Weinstat v. Dentsply Int'l, Inc.*, 103 Cal. Rptr. 3d 614, 626 (Ct. App. 2010).  The court reasoned that the statute focuses not on the buyer's actions, but on "*the seller*'s behavior and obligation—his or her affirmations, promises, and descriptions of the goods—all of which help define what the seller 'in essence' agreed to sell."  *Id.* at 627.  Therefore, "[a]ny affirmation, once made, is part of the agreement unless there is 'clear affirmative proof' that the affirmation has been taken out of the agreement."  *Id.*

The Court acknowledges that some district court cases continue to indicate that reliance is required after the decision in *Weinstat*.  *See, e.g.*, *Nabors v. Google, Inc.*, No. 10-CV-03897 EJD, 2011 WL 3861893, at *4 (N.D. Cal. Aug. 30, 2011) (dismissing express warranty claims where plaintiff failed to allege reasonable reliance on any specific representations made by the defendant).  However, these cases are not dispositive because they are not decisions of the California Supreme Court (or of any California state court) and they do not discuss *Weinstat* or comment 3 to UCC § 2-313.  Moreover, many of the cases are distinguishable because they did not involve written warranties included as part of the sale, as here.  In this situation, "an assertion that the warranty [is] not part of the deal between the issuing party and receiving party is far less persuasive."  *In re MyFord*, 46 F. Supp. 3d at 973.

In its reply, Huawei asserts that *Weinstat* is distinguishable because it involved parties that were in privity with one another.  Huawei Reply 8.  In support of its argument, Huawei cites a district court case drawing that distinction.  *See Coleman v. Boston Sci. Corp.*, No. 10-CV-01968-OWW, 2011 WL 3813173, at *4 (E.D. Cal. Aug. 29, 2011) ("Neither *Weinstat* nor *Keith* supports Plaintiff's erroneous contention that reliance is not required where privity is absent.").  Although

some district courts have reached that conclusion, multiple others have interpreted California law not to require a showing of reliance even if privity is lacking. *See, e.g.*, *In re MyFord*, 46 F. Supp. 3d at 973 ("[O]ther courts interpreting California law have not found such a limitation—*i.e.*, they have not required reliance where the parties are not in privity."); *McVicar v. Goodman Glob., Inc.*, 1 F. Supp. 3d 1044, 1057 (C.D. Cal. 2014) (relying on *Weinstat* in a suit by plaintiffs against an air conditioning manufacturer and holding that the express warranty claim was well-pled even though plaintiffs "did not allege that they saw any promises or affirmations of fact prior to purchase"); *In re Toyota Motor Corp.*, 754 F. Supp. 2d at 1183 n.22 (noting that plaintiffs, in a suit against a car manufacturer, "are not required to allege reliance").

At least on the facts of this case, the Court follows those cases that have not required reliance as a prerequisite to asserting an express warranty claim. As *Weinstat* emphasizes, the statute focuses on the seller and looks to the promises and affirmations that the seller made. 103 Cal. Rptr. 3d at 627. The ultimate question is "what the seller 'in essence' agreed to sell." *See id.* Here, in selling the phones to retailers to sell to the public, Huawei provided a written Limited Warranty that the Nexus 6P phones are "free from material defects" in normal operation. Huawei Mot., Ex. A, Preamble. Although two out of three California Plaintiffs did not purchase directly from Huawei, there is no dispute that Huawei treated the Limited Warranty as extending to Plaintiffs upon their purchase. *See* CAC ¶ 15 (alleging that "Huawei informed [California Plaintiff] Makcharoenwoodhi that his warranty was voided," not that it did not apply to him); *see also, e.g., id.* ¶¶ 44 (alleging that Huawei denied warranty coverage even though Florida Plaintiff Martorello claimed within the warranty period), 242 (alleging that Huawei's Limited Warranty is designed to cover end-users, not retailers). In these circumstances, a privity requirement would have little meaning and would serve only to allow Huawei to evade the promises it made in writing about the Nexus 6P phones. Accordingly, failure to adequately plead reliance is not an appropriate basis on which to dismiss the express warranty claims of Plaintiffs Makcharoenwoodhi, Gorbatchev, and Christensen.

**(b)** **Florida**

Under Florida law, "an express warranty is generally considered to arise only where the

18

seller asserts a fact of which the buyer is ignorant prior to the beginning of the transaction and on which the buyer justifiably relies as part of the 'basis of the bargain.'" *Thursby v. Reynolds Metals Co.*, 466 So. 2d 245, 250 (Fla. Dist. Ct. App. 1984) (citations omitted); *see also Royal Typewriter Co. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1101 (11th Cir. 1983) (holding that, under Florida law, "absence of reliance will negate the existence of an express warranty"). Plaintiffs do not cite any contrary authority. Because the sole Florida Plaintiff, Martorello, does not allege facts to support the necessary element of reliance, the Court GRANTS Huawei's motion to dismiss this claim with leave to amend to allege relevant facts.

### (c)   Illinois

Whether a plaintiff must plead reliance under Illinois law is slightly unclear. Some Illinois courts have suggested that reliance is an invariable requirement for an express warranty claim. *See, e.g.*, *Regopoulos v. Waukegan P'ship*, 608 N.E.2d 457, 461 (Ill. Ct. App. 1992) (stating that one necessary element of an express warranty claim is that "the purchaser actually relied upon the warranty"); *Coryell v. Lombard Lincoln-Mercury Merkur, Inc.*, 544 N.E.2d 1154, 1158 (Ill. Ct. App. 1989) ("[T]he buyer must show reliance on the seller's representations in order for an express warranty to exist."). Other Illinois courts have held that a seller's representations create a rebuttable presumption of reliance by the buyer so that reliance need not be pled. *See, e.g.*, *Felley v. Singleton*, 705 N.E.2d 930, 934 (Ill. Ct. App. 1999) ("[R]epresentations [by the seller] constitute express warranties, regardless of the buyer's reliance on them, unless the seller shows by clear affirmative proof that the representations did not become part of the basis of the bargain."); *Weng v. Allison*, 678 N.E.2d 1254, 1256 (Ill. Ct. App. 1997) ("In this matter, the seller's statements to the buyers . . . were affirmations of fact and descriptions of the [product] that created an express warranty."). These courts have acknowledged the tension in the cases. *See Felley*, 705 N.E.2d at 934 (citing the above-quoted statement in *Coryell* and "recogniz[ing] that Illinois courts have not always consistently stated these principles").

Despite the inconsistency, the legal principles do not seem to be irreconcilable. In particular, the cases can be harmonized based on the presence or absence of privity. When privity is lacking, the background rule mandates pleading and proving reliance. *See Regopoulos*, 608

N.E.2d at 461. In contrast, when the plaintiff is in privity with the defendant, the defendant's representations about the product presumptively establish the reliance element. *See Felley*, 705 N.E.2d at 934; *Weng*, 678 N.E.2d at 1256. Indeed, one of the cases that Plaintiffs cite explicitly notes the connection between allegations of privity and allegations of reliance. *See In re Rust-Oleum Restore Mktg., Sales Practices & Prods. Liab. Litig.*, 155 F. Supp. 3d 772, 809 (N.D. Ill. 2016). And Plaintiffs' other case involved the quintessential privity relationship—that between buyer and seller. *See Bietsch v. Sergeant's Pet Care Prod., Inc.*, No. 15-CV-05432, 2016 WL 1011512, at *5 (N.D. Ill. Mar. 15, 2016). Under Illinois law, then, it appears that a plaintiff must plead reliance if he does not adequately allege privity with the defendant.

As discussed in more detail in the privity section below, Illinois Plaintiff Tran does not sufficiently plead that he is in privity with Huawei or that an exception applies. Without an adequate allegation of privity, Plaintiff Tran's claim must be dismissed for failure to plead reliance. Accordingly, the Court GRANTS Huawei's motion to dismiss Plaintiff Tran's express warranty claim with leave to amend to allege relevant facts.

### (d)  New York

Under New York law, the buyer may bring an action for breach of express warranty against a manufacturer only if "the buyer relied [on the manufacturer's statements] when contracting with his immediate seller." *Avola v. La.-Pac. Corp.*, 991 F. Supp. 2d 381, 391 (E.D.N.Y. 2013); *see also Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 286 (E.D.N.Y. 2009) (holding that, under New York law, "an action for breach of express warranty requires . . . reliance on th[e] promise or representation" (citing *CBS Inc. v. Ziff-Davis Pub. Co.*, 553 N.E.2d 997, 1000– 01 (N.Y. 1990))). Plaintiffs do not identify any contrary authority. Because the sole New York Plaintiff, Davydov, does not allege facts to support the necessary element of reliance, the Court GRANTS Huawei's motion to dismiss this claim with leave to amend to allege relevant facts.

### (e)  North Carolina

The same result obtains under North Carolina law. As Plaintiffs' own authority provides, "[a] plaintiff must have relied upon the warrantor's statement in order to establish an express warranty and its breach." *Eclipse Packaging, Inc. v. Stewarts of Am., Inc.*, No. 14-CV-00195-

RLV, 2016 WL 3619120, at *4 (W.D.N.C. July 6, 2016) (citing *Pake v. Byrd*, 286 S.E.2d 588, 590 (N.C. Ct. App. 1982)); *see also Harbor Point Homeowners' Ass'n, Inc. ex rel. Bd. of Dirs. v. DJF Enters., Inc.*, 697 S.E.2d 439, 447 (N.C. Ct. App. 2010) (noting that a claim for breach of express warranty requires that the affirmation "was relied upon by the plaintiff in making his decision to purchase" (citation omitted)). However, "the element of reliance can often be inferred from allegations of mere purchase or use if the natural tendency of the representations made is such as to induce such purchase or use." *Bernick v. Jurden*, 293 S.E.2d 405, 413 (N.C. 1982) (citing *Kinlaw v. Long Mfg. N. C., Inc.*, 259 S.E.2d 552, 557 n.7 (N.C. 1979)).

North Carolina Plaintiffs Harrison and Himes do not argue or allege that the natural tendency of Huawei's representation that the Nexus 6P phones are "free from material defects" in normal operation was to induce them to purchase the phone. This representation stands in stark contrast to the representation at issue in *Bernick*. There, the North Carolina Supreme Court held that the defendants' statement that their hockey mouthguard offered "maximum protection to the lips and teeth" would naturally tend to induce a mother to purchase one for her son. *Bernick*, 293 S.E.2d at 413–14. The court emphasized the "family purpose of the mother's purchase." *Id.* at 414. No similar circumstances or facts are alleged in this case. Accordingly, the Court GRANTS Huawei's motion to dismiss the express warranty claims of Plaintiffs Harrison and Himes with leave to amend to allege relevant facts.

### (f)   Ohio

In the case of express written warranties, Ohio law follows the same approach as California law—namely, that express warranty claims may proceed even in the absence of an allegation of reliance. In *Norcold, Inc. v. Gateway Supply Co.*, the Ohio Court of Appeals rested on comment 3 of UCC § 2-313 and followed the "decisive majority of courts" that have held that "reliance is not an element in a claim for breach of an express written warranty." 798 N.E.2d 618, 623–24 (Ohio Ct. App. 2003). As the court explained, a written warranty is an integral part of a transaction whose purpose is to assure "one party to a contract of the existence of a fact upon which the other party may rely." *Id.* at 624 (quoting *Metro. Coal Co. v. Howard*, 155 F.2d 780, 784 (2d Cir. 1946)). Thus, in that case, the court held that "because the warranties . . . were part of

21

a written contract, . . . enforcement thereof is not dependant [sic] upon any reliance by [the plaintiff]." *Id.* Although this case does not involve a warranty explicitly written into a contract between the parties, *Norcold*'s reasoning applies in this situation, where the manufacturer has warranted specific terms in writing.

Huawei's cited authority, *McKinney v. Bayer Corp.*, 744 F. Supp. 2d 733 (N.D. Ohio 2010), is distinguishable. Although the district court in *McKinney* was also interpreting Ohio law, the court relied heavily on a Sixth Circuit opinion interpreting Kentucky law and acknowledged as much. *Id.* at 754 (citing Sixth Circuit's decision in *Overstreet v. Norden Labs., Inc.*, 669 F.2d 1286 (6th Cir. 1982), and noting that the Sixth Circuit was "applying analogous Kentucky law"). Notably, the district court in *McKinney* did not address *Norcold* at all, likely because the Ohio Court of Appeals in *Norcold* limited its holding to "the context of an express written warranty," 798 N.E.2d at 623, whereas the warranties at issue in *McKinney* were contained in advertising and labeling, 744 F. Supp. 2d at 754–55. Because the instant case involves an express written warranty, the Court concludes that *Norcold* is controlling and Ohio Plaintiff Servodio's need not plead reliance to state a claim for express warranty under Ohio law. Accordingly, this is not an appropriate basis on which to dismiss Plaintiff Servodio's express warranty claim.

### (g) Pennsylvania

Under Pennsylvania law, there is a rebuttable presumption of reliance. *See Cole v. Gen. Motors Corp.*, 484 F.3d 717, 726 (5th Cir. 2007). Specifically, Pennsylvania law follows the approach that "all statements of the seller [become] part of the basis of the bargain unless clear affirmative proof is shown to the contrary." *Sessa v. Riegle*, 427 F. Supp. 760, 766 (E.D. Pa. 1977), *aff'd*, 568 F.2d 770 (3d Cir. 1978). Accordingly, reliance is not an appropriate basis on which to dismiss Pennsylvania Plaintiff Leone's express warranty claim.

### (h) Texas

Texas courts have interpreted Texas's express warranty law to incorporate a reliance requirement. In *Compaq Computer Corp. v. Lapray*, the Texas Supreme Court surveyed the states that have and have not adopted the reliance requirement and noted that "[u]nder Texas law, we have said that '[r]eliance is . . . not only relevant to, but an element of proof of, plaintiffs' claims

22

of breach of express warranty (to a certain extent).'" 135 S.W.3d 657, 676 (Tex. 2004) (second and third alterations in original) (quoting *Henry Schein, Inc. v. Stromboe*, 102 S.W.3d 675, 686 (Tex. 2002)); *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 436 (Tex. 1997) ("[A]n express warranty claim also requires a form of reliance."). Although Plaintiffs identify a Texas Court of Appeals case stating in a footnote that it is error to include reliance as a necessary element of proof for breach of express warranty, *Villalon v. Vollmering*, 676 S.W.2d 220, 222 n.1 (Tex. App. 1984), other divisions of the Texas Court of Appeals have reached a different conclusion. In any event, the statement in *Villalon* cannot override the strong indications by the Texas Supreme Court about reliance. Accordingly, the Court GRANTS Huawei's motion to dismiss the express warranty claim of Texas Plaintiff Poore with leave to amend to allege relevant facts.

### (i)     Washington

Washington courts sometimes require a form of reliance. For example, in *Touchet Valley Grain Growers, Inc. v. Opp & Seibold General Construction, Inc.*, the Washington Supreme Court explained that "[r]ecovery for breach of an express warranty is contingent on a plaintiff's knowledge of the representation." 831 P.2d 724, 731 (Wash. 1992); *Baughn v. Honda Motor Co.*, 727 P.2d 655, 669 (Wash. 1986) ("Although the UCC does not require a plaintiff to show reliance on the manufacturer's statements, he or she must at least be aware of such representations to recover for their breach."). However, the Court does not read those cases to require a showing of awareness when the plaintiffs base their claims on an express written warranty, rather than other representations (such as advertising statements), to form the basis of the bargain. *See In re Myford Touch Consumer Litig.*, No. 13-CV-03072-EMC, 2015 WL 5118308, at *6 (N.D. Cal. Aug. 31, 2015) (recognizing that awareness of representations must be shown under Washington law "where the representations are used by the plaintiff to define the scope of the warranty"). Huawei's authority is to the same effect, as Huawei's identified case involved advertising statements and cited a Washington Supreme Court case for the proposition that "before recovering on a claim of breach of an express warranty contained in an advertisement, a plaintiff must demonstrate that he or she justifiably relied on a statement contained in the advertisement." *Reece v. Good Samaritan Hosp.*, 953 P.2d 117, 123 (Wash. Ct. App. 1998) (citing *Arrow Transp. Co. v.*

*A. O. Smith Co.*, 454 P.2d 387, 390 (Wash. 1969)). Accordingly, reliance is not an appropriate basis on which to dismiss Washington Plaintiff Johnston's express warranty claim.

In sum, the Court GRANTS WITH LEAVE TO AMEND Huawei's Motion to Dismiss the express warranty claim of Plaintiffs Martorello, Tran, Davydov, Harrison, Himes, and Poore—but not Plaintiffs Makcharoenwoodhi, Gorbatchev, Christensen, Servodio, Leone, or Johnston—for failure to adequately plead reliance.

### (4)     Privity

Finally, Huawei contends that the Court should dismiss the express warranty claims of Florida Plaintiff Martorello and Illinois Plaintiff Tran because those Plaintiffs are not in privity of contract with Huawei. Huawei Mot. 12. Huawei properly asserts that the CAC's bare allegation that all Plaintiffs "were in privity of contract with Huawei . . . by virtue of their interactions with Huawei," CAC ¶ 242, is conclusory and does not plausibly allege privity. Thus, the Court must address whether privity of contract is required to state a claim for breach of express warranty under Florida and Illinois law.

### (a)     Florida

Florida courts are split on whether claims for breach of express warranty always require privity. *See In re Clorox Consumer Litig.*, No. 12-CV-00280-SC, 2013 WL 3967334, at *10 (N.D. Cal. July 31, 2013) (summarizing the split). Some courts hold that because express warranty claims are contractual, "the plaintiff must be in privity of contract with the defendant." *Hill v. Hoover Co.*, 899 F. Supp. 2d 1259, 1266 (N.D. Fla. 2012) (quoting *T.W.M. v. Am. Med. Sys., Inc.*, 886 F. Supp. 842, 844 (N.D. Fla. 1995)). Other courts have declined to apply the privity requirement when the seller is unlikely to have knowledge about the manufacturer's product. *Smith v. Wm. Wrigley Jr. Co.*, 663 F. Supp. 2d 1336, 1343 (S.D. Fla. 2009) ("[I]t defies common sense to argue that purchasers of Eclipse gum presumed that the cashier at the local convenience store is familiar with the scientific properties of MBE."). Even if the Court finds the latter line of cases persuasive, Florida Plaintiff Martorello purchased his phone from Google. CAC ¶ 38. The CAC provides no basis to conclude that Huawei has detailed knowledge about the Nexus 6P that Google does not; to the contrary, the CAC often lumps Huawei and Google together.

24

Accordingly, the Court GRANTS Huawei's Motion to Dismiss the express warranty claim of Plaintiff Martorello with leave to amend to allege further facts about the privity relationship between Plaintiff Martorello and Huawei or any disparity in knowledge between Huawei and Google regarding the Nexus 6P phone.

**(b)**     **Illinois**

As noted above, Illinois's law on privity is congruous with its law on reliance. Illinois generally requires the plaintiff to be in privity with the defendant. *Baldonado v. Wyeth*, No. 04-CV-04312, 2012 WL 729228, at *4 (N.D. Ill. Mar. 6, 2012). Illinois Plaintiff Tran has not sufficiently alleged privity with Huawei. He purchased his Nexus 6P phone through the Google Store, and he interacted solely with Google when trying to remedy the Bootloop Defect. CAC ¶¶ 52–54. The CAC's unsupported allegation that all Plaintiffs "were in privity of contract with Huawei . . . by virtue of their interactions with Huawei," *id.* ¶ 242, is conclusory and does not plausibly allege privity.

