Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Adam E. Polk (SBN 273000)
Trevor T. Tan (SBN 281045)
**GIRARD GIBBS LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
*dcg@girardgibbs.com*
*je@girardgibbs.com*
*aep@girardgibbs.com*
*ttt@girardgibbs.com*

Benjamin F. Johns (*pro hac vice*)
Andrew W. Ferich (*pro hac vice*)
Jessica L. Titler-Lingle (*pro hac vice*)
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633
*bfj@chimicles.com*
*awf@chimicles.com*
*jt@chimicles.com*

*Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE NEXUS 6P PRODUCTS LIABILITY LITIGATION | Case No. 5:17-cv-02185-BLF<br><br>**PLAINTIFFS' OPPOSITION TO GOOGLE LLC'S MOTION TO DISMISS**<br><br>Date: October 17, 2018<br>Time: 9:00 a.m.<br>Courtroom: 3, 5th Floor<br>Judge: Hon. Beth Labson Freeman |

# TABLE OF CONTENTS

INTRODUCTION ................................................................................................................1

RELEVANT BACKGROUND ...........................................................................................2

    A.    The Court's March 5, 2018 Order on Google's First Motion to Dismiss. .............2

    B.    The SAC and Its Revised Allegations as to Google. ............................................2

LEGAL STANDARD ........................................................................................................4

ARGUMENT ....................................................................................................................5

I.    PLAINTIFFS' SONG-BEVERLY CLAIMS AGAINST GOOGLE SHOULD PROCEED. ..........................................................................................................5

    A.    The SAC Adequately Alleges That Google Was a Manufacturer of the Nexus 6P. ........................................................................................................5

    B.    Gorbatchev and Christensen Purchased Their Phones in California. ...................7

II.    PLAINTIFFS' OMISSIONS-BASED CLAIMS AGAINST GOOGLE ARE ADEQUATELY PLED. ................................................................................8

    A.    The SAC Sufficiently Pleads Facts Showing That Google Had a Duty to Disclose. ...............................................................................................8

        i.    Google Misstates the Pleading Standard for Knowledge. .......................9

        ii.    Google Had a Duty to Disclose Because of Its Exclusive Knowledge. .......................................................................................10

            a.    The Subset of Consumer Complaints Excerpted in the SAC Generate a Plausible Inference That Google Was Aware of the Nexus 6P Defect. ...................................................10

            b.    Plaintiffs' Pre-release Testing Allegations Demonstrate Google's Knowledge. ................................................................12

                1.    The SAC Does Not Impermissibly Group Plead. ............12

                2.    The SAC Includes Particularized Allegations of Product Testing. .............................................................13

        iii.    Google Had a Duty to Disclose Because It Actively Concealed the Defect. .......................................................................................16

iv.    Google Had a Duty to Disclose Because It Made Partial Representations. ........................................................................17

B.    California Law Does Not Require Plaintiffs to Allege a Safety Hazard. ...........18

C.    Plaintiffs Adequately Plead Reliance Upon Google's Material Omissions. ........................................................................................19

D.    There Are No State-Specific Grounds for Dismissal of Plaintiffs' Concealment Claims. ...........................................................................20

III.    THE SAC STATES CLAIMS AGAINST GOOGLE UNDER THE UCL'S "UNLAWFUL" AND "UNFAIR" PRONGS. ..................................................21

IV.    GOOGLE'S CLASS CERTIFICATION ARGUMENTS REMAIN PREMATURE. ...........................................................................................23

CONCLUSION .........................................................................................................25

# TABLE OF AUTHORITIES

**Cases**

*Aguilar v. Gen. Motors, LLC*
  2013 WL 5670888 (E.D. Cal. Oct. 16, 2013) .......................................................................9, 14, 22

*Allapattah Servs., Inc. v. Exxon Corp.*
  188 F.R.D. 667 (S.D. Fla. 1999)
  *aff'd*, 333 F.3d 1248 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005) ...................................24

*Apodaca v. Whirlpool Corp.*
  2013 WL 6477821 (C.D. Cal. Nov. 8, 2013) ....................................................................14, 19

*Association for L.A. Deputy Sheriffs v. County of Los Angeles*
  648 F.3d 986 (9th Cir. 2011) .....................................................................................................9

*Baba v. Hewlett-Packard Company*
  2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ............................................................................11

*Bates v. United Parcel Serv., Inc.*
  511 F.3d 974 (9th Cir. 2007) ....................................................................................................25

*Bedolla v. Logan & Frazer*
  52 Cal. App. 3d 118 (1975) ......................................................................................................13

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ...................................................................................................................4

*Berenblat v. Apple, Inc.*
  2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ...........................................................................12

*Bohn v. Pharmavite, LLC*
  2012 WL 8898669 (C.D. Cal. May 16, 2012) ..........................................................................23

*Brown Products, LLC v. Muzooka, Inc.*
  43 F. Supp. 3d 1026 (N.D. Cal. 2015) .....................................................................................13

*Bruno v. Eckhart Corp.*
  280 F.R.D. 540 (C.D. Cal. 2012) .............................................................................................24

*Bryde v. Gen. Motors, LLC*
  2016 WL 6804584 (N.D. Cal. Nov. 17, 2016) ...................................................................17, 19

*Burdt v. Whirlpool Corporation*
  2015 WL 4647929 (N.D. Cal. Aug. 5, 2015) ...........................................................................16

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Burlington Ins. Co. v. Vikramsinh Devdhara*
  2009 WL 2901624 (N.D. Cal. Sept. 2, 2009) ................................................................4

*Catalano v. BMW of N. Am., LLC*
  2016 WL 3406125 (S.D.N.Y. June 16, 2016) ...............................................................21

*Chavez v. Blue Sky Nat. Beverage Co.*
  268 F.R.D. 365 (N.D. Cal. 2010) ...................................................................................24

*Clancy v. The Bromley Tea Co.*
  308 F.R.D. 564 (N.D. Cal. 2013) ...................................................................................23

*Collins v. eMachines, Inc.*
  202 Cal. App. 4th 249 (2011) ........................................................................................18

*Collins v. Gamestop Corp.*
  2010 WL 3077671 (N.D. Cal. Aug. 6, 2010) .................................................................24

*Comerica Bank v. McDonald*
  2006 WL 3365599 (N.D. Cal. Nov. 17, 2006) ..............................................................13

*Crayton v. Rochester Med. Corp.*
  2008 WL 3367604 (E.D. Cal. Aug. 8, 2008) .................................................................18

*Daniel v. Ford Motor Co.*
  806 F.3d 1217 (9th Cir. 2015) ...................................................................................6, 19

*Davidson v. Apple, Inc.*
  2017 WL 3149305 (N.D. Cal. July 25, 2017) ..........................................................14, 20

*Davis v. Newmar Corp.*
  136 Cal. App. 4th 275 (2006) ..........................................................................................8

*Delk v. Ocwen Fin. Corp.*
  2017 WL 3605219 (N.D. Cal. Aug. 21, 2017) ................................................................7

*Deras v. Volkswagen Grp. of Am., Inc*
  2018 WL 2267448 (N.D. Cal. May 17, 2018) ..........................................................12, 16

*Direct Telecom, Inc. v. Glob. Crossing Bandwidth, Inc.*
  2007 WL 162763 (W.D.N.Y. Jan. 18, 2007) .................................................................20

*Doe v. Uber Techs., Inc.*
  184 F. Supp. 3d 774 (N.D. Cal. 2016) .............................................................................4

*Edenborough v. ADT, LLC*
  2016 WL 6160174 (N.D. Cal. Oct. 24, 2016) ..........................................................14, 19

PLAINTIFFS' OPPOSITION TO GOOGLE LLC'S MOTION TO DISMISS
CASE NO. 5:17-cv-02185-BLF

*Ehret v. Uber Tech., Inc.*
  68 F. Supp. 3d 1121 (N.D. Cal. 2014) ................................................................25

*Elias v. Hewlett-Packard Co.*
  2014 WL 493034 (N.D. Cal. Feb. 5, 2014) ....................................................*passim*

*EO Tech. Sols., LLC v. Capex Outsource, Inc.*
  2012 WL 13019036 (W.D. Wash. Feb. 7, 2012) ...............................................21

*Erickson v. Pardus*
  551 U.S. 89 (2007) ..............................................................................................4

*Falco v. Nissan N. Am. Inc.*
  96 F. Supp. 3d 1053 (C.D. Cal. 2015) ...............................................................13

*Falk v. Gen. Motors Corp.*
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) ....................................................8, 11, 14

*Finney v. Ford Motor Co.*
  2018 WL 2552266 (N.D. Cal. June 4, 2018) .....................................................17

*Friedman v. Zimmer*
  2015 WL 6164787 (C.D. Cal. July 10, 2015) ....................................................13

*Friend v. H. A. Friend & Co.*
  416 F.2d 526 (9th Cir. 1969) .............................................................................13

*Gertz v. Toyota Motor Corp.*
  2011 WL 13142144 (C.D. Cal. Apr. 28, 2011) ...................................................5

*Gold v. Lumber Liquidators, Inc.*
  2017 WL 2688077 (N.D. Cal. June 22, 2017) ....................................................25

*Greene v. Gerber Prod. Co.*
  262 F. Supp. 3d 38 (E.D.N.Y. 2017) ................................................................21

*Grodzitsky v. American Honda Motor Company*
  2013 WL 690822 (C.D. Cal. Feb. 19, 2013) ......................................................16

*Gusse v. Damon Corp.*
  470 F. Supp. 2d 1110 (C.D. Cal. 2007) ...............................................................8

*Hahn v. Mirda*
  147 Cal. App. 4th 740 (2007) ...............................................................................8

*Hodsdon v. Mars, Inc.*
  891 F.3d 857 (9th Cir. 2018) .............................................................................18

*Hoffman v. 162 N. Wolfe LLC*
  228 Cal. App. 4th 1178 (2014) ......................................................................19

*Horvath v. LG Elecs. Mobilecomm U.S.A.*, Inc.
  2012 WL 2861160 (S.D. Cal. Feb. 13, 2012 ..................................................22

*Huntzinger v. Aqua Lung Am., Inc.*
  2015 WL 8664284 (S.D. Cal. Dec. 10, 2015) ..........................................10, 14

*Hynix Semicond. Inc. v. Rambus Inc.*
  2007 WL 4209399 (N.D. Cal. Nov. 26, 2007) ................................................19

*In re Carrier IQ, Inc.*
  78 F. Supp. 3d 1051 (N.D. Cal. 2015) ..............................................................8

*In re Clorox Consumer Litig.*
  894 F. Supp. 2d 1224 (N.D. Cal. 2012) ..........................................................24

*In re Hydroxycut Mktg. & Sales Practices Litig.*
  801 F. Supp. 2d 993 (S.D. Cal. 2011) .............................................................25

*In re Hyundai and Kia Fuel Economy Litig.*
  881 F.3d 679 (9th Cir. 2018) ..........................................................................24

*In re iPhone 4S Consumer Litig.*
  2013 WL 3829653 (N.D. Cal. July 23, 2013) .................................................24

*In re MyFord Touch Consumer Litig.*
  46 F. Supp. 3d 936 (N.D. Cal. 2014) ........................................................16, 21

*In re NVIDIA GPU Litigation*
  2009 WL 4020104 (N.D. Cal. Nov. 19, 2009) ................................................25

*In re Seagate Tech. LLC Litig.*
  2017 WL 3670779 (N.D. Cal. Aug. 25, 2017) ..................................................7

*In re Sony Vaio Computer Notebook Trackpad Litig.*
  2010 WL 4262191 (S.D. Cal. Oct. 28, 2010) ...............................................7, 10

*In re SunPower Corp. Sec. Litig.*
  2018 WL 1863055 (N.D. Cal. Apr. 18, 2018) ................................................4, 6

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prod. Liab. Litig.*
  2011 WL 13160303 (C.D. Cal. Jan. 20, 2011) ...............................................22

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices & Prod. Liab. Litig.*
  754 F. Supp. 2d 1208 (C.D. Cal. 2010) ..........................................................14

vi

*Jenkins v. Whittaker Corp.*
785 F.2d 720 (9th Cir. 1986) ...........................................................................6

*Kelly v. BP W. Coast Prods. LLC*
2014 WL 7409220 (E.D. Cal. Dec. 29, 2014) .................................................22

*Kesling v. Kesling*
546 F. Supp. 2d 627 (N.D. Ind. 2008) .............................................................21

*Kowalsky v. Hewlett-Packard Co.*
2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) ...............................5, 9, 14, 22

*Kowalsky v. Hewlett-Packard Co.*
771 F. Supp. 2d 1138 (N.D. Cal. 2010) ............................................................8

*MacDonald v. Ford Motor Co.*
 37 F. Supp. 3d 1087 (N.D. Cal. 2014) ...........................................................17

*Marolda v. Symantec Corporation*
672 F. Supp. 2d 992 (N.D. Cal. 2009) ............................................................17

*Mega RV Corporation. v. HWH Corporation*
225 Cal. App. 4th 1318 (2014) .........................................................................6

*Melendres v. Arpaio*
784 F.3d 1254 (9th Cir. 2015) ........................................................................25

*Moore v. Kayport Package Exp., Inc.*
885 F.2d 531 (9th Cir. 1989) ..........................................................................18

*Mui Ho v. Toyota Motor Corp.*
931 F. Supp. 2d 987 (N.D. Cal. 2013) ............................................................17

*Nutrition Distribution, LLC v. New Health Ventures, LLC*
2018 WL 1524488 (S.D. Cal. Mar. 27, 2018) ..................................................5

*O'Shea v. Epson Am., Inc.*
2010 WL 11459911 (C.D. Cal. Mar. 5, 2010) ..................................................8

*Oakland Raiders v. Nat'l Football League*
131 Cal. App. 4th 621 (2005) ...........................................................................5

*Oushana v. Lowe's Companies, Inc.*
2017 WL 5070271 (E.D. Cal. Nov. 3, 2017) ..................................................13

*Parkinson v. Hyundai Motor Am.*
258 F.R.D. 580 (C.D. Cal. 2008) ....................................................................24

*Pecanha v. The Hain Celestial Grp., Inc.*
 2018 WL 534299 (N.D. Cal. Jan. 24, 2018) ..........................................................25

*Resnick v. Hyundai Motor Am., Inc.*
 2017 WL 1531192 (C.D. Cal. Apr. 13, 2017)..........................................................16

*Rutledge v. Hewlett-Packard Co.*
 238 Cal. App. 4th 1164 (2015)..............................................................................18

*Scott v. Durham*
 2011 WL 8969 (N.D. Ind. Jan. 3, 2011)..................................................................21

*Senah, Inc v. Xi'An Forstar S&T Co, Ltd*
 2015 WL 905997 (N.D. Cal. Mar. 2, 2015)..............................................................18

*Silingo v. WellPoint, Inc.*
 2018 WL 3341038 (9th Cir. July 9, 2018) .................................................................9

*Sloan v. Gen. Motors LLC*
 2017 WL 3283998 (N.D. Cal. Aug. 1, 2017)............................................................12

*Sloan v. Gen. Motors LLC*
 287 F. Supp. 3d 840 (N.D. Cal. 2018)....................................................................19

*Stanwood v. Mary Kay, Inc.*
 941 F. Supp. 2d 1212 (C.D. Cal. 2012) ..................................................................22

*Starr v. Baca*
 652 F.3d 1202 (9th Cir. 2011) ...............................................................................15

*Stewart v. Electrolux Home Products., Inc.*
 2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) .............................................12, 13, 15

*Swersky v. Dreyer & Traub*
 219 A.D.2d 321
 643 N.Y.S.2d 33 (1996) .........................................................................................21

*Tait v. BSH Home Appliances Corp.*
 289 F.R.D. 466 (C.D. Cal. 2012) ...........................................................................24

*Tietsworth v. Sears*
 720 F. Supp. 2d 1123 (N.D. Cal. 2010)...................................................................16

*United States v. Corinthian Colleges*
 655 F.3d 984 (9th Cir. 2011) ...................................................................................9

*Vess v. Ciba-Geigy Corp. USA*
 317 F.3d 1097 (9th Cir. 2003) ..............................................................................4, 5

*Visa U.S.A. Inc. v. First Data Corp.*,
   2006 WL 1310448 (N.D. Cal. May 12, 2006) ............................................................9

*Wash. Mut. Bank, FA v. Super. Ct.*
   24 Cal. 4th 906 (2001) ...........................................................................................23

*Webb v. Special Electric Co., Inc.*
   63 Cal. 4th 167 (2016) .............................................................................................6

*Weiner v. Fleischman*
   54 Cal. 3d 476 (1991) .........................................................................................5, 13

*Werdebaugh v. Blue Diamond Growers*
   2013 WL 5487236 (N.D. Cal. Oct. 2, 2013) ........................................................24

*Wildin v. FCA US LLC*
   2018 WL 3032986 (S.D. Cal. June 19, 2018) ....................................................9, 20

*Williams v. Yamaha Motor Co.*
   851 F.3d 1015 (9th Cir. 2017) ...............................................................................11

*Wilson v. Hewlett-Packard Company*
   668 F.3d 1136 (9th Cir. 2012) ...............................................................................18

*Yan Mei Zheng-Lawson v. Toyota Motor Corp.*
   2018 WL 2298963 (N.D. Cal. May 21, 2018) ......................................................23

*Zemelman v. Boston Ins. Co.*
   4 Cal. App. 3d 15 (1970) ....................................................................................5, 19

**Rules**

Fed. R. Civ. P. 8 ..............................................................................................................4, 5

Fed. R. Civ. P. 9 .........................................................................................................4, 9, 15

Fed. P. Civ. P. 12 ...........................................................................................................4, 9

Fed. R. Civ. P. 15(b) ........................................................................................................25

**Statutes**

Cal. Civ. Code § 1791(j)...............................................................................................5, 6

**INTRODUCTION**

Plaintiffs' second amended complaint ("SAC") states four causes of action against Google—for violations of the Song-Beverly Consumer Warranty Act, the Consumers Legal Remedies Act, the Unfair Competition Law, and the common law prohibition of fraudulent concealment. In moving to dismiss, Google renews its attack on the sufficiency of Plaintiffs' allegations that it manufactured the Nexus 6P and sold it despite knowing its defective nature. Google's renewed motion fails because the SAC adequately pleads the violations alleged, leaving Google with only fact-based arguments that cannot be resolved on a motion to dismiss.

The SAC details how and why—through sophisticated pre-release testing and voluminous consumer complaints—Google knew before Plaintiffs' purchases that the Nexus 6P was defective and consequently had a duty to disclose the defect. The SAC adds particularized allegations concerning Google's role in its joint venture with Huawei to develop, market, produce, and sell the Nexus 6P, including its specific duties as a co-manufacturer. Plaintiffs also allege detailed facts showing why Google's pre-release testing revealed or reasonably should have revealed the defect in question prior to the Nexus 6P's release. The SAC describes 36 of the thousands of complaints and demonstrates consumers began complaining to Google and Huawei about defect-related problems immediately after the phone's release in late October 2015. Despite its knowledge and numerous opportunities to do so, Google never disclosed the defect. And although Google agreed to jointly provide warranty service for the Nexus 6P, it instead sought to conceal the defect by downplaying its severity, shifting the blame to Huawei, refusing warranty assistance for defect-related problems, and replacing defective phones with other defective phones.

Google disputes the facts, asking the Court to draw improper inferences—including that the large-scale failures Plaintiff allege should be discounted or disbelieved. Google also faults Plaintiffs for not pleading information within Google's exclusive possession such as the root cause of the defect and the location from which Plaintiffs' phones were shipped. And Google again prematurely seeks to litigate class certification. The issues Google raises are not susceptible to resolution on a motion to dismiss, and ample resources have already been devoted to settling the pleadings in this matter. Google's motion should be denied.

## RELEVANT BACKGROUND

**A.    The Court's March 5, 2018 Order on Google's First Motion to Dismiss.**

The Court granted Google's initial motion to dismiss, but denied its motion to strike the class allegations. ECF 115. With respect to the claims against Google, the Court commented that the CAC did not sufficiently differentiate between Defendants or specify the governing law. *Id.* at 5-6. The Court dismissed Plaintiffs' fraudulent concealment and omissions-based claims against Google with leave to amend, holding in part that Plaintiffs' knowledge allegations were insufficiently particularized. *Id.* at 7-9, 67-69, 75-77. The Court also dismissed the California Plaintiffs' Song-Beverly claims for failure to allege that Google was a manufacturer of the Nexus 6P or that Plaintiffs bought their phones in California. *Id.* at 64, 66.

**B.    The SAC and Its Revised Allegations as to Google.**

The Court noted that its March 5, 2018 Order "provided significant guidance to the parties . . . on the state of the pleadings[.]" ECF 144 at 4. Informed by the Court's analysis, Plaintiffs filed the SAC on May 10, 2018. ECF 117. Plaintiffs now assert causes of action against Google for violations of Song-Beverly, the CLRA, and the UCL, and for fraudulent concealment at common law. The SAC does not allege non-California statutory claims or common law warranty claims against Google, and does not plead any claim based on affirmative misrepresentations.

The SAC also addresses the other deficiencies the Court identified. Plaintiffs allege that Google held itself out to the press as a manufacturer of the Google Nexus 6P smartphone and exerted substantial control over the manufacturing process. ¶¶ 76-81. In response to the Court's group pleading guidance, the SAC specifies activities of Google pertaining to the Nexus 6P's design, manufacturing, development, testing, marketing, and servicing. *E.g.*, ¶¶ 80 (Google "took the lead in designing the phone and integrating . . . the camera, battery, and display."), 77 ("Google was responsible for design and development of the Nexus 6P's Android operating system."), 134-36 (Google made statements downplaying the defect's severity), 60-61 (Google repeatedly replaced Leone's defective phones with other defective phones). In support of Plaintiffs' claims for relief, the SAC attributes specific conduct to each Defendant giving rise to its liability. *E.g.*, ¶ 204 (alleging conduct of Google that constitutes unfair business practices).

1     The SAC clarifies which state laws apply to each of Plaintiffs' claims. Those Plaintiffs who

2   purchased their phones directly from Google—Gorbatchev, Martorello, Jones, and Leone—bring

3   claims under California law pursuant to Google's contractual choice-of-law provision. ¶ 150. The

4   CLRA and UCL also provide a remedy for harm arising from Plaintiffs' transactions outside of

5   California because the conduct rendering Google liable under these statutes emanated from its

6   California headquarters. ¶ 22. In addition, Plaintiffs who purchased outside of California assert

7   fraudulent concealment claims under the common laws of their respective states of residence. ¶ 151.

8     The SAC adds allegations detailing Google and Huawei's respective roles in product testing and

9   why the testing revealed (or reasonably should have revealed) the defect before release. ¶¶ 85-100.

10   Specifically, Plaintiffs allege that Google, using equipment that simulates consumer usage of the

11   phones, performed testing on the phones—*e.g.*, dropping tests, bending tests, charger plugging tests,

12   and climate/weather tests—to evaluate the durability of the Nexus 6P's internal components and

13   connections. ¶ 91. In addition to physical stress testing, Google and Huawei engineers used advanced

14   microscopes and computer imaging software to examine internal components and connections on a

15   microscopic level for problems not visible to the human eye, such as component deficiencies and

16   overheating due to ineffective thermal management. ¶ 97. The testing was vital because damaged

17   components or connections inside the Nexus 6P lead to the very types of problems the Nexus 6P has

18   exhibited since its release: random shutdowns, freezing, reboots, accelerated battery drain, and

19   permanent bootloops. ¶¶ 86, 92-94, 99. Defendants' advanced equipment and testing made it relatively

20   easy to uncover the defect. ¶ 87. But, because Google and Huawei adhered to a rushed development

21   cycle—seven months as opposed to the standard 18-24 months—they did not have enough time to take

22   steps to mitigate the defect, once detected, before introducing the Nexus 6P. ¶¶ 80-83, 88-89, 99-100.

23     On September 29, 2015, Google and Huawei rolled out the Nexus 6P at a San Francisco joint

24   launch event at which they emphasized the phone's high quality, functionality, and premium features.

25   ¶¶ 101-03. Google claimed on its website that the Nexus 6P offers "up to seven hours of battery life

26   from a 10-minute charge" and issued joint press releases and advertising with Huawei promoting

27   Nexus 6P features like its large "3450 mAh battery." ¶¶ 102-06. The Nexus 6P was first delivered to

28   consumers in late October 2015, with most pre-orders not arriving until November. ¶¶ 101, 107.

1    Almost immediately after release, consumers began reporting defect-related problems directly

2    to Google and Huawei, as well as on Google's Nexus 6P product forum, other internet message

3    boards, and social media that Google actively monitored. ¶¶ 101, 119-20, 122-25. The SAC identifies

4    36 examples of these early consumer complaints, the first of which appeared on October 31, 2015,

5    four days after the first Nexus 6P phones shipped and a full year before the first consumer complaints

6    alleged in Plaintiffs' previous complaint. ¶¶ 107, 120. The 36 complaints quoted in the SAC represent

7    a fraction of thousands of complaints from consumers about Nexus 6P problems. *E.g.*, ¶¶ 3, 121-24.

8    Despite numerous opportunities to disclose the defect—*e.g.*, at the launch event, on the Nexus

9    6P's product packaging, during the phone's set-up process, in product advertising, or on its website—

10   Google never informed consumers of the defective nature of the Nexus 6P. ¶¶ 69, 112, 101-06, 127.

## LEGAL STANDARD

12   Google moves to dismiss the SAC pursuant to Rules "9(b), 12(b)(6), and 12(f)" although it does

13   not ask the Court to strike any portions of the SAC. ECF 135 at i. "In this Circuit, a Rule 12(b)(6)

14   motion is 'viewed with disfavor and is rarely granted.'" *Burlington Ins. Co. v. Vikramsinh Devdhara*,

15   No. CV 09-00421 SBA, 2009 WL 2901624, at *5 (N.D. Cal. Sept. 2, 2009) (citation omitted). "When

16   evaluating [a Rule 12(b)(6)] motion, the court must accept all material allegations in the complaint as

17   true, even if doubtful, and construe them in the light most favorable to the non-moving party." *In re*

18   *SunPower Corp. Sec. Litig.*, No. 16-cv- 04710-RS, 2018 WL 1863055, at *2 (N.D. Cal. Apr. 18, 2018)

19   (citation omitted). Plaintiffs are not required to plead "detailed factual allegations" under Rule 8. *Bell*

20   *Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007)

21   ("Specific facts are not necessary; the statement need only give the defendant fair notice of what the

22   claim is and the grounds upon which it rests.") (citations and alteration omitted).

23   Under Rule 9(b), fraud allegations must "be specific enough to give defendants notice of the

24   particular misconduct[.]" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003)

25   (quotation omitted). Rule 9(b) is "relaxed" when "the defendant must necessarily possess full

26   information concerning the facts of the controversy" or "when the facts lie more in" its knowledge.

27   *Doe v. Uber Techs., Inc.*, 184 F. Supp. 3d 774, 790 (N.D. Cal. 2016) (quotation omitted). Rule 9(b)

28   likewise is "somewhat relaxed for claims that are based on fraudulent omissions[.]" *Nutrition*

4

*Distribution, LLC v. New Health Ventures, LLC*, No. 16-cv-2338, 2018 WL 1524488, at *3 (S.D. Cal. Mar. 27, 2018). In addition, Rule 9(b) "does not apply to allegations of knowledge, intent, or 'other conditions of a person's mind.'" *Kowalsky v. Hewlett-Packard Co.*, No. 10-CV-02176-LHK, 2011 WL 3501715, at *3 (N.D. Cal. Aug. 10, 2011) (quoting FED. R. CIV. P. 9(B)).

Claims brought under the unlawful and unfair prongs of the UCL and Song-Beverly that do not sound in fraud need only satisfy the requirements of Rule 8. *See Vess*, 317 F.3d at 1104-05; *Gertz v. Toyota Motor Corp.*, No. CV 10-1089 PSG, 2011 WL 13142144, at *3 n.4 (C.D. Cal. Apr. 28, 2011) ("[T]o the extent that Plaintiffs' § 17200 claim arises from allegations related to breach of warranty as opposed to fraud, their UCL claim would . . . be subject to the more liberal Rule 8 standard.").

## ARGUMENT

## I.  PLAINTIFFS' SONG-BEVERLY CLAIMS AGAINST GOOGLE SHOULD PROCEED.

Google repeats its argument that it was not a "manufacturer" under Song-Beverly and that Gorbatchev and Christensen do not allege that title passed to them in California. ECF 135 at 2. Both arguments are unavailing. First, Plaintiffs now expressly allege that Google was a manufacturer of the Nexus 6P and that it entered into a joint venture with Huawei to produce the devices. ¶¶ 75-77, 190. Second, Gorbatchev and Christensen allege that they purchased their phones in California, satisfying the Song-Beverly pleading requirement. ¶¶ 27, 30.

### A.  The SAC Adequately Alleges That Google Was a Manufacturer of the Nexus 6P.

Under California Civil Code § 1791(j), a "manufacturer" is "any individual, partnership, corporation, association, or *other legal relationship that manufactures, assembles, or produces consumer goods*." *Id.* (italics added). Joint venturers are in a "legal relationship," *Oakland Raiders v. Nat'l Football League*, 131 Cal. App. 4th 621, 632 (2005), and are liable for each other's wrongful acts committed within the scope of their partnership. *Zemelman v. Boston Ins. Co.*, 4 Cal. App. 3d 15, 18 (1970); *see also Weiner v. Fleischman*, 54 Cal. 3d 476, 482 (1991) (stating that "[t]he distinction between joint ventures and partnerships is not sharply drawn" and, "[f]rom a legal standpoint, both relationships are virtually the same."). The SAC alleges, and neither Defendant disputes, that Google was in a legal relationship—a joint venture—with Huawei to produce the Nexus 6P. ¶¶ 75, 138-40. As a result, Google is a manufacturer of the Nexus 6P within the plain meaning of section 1791(j). ¶ 76.

5

1     Joint venture allegations aside, Plaintiffs specifically allege that Google was a manufacturer of

2  the Nexus 6P. Google publicly held itself out as a manufacturer, telling the press that "Nexus is built

3  by the same people who build" the phones' operating system. ¶ 77. In claiming for litigation purposes

4  that it was merely a product designer, Google asks the Court to ignore Plaintiffs' allegations that

5  Google "controlled the manufacturing" of the Nexus 6P in specific ways. ¶ 81; *see In re SunPower*

6  *Corp. Sec. Litig.*, 2018 WL 1863055, at *2. Google admits the SAC alleges that it "was something like

7  a co-manufacturer" (ECF 135 at 2), but ignores Plaintiffs' allegations that Google employees "were on

8  the Nexus 6P manufacturing line" and public statements from its employees that Google controlled

9  key manufacturing processes. ¶¶ 80-81; *see* CAL. CIV. CODE § 1791(j). The SAC specifies Defendants'

10  respective functions in manufacturing the Nexus 6P. *E.g.*, ¶¶ 77 (Google was responsible for designing

11  and developing the phone's Android operating system, and controlled significant aspects of the

12  phone's design and manufacturing); 80-81 (during production Google led efforts to integrate

13  components like the camera, micromanaged details such as the phone's screws, and mandated that all

14  aluminum leftovers be collected and recycled). Contrary to Google's claim, these allegations are more

15  than "generalized allegations" of its manufacturing role. ECF 135 at 3.

16     None of Google's authorities justifies a finding that it was not a manufacturer. *Webb v. Special*

17  *Electric Co., Inc.* did not involve a Song-Beverly claim or address the definition of a manufacturer. 63

18  Cal. 4th 167, 180 (2016). In Google's Ninth Circuit cases, there was no dispute that the defendants

19  were manufacturers. *See Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1223 (9th Cir. 2015) (automobile

20  manufacturer); *Jenkins v. Whittaker Corp.*, 785 F.2d 720, 724 (9th Cir. 1986) (military product

21  manufacturer). Similarly, in *Mega RV Corporation. v. HWH Corporation*, it was undisputed *at trial*

22  that the defendant manufactured only "hydraulic components incorporated . . . into the motor home

23  ultimately sold[.]" 225 Cal. App. 4th 1318, 1322 (2014). But, here, Plaintiffs have *not* alleged that

24  Google was only a component manufacturer; they allege that Google manufactured the Nexus 6P,

25  including through its joint venture with Huawei and by controlling the manufacturing process and

26  placing its employees on the line. ¶¶ 76-81.

27     Google contests the factual basis for certain of Plaintiffs' allegations that Google was a

28  manufacturer. *See* ECF 135 at 3-4. But Plaintiffs have addressed the concern the Court previously

1     raised and "need not *prove* anything at the motion to dismiss stage," when the Court accepts well-pled

2     allegations as true. *Delk v. Ocwen Fin. Corp.*, No. 3:17-cv-02769-WHO, 2017 WL 3605219, at *10

3     (N.D. Cal. Aug. 21, 2017) (emphasis in original). The Court should reject Google's fact-based

4     challenges to the sources of the SAC's allegations about Google's role in the manufacturing process.

5     *In re Sony Vaio Computer Notebook Trackpad Litig.*, No. 09CV2109 BEN RBB, 2010 WL 4262191,

6     at *3 (S.D. Cal. Oct. 28, 2010) (rejecting attempt to "require the Court to view Plaintiffs' complaint in

7     the light most favorable to *Defendants*, rather than *Plaintiffs*, ignore allegations, and go beyond the

8     allegations of Plaintiffs' complaint.") (emphasis in original). In addition to being procedurally

9     improper, Google's fact-based arguments lack merit: That Google dictated recycling leftover

10    aluminum is consistent with its control over the manufacturing process, and a Reddit statement

11    referring to Huawei as a "Nexus manufacturing partner" (ECF 135 at 4) supports Plaintiffs' allegations

12    that Google and Huawei were co-manufacturers and joint venturers in producing the Nexus 6P.

13         **B.     Gorbatchev and Christensen Purchased Their Phones in California.**

14         Google does not contest the fact that Makcharoenwoodhi purchased his Nexus 6P in California,

15    but maintains that Gorbatchev and Christensen, who purchased their Nexus 6P phones while in

16    California, have failed to allege California purchases. ¶¶ 27, 30, 189. Google contends that Gorbatchev

17    and Christensen must plead not only that they were in California when they bought the phones, but

18    also that they took title to the phones in California. ECF 135 at 4. As Google's own authority holds,

19    however, that further allegation is unnecessary. *See In re Seagate Tech. LLC Litig.*, No. 16-cv-00523-

20    JCS, 2017 WL 3670779, at *16 (N.D. Cal. Aug. 25, 2017) ("allegation that [plaintiff] purchased drives

21    in California" sufficient to satisfy pleading requirements for Song-Beverly). The court in *Seagate*

22    *rejected* the position Google advances, holding that "implied warranty claims [under Song-Beverly]

23    are not subject to a heightened pleading requirement" and there is no need to allege where the

24    defendant is based or where its product was shipped from. *Id.* at *16.

25         This principle is unaffected by Google's other cited authorities and argument that its Terms of

26    Sale ("TOS") reference shipment. The TOS make no mention of the location from which products

27    purchased from the Google Store were shipped. Questions concerning shipping and the passage of title

28    are issues of fact appropriately resolved at summary judgment or trial. *See, e.g.*, *Gusse v. Damon*

*Corp.*, 470 F. Supp. 2d 1110, 1115 (C.D. Cal. 2007) (deciding at summary judgment the issue of where title to goods passed for purposes of the Song-Beverly). Google's other authorities are inapposite. *See Davis v. Newmar Corp.*, 136 Cal. App. 4th 275, 277 (2006) (evidence at trial showed the plaintiff took delivery in Nevada); *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1138, 1155 (N.D. Cal. 2010) (no facts suggested the sale took place in California); *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1107 (N.D. Cal. 2015) (no allegation that plaintiffs purchased in California).

Accordingly, Google's challenges to the Song-Beverly claim fail.

## II.     PLAINTIFFS' OMISSIONS-BASED CLAIMS AGAINST GOOGLE ARE ADEQUATELY PLED.

The Court previously dismissed Plaintiffs' affirmative misrepresentation claims, concluding that Google's statements—except the "get up to seven hours" statement—were not actionable and that Plaintiffs did not allege reliance. ECF 115 at 69-70. Plaintiffs no longer assert affirmative misrepresentation claims. Their fraudulent concealment and omissions claims against Google, at common law and under the CLRA and the UCL's fraud prong, require pleading that: Google concealed or suppressed a material fact, was under a duty to disclose the fact to Plaintiffs, and concealed or suppressed the fact with the intent to defraud Plaintiffs; that Plaintiffs were unaware of the fact and would not have acted as they did had they known of the concealed or suppressed fact; and that Plaintiffs sustained damage as a result of the concealment or suppression of the fact. *See Hahn v. Mirda*, 147 Cal. App. 4th 740, 748 (2007). These claims "can succeed without the same level of specificity required by a normal fraud clam" because Plaintiffs may "not be able to specify the time, place, and specific content of an omission as precisely[.]" *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1098-99 (N.D. Cal. 2007). Taking Plaintiffs' enhanced allegations as true, the SAC plausibly raises an inference of Google's knowledge; and Google's reliance argument simply misstates the law.

### A.     The SAC Sufficiently Pleads Facts Showing That Google Had a Duty to Disclose.

Plaintiffs allege Google had a duty to disclose the Nexus 6P defect because of (1) its exclusive knowledge and (2) active concealment of the defect, and (3) its partial, misleading representations. *See* ¶¶ 209-11, 219-20, 229-37; *see O'Shea v. Epson Am., Inc.*, No. CV 09-8063, 2010 WL 11459911, at *3 (C.D. Cal. Mar. 5, 2010). To plead a duty to disclose, a plaintiff "must allege that [the defendant]

8

1    knew, or by the exercise of reasonable care should have known, of the alleged defect[.]" *Kowalsky*,

2    2011 WL 3501715, at *4. This Court previously dismissed the CAC's omissions-based claims because

3    its knowledge allegations lacked the "crucial temporal element"—the consumer complaints in the

4    CAC largely appeared after Plaintiffs' purchases, while the CAC's pre-release testing allegations were

5    too conclusory. ECF 115 at 7-8. The SAC remedies these deficiencies. The 36 complaint examples

6    cited in the SAC appeared almost immediately after the Nexus 6P was released in October 2015, and

7    include 27 complaints within the first two months of release. ¶ 120. Plaintiffs have also supported their

8    knowledge allegations with details regarding Google's pre-release testing. ¶¶ 85-100.

9                    **i.    Google Misstates the Pleading Standard for Knowledge.**

10           Google bases its challenge to the SAC's knowledge allegations upon an erroneous construction

11    of the pleading standard under which Plaintiffs' consumer complaint and testing allegations can be

12    taken apart and explained away in isolation. ECF 135 at 11, 14 at n.4. Yet Plaintiffs "should be given

13    the full benefit of their proof without tightly compartmentalizing the various factual components and

14    wiping the slate clean after scrutiny of each." *Visa U.S.A. Inc. v. First Data Corp.*, No. C 02-01786

15    JSW, 2006 WL 1310448, at *11 (N.D. Cal. May 12, 2006) (citation omitted). Faced with a Rule 12

16    motion, the Court accepts all complaint allegations as true, considers them as a whole, and draws all

17    reasonable inferences in Plaintiffs' favor. *Association for L.A. Deputy Sheriffs v. County of Los*

18    *Angeles*, 648 F.3d 986, 991 (9th Cir. 2011). Under this standard, even one pre-purchase complaint may

19    create a plausible inference of knowledge when "combine[d] with other indicia of knowledge[.]"

20    *Wildin v. FCA US LLC*, No. 3:17CV-02594-GPC-MDD, 2018 WL 3032986, at *4 (S.D. Cal. June 19,

21    2018). Moreover, under the plain language of Rule 9(b), knowledge of fraud can be alleged generally.

22    *United States ex rel. Silingo v. WellPoint, Inc.*, No. 16-56400, — F.3d —, 2018 WL 3341038, at *8

23    (9th Cir. July 9, 2018); *United States v. Corinthian Colleges*, 655 F.3d 984, 996 (9th Cir. 2011). Thus,

24    "[s]pecificity is not required . . . in pleading knowledge or intent on the part of the defendants."

25    *Aguilar v. Gen. Motors, LLC*, No. 1:13-CV-00437-LJO-GS, 2013 WL 5670888, at *5 (E.D. Cal. Oct.

26    16, 2013) (noting that the plaintiff's "ability to make more detailed allegations as to the source and

27    contents of GM's exclusive knowledge of the steering defect is limited prior to discovery").

28

ii.     **Google Had a Duty to Disclose Because of Its Exclusive Knowledge.**

a.      **The Subset of Consumer Complaints Excerpted in the SAC Generate a Plausible Inference That Google Was Aware of the Nexus 6P Defect.**

The SAC's subset of thousands of consumer complaints plausibly establishes that Google knew of the Nexus 6P defect before Plaintiffs bought their phones. ¶¶ 3, 120; *see, e.g.*, *Huntzinger v. Aqua Lung Am., Inc.*, No. 15CV1146 WQH (KSC), 2015 WL 8664284, at *8 (S.D. Cal. Dec. 10, 2015); *In re Sony Vaio*, 2010 WL 4262191, at *5. Google acknowledges that the SAC contains a "bigger handful" of complaints with "earlier dates." ECF 135 at 7. The allegations in the SAC show that consumers began reporting random reboots and unexplained battery drain shortly after the Nexus 6P was released in late October 2015. ¶¶ 3, 119-20. Consumers lodged complaints on Google's own Nexus 6P product forum and on third-party websites like Reddit and Twitter that Google admittedly monitored. ¶¶ 120, 122, 125, 135. Google incorrectly treats these complaints as reflecting the entire universe of consumer complaints, even though the SAC alleges there were thousands. *Compare* ECF 135 at 8, *with* ¶¶ 3, 120-21, 124, 133. Google thus follows a strategy of parsing the complaints cited in the SAC and making the fact-based argument that some are unrelated to the defect. ECF 135 at 7. But, in addition to being procedurally improper, Google's argument ignores that the complaints it contests match Plaintiffs' description of the defect, referencing random reboots and unexplained battery drain.

Google's argument misreads the SAC, which does not allege a defect limited to causing a fatal bootloop. Rather, the defect also causes accelerated battery drain, random shutdowns, and freezing— problems that arise from the same defect that ultimately triggers the bootloop. *Compare* ECF 135-1 at 1-2 (complaints about "random" rebooting), *with* ¶¶ 113-18. Plaintiffs allege that "after a period of operation, the Nexus 6P randomly shuts down, suffers from accelerated battery drain even when displaying a near full charge, freezes, and ultimately fails permanently in an endless rebooting cycle." ¶ 113. For some users, the defect manifests without warning and causes their phone to bootloop. ¶ 118. For others, the defect initially causes unexplained reboots, freezing, and shutdowns—warning signs of what is yet to come. *Id.* Plaintiffs' own experiences demonstrate these problems relate to the underlying defect. *E.g.*, ¶¶ 29 (two months of random shutdowns and reboots before Gorbatchev's phone bootlooped), 32 (at least a month of accelerated battery drain and repeated random shutdowns

10

before Christensen's phone bootlooped), 36 (accelerated battery drain and random shutdowns for a month before Martorello's phone bootlooped). Each of the 17 complaints identified in Google's Appendix A describes random reboots consistent with the onset of the defect in Plaintiffs' description.

Google challenges one complaint by claiming that it "is entirely unclear as to the alleged defect (SAC ¶ 120, first Nov. 10 complaint)," but that complaint was posted within a thread on Google's Nexus 6P forum that describes random reboots. ECF 135 at 9; ECF 135-1 (Comment 2). Google attempts to trivialize seven other complaints on the ground that they relate to batteries "los[ing] charge faster than a user expects" (ECF 135 at 9), but those instances of unexplained battery drain match Plaintiffs' allegations that the defect "[a]t first causes a noticeable decrease in battery life[.]" ¶ 118.

Google further contends that only an "unusual" number of consumer complaints can show knowledge. ECF 135 at 8-9. Google cites *Williams v. Yamaha Motor Co.*, where the Ninth Circuit held that the plaintiffs sufficiently *supported* their claim of presale knowledge with allegations that many consumers complained about the defect and there was "some evidence that defendant actually *received* the complaints . . . ." 851 F.3d 1015, 1027 (9th Cir. 2017) (emphasis in original). Here too, Plaintiffs allege that "[m]any consumers" complained directly to Google and Huawei as well as on social media, internet message boards, and product pages Defendants actively monitored. ¶¶ 119-25.

In *Baba v. Hewlett-Packard Company*, cited by Google, the plaintiffs relied solely on consumer complaints to allege knowledge; yet only three complaints were plausibly made to the defendant prior to their purchases. No. C 09-05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011). *Baba* is unpersuasive, as Plaintiffs here base their knowledge allegations in part on Google's presale testing and joint venture with Huawei, and allege that the 36 SAC complaints are a representative *sampling* of *thousands* of consumer complaints. ¶¶ 3, 121; *see Falk*, 496 F. Supp. at 1096 (allegation that the defendant received "numerous complaints" created inference of knowledge); *Elias v. Hewlett-Packard Co.*, No. 12-CV-00421-LHK, 2014 WL 493034, at *8 (N.D. Cal. Feb. 5, 2014) ("numerous customer complaints" together with other allegations created inference of knowledge). Google's Request for Judicial Notice itself refutes its mistaken assumption that the 36 SAC complaints are an exhaustive list. The thread on Google's product forum devoted to random reboots includes many other complaints that Plaintiffs, for the sake of brevity, omitted from the SAC. *See* ECF 136-2 at 13-16 (additional 2015

11

1    complaints referring to random reboots dated November 29 and 30 and December 3, 4, 5, 9, 10, 13,

2    14, 17, and 23), *id.* at 17-42 (showing that complaints continued through all of 2016).

3         Google's remaining authorities do not suggest that the number of complaint examples

4    reproduced in the SAC is insufficient as a matter of law. ECF 135 at 9. Unlike the SAC, which

5    provides a sampling of 36 complaints made within nine *months* of release, three of Google's cases

6    involved consumer complaints spread out over seven to ten *years*. *See Sloan v. Gen. Motors LLC*, No.

7    16-CV-07244-EMC, 2017 WL 3283998, at *7 (N.D. Cal. Aug. 1, 2017) (no indication that 81

8    complaints over the course of seven years was unusually high); *Deras v. Volkswagen Grp. of Am.*,

9    Inc., No. 17-CV-05452-JST, 2018 WL 2267448, at *4 (N.D. Cal. May 17, 2018) (45 complaints over

10   "a period of seven years and four months" not unusual); *Stewart v. Electrolux Home Products., Inc.*,

11   No. 1:17-CV-01213-LJO-SKO, 2018 WL 1784273, at *8 (E.D. Cal. Apr. 13, 2018) (only 24

12   complaints despite allegations that "every single residential electrical oven" the defendant sold for 10

13   years was defective). Google also misreads *Berenblat v. Apple, Inc.*, No. 08-4969 JF (PVT), 2010 WL

14   1460297 (N.D. Cal. Apr. 9, 2010). There, the court held that Apple's alleged deletion of "a discussion

15   thread containing over 350 posts from its website" was the "only allegation arguably reflecting an

16   intent to conceal," and insufficient to show *active concealment*. *Id.* at *9. The question here is

17   Google's presale knowledge—and the SAC sufficiently alleges it.

          **b.     Plaintiffs' Pre-release Testing Allegations Demonstrate Google's**
18
                   **Knowledge.**
19

20        Consistent with the Court's Order, Plaintiffs have added detailed allegations showing that

21   Google conducted pre-release testing with Huawei that revealed, or reasonably should have revealed,

22   the defect. ¶¶ 75-100. Google's efforts to undermine these allegations lack merit. ECF 135 at 10-14.

23        **1.     The SAC Does Not Impermissibly Group Plead.**

24        Plaintiffs allege that Google and Huawei conducted product testing and exchanged information

25   as part of their joint venture. Discovery should answer Google's question of "who was doing what?"

26   ECF 135 at 10. At the pleading stage, Google's exact role in various phases of pre-release testing lies

27   within Google's exclusive knowledge and therefore "the requirement of specificity is relaxed . . . ."

28   *Comerica Bank v. McDonald*, No. C06-03735 RMW, 2006 WL 3365599, at *2 (N.D. Cal. Nov. 17,

12

2006) (citation omitted); *see also Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053, 1062 (C.D. Cal. 2015). Google cites no authority for the proposition that alleging Google and Huawei jointly engaged in pre-release testing constitutes impermissible group pleading. It is entirely plausible for a joint venture to involve such joint conduct. *See Oushana v. Lowe's Companies, Inc.*, No. 1:16-CV-01782-AWI-SAB, 2017 WL 5070271, at *5 (E.D. Cal. Nov. 3, 2017) (alleging that both defendants engaged in same wrongful conduct does not necessarily constitute impermissible group pleading); *Friedman v. Zimmer*, No. CV 15-502 GHK (Ex), 2015 WL 6164787, at *2 (C.D. Cal. July 10, 2015).

Likewise, Google and Huawei exchanged information over the course of their joint venture. ¶¶ 77-84, 109, 128. Partnership law applies to joint ventures, and "[l]ike partners, joint venturers are fiduciaries with a duty of disclosure[.]" *Weiner*, 54 Cal. 3d at 482; *see also Stewart*, 2018 WL 1784273, at *8 (plaintiffs sufficiently alleged that the defendant would have been aware of information in the possession of a co-defendant given the nature of their relationship). Moreover, under "[w]ell established concepts of partnership" law, each Defendant's knowledge and actions may be imputed to the other. *Friend v. H. A. Friend & Co.*, 416 F.2d 526, 533 (9th Cir. 1969); *accord Bedolla v. Logan & Frazer*, 52 Cal. App. 3d 118, 128 (1975). Google's reliance on *Sebastian Brown Products, LLC v. Muzooka, Inc.* undermines its argument. 43 F. Supp. 3d 1026 (N.D. Cal. 2015). In that case the plaintiff alleged that the defendants—a corporate defendant and two of its officers—had infringed the plaintiff's trademarks, and the complaint attributed conduct to "Defendants" collectively. *Id.* at 1036-37. The court concluded that the complaint did *not* impermissibly lump the defendants together because, like Plaintiffs here, the plaintiff was alleging that the defendants had engaged in the same conduct, so each defendant had sufficient notice to defend the claims asserted. *Id.* at 1037.

### 2.   The SAC Includes Particularized Allegations of Product Testing.

The SAC's testing allegations incorporate statements from Google and describe how specific testing performed by Defendants did, or should have, put Google on notice of the defective nature of the Nexus 6P. ¶¶ 85-100. In attacking these allegations, Google demands a degree of specificity that is not required at the pleading stage. ECF 135 at 11-14. For example, without citing any supporting law, Google criticizes Plaintiffs for not pinning down (without discovery) the root cause of the defect. ECF 135 at 12. That sort of causal detail is not required to plead knowledge. *See In re Toyota Motor Corp.*

13

*Unintended Acceleration Mktg., Sales Practices & Prod. Liab. Litig.*, 754 F. Supp. 2d 1208, 1221 (C.D. Cal. 2010) ("Toyota demands a level of specificity that is not required at the pleading stage. The defect is identified: Plaintiffs' cars suddenly and unexpectedly accelerate and do not stop upon proper application of the brake pedal."); *Edenborough v. ADT, LLC*, No. 16-CV-02233-JST, 2016 WL 6160174, at *5 (N.D. Cal. Oct. 24, 2016) ("Plaintiff's complaint need not specify in detail the exact methods of hacking to which ADT knew its devices were vulnerable. Rather, Plaintiff need only generally allege that ADT had knowledge of, and withheld, a material fact").

Numerous courts have upheld concealment claims based on similar allegations of pre-release testing and consumer complaints. *See, e.g., Davidson v. Apple, Inc.*, No. 16-CV-4942-LHK, 2017 WL 3149305, at *15 (N.D. Cal. July 25, 2017) (allegations that Apple performed specific types of testing and received consumer complaints adequately pled knowledge); *Huntzinger*, 2015 WL 8664284, at *8 ("Plaintiff alleges . . . knowledge . . . based on consumer complaints and based on Defendant's repairs on Dive Computers. . . . These factual allegations are sufficient to support an inference that the Defendant knew of the defects that existed in the Dive Computers and failed to disclose the material defect to consumers while continuing to market and distribute the Dive Computers."); *Kowalsky*, 2011 WL 3501715, at *4-5 (claims based on standard industry pre-release testing and consumer complaints showed knowledge); *Apodaca v. Whirlpool Corp.*, No. SACV 13-00725 JVS, 2013 WL 6477821, at *8 (C.D. Cal. Nov. 8, 2013) ("[T]he FAC also alleges that Defendant had exclusive knowledge through testing at the design stage that would have revealed the alleged defect and numerous consumer complaints of the defect. These allegations are sufficiently detailed to survive a motion to dismiss."); *Aguilar*, 2013 WL 5670888, at *5-6 (same); *Falk*, 496 F. Supp. 2d at 1096 (same).

Similarly here, the SAC's allegations demonstrate Google knew or reasonably should have known about the defect through pre-release testing. To begin with, Plaintiffs define the defect: the Nexus 6P experiences random shutdowns, accelerated battery drain, and eventually enters a permanently disabling bootloop cycle. ¶ 113. Plaintiffs also identify likely causes: (1) damaged or defective internal components; (2) loose connections between internal components; and/or (3) overheating and ineffective thermal management which, in turn, may cause internal damage. ¶¶ 86, 93-94, 96. Furthermore, Plaintiffs allege specific facts relating to Google and Huawei's pre-release

testing, including when it occurred: between February and September 2015. ¶¶ 82-83, 101. Based in part on contemporaneous statements from Google engineers, Plaintiffs affirmatively allege that Google and Huawei each conducted pre-release testing of the Nexus 6P. ¶¶ 78-82, 85, 96.

Most importantly, Plaintiffs allege why the pre-release testing reasonably should have revealed the defect at issue. The kind of testing Google and Huawei performed—*e.g.*, testing thousands of prototype phones for durability, including of internal components and connections, and testing for overheating and thermal problems—was specifically geared to detect and identify prior to release the types of problems that have afflicted the Nexus 6P. ¶ 92. Defendants' equipment ranged from machinery used to test the strength of the components and connections to advanced microscopes and imaging software used to examine the Nexus 6P's circuitry and components (like the Snapdragon 810 processor that was known at the time for thermal management problems) down to a microscopic level for overheating and thermal management problems. ¶¶ 91-97. The Nexus 6P's battery also was subjected to testing by reference to the standards of the CTIA wireless trade association. ¶ 98.

The problems that have plagued the Nexus 6P are associated with loose connections, defective internal components, or overheating and inadequate thermal management—all of which Defendants' pre-release testing should have disclosed. ¶¶ 92-93. As the SAC alleges: "Damage or defects in any of the delicate circuits, wires, solder joints, and components may impact the flow of electrical current and result in component failure. When such failure occurs, the smartphone may freeze, randomly shut down, or bootloop." ¶ 93. Thus, Google's alleged testing of the Nexus 6P's circuits, wires, solder joints, and components gave it (or reasonably should have given it) notice of the defect. ¶¶ 96-97, 100; *see Starr v. Baca*, 652 F.3d 1202, 1213 (9th Cir. 2011) (a plaintiff need only allege enough facts "to raise a reasonable expectation that discovery will reveal evidence" of the alleged wrongdoing).

None of Google's cases suggests that allegations more specific than these are needed. ECF 135 at 11-14. In *Stewart*, the court stated that although "knowledge allegations do not require specificity pursuant to Rule 9(b)," the testing allegations amounted to nothing more "than an assumption the manufacturer monitored product performance after-market." 2018 WL 1784273, at *9-10. Unlike in *Stewart*, Plaintiffs allege that Google in fact did test the product, how it tested the product, and why that testing should have shown the defect. These SAC allegations also distinguish *Burdt v. Whirlpool*

1   *Corporation*, where the testing allegations consisted of a single conclusory sentence that the defendant

2   "engages in extensive pre-release testing that would have shown that the racks in the Subject Ovens

3   are prone to slipping or becoming dislodged." C 15-01563 JSW, 2015 WL 4647929, at *4 (N.D. Cal.

4   Aug. 5, 2015); *see also Grodzitsky v. American Honda Motor Company*, No. 2:12-CV-1142-SVW-

5   PLA, 2013 WL 690822, at *6 (C.D. Cal. Feb. 19, 2013) (bare knowledge allegations invoked "sources

6   unavailable, such as pre-release testing data, early consumer complaints"). So too, the conclusory

7   knowledge allegations in Google's other cases fell short of the detailed allegations in the SAC. *See*

8   *Resnick v. Hyundai Motor Am., Inc.*, No. CV 16-00593 BRO (PJWx), 2017 WL 1531192, at *14 (C.D.

9   Cal. Apr. 13, 2017) (general "concerns" were insufficient when it was unclear if the "concerns" were

10   ever communicated to the defendant, and testing allegations were "entirely speculative" and did not

11   establish when the testing occurred); *Deras*, 2018 WL 2267448, at *5 (plaintiff did not explain how

12   defendant's monitoring system would have provided knowledge about the defect).

13       In sum, when the Court construes Plaintiffs' pre-release testing and customer complaint

14   allegations together, the inference arises that Google knew about the defect before selling the phone.

15   Gorbatchev and Leone, who bought their phones before the first consumer complaint was made on

16   October 31, 2015, have therefore adequately alleged Google's pre-sale knowledge. *See In re MyFord*

17   *Touch Consumer Litig.*, 46 F. Supp. 3d 936, 958 (N.D. Cal. 2014).

18       **iii.   Google Had a Duty to Disclose Because It Actively Concealed the Defect.**

19       Google also contends Plaintiffs' fraudulent concealment claims are deficient because Plaintiffs

20   do not sufficiently allege Google's intent to conceal the defect. ECF 135 at 20. "A fraudulent omission

21   claim based on active concealment requires that Plaintiff allege specific affirmative acts on the part of

22   the defendants in hiding, concealing or covering up the matters complained of." *Elias*, 2014 WL

23   493034, at *10 (citation and internal quotation marks omitted).

24       The allegations here of Google's knowledge of the defect, along with its refusal to provide

25   warranty service, sufficiently plead active concealment. *See Tietsworth v. Sears*, 720 F. Supp. 2d 1123,

26   1134-35 (N.D. Cal. 2010) ("Plaintiffs also allege that Defendants actively concealed this information

27   when 'Plaintiffs and Class members contacted Sears for service of their defective Machines and were

28   either told the Machines were not defective or denied free service or replacement'").

1   Plaintiffs allege that even though Google had known of the defect for at least a year, when

2   Google finally admitted in September 2016 that it was investigating defect-related problems, it

3   nevertheless sought to downplay the severity and scope of the problems, stating that they affected "a

4   very small number of users" and that poor battery life after a system update was "not uncommon." ¶¶

5   134-36. On December 27, 2016, after acknowledging its joint investigation with Huawei, Google

6   again minimized the defect's severity and pervasive nature. ¶ 136. Even after these statements, Google

7   rebuffed consumers who sought warranty services for defect-related problems. For example, Google

8   refused to help Christensen, blaming Huawei. ¶ 32; *see also* ¶¶ 40 (Beheler), 44 (Davydov), 50

9   (Himes), 53 (Jones), 56 (Servodio), 61 (Leone), 64 (Poore), 67 (Johnston), 128-33 (blame shifting).

10   Further demonstrating intent to conceal, Google replaced defective phones with other defective

11   phones. ¶¶ 61, 132-33; *see Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 999 (N.D. Cal. 2013)

12   (replacing defective parts with other defective parts supports an inference of intent to conceal).

### iv.   Google Had a Duty to Disclose Because It Made Partial Representations.

14   Plaintiffs further allege that Google had a duty to disclose because it made partial

15   representations about the Nexus 6P without informing consumers of the defect. ¶¶ 101-12. Google

16   moves to dismiss these claims, arguing that they invoke non-actionable puffery and that Plaintiffs must

17   provide representative advertisements. ECF 15-16, 19. These arguments fail. Whether the

18   representations are puffery is irrelevant—"the concept of puffery applies only to affirmative

19   misrepresentation claims" and not to the fraudulent concealment and omissions claims in the SAC.

20   *Finney v. Ford Motor Co.*, No. 17-CV-06183-JST, 2018 WL 2552266, at *8 (N.D. Cal. June 4, 2018).

21   Relatedly, Plaintiffs need not present representative samples when their claims do not stem from

22   a particular misleading advertisement. Several courts have declined to follow *Marolda v. Symantec*

23   *Corporation*, 672 F. Supp. 2d 992, 996 (N.D. Cal. 2009), because it "concerned an alleged omission

24   within a particular advertisement, which the plaintiff had failed to produce or adequately describe" and

25   therefore its "requirements are not necessarily appropriate for all cases alleging a fraudulent

26   omission." *MacDonald v. Ford Motor Co.*, 37 F. Supp. 3d 1087, 1096 (N.D. Cal. 2014) (citation

27   omitted); *see, e.g., Bryde*, 2016 WL 6804584, at *14 ("Like other courts in this district, I find

28   *MacDonald* more on point than *Marolda*."); *Velasco v. Chrysler Grp. LLC*, No. CV 13-08080 DDP

(VBKx), 2014 WL 4187796, at *4 (C.D. Cal. Aug. 22, 2014) (same). Because Plaintiffs' omissions causes of action do not revolve around a particular advertisement, but instead involve numerous opportunities to disclose—*e.g.*, advertisements, the launch event, Google's website, the product packaging, and the phone's setup process—representative samples are not required to state a claim.

The remaining cases relied upon by Google do not support dismissal. None involved consumer fraud claims, and all involved specific documents that were either insufficiently described or not attached to the complaint. ECF 135 at 16; *see Senah, Inc v. Xi'An Forstar S&T Co, Ltd*, No. 13-CV-04254-BLF, 2015 WL 905997, at *3 (N.D. Cal. Mar. 2, 2015) (plaintiff did not attach the email or describe its contents in detail); *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (plaintiffs failed to identify the prospectuses they alleged were misleading); *Crayton v. Rochester Med. Corp.*, No. 1:07 CV-01318-OWW-GSA, 2008 WL 3367604, at *7-8 (E.D. Cal. Aug. 8, 2008) (*pro se* plaintiff did not attach or describe the allegedly fraudulent product instructions).

### B. California Law Does Not Require Plaintiffs to Allege a Safety Hazard.

Google argues that Plaintiffs' CLRA and UCL fraud claims fail absent a safety hazard. ECF 135 at 14. Google's argument is at odds with California law: the "safety hazard pleading requirement is not necessary in *all* omission cases, but . . . may remain applicable in some circumstances" such as "where the defect in question does not go to the central functionality of the product." *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir. 2018) (emphasis in original) (citing *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249 (2011), and *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015)).

Google does not contest that the alleged defect goes to the central functionality of the Nexus 6P. Instead, it observes that *Hodsdon* declined to overrule *Wilson v. Hewlett-Packard Company*, 668 F.3d 1136 (9th Cir. 2012), but fails to address *Hodsdon*'s reasoning. As explained in *Hodsdon*, there is no need for the full Ninth Circuit to overrule its *Wilson* holding because a safety hazard still may be required if the defect "does not go to the central functionality of the product." 891 F.3d at 864. Under *Hodsdon*, Plaintiffs need not allege a safety hazard as a prerequisite to Google's duty to disclose because the defect goes to the central functionality of the Nexus 6P.

*Hodsdon* aside, courts have recognized that alleging a safety hazard is not required where, as here, the defect arises within the warranty period. *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 868

18

1   (N.D. Cal. 2018) ("a pivotal fact in both *Wilson* and *Williams* was that the alleged defect did not

2   manifest until *after* the warranty period" and "*Wilson* made clear that a safety issue must be alleged

3   only when it arises *after* the warranty period.") (emphasis in original); *Apodaca*, 2013 WL 6477821, at

4   *7 (collecting cases). Without citing any authority, Google argues that *Sloan*'s reasoning is

5   inapplicable because it did not provide a warranty. ECF at 15. This argument fails for two reasons.

6   First, Google's joint venturer Huawei provided a warranty, and joint venturers are mutually

7   responsible for acts committed within the scope of their partnership. *Zemelman*, 4 Cal. App. 3d at 18.

8   Second, a company is not absolved of its duty to disclose a material fact where it did not warrant a

9   product as the duty may exist even absent any warranty at all. *See, e.g.*, *Herron v. Best Buy Co. Inc.*,

10  924 F. Supp. 2d 1161, 1176 (E.D. Cal. 2013); *Edenborough*, 2016 WL 6160174, at *4.

11  **C.    Plaintiffs Adequately Plead Reliance Upon Google's Material Omissions.**

12  Google maintains that Plaintiffs' partial representation claims (but not the claims based on

13  active concealment or exclusive knowledge) should be dismissed for failure to allege reliance on an

14  advertisement. ECF 135 at 15-16, 19. But "an omissions case does not necessarily require a plaintiff to

15  have viewed an advertisement at all. Rather, a plaintiff's ultimate burden at trial is to present sufficient

16  evidence to 'establish a plausible method of disclosure and to establish that they *would have been*

17  *aware* of information disclosed using that method.'" *Sloan*, 287 F. Supp. 3d at 874 (emphasis in

18  original) (quoting *Daniel*, 806 F.3d at 1226); *see also Bryde v. Gen. Motors, LLC*, No. 16-CV-02421-

19  WHO, 2016 WL 6804584, at *12 (N.D. Cal. Nov. 17, 2016) (plaintiffs need not allege that they

20  viewed or relied on specific advertising so long as they plausibly allege they would have been aware

21  of a statement disclosing the complete truth). Hence, the reliance element for omissions claims has two

22  aspects: (1) materiality, or "whether one would have behaved differently"; and (2) that Plaintiffs

23  would have been aware of an accurate disclosure. *Sloan*, 287 F. Supp. 3d at 874-75; *Hynix Semicond.*

24  *Inc. v. Rambus Inc.*, No. C-05-02298, 2007 WL 4209399, at *7 (N.D. Cal. Nov. 26, 2007).

25  As to materiality, an omission is material if "a reasonable person would find it important in

26  determining how he or she would act." *Hoffman v. 162 N. Wolfe LLC*, 228 Cal. App. 4th 1178, 1194

27  (2014). Plaintiffs allege that had they known about the defect—which prevents users from using the

28  phone or using it as a mobile device—they would not have purchased the Nexus 6P, would have paid a

1    lower price, or would have returned the phone during the applicable remorse period. ¶¶ 68-70. These

2    allegations are sufficient to allege materiality. *See, e.g.*, *Elias*, 2014 WL 493034, at *6.

3           As to the second aspect of omissions-based reliance, Plaintiffs allege facts demonstrating they

4    would have received the information had it been disclosed. Every Plaintiff viewed Google's Nexus 6P

5    advertisements, launch event, and/or website at which it touted the Nexus 6P's features, including its

6    battery life and battery capacity. ¶¶ 25, 28, 31, 35, 39, 43, 46, 49, 52, 55, 59, 63, 66. Every Plaintiff

7    saw the Nexus 6P's packaging and undertook the set-up process that made additional disclosures

8    before they could use the phone. ¶¶ 109-10. Yet, although Google made various disclosures about the

9    Nexus 6P, it never disclosed the defect in any of these places. The SAC accordingly pleads that

10   Google had multiple opportunities to noticeably disclose the defect, and that its uniform failure to do

11   so was misleading because "none of these sources of information from Defendant contained

12   information about the . . . defect, even though these sources contained other disclosures about the

13   [phone]." *Davidson*, 2017 WL 3149305, at *13; *Wildin*, 2018 WL 3032986, at *3, *6 (plaintiffs

14   sufficiently pled the defendant could have provided notice of the defect via its website).

15          **D.     There Are No State-Specific Grounds for Dismissal of Plaintiffs' Concealment
                      Claims.**

16          Google seeks to dismiss Plaintiffs' common law concealment claims under the laws of states

17   other than California. Google does not contend that any of the common law fraudulent concealment

18   counts contain a safety requirement, and instead argues Plaintiffs fail to sufficiently allege knowledge,

19   facts giving rise to a duty to disclose, and/or intent. ECF 135 at 17-19. Google's argument indicates

20   only that the elements of fraudulent concealment are substantially similar across the relevant

21   jurisdictions. ECF 135 at 17-19 (moving to dismiss based upon the same grounds: lack of specificity,

22   knowledge, duty to disclose, and reliance). Because Plaintiffs plead each of the elements of Google's

23   omission-based fraud with requisite specificity, its arguments fare no better under other states' laws.

24          Google contends that New York does not recognize a duty to disclose from superior knowledge

25   unless the defendant "knew that the plaintiff was acting under a mistaken belief with respect to a

26   material fact." ECF 135 at 19 (citing *Star Direct Telecom, Inc. v. Glob. Crossing Bandwidth, Inc.*, No.

27   05-CV-6734T, 2007 WL 162763, at *7 (W.D.N.Y. Jan. 18, 2007) (commercial context)). But this

28   principle does not necessarily apply in cases involving consumer fraud, where a defendant's awareness

                                                         20

of a consumer's mistaken belief may be inferred from the circumstances. *See, e.g.*, *Greene v. Gerber Prod. Co.*, 262 F. Supp. 3d 38, 72 (E.D.N.Y. 2017) (knowledge based on a defendant's efforts to conceal). A duty to disclose from superior knowledge also exists where, as here, "one party's superior knowledge of essential facts renders a transaction without disclosure inherently unfair." *Swersky v. Dreyer & Traub*, 219 A.D.2d 321, 327, 643 N.Y.S.2d 33, 37 (1996); *Catalano v. BMW of N. Am., LLC*, No. 15-CV-4889 (KBF), 2016 WL 3406125, at *4 (S.D.N.Y. June 16, 2016).

Google further contends that Indiana does not recognize a duty to disclose based on superior knowledge absent a fiduciary relationship. ECF 135 at 19 (citing *Scott v. Durham*, No. 1:09-CV-348-PPS-RBC, 2011 WL 8969, at *3 (N.D. Ind. Jan. 3, 2011)). But *Scott* noted that the plaintiff did not allege it was either in a fiduciary *or* a buyer-seller relationship, thereby recognizing that a duty to disclose based on superior knowledge may exist as part of a buyer-seller relationship. *Id.*; *see also Kesling v. Kesling*, 546 F. Supp. 2d 627, 641 (N.D. Ind. 2008) (duty to disclose arises "where there is a buyer and a seller, where one party may possess knowledge not possessed by the other and may thereby enjoy a position of superiority over the other.") (citation omitted).

Google also claims that Washington law relieves it of liability because consumers complained of phone problems online. ECF 135 at 19-20. That is incorrect, and Google's cited case concerned a commercial relationship between businesses. *EO Tech. Sols., LLC v. Capex Outsource, Inc.*, No. 11-5507 RJB, 2012 WL 13019036, at *6 (W.D. Wash. Feb. 7, 2012). Johnston alleges that that the defect was *not* "easily discoverable" (ECF 135 at 20) and, moreover, not discovered by him before his purchase. ¶¶ 70, 230. While no Washington court appears to have addressed this issue in the consumer context, arguments similar to Google's are routinely rejected because customers "cannot be expected to seek facts which they have no way of knowing exist," *Elias*, 2014 WL 493034, at *9 (alterations and quotation marks omitted), and "the presence of information online does not automatically defeat exclusive knowledge." *In re MyFord Touch Consumer Litig.*, 46 F. Supp. 3d at 960 (collecting cases).

## III.   THE SAC STATES CLAIMS AGAINST GOOGLE UNDER THE UCL'S "UNLAWFUL" AND "UNFAIR" PRONGS.

In addition to their claims under the UCL's fraud prong, Plaintiffs also assert claims under the unlawful and unfair prongs. ¶¶ 200-07. Google contends that Plaintiffs' unlawful claim fails because it

1    is premised on their CLRA and Song-Beverly claims which, it argues, also fail. ECF 135 at 17. But

2    Plaintiffs have shown above why these underlying claims are viable and therefore have stated claims

3    under the UCL's unlawful prong. *See Elias*, 2014 WL 493034, at *11 n.12; *Kelly v. BP W. Coast

4    Prods. LLC*, No. 2:14-cv-01507-KJM-CKD, 2014 WL 7409220, at *8 (E.D. Cal. Dec. 29, 2014).

5        Plaintiffs base their UCL unfairness claims not merely on Google's decision to knowingly sell

6    defective phones without informing consumers of the defect, but also on its decision to rush the Nexus

7    6P to market without affording enough time to remedy the known defect, its decision to replace

8    defective Nexus 6P's with equally defective replacements, and its efforts to minimize the scope and

9    severity of the defect after September 2016. ¶¶ 204(c)-(e). Plaintiffs allege that Google's conduct

10   constitutes unfair business practices under the customary balancing test. ¶¶ 204-07; *see In re Toyota

11   Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prod. Liab. Litig.*, No. SAML 10-02172-CJC,

12   2011 WL 13160303, at *4 (C.D. Cal. Jan. 20, 2011) (discussing UCL unfairness standards).

13       Google avoids the legal standard, arguing only that Plaintiffs insufficiently allege that

14   Defendants "didn't have 'enough' time to test the phones." ECF 135 at 17. Google appears to misread

15   Plaintiffs' allegations. Plaintiffs allege that Defendants' adherence to a swift development schedule

16   left insufficient time to remedy a known defect before the phone was released. ¶ 204(d). This states a

17   claim under the unfair prong. *Horvath v. LG Elecs. Mobilecomm U.S.A.*, Inc., No. 3:11-CV-01576-H-

18   RBB, 2012 WL 2861160, at *11 (S.D. Cal. Feb. 13, 2012) (plaintiffs stated a UCL unfairness claim

19   based on allegations of the defendant "failing to use reasonable care to test its products prior to sale"

20   and "continu[ing] to sell . . . defective . . . phones after learning about the defect").

21       Google also fails to address Plaintiffs' unfairness claims based on its replacement of defective

22   phones with other defective phones (¶¶ 60-61, 133) and its efforts to downplay the severity of the

23   problem. ¶¶ 125, 134-37; *see Aguilar*, 2013 WL 5670888, at *6 (plaintiff stated a UCL unfairness

24   claim based on allegations that when "the defect manifested within the express warranty period, GM

25   merely replaced the steering components with the same defective parts"); *Kowalsky*, 2011 WL

26   3501715, at *3 (N.D. Cal. Aug. 10, 2011) (replacing defective printer with the same defective printer

27   plausibly constituted unfair conduct); *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1222 (C.D.

28   Cal. 2012) (defendant's alleged fraudulent concealment constituted an unfair business practice).

## IV.    GOOGLE'S CLASS CERTIFICATION ARGUMENTS REMAIN PREMATURE.

In its previous motion to strike, Google argued that "adjudicating several different flavors of claims under the laws of a dozen or more states would make a class unmanageable." ECF 39 at 29. The Court declined to strike the nationwide class allegations, stating that it was "convinced that it would be premature to resolve the issues at the pleading stage[.]" ECF 115 at 85. Google now argues that the home state interests of the non-California Plaintiffs who did not purchase from Google outweigh California's interests, precluding Plaintiffs from suing on behalf of a nationwide class. ECF 135 at 23. The Court should reject Google's attempt to reargue its motion to strike, particularly since discovery has only recently opened. *See, e.g.*, *Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013) ("[S]uch a fact-heavy inquiry should occur during the class certification stage, after discovery."); *Bohn v. Pharmavite, LLC*, No. CV 11-10430-GHK (CWx), 2012 WL 8898669, at *2 (C.D. Cal. May 16, 2012). The proper time to consider Google's arguments is at class certification. *Yan Mei Zheng-Lawson v. Toyota Motor Corp.*, No. 17-CV-06591-BLF, 2018 WL 2298963, at *4 (N.D. Cal. May 21, 2018).

Regarding choice of law, as Google recognizes, Plaintiffs who bought their Nexus 6P directly from Google (Gorbatchev, Martorello, Jones, and Leone) are subject to Google's TOS, which provides for the application of California law. ECF 135 at 20; *see Wash. Mut. Bank, FA v. Super. Ct.*, 24 Cal. 4th 906, 917 (2001) (choice-of-law provision generally enforceable where "the chosen state has a substantial relationship to the parties or their transaction").[1] Plaintiffs agree with Google that California law also applies to the claims of California Plaintiffs who did not buy directly from Google (Makcharoenwoodhi and Christensen). ECF 135 at 20. Google's argument that non-California Plaintiffs who did not buy from Google lack claims under California fraudulent concealment law, however, overlooks that Plaintiffs do not seek to apply California law to the common law fraudulent concealment claims of those purchasers. ECF 135 at 21; ¶ 151. The parties, then, are mostly in agreement on applicable law. Any remaining choice-of-law issues should be addressed at class

---

[1] Plaintiffs reserve their position with regard to the application of Google's TOS beyond application of the choice of law provided for thereunder.

1 certification. *See, e.g.*, *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012)

2 ("Since the parties have yet to develop a factual record, it is unclear whether applying different state

3 consumer protection statutes could have a material impact on the viability of Plaintiffs' claims.");

4 *Collins v. Gamestop Corp.*, No. C10-1210-TEH, 2010 WL 3077671, at *3 (N.D. Cal. Aug. 6, 2010).

5    Google's cursory choice-of-law analysis does not demonstrate that variations in state law "are

6 material" to the facts of this case. *In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL

7 3829653, at *7 (N.D. Cal. July 23, 2013); *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-

8 LHK, 2013 WL 5487236, at *16 (N.D. Cal. Oct. 2, 2013). As to Plaintiffs' common law fraudulent

9 concealment claims, Google identifies mostly similarities in state law and those differences it purports

10 to identify are unsupported or are immaterial on these facts. ECF 135 at 17-19. Google's class

11 certification argument also disregards case law deeming fraudulent concealment claims appropriate for

12 nationwide class treatment. *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal.

13 2010); *see also Allapattah Servs., Inc. v. Exxon Corp.*, 188 F.R.D. 667, 673 (S.D. Fla. 1999) (finding

14 that "factual disputes arising from the fraudulent concealment doctrine can be properly resolved on a

15 class-wide basis . . . notwithstanding slight variations in state law as to how certain of the elements are

16 described."), *aff'd*, 333 F.3d 1248 (11th Cir. 2003), *aff'd*, 545 U.S. 546 (2005). The Ninth Circuit's

17 decision in *In re Hyundai and Kia Fuel Economy Litig.*, 881 F.3d 679 (9th Cir. 2018), calls for a

18 choice-of-law analysis incident to class certification. ECF 115 at 6 n.3 (referencing *Hyundai* in

19 dismissal order). Assuming *Hyundai* remains good law at the class certification stage of this case,

20 Plaintiffs will account for choice-of-law issues in proposing a plan to efficiently try their claims on a

21 class-wide basis. Plaintiffs' plan will include a proposal to try California claims based on Google's

22 choice-of law provision and, depending on the facts developed in discovery, may include a proposal to

23 designate subclasses based on substantially similar state laws as applied here.

24    In addition, contrary to Google's suggestion that non-California residents lack the ability to

25 recover under the CLRA and UCL, "[d]istrict courts routinely apply" these statutes "to nationwide

26 classes." *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 547 (C.D. Cal. 2012); *Tait v. BSH Home

27 Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012); *Chavez*, 268 F.R.D. at 379; *Parkinson v.

28 Hyundai Motor Am.*, 258 F.R.D. 580, 598 (C.D. Cal. 2008). This is true where, as here, the wrongful

24

conduct emanated from California. *See Ehret v. Uber Tech., Inc.*, 68 F. Supp. 3d 1121, 1130-32 (N.D. Cal. 2014) (rejecting Uber's argument that applying the UCL and CLRA was an impermissible extraterritorial application of California law where Plaintiffs alleged a "sufficient nexus between California and the misrepresentations which form the basis of Plaintiffs' claims"). The non-California Plaintiffs who did not purchase from Google may bring claims under the CLRA and the UCL because all or most of the conduct underlying their claims occurred at Google's Mountain View headquarters.

¶ 22. Plaintiffs will seek certification of their Song-Beverly claims on behalf of a subclass of California purchasers. *See Gold v. Lumber Liquidators, Inc.*, No. 14-cv-05373-TEH, 2017 WL 2688077, at *4 (N.D. Cal. June 22, 2017) ("[C]ourts frequently allow plaintiffs to seek certification of narrowed classes without amending their complaint"). If the Court is inclined to dismiss any of these statutory claims, Plaintiffs respectfully request leave to amend to assert them on behalf of a California subclass only. *In re NVIDIA GPU Litigation*, No. C 08-04312 JW, 2009 WL 4020104, at *5 (N.D. Cal. Nov. 19, 2009) (granting leave to amend to assert claims on behalf of California purchasers).

Finally, Google incorrectly argues that Plaintiffs lack standing to represent absent class members in states in which Plaintiffs do not reside. ECF 135 at 23-24. "In a class action, standing is satisfied if at least one named plaintiff meets the requirements." *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007). "[A]ny issues regarding the relationship between the class representative and the passive class members," however, relates to "class certification, not to standing." *Pecanha v. The Hain Celestial Grp., Inc.*, No. 17-CV-04517-EMC, 2018 WL 534299, at *9 (N.D. Cal. Jan. 24, 2018) (citing *Melendres v. Arpaio*, 784 F.3d 1254, 1262 (9th Cir. 2015), and noting that under Ninth Circuit law, the Court decides at class certification whether plaintiffs may represent class members in other states); *see In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993, 1005 (S.D. Cal. 2011) (denying motion to dismiss claims under the laws of states in which the plaintiffs did not reside).

## CONCLUSION

For the foregoing reasons, Google's motion to dismiss should be denied. If the Court grants the motion in full or part, Plaintiffs respectfully request leave to amend under Fed. R. Civ. P. 15 (b).

Dated:  July 19, 2018

Respectfully submitted,

**GIRARD GIBBS LLP**

*/s/ Adam E. Polk*
Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Adam E. Polk (SBN 273000)
Trevor T. Tan (SBN 281045)
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
*dcg@girardgibbs.com*
*je@girardgibbs.com*
*aep@girardgibbs.com*
*ttt@girardgibbs.com*

Benjamin F. Johns (*pro hac vice*)
Andrew W. Ferich (*pro hac vice*)
Jessica L. Titler-Lingle (*pro hac vice*)
**CHIMICLES & TIKELLIS LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633
*bfj@chimicles.com*
*awf@chimicles.com*
*jt@chimicles.com*

*Interim Co-Lead Counsel for Plaintiffs*

26