DURIE TANGRI LLP
JOSHUA H. LERNER (SBN 220755)
jlerner@durietangri.com
RAGESH K. TANGRI (SBN 159477)
rtangri@durietangri.com
EUGENE NOVIKOV (SBN 257849)
enovikov@durietangri.com
CATHERINE Y. KIM (SBN 308442)
ckim@durietangri.com
217 Leidesdorff Street
San Francisco, CA  94111
Telephone:    415-362-6666
Facsimile:    415-236-6300

Attorneys for Defendant
GOOGLE LLC

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE NEXUS 6P PRODUCTS LIABILITY LITIGATION | Case No. 5:17-cv-02185-BLF |
| | **REPLY IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND CONSOLIDATED AMENDED CLASS ACTION COMPLAINT** |
| | Date:      October 17, 2018 |
| | Time:      9:00 a.m. |
| | Ctrm:      3, 5th Floor |
| | Judge:    Honorable Beth Labson Freeman |

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ............................................................................................................1

II.   ARGUMENT ..................................................................................................................1

    A.    Plaintiffs' Song-Beverly Claim Fails....................................................................1

        1.    Plaintiffs cannot turn Google into a "manufacturer." .............................1

            a.    The flawed "joint venture" allegations are insufficient. ..............1

            b.    Plaintiffs' allegations of "control" are also insufficient. ............2

        2.    Plaintiffs Gorbatchev and Christensen do not sufficiently allege that they are California purchasers for Song-Beverly purposes. ...........................................3

    B.    Plaintiffs' CLRA, UCL, And Fraudulent Concealment Claims Fail Because Plaintiffs Fail To Plead A Duty To Disclose. .......................................................4

        1.    Plaintiffs do not sufficiently allege pre-sale knowledge..........................4

            a.    Scattered complaints about a range of issues do not show knowledge. ..................................................................................5

            b.    Generic allegations of pre-release testing do not show knowledge. ...........7

            c.    Plaintiffs also fail to plead a safety hazard. ...............................10

        2.    Plaintiffs' active concealment allegations do not create a duty to disclose. ..........10

        3.    The partial representation allegations fail to create a duty to disclose. .................11

        4.    Plaintiffs also fail to plead unfairness under the UCL. ..........................12

        5.    Plaintiffs' common law fraudulent concealment claims should be dismissed..........................................................................................12

    C.    The Nationwide Class Should Be Dismissed Now......................................................12

III.  CONCLUSION..............................................................................................................15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Aguilar v. Gen. Motors, LLC*,
   No. 1:13-CV-00437-LJO-GS, 2013 WL 5670888 (E.D. Cal. Oct. 16, 2013) ....................................12

*Allapattah Servs., Inc. v. Exxon Corp.*,
   188 F.R.D. 667 (S.D. Fla. 1999), *aff'd*, 333 F.3d 1248 (11th Cir. 2003) ...........................................14

*Apodaca v. Whirlpool Corp.*
   No. 8:13-cv-00725-JVS-AN (C.D. Cal. June 28, 2013) ....................................................................9

*Azar v. Gateway Genomics, LLC*,
   No. 15CV2945 AJB (WVG), 2017 WL 1479184 (S.D. Cal. Apr. 25, 2017) ........................................7

*Baba v. Hewlett-Packard*,
   No. C 09-05946 RS, 2011 WL 317650 (N.D. Cal. Jan. 28, 2011) ....................................................6, 7

*Berenblat v. Apple, Inc.*,
   No. 08-4969 JF (PVT), 2010 WL 1460297 (N.D. Cal. Apr. 9, 2010) ..................................................6

*Bohn v. Pharmavite, LLC*,
   No. CV 11-10430-GHK CWX, 2012 WL 8898669 (C.D. Cal. May 16, 2012) .................................13

*Bruno v. Eckhart Corp.*,
   280 F.R.D. 540 (C.D. Cal. 2012) .......................................................................................................14

*Burdt v. Whirlpool Corp.*,
   No. C 15-01563 JSW, 2015 WL 4647929 (N.D. Cal. Aug. 5, 2015) ..................................................9

*In re Carrier IQ, Inc.*,
   78 F. Supp. 3d 1051 (N.D. Cal. 2015) .............................................................................................4, 5

*Chavez v. Blue Sky Nat. Beverage Co.*,
   268 F.R.D. 365 (N.D. Cal. 2010) .......................................................................................................14

*Clancy v. The Bromley Tea Co.*,
   308 F.R.D. 564 (N.D. Cal. 2013) .......................................................................................................13

*In re Clorox Consumer Litig.*,
   894 F. Supp. 2d 1224 (N.D. Cal. 2012) .............................................................................................13

*Collins v. Gamestop Corp.*,
   No. C10-1210-TEH, 2010 WL 3077671 (N.D. Cal. Aug. 6, 2010) ..................................................13

*Corcoran v. CVS Health Corp.*,
   169 F. Supp. 3d 970 (N.D. Cal. 2016) ...............................................................................................15

ii

REPLY IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT / CASE NO. 5:17-CV-02185-BLF

*Cover v. Windsor Surry Co.*,
  No. 14-CV-05262-WHO, 2016 WL 520991 (N.D. Cal. Feb. 10, 2016) .............................13

*Daniel v. Ford Motor Co.*,
  806 F.3d 1217 (9th Cir. 2015) ........................................................................................1

*Darisse v. Nest Labs, Inc.*,
  No. 5:14-CV-01363-BLF, 2016 WL 4385849 (N.D. Cal. Aug. 15, 2016).............13, 14, 15

*Davidson v. Apple, Inc.*,
  No. 16-CV-4942-LHK, 2017 WL 3149305 (N.D. Cal. July 25, 2017) ...............................9

*Decker v. Mazda Motor of Am., Inc.*,
  No. SACV 11-0873 AG-MLG, 2013 WL 12129281 (C.D. Cal. Mar. 29, 2013) ................14

*Delk v. Ocwen Fin. Corp.*,
  No. 3:17-cv-02769-WHO, 2017 WL 3605219 (N.D. Cal. Aug. 21, 2017) ..........................1

*Deras v. Volkswagen Grp. of Am., Inc.*,
  No. 17-CV-05452-JST, 2018 WL 2267448 (N.D. Cal. May 17, 2018) .......................4, 6, 7

*Ehret v. Uber Techs., Inc.*,
  68 F. Supp. 3d 1121 (N.D. Cal. 2014) .............................................................................15

*Elias v. Hewlett-Packard Co.*,
  950 F. Supp. 2d 1123 (N.D. Cal. 2013) .............................................................................4

*Elias v. Hewlett-Packard Co.*
  No. 12-CV-00421-LHK, 2014 WL 493034 (N.D. Cal. Feb. 5, 2014).............................7, 11

*Falco v. Nissan N. Am. Inc.*,
  96 F. Supp. 3d 1053 (C.D. Cal. 2015) ...............................................................................6

*Falk v. Gen. Motors Corp.*,
  496 F. Supp. 2d 1088 (N.D. Cal. 2007) .........................................................................4, 7

*Finney v. Ford Motor Co.*,
  No. 17-CV-06183-JST, 2018 WL 2552266 (N.D. Cal. June 4, 2018) .........................11, 12

*Frezza v. Google Inc.*,
  No. 5:12-CV-00237-RMW, 2013 WL 1736788 (N.D. Cal. Apr. 22, 2013).......................13

*Goldberg v. Paramount Oil Co.*,
  143 Cal. App. 2d 215 (1956) ............................................................................................1

*Hindsman v. Gen. Motors LLC*,
  No. 17-CV-05337-JSC, 2018 WL 2463113 (N.D. Cal. June 1, 2018) ..............................15

*Hodsdon v. Mars, Inc.*,
  891 F.3d 857 (9th Cir. 2018) ..........................................................................................10

iii

*Huntzinger v. Aqua Lung America, Inc.*,
  No. 15CV1146 WQH (KSC), 2015 WL 8664284 (S.D. Cal. Dec. 10, 2015) .................................. 7, 9

*In re Hydroxycut Mktg. & Sales Practices Litig.*,
  801 F. Supp. 2d 993 (S.D. Cal. 2011) ................................................................................................ 15

*In re iPhone 4S Consumer Litig.*,
  No. C 12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013) .................................................. 13, 14

*Jenkins v. Whitaker Corp.*,
  785 F.2d 720 (9th Cir. 1986) ................................................................................................................ 1

*Johnson v. Fed. Home Loan Mortg. Corp.*,
  793 F.3d 1005 (9th Cir. 2015) .............................................................................................................. 2

*Kaljian v. Menezes*,
  36 Cal. App. 4th 573 (1995) ................................................................................................................. 2

*Knievel v. ESPN*,
  393 F.3d 1068 (9th Cir. 2005) .............................................................................................................. 2

*Kowalsky v. Hewlett-Packard Co.*
  No. 10-CV-02176-LHK, 2011 WL 3501715 (N.D. Cal. Aug. 10, 2011) .......................................... 9, 12

*Larsen v. Vizio, Inc.*,
  No.: SACV 14–01865–CJC(JCGx), 2015 WL 13655757 (C.D. Cal. April 21, 2015) ....................... 13

*Lory v. Ryan*,
  No. CV07-2174-PHX-NVW, 2008 WL 4630306 (D. Ariz. Oct. 20, 2008) ....................................... 2

*Mazza v. Am. Honda Motor Co.*,
  666 F.3d 581 (9th Cir. 2012) .................................................................................................... 13, 14, 15

*McGough v. Wells Fargo Bank, N.A.*,
  No. C12-0050 TEH, 2012 WL 2277931 (N.D. Cal. June 18, 2012) .................................................. 5

*Mega R.V. Corporation v. HWH Corp.*,
  225 Cal. App. 4th 1318 (2014) ............................................................................................................. 3

*Mollicone v. Universal Handicraft, Inc.*,
  No. 2:16-CV-07322-CASMRWX, 2017 WL 440257 (C.D. Cal. Jan. 30, 2017) ............................... 15

*Monaco v. Liberty Life Assur. Co.*,
  No. C06-07021 MJJ, 2007 WL 420139 (N.D. Cal. Feb. 6, 2007) ..................................................... 2

*Mui Ho v. Toyota Motor Corp.*,
  931 F. Supp. 2d 987 (N.D. Cal. 2013) ............................................................................................ 6, 11

*Oestreicher v. Alienware Corp.*,
  544 F. Supp. 2d 964 (N.D. Cal. 2008) ................................................................................................ 11

iv

*Parkinson v. Hyundai Motor Am.*,
    258 F.R.D. 580 (C.D. Cal. 2008) ...................................................................................... 14

*Pecanha v. The Hain Celestial Grp., Inc.*,
    No. 17-CV-04517-EMC, 2018 WL 534299 (N.D. Cal. Jan. 24, 2018) ................................ 15

*Resnick v. Hyundai Motor Am.*,
    No. CV 16-00593-BRO, 2017 WL 1531192 (C.D. Cal. Apr. 13, 2017) ................................ 8

*In re Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*,
    No. 16-cv-06391-BLF, 2018 WL 1576457 (N.D. Cal. Mar. 30, 2018) .................................. 6

*In re Seagate Tech. LLC Litig.*,
    No. 16-cv-00523-JCS, 2017 WL 3670779 (N.D. Cal. Aug. 25, 2017) .................................. 4

*Sebastian Brown Prods., LLC v. Muzooka, Inc.*,
    143 F. Supp. 3d 1026 (N.D. Cal. 2015) ............................................................................ 10

*Sharma v. BMW of N. Am. LLC*,
    No. 13-CV-02274-MMC, 2016 WL 4395470 (N.D. Cal. Aug. 18, 2016) ........................... 10

*Sloan v. Gen. Motors LLC*,
    287 F. Supp. 3d 840 (N.D. Cal. 2018) .............................................................................. 10

*Stanwood v. Mary Kay, Inc.*,
    941 F. Supp. 2d 1212 (C.D. Cal. 2012) ............................................................................ 12

*Stewart v. Electrolux Home Prod., Inc.*,
    No. 1:17-cv-01213-LJO-SKO, 2018 WL 1784273 (E.D. Cal. Apr. 13, 2018) .................. 6, 8

*Tait v. BSH Home Appliances Corp.*,
    289 F.R.D. 466 (C.D. Cal. 2012) ...................................................................................... 14

*Tietsworth v. Sears*,
    720 F. Supp. 2d 1123 (N.D. Cal. 2010) ............................................................................ 11

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab.
    Litig.*,
    785 F. Supp. 2d 925 (C.D. Cal. 2011) .............................................................................. 14

*United Food & Commercial Workers Local 1776 & Participating Employers Health &
    Welfare Fund v. Teikoku Pharma USA, Inc.*,
    74 F. Supp. 3d 1052 (N.D. Cal. 2014) .............................................................................. 15

*Van Mourik v. Big Heart Pet Brands, Inc.*,
    Case No. 3:17-cv-03889-JD, 2018 WL 1116715 (N.D. Cal. 2018) .................................... 15

*Walters v. Vitamin Shoppe Indus., Inc.*,
    No. 3:14-CV-1173-PK, 2018 WL 2424132 (D. Or. May 8, 2018) ..................................... 13

*Webb v. Special Elec. Co., Inc.*,
    63 Cal. 4th 167 (2016) ...........................................................................................................1

*Werdebaugh v. Blue Diamond Growers*,
    No. 12-CV-02724-LHK, 2013 WL 5487236 (N.D. Cal. Oct. 2, 2013)................................14

*Wildin v. FCA US LLC*,
    No. 3:17CV-02594-GPC-MDD, 2018 WL 3032986 (S.D. Cal. June 19, 2018) ....................6

*Williams v. Yamaha Motor Co. Ltd.*
    851 F.3d 1015 (9th Cir. 2017) ...............................................................................................7

*Williams v. Yamaha Motor Corp., U.S.A.*,
    106 F. Supp. 3d 1101 (C.D. Cal. 2015) .................................................................................4

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) .................................................................................4, 5, 9, 10

*Yan Mei Zheng-Lawson v. Toyota Motor Corp.*,
    No. 17-CV-06591-BLF, 2018 WL 2298963 (N.D. Cal. May 21, 2018) ..............................13

*Yan Mei Zheng-Lawson v. Toyota Motor Corp.*,
    No. 17-CV-06591-BLF (N.D. Cal. Mar. 15, 2018), ECF No. 36 .........................................13

*Zeiger v. WellPet LLC*,
    304 F. Supp. 3d 837 (N.D. Cal. 2018) .................................................................................13

**Statutes**

Cal. Civ. Code § 1791(j) ...............................................................................................................1

**Rules**

Fed. R. Civ. P. 9(b) .......................................................................................................................5

Fed. R. Evid. 201 ..........................................................................................................................2

## I.   INTRODUCTION

Plaintiffs' attempt to fix the claims against Google amounts to trying to fit a round peg in a square hole:  the claims just do not fit.  The Court should dismiss for three reasons.  ***First***, Plaintiffs cannot convert Google into a manufacturer under the Song-Beverly Act.  Plaintiffs also have not pled purchases in California.  ***Second****,* with respect to the CLRA, UCL, and fraudulent concealment claims, Plaintiffs fail to plead ***either*** that Google knew of the alleged defects before or at the time of sale, ***or*** that Google had a duty to disclose them.  ***Third***, Plaintiffs fall back on the old saw that the choice of law analysis is for another day.  Not so here.  The continued waffling on the proposed class is not good for anyone.

## II.   ARGUMENT

### A.   Plaintiffs' Song-Beverly Claim Fails.

#### 1.   Plaintiffs cannot turn Google into a "manufacturer."

Song-Beverly defines "manufacturer" as "any individual, partnership, corporation, association, or other legal relationship that ***manufactures, assembles, or produces consumer goods***."  Cal. Civ. Code § 1791(j) (emphasis added).  Plaintiffs do not dispute that the distinction between manufacturing and other roles matters.  Mot. at 3–4 (citing *Webb v. Special Elec. Co., Inc.*, 63 Cal. 4th 167, 180 (2016), *Daniel v. Ford Motor Co.*, 806 F.3d 1217, 1224–25 (9th Cir. 2015), *Jenkins v. Whitaker Corp.*, 785 F.2d 720, 736 (9th Cir. 1986)).  Instead, Plaintiffs argue they "need not *prove* anything," and that Google's arguments are fact-based.  Opp. at 6.  But Plaintiffs omit the rule that they must "***plausibly allege***" that Google is a manufacturer.  Opp. at 6–7 (citing *Delk v. Ocwen Fin. Corp.*, No. 3:17-cv-02769-WHO, 2017 WL 3605219, at *10 (N.D. Cal. Aug. 21, 2017)).  Plaintiffs plead no facts and cite no authorities to plausibly establish that Google was in a joint venture that made it a manufacturer, or that Google "controlled" manufacturing.

#### a.   The flawed "joint venture" allegations are insufficient.

Lacking the ability to plead that Google manufactured ***any*** part of the 6P, Plaintiffs now claim that Google is liable as a joint venturer with Huawei.  Opp. at 5–6.  But a joint venture is a legal relationship with specific elements that must be pled: "(a) a community of interest in the object of the undertaking; (b) an equal right to direct and govern the conduct of each other with respect thereto; (c) shar[ing] in the losses if any; (d) close and even fiduciary relationship between the parties."  *Goldberg v.*

1

REPLY IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT / CASE NO. 5:17-CV-02185-BLF

*Paramount Oil Co.*, 143 Cal. App. 2d 215, 219–20 (1956) (citation omitted).  Plaintiffs do not even attempt to plead these elements and cite no documents that suggest a joint venture existed.  But simply pleading the conclusion that a relationship constitutes a joint venture is insufficient.  *Monaco v. Liberty Life Assur. Co.*, No. C06-07021 MJJ, 2007 WL 420139, at *6 (N.D. Cal. Feb. 6, 2007).

Plaintiffs' allegations are also inconsistent.  A joint venture requires a right of ***joint*** participation in management and control.  *See Kaljian v. Menezes*, 36 Cal. App. 4th 573, 586 (1995).  But Plaintiffs allege (unsuccessfully) that ***Google controlled*** manufacturing, as explained below. So which is it?  The inconsistency highlights that Plaintiffs cannot find a theory that fits Google.

### b.    Plaintiffs' allegations of "control" are also insufficient.

Plaintiffs' attempt to establish that Google "controlled" manufacturing turns on misinterpretations of the sources for Plaintiffs' allegations, and the Court is not required to credit conclusory assertions that are contradicted by the underlying documents.  Mot. at 4 (citing *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1008–09 (9th Cir. 2015)).

Plaintiffs point to a Google representative's 2015 statement, which did not specifically address the 6P.  Opp. at 6.  But the full statement shows that "built" was intended to refer to Google's role in working with partners, not that Google ***itself*** was the manufacturer:

> The Nexus program is our effort to **push what's possible in hardware design while unlocking the ideal software experience**. It's Google's take on the total user experience including hardware and software, the retail experience, frequency of security updates (monthly) and ongoing software updates (for two years). Over the years, we've launched the Nexus One, 4, 5, 6, 5X and 6P smartphones as well as the Nexus 7 and 10 tablets, and Nexus Player Android TV.  Since **Nexus is built by the same people who build the OS working closely with partners**, we think these devices serve as a beacon to show the industry what's possible.

Declaration of Joshua H. Lerner ("Lerner Decl."), Ex. 1 at 2–3 (emphasis added).[1]  This is not a statement that Google manufactured the 6P.

---

[1] Google requests judicial notice of this document under the doctrine of incorporation by reference and Fed. R. Evid. 201.  *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005).  Plaintiffs incorporate the article by reference.  SAC ¶ 77; *see Lory v. Ryan*, No. CV07-2174-PHX-NVW, 2008 WL 4630306, at *2 n.1 (D. Ariz. Oct. 20, 2008).

Plaintiffs also point to the statement in paragraph 81 of the Second Consolidated Amended Class Action Complaint ("SAC") that "Google employees 'were on the Nexus 6P manufacturing line.'"  Opp. at 6.  Plaintiffs do not dispute that the only basis for this claim is a Reddit post, whose only reference to a "manufacturing line" is one statement that "Nexus designers and engineers" spent time on a "bead blasting manufacturing line" examining the finishing on certain metal components.  Mot. at 4.  It is not reasonable to infer from this statement that "Google employees 'were on the Nexus 6P manufacturing line,'" let alone that Google was the manufacturer.  Opp. at 6.  Plaintiffs also rely on a statement in the same Reddit post that "there were around 80 different manufacturing steps for the Nexus 6P" to allege that "Google was actively involved throughout the 80 different steps of the . . . manufacturing process."[2] ECF No. 136-01 at 3; SAC ¶ 81.  Again, it is not reasonable to infer the latter from the former.  Finally, Plaintiffs' allegations that Google wanted aluminum to be recycled (SAC ¶ 81), do not come close to raising a reasonable inference that Google meets that definition.  Opp. at 6.  Expanding the definition of "manufacturer" to cover this conduct would require this Court to expand the statute beyond what any other court has contemplated.

Plaintiffs' ongoing failure to distinguish *Mega R.V. Corporation v. HWH Corp.*, 225 Cal. App. 4th 1318, 1322 (2014), should end the dispute here.  Opp. at 6.  Even manufacturing a part is insufficient to turn a party into a manufacturer under the statute.  Here, there is no allegation that Google manufactures anything, yet Plaintiffs ask the Court to rely on internet posts about employees visiting manufacturing sites to find Google liable.  There is ***no*** case that supports that outcome.

### 2. Plaintiffs Gorbatchev and Christensen do not sufficiently allege that they are California purchasers for Song-Beverly purposes.

The law requires Plaintiffs to allege that the product was sold in California.  Mot. at 4–6. Plaintiffs attempt to "distinguish" the cases that establish this proposition by claiming their facts were dissimilar, but they fail to refute that these cases and others require them to plead the California sale. Opp. at 7–8.  That requires an allegation that title to the goods passed to the Plaintiffs in California.  For

---

[2] Plaintiffs also refer to SAC paragraph 80, but that only alleges that Google had a hand in designing the 6P.  Opp. at 2.

online purchases, title passes in California if the goods shipped from within California.  Mot. at 4–6.

Plaintiffs assert that they do not need to plead that title passed in California because these are "issues of

fact."  Opp. at 7.  The law is clear, however, that a plaintiff must plead sufficient facts to establish that

the purchase took place in California.  *In re Carrier IQ, Inc.*, 78 F. Supp. 3d 1051, 1107 (N.D. Cal.

2015).  And the question of where title passed is a required element.  Mot. at 4–5.

Plaintiffs cite *In re Seagate Tech. LLC Litig.*, No. 16-cv-00523-JCS, 2017 WL 3670779, at *16

(N.D. Cal. Aug. 25, 2017), to claim that it is unnecessary to plead facts about where title passed.  Opp. at

7.  But that case found it sufficient to plead the ultimate conclusion—that the plaintiff purchased the

product in California—without pleading the specifics.  Mot. at 4–7, 6 n.3.  Here, Gorbatchev and

Christensen do not plead that ultimate conclusion.  *Id.*  Instead, they plead only that ***they*** were located in

California at the time of purchase.  *Id.* at 6 n.3.  Their claims should be dismissed for this reason.

### B.   Plaintiffs' CLRA, UCL, And Fraudulent Concealment Claims Fail Because Plaintiffs Fail To Plead A Duty To Disclose.

Plaintiffs try three separate ways to establish that Google had a duty to disclose:  "exclusive"

knowledge, active concealment, and partial misrepresentation.  None fits Google.

#### 1.   Plaintiffs do not sufficiently allege pre-sale knowledge.

To state a CLRA, UCL, or fraud claim, Plaintiffs must adequately allege that Google had

knowledge of the alleged defects at the time of sale.  *Deras v. Volkswagen Grp. of Am., Inc.*, No. 17-CV-

05452-JST, 2018 WL 2267448, at *4 (N.D. Cal. May 17, 2018).  Plaintiffs try to fix their previous failure

to plead this element by arguing that their duty to plead knowledge is "relaxed."  Opp. at 4.  But the cases

uniformly hold that where claims sound in fraud, Plaintiffs "must still present at least a ***plausible basis***

***for this knowledge***."  *Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1137–38 (N.D. Cal. 2013)

(emphasis added); *see also Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1146 (9th Cir. 2012);

*Williams v. Yamaha Motor Corp., U.S.A.*, 106 F. Supp. 3d 1101, 1112 (C.D. Cal. 2015) (refusing to find

pre-sale knowledge "without any specific allegation demonstrating Defendant's knowledge").  Plaintiffs

cannot lower their burden by citing cases like *Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D.

Cal. 2007).  Opp. at 8.  *Falk* predates *Wilson*, which established that broad allegations that a corporation

necessarily has superior "access to 'aggregate information and data'" are insufficient because these

allegations "do[] not suggest how any tests or information could have alerted [the defendant] to the defect." *Wilson*, 668 F.3d at 1147.  Plaintiffs also ignore the Court's instruction to avoid lumping Google and Huawei together, and their "relaxed" burden does not solve this problem.  ECF No. 115 at 5–6; *McGough v. Wells Fargo Bank, N.A.*, No. C12-0050 TEH, 2012 WL 2277931, at *7 (N.D. Cal. June 18, 2012) (even under a more relaxed Rule 9(b) pleading standard, "the failure to differentiate the conduct of the individual defendants is fatal.").  Finally, as explained below, Plaintiffs again rely on theories and inferences directed at defendants who actually make at least a part or provide a standard warranty.

### a.   Scattered complaints about a range of issues do not show knowledge.

Plaintiffs are openly shifting the definition of the alleged defects to establish that Google had knowledge.  It does not work.  Previously, to establish unmerchantability, Plaintiffs argued that the alleged defects "cause total failure" or "early shut off," and prevented "these phones from being used to do anything at all."  ECF No. 53 at 25.  But now, in the hopes of fixing the problems with the knowledge allegations, Plaintiffs expand the definitions of the alleged defects to include a broad and more common set of symptoms that "ultimately trigger[] the bootloop":  "accelerated battery drain, random shutdowns, and freezing."  Opp. at 10.  Many of the complaints Plaintiffs now cite are directed at these sorts of issues instead of total failure or early shut-off.  *Id.*  But occasional freezing or rebooting, or the battery draining faster than one would like, are more common issues and do not necessarily render a phone unfit for use.  Mot. at 8–10.  And there is no case suggesting that Google's knowledge of more common issues creates an inference of knowledge as to actionable defects, *i.e.*, problems "so fundamental as to render the product unfit for its ordinary purpose."  *In re Carrier IQ*, 78 F. Supp. 3d at 1108–09.

Plaintiffs ask the Court to hold that 36 complaints posted on online message boards, 24 of which relate to more general problems like occasional freezing or less-than-optimal battery life, and many of which were posted on third-party websites, raise a reasonable inference that Google knew about a specific bootloop defect that was "substantially certain to manifest" in each of the 6P phones that came off the assembly line.  Opp. at 4, 10–12 (citing SAC ¶ 3).  It is not a "fact-based argument" to suggest that the inference is not plausible, even if the allegations that there were internet complaints are assumed to be true.  Opp. at 10.  This Court recently held that a "scattered series of online reports," some of which post-date individual plaintiff's purchases and pertain to various different issues, does not suffice.  *In re*

5

REPLY IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT / CASE NO. 5:17-CV-02185-BLF

*Samsung Galaxy Smartphone Mktg. & Sales Practices Litig.*, No. 16-cv-06391-BLF, 2018 WL 1576457, at *3 (N.D. Cal. Mar. 30, 2018).  Plaintiffs' suggestion that the court in *Wildin* found one complaint sufficient to show knowledge is flat wrong.  *Wildin v. FCA US LLC*, No. 3:17CV-02594-GPC-MDD, 2018 WL 3032986, at *4 (S.D. Cal. June 19, 2018) ("[I]t surely would take more than one consumer complaint to support such an assertion.").  A plaintiff needs *other* indicia of knowledge.  *Id.*

Plaintiffs note that Google's cases, including *Deras*, 2018 WL 2267448, at *4, involve complaints over a longer timeframe, but Plaintiffs miss the point that all of these cases, including Plaintiffs' cases, require that the complaints must lead to knowledge of the ***specific problem***.  Opp. at 12–13; *see, e.g.*, *Falco v. Nissan N. Am. Inc.*, 96 F. Supp. 3d 1053, 1062 (C.D. Cal. 2015) (finding that complaints addressed the specific defect); *Mui Ho v. Toyota Motor Corp.*, 931 F. Supp. 2d 987, 999 (N.D. Cal. 2013) (same).  Furthermore, the cases Google cited are closer to the facts here than the cases Plaintiffs cited.  In *Stewart v. Electrolux Home Prod., Inc.*, the plaintiffs alleged "11 consumer complaints posted on a third-party consumer affairs website, 7 customer complaints on Electrolux's Facebook page, 4 complaints on Sears' website, and 2 consumer complaints on a Facebook page unrelated to Electrolux."  No. 1:17-cv-01213-LJO-SKO, 2018 WL 1784273, at *8 (E.D. Cal. Apr. 13, 2018) (cited in Mot. at 9).  The court held that this did not pass muster because "a few consumer complaints standing alone is insufficient to establish Electrolux's knowledge of a wide-spread defect allegedly affecting every single self-cleaning Electrolux has produced under any label to all distributors across the country."  *Id.*  That is almost precisely analogous to the facts here, down to the number of complaints cited and the fact that Plaintiffs allege that every single 6P produced was afflicted with the defect.  SAC ¶¶ 1, 3.  Likewise, in *Baba v. Hewlett-Packard*, 66 internet posts, 26 of which were made before one of the two named plaintiffs bought the device at issue, and 3 of which were made on the defendant's website, were insufficient because "[a]wareness of a few customer complaints . . . does not establish knowledge of an alleged defect."  No. C 09-05946 RS, 2011 WL 317650, at *3 (N.D. Cal. Jan. 28, 2011) (cited in Mot. at 9).  Contrary to Plaintiffs' characterization of *Berenblat v. Apple, Inc.*, that case found that 350 complaints posted on Apple's website "merely establish the fact that some consumers were complaining.  By themselves they are insufficient to show ***that Apple had knowledge*** [of the defect] and sought to conceal that knowledge from consumers."  No. 08-4969 JF (PVT), 2010 WL 1460297, at *9 (N.D. Cal. Apr. 9,

6

2010) (emphasis added) (cited in Mot. at 9; Opp. at 12).  Again, Plaintiffs try to distinguish *Deras* because the complaints there were made over a longer period, but the court was clear that "[f]orty-five, or even fifty-six, complaints out of hundreds of thousands of vehicles does not on its face indicate an unusually high number of complaints."  2018 WL 2267448, at *4 (cited in Mot. at 8; Opp. at 12).  That is doubly true here, where the majority of the complaints were not even targeted at the defects and thus would be even less expected to put Google on notice of a specific problem.

By contrast, *Huntzinger v. Aqua Lung America, Inc.*, No. 15CV1146 WQH (KSC), 2015 WL 8664284, at *8 (S.D. Cal. Dec. 10, 2015), and *Falk*, 496 F. Supp. 2d at 1096, involved, respectively, a life-threatening defect in scuba equipment and a defect that caused a car speedometer to fail.  Opp. at 10–11.  Here, instead, Plaintiffs concede that they have not pled any safety hazard.  *Elias v. Hewlett-Packard Co.* acknowledges that "[s]tanding alone, customer complaints, especially when alleged anecdotally, are insufficient to support allegations of exclusive knowledge of a defect," and then goes on to rely on other allegations of a sort not present here that, taken as true, ***demonstrated*** awareness of the problem.  No. 12-CV-00421-LHK, 2014 WL 493034, at *8 n.9 (N.D. Cal. Feb. 5, 2014) (cited in Opp. at 11).  And *Williams v. Yamaha Motor Co. Ltd.* involved a specific allegation that the defendant knew of the ***specific problem*** as well as an unusual volume of complaints.  851 F.3d 1015, 1027 (9th Cir. 2017) (cited in Opp. at 11).  Again, Plaintiffs' cases appear directed at parties making at least a part or providing a warranty; we are not aware of a case applying the same reasoning to an entity like Google.

Finally, Plaintiffs rely on the allegation in SAC paragraph 3 that "tens of thousands of consumers have reported random shutdowns and reboots, accelerated battery loss, and bootlooping failures."  SAC ¶ 3 (cited in Opp. at 10–11).  Plaintiffs do not allege ***to whom*** or ***where*** these complaints were made or provide any other detail.  Mot. at 16.  Such conclusory allegations are not sufficient.  "[A]necdotal complaints without dates or any other information are insufficient to allege that [the defendant] possessed knowledge of the putative defect."  *Baba*, 2011 WL 317650, at *3; *see also Azar v. Gateway Genomics, LLC*, No. 15CV2945 AJB (WVG), 2017 WL 1479184, at *4 (S.D. Cal. Apr. 25, 2017).

### b.   Generic allegations of pre-release testing do not show knowledge.

Plaintiffs' arguments on this point only reinforce that their allegations are devoid of content and are not specific enough to raise either a plausible inference of knowledge or a reasonable expectation that

7

1    discovery will reveal evidence of "wrongdoing."  Opp. at 15.

2         Plaintiffs argue that they "allege that Google in fact did test the product, how it tested the product,

3    and why that testing should have shown the defect."  Opp. at 15.  Here it is again relevant that Plaintiffs

4    now "define the defect" broadly as a series of symptoms:  "random shutdowns," "accelerated battery

5    drain," and "eventually," "a permanently disabling bootloop cycle."  Opp. at 14.  The first two are more

6    common issues that have myriad causes, and Plaintiffs appear to allege that a manifestation of *any* of the

7    above issues constitutes "the defect."  *Id.*  Then Plaintiffs "identify likely causes," which include

8    "damaged or defective internal components," along with loose connections "***and/or***" overheating and

9    ineffective thermal management, one or more of which "***may***" cause comparatively common problems

10   like freezing and random shutdowns to manifest.  *Id.*  Then Plaintiffs say that "testing thousands of

11   prototype phones for durability, ***including*** of internal components and connections, and testing for

12   overheating and thermal problems" would have uncovered these problems.  Opp. at 15.

13        Plaintiffs' open-ended lists and qualifying language amount to an assertion that Google and

14   Huawei's "testing of internal components" would have uncovered "defective internal components" that

15   led to one or more of "random shutdowns," "accelerated battery drain," and "a permanently disabling

16   bootloop cycle."  In other words, in an effort to keep their options open down the road, Plaintiffs allege

17   that virtually the entire range of testing performed on devices by companies like Google and Huawei

18   would have uncovered any conceivable problem with "defective internal components" that could have

19   caused any of the range of issues they characterize as the "defect."  Opp. at 14; Mot. at 14 n.4.  This is

20   precisely akin to *Resnick v. Hyundai Motor Am., Inc.*, where the Court found that "the fact that

21   Defendants had quality control programs in place on the one hand, and that several consumers made

22   anonymous complaints online . . . on the other hand, fails to establish knowledge of a widespread *defect*."

23   No. CV 16-00593-BRO (PJWx), 2017 WL 1531192, at *14–15 (C.D. Cal. Apr. 13, 2017) (emphasis in

24   original); *see also Stewart*, 2018 WL 1784273, at *9 (holding that "conclusory allegations that Electrolux

25   must have internal quality control procedures or after-market testing that would have, at some

26   unspecified point, given rise to knowledge of the defect are insufficient.").  Plaintiffs' words are so

27   general that they are no more than an allegation that Google and Huawei had "quality control programs

28   in place" that should have uncovered some problem with the 6P's "internal components."  And the

8

REPLY IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT / CASE NO. 5:17-CV-02185-BLF

generality of their allegations also implicates the concern raised in *Burdt v. Whirlpool Corp.*, that unless some level of specificity is required with respect to what testing would have revealed a more specific issue, "any consumer could bring a CLRA claim merely by asserting that a manufacturer had knowledge of an alleged defect from its pre-release testing."  No. C 15-01563 JSW, 2015 WL 4647929, at *4 (N.D. Cal. Aug. 5, 2015).

Plaintiffs' own cases involved allegations that actually committed to a theory of what particular tests would have uncovered what particular issue (beyond just "damaged or defective internal components").  Opp. at 13–15.  In *Davidson v. Apple, Inc.*, plaintiffs alleged that various specific tests "would have alerted Apple to the fact that the iPhone's external casing was not strong enough to protect the touch IC chips."  No. 16-CV-4942-LHK, 2017 WL 3149305, at *15 (N.D. Cal. July 25, 2017); Opp. at 14.  Plaintiffs in *Kowalsky v. Hewlett-Packard Co.* alleged that HP tested its printers using a specific standard promulgated by an international standards committee.  No. 10-CV-02176-LHK, 2011 WL 3501715, at *4–5 (N.D. Cal. Aug. 10, 2011); Opp. at 14.  And the pleading found adequate in *Apodaca v. Whirlpool Corp.* likewise averred with considerable specificity the tests ("the ASTM F1996-06 Standard Test Method for Exposure of Membrane Switches to Temperature and Relative Humidity, UL 792 Silver Migration Test, L 749, and a "salty fog" test, among others") that would have revealed the problem.  No. 8:13-cv-00725-JVS-AN (C.D. Cal. June 28, 2013), ECF No. 18 ¶ 150.  And *Huntzinger*, 2015 WL 8664284, at *8 (cited in Opp. at 14), does not mention testing at all.

To avoid the conclusion that they have impermissibly lumped Defendants together in their testing allegations, Plaintiffs again point to the law of joint venture, this time to suggest that the knowledge of each party is imputed to the other due to a duty of disclosure.  Opp. at 12–13.  But even if Plaintiffs had adequately alleged a joint venture, there is no case suggesting that "joint venture" are magic words that would override the rule requiring more than allegations about a corporation's inherently superior "access to 'aggregate information and data'" to find knowledge.  *Wilson*, 668 F.3d at 1147.  And Plaintiffs' assertion that there is no deficiency because Google and Huawei "engaged in the same conduct" is puzzling—Plaintiffs cannot mean that Google and Huawei ***each*** performed the tests discussed in the SAC.  Where there is legal significance to the question of who did what—here, because one party's testing could give ***that party*** but not the other knowledge—it is not permissible to lump defendants

9

REPLY IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT / CASE NO. 5:17-CV-02185-BLF

together.  *Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F. Supp. 3d 1026, 1037 (N.D. Cal. 2015).

### c.       Plaintiffs also fail to plead a safety hazard.

The current law in the Ninth Circuit is that plaintiffs who rely on a fraudulent omission theory must allege a safety hazard.  *Wilson*, 668 F.3d at 1141–42.  Plaintiffs do not do so.  Opp. at 18–19.  Rather, Plaintiffs suggest that the rule articulated in *Wilson* does not apply after *Hodsdon v. Mars, Inc.*, 891 F.3d 857, 864 (9th Cir. 2018).  *Id.  Hodsdon*, however, explicitly declines to overrule *Wilson*.  *See Hodsdon*, 891 F.3d at 862 (reaching its holding "without either relying on or overruling *Wilson*").  Until the Ninth Circuit expressly overrules *Wilson*, or the Supreme Court of California rules to the contrary, Plaintiffs need to comply with it, which they have not done.  *See Sharma v. BMW of N. Am. LLC*, No. 13-CV-02274-MMC, 2016 WL 4395470, at *5 (N.D. Cal. Aug. 18, 2016).  Plaintiffs also argue that courts do not require the allegation of a safety hazard where the defect arises within the warranty period.  Opp. at 18–19 (citing *Sloan v. Gen. Motors LLC*, 287 F. Supp. 3d 840, 868 (N.D. Cal. 2018)).  *Sloan*, however, was decided before the Court's ruling on Google's first Motion to Dismiss, where the Court concluded that *Wilson* controls.  ECF No. 115 at 35.  Moreover, where, as here, a party is not alleged to have provided a standard written warranty, it makes no sense to ask this Court to inquire whether the defect arose within the nonexistent warranty period.  Plaintiffs cannot get around this common sense conclusion by again alleging a joint venture.  There is no dispute that even if there were a joint venture, Google was not responsible for the warranty here.  And Plaintiffs' citation of cases holding that a duty to disclose "may exist even absent any warranty at all" (Opp. at 19), is a non-sequitur because these cases did not address the question of when a safety hazard must be pled.  Finally, as explained above, Plaintiffs' expansive definition of the defects covers issues that do not necessarily go to the central functionality of the 6P.

### 2.       Plaintiffs' active concealment allegations do not create a duty to disclose.

Plaintiffs argue that Google actively concealed the alleged defects because Google (1) "downplay[ed] the severity and scope of the problems," SAC ¶¶ 134–36; (2) failed to service the devices and attempted to shift blame to Huawei for the defect, *id.* ¶¶ 32, 40, 44, 50, 53, 56, 61, 64, 67, 128–33; and (3) "replaced defective phones with other defective phones," *id.* ¶¶ 61, 132–33.  Opp. at 17.  These allegations are insufficient.

10

REPLY IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT / CASE NO. 5:17-CV-02185-BLF

***First***, Plaintiffs acknowledge that by September 16, 2016, Google actively revealed that some customers were experiencing bootloop.  Opp. at 17 (citing SAC ¶¶ 134–36).  Plaintiffs quibble with the wording of Google's acknowledgement, but the mere fact of it is inconsistent with intent to conceal, and Plaintiffs do not cite a case where a seller of some of the devices at issue identifies a problem and is then found liable.  Opp. at 17.

***Second***, Plaintiffs allege that Google failed to help customers who sought warranty services and attempted to shift blame to Huawei for the alleged defect.  *Id.*  But it should not come as a surprise that Google would refer people to the manufacturer under certain circumstances.  Furthermore, nearly all of the incidents in the SAC occurred ***after*** Google noted the existence of the alleged defect on September 16, 2016.  *Compare* SAC ¶¶ 29, 32, 40, 44, 50, 53, 56, 60–61, 64, 67, 128–33, *with id.* ¶ 134.  Plaintiffs cannot base a finding of active concealment on conduct alleged to have occurred after the relevant information was revealed.  Plaintiffs' citation to *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1134–35 (N.D. Cal. 2010), is unavailing.  Opp. at 16.  There, the defendants did not acknowledge any problem. Finally, issuing replacements is not indicative of fraudulent intent.  Unlike Plaintiffs' cases, Google was making neither the parts nor the devices that were being replaced.  *Cf. Mui Ho*, 931 F. Supp. 2d at 999.

### 3.    The partial representation allegations fail to create a duty to disclose.

This Court dismissed Plaintiffs' allegations of misrepresentation as "inactionable puffery."[3]  ECF No. 115 at 50–51.  Plaintiffs now claim that puffery "is irrelevant" because they are not making affirmative misrepresentation claims.  Opp. at 17 (citing *Finney v. Ford Motor Co.*, No. 17-CV-06183-JST, 2018 WL 2552266, at *8 (N.D. Cal. June 4, 2018)).  But Plaintiffs are making partial misrepresentation claims, which require the partial representations to be actionable.  Opp. at 8, 17–18; *Oestreicher v. Alienware Corp.*, 544 F. Supp. 2d 964, 973 (N.D. Cal. 2008); *Elias*, 2014 WL 493034, at *6 n.6 ("Because the Court previously found that the alleged affirmative representations by Defendant amounted to mere puffery and dismissed with prejudice Plaintiff's claims based on affirmative

---

[3] As discussed in Google's Motion, the Plaintiffs who allege exposure to the "up to seven hours" statement fail to allege reliance as to the partial misrepresentation claim.  Mot. at 19.

1   misrepresentations, Plaintiff cannot proceed on the basis of misleading partial representations.").

2   Plaintiffs' only case to the contrary, *Finney*, expressly distinguished between cases like this one,

3   involving partial representations, and pure concealment cases.  2018 WL 2552266, at *8.

### 4. Plaintiffs also fail to plead unfairness under the UCL.

5   Plaintiffs make one more run at pleading unfairness.  First, Plaintiffs point to their allegation that

6   the 6P was fast to market.  But the allegation that the 6P had a short development cycle cannot alone

7   create an inference of knowledge of a defect or unfairness.  Plaintiffs cite *no* cases to support their

8   theory.  Plaintiffs' contention that unfairness follows from Google's issuing replacement phones turns on

9   cases that are easily distinguished.  *Aguilar v. Gen. Motors, LLC*, No. 1:13-CV-00437-LJO-GS, 2013

10  WL 5670888, at *6 (E.D. Cal. Oct. 16, 2013), and *Kowalsky*, 2011 WL 3501715, at *3, involved

11  ***manufacturers*** replacing parts or products, and *Stanwood v. Mary Kay, Inc.*, 941 F. Supp. 2d 1212, 1222

12  (C.D. Cal. 2012), did not involve replacements at all.

### 5. Plaintiffs' common law fraudulent concealment claims should be dismissed.

14  Plaintiffs do not dispute that each of their common law fraudulent concealment claims requires

15  knowledge and a duty to disclose, and thus that the above analysis concerning these issues applies

16  equally to their fraudulent concealment claims as to the CLRA and UCL.  Opp. at 20.  Plaintiffs instead

17  claim that this "indicates only that the elements of fraudulent concealment are substantially similar across

18  the relevant jurisdictions." *Id.*  But the fact that knowledge and a duty to disclose is necessary to plead a

19  fraudulent omission does not mean that other elements of fraudulent concealment do not differ

20  materially, as discussed further *infra* at 14.  Plaintiffs' common law fraudulent concealment claims

21  should therefore be dismissed for failure to properly allege knowledge and a duty to disclose.

### C. The Nationwide Class Should Be Dismissed Now.

23  The Plaintiffs are wasting time by bobbing and weaving on the proposed class.  In the last round,

24  Plaintiffs proposed subclasses that drew skepticism from the Court.  ECF No. 115 at 85.  Plaintiffs then

25  switched to one nationwide class.  Opp. at 23; SAC ¶ 141.  Now Plaintiffs claim they will switch back to

26  a California subclass.  Opp. at 24–25.  The law supports resolving this now.  Where the parties have

27  briefed choice of law and there is no good argument that discovery is necessary to decide the issue, there

28  is *no* reason for delay.  Otherwise, everyone, including the proposed class, is losing valuable time.  *Cover*

12

REPLY IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT / CASE NO. 5:17-CV-02185-BLF

*v. Windsor Surry Co.*, No. 14-CV-05262-WHO, 2016 WL 520991, at *5 (N.D. Cal. Feb. 10, 2016); *Frezza v. Google Inc.*, No. 5:12-CV-00237-RMW, 2013 WL 1736788, at *7 (N.D. Cal. Apr. 22, 2013); *Zeiger v. WellPet LLC*, 304 F. Supp. 3d 837, 847 (N.D. Cal. 2018); *see also Larsen v. Vizio, Inc.*, No.: SACV 14–01865–CJC(JCGx), 2015 WL 13655757, at *2 n.l (C.D. Cal. April 21, 2015) (finding "the material differences are sufficiently obvious from the pleadings"); *Walters v. Vitamin Shoppe Indus., Inc.*, No. 3:14-CV-1173-PK, 2018 WL 2424132, at *4 (D. Or. May 8, 2018) ("[D]etermining whether variations in state law are material presents legal issues that do not require fact discovery.").

Plaintiffs' cases bear no resemblance to this one—the parties either did not address the issues, or discovery was necessary to decide the issues.  *See Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 572 (N.D. Cal. 2013); *In re Clorox Consumer Litig.*, 894 F. Supp. 2d 1224, 1237 (N.D. Cal. 2012); *see also Bohn v. Pharmavite, LLC*, No. CV 11-10430-GHK CWX, 2012 WL 8898669, at *2 (C.D. Cal. May 16, 2012).  Plaintiffs cite *Yan Mei Zheng-Lawson v. Toyota Motor Corp.*, where this Court denied defendant's motion to strike the nationwide class, but there, plaintiffs identified discovery that was necessary to the analysis.  No. 17-CV-06591-BLF, 2018 WL 2298963, at *4 (N.D. Cal. May 21, 2018). *Yan Mei Zheng-Lawson v. Toyota Motor Corp.*, No. 17-CV-06591-BLF (N.D. Cal. Mar. 15, 2018), ECF No. 36 at 20–21.  The only case cited by Plaintiffs that did not turn on the need for discovery is *Collins v. Gamestop Corp.*, No. C10-1210-TEH, 2010 WL 3077671, at *3 (N.D. Cal. Aug. 6, 2010), but there, the court **granted** defendant's motion to strike the nationwide class claims for CLRA and UCL.  *Id.* at *2. Here, Plaintiffs do not identify any discovery they need regarding choice of law.  Opp. at 23.

Each factor of the *Mazza* analysis is met and prevents a nationwide class.  *See Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012).  With regard to material differences in the states' laws, Plaintiffs incorrectly suggest that the arguments here were "cursory."  Opp. at 24.  In fact, Google cited the relevant cases that expressly set out the material differences in the exact laws at issue here.  Mot. at 22; *Darisse v. Nest Labs, Inc.*, No. 5:14-CV-01363-BLF, 2016 WL 4385849, at *9–14 (N.D. Cal. Aug. 15, 2016).  This Court has found that "the other 49 states' consumer protection statutes differ significantly from California's UCL . . . and CLRA," and that the 50 states' implied warranty of merchantability laws and fraud laws differ materially.  *Id.* at *9–14.  The authorities that Plaintiffs cite in rebuttal—*In re iPhone 4S Consumer Litig.*, No. C 12-1127 CW, 2013 WL 3829653, at *7 (N.D. Cal. July

13

23, 2013), and *Werdebaugh v. Blue Diamond Growers*, No. 12-CV-02724-LHK, 2013 WL 5487236, at *16 (N.D. Cal. Oct. 2, 2013)—do not change the outcome.  Opp. at 24.  *In re iPhone 4S* does not address choice of law, let alone whether variations in state consumer protection laws are material.  2013 WL 3829653, at *7 (noting that whether non-California plaintiffs can assert California consumer protection statutes is a separate issue from "choice-of-law analysis").  In *Werdebaugh*, the defendant did not submit any analysis on the issue.  2013 WL 5487236, at *16.

Plaintiffs also assert that there are no variations in the states' fraud laws.  Plaintiffs simply ignore cases to the contrary.  Indeed, this Court found that material differences exist in the very claims at issue here.  Mot. at 22; *Darisse*, 2016 WL 4385849 at *11–14; *see also Decker v. Mazda Motor of Am., Inc.*, No. SACV 11-0873 AG-MLG, 2013 WL 12129281, at *6 (C.D. Cal. Mar. 29, 2013).  Plaintiffs fail to address these cases.  Instead, Plaintiffs cite *Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010), and *Allapattah Servs., Inc. v. Exxon Corp.*, 188 F.R.D. 667, 673 (S.D. Fla. 1999), *aff'd*, 333 F.3d 1248 (11th Cir. 2003).  Opp. at 24.  *Chavez* predates *Mazza*, and *Allapattah* did not engage with choice of law, nor try to impose one state's fraudulent concealment doctrine on residents of another state, which is what Plaintiffs here seek to do with their nationwide class.  *Allapattah*, 188 F.R.D. at 672–75.

As for the CLRA and UCL, Plaintiffs cite *Bruno v. Eckhart Corp.*, 280 F.R.D. 540, 547 (C.D. Cal. 2012), *Tait v. BSH Home Appliances Corp.*, 289 F.R.D. 466, 480 (C.D. Cal. 2012), *Chavez*, 268 F.R.D. at 379, and *Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 598 (C.D. Cal. 2008).  Opp. at 24–25.  *Bruno* merely states that other, pre-*Mazza* cases applied the CLRA and UCL to nationwide classes, and that *Mazza* requires a case-by-case analysis.  *Bruno*, 280 F.R.D. at 547.  In *Tait*, the plaintiffs sought certification of UCL and CLRA claims only for a California class of persons that bought the product in California for use in California.  289 F.R.D. at 471, 480.  *Chavez*, again, is pre-*Mazza*.  And in *Parkinson*, the court concluded that there was no conflict between California's consumer protection laws and the laws of the non-forum states.  258 F.R.D. at 598.  But subsequent courts that have dug into the analysis, including this Court, have ruled to the contrary.  Mot. at 22 (citing *Darisse*, 2016 WL 4385849, at *9–10); *see also In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, 785 F. Supp. 2d 925, 934 (C.D. Cal. 2011) (distinguishing *Parkinson*, *Chavez*, et al. because "these cases simply assumed that if constitutional Due Process concerns were met, California provided

14

REPLY IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT / CASE NO. 5:17-CV-02185-BLF

the applicable choice-of-law rule without further inquiry.").

Turning to the place of the alleged wrong, Plaintiffs allege that the conduct "emanated from California." Opp. at 24–25. Courts repeatedly have rejected this argument. *See, e.g.*, *Mazza*, 666 F.3d at 590, 593–94; *Darisse*, 2016 WL 4385849, at *15; *Van Mourik v. Big Heart Pet Brands, Inc.*, Case No. 3:17-cv-03889-JD, 2018 WL 1116715, at *2–3 (N.D. Cal. 2018). In response, Plaintiffs cite *Ehret v. Uber Techs., Inc.*, where the court addressed whether the presumption against extraterritorial application of the UCL and CLRA precluded a non-California plaintiff from asserting those statutes. 68 F. Supp. 3d 1121, 1130–32 (N.D. Cal. 2014). *Ehret* did not engage with choice of law, and this argument was rejected in *Van Mourik*. 2018 WL 1116715, at *3–4.

Finally, Plaintiffs lack standing to represent absent class members in 43 states. Plaintiffs claim that only one named plaintiff needs to have standing (Opp. at 25), but that principle does not apply where, as here, "no plaintiff is alleged to reside in a state whose laws the class seeks to enforce." *Mollicone v. Universal Handicraft, Inc.*, No. 2:16-CV-07322-CASMRWX, 2017 WL 440257, at *9 (C.D. Cal. Jan. 30, 2017) (quoting *Corcoran v. CVS Health Corp.*, 169 F. Supp. 3d 970, 990 (N.D. Cal. 2016)). Plaintiffs also claim that issues regarding the relationship between the class representative and class members is an issue for certification, not standing. Opp. at 25. Both of Plaintiffs' cases ignore controlling precedent. *See United Food & Commercial Workers Local 1776 & Participating Employers Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1079 n.33 (N.D. Cal. 2014) (criticizing *In re Hydroxycut Mktg. & Sales Practices Litig.*, 801 F. Supp. 2d 993 (S.D. Cal. 2011) for "ignoring controlling precedent"). Contrary to the opinion in *Pecanha v. The Hain Celestial Grp., Inc.*, No. 17-CV-04517-EMC, 2018 WL 534299, at *9 (N.D. Cal. Jan. 24, 2018), the majority of courts to consider whether plaintiffs can bring claims under the laws of states in which they do not reside, or where they did not purchase the accused products, "have concluded that when a representative plaintiff is lacking for a particular state, all claims based on that state's laws are subject to dismissal." *Mollicone*, 2017 WL 440257, at *9; *Hindsman v. Gen. Motors LLC*, No. 17-CV-05337-JSC, 2018 WL 2463113, at *16 (N.D. Cal. June 1, 2018).

## III.  CONCLUSION

Google requests that the Court grant its motion to dismiss with prejudice.

15

REPLY IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT / CASE NO. 5:17-CV-02185-BLF

1     Dated:  August 2, 2018                    DURIE TANGRI LLP

2

3                                               By: _____/s/ Joshua H. Lerner_____
                                                              JOSHUA H. LERNER
4

5                                               Attorney for Defendant
                                                GOOGLE LLC
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT / CASE NO. 5:17-CV-02185-BLF

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 2, 2018 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Joshua H. Lerner*

JOSHUA H. LERNER

REPLY IN SUPPORT OF DEFENDANT GOOGLE LLC'S MOTION TO DISMISS SECOND
CONSOLIDATED AMENDED CLASS ACTION COMPLAINT / CASE NO. 5:17-CV-02185-BLF