That conclusion does not end the analysis. Where the parties are not in privity, there may be an express warranty if the plaintiff shows that the statement became part of the basis of the bargain. *Ampat/Midwest, Inc. v. Ill. Tool Works, Inc.*, No. 85-CV-10029, 1988 WL 53222, at *3 (N.D. Ill. May 12, 1988). More precisely, Illinois courts have recognized an exception to the privity requirement, holding that "manufacturer documents given directly to the buyer prior to a purchase may give rise to an express warranty." *Canadian Pac. Ry. Co. v. Williams-Hayward Protective Coatings, Inc.*, No. 02-CV-08800, 2005 WL 782698, at *15 (N.D. Ill. Apr. 6, 2005); *see also Wheeler v. Sunbelt Tool Co.*, 537 N.E.2d 1332, 1341 (Ill. Ct. App. 1989) ("Documents, brochures, and advertisements [from the manufacturer] may constitute express warranties."). Although the CAC provides a website to access Huawei's Limited Warranty, CAC ¶ 219 & n.17, there are no allegations that the warranty was available online at the time that Plaintiff Tran purchased his Nexus 6P or that he was directed to the online warranty, accessed the warranty online, or otherwise received the warranty before his purchase, *id.* ¶¶ 52–57. While Plaintiffs' opposition suggests that Huawei's Limited Warranty was "included in every Google Nexus 6P box," Opp'n 17, there is no corresponding allegation in the CAC. These circumstances do not fit

1  within the privity exception, and Plaintiffs do not even clearly argue that the exception is met in

2  this case. Accordingly, the Court GRANTS Huawei's Motion to Dismiss the express warranty

3  claim of Plaintiff Tran with leave to amend to allege further facts about the privity relationship

4  between Plaintiff Tran and Huawei.

5      In sum, the Court GRANTS WITH LEAVE TO AMEND Huawei's Motion to Dismiss the

6  express warranty claim of Plaintiffs Martorello and Tran for failure to adequately plead privity.

### ii.      Breach of Implied Warranty of Merchantability

8      Plaintiffs bring their second cause of action for breach of the implied warranty of

9  merchantability on behalf of a putative nationwide class but do not specify which law governs the

10  claim. CAC ¶ 235. Alternatively, they assert claims for breach of the implied warranty of

11  merchantability on behalf of the putative statewide subclasses under the laws of the respective

12  states. *Id.* ¶ 236. Specifically, Plaintiffs' cause of action alleges that Huawei "impliedly

13  warranted that the Phones were of a merchantable quality" but failed to keep that promise because

14  the Nexus 6Ps "were not in merchantable condition and are not fit for the ordinary purpose for

15  which phones are used." *Id.* ¶ 239. Huawei seeks dismissal on the grounds that Plaintiffs have not

16  adequately pled that they were in privity with Huawei, that they provided Huawei notice and an

17  opportunity to cure, and that the phones were unmerchantable. Huawei Mot. 13–16.

### (1)      Privity and Third-Party Beneficiary

19      Huawei first contends that certain Plaintiffs who did not purchase from Huawei cannot

20  assert implied warranty claims. Huawei Mot. 14. Huawei argues that vertical privity is a

21  necessary element to sustain an implied warranty claim and that these Plaintiffs do not adequately

22  plead privity. *Id.* With one limited exception, Plaintiffs concede that the relevant states require

23  vertical privity, but they respond that the third-party beneficiary exception applies here and is

24  adequately pled. Opp'n 31–34.

25      Preliminarily, Plaintiffs have failed to sufficiently plead privity between the relevant

26  Plaintiffs and Huawei. Specifically, Plaintiffs Makcharoenwoodhi, Gorbatchev, Martorello, Tran,

27  Berry, Davydov, Harrison, Himes, Servodio, and Johnston did not purchase their phones from

28  Huawei. CAC ¶¶ 12 (Makcharoenwoodhi: Best Buy), 19 (Gorbatchev: Google), 38 (Martorello:

United States District Court
Northern District of California

Google), 52 (Tran: Google), 70 (Berry: Google), 79 (Davydov: Amazon), 91 (Harrison: Amazon), 99 (Himes: Best Buy), 119 (Servodio: Newegg), 153 (Johnston: Best Buy). Moreover, without any supporting factual content, the conclusory statement that all Plaintiffs "were in privity of contract with Huawei . . . by virtue of their interactions with Huawei," *id.* ¶ 242, does not plausibly allege privity. Thus, the Court must address the existence of the vertical privity requirement and the third-party beneficiary exception.

First, Plaintiffs correctly note that "Michigan has abandoned the privity requirement for implied-warranty claims." *Pack v. Damon Corp.*, 434 F.3d 810, 820 (6th Cir. 2006); *see also Heritage Res., Inc. v. Caterpillar Fin. Servs. Corp.*, 774 N.W.2d 332, 343 (Mich. Ct. App. 2009) ("[The Michigan] Supreme Court . . . has previously held that for some remote purchasers it is unnecessary in actions for breach of implied warranty to establish privity of contract with the manufacturer."). Huawei does not counter that precedent. Accordingly, the claim by Michigan Plaintiff Berry is not properly dismissed on this ground.

Huawei cites cases recognizing a vertical privity requirement under California, Illinois, New York, North Carolina, Ohio, and Washington law. *See Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008) (California); *Zaro v. Maserati N. Am., Inc.*, No. 07-CV-03565-JWD, 2007 WL 4335431, at *2 (N.D. Ill. Dec. 6, 2007) (Illinois); *Kolle v. Mainship Corp.*, No. 04-CV-00711-TCP, 2006 WL 1085067, at *5 (E.D.N.Y. Apr. 20, 2006) (New York); *Traxler v. PPG Indus., Inc.*, 158 F. Supp. 3d 607, 623 (N.D. Ohio 2016) (North Carolina); *McKinney*, 744 F. Supp. 2d at 758 (Ohio); *Chance v. Richards Mfg. Co.*, 499 F. Supp. 102, 105 (E.D. Wash. 1980) (Washington). Plaintiffs do not challenge that proposition because they argue that application of the third-party beneficiary exception obviates any need to satisfy the vertical privity requirement.

In its moving papers, Huawei concedes that the relevant states allow plaintiffs to bring implied warranty claims in the absence of privity if the plaintiff shows that he was a beneficiary to a contract between the defendant and a third party. Huawei Mot. 14 (citing *In re NVIDIA GPU Litig.*, No. 08-CV-04312-JW, 2009 WL 4020104, at *6 (N.D. Cal. Nov. 19, 2009)). Because the parties do not identify any material differences among the relevant state laws, the Court uses California law as the rubric for analyzing these arguments. California has codified the third-party

beneficiary exception: "A contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." Cal. Civ. Code § 1559. "Because third party beneficiary status is a matter of contract interpretation, a person seeking to enforce a contract as a third party beneficiary must plead a contract which was made expressly for his [or her] benefit and one in which it clearly appears that he [or she] was a beneficiary." *Schauer v. Mandarin Gems of Cal., Inc.*, 23 Cal. Rptr. 3d 233, 239 (Ct. App. 2005) (alterations in original) (internal quotation marks and citation omitted).

With respect to Huawei, Plaintiffs fulfill these pleading requirements. Specifically, Plaintiffs point to Huawei's Limited Warranty as the contract which is made expressly for Plaintiffs' benefit. CAC ¶ 242. That express warranty represents to the original purchaser that the Nexus 6P is free from material defects and that Huawei would repair or replace defective or malfunctioning parts. *Id.* ¶¶ 218–20. As Plaintiffs allege, the Limited Warranty is designed to benefit only the end users, not the retailers who sell the phones. *Id.* ¶ 242; *see also id.* ¶ 294 ("The retailers were not intended to be the ultimate consumers of the Nexus 6P smartphones and have no rights under the warranty agreements connected with the Nexus 6P smartphones; these agreements were designed for and intended to benefit the end-users only."). Similar allegations have been held to be sufficient to invoke the third-party beneficiary exception. *See, e.g.*, *In re MyFord*, 46 F. Supp. 3d at 982–84 & n.15 (finding third-party beneficiary allegations sufficient where Plaintiffs alleged that the retailers "ha[d] no rights under the warranty agreements" and "the warranty agreements were designed for and intended to benefit the ultimate consumers only"); *In re Toyota Motor Corp.*, 754 F. Supp. 2d at 1185 (finding third-party beneficiary allegations sufficient where Plaintiffs alleged that they "were the intended consumers" who bought from "a network of dealers who are agents of Defendants").

Accordingly, lack of privity is not an appropriate basis on which to dismiss Plaintiffs' claims for breach of the implied warranty of merchantability.

### (2)    Notice and Opportunity to Cure

In a similar vein to its argument for dismissal of the express warranty claims, Huawei contends that certain Plaintiffs' failure to give Huawei notice or an opportunity to cure is fatal to

28

1    these Plaintiffs' implied warranty claims.  Huawei Mot. 15–16.  In particular, Plaintiffs Beheler,

2    Berry, Harrison, Himes, Leone, and Poore do not allege that they provided Huawei notice of their

3    breach of implied warranty claims.  *Id.* at 16.  Due to the variations in state law on this issue, the

4    Court proceeds through each Plaintiff's state-law claim individually.

5                                    **(a)      Indiana**

6          The cases cited with respect to Indiana's notice requirement for express warranty claims

7    apply equally to implied warranty of merchantability claims.  *See Anderson*, 662 F.3d at 780

8    (express warranty and implied warranty of merchantability claims); *see also Agrarian Grain Co.*,

9    526 N.E.2d at 1193 (implied warranty of merchantability claims).  Accordingly, for the same

10   reasons discussed above, Indiana Plaintiff Beheler's implied warranty claim cannot be dismissed

11   for failure to allege notice and an opportunity to cure.

12                                   **(b)      Michigan**

13         Under Michigan law, a "plaintiff's failure to give defendants reasonable notice of her

14   breach-of-warranty claims" justifies dismissal.  *Gorman v. Am. Honda Motor Co.*, 839 N.W.2d

15   223, 229 (Mich. Ct. App. 2013); *see also In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1104 (N.D.

16   Cal. 2015).  More specifically, "the seller must be given actual notice that the buyer believes that

17   the seller is in breach."  *Gorman*, 839 N.W.2d at 231.  Here, the CAC's allegations that Michigan

18   Plaintiff Berry contacted Google and engaged in various (unsuccessful) troubleshooting options

19   are not sufficient to meet that standard.  CAC ¶¶ 72–75.  Not only did Plaintiff Berry have no

20   interactions with Huawei, but he did not put Huawei on notice that he believed Huawei to be in

21   breach of the implied warranty of merchantability.  Accordingly, the Court GRANTS Huawei's

22   Motion to Dismiss Plaintiff Berry's claim for breach of the implied warranty of merchantability

23   with leave to amend to allege further facts about whether he put Huawei on notice that he believed

24   Huawei to be in breach of the implied warranty of merchantability.

25                                   **(c)      North Carolina**

26         In North Carolina, "the burden of pleading . . . that seasonable notification has been given

27   is on the buyer."  *Maybank v. S. S. Kresge Co.*, 273 S.E.2d 681, 683 (N.C. 1981); *see Phillips v.*

28   *Rest. Mgmt. of Carolina, L.P.*, 552 S.E.2d 686, 692 (N.C. Ct. App. 2001) (listing "timely notice to

the seller" as an essential element to establish a claim for breach of the implied warranty of merchantability (quoting *Ismael v. Goodman Toyota*, 417 S.E.2d 290, 295 (N.C. Ct. App. 1992))). "Whether the notice given was seasonable is a question of fact and normally must be determined by the trier of fact." *Maybank*, 273 S.E.2d at 684 n.1. Moreover, in deciding an appeal from a motion for directed verdict, the North Carolina Supreme Court has held that there may be compliance with the notice requirement where "the plaintiff is a lay consumer and notification is given to the defendant by the filing of an action within the period of the statute of limitations." *Id.* at 685 ("When the plaintiff is a lay consumer and notification is given to the defendant by the filing of an action within the period of the statute of limitations, and when the applicable policies behind the notice requirement have been fulfilled, we hold that the plaintiff is entitled to go to the jury on the issue of seasonable notice.").

Based on those standards, both North Carolina Plaintiffs have adequately pled notice. Most importantly, Plaintiffs Harrison and Himes are lay consumers who filed this action against Huawei and are not alleged to be untimely. Additionally, both Plaintiffs contacted Huawei about the problems they were experiencing with their Nexus 6P phones and followed up with Huawei when their concerns were not resolved. CAC ¶¶ 94 (Harrison), 103–04 (Himes). Other North Carolina cases have held that repeatedly returning a product can be sufficient to put the defendant on notice. *See, e.g.*, *Ismael*, 417 S.E.2d at 295 (noting that the plaintiff "repeatedly returned the car to defendant for repair"); *Wright v. T & B Auto Sales, Inc.*, 325 S.E.2d 493, 495–96 (N.C. Ct. App. 1985) ("Plaintiff gave Defendant timely notice of the defects by repeatedly returning the car to Defendant from March 1982 through September 1982 complaining that the car was overheating and that water was in the oil."). Accordingly, Plaintiffs Harrison and Himes's implied warranty claims cannot be dismissed for failure to allege notice and an opportunity to cure.

### (d) Pennsylvania

The parties present no reason to conclude that, with regard to notice, express and implied warranty claims should be treated differently under Pennsylvania law. As noted above, there is authority holding that the filing of a complaint can be sufficient to notify the manufacturer of breach. *See Precision Towers*, 2002 WL 31247992, at *5 ("The filing of a complaint has been

held to satisfy the notice requirement for a breach of warranty claim.").  Although the timeliness of the notice remains an open issue, the filing of this action is sufficient to preclude dismissal of Plaintiff Leone's implied warranty claim for failure to provide notice.  *See In re MyFord*, 46 F. Supp. 3d at 978.

### (e) Texas

Although some Texas courts have held that notice to a manufacturer is not required, *Vintage Homes, Inc. v. Coldiron*, 585 S.W.2d 886, 888 (Tex. Civ. App. 1979), the weight of authority in Texas favors the position that notice is required in this circumstance, *see McKay v. Novartis Pharm. Corp.*, 934 F. Supp. 2d 898, 912 (W.D. Tex. 2013) ("Three out of the four Texas courts of appeals which have addressed the issue have held that a buyer is required to give notice of an alleged breach of warranty to a remote as well as an immediate seller/manufacturer."), *aff'd*, 751 F.3d 694 (5th Cir. 2014).  Moreover, under Texas law, "[t]he manufacturer must be made aware of a problem with a particular product purchased by a particular buyer" and commencement of a lawsuit does not satisfy that requirement.  *U.S. Tire-Tech, Inc. v. Boeran, B.V.*, 110 S.W.3d 194, 202 (Tex. App. 2003).

Although the CAC states that Texas Plaintiff Poore "contacted Huawei to request that his Phone be repaired or replaced," CAC ¶ 147, it gives no indication that Poore communicated the particular issues that he was having with his phone to Huawei.  Contrary to Plaintiffs' suggestion, Opp'n 26, Plaintiff Poore cannot rely on Huawei's generalized knowledge of concerns about the phones.  *See U.S. Tire-Tech*, 110 S.W.3d at 202; *see also In re Carrier IQ*, 78 F. Supp. 3d at 1104.  Accordingly, the Court GRANTS Huawei's Motion to Dismiss Plaintiff Poore's claim for breach of the implied warranty of merchantability with leave to amend to allege further facts about whether he made Huawei aware of the problems with his Nexus 6P.

Accordingly, the Court GRANTS Huawei's Motion to Dismiss the implied warranty claims of Plaintiffs Berry and Poore—but not Plaintiffs Beheler, Harrison, Himes, or Leone—with leave to amend to allege further facts about whether any of these Plaintiffs provided notice and an opportunity to cure.

United States District Court
Northern District of California

In a particularly weak final argument, Huawei contends that Plaintiffs do not plausibly allege that their Nexus 6P phones were not merchantable.  Huawei Mot. 16.  Huawei's argument is unpersuasive.

The implied warranty of merchantability arises by operation of law rather than contract. *See, e.g.*, *Hauter v. Zogarts*, 534 P.2d 377, 385 (Cal. 1975).  It guarantees not that the goods "precisely fulfill the expectation of the buyer," but instead that the goods meet "a minimum level of quality." *Am. Suzuki Motor Corp. v. Superior Court*, 44 Cal. Rptr. 2d 526, 529 (Ct. App. 1995) (citation omitted).  "The core test of merchantability is fitness for the ordinary purpose for which such goods are used." *Mexia v. Rinker Boat Co.*, 95 Cal. Rptr. 3d 285, 289 (Ct. App. 2009) (citation omitted).

Plaintiffs' allegations easily satisfy these requirements.  The CAC identifies some of the basic functions of a smartphone, including "mak[ing] calls, send[ing] text messages, access[ing] the internet," and storing "photographs, videos, text messages, and contact lists."  CAC ¶ 175.  Further, the Bootloop and Battery Drain Defects render the phones unfit for those purposes.  When the Bootloop Defect manifests, the phone experiences total failure and the customer permanently loses access to any data stored on the phone.  *Id.* ¶¶ 174–75; *see also id.* ¶ 175 (describing a Nexus 6P with the Bootloop Defect as "essentially an expensive paperweight").  When the Battery Drain Defect manifests, the phone experiences severe battery drainage with early shut-off.  *Id.* ¶¶ 176–77.  The customer may use the phone again only after connecting the phone to power.  *Id.* ¶ 178.  It is no response that some Plaintiffs continued to use their phones after the defects manifested, *see* Huawei Mot. 16, as "the implied warranty can be breached when, although capable of performing its ordinary function, the product nonetheless fails in a significant way to perform as a reasonable consumer would expect." *In re Carrier IQ*, 78 F. Supp. 3d at 1109.

Accordingly, Plaintiffs have adequately pled that the Nexus 6Ps were unmerchantable, and this is not an appropriate basis on which to dismiss Plaintiffs' claims for breach of the implied warranty of merchantability.

### iii.     Song–Beverly Consumer Warranty Act

The California Plaintiffs' cause of action for violations of the Song–Beverly Consumer Warranty Act ("Song–Beverly Act"), Cal. Civ. Code §§ 1791.1, 1792, on behalf of the California subclass fails because Plaintiffs do not allege where they purchased their phones.  The protections of the Song–Beverly Act extend only to "sale[s] of consumer goods that are sold at retail in this state [California]."  Cal. Civ. Code § 1792.  The California Plaintiffs do not allege where they purchased their phones, and they seek to represent a class of persons in the state of California who purchased or own at least one Nexus 6P.  CAC ¶¶ 205, 285.  It is not plausible to infer that any person in California who owns a Nexus 6P purchased the phone in California.  *See In re Carrier IQ*, 78 F. Supp. 3d at 1107 ("[W]hile Plaintiffs allege a number of Plaintiffs reside in California there are actually no allegations in the [complaint] that any of these Plaintiffs purchased their mobile devices *in California*.").  Plaintiffs must allege whether the phone purchases took place in California.[5]

Accordingly, the Court GRANTS Huawei's Motion to Dismiss the Song–Beverly Act claim with leave to amend to assert where the phone purchases took place.

### iv.     Magnuson–Moss Warranty Act

Plaintiffs' third cause of action alleges violations of the Magnuson–Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, presumably on behalf of the nationwide class, though the CAC does not specify.  CAC ¶¶ 249–67.  The parties agree that, in this case, "the claims under the Magnuson–Moss Act stand or fall with [the] express and implied warranty claims under state law."  *Clemens*, 534 F.3d at 1022.  The Court has concluded that all of the implied warranty claims survive except those brought by Plaintiffs Berry and Poore under Michigan and Texas law, respectively.  The Court has also concluded that the express warranty claims of Plaintiffs Berry and Poore should be dismissed with leave to amend.  As it stands, then, the Court GRANTS Huawei's Motion to

---

[5] Huawei makes an argument in its Motion to Dismiss that the Song–Beverly Act requires that the plaintiff deliver a defective product to the manufacturer for repair within the express warranty coverage period.  Huawei Mot. 17–18.  Plaintiffs respond that the provision Huawei cites is applicable only to assistive devices for disabled persons.  Opp'n 36.  Huawei does not repeat the argument in its reply.  Huawei Reply 13.

1    Dismiss the Magnuson–Moss Warranty Act claims of Plaintiffs Berry and Poore with leave to

2    amend, but otherwise DENIES Huawei's Motion to Dismiss Plaintiffs' Magnuson–Moss Warranty

3    Act claims.[6]

### b.    Fraud and Deceptive Practices Claims

5         Plaintiffs assert various fraud claims against Huawei. Specifically, they bring common-

6    law claims for deceit and fraudulent concealment, CAC ¶¶ 268–77, as well as claims under a

7    number of state consumer fraud statutes, *id.* ¶¶ 297–535. There are two common theories

8    underlying fraud claims: affirmative misrepresentations and fraudulent omissions. The CAC does

9    not allege that Huawei made any affirmative representations about Nexus 6P phones, other than to

10   treat Huawei and Google as a collective. *See, e.g.*, *id.* ¶ 275 ("Plaintiffs and Class members relied

11   to their detriment upon Defendants' . . . fraudulent misrepresentations . . . regarding the quality of

12   Phones and the Defects in deciding to purchase their Phones."). Rather, Plaintiffs rely on

13   Huawei's failure to notify consumers of the alleged Bootloop and Battery Drain Defects. *Id.*

14   ¶¶ 270, 303, 319, 335, 343, 356, 374, 394, 403, 418, 428, 437, 448, 466, 482, 491, 508, 522.

15   Huawei challenges the viability of this fraudulent omissions theory on multiple grounds and then

16   makes additional arguments with regard to some of the statutory claims.

### i.    No Duty to Disclose

18        Huawei first contends that it had no duty to disclose the defects because Plaintiffs have

19   not plausibly alleged that Huawei had knowledge of the defects prior to the time of sale. Huawei

20   Mot. 19. The Court looks to California law to guide the analysis because Plaintiffs rely solely on

21   California law in responding to Huawei's arguments and do not identify any material differences

22   with other state laws. Opp'n 41–48, 50. California law supports this common-sense notion that a

23   defendant cannot "disclose facts of which it was unaware." *In re Sony Grand Wega*, 758 F. Supp.

24   2d at 1095. The Ninth Circuit has put it explicitly: to state a claim for fraud based on failure to

25   disclose under California law, the plaintiff must allege that "the manufacturer knew of the defect

26

27   _____

     [6] Huawei also claims a separate notice issue with respect to Plaintiffs' Magnuson–Moss Warranty
28   Act claims but fails to fully develop the point or explain how the argument differs from the notice
     arguments under state law. Huawei Mot. 18.

at the time a sale was made." *Williams v. Yamaha Motor Co.*, 851 F.3d 1015, 1025 (9th Cir. 2017); *see also LiMandri v. Judkins*, 60 Cal. Rptr. 2d 539, 543 (Ct. App. 1997) (noting that nondisclosure is actionable in fraud when the defendant "had exclusive knowledge of material facts not known to the plaintiff," "actively conceals a material fact from the plaintiff," or "makes partial representations but also suppresses some material facts").

As explained in detail above, Plaintiffs have not adequately pled that Huawei had knowledge of either the Bootloop Defect or the Battery Drain Defect when the Plaintiffs purchased their Nexus 6Ps. Therefore, Huawei had no duty to disclose the defects. Accordingly, the Court GRANTS Huawei's Motion to Dismiss Plaintiffs' fraud claims to the extent they are based on a fraudulent omissions theory with leave to amend to allege facts about Huawei's knowledge of the defects at the time of sale.

### ii.    No Unreasonable Safety Hazard

Huawei next contends that Plaintiffs' statutory fraud claims under California, Florida, North Carolina, Texas, and Washington law must be dismissed because the CAC does not plausibly allege that the phone defects posed an unreasonable safety hazard. Huawei Mot. 21. Although Plaintiffs argue that an unreasonable safety hazard is not a necessary element for the statutory fraud claims, the Ninth Circuit recently held that, in the absence of affirmative misrepresentations, "[t]o state a claim for failing to disclose a defect, a party must allege," among other things, "the existence of an unreasonable safety hazard." *Williams*, 851 F.3d at 1025; *see also id.* at 1026 (citing *Wilson*, 668 F.3d at 1142–43, as "holding that where a defendant has not made an affirmative misrepresentation, a plaintiff must allege the existence of an unreasonable safety hazard"). Even Plaintiffs' California authority cannot help Plaintiffs here because it states that the duty to disclose extends to "material information *known* to a manufacturer and concealed from a consumer." *Rutledge v. Hewlett-Packard Co.*, 190 Cal. Rptr. 3d 411, 420 (Ct. App. 2015) (emphasis added). Thus, in these circumstances, Plaintiffs are required to plead an unreasonable safety hazard.

The Court disagrees with Plaintiffs' contention that the CAC adequately alleges such an unreasonable safety hazard. "[A] party's allegations of an unreasonable safety hazard must

describe more than merely 'conjectural and hypothetical' injuries." *Williams*, 851 F.3d at 1028

(quoting *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961 (9th Cir. 2009)). Here, the CAC obliquely

claims that "the Defects raise serious safety concerns" based on one user who "was temporarily

stranded on a freezing night after her Phone abruptly died when she was trying to request a ride

from the ride-sharing app Uber." CAC ¶ 180. Not only have Plaintiffs identified only one

example, but the safety risk of being stranded with a nonfunctioning phone has been held to be too

speculative to amount to an unreasonable safety hazard. *See Missaghi v. Apple Inc.*, No. 13-CV-

02003-GAF, 2013 WL 12114470, at *8 (C.D. Cal. Aug. 28, 2013); *see also Smith v. Ford Motor

Co.*, 462 F. App'x 660, 663 (9th Cir. 2011) (rejecting as too speculative the safety concern that a

defective ignition-lock could leave consumers stranded on the side of the road). Similarly, the

Ninth Circuit has concluded that the more-egregious risk of fires due to defects in a boat motor

were hypothetical where the complaint contained no allegations that any customer had

experienced such a fire. *Williams*, 851 F.3d at 1028–29. Accordingly, the Court GRANTS

Huawei's Motion to Dismiss Plaintiffs' statutory fraud claims under California, Florida, North

Carolina, Texas, and Washington law with leave to amend to allege whether the defects pose an

unreasonable safety hazard.

### iii. Manifestation of Defect Outside Warranty

Huawei separately contends that there can be no fraudulent omissions claims for Plaintiffs

Gorbatchev, Christensen, and Tran because their Nexus 6Ps did not allegedly malfunction until

after the expiration of the Limited Warranty, CAC ¶¶ 19–21, 28–29, 52–53. Huawei Mot. 22–23.

It is true that, as a policy matter, California courts have cabined the scope of the duty to disclose to

avoid the unsavory result that manufacturers are on the hook for every product defect that occurs

at any time, regardless of any time limits contained in their warranties. *See Daugherty v. Am.

Honda Motor Co.*, 51 Cal. Rptr. 3d 118, 122 (Ct App. 2006); *see also Williams*, 851 F.3d at 1029

("[T]he fact that the alleged defect concerns premature, but usually post-warranty, onset of a

natural condition raises concerns about the use of consumer fraud statutes to impermissibly extend

a product's warranty period."). But this policy consideration appears to be a variation on

Huawei's arguments above, and Huawei has not fully explained how it independently justifies

1  dismissal of Plaintiffs' fraud claims.  Accordingly, at this stage, the Court does not rely on this

2  basis to dismiss the fraud claims of Plaintiffs Gorbatchev, Christensen, and Tran.

3  ### iv.    California Consumers Legal Remedies Act

4  The California Plaintiffs bring a claim under California's Consumers Legal Remedies Act

5  ("CLRA"), Cal. Civ. Code § 1780, on behalf of the California subclass.  CAC ¶ 310.  Huawei

6  argues that Plaintiffs have failed to comply with the statutory provision.  Huawei Mot. 23.

7  Specifically, under the CLRA, "concurrently with the filing of the complaint, the plaintiff shall file

8  an affidavit stating facts showing that the action has been commenced in a county described in this

9  section as a proper place for the trial of the action."  Cal. Civ. Code § 1780(d).  The statute also

10  provides the appropriate course of action when the plaintiff fails to comply: dismissal without

11  prejudice.  *Id.*

12  Plaintiffs do not dispute that none of the California Plaintiffs filed the CLRA affidavit

13  required by the statute.  Opp'n 50.  Instead, Plaintiffs characterize this requirement as a state

14  procedural rule that does not apply in federal court.  *Id.*  Plaintiffs' characterization is inaccurate.

15  "The clear intent of the [CLRA] is to provide and facilitate pre-complaint settlements of consumer

16  actions wherever possible and to establish a limited period during which such settlement may be

17  accomplished."  *Outboard Marine Corp. v. Superior Court*, 124 Cal. Rptr. 852, 859 (Ct. App.

18  1975).  In this way, "compliance with the [notice] requirement is necessary to state a claim."

19  *Wehlage v. EmpRes Healthcare Inc.*, No. 10-CV-05839-CW, 2012 WL 380364, at *7 (N.D. Cal.

20  Feb. 6, 2012).  Therefore, this Court and multiple other California district courts have required

21  submission of the CLRA affidavit.  *See Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-

22  BLF, 2015 WL 2125004, at *8 (N.D. Cal. May 6, 2015); *see also Rossetti v. Stearn's Prods., Inc.*,

23  No. 16-CV-01875-GW, 2016 WL 3277295, at *2 (C.D. Cal. June 6, 2016); *McVicar*, 1 F. Supp.

24  3d at 1056; *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1037 (N.D. Cal. 2012).  *But

25  see Sandoval v. PharmaCare US, Inc.*, 145 F. Supp. 3d 986, 999 (S.D. Cal. 2015) (holding on the

26  facts of the case that the notice requirement "does not apply to CLRA claims filed in federal

27  court").

28  In their opposition, Plaintiffs state that "[s]hould the Court require venue affidavits here,

1  Plaintiffs will attach them to an amended complaint." Opp'n 50. Accordingly, the Court

2  GRANTS Huawei's Motion to Dismiss Plaintiffs' CLRA claim with leave to file the necessary

3  CLRA affidavit.

4       **v.**  **California Unfair Competition & False Advertising Laws**

5    The California Plaintiffs assert a claim under California's Unfair Competition Law

6  ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*, and a claim under California's False

7  Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et seq.*, on behalf of the California

8  subclass. CAC ¶¶ 298, 333. Huawei makes claim-specific arguments for dismissal, and the Court

9  addresses the UCL and FAL claims in turn.

10         **(1)**  **UCL**

11    The Court first turns to the UCL claim. The UCL prohibits any "unlawful, unfair or

12  fraudulent business act or practice." Cal. Bus. & Prof. Code § 17200; *see also Cel-Tech*

13  *Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539 (Cal. 1999). Because the statute is

14  written in the disjunctive, it applies separately to business practices that are (1) unlawful, (2)

15  unfair, or (3) fraudulent. *See Pastoria v. Nationwide Ins.*, 6 Cal. Rptr. 3d 148, 153 (Ct. App.

16  2003). Plaintiffs contend that Huawei's conduct has violated all three prongs. Huawei, however,

17  argues that the CAC does not adequately allege that its conduct was unlawful, unfair, or

18  fraudulent. Huawei Mot. 24–25.

19       **(a)**  **Unlawful Business Act or Practice**

20    Plaintiffs predicate their claim under the "unlawful" prong in part on Huawei's alleged

21  violation of the Magnuson–Moss Warranty Act. *See* CAC ¶ 300. The "unlawful" prong of the

22  UCL covers "any business practice that violate[s] an independent statutory duty." *Cel-Tech*

23  *Commc'ns*, 973 P.2d at 549. Because the Court has already concluded that the California

24  Plaintiffs have stated a claim against Huawei under the Magnuson–Moss Warranty Act, they have

25  also stated a claim against Huawei for violation of the UCL "unlawful" prong. Accordingly, the

26  Court DENIES Huawei's Motion to Dismiss Plaintiffs' UCL claim under the unlawful prong.

27       **(b)**  **Unfair Business Act or Practice**

28    The "unfair" prong of the UCL creates a cause of action for a business practice that is

unfair even if not proscribed by some other law. *Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003). The UCL does not define the term "unfair," and the proper definition in the consumer context is "currently in flux" among California courts. *See Lozano v. AT & T Wireless Servs., Inc.*, 504 F.3d 718, 735–36 (9th Cir. 2007).

Although the precise test for the UCL's "unfair" prong has not been definitively established, Plaintiffs endorse the balancing test enunciated in *South Bay Chevrolet v. General Motors Acceptance Corp.*, 85 Cal. Rptr. 2d 301 (Ct. App. 1999), or the FTC Act section 5 test employed in *Camacho v. Automobile Club of Southern California*, 48 Cal. Rptr. 3d 770 (Ct. App. 2006). Opp'n 39. Pursuant to the *South Bay* balancing test, a practice is "unfair" "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." 85 Cal. Rptr. 2d at 316. "This test involves balancing the harm to the consumer against the utility of the defendant's practice." *Lozano*, 504 F.3d at 735 (citing *S. Bay*, 85 Cal. Rptr. 2d at 315). Under the FTC Act section 5 test, three factors define unfairness: "(1) the consumer injury must be substantial; (2) the injury must not be outweighed by any countervailing benefits to consumers or competition; and (3) it must be an injury that consumers themselves could not reasonably have avoided." *Camacho*, 48 Cal. Rptr. 3d at 777. Huawei contends that regardless of the test applied, Plaintiffs' claim fails. Huawei Mot. 24–25; *see also* Huawei Reply 15 ("No matter what test is applied, the [CAC] lacks any factual basis to sustain such a claim.").

Under any test, Plaintiffs do not allege sufficient facts to establish that Huawei engages in a "practice of selling defective phones without providing an adequate remedy to cure the Defects." CAC ¶ 302. Specifically, Plaintiffs point to five aspects of "Defendants" Huawei and Google's conduct: (1) knowingly sold defective phones, (2) refused to repair or replace phones when the defects manifested outside the warranty period, (3) avoided providing warranty service by blaming minor cosmetic issues, (4) had long wait periods on warranty claims, and (5) provided replacement phones that were also defective. *Id.* ¶ 301. Although Plaintiffs endorse evaluating this conduct as a whole without testing the sufficiency of each aspect, the problem is that Plaintiffs lump Huawei and Google together under the heading of "Defendants" when each aspect does not apply

uniformly to both. Therefore, the Court must undertake the difficult endeavor of teasing out which actions the CAC attributes to Huawei alone.

Ground (1) is easily discarded, as it merely parrots the already-rejected contention that Huawei had knowledge of the defects at the time of sale. Ground (2) also falls away because the California courts have held that there can be no "unfair" business practice, at least under the FTC Act section 5 test, when the product functions as warranted throughout the term of an express warranty. *Daugherty*, 51 Cal. Rptr. 3d at 130 ("[T]he failure to disclose a defect that might, or might not, shorten the effective life span of an automobile part that functions precisely as warranted throughout the term of its express warranty . . . does not constitute an unfair practice under the UCL."). Ground (3) appears more promising, but Plaintiffs do not provide sufficient facts to support it. Only one California Plaintiff alleges that Huawei denied warranty coverage based on a cosmetic flaw in his phone. *See* CAC ¶ 15 ("Huawei informed [Plaintiff] Makcharoenwoodhi that his warranty was voided because his Phone had a small dent by the volume button.").[7] One isolated instance where Huawei allegedly did not provide warranty coverage based on a minor cosmetic issue does not rise to the level of an unfair practice of failing to honor its warranties.

Ground (4) asserts that Huawei "[r]equir[ed] consumers to wait several weeks to several months to receive accommodation for warranty claims." CAC ¶ 301.d. However, Plaintiffs have not identified any California Plaintiff who complains about wait times, *see id.* ¶¶ 65, 85, 122, 156, and Plaintiffs do not argue, by reference to allegations in the CAC, that there is a basis to infer that Huawei's practice has affected any California resident. Moreover, the failure to provide timely responses to warranty claims might amount to poor customer service but, standing alone, cannot fairly be characterized as immoral, unethical, oppressive, or unscrupulous. Finally, based on the present allegations, ground (5) does not apply to Huawei at all: Google is the only actor alleged to have provided certain Plaintiffs with a defective replacement phone. *Id.* ¶¶ 49, 75, 113–14, 136.

---

[7] Plaintiffs separately point to the allegations by Ohio Plaintiff Servodio. Even if those allegations could be relevant for a California claim under California law, they state only that Huawei noted a small dent in the side of his phone and determined that his phone was ineligible for warranty coverage, not that Huawei denied coverage because of the dent. *Id.* ¶¶ 122, 124.

Thus, none of Plaintiffs' five asserted aspects of Huawei's conduct withstands scrutiny at the motion to dismiss stage.

More broadly, the CAC pleads that Huawei's conduct is unfair because it "violated California public policy, legislatively declared in the Song–Beverly Consumer Warranty Act, requiring a manufacturer to ensure that goods it places on the market are fit for their ordinary and intended purposes." *Id.* ¶ 301. Even if that description of the Song–Beverly Act accurately captures the general thrust of the statute, it fails to account for the Song–Beverly Act's circumscribed geographic reach to sales of consumer goods *in California*. *See* Cal. Civ. Code § 1792. At a minimum, the Song–Beverly Act's purpose is not offended by sales of unmerchantable consumer goods outside the state of California. Thus, like with Plaintiffs' claim under the Song–Beverly Act, Plaintiffs' claim under the UCL unfair prong fails because the CAC does not allege that the California Plaintiffs purchased their phones in California.

Accordingly, the Court GRANTS Huawei's Motion to Dismiss Plaintiffs' UCL claim under the unfair prong with leave to amend to allege relevant facts.

### (c) Fraudulent Business Act or Practice

In the CAC, Plaintiffs identify three fraudulent acts on the part of Huawei and Google: (1) "[k]nowingly and intentionally concealing from Plaintiffs and California Subclass members the existence of the Defects in the Phones"; (2) "[f]alsely marketing the Phones as being functional and not possessing defects that would render them useless"; and (3) "[p]romoting the battery capabilities and lifespan despite knowing of the significant Defects in the Phones." CAC ¶ 303. Putting aside the fact that the allegations do not distinguish between Huawei and Google, all three acts are premised on Huawei's knowledge of the defects at the time of sale to the California Plaintiffs. Plaintiffs' opposition likewise characterizes the claim under the UCL fraud prong as turning on the "allegations of Defendants' knowledge of the Nexus 6Ps core defects, failure to disclose them, and portrayal of these phones as well functioning." Opp'n 40. As the Court has repeatedly reiterated, Plaintiffs have not adequately alleged that Huawei had knowledge of the defects when the California Plaintiffs purchased their phones. Accordingly, the Court GRANTS Huawei's Motion to Dismiss Plaintiffs' UCL claim under the fraud prong with leave to amend to

allege that Huawei had knowledge of the defects at the time that the California Plaintiffs purchased their phones.

### (2) FAL

The Court next addresses the FAL claim. In relevant part, the statutory provision provides:

> It is unlawful for any . . . corporation . . . with intent directly or indirectly to dispose of real or personal property or to perform services, professional or otherwise, or anything of any nature whatsoever or to induce the public to enter into any obligation relating thereto, to make or disseminate or cause to be made or disseminated . . . from this state before the public in any state, in any newspaper or other publication, or any advertising device, . . . or in any other manner or means whatever, including over the Internet, any statement, concerning that real or personal property or those services, professional or otherwise, or concerning any circumstance or matter of fact connected with the proposed performance or disposition thereof, which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading.

Cal. Bus. & Prof. Code § 17500. Huawei contends that Plaintiffs' FAL claim is inadequately pled because they fail to allege actual reliance on an advertisement by Huawei. Huawei Mot. 23.

Huawei is correct. As reflected in the statutory language quoted above, an FAL claim requires an advertising statement. *See Norcia v. Samsung Telecommunications Am., LLC*, No. 14-CV-00582-JD, 2015 WL 4967247, at *8 (N.D. Cal. Aug. 20, 2015) ("There can be no FAL claim where there is no 'statement' at all."); *VP Racing Fuels, Inc. v. Gen. Petroleum Corp.*, 673 F. Supp. 2d 1073, 1088 (E.D. Cal. 2009) ("The underlying element of a false advertising claim is some type of advertising statement."). The CAC is devoid of any factual allegation that Huawei made an advertising statement. The only allegation for the FAL claim regarding advertisements is that "Defendants promoted false and misleading [statements] through advertising, marketing and other publications," CAC ¶ 335, but that allegation fails to separate out Huawei's and Google's conduct and the CAC otherwise refers only to advertising statements by Google. Therefore, Plaintiffs cannot plead actual reliance on any advertising statement by Huawei because they have not identified any statement by Huawei. Accordingly, the Court GRANTS Huawei's Motion to Dismiss Plaintiffs' FAL claim with leave to amend to allege facts about Plaintiffs' actual reliance on an advertising statement made by Huawei.

42

###### vi.     Ohio Trade Deceptive Practices Act

Plaintiff Servodio asserts a claim under the Ohio Deceptive Trade Practices Act ("ODTPA") on behalf of the Ohio subclass.  CAC ¶¶ 461–75.  This claim must be dismissed because Servodio, as a consumer, lacks standing to sue under the ODTPA.

Although the Ohio Supreme Court has not addressed this question, the Ohio Court of Appeals has held that the ODTPA affords no relief to consumers because the statute is designed to protect commercial actors against objectionable commercial conduct.  *Dawson v. Blockbuster, Inc.*, 2006-Ohio-1240, ¶ 24.  It is well settled that Ohio courts look to the interpretation of the analogous federal Lanham Act when interpreting the ODTPA, *Chandler & Assoc., Inc. v. Am.'s Healthcare All., Inc.*, 709 N.E.2d 190, 195 (Ohio Ct. App. 1997), and all five circuits to address the issue have held that consumers have no standing to sue under the Lanham Act, *see* 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 27:39 (5th ed. 2017) (citing the holdings of the Second, Third, Fourth, Seventh, and Ninth Circuits).  Although at least one federal district court has reached a contrary conclusion, "[t]he vast majority of federal courts and all lower state courts to address the issue have concluded that relief under the [ODTPA] is not available to consumers."  *Phillips v. Philip Morris Cos.*, 290 F.R.D. 476, 482 (N.D. Ohio 2013).

Plaintiffs cite a case where the District Court of New Hampshire deferred deciding the ODTPA standing issue at the motion for certification stage.  *In re Dial Complete Mktg. & Sales Practices Litig.*, 320 F.R.D. 326, 328 n.1 (D.N.H. 2017).  Although the court stated that Ohio law on the issue is "unsettled," the court also noted that the parties had not "properly briefed the issue."  *Id.*  Here, in contrast, the parties have sufficiently briefed the issue, and Plaintiffs have not provided authority outweighing the many cases that go against their position.

Accordingly, the Court GRANTS Huawei's Motion to Dismiss the ODTPA claim.  Because consumers cannot bring the ODTPA claim as a matter of law, the Court dismisses this claim without leave to amend.

##### c.     Unjust Enrichment Claim

Plaintiffs' final cause of action is for unjust enrichment.  CAC ¶¶ 278–83.  Relying on *Astiana v. Hain Celestial Group, Inc.*, 783 F.3d 753, 762 (9th Cir. 2015), this Court has held that,

under California law, a claim alleging unjust enrichment states a claim for relief as a quasi-contract claim for restitution. *Romero*, 2015 WL 2125004, at \*9; *see also ESG Capital Partners, LP v. Stratos*, 828 F.3d 1023, 1038 (9th Cir. 2016) ("While California case law appears unsettled on the availability of such a cause of action, th[e Ninth] Circuit has construed the common law to allow an unjust enrichment cause of action through quasi-contract."). This Court has also rejected the notion that unjust enrichment claims should be dismissed at the pleadings stage even if they are duplicative of other claims. *See Romero*, 2015 WL 2125004, at \*9 (citing Fed. R. Civ. P. 8(d)(2)).

However, Plaintiffs do not identify any particular law but instead assert their claim "on behalf of the nationwide Class based upon universal principles in equity." CAC ¶ 279. As this Court and other courts in this district have recognized, "due to variances among state laws, failure to allege which state law governs a common law claim is grounds for dismissal." *Romero v. Flowers Bakeries, LLC*, No. 14-CV-05189-BLF, 2016 WL 469370, at \*12 (N.D. Cal. Feb. 8, 2016); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 781 F. Supp. 2d 955, 966 (N.D. Cal. 2011) ("Several other courts in this district have similarly held that a plaintiff must specify the state under which it brings an unjust enrichment claim."). In order for the Court to determine whether the unjust enrichment claim has been adequately pled, Plaintiff must allege the applicable law.

Accordingly, the Court GRANTS Huawei's Motion to Dismiss the unjust enrichment claim with leave to amend to assert which state law applies.

### 4. Claims Asserted Against Google

In broad strokes, the CAC asserts three categories of claims against Google—warranty claims, fraud claims, and unjust enrichment claims. The Court first addresses an argument about Google's choice-of-law clause that cuts across these three categories for the non-California Plaintiffs who purchased from Google, then addresses each category individually.

### a. Google's Choice-of-Law Clause

Google first seeks dismissal of claims under out-of-state laws for five non-California Plaintiffs who purchased their Nexus 6Ps from Google. Google Mot. 3. Specifically, Plaintiffs Tran, Berry, and Leone purchased their Nexus 6Ps through the Google Store, and Plaintiffs

Martorello and Jones purchased theirs directly from Google.  CAC ¶¶ 38, 52, 70, 111, 130.  Under

Google's Terms of Sale, "[t]he laws of California, U.S.A. apply to these Terms, excluding

California's choice of law rules, and will apply to any disputes arising out of or relating to these

Terms."  Google argues that this choice-of-law clause should be enforced against the out-of-state

Plaintiffs attempting to assert non-California based causes of action, Google Mot. 3–4, and

Plaintiffs offer no meaningful response.  The Court briefly examines the issues related to Google's

choice-of-law clause.

One issue is whether these out-of-state Plaintiffs mutually assented to Google's Terms of

Sale, a question which implicates the law of Internet-based contract formation.  As the Ninth

Circuit has recognized, "[c]ontracts formed on the Internet come primarily in two flavors:

'clickwrap' (or 'click-through') agreements, in which website users are required to click on an 'I

agree' box after being presented with a list of terms and conditions of use; and 'browsewrap'

agreements, where a website's terms and conditions of use are generally posted on the website via

a hyperlink at the bottom of the screen."  *Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1175–76

(9th Cir. 2014).  Google submits evidence that its Terms of Sale fall in the former category

because, for online purchases, customers must click a button which indicates that the customer

agrees to the Terms of Sale.  Gotuaco Decl. ¶ 3, ECF No. 57-2.  Plaintiffs do not argue to the

contrary.  In any event, regardless of whether Google's Terms of Sale are more appropriately

characterized as a "clickwrap" or "browsewrap" agreement, courts have often enforced such

agreements when the user "had actual notice of the Terms of Use or was required to affirmatively

acknowledge the Terms of Use before completing his online purchase."  *Nguyen*, 763 F.3d at

1176; *see also, e.g.*, *Nevarez v. Forty Niners Football Co., LLC*, No. 16-CV-07013-LHK, 2017

WL 3492110, at *8 (N.D. Cal. Aug. 15, 2017).  The Court sees no reason to depart from those

cases here, and Plaintiffs provide none.

Another issue is whether to enforce the contractual choice-of-law provision.  California

law recognizes "strong policy considerations favoring the enforcement of freely negotiated choice-

of-law clauses" in contracts.  *Nedlloyd Lines B.V. v. Superior Court*, 834 P.2d 1148, 1149 (Cal.

1992).  Typically, choice-of-law provisions will be enforced in California unless (1) the chosen

United States District Court
Northern District of California

1    state has no substantial relationship to the parties or the transaction or (2) application of the chosen

2    state's law would be contrary to a fundamental policy of another interested state. *Id.* at 1151.

3    Neither of those exceptions is applicable in the instant case.

4        As to the first exception, California has a substantial relationship to defendant Google

5    because Google has its principal place of business in California and seeks to apply California law

6    to its sales transactions. *See* CAC ¶ 161. Courts have reached the same conclusion on nearly

7    identical choice-of-law provisions being applied in nearly the same manner. *See Rojas-Lozano v.*

8    *Google, Inc.*, 159 F. Supp. 3d 1101, 1110 (N.D. Cal. 2016) (enforcing Google's choice-of-law

9    provision in part because "California has a substantial relationship to Google"). As for the second

10    exception, this Court has not located or been directed to any authority where a court in Florida,

11    Illinois, Michigan, North Dakota, or Pennsylvania has declined to apply California consumer law

12    for public policy reasons. In fact, a court in Pennsylvania has even agreed to apply California law

13    in an unfair business practices case, explaining that "Pennsylvania has no interests that would be

14    impaired by the application of California law." *Nat'l Conference of Bar Examiners v. Multistate*

15    *Legal Studies, Inc.*, 413 F. Supp. 2d 485, 488 (E.D. Pa. 2005). Without any argument to the

16    contrary from Plaintiffs, the Court agrees with Google that its choice-of-law clause may properly

17    be enforced against the out-of-state Plaintiffs.

18        Accordingly, the Court GRANTS Google's Motion to Dismiss the express warranty,

19    implied warranty, and fraud claims of Plaintiffs Martorello, Tran, Berry, Jones, and Leone to the

20    extent those claims are premised on Florida, Illinois, Michigan, North Dakota, and Pennsylvania

21    law, respectively. The Court also GRANTS Google's Motion to Dismiss the related state-law

22    statutory claims—namely, Plaintiff Martorello's claim under the Florida Deceptive and Unfair

23    Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.204 *et seq.*, CAC ¶¶ 340–51; Plaintiff Tran's

24    claims under the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFDBPA"),

25    815 Ill. Comp. Stat. § 505/1 *et seq.*, and the Illinois Uniform Deceptive Trade Practices Act

26    ("IUDTPA"), 815 Ill. Comp. Stat. § 510/1 *et seq.*, CAC ¶¶ 352–83; Plaintiff Berry's claim under

27    the Michigan Consumer Protection Act ("MCPA"), Mich. Comp. Laws § 445.903 *et. seq.*, CAC

28    ¶¶ 397–414; Plaintiff Jones's claim under the North Dakota Consumer Fraud Act ("NDCFA"),

N.D. Cent. Code § 51-15-01 *et seq.*, CAC ¶¶ 444–60; and Plaintiff Leone's claim under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("PUTPCPL"), Pa. Stat. Ann. § 201-1 *et seq.*, CAC ¶¶ 488–500. The Court GRANTS Google's Motion to Dismiss these claims with leave to amend.

### b.    Warranty Claims

Plaintiffs assert four sets of warranty claims: (1) breach of express warranty, (2) breach of the implied warranty of merchantability, (3) violation of the California Song–Beverly Consumer Warranty Act, and (4) violation of the federal Magnuson–Moss Warranty Act. Google moves to dismiss all four causes of action. The Court addresses each in turn.

### i.    Breach of Express Warranty

Plaintiffs bring their first cause of action for breach of express warranty on behalf of a putative nationwide class but do not specify which law governs the claim. CAC ¶ 214. Alternatively, they assert claims for breach of express warranty on behalf of the putative statewide subclasses under the laws of the respective states. *Id.* ¶ 215.

Unlike with Huawei, Plaintiffs do not plead that the Nexus 6P is accompanied by an express written warranty from Google. Rather, Plaintiffs turn to statements that Google made in advertising for the Nexus 6P. In particular, the Google webpage for the Nexus 6P states that charging is "fast—get up to seven hours of use after only ten minutes of charging." CAC ¶ 227.a; RJN, Ex. 1. Plaintiffs also identify two other potentially relevant statements. First, the website also provides that the battery "keeps you talking, texting and apping into the night." CAC ¶ 227.c; RJN, Ex. 1. Along the same lines, a Google presentation contained a statement that "[b]attery life keeps you going all day and into the night." CAC ¶¶ 7, 227.b.[8]

According to Plaintiffs, those statements are concrete promises that give rise to Plaintiffs'

---

[8] Plaintiffs also point to a representation at the 2015 launch event by Google's Product Management Director Sabrina Ellis that, under the Nexus Protect insurance package, consumers with valid claims would "get a new device as early as the next business day." CAC ¶¶ 170, 227.d. Google argues that that statement cannot form the basis for any of the California Plaintiffs' express warranty claims because no California Plaintiff alleges purchasing the Nexus Protect insurance package. Google Mot. 6. Plaintiffs offer no response in their opposition. The Court agrees with Google that there is no express warranty based on this statement for Plaintiffs without a Nexus Protect insurance package.

47

express warranty claims. Opp'n 21–24. Google responds that none of its statements are sufficiently specific to create an express warranty, and thus the express warranty claims of all Plaintiffs should be dismissed. Google Mot. 5–9. If the express warranty claims are not dismissed on this ground, Google provides various bases applicable to different classes of Plaintiffs. As to all Plaintiffs, Google contends that their allegations do not plausibly plead reliance on Google's advertising statements. *Id.* at 6–9. As to Plaintiffs that bought from Google, Google contends that their express warranty claims are barred by Google's disclaimer. *Id.* at 5. As to Plaintiffs that did not purchase from Google, Google contends that the lack of privity defeats their claims. *Id.* at 5, 8–9. Finally, as to an undefined grouping of Plaintiffs, Google claims that they did not give Google notice and an opportunity to cure. *Id.* at 5; Google Reply 5. The Court sorts through this tangled series of arguments by taking them one at a time.

**(1)      Actionable Misrepresentations**

Google does not dispute that an express warranty claim may be based on advertising statements. *See Rice v. Sunbeam Prods., Inc.*, No. 12-CV-07923-CAS, 2013 WL 146270, at *11 (C.D. Cal. Jan. 7, 2013). Instead, Google contends that none of the identified statements amounts to a specific and unequivocal representation regarding the Nexus 6P. Google Mot. 5–6. Under California law, which Google asserts as representative of the other states and Plaintiffs rely on exclusively for this issue, no express warranty is created when the defendant makes "[g]eneralized, vague, and unspecified assertions." *Azoulai v. BMW of N. Am. LLC*, No. 16-CV-00589-BLF, 2017 WL 1354781, at *8 (N.D. Cal. Apr. 13, 2017) (citation omitted); Cal. Com. Code § 2313(2) ("[A]n affirmation merely of the value of the goods or a statement purporting to be merely the seller's opinion or commendation of the goods does not create a warranty."). To constitute an actionable express warranty, the statement regarding the product must be "specific and measurable." *Azoulai*, 2017 WL 1354781, at *8 (citing *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1145 (9th Cir. 1997)).

Google's statement about "get[ting] up to seven hours of use after only ten minutes of charging" is sufficiently specific and measurable. Most prominently, that statement relies on numerical figures with a set meaning and defines the relationship between them—specifically, if

48

the user charges for "ten minutes," he will be able to use the phone for "up to seven hours." Google counters with a footnote hanging off its "get up to seven hours" statement, which says that "[a]ll battery life claims are approximate and based on an average mixed use profile that includes both usage and standby time." RJN, Ex. 1; *see also id.* ("Actual battery performance will vary and depends on many factors . . . ."). That footnote does not undermine the specificity of the "get up to seven hours" statement but merely clarifies that the "get up to seven hours" statement contemplates normal use of the phone. In other words, a consumer who continuously streams movies on his phone should not be upset if he is unable to watch for seven hours after charging for ten minutes. But that does not preclude a consumer who engages in normal usage from reasonably expecting to get up to seven hours of use after ten minutes of charging.

Measurability is not defeated by the fact that Google's statement is phrased as assuring "up to" seven hours, but not guaranteeing exactly seven hours. On this point, this case lies closer to Plaintiffs' cited authority than Google's. In the case Google cites, the district court concluded that a car manufacturer did not create an express warranty in advertising language, which stated that the powertrain in its trucks "offers a maximum highway range of up to 680 miles on a single fill-up." *Acedo v. DMAX, Ltd.*, No. 15-CV-02443-MMM, 2015 WL 12696176, at *24 (C.D. Cal. Nov. 13, 2015). Although the court noted the "qualifying language 'up to,'" the court did not rest its conclusion on that basis alone. *Id.* The defendant's statement also specified that the 680-mile range was a "maximum" and included a footnote expressly indicating that each individual driver's "range may be less." *Id.* Google's statement does not contain any comparable hedging language. Moreover, in *Acedo*, the plaintiff's theory was that, based on the car manufacturer's statement, he justifiably believed that "he would actually be able to drive 680 . . . miles on a single tank of gas." *Id.* Here, in contrast, Plaintiffs construe Google's statement as a warranty that their phones would not experience sudden shutdowns from battery failure, not that their phones would consistently get exactly seven hours or almost seven hours of use.

In that last respect, this case is analogous to Plaintiffs' cited authority. In *In re Toyota Motor Corp.*, the warranty "statements convey[ed] that [the] [d]efendants' use of advanced technology in their vehicles . . . enhances safety." 754 F. Supp. 2d at 1182. The plaintiffs' theory

49

was that the use of the advanced technology was actually contributing to the danger of sudden unintended acceleration in the defendants' vehicles. *Id.* In this way, the plaintiffs plausibly alleged breach of express warranty because the pleaded facts represented the "antithesis" of the defendants' statements. *Id.* The same is true in this case. Google's statement that a user can "get up to seven hours of use after only ten minutes of charging" is directly contrary to Plaintiffs' allegations about sudden shutdowns from battery failures. *See, e.g.*, CAC ¶¶ 13 (alleging that "[i]f [Plaintiff Makcharoenwoodhi] connected the Phone to a charger and fully charged the Phone, it would turn back on and the battery would operate for approximately 10 minutes before the battery would run out and the Phone would turn off again"), 60 (alleging that "[i]n less than one hour [Plaintiff Beheler's] Phone would go from a fully charged battery to shutting down, despite being in safe mode with Google's Chrome browser the only open application"). Thus, Google's "get up to seven hours" statement is sufficiently specific and measurable.

By contrast, the statements that the Nexus 6P's battery life "keeps you talking, texting and apping into the night" and "keeps you going all day and into the night" are not adequate to create express warranties. For one thing, neither statement discusses what length of time of charging or what level of battery charge is envisioned. Equally important, the references to "into the night" and "all day and into the night" are inexact and do not provide a baseline against which to measure the rest of the statement. Such vague product superiority claims cannot reasonably be interpreted by consumers as reliable factual claims about the battery life and performance of the Nexus 6P. *See Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990) ("[A]dvertising which merely states in general terms that one product is superior is not actionable." (citation omitted)). Indeed, courts have found similar statements to be nonactionable puffery, including that a consumer using the defendant's battery "will always have access to power" when needed. *Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *9 (N.D. Cal. Mar. 15, 2016).

The "keeps you talking, texting and apping" and "keeps you going" statements do not constitute express warranties, whether taken individually or collectively. *See Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1134 (N.D. Cal. 2013) ("[T]he combination of several 'puff'

50

statements does not automatically create an actionable misrepresentation.").  Nevertheless, to the extent that Plaintiffs' express warranty claims are premised on Google's "get up to seven hours" statement, they are not properly dismissed as inactionable puffery.

### (2)    Basis of the Bargain and Reliance

Google next contends that the Court should dismiss the express warranty claims of all Plaintiffs because they do not adequately plead reliance on Google's advertising statements. Google Mot. 6–9.  Like with Huawei, the relevant question is whether Plaintiffs must show reliance on the statement or representation for it to be considered part of the "basis of the bargain" under each state's express warranty law.  Cal. Com. Code § 2313(1)(a)–(b); Ind. Code Ann. § 26-1-2-313(1)(a)–(b); N.Y. U.C.C. Law § 2-313(1)(a)–(b); N.C. Gen. Stat. Ann. § 25-2-313(1)(a)–(b); Ohio Rev. Code Ann. § 1302.26(A)(1)–(2); Tex. Bus. & Com. Code Ann. § 2.313(a)(1)–(2); Wash. Rev. Code Ann. § 62A.2-313(1)(a)–(b).  That analysis plays out somewhat differently in the context of Google's advertising statements as compared with Huawei's written warranty.

In particular, authority from each of the pertinent states supports the proposition that, at a minimum, the plaintiff must plead that he was aware of the advertising statements, though some cases state that principle more explicitly than others.  *See Osborne v. Subaru of Am., Inc.*, 243 Cal. Rptr. 815, 824 (Ct. App. 1988) (California); *Royal Bus. Machs., Inc. v. Lorraine Corp.*, 633 F.2d 34, 44 & n.7 (7th Cir. 1980) (Indiana); *CBS Inc.*, 553 N.E.2d at 1001 (New York); *Harbor Point*, 697 S.E.2d at 447 (North Carolina); *Rogers v. Toni Home Permanent Co.*, 147 N.E.2d 612, 615–16 (Ohio 1958) (Ohio); *Lapray*, 135 S.W.3d at 676 (Texas); *Reece*, 953 P.2d at 123 (citing *Arrow Transp.*, 454 P.2d at 390) (Washington).  There is a logical basis for states to have different standards for written warranties and advertising warranties: "'awareness' must be shown if the plaintiff intends to argue that other types of 'representation[s]' (*e.g.*, advertising statements) form part of the express warranty; *i.e.*, where the representations are used by the plaintiff to define the scope of the warranty."  *In re MyFord*, 2015 WL 5118308, at *6 (emphasis deleted) (interpreting Washington law).

Plaintiffs challenge this conclusion only with respect to California law, arguing that

51

California does not require reliance.  Opp'n 24.[9]  Although, as described above, the California Court of Appeal's decision in *Weinstat* makes clear that a plaintiff need not plead reliance on individual representations, California law still requires the plaintiff to plead exposure to the advertising.  *See Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012) ("While this does not require that plaintiff relied on the individual advertisements, it does require that plaintiff was actually exposed to the advertising.").  Indeed, one of Plaintiffs' central authorities explains that, at the motion to dismiss stage, plaintiffs need not allege reliance but must provide "specific allegations that they were aware of the statements made in a national advertising campaign."  *In re Toyota Motor Corp.*, 754 F. Supp. 2d at 1182–83 & n.22.

Thus, the operative question is whether Plaintiffs have adequately alleged that they became aware of Google's statements by exposure to its advertising.  Plaintiffs do not clear that hurdle simply by alleging in a conclusory manner that "Plaintiffs and Class members were exposed to and relied on [Google's above-identified] statements when they decided to buy Nexus 6P Phones" and that "Google's express warranties formed part of the basis of the bargain that was reached when Plaintiffs and Class Members purchased their Phones."  CAC ¶ 228.  The Court must scrutinize each individual Plaintiff's allegations about exposure to Google's actionable promotional promises.  For convenience, the Court groups Plaintiffs by controlling state law.

### (a)      California

The three California Plaintiffs and the five out-of-state Plaintiffs who purchased from Google (Plaintiffs Martorello, Tran, Berry, Jones, and Leone) are subject to California law.  Six of these Plaintiffs—Plaintiffs Makcharoenwoodhi, Gorbatchev, Christensen, Martorello, Berry, and Jones—do not allege that they saw any advertising statements; instead, they merely allege that they purchased the Nexus 6P.  CAC ¶¶ 12–51, 70–78, 111–18.  The remaining two Plaintiffs plead facts about advertising, but those allegations still are insufficient.  Though the CAC alleges that

_____

[9] Plaintiffs decline to respond to Google's assertions with respect to the other states because, in Plaintiffs' view, "Google's legal challenges to the express warranty claims of non-California Plaintiffs contradict its position that California law controls."  Opp'n 24 (citations omitted).  But Plaintiffs misread Google's Motion to Dismiss, which advocates applying California law to those out-of-state Plaintiffs who purchased from Google and are subject to the choice-of-law provision in Google's Terms of Sale.  *See* Google Mot. 3–4, 6.

Plaintiff Tran "saw online advertisements representing that the Google Nexus 6P had a superior battery life," *id.* ¶ 52, it does not identify which advertisements he observed. That fact matters because only one of Google's statements—the "get up to seven hours" statement—is sufficiently specific and measurable at this stage to create an express warranty. As to Plaintiff Leone, the CAC alleges that he "watched the live stream of the Nexus 6P release event in San Francisco and was exposed to Google's representations regarding the Phone at that event," and so he understood that "superior battery life" was a major selling point for the Nexus 6P. *Id.* ¶ 129. But Plaintiffs do not allege that the "get up to seven hours" statement was made at the launch event; that statement appeared on Google's website. Accordingly, the Court GRANTS Google's Motion to Dismiss the express warranty claims of Plaintiffs Makcharoenwoodhi, Gorbatchev, Christensen, Martorello, Tran, Berry, Jones, and Leone with leave to amend to allege which advertisements they saw.

### (b)     Indiana

Indiana Plaintiff Beheler's express warranty claim must also be dismissed on this ground. The CAC states that "[t]he Nexus 6P's purportedly long battery life factored heavily into [Plaintiff] Beheler's decision to purchase this Phone." CAC ¶ 59. But the CAC does not present the source of Plaintiff Beheler's view that the Nexus 6P had a long battery life. More precisely, it is not alleged that Plaintiff Beheler received that information from advertising at all, let alone the advertising containing Google's "get up to seven hours" statement. Accordingly, the Court GRANTS Google's Motion to Dismiss the express warranty claim of Plaintiff Beheler with leave to amend to allege which advertisements he saw.

### (c)     New York

The CAC does not allege that New York Plaintiff Davydov saw or relied on the advertising statements identified as the basis for Plaintiffs' express warranty claims. CAC ¶¶ 79–89. Accordingly, the Court GRANTS Google's Motion to Dismiss the express warranty claim of Plaintiff Davydov with leave to amend to allege which advertisements he saw.

### (d)     North Carolina

Like with New York Plaintiff Davydov, the CAC does not allege that North Carolina Plaintiff Himes saw or relied on the advertising statements identified as the basis for Plaintiffs'

53

express warranty claims. CAC ¶¶ 99–110. The allegations with respect to the other North Carolina Plaintiff, Harrison, are more detailed but still unsatisfactory. Specifically, Plaintiff Harrison's decision to purchase a Nexus 6P was "materially influenced" by her viewing of "advertisements representing that the Nexus 6P's battery life was very good and touting the Nexus 6P as Google's top-of-the-line phone." *Id.* ¶ 91. Nonetheless, that language does not appear in the advertising containing Google's "get up to seven hours" statement. Nor does the CAC otherwise nail down what particular advertising or statements Plaintiff Harrison encountered. Accordingly, the Court GRANTS Google's Motion to Dismiss the express warranty claims of Plaintiffs Harrison and Himes with leave to amend to allege which advertisements they saw.

### (e)    Ohio

The CAC does not allege that Ohio Plaintiff Servodio saw or relied on the advertising statements identified as the basis for Plaintiffs' express warranty claims. CAC ¶¶ 119–27. Accordingly, the Court GRANTS Google's Motion to Dismiss the express warranty claim of Plaintiff Servodio with leave to amend to allege which advertisements he saw.

### (f)    Texas

Like with Ohio Plaintiff Servodio, the CAC does not allege that Texas Plaintiff Poore saw or relied on the advertising statements identified as the basis for Plaintiffs' express warranty claims. CAC ¶¶ 142–51. Accordingly, the Court GRANTS Google's Motion to Dismiss the express warranty claim of Plaintiff Poore with leave to amend to allege which advertisements he saw.

### (g)    Washington

Finally, the CAC alleges that Washington Plaintiff Johnston's decision to purchase a Nexus 6P was "materially influenced" by his viewing of "television and online advertisements" which "promoted the Phone in part on the basis of its superior battery life." CAC ¶ 153. For many of the same reasons noted above, that allegation is not enough. Because the CAC does not pinpoint which advertisements Plaintiff Johnston has seen, there is no way to tell whether they contained Google's "get up to seven hours" statement, the actionable statement Plaintiffs have identified as a basis for the express warranty claim. Accordingly, the Court GRANTS Google's

Motion to Dismiss the express warranty claim of Plaintiff Johnston with leave to amend to allege which advertisements he saw.

In sum, the Court GRANTS Google's Motion to Dismiss Plaintiffs' express warranty claims with leave to amend.

### (3) Disclaimer

In its motion to dismiss, Google appears to separately contend that Plaintiffs who purchased from Google—namely, Plaintiffs Gorbatchev, Martorello, Tran, Berry, Jones, and Leone, CAC ¶¶ 19, 38, 52, 70, 111, 130—are barred from pursuing an express warranty claim based on Google's disclaimer in its Terms of Sale. Google Mot. 5. Google's terms include a section titled "Defects; Warranties; Disclaimer of Warranties," which states in relevant part: "GOOGLE . . . EXPRESSLY DISCLAIM[S] ALL WARRANTIES AND CONDITIONS OF ANY KIND, WHETHER EXPRESS OR IMPLIED, REGARDING ANY DEVICES." To the extent that Google contends that that language overrides Google's advertising statements, Google is incorrect.

California law on limiting warranties provides that "[w]ords or conduct relevant to the creation of an express warranty and words or conduct tending to negate or limit warranty shall be construed wherever reasonable as consistent with each other; but . . . negation or limitation is inoperative to the extent that such construction is unreasonable." Cal. Com. Code § 2316(1). "Because a disclaimer . . . is inconsistent with an express warranty, words of disclaimer . . . give way to words of warranty unless some clear agreement between the parties dictates the contrary relationship." *Hauter*, 534 P.2d at 386; see also *Arroyo v. TP-Link USA Corp.*, No. 14-CV-04999-EJD, 2015 WL 5698752, at *10 (N.D. Cal. Sept. 29, 2015). In its reply, Google appears to acknowledge this line of authority: Google's sole rebuttal to Plaintiffs' position is that it "rehashes" the argument that "Google's sales statements created a warranty." Google Reply 3. Because the Court has already determined that Google's "get up to seven hours" statement is sufficiently specific and measurable at this stage of the proceedings to create an express warranty, these Plaintiffs may rely on that statement to support their express warranty claim.

### (4) Privity

Google next makes a species of privity argument in favor of dismissing the express warranty claims of all Plaintiffs who did not purchase from Google. Google Mot. 5, 8–9. In particular, Google suggests that it is not covered by the state statutory language requiring an affirmation or promise "made by the seller to the buyer." Cal. Com. Code § 2313(1)(a); Ind. Code Ann. § 26-1-2-313(1)(a); N.Y. U.C.C. Law § 2-313(1)(a); N.C. Gen. Stat. Ann. § 25-2-313(1)(a); Tex. Bus. & Com. Code Ann. § 2.313(a)(1); Wash. Rev. Code Ann. § 62A.2-313(1)(a). Because Google develops this argument only with respect to California and Indiana law, *see* Google Mot. 5, 9; Google Reply 4, the Court performs the analysis under these state laws.

### (a) California

As a general matter, California law requires privity of contract in an action for breach of express warranty. *Burr v. Sherwin Williams Co.*, 268 P.2d 1041, 1048 (Cal. 1954); *Blanco v. Baxter Healthcare Corp.*, 70 Cal. Rptr. 3d 566, 582 (Ct. App. 2008) (stating that privity of contract is the "general rule" (citation omitted)). And such privity is lacking "between the original seller and a subsequent purchaser who is in no way a party to the original sale." *Burr*, 268 P.2d at 1048. Nevertheless, there are exceptions to the general rule, including "where representations are made by means of labels or advertisements." *Id.* at 1049. The California courts appear to fit many cases within this exception, going so far as to say that "[p]rivity is not required for an action based upon an express warranty." *Hauter*, 534 P.2d at 383 n.8 (citing *Seely v. White Motor Co.*, 403 P.2d 145, 148 (Cal. 1965)); *Cardinal Health 301, Inc. v. Tyco Elecs. Corp.*, 87 Cal. Rptr. 3d 5, 27 (Ct. App. 2008) ("Privity is generally not required for liability on an express warranty because it is deemed fair to impose responsibility on one who makes affirmative claims as to the merits of the product, upon which the remote consumer presumably relies.").

In light of these strong statements in the case law, the Court concludes that Plaintiffs' allegations are sufficient to invoke the privity exception with respect to Google. The CAC alleges that Google and Huawei worked together to create the Nexus 6P and that Google developed the software. CAC ¶ 165. Moreover, Google released the phone for pre-order and sold the phone through its own Google Store. *Id.* ¶¶ 166, 193. Finally, Google made claims about the phone at

the launch event, *id.* ¶ 169, and made specific statements about the phone in advertising on its website, *id.* ¶ 227. It is of no moment that the examples cited in *Burr* all involved statements by a manufacturer in labels or advertising material. 268 P.2d at 1049. The justification for the exception does not appear to turn solely on the status of the warrantor. Instead, "it is deemed fair to impose responsibility on one who makes affirmative claims as to the merits of the product, upon which the remote consumer presumably relies." *Cardinal Health 301*, 87 Cal. Rptr. 3d at 27. Given Google's significant role in the development of the Nexus 6P and its disseminated promises about the phone, the Court sees no convincing reason to absolve Google of all liability for express warranties to non-purchasers. Accordingly, this is not an appropriate basis on which to dismiss Plaintiffs' express warranty claims.

### (b)      Indiana

Although the default rule under Indiana law appears to be that "vertical privity is required for claims of breach of express warranty," *Atkinson v. P & G-Clairol, Inc.*, 813 F. Supp. 2d 1021, 1026 (N.D. Ind. 2011), that rule is not absolute. In *Prairie Production, Inc. v. Agchem Division-Pennwalt Corp.*, 514 N.E.2d 1299, 1302 (Ind. Ct. App. 1987), the Indiana Court of Appeals held that, on the facts of the case, the plaintiff was not precluded from suing the defendant for breach of express warranty even though the parties were not in privity. In particular, the court permitted the plaintiff to sue the remote manufacturer where the manufacturer had made affirmations about the products in advertising. *Id.* at 1303. The court explained that discarding the privity requirement was justified in these circumstances because "manufacturers commonly extoll the merits and quality of their products in . . . media directed to each purchaser in the chain of distribution" and their affirmations "may effectively induce the purchase, and are even intended to have that effect." *Id.* at 1302–03. More recently, the Indiana Supreme Court relatedly ruled that vertical privity is not a necessary condition for a consumer to bring an implied warranty of merchantability claim against a manufacturer. *See Hyundai Motor Am., Inc. v. Goodin*, 822 N.E.2d 947, 959 (Ind. 2005).

Under these precedents, the Court concludes that Indiana Plaintiff Beheler's implied warranty claim is not barred by failure to adequately plead privity. Like the manufacturer in *Prairie Production*, Google here made affirmations about the Nexus 6P in advertising. The Court

57

has already determined that one of those statements was a specific and measurable promise. Even if the CAC does not sufficiently plead that Google is a manufacturer, the rationale of *Prairie Production* extends to this case. The CAC establishes that Google had significant involvement in the development of the Nexus 6P and advertised the virtues of the phone on its website in statements directed to consumers to induce them to buy the product. CAC ¶¶ 165–66, 169, 193, 227. On these facts, it is proper to discard the privity requirement. Accordingly, this is not an appropriate basis on which to dismiss Plaintiff Beheler's express warranty claim.

### (5)    Notice and Opportunity to Cure

Google's offhand reference to notice in its motion to dismiss does not sufficiently raise the issue for resolution. The sole mention of "notice" is in a statement that "the [California] Plaintiffs do not allege reliance or pre-suit notice, as the law requires." Google Mot. 5. Google's reply is equally unilluminating, stating that the letters of certain Plaintiffs were insufficient to put Google on notice. Google Reply 5. In these filings, Google nowhere indicates what law should apply, provides the relevant contours of the legal landscape, or clearly states which Plaintiffs are affected. Given the potential variances among the states and Plaintiffs (as indicated by the analysis with respect to Huawei), the Court declines to consider Google's bare assertion that notice provides another basis on which to dismiss Plaintiffs' express warranty claims.

### ii.    Breach of Implied Warranty of Merchantability

Plaintiffs' second cause of action is for breach of the implied warranty of merchantability on behalf of a putative nationwide class under an unspecified law or, alternatively, on behalf of the putative statewide subclasses under the laws of the respective states. CAC ¶¶ 235–36. Plaintiffs' cause of action alleges that Google "impliedly warranted that the Phones were of a merchantable quality" but failed to live up to that guarantee because the Nexus 6Ps "were not in merchantable condition and are not fit for the ordinary purpose for which phones are used." *Id.* ¶ 239. Google's arguments are split between Plaintiffs who purchased from Google and Plaintiffs who did not. For the former group, Google contends that these Plaintiffs are barred by the explicit disclaimer of the implied warranty of merchantability in its Terms of Sale. Google Mot. 5. For the latter, Google contends that these Plaintiffs have failed to adequately plead privity. *Id.* at 11–13.

### (1)      Disclaimer and Unconscionability

Google first contends that the implied warranty claims of Plaintiffs Gorbatchev, Martorello, Tran, Berry, Jones, and Leone—who purchased their Nexus 6Ps from Google, CAC ¶¶ 19, 38, 52, 70, 111, 130—are barred by Google's disclaimer in its Terms of Sale.  Google Mot. 5.  In relevant part, Google's terms state: "GOOGLE . . . EXPRESSLY DISCLAIM[S] ALL WARRANTIES AND CONDITIONS OF ANY KIND, WHETHER EXPRESS OR IMPLIED, REGARDING ANY DEVICES, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY."  Plaintiffs argue that there is no evidence about whether Plaintiffs had actual or constructive notice of Google's disclaimer and that, even if they did, the CAC adequately pleads that Google's disclaimer is unconscionable.  Opp'n 27–29.  Neither argument is persuasive.

First, Plaintiffs suggest that Google has not carried its burden of establishing that the affirmative defense of disclaimer applies.  *Id.* at 27–28.  But Google's submission of its Terms of Sale demonstrates a valid disclaimer, and Plaintiffs have not identified any allegation in the CAC that undercuts its application to this set of Plaintiffs.  Under California law, a written disclaimer of the implied warranty of merchantability must mention merchantability and be conspicuous.  Cal. Com. Code § 2316(2).  Here, Google's Terms of Sale disclaimed the implied warranty of merchantability in accordance with California law because, under the bold heading "Defects; Warranties; Disclaimer of Warranties," the Terms provide in clear language and capitalized formatting that Google "expressly disclaim[s] all warranties and conditions of any kind, whether express or implied, regarding any devices, including any implied warranty of merchantability."  The disclaimer is in all capital letters while the surrounding text is in lower case font of the same size, and the disclaimer is one of only two places in the entirety of the Terms of Sale that uses capitalized lettering.  In these circumstances, the Court concludes that the disclaimer is conspicuous.  *See* Cal. Com. Code § 1201(10) (defining "conspicuous" as covering "[a] heading . . . in contrasting type, font, or color to the surrounding text of the same or lesser size" and "[l]anguage in the body of a record or display . . . in contrasting type, font, or color to the surrounding text of the same size, or set off from surrounding text of the same size by symbols or other marks that call attention to the language").  Courts in this district have found that very

similar disclaimers barred implied warranty claims. *See Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 819 (N.D. Cal. 2014) (barring an implied warranty claim based on Apple's disclaimer of "ALL STATUTORY AND IMPLIED WARRANTIES, INCLUDING WITHOUT LIMITATION, WARRANTIES OF MERCHANTABILITY"); *In re Google Phone Litig.*, No. 10-CV-01177-EJD, 2012 WL 3155571, at *8 (N.D. Cal. Aug. 2, 2012) (barring an implied warranty claim based on Google's disclaimer of "ALL WARRANTIES AND CONDITIONS OF ANY KIND, WHETHER EXPRESS OR IMPLIED, REGARDING ANY DEVICES, INCLUDING ANY IMPLIED WARRANTIES OF MERCHANTABILITY").

Plaintiffs attempt to overcome this conclusion by challenging whether Plaintiffs had actual or constructive knowledge of Google's disclaimer. Opp'n 27. Plaintiffs point out that a disclaimer is valid only if "the buyer has knowledge or is chargeable with notice of the disclaimer before the bargain is complete." *Burr*, 268 P.2d at 1047. The problem is that Plaintiffs' position conflicts with the CAC's allegations and the law. The CAC acknowledges the existence of Google's disclaimer and the manner in which it is presented. CAC ¶¶ 245 ("Fairness therefore requires invalidating the disclaimer of the implied warranty of merchantability in Google's form document."), 261 (alleging that "[a]ny disclaimer of implied warranties by Google was unconscionable"). In this way, Plaintiffs' allegations are consistent with Google's submitted evidence, which provides that customers had to click a button to complete their online purchases and that, next to the button, there was language advising that customer that clicking indicated acceptance of Google's Terms of Sale. Gotuaco Decl. ¶ 3. Plaintiffs do not otherwise allege that they did not see or understand the disclaimer. Thus, this case is unlike the one cited by Plaintiffs where the allegations established that the plaintiff did not have a reasonable opportunity to view the disclaimer prior to purchase. *See Clark v. LG Elecs. U.S.A., Inc.*, No. 13-CV-00485-JM, 2013 WL 5816410, at *13 (S.D. Cal. Oct. 29, 2013) ("Based on Plaintiff's allegations, there would have been no way for Plaintiff to have noticed the disclaimer prior to receiving the product manual when the refrigerator was delivered.").

Second, Plaintiffs contend that, even if the disclaimer is binding, the CAC adequately pleads that the disclaimer is unconscionable. As explained earlier, under California law, a contract

provision is "unconscionable, and therefore unenforceable, only if it is *both* procedurally and substantively unconscionable." *In re iPhone*, 2011 WL 4403963, at *7 (citing *Armendariz*, 6 P.3d at 690). The procedural element focuses on oppression and surprise, while the substantive element examines whether the terms of the agreement are so overly harsh or one-sided as to shock the conscience. *Aron*, 49 Cal. Rptr. 3d at 564.

Plaintiffs' procedural unconscionability argument is, at best, weak. They contend that the disclaimer is unconscionable because Google and its customers are in an unequal bargaining position and because Google had "exclusive knowledge of the Defects and true quality of the Phones." CAC ¶ 261. On the latter point, the Court has already concluded that Plaintiffs' allegations are insufficient. That conclusion significantly weakens the former point that Google had superior bargaining power. *See In re Sony Grand Wega*, 758 F. Supp. 2d at 1101 (rejecting argument that defendant had superior bargaining power where plaintiffs had not sufficiently alleged that the defendant knew of the defect before the point of sale). Even if the terms of the disclaimer are non-negotiable, Plaintiffs do not plead that they had no meaningful alternatives; they could have purchased other phones or obtained an additional warranty from Google. *Davidson*, 2017 WL 976048, at *12. Moreover, the CAC does not allege that Plaintiffs were "surprised" by the disclaimer's terms or that they could not or did not access Google's Terms of Sale online at the time of purchase. *See id.*

Plaintiffs make no further allegations to support their claim of substantive unconscionability. Plaintiffs repeat and reemphasize that Google knew of and concealed the defects at the time that it sold the Nexus 6Ps. Opp'n 28–29; CAC ¶ 245 ("Google knowingly sold a defective product without disclosing the Defects, while affirmatively misrepresenting purported attributes of the product that were important to consumer purchasers."). Again, Plaintiffs' allegations are insufficient to establish that conclusion. In their opposition, Plaintiffs also slightly change course from their complaint, asserting that a disclaimer may be substantively unconscionable any time a product is unfit for its intended use. Opp'n 29 (citing the statement in *Clark*, 2013 WL 5816410, at *13, that the "inability to use the LG refrigerator for its intended purpose suggests that substantive unconscionability may exist"). That reading of the law seems

somewhat odd, as it works to invalidate a disclaimer of the implied warranty whenever the underlying implied warranty claim appears viable. In any event, Plaintiffs' allegations are insufficient to show that Google's disclaimer "create[s] overly harsh or one-sided results as to shock the conscience," and thus Plaintiffs have not established substantive unconscionability. *Aron*, 49 Cal. Rptr. 3d at 564 (internal quotation marks and citation omitted).

Based on the allegations in the CAC, Google's disclaimer is not unconscionable, and the disclaimer is enforceable. Accordingly, Plaintiffs have not stated a claim for breach of the implied warranty of merchantability for express warranty for Plaintiffs Gorbatchev, Martorello, Tran, Berry, Jones, and Leone. The Court GRANTS Google's Motion to Dismiss the implied warranty claim of Plaintiffs Gorbatchev, Martorello, Tran, Berry, Jones, and Leone with leave to amend to allege further facts in support of Plaintiffs' lack of notice and unconscionability arguments.

### (2) Privity

For the remaining Plaintiffs who did not purchase from Google—namely, Plaintiffs Makcharoenwoodhi, Christensen, Beheler, Davydov, Harrison, Himes, Servodio, Poore, and Johnston, CAC ¶¶ 12, 28, 58, 79, 91, 99, 119, 142, 153—Google argues that their claims must be dismissed for failure to plead privity. Google Mot. 11–13. Even for the states that do not require a strict showing of privity, Google draws on the common-sense notion that, because an implied warranty of merchantability is "implied in a contract for the[] sale [of goods] if the seller is a merchant with respect to goods of that kind," UCC § 2-314(1), a defendant cannot be liable unless it has sold the goods in question. Google Mot. 11. Plaintiffs' central response is that Plaintiffs' claims may be sustained under the third-party beneficiary exception to the privity requirement. Opp'n 31–33.

Most of the relevant states require privity of contract to state a claim for breach of the implied warranty of merchantability. *See, e.g.*, *Clemens*, 534 F.3d at 1024; *Curl v. Volkswagen of Am., Inc.*, 871 N.E.2d 1141, 1147 (Ohio 2007); *Tex Enters., Inc. v. Brockway Standard, Inc.*, 66 P.3d 625, 630 (Wash. 2003). And Google is correct that Plaintiffs' blanket assertion that "Plaintiffs and Class members were in privity of contract with . . . Google by virtue of their interactions with . . . Google," CAC ¶ 242, is not plausible when some of the relevant Plaintiffs are

not alleged to have had any interactions with Google.  *See, e.g.*, *id.* ¶¶ 12–18 (alleging that Plaintiff Makcharoenwoodhi contacted Huawei but not Google), 90–98 (alleging that Plaintiff Harrison contacted Huawei but not Google).

Even for the states that have abandoned the privity requirement for implied warranty claims, *see, e.g.*, *Pack*, 434 F.3d at 820 (Michigan); *Goodin*, 822 N.E.2d at 959 (Indiana), Google notes that the defendants in those cases had sold the products at some point in the distribution chain, *see, e.g.*, *Gared Holdings, LLC v. Best Bolt Prod., Inc.*, 991 N.E.2d 1005, 1016 (Ind. Ct. App. 2013) (emphasizing that the defendant had made multiple sales and was willing to sell to prospective buyers).  The requirement that the defendant has sold the product at issue flows naturally from the statutory language, which provides that an implied warranty of merchantability claim arises in a contract for the sale of goods by a merchant seller of those goods.  *See* UCC § 2-314(1); *see also* Ind. Code Ann. § 26-1-2-314(1) (same); Mich. Comp. Laws Ann. § 440.2314(1) (same).  The CAC does not satisfy this requirement because it nowhere provides that Google sold the Nexus 6Ps to the retailers from whom Plaintiffs purchased.  Although the CAC states that "Defendants sell the Phones . . . through authorized retailers, including Newegg and Best Buy," CAC ¶ 168, it fails to distinguish between Google and Huawei.  Indeed, without more factual detail, it would be implausible to conclude that both Google and Huawei sold the same physical phones through retailers.  *See Garcia v. M-F Athletic Co.*, No. 11-CV-02430-WBS, 2012 WL 531008, at *2 (E.D. Cal. Feb. 17, 2012) ("It seems, however, implausible if not impossible that all three defendants sold plaintiff the [product].").

Plaintiffs attempt to steer around these roadblocks by resort to the third-party beneficiary exception to the privity requirement.  CAC ¶ 242; Opp'n 31–33.  As noted above, the third-party beneficiary exception allows a plaintiff to enforce a contract made expressly for his or her benefit.  *See* Cal. Civ. Code § 1559.  Nevertheless, the plaintiff must identify and plead a contract between the defendant and a third party which was expressly made for the benefit of the plaintiff.  *See Schauer*, 23 Cal. Rptr. 3d at 239; *Cartwright v. Viking Indus., Inc.*, 249 F.R.D. 351, 356 (E.D. Cal. 2008).  Plaintiffs have failed to do so here.

Plaintiffs identify no agreement that Google has entered into for Plaintiffs' benefit.

63

Specifically, Plaintiffs plead that they "are the intended third-party beneficiaries of the implied warranties and other contracts between Defendants and the retailers who sell the Phones." CAC ¶ 242. Even shelving the ever-persisting issue of lumping Google with Huawei, Plaintiffs do not plead that Google had contracts to sell the Nexus 6P to retailers, such as Best Buy, Newegg, and Amazon. The sole agreement that Plaintiffs identify is Huawei's Limited Warranty. Opp'n 33. But Plaintiffs cannot use that warranty to bootstrap Google's liability without an accompanying allegation that Huawei's Limited Warranty was an agreement with Google to benefit customers. Because Plaintiffs have not done so, they have not pleaded sufficient facts to make use of the third-party beneficiary exception.

Accordingly, the Court GRANTS Google's Motion to dismiss the implied warranty of merchantability claims of Plaintiffs Makcharoenwoodhi, Christensen, Beheler, Davydov, Harrison, Himes, Servodio, Poore, and Johnston with leave to amend to allege further facts about a privity relationship or an agreement between Google and a third-party that is intended for the benefit of these Plaintiffs.

### iii. Song–Beverly Consumer Warranty Act

The California Plaintiffs assert a cause of action under the Song–Beverly Act, Cal. Civ. Code §§ 1791.1, 1792, on behalf of the California subclass. CAC ¶¶ 284–96. As to individual Plaintiffs, Google asserts that Plaintiffs Makcharoenwoodhi and Christensen's claims should be dismissed because they did not purchase their phones from Google and that Plaintiff Gorbatchev's claim should be dismissed because he has not plausibly alleged unmerchantability. Google Mot. 13. Google also puts forward a basis on which the claim should be dismissed that applies to all three California Plaintiffs—namely, that Plaintiffs do not allege that they purchased their phones in California. *Id.* The Court marches through each of these three arguments.

### (1) Manufacturer or Retail Seller

Google first contends that Plaintiffs Makcharoenwoodhi and Christensen's claims fail because they did not purchase from Google. The Song–Beverly Act generates an implied warranty of merchantability by manufacturers and retail sellers. Cal. Civ. Code § 1792. Google argues that the CAC does not establish that Google counts as either a manufacturer or retail seller

64

of the Nexus 6P as to Plaintiffs Makcharoenwoodhi and Christensen.  Google Mot. 13–14.

Based on the CAC's present allegations, Google is neither a "manufacturer" nor a "retail seller" with respect to Plaintiffs Makcharoenwoodhi and Christensen.  A "manufacturer" is "any individual, partnership, corporation, association, or other legal relationship that manufactures, assembles, or produces consumer goods."  Cal. Civ. Code § 1791(j).  At multiple places in the CAC (including the section asserting the Song–Beverly Act claim), the CAC labels Huawei as the "manufacturer" of the Nexus 6P.  *See* CAC ¶¶ 165 (stating that "Huawei manufactured the device"), 288 ("Huawei is a 'manufacturer' of the Nexus 6P smartphones within the meaning of Cal. Civ. Code § 1791(j).").  The CAC does not make any such allegations as to Google and does not otherwise state that Google "manufactures, assembles, or produces" the Nexus 6P.  Plaintiffs cannot shoehorn Google into the "manufacturer" definition merely by pointing out that Google and Huawei "collaborat[ed]" to create the Nexus 6P, especially when the allegation explicitly singles out Huawei as the entity that "manufactured" the phone.  *Id.* ¶ 165.

Nor does the CAC provide that Google is a "retail seller" as to Plaintiffs Makcharoenwoodhi and Christensen.  A "retail seller" is "any individual, partnership, corporation, association, or other legal relationship that engages in the business of selling or leasing consumer goods to retail buyers."  Cal. Civ. Code § 1791(*l*).  The California courts have interpreted "retail" as "to sell in small quantities directly to the ultimate consumer."  *Dagher v. Ford Motor Co.*, 190 Cal. Rptr. 3d 261, 269 (Ct. App. 2015) (citation omitted).  Although Google and Huawei both generally "market and distribute the Phones" and specifically "sell the Phones to consumers directly as well as through authorized retailers," CAC ¶¶ 165, 168, Google did not sell the Nexus 6P to the end consumers at issue here.  Rather, Plaintiff Makcharoenwoodhi bought from Best Buy, and Plaintiff Christensen bought from Huawei.  *Id.* ¶¶ 12, 28.  Plaintiffs make no other arguments for why Google falls under the definition of "retail seller."

Accordingly, the Court GRANTS Google's Motion to Dismiss the Song–Beverly Act claims of Plaintiffs Makcharoenwoodhi and Christensen with leave to amend to allege further facts about whether Google qualifies as a "manufacturer" or "retail seller."

65

### (2)    Merchantability

Google next challenges the sufficiency of the allegations as to the unmerchantability of Plaintiff Gorbatchev's Nexus 6P.  Google Mot. 14.  The implied warranty of merchantability guarantees that the goods meet "a minimum level of quality."  *Am. Suzuki*, 44 Cal. Rptr. 2d at 529 (citation omitted).  The key inquiry is whether the goods are "fit[] for the ordinary purpose for which such goods are used."  *Mexia*, 95 Cal. Rptr. 3d at 289 (citation omitted).  Under that test, an alleged defect must constitute more than an inconvenience; the defect must be "so fundamental as to render the product unfit for its ordinary purpose."  *In re Carrier IQ*, 78 F. Supp. 3d at 1108; *see also Mocek v. Alfa Leisure, Inc.*, 7 Cal. Rptr. 3d 546, 549 (Ct. App. 2003) ("[A] breach of the implied warranty of merchantability means the product did not possess even the most basic degree of fitness for ordinary use.").

The allegations with respect to Plaintiff Gorbatchev's Nexus 6P meet these requirements.  The CAC first alleges that "[d]uring his first few months of owning the Phone, [Plaintiff] Gorbatchev regularly experienced incidents in which it would suddenly shut down and restart without warning, sometimes on a daily basis."  CAC ¶ 20.  The CAC then goes on to say that, on March 17, 2017, Plaintiff Gorbatchev's phone exhibited the Bootloop Defect.  While Plaintiff Gorbatchev was trying to call an Uber, his phone froze and restarted, then cycled through this process for the rest of the day without ever proceeding beyond the Google logo screen.  *Id.* ¶ 21.  As the CAC explains, Plaintiff "Gorbatchev's Phone never proceeded past the Google logo screen again."  *Id.* ¶ 24.  These circumstances clearly demonstrate that Plaintiff Gorbatchev's Nexus 6P was unfit for ordinary use.  After the Bootloop Defect manifested, Plaintiff Gorbatchev could not use any of the basic functions of his phone, such as placing calls, sending texts, or using apps.  *Id.* ¶ 175.  Accordingly, failure to plead unmerchantability is not an appropriate basis on which to dismiss the express warranty claim of Plaintiff Gorbatchev.

### (3)    Location of Purchases

As discussed above with respect to Huawei, the California Plaintiffs' Song–Beverly Act claim must be dismissed because Plaintiffs have failed to allege the necessary element of whether the phone purchases took place in California.  Accordingly, the Court GRANTS Google's Motion

United States District Court
Northern District of California

1  to Dismiss the Song–Beverly Act claim with leave to amend to assert where the phone purchases

2  took place.

3                     **iv.**        **Magnuson–Moss Warranty Act**

4         Plaintiffs' third cause of action alleges violations of the Magnuson–Moss Warranty Act, 15

5  U.S.C. § 2301 *et seq.*, presumably on behalf of the nationwide class.  CAC ¶¶ 249–67.  With one

6  caveat, the parties agree that, in this case, "the claims under the Magnuson–Moss Act stand or fall

7  with [the] express and implied warranty claims under state law."  *Clemens*, 534 F.3d at 1022.  As

8  for the caveat, Plaintiffs contend that where a state-law breach of implied warranty claim

9  insufficiently alleges privity, an implied warranty claim under the Magnuson–Moss Warranty Act

10  may proceed if there is an express warranty.  Opp'n 35.  However, Plaintiffs' cited authority is

11  inapplicable because Plaintiffs have not alleged that Google issued a written warranty that

12  complies with the requirements of the Magnuson–Moss Warranty Act.  *See Szajna v. Gen. Motors*

13  *Corp.*, 503 N.E.2d 760, 769 (Ill. 1986) ("In cases where no Magnuson–Moss written warranty has

14  been given, Magnuson–Moss has no effect upon State-law privity requirements . . . .").  Therefore,

15  in this case, Plaintiffs' claims under the Magnuson–Moss Warranty Act survive only if the

16  underlying state-law express or implied warranty claims do.

17         The Court has dismissed all of the express and implied warranty claims against Google.

18  Accordingly, the Court GRANTS Google's Motion to Dismiss the Magnuson–Moss Warranty Act

19  claims of all Plaintiffs with leave to amend.

20                **c.**      **Fraud and Deceptive Practices Claims**

21         Plaintiffs assert a common-law claim for deceit and fraudulent concealment and fraud

22  claims under various state statutes.  The Court first addresses the common-law claim, then

23  analyzes each of the remaining state statutory claims.

24                   **i.**        **Deceit and Fraudulent Concealment**

25         Plaintiffs assert a cause of action for deceit and fraudulent concealment on behalf of each

26  of the twelve statewide subclasses.  CAC ¶ 269.  As reflected both in the CAC and Plaintiffs'

27  opposition, every state-law claim is premised on the allegation that Google "concealed and

28  suppressed material facts" regarding the Nexus 6P because Google "knew (or in the exercise of

reasonable diligence should have known) of the Defects, but failed to disclose them prior to or at the time [it] marketed Phones and sold them to consumers." *Id.* ¶ 270; Opp'n 50. For the reasons already stated, the CAC does not sufficiently plead that Google had knowledge of the Bootloop or Battery Drain Defect at the time that Plaintiffs acquired their Nexus 6Ps. Accordingly, the Court GRANTS Google's Motion to Dismiss the deceit and fraudulent concealment claims with leave to amend to allege further facts in support of Google's knowledge.

### ii.      California Consumers Legal Remedies Act

The California Plaintiffs bring a claim under the CLRA, Cal. Civ. Code § 1780, on behalf of the California subclass. CAC ¶ 310. Google seeks dismissal on a procedural ground—namely, the failure to submit the affidavit under § 1780(d)—and on substantive grounds—namely, failure to state a claim. Google Mot. 15–18. The Court addresses these grounds in turn.

### (1)      Procedural Ground

Courts must dismiss without prejudice CLRA claims that are unaccompanied by "an affidavit stating facts showing that the action has been commenced in a county described in this section as a proper place for the trial of the action." Cal. Civ. Code § 1780(d). As noted above, this Court requires the submission of such an affidavit. *See Romero*, 2015 WL 2125004, at *8. Because Plaintiffs concede that no CLRA affidavit has been filed, Opp'n 50, the Court GRANTS Google's Motion to Dismiss Plaintiffs' CLRA claim with leave to file the necessary CLRA affidavit.

### (2)      Substantive Grounds

The CLRA proscribes "unfair methods of competition and unfair or deceptive acts or practices undertaken by any person in a transaction intended to result or that results in the sale . . . of goods or services to any consumer." Cal. Civ. Code § 1770(a). The CAC advances two distinct theories for Google's liability under that section. First, the CAC charges that Google committed fraud by omission because it had a duty to disclose its knowledge of the defects. CAC ¶¶ 318–19. Second, the CAC avows that Google affirmatively misrepresented the qualities of the Nexus 6P despite knowing of the defects. *Id.* ¶¶ 321–22. Both theories depend on Google's awareness of the defects at the time of sale, which Plaintiffs have not adequately pled.

68

Accordingly, the Court GRANTS Google's Motion to Dismiss Plaintiffs' CLRA with leave to amend to allege further facts about Google's knowledge of the defects.

The Court also briefly addresses Google's other arguments that neither the fraudulent omissions theory nor the affirmative misrepresentation theory is well-pled. Google Mot. 16–17.

### (a) Fraudulent Omissions

Plaintiffs' fraudulent omissions theory avers that "Defendants had a duty to disclose the Defects because Huawei and Google had exclusive knowledge of the Defects prior to making sales of Phones and because Defendants made partial representations about the quality of the Phones, but failed to fully disclose the Defects." CAC ¶ 319. As the Court noted earlier, "[t]o state a claim for failing to disclose a defect, a party must allege . . . the existence of an unreasonable safety hazard." *Williams*, 851 F.3d at 1025. Plaintiffs do not offer unreasonable-safety-hazard allegations specific to Google that go beyond those alleged as to Huawei. For the same reasons stated with respect to Huawei, Plaintiffs' allegations are insufficient as to Google. Accordingly, the Court GRANTS Google's Motion to Dismiss Plaintiffs' CLRA claim to the extent it is predicated on a fraudulent omissions theory with leave to amend to allege whether the defects pose an unreasonable safety hazard.

### (b) Affirmative Misrepresentation

Plaintiffs' affirmative misrepresentation theory avers that Google made false statements about the Nexus 6P even though Google was aware that the phones were suffering from the Bootloop and Battery Drain Defects. CAC ¶ 322. Plaintiffs point to the same three statements that the Court analyzed above for Plaintiffs' express warranty claims—namely, the "get up to seven hours" statement, the "keeps you talking, texting and apping" statement, and the "keeps you going" statement. *Id.* ¶ 321. Although Google asserts that these three statements are not actionable, Google Mot. 16, the standard under the CLRA is identical to the standard for an express warranty. *See Azoulai*, 2017 WL 1354781, at *8 (analyzing CLRA and express warranty claims together). Thus, the Court's determination that the "get up to seven hours" statement is adequately specific and measurable holds here.

Google's meatier—and ultimately meritorious—challenge is that Plaintiffs fail to

69

sufficiently allege that they relied on Google's misrepresentation. Under the CLRA, a plaintiff must allege that he relied on the defendant's alleged misrepresentations and that he suffered injury as a result. *See Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 794 (9th Cir. 2012) ("[C]onsumers seeking to recover damages under the CLRA based on a fraud theory must prove 'actual reliance on the misrepresentation and harm.'" (citation omitted)); *Durell v. Sharp Healthcare*, 108 Cal. Rptr. 3d 682, 697 (Ct. App. 2010) (concluding that complaint was properly dismissed where plaintiff did not allege that he "relied on any representation by" the defendant). Furthermore, when CLRA claims are premised on misleading advertising statements, the pleading standard in Federal Rule of Civil Procedure 9(b) governs and requires the plaintiff to allege "the particular circumstances surrounding [the] representations." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1126 (9th Cir. 2009). In other words, the plaintiff must "specify which statements the plaintiff actually saw and relied upon." *In re Arris Cable Modem Consumer Litig.*, No. 17-CV-01834-LHK, 2018 WL 288085, at *8 (N.D. Cal. Jan. 4, 2018).

Plaintiffs do not come close to fulfilling that high burden here. The CAC does not allege that any of the California Plaintiffs saw any advertising about the Nexus 6P at all, let alone that they saw and relied upon Google's "get up to seven hours" statement. CAC ¶¶ 12–37. Generally, Rule 9(b) requires that a plaintiff plead "an account of the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (internal quotation marks and citation omitted); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." (citation omitted)). Plaintiffs must provide that level of detail. Accordingly, the Court GRANTS Google's Motion to Dismiss Plaintiffs' CLRA claim to the extent it is predicated on an affirmative misrepresentation theory with leave to amend to allege which of Google's statements Plaintiffs actually saw and relied upon.

### iii. California Unfair Competition & False Advertising Laws

The California Plaintiffs assert claims under the UCL, Cal. Bus. & Prof. Code § 17200 *et seq.*, and under the FAL, Cal. Bus. & Prof. Code § 17500 *et seq.*, on behalf of the California

subclass.  CAC ¶¶ 298, 333.  Google first contends that Plaintiffs cannot sustain either the UCL or FAL claim because they have not shown entitlement to equitable relief.  Google Mot. 20–21.  Google then makes arguments specific to the UCL and FAL claims.  *Id.* at 21–24.  The Court first examines Google's contention that applies to both the UCL and FAL claims, then considers the arguments about each individual claim.

### (1)  Entitlement to Equitable Relief

The only forms of relief that a private individual may pursue under the UCL and FAL are the equitable remedies of restitution and injunctive relief.  *Korea Supply Co.*, 63 P.3d at 943 (UCL); *Chern v. Bank of Am.*, 544 P.2d 1310, 1315 (Cal. 1976) (FAL).  Google presses three arguments that Plaintiffs have not adequately pled entitlement to these equitable remedies.  First, Google argues that none of the California Plaintiffs has standing to seek injunctive relief.  Google Mot. 21.  Second, Google argues that Plaintiffs Makcharoenwoodhi and Christensen have not adequately pled entitlement to restitution.  *Id.*  Third, Google argues that Plaintiffs have not shown that there is no adequate remedy at law available.  *Id.* at 20.  The Court proceeds through each of these arguments.

### (a)  Standing to Seek Injunctive Relief

Google challenges the California Plaintiffs' Article III standing to seek injunctive relief.  Google Mot. 21.  After briefing on Google's Motion to Dismiss was complete, the Ninth Circuit issued a decision bearing on the question.  In *Davidson v. Kimberly-Clark Corp.*, 873 F.3d 1103, 1107 (9th Cir. 2017), the defendants marketed and sold pre-moistened wipes as suitable for flushing down a toilet, but the plaintiff discovered that the products were not truly "flushable."  The plaintiff brought UCL and FAL claims, which sought both restitution and an injunction.  *Id.* at 1108.  The district court dismissed the claims for injunctive relief, finding that the plaintiff lacked standing because she was unlikely to purchase the wipes in the future.  *Id.* at 1109.

The Ninth Circuit reversed.  The court resolved the open question whether a "previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief."  *Id.* at 1113.  Specifically, the court held that consumers can have standing to pursue

injunctive relief in at least two circumstances:

> In some cases, the threat of future harm may be the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved.

*Id.* at 1115. Under those standards, the court deemed sufficient the plaintiff's allegations that she wanted to purchase the defendants' flushable wipes in the future but that she could not rely on the defendants' representation with any confidence. *Id.* at 1116.

Without the benefit of the Ninth Circuit's guidance in *Davidson*, it will come as no surprise that Plaintiffs' allegations are deficient. The CAC does not fit either of the two scenarios countenanced by the Ninth Circuit because there is no pleading that the California Plaintiffs would like to purchase in the future but cannot trust Google's advertising or that the California Plaintiffs might purchase in the future on the belief that the product has been improved. *See* CAC ¶¶ 12–37, 297–308, 332–39. Plaintiffs' opposition even concedes that their allegations are lacking on the latter point. Opp'n 49. Because *Davidson* was unavailable at the time that Plaintiffs were drafting their CAC and writing their opposition, they also have not presented any other theory about how they "suffer[ed] an 'actual and imminent, not conjectural or hypothetical' threat of future harm." 873 F.3d at 1115 (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). In their amended allegations, Plaintiffs will have the opportunity to make that showing.

Accordingly, the Court GRANTS Google's Motion to Dismiss the California Plaintiffs' claims for injunctive relief with leave to amend to allege further facts about Plaintiffs' non-speculative threat of future harm.

### (b)     Entitlement to Restitution

Google contends that Plaintiffs Makcharoenwoodhi and Christensen, who did not purchase from Google, have not adequately pled entitlement to restitution because the CAC does not allege that money or property in which they have a vested interest is in Google's possession. Google Mot. 21. "[I]n appropriate circumstances, the plaintiff in a UCL action may obtain restitution

from a defendant with whom the plaintiff did not deal directly." *Shersher v. Superior Court*, 65 Cal. Rptr. 3d 634, 640 (Ct. App. 2007); *see also Cty. of Solano v. Vallejo Redevelopment Agency*, 90 Cal. Rptr. 2d 41, 52 (Ct. App. 1999) ("For a benefit to be conferred, it is not essential that money be paid directly to the recipient by the party seeking restitution."). Nevertheless, in order to recover from a defendant from whom the plaintiff did not purchase, the plaintiff must trace his money or property to money or property within the defendant's possession. *See Shersher*, 65 Cal. Rptr. 3d at 641 (concluding that plaintiff who purchased product from defendant's retailer adequately alleged entitlement to restitution because defendant indirectly acquired plaintiff's money); *Cheverez v. Plains All Am. Pipeline, LP*, No. 15-CV-04113-PSG, 2016 WL 4771883, at *3 (C.D. Cal. Mar. 4, 2016).

These standards compel dismissal of Plaintiffs Makcharoenwoodhi and Christensen's claims for restitution. The allegations as to Plaintiff Christensen clearly fall flat. The CAC alleges that Plaintiff Christensen purchased his Nexus 6P directly from Huawei. CAC ¶ 28. The CAC makes no further effort to identify how that money came into Google's possession as a result of Plaintiff Christensen's purchase. The allegations as to Plaintiff Makcharoenwoodhi come closer but do not warrant a different conclusion. According to the CAC, Plaintiff Makcharoenwoodhi purchased his Nexus 6P from Best Buy. *Id.* ¶ 12. Google is alleged to have a connection with Best Buy, as the CAC states that "Defendants sell the Phones to consumers . . . through authorized retailers, including . . . Best Buy." *Id.* ¶ 168. While it may be plausible to infer that a plaintiff's money ends up in the defendant's possession when the plaintiff buys the defendant's product from the defendant's retailer, *see Shersher*, 65 Cal. Rptr. 3d at 641, the waters are more muddied here. In particular, by treating Google and Huawei as a single unit without otherwise identifying Google's relationship with Best Buy, the CAC obscures the relevant actor. In these circumstances, it is equally plausible that Plaintiff Makcharoenwoodhi's money is in Huawei's possession, not Google's. Thus, neither Plaintiff Makcharoenwoodhi nor Plaintiff Christensen has adequately pled entitlement to restitution.

Accordingly, the Court GRANTS Google's Motion to Dismiss Plaintiffs Makcharoenwoodhi and Christensen's claims for restitution with leave to amend to allege further

facts about how their money came into Google's possession.

### (c)     Adequate Remedy at Law

Google's final, and broadest, contention is that Plaintiffs cannot seek equitable remedies because they have available an adequate remedy at law—namely, compensatory damages for the same alleged conduct.  Google Mot. 20.  Of course, it is axiomatic that a plaintiff seeking equitable relief must establish that he has no adequate legal remedy.  *Philpott v. Superior Court*, 36 P.2d 635, 638 (Cal. 1934); *Prudential Home Mortg. Co. v. Superior Court*, 78 Cal. Rptr. 2d 566, 573 (Ct. App. 1998) (applying these fundamental equitable principles in the context of a UCL claim).  Although the California Plaintiffs' claims for equitable relief are not necessarily doomed to fail, the Court concludes that dismissal is proper at this juncture.

In addition to retrospective relief for injuries already suffered, Plaintiffs seek to "enjoin [Google] from continuing [its] unfair, unlawful, and fraudulent practices."  CAC ¶ 308.  That injunctive relief is asserted on behalf of the class and, if granted, would accrue to the benefit of the public at large.  *See id.* ¶¶ 208(h) (requesting injunctive relief for Plaintiffs and class members), 212 ("Defendants have acted or refused to act on grounds generally applicable to Plaintiffs and Class members, making final injunctive relief . . . appropriate with respect to the Class as a whole.").  In this way, the injunctive relief could provide a remedy above and beyond a legal award of damages.  *See* Cal. Bus. & Prof. Code §§ 17203 (allowing plaintiff to pursue representative claims for injunctive relief on behalf of similarly situated individuals), 17205 (noting that UCL remedies "are cumulative . . . to the remedies or penalties available under all other laws of this state").  However, a plaintiff cannot seek injunctive relief on behalf of the public unless he is individually entitled to such relief.  *See Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999) (en banc) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief."); *Rhynes v. Stryker Corp.*, No. 10-CV-05619-SC, 2011 WL 2149095, at *4 (N.D. Cal. May 31, 2011).  Because the Court has presently determined that the California Plaintiffs have not adequately pled standing to seek injunctive relief, their prayer for injunctive relief on behalf of the entire class must also fail.

Accordingly, the Court the Court GRANTS Google's Motion to Dismiss the California

Plaintiffs' UCL and FAL claims with leave to amend to allege further facts about Plaintiffs' standing to seek injunctive relief.

### (2) UCL

Having considered the arguments applicable to both the UCL and FAL claims, the Court next addresses the UCL claim. As noted above, the UCL provides three distinct grounds for liability: a business practice cannot be (1) unlawful, (2) unfair, or (3) fraudulent. *See* Cal. Bus. & Prof. Code § 17200; *Pastoria*, 6 Cal. Rptr. 3d at 153. Plaintiffs contend that Google's conduct has violated all three prongs. CAC ¶¶ 300–01, 303. Google, however, argues that the CAC does not adequately allege that its conduct was unlawful, unfair, or fraudulent. Google Mot. 21–24.

### (a) Unlawful Business Act or Practice

Plaintiffs predicate their claim under the "unlawful" prong on Google's alleged violations of the Magnuson–Moss Warranty Act, the Song–Beverly Act, the CLRA, and the FAL and on Google's breach of express and implied warranty, fraudulent concealment, and unjust enrichment. CAC ¶ 300. The UCL "borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently actionable." *Wilson*, 668 F.3d at 1140 (quoting *Cel-Tech Commc'ns*, 973 P.2d at 539–40). Because the Court concludes that the California Plaintiffs have not stated a claim against Google under any of these statutes or causes of action, they have not stated a claim against Google for violation of the UCL "unlawful" prong. Accordingly, the Court GRANTS Google's Motion to Dismiss Plaintiffs' UCL claim under the unlawful prong with leave to amend.

### (b) Unfair Business Act or Practice

The "unfair" prong of the UCL creates a cause of action that is not limited to business practices that are proscribed by some other law. *Korea Supply Co.*, 63 P.3d at 943. As noted above, courts have not coalesced around one test for measuring what is "unfair" under the UCL. *Lozano*, 504 F.3d at 735–36. Plaintiffs advocate for the *South Bay* balancing test or the FTC Act section 5 test. Opp'n 39. Google contends that Plaintiffs' claim fails under either test. Google Mot. 22; *see also* Google Reply 14 ("[N]one of the five acts [California] Plaintiffs identify as the basis for the 'unfair' claim in the CAC are 'unfair' under either the FTC Act Section 5 test or the

balancing test . . . .").

Like with Huawei, Plaintiffs' allegation that Google has engaged in a "practice of selling defective phones without providing an adequate remedy to cure the Defects," CAC ¶ 302, fails under any test. Plaintiffs point to five aspects of "Defendants" Google and Huawei's conduct: (1) knowingly sold defective phones, (2) refused to repair or replace phones when the defects manifested outside the warranty period, (3) avoided providing warranty service by blaming minor cosmetic issues, (4) had long wait periods on warranty claims, and (5) provided replacement phones that were also defective. *Id.* ¶ 301. Again, due to the melding of Google and Huawei under the heading of "Defendants," the Court must strive to unravel which actions the CAC attributes solely to Google.[10]

For the same reasons discussed with respect to Huawei, grounds (1) and (2)—alleging knowledge of the defects and unwillingness to fix out-of-warranty phones—are unsustainable. Ground (3) is even weaker with respect to Google. No California Plaintiff alleges that Google denied warranty coverage by pointing to cosmetic damage. CAC ¶¶ 12–37. Although Pennsylvania Plaintiff Leone pleads that Google rejected warranty coverage based on "screen scratches, dents in the metal frame, [and] cracked rear glass," *id.* ¶¶ 133–34, that allegation—even if relevant for a California claim under California law—does not show that Google's practice was to turn down warranty coverage on these grounds. Ground (4) is inapplicable to Google because the allegations about long wait times for warranty claims all relate to Huawei. *See id.* ¶¶ 65, 85, 122, 156. Finally, the CAC accuses Google of providing some non-California Plaintiffs with defective replacement phones. *Id.* ¶¶ 49, 75, 113–14, 136. No California Plaintiff was allegedly affected by this conduct, and Plaintiffs provide no argument that such an inference is reasonable based on the allegations. Moreover, Plaintiffs do not identify any authority holding that a defendant who provides a defective product on more than one occasion has committed an unfair business practice. Hence, none of Plaintiffs' five asserted aspects of Google's conduct withstands scrutiny at the motion to dismiss stage.

---

[10] In the future, if Plaintiffs combine the allegations against Google and Huawei, the Court will not try to unwind them in the same fashion but will simply dismiss.

Plaintiffs' argument that Google's conduct violates the Song–Beverly Act's policy of preventing unmerchantable products from reaching consumers, *id.* ¶ 301, fares no better. As noted with respect to Huawei, Plaintiffs' conception of the Song–Beverly Act's purpose improperly extends beyond California state lines. *See* Cal. Civ. Code § 1792. Plaintiffs therefore cannot rely on the Song–Beverly Act's purpose without accompanying allegations about where the California Plaintiffs purchased their phones.

Accordingly, the Court GRANTS Google's Motion to Dismiss Plaintiffs' UCL claim under the unfair prong with leave to amend to allege relevant facts.

### (c) Fraudulent Business Act or Practice

The analysis with respect to Google and Huawei under the UCL fraud prong is identical because the CAC depends on the same three fraudulent acts for both companies. *See* CAC ¶ 303. As Plaintiffs' opposition admits, Opp'n 40, all three acts take as a given Google's knowledge of the defects at the time of sale to the California Plaintiffs. The Court has previously explained at length that Plaintiffs have not adequately alleged that Google had knowledge of the defects when the California Plaintiffs purchased their phones. Accordingly, the Court GRANTS Google's Motion to Dismiss Plaintiffs' UCL claim under the fraud prong with leave to amend to allege that Google had knowledge of the defects at the time that the California Plaintiffs purchased their phones.

### (2) False Advertising Law

The disposition on Plaintiffs' FAL claim requires little explanation because the analysis is substantively identical to that under the UCL fraud prong. Indeed, this Court and other courts in this district have treated FAL claims together with the UCL fraud prong, *Singh v. Google Inc.*, No. 16-CV-03734-BLF, 2017 WL 2404986, at *4–5 (N.D. Cal. June 2, 2017); *Chacanaca v. Quaker Oats Co.*, 752 F. Supp. 2d 1111, 1124–26 (N.D. Cal. 2010), and both Google and Plaintiffs recommend following that approach here, Google Mot. 23; Opp'n 41. Because the allegations underlying the FAL claim are also contingent on Google's knowledge of the Nexus 6P's defects, *see* CAC ¶ 335, Plaintiffs have failed to state a claim upon which relief can be granted. Accordingly, the Court GRANTS Google's Motion to Dismiss Plaintiffs' FAL claim with leave to

amend to allege that Google had knowledge of the defects at the time that the California Plaintiffs purchased their phones.

### iv.    Indiana Deceptive Consumer Sales Act

Indiana Plaintiff Beheler asserts a claim under the Indiana Deceptive Consumer Sales Act ("IDCSA"), Ind. Code § 24-5-0.5-1 *et seq.*, on behalf of the Indiana subclass.  CAC ¶¶ 384–96. Under the IDCSA, "[a] person relying upon an . . . incurable deceptive act may bring an action for the damages actually suffered as a consumer as a result of the deceptive act."  Ind. Code Ann. § 24-5-0.5-4(a).  The IDCSA in turn defines "incurable deceptive act" as "a deceptive act done by a supplier as part of a scheme, artifice, or device with intent to defraud or mislead."  *Id.* § 24-5-0.5-2(a)(8).  The CAC bases the IDCSA claim on Google's alleged misrepresentation that the Nexus 6P has a "high-performing batter[y]" that will keep consumers "talking, texting, and apping into the night."  CAC ¶¶ 390, 395.

Plaintiffs do not challenge that Rule 9(b)'s heightened pleading standard applies, but instead argue that their allegations satisfy that standard.  Opp'n 54–55.  Plaintiffs are incorrect. The CAC states that "[t]he Nexus 6P's purportedly long battery life factored heavily into [Plaintiff] Beheler's decision to purchase this Phone," CAC ¶ 59, but does not indicate whether Plaintiff Beheler received this information from Google's advertising or came upon it by some other means, such as word of mouth from a friend or a technical review written by another company.  This is insufficient to support Plaintiffs' contention that Plaintiff Beheler "saw and relied upon Google's advertising of long battery life."  Opp'n 55.  Accordingly, the Court GRANTS Google's Motion to Dismiss Plaintiff Beheler's IDCSA claim with leave to amend to specify the advertisements and the content of the advertisements that Plaintiff Beheler relied upon in purchasing his Nexus 6P.[11]

---

[11] The Court need not address Google's separate argument about Plaintiff Beheler's failure to give Google written notice.  Google Mot. 25.  As Google indicated in its Motion to Dismiss, that argument applies only to the extent that Plaintiff Beheler alleges an "uncured" deceptive act, as opposed to an "incurable" deceptive act.  *Id.*  In their opposition, Plaintiffs make clear that Plaintiff Beheler pleads an "incurable" deceptive act, as reflected in paragraph 395 of the CAC. Opp'n 55.

**v.     New York General Business Law**

New York Plaintiff Davydov asserts claims under N.Y. Gen. Bus. Law §§ 349–350 on behalf of the New York subclass.  CAC ¶¶ 415–32.  N.Y. Gen. Bus. Law § 349 makes unlawful "[d]eceptive acts or practices in the conduct of any business," while N.Y. Gen. Bus. Law § 350 prohibits "[f]alse advertising in the conduct of any business."  Google contends that the claims under §§ 349 and 350 should be dismissed for failure to plead causation.  Google Mot. 25.  Because both sections include the element of causation, a plaintiff's claim is not sufficiently pled if he does not "state in his complaint that he has seen the misleading statements of which he complains before he came into possession of the products he purchased."  *Goldemberg v. Johnson & Johnson Consumer Cos*, 8 F. Supp. 3d 467, 480 (S.D.N.Y. 2014).

Based on the CAC's lumping together of Google and Huawei, Plaintiff Davydov's allegations here do not clear that hurdle.  To be sure, other cases have allowed claims under §§ 349 and 350 to proceed past a motion to dismiss on relatively thin allegations.  For example, in *Dash v. Seagate Technology (U.S.) Holdings, Inc.*, the court concluded that there was a reasonable inference that the plaintiff purchased the product at issue as a result of seeing the misleading statements where the plaintiff "describe[d] in detail the allegedly misleading and deceptive statements contained on the [product's] packaging upon which he relied in purchasing the product."  27 F. Supp. 3d 357, 361 (E.D.N.Y. 2014).  The court drew the same inference in *Goldemberg* where the plaintiff "describe[d] in particular the allegedly misleading advertising and other statements" and alleged that the defendant's "false, misleading, and deceptive misrepresentations . . . ha[d] already deceived and misled Plaintiff."  8 F. Supp. 3d at 480.

The allegations here superficially fit that mold.  The CAC first details the allegedly misleading statements by Google.  CAC ¶ 227.  Then, the CAC alleges that "[i]n purchasing Phones, [Plaintiff] Davydov . . . relied on the misrepresentations and/or omissions of Defendants with respect to the quality, functionality, and performance of the Phones" and that Plaintiff Davydov would not have purchased the phone in the absence of those misrepresentations.  *Id.* ¶ 430.  The problem is that, by referring to the Google and Huawei together without denoting particular statements, there is no assurance that Plaintiff Davydov relied on Google's allegedly

misleading statements in purchasing his Nexus 6P.  Without more, it is not plausible that Plaintiff Davydov saw every relevant misrepresentation made by Google.  Accordingly, the Court GRANTS Google's Motion to Dismiss Plaintiff Davydov's N.Y. Gen. Bus. Law §§ 349–350 claims with leave to amend to assert whether he viewed Google's statements before he purchased his phone.

### vi.    North Carolina Unfair and Deceptive Trade Practices Act

North Carolina Plaintiffs Harrison and Himes assert a claim under the North Carolina Unfair and Deceptive Trade Practices Act ("NCUDTPA"), N.C. Gen. Stat. § 75-1.1 *et seq.*, on behalf of the North Carolina subclass.  CAC ¶¶ 433–43.  To state a claim under the NCUDTPA, a plaintiff must plead that "(1) defendant committed an unfair or deceptive act or practice, (2) the action in question was in or affecting commerce, and (3) the act proximately caused injury to the plaintiff." *Dalton v. Camp*, 548 S.E.2d 704, 711 (N.C. 2001); *see also* N.C. Gen. Stat. Ann. §§ 75-1.1(a) (declaring unlawful "unfair or deceptive acts or practices in or affecting commerce"), 75-16 (creating private right of action for persons "injured by reason of any [unfair or deceptive] act").  The CAC alleges that Google engaged in "unfair" and "deceptive" acts.  First, it states that Google's acts were "unfair" because "Defendants knowingly sold [Plaintiff] Harrison, [Plaintiff] Himes, and North Carolina Subclass members Phones with the Defects, refused to honor warranties, required consumers to wait several weeks to several months on warranty claims, and replaced Phones under warranty with other defective Phones." CAC ¶ 437.  Second, the CAC also goes on to say that Google's acts are "deceptive" because Google made misrepresentations about the Nexus 6P in advertising. *Id.* ¶ 439.  Neither is well-pled.

As to "unfair" acts, the alleged actions pertain to Huawei and appear to include Google only by the misleading use of the cover term "Defendants."  Not only do the CAC's allegations fail to plausibly plead that Google had knowledge at the time of sale, but the CAC admits that Google did not sell to Plaintiffs Harrison and Himes at all—they purchased their phones from Amazon and Best Buy, respectively. *Id.* ¶¶ 91, 99.  The rest of the allegations relate to warranty problems, but neither Plaintiff Harrison nor Plaintiff Himes submitted a warranty claim to Google.  Rather, Plaintiff Harrison "called Huawei to make a warranty claim," *id.* ¶ 94, and Plaintiff Himes

made no warranty claim at all, despite contacting both Google and Huawei, *id.* ¶¶ 102–04.

As to "deceptive" acts, the CAC looks to Google's advertising statements.  The North Carolina Supreme Court has instructed that "a claim under section 75-1.1 stemming from an alleged misrepresentation does indeed require a plaintiff to demonstrate reliance on the misrepresentation in order to show the necessary proximate cause." *Bumpers v. Cmty. Bank of N. Va.*, 747 S.E.2d 220, 226 (N.C. 2013).  For essentially the same reasons discussed with respect to their breach of express warranty claims, Plaintiffs Harrison and Himes have both failed to adequately plead reliance on Google's advertising statements.

Accordingly, the Court GRANTS Google's Motion to Dismiss the NCUDTPA claim of Plaintiffs Harrison and Himes with leave to amend to allege further facts.

### vii.    Ohio Deceptive Trade Practices Act

Ohio Plaintiff Servodio asserts a claim under the ODTPA on behalf of the Ohio subclass. CAC ¶¶ 461–75.  As discussed above with respect to Huawei, this claim must be dismissed without leave to amend because, as a legal matter, consumers lack standing to sue under the ODTPA.  Accordingly, the Court GRANTS WITHOUT LEAVE TO AMEND Google's Motion to Dismiss the ODTPA claim.

### viii.    Ohio Consumer Sales Practices Act

Ohio Plaintiff Servodio asserts a claim under the Ohio Consumer Sales Practices Act ("OCSPA"), Ohio Rev. Code § 1345.01 *et seq.*, on behalf of the Ohio subclass.  CAC ¶¶ 476–87. The OCSPA provides a private right of action to consumers for "unfair or deceptive act[s] or practice[s] in connection with a consumer transaction."  Ohio Rev. Code Ann. §§ 1345.02(A), 1345.09(A).  Nevertheless, "a consumer may qualify for class-action certification under [the OCSPA] only if the defendant's alleged violation of the Act is substantially similar to an act or practice previously declared to be deceptive by" a rule adopted by the Attorney General or an Ohio court decision holding such deceptive conduct unlawful. *Marrone v. Philip Morris USA, Inc.*, 850 N.E.2d 31, 33 (Ohio 2006).  "Cases that involve industries and conduct very different from the defendant's do not provide meaningful notice of specific acts or practices that violate the [OCSPA]." *Id.* at 36.

Plaintiffs do not adequately allege that Google was put on notice by an Ohio court decision. The bare allegation that "Defendants acted in the face of prior notice that their conduct was deceptive, unfair, or unconscionable" does not satisfy Plaintiffs' burden. CAC ¶ 482. More importantly, Plaintiffs do not identify any cases where, for example, a court has held that selling a defective product constitutes a deceptive act under the OCSPA. Rather, as the CAC admits, the cases cited therein stand for the proposition that "failing to honor express and implied warranties violates the OCSPA." *Id.* ¶ 483 (citing *Nee v. State Indus., Inc.*, 3 N.E.3d 1290, 1306 (Ohio Ct. App. 2013); *Brown v. Decorator Carpets of Canton, Inc.*, 1979 WL 185083, at *2 (Ohio Ct. Com. Pl. Nov. 5, 1979); and *Mason v. Mercedes-Benz USA, LLC*, 2005 WL 1995087 at *5 (Ohio Ct. App. Aug. 18, 2005)). Given that Plaintiffs have not pled that Google failed to honor Plaintiff Servodio's warranty, CAC ¶¶ 119–27, or that Google breached any express or implied warranty at all, these cases do not provide meaningful notice that Google's alleged acts and practices violate the OCSPA.

Although the Court agrees with Google on the substance of its argument, the Court parts ways with Google as to the remedy. Google suggests that dismissal of Plaintiff Servodio's OCSPA claim is appropriate. Google Mot. 27. But the cases do not support that view. The principal authority on which Google relies, the Ohio Supreme Court decision in *Marrone*, concerns the prerequisites for "a consumer [to] qualify for class-action certification under [the OCSPA]." 850 N.E.2d at 33. Similarly, Google's district court case states that class action claims under the OCSPA may be dismissed at the pleadings stage. *See Gascho v. Glob. Fitness Holdings, LLC*, 863 F. Supp. 2d 677, 693 (S.D. Ohio 2012). Because Google has identified no other ground on which to dismiss Plaintiff Servodio's individual OCSPA claim, that claim will not be dismissed.

Accordingly, the Court GRANTS Google's Motion to Dismiss Plaintiff Servodio's OCSPA class claims with leave to amend to allege further facts about whether Google was on notice that its conduct violated the OCSPA, but DENIES Google's Motion to Dismiss Plaintiff Servodio's individual OCSPA claim.

### ix.    Texas Deceptive Trade Practices Act

Texas Plaintiff Poore asserts a claim under the Texas Deceptive Trade Practices Act ("TDTPA"), Tex. Bus. & Com. Code § 17.41 *et seq.*, on behalf of the Texas subclass.  CAC ¶¶ 501–17.  A consumer may bring an action under the TDTPA when the defendant employs a deceptive act or practice enumerated in Tex. Bus. & Com. Code § 17.46(b) that is a "producing cause" of the consumer's economic damages.  Tex. Bus. & Com. Code § 17.50(a)(1).  Although the CAC lists violations of multiple subsections of § 17.46(b), CAC ¶ 509, Plaintiffs' opposition confirms that its claim is that Google ran afoul of § 17.46(b)(24), Opp'n 53.  That subsection proscribes "failing to disclose information concerning goods or services which was known at the time of the transaction if such failure to disclose such information was intended to induce the consumer into a transaction into which the consumer would not have entered had the information been disclosed."  Tex. Bus. & Com. Code § 17.46(b)(24).

With the Plaintiffs' claim limited to this subsection, the TDTPA claim fails for familiar reasons.  Google cannot violate § 17.46(b)(24) unless Google "fail[ed] to disclose information . . . which was known at the time of the transaction."  As even the most cursory reader will have gleaned by this point, Plaintiffs have not adequately pled that Google had knowledge of the defects at the time that Plaintiff Poore purchased his Nexus 6P.  Therefore, Plaintiffs' allegations do not establish that Plaintiff Poore is entitled to relief on the TDTPA claim.

Google's fallback argument that Plaintiff Poore did not provide the required pre-suit notice, Google Mot. 28, is unavailing.  Google appears to have overlooked Plaintiffs' allegation that "[o]n or about April 19, 2017, [Plaintiff] Poore notified Defendants of the damage and Defect in his Phone in satisfaction of Tex. Bus. & Com. Code § 17.505."  CAC ¶ 517.  Google concedes this point in its reply.  Google Reply 18.

Accordingly, the Court GRANTS Google's Motion to Dismiss Plaintiff Poore's TDTPA claim with leave to amend to allege that Google had knowledge of the defects at the time that he purchased his phone.

### x.    Washington Consumer Protection Act

Washington Plaintiff Johnston asserts a claim under the Washington Consumer Protection

Act ("WCPA"), Wash. Rev. Code § 19.86 *et. seq.*, on behalf of the Washington subclass. CAC ¶¶ 518–35. The WCPA authorizes "[a]ny person who is injured in his or her business or property by a violation of [the WCPA] . . . [to] bring a civil action . . . to enjoin further violations [or] to recover the actual damages sustained by him or her." Wash. Rev. Code Ann. § 19.86.090. One such violation occurs when a defendant commits "unfair or deceptive acts or practices in the conduct of any trade or commerce." *Id.* § 19.86.020.

The CAC alleges that Google engaged in "unfair" and "deceptive" acts in nearly the same fashion as the now-dismissed NCUDTPA claim. Plaintiff Johnston's WCPA claim falters on the same grounds. First, the CAC states that Google's acts were "unfair" because "Defendants knowingly sold [Plaintiff] Johnston and Washington Subclass members Phones with the Defects, refused to honor warranties, required consumers to wait several weeks to several months on warranty claims, and replaced Phones under warranty with other defective Phones." CAC ¶ 522. Google did not do any of those things with respect to Plaintiff Johnston, who bought his Nexus 6P from Best Buy and did not submit a warranty claim to Google. *Id.* ¶¶ 152–59. Second, the CAC states that Google's acts are "deceptive" because Google made misrepresentations about the Nexus 6P in advertising. *Id.* ¶ 524. Like with his breach of express warranty claim, Plaintiff Johnston has failed to adequately identify which Google advertisements he saw.

Accordingly, the Court GRANTS Google's Motion to Dismiss Plaintiff Johnston's WCPA claim with leave to amend to allege further facts.

### d. Unjust Enrichment Claim

Plaintiffs assert a cause of action for unjust enrichment. CAC ¶¶ 278–83. As discussed above with respect to Huawei, although a claim alleging unjust enrichment may state a claim for relief as a quasi-contract claim for restitution, *Romero*, 2015 WL 2125004, at *9, Plaintiffs' claim must be dismissed for "failure to allege which state law governs," *Romero*, 2016 WL 469370, at *12. Accordingly, the Court GRANTS Google's Motion to Dismiss the unjust enrichment claim with leave to amend to assert which state law applies.

### C. Motions to Strike

Huawei and Google both move to strike Plaintiffs' class allegations under Federal Rule of

Civil Procedure 12(f).  Huawei Mot. 26–28; Google Mot. 29.  "There is a split in this District as to whether a motion to strike class action allegations may be entertained at the motion to dismiss stage."  *Ogola v. Chevron Corp.*, No. 14-CV-00173-SC, 2014 WL 4145408, at *2 (N.D. Cal. Aug. 21, 2014).  Even courts that have been willing to entertain such a motion early in the proceedings "have applied a very strict standard to motions to strike class allegations on the pleadings."  *Id.*  "Only if the court is convinced that any questions of law are clear and not in dispute, and that under no set of circumstances could the claim or defense succeed may the allegations be stricken."  *Id.* (internal quotation marks and citation omitted).

Huawei and Google contend that the putative nationwide class and the statewide subclasses are facially overbroad because they include individuals who never experienced problems with their Nexus 6Ps.  Huawei Mot. 26–27; Google Mot. 29.  Moreover, Huawei and Google assert that a class action will be unmanageable because the suit requires adjudicating various claims under differing state laws and resolving individualized inquiries.  Huawei Mot. 27–28; Google Mot. 29.

Although these concerns are not without merit, Huawei's and Google's arguments are more appropriately addressed at a later stage of the proceedings when the issues have been more fully developed and sharpened.  At the hearing, the Court indicated its inclination to defer these issues to the class certification stage.  The Court remains convinced that it would be premature to resolve the issues at the pleading stage.  *See Los Gatos Mercantile, Inc v. E.I. DuPont De Nemours & Co.*, No. 13-CV-01180-BLF, 2015 WL 4755335, at *33 (N.D. Cal. Aug. 11, 2015).

Accordingly, the Court DENIES Huawei's and Google's motions to strike class allegations without prejudice to raising the arguments presented in those motions at a later stage of the proceedings.

## IV.   ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Huawei's and Google's Motions to Dismiss are GRANTED WITH LEAVE TO AMEND IN PART, GRANTED WITHOUT LEAVE TO AMEND IN PART, AND DENIED IN PART.  Specifically, with respect to Huawei, the Court rules as follows:

- The Court GRANTS WITH LEAVE TO AMEND Huawei's Motion to Dismiss the express warranty claims of Plaintiffs Gorbatchev, Christensen, Martorello, Tran, Berry, Davydov, Harrison, Himes, Jones, Leone, and Poore and DENIES Huawei's Motion to Dismiss the express warranty claims of all remaining Plaintiffs.

- The Court GRANTS WITH LEAVE TO AMEND Huawei's Motion to Dismiss the implied warranty claims of Plaintiffs Berry and Poore and DENIES Huawei's Motion to Dismiss the implied warranty claims of all remaining Plaintiffs.

- The Court GRANTS WITH LEAVE TO AMEND Huawei's Motion to Dismiss the California Plaintiffs' Song–Beverly Act claim.

- The Court GRANTS WITH LEAVE TO AMEND Huawei's Motion to Dismiss the Magnuson–Moss Warranty Act claims of Plaintiffs Berry and Poore and DENIES Huawei's Motion to Dismiss the Magnuson–Moss Warranty Act claims of all remaining Plaintiffs.

- The Court GRANTS WITH LEAVE TO AMEND Huawei's Motion to Dismiss Plaintiffs' fraud claims to the extent they are based on a fraudulent omissions theory.

- The Court GRANTS WITH LEAVE TO AMEND Huawei's Motion to Dismiss the California Plaintiffs' CLRA claim.

- The Court GRANTS WITH LEAVE TO AMEND Huawei's Motion to Dismiss the California Plaintiffs' UCL claim under the unfair and fraudulent prongs and DENIES Huawei's Motion to Dismiss the California Plaintiffs' UCL claim under the unlawful prong.

- The Court GRANTS WITH LEAVE TO AMEND Huawei's Motion to Dismiss the California Plaintiffs' FAL claim.

- The Court GRANTS WITHOUT LEAVE TO AMEND Huawei's Motion to Dismiss Ohio Plaintiff Servodio's ODTPA claim.

- The Court GRANTS WITH LEAVE TO AMEND Huawei's Motion to Dismiss the unjust enrichment claims of all Plaintiffs.

Specifically, with respect to Google, the Court rules as follows:

1

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss the express
2   warranty claims of all Plaintiffs.

3

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss the
4   implied warranty claims of all Plaintiffs.

5

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss the
6   California Plaintiffs' Song–Beverly Act claim.

7

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss the
8   Magnuson–Moss Warranty Act claims of all Plaintiffs.

9

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss the deceit
10   and fraudulent concealment claims of all Plaintiffs.

11

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss the
12   California Plaintiffs' CLRA claim.

13

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss the
14   California Plaintiffs' UCL claim.

15

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss the
16   California Plaintiffs' FAL claim.

17

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss Florida
18   Plaintiff Martorello's FDUTPA claim.

19

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss Illinois
20   Plaintiff Tran's ICFDBPA and IUDTPA claims.

21

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss Indiana
22   Plaintiff Beheler's IDCSA claim.

23

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss Michigan
24   Plaintiff Berry's MCPA claim.

25

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss New York
26   Plaintiff Davydov's claims under N.Y. Gen. Bus. Law §§ 349–350.

27

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss North
28   Carolina Plaintiffs Harrison and Himes's NCUDTPA claims.

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss North Dakota Plaintiff Jones's NDCFA claim.

- The Court GRANTS WITHOUT LEAVE TO AMEND Google's Motion to Dismiss Ohio Plaintiff Servodio's ODTPA claim.

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss Ohio Plaintiff Servodio's OCSPA class claims and DENIES Google's Motion to Dismiss Ohio Plaintiff Servodio's individual OCSPA claim.

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss Pennsylvania Plaintiff Leone's PUTPCPL claim.

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss Texas Plaintiff Poore's TDTPA claim.

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss Washington Plaintiff Johnston's WCPA claim.

- The Court GRANTS WITH LEAVE TO AMEND Google's Motion to Dismiss the unjust enrichment claims of all Plaintiffs.

Finally, with respect to Huawei and Google, the Court DENIES their motions to strike Plaintiffs' class allegations.

An amended complaint shall be filed on or before June 8, 2018. Plaintiffs may request additional time, if needed, to accommodate the jurisdictional discovery schedule set forth in a separate order.

Dated: March 5, 2018

BETH LABSON FREEMAN
United States District Judge