```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE NORTHERN DISTRICT OF CALIFORNIA

 3                       SAN JOSE DIVISION

 4
    IN RE NEXUS 6P PRODUCTS          )   CV-17-2185-BLF
 5  LIABILITY LITIGATION             )
                                     )   SAN JOSE, CALIFORNIA
 6                                   )
                                     )   OCTOBER 17, 2018
 7                                   )
                                     )   PAGES 1-67
 8                                   )
                                     )
 9                                   )
    _____ )
10
                    TRANSCRIPT OF PROCEEDINGS
11          BEFORE THE HONORABLE BETH LABSON FREEMAN
                    UNITED STATES DISTRICT JUDGE
12

13                   A P P E A R A N C E S

14

15     FOR THE PLAINTIFF:      BY:  ADAM E. POLK
                                    TREVOR TAN
16                             GIRARD SHARP LLP
                               601 CALIFORNIA STREET, SUITE 1400
17                             SAN FRANCISCO, CA 94108

18

19     FOR THE DEFENDANT:      BY:  LINDSEY BARNHART
       HUAWEI                       SIMON J. FRANKEL
20                             COVINGTON & BURLING LLP
                               ONE FRONT STREET
21                             SAN FRANCISCO, CA 94111

22            APPEARANCES CONTINUED ON THE NEXT PAGE

23     OFFICIAL COURT REPORTER:    SUMMER FISHER, CSR, CRR
                                   CERTIFICATE NUMBER 13185
24

25         PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
              TRANSCRIPT PRODUCED WITH COMPUTER
```

1    APPEARANCES CONTINUED:

2

3    FOR THE PLAINTIFF:        BY:  BENJAMIN F. JOHNS
                               CHIMICLES & TIKELLIS LLP
4                              361 W. LANCASTER AVE
                               HAVERFORD, PA 19041
5

6    FOR THE DEFENDANT:        BY:   JOSHUA H. LERNER
     GOOGLE                          CATHERINE KIM
7                                    STEPHEN ELKIND
                               DURIE TANGRI LLP
8                              217 LEIDESDORFF STREET
                               SAN FRANCISCO, CA 94111
9

10   ALSO PRESENT:             ISABEL YOUNG
     GOOGLE
11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
1        SAN JOSE, CALIFORNIA              OCTOBER 17, 2018

2                    P R O C E E D I N G S

3        (COURT CONVENED AT 9:25 A.M.)

4             THE CLERK:  CALLING CASE 17-2185.  IN RE NEXUS.

5        COUNSEL, PLEASE COME FORWARD AND STATE YOUR APPEARANCES.

6             MR. POLK:  GOOD MORNING, YOUR HONOR.

7        ADAM POLK FOR THE PLAINTIFFS.

8             THE COURT:  GOOD MORNING.

9             MR. JOHNS:  GOOD MORNING, YOUR HONOR.

10       BEN JOHNS, ALSO FOR THE PLAINTIFFS.

11            THE COURT:  GOOD MORNING.

12            MR. TAN:  GOOD MORNING, YOUR HONOR.

13       TREVOR TAN, ALSO ON BEHALF OF PLAINTIFF.

14            THE COURT:  GOOD MORNING.

15            MS. BARNHART:  GOOD MORNING, YOUR HONOR.

16       LINDSEY BARNHART AND SIMON FRANKEL FOR HUAWEI.

17            MR. LERNER:  GOOD MORNING, YOUR HONOR.

18       JOSHUA LERNER OF DURIE TANGRI ON BEHALF OF GOOGLE.  AND

19       WITH ME ARE MY COLLEAGUES CATHERINE KIM AND STEPHEN ELKIND, AS

20       WELL AS ISABEL YOUNG FROM GOOGLE.

21            THE COURT:  GOOD MORNING.

22            ALL RIGHT.  WELL, WE HAVE A LITTLE BIT TO DIG INTO HERE.

23            I HAVE TWO MOTIONS, ONE BY HUAWEI AND ONE BY GOOGLE.  AND

24       ALTHOUGH THE CLAIMS ARE DISTINCT BETWEEN THE PARTIES IN THE

25       SECOND AMENDED COMPLAINT, THERE IS SIGNIFICANT OVERLAP IN THE
```

1    MOTIONS, BUT I APPRECIATE THE NECESSITY OF IT BEING BRIEFED

2    SEPARATELY HERE, AND I'M HOPING WE ARE COMING TO THE END OF THE

3    VOLUMINOUS BRIEFING.

4         BUT THERE ARE REALLY TWO MAJOR ISSUES THAT WE NEED TO TALK

5    ABOUT TODAY.  AND MR. POLK, THE NATIONWIDE CLASS ISSUE IS

6    WHAT'S FOREMOST IN MY MIND.  YOU SKATED ON THAT ISSUE LAST TIME

7    BECAUSE I FELT THAT WAS PREMATURE TO ADDRESS IT.  AND YOU

8    APPROPRIATELY RELIED UPON MY CLEAR STATEMENT TO ASK ME TO DO

9    THE SAME.

10         BUT I'M ACTUALLY VERY CONFUSED ABOUT WHAT YOUR COMPLAINT,

11   THE SECOND AMENDED COMPLAINT, IS ASKING FOR AT THIS TIME.  AND

12   I JUST WANT TO IDENTIFY A COUPLE OF THINGS.

13         HUAWEI ARGUES THAT YOU DON'T ACTUALLY MAKE ANY CLAIM ON

14   BEHALF OF THE NATIONWIDE CLASS.  YOU IDENTIFY AND DEFINE A

15   NATIONWIDE CLASS, BUT LOOKING AT THE SECOND AMENDED COMPLAINT,

16   AND I'M GOING TO PULL -- I READ WAY TOO MANY CASES AND WAY TOO

17   MANY DOCUMENTS HERE, BUT THAT'S THE WAY THE CASE IS.  NOT A

18   SINGLE CLAIM, WHEN I GET TO YOUR CLAIMS FOR RELIEF STARTING ON

19   PAGE 37 OF THE SECOND AMENDED COMPLAINT, IS ASSERTED ON BEHALF

20   OF A NATIONWIDE CLASS.

21         AND I RECALL -- YOU KNOW, SO THAT'S ONE THING.  BUT THEN

22   IN YOUR, LET'S SEE -- I MADE A NOTE OF THIS, SO I ACTUALLY WANT

23   TO GO BACK AND FIND IT.

24         IN YOUR OPPOSITION ON PAGE 23, YOU SAY AT LINE 23,

25   "PLAINTIFFS DO NOT SEEK TO APPLY CALIFORNIA LAW TO THE COMMON

1        LAW FRAUDULENT CONCEALMENT CLAIMS OF THESE PURCHASERS."

2            AND ON PAGE 24, YOU SAY AT LINE 10, "GOOGLE'S CLASS

3        CERTIFICATION ARGUMENT ALSO DISREGARDS CASE LAW DEEMING

4        FRAUDULENT CONCEALMENT CLAIMS APPROPRIATE FOR NATIONWIDE CLASS

5        TREATMENT."

6            SO IT SEEMS TO ME THAT YOU'RE SAYING -- WHAT YOU ARE

7        CALLING NATIONWIDE CLASS TREATMENT IS NOT WHAT I UNDERSTAND

8        NATIONWIDE CLASS TREATMENT TO BE; BUT RATHER, IT LOOKS LIKE

9        YOUR -- THIS IS A PLACE SAVER FOR -- CALLING IT A NATIONWIDE

10       CLASS IS NOTHING MORE THAN A PLACE SAVER FOR WHAT YOU WILL

11       LATER DETERMINE TO BE THE PROPER BREAKDOWN OF THE CLASSES.

12           SO HELP ME OUT HERE.  IN MY VIEW, IF YOU WANT A NATIONWIDE

13       CLASS, THEIR CLAIMS RISE AND FALL UNDER THE SAME LAW.  SO THAT

14       COULD BE CALIFORNIA, THAT COULD BE -- THAT COULD BE A FEDERAL

15       LAW, CLEARLY.  BUT THE MAGNUSON-MOSS ACT DOESN'T HELP THERE

16       BECAUSE THAT IN TURN IS RELIANT ON EACH STATE'S LAW.  SO THAT

17       REALLY SORT OF DECOMPENSATES, IF YOU WILL, ONCE IT'S FILED.

18       IT'S NOT LIKE OTHER FEDERAL LAWS.

19           SO IT THEN GETS US RIGHT INTO THE STANDING ISSUE OF IF

20       YOU'RE ASSERTING PLAINTIFF'S CLASS MEMBERS RIGHTS UNDER EACH OF

21       THE 50 STATES, THEN YOU NEED A PLAINTIFF IN EACH OF THE 50

22       STATES.

23           SO IN THE FIRST AMENDED COMPLAINT I REVIEWED, YOU

24       IDENTIFIED, I DON'T KNOW IF IT WAS 11 OR 13 STATES, AND

25       SEPARATE CLASSES FOR EACH ONE.  AND IN THE AMENDED COMPLAINT,

1    YOU DID AWAY WITH THAT.  AND AT THE CASE MANAGEMENT CONFERENCE

2    I THOUGHT OH, GOOD, THIS HAS BECOME SIMPLER.

3        BUT -- SO I'M SORRY I'M SORT OF RAMBLING, BUT I'M NOT SURE

4    WHAT IT IS THE COMPLAINT IS TRYING TO DO.  SO I DON'T KNOW

5    WHICH ISSUE TO ANALYZE HERE.

6            MR. POLK:  COULD I BE HEARD ON THAT, YOUR HONOR?

7            THE COURT:  YEAH.  SURE.

8            MR. POLK:  ALL RIGHT.

9        SO I THINK TAKING A STEP BACK, YOU ARE RIGHT.  WE STARTED

10   WITH YOUR ORDER, WHICH WAS DETAILED AND GAVE US A LOT OF

11   INSIGHT INTO THE SUBSTANTIVE CLAIMS, THE ELEMENTS OF THE

12   SUBSTANTIVE CLAIMS.

13       YOUR ORDER, WE THINK CORRECTLY STATED THAT CLASS ISSUES,

14   DIFFERENCES BETWEEN STATE LAW, THIS IS PAGE 84 AND 85, WERE

15   PREMATURE.  SO WHAT WE DID WAS WE FOCUSED ON SETTLING THE

16   PLEADINGS AS TO STATE LAW CLAIMS.  WE ALLEGED A NATIONWIDE

17   CLASS IN THE FIRST COMPLAINT.  WE ALLEGE A NATIONWIDE CLASS IN

18   THE SECOND COMPLAINT AS WELL.

19       AND YOU KNOW --

20           THE COURT:  BUT YOU DON'T BRING ANY OF THE CLAIMS ON

21   BEHALF OF A NATIONWIDE CLASS.

22           MR. POLK:  ON THAT POINT, YOUR HONOR, WE INTENDED TO,

23   SO PARAGRAPHS 150 AND 151, IF YOU LOOK AT THOSE TWO PARAGRAPHS

24   THAT PRECEDE THE INDIVIDUAL CAUSES OF ACTION, THEY SPECIFY THAT

25   AS TO GOOGLE, AND I THINK THEY ARE PRETTY EXPLICIT, THE LAW

```
1     OF -- SO FOR DIRECT PURCHASERS AND CALIFORNIA RESIDENTS,

2     CALIFORNIA LAW APPLIES.  FOR EVERYBODY ELSE, WHERE THEY LIVE,

3     WHICH IN THIS CASE IS WHERE THEY PURCHASED, IS THE APPLICABLE

4     LAW.

5              THE COURT:  SO, OKAY, MAY I STOP YOU THERE, BECAUSE I

6     NEED YOU TO EDUCATE ME THEN.  THAT'S FINE.  AND THEN I DON'T

7     HAVE TO DO A CHOICE OF LAW ANALYSIS.  BUT THEN IT'S NOT A

8     NATIONWIDE CLASS, THEN IT'S A CLASS OF EVERYBODY IN THE COUNTRY

9     ORGANIZED UNDER THE LAWS OF THEIR OWN STATES.  IT'S 50 CLASS

10    ACTIONS.

11             MR. POLK:  YOUR HONOR, EXCEPT THERE ARE -- THERE IS A

12    CHOICE OF LAW ELEMENT THAT'S GOING TO BE INJECTED HERE, AND

13    IT'S NOT APPROPRIATELY ADDRESSED AT THIS TIME, AND I'M GOING TO

14    EXPLAIN WHY.

15             THE COURT:  OKAY.

16             MR. POLK:  AND THAT'S BECAUSE WE DO ASSERT THE UCL

17    AND THE CLRA CLAIMS.

18             THE COURT:  RIGHT.

19             MR. POLK:  ON BEHALF OF EVERYBODY.

20        YOU KNOW, AND I DO THINK THAT YOU ARE RIGHT, WE ARE GOING

21    TO BE SEEKING TO -- SO FIRST OF ALL, LET ME JUST SAY THAT I DO

22    THINK THAT AS TO CERTAIN CLAIMS, THERE IS GOING TO BE A

23    NARROWING OF THE CLASS DEFINITION BEFORE THE TIME WE MOVE FOR

24    CLASS CERTIFICATION IN FEBRUARY.  AND I THINK THAT'S FAIRLY

25    ROUTINE IN CASES LIKE THIS, IT CAN EVEN HAPPEN ON REPLY WHICH
```

1    HAPPENED IN THE GOLD CASE.

2         SO I THINK WHAT YOU ARE LOOKING AT, YOU ARE RIGHT, WE READ

3    YOUR ORDER, WE FOCUSED ON THE SUBSTANTIVE CLAIMS AND WE DID PUT

4    A PLACEHOLDER CLASS DEFINITION IN.  WE DIDN'T PLEAD EVERY CLAIM

5    ON BEHALF OF EVERY PLAINTIFF FROM EVERY STATE.

6         THE COURT:  OKAY.  SO HERE'S WHAT I NEED TO DO HERE,

7    CONSISTENT WITH WHAT I'VE ALREADY RULED, AND I'M NOT SURE I HAD

8    TO DEAL WITH IT THERE, I WOULD DISMISS THESE CLAIMS TO THE

9    EXTENT THAT THEY PERTAIN TO ABSENT CLASS MEMBERS WITHOUT A

10   REPRESENTATIVE FROM THEIR STATE ON THE STANDING ISSUE.

11        AND I WILL LET YOU ARGUE THAT, BUT THAT'S WHAT, BY YOUR

12   PLEADING, OF COURSE YOU DIDN'T PLEAD A NEBRASKA CLASS, FOR

13   EXAMPLE, FAILING TO HAVE A NEBRASKA PLAINTIFF, THAT WOULD HAVE

14   PUT IT FRONT AND CENTER.

15        AND WHAT HUAWEI AND GOOGLE ARE SAYING IS DON'T MAKE US DO

16   50 STATE DISCOVERY IF YOU ARE NEVER GOING TO HAVE A CLASS

17   REPRESENTATIVE.

18        AND I DON'T REALLY LOOK AT DISCOVERY AS A WAY FOR YOU TO

19   FIND CLIENTS.  IT'S JUST NOT.  AND SO I'M NOT GOING TO -- I

20   HAVE NEVER REQUIRED CLASS NOTICE TO GO OUT SO THAT YOU CAN GET

21   WILLING PEOPLE TO COME KNOCK ON YOUR DOOR.

22        SO I'M JUST REALLY TROUBLED BY THE STRUCTURE OF THE

23   COMPLAINT AT THAT HIGH LEVEL, AND I DIDN'T -- I REALLY DIDN'T

24   WANT TO DO THE CLASS CHOICE OF LAW ANALYSIS AT THIS POINT, BUT

25   REALLY, BECAUSE OF THE WAY YOU PLED IT, I ACTUALLY AM NOW

1    FALLING INTO THE COLUMN WITH THE DEFENDANTS THAT I DON'T KNOW

2    WHAT I HAVE HERE.

3          NOW IF I JUST GO BACK AND RULE THAT I'M ONLY ALLOWING

4    CLASS ACTIONS ON THE FRAUDULENT CONCEALMENT ACTION TO STATES

5    THAT HAVE REPRESENTATIVES, AND I'M NOT GOING TO ANALYZE WHETHER

6    THAT'S A PROPER CLASS, BUT I WILL GRANT THE MOTION TO DISMISS

7    ON THE OTHERS ON STANDING, THEN YOU ARE RIGHT, THE UCL, CLRA

8    CLAIM WOULD APPLY NATIONWIDE.  THAT'S A DIFFERENT ANALYSIS, I

9    THINK THERE'S A LOT OF LAW ON THAT.  YOU ARE ASKING ME TO DEFER

10   IT, BUT YOU HAVEN'T TOLD ME WHAT DISCOVERY WOULD DO TO HELP IT

11   OUT.

12          MR. POLK:  OKAY.  SO THERE'S A LOT.  I REALLY DON'T

13   WANT TO CONFLATE THESE ISSUES ABOUT CHOICE OF LAW AND STANDING.

14          THE COURT:  OKAY.  AND I THINK THAT'S WISE.  THANK

15   YOU.

16          MR. POLK:  SO LET ME TALK ABOUT CHOICE OF LAW FIRST,

17   WHICH I THINK YOU ARE RIGHT, IT'S MOST APPLICABLE TO THE UCL

18   AND THE CLRA CLAIM.

19          AND SO TYPICALLY WHAT HAPPENS IN THESE CASES, AND

20   YOUR HONOR'S DECISION IN DARISSE, AND THE DECKER CASE AND IN

21   MAZZA ITSELF, THERE'S A BURDEN SHIFTING, A THRESHOLD BURDEN

22   SHIFTING THAT HAPPENS.  THE PLAINTIFFS ARE REQUIRED TO SHOW AN

23   AGGREGATION OF CONTACTS WITH THE FORUM, WHICH WE DO AT

24   PARAGRAPH 2, WE THINK, AS TO BOTH DEFENDANTS.  TO THE EXTENT

25   THAT HUAWEI ARGUES OTHERWISE, THAT'S AN ISSUE THAT DISCOVERY

1        WOULD BE RELEVANT TO.

2            THE BURDEN THEN SHIFTS UNDER MAZZA, TO THE DEFENDANTS TO

3     SHOW THAT THERE ARE DIFFERENCES IN EACH OF THE RELEVANT

4     JURISDICTIONS THAT ARE AT ISSUE IN THE COMPLAINT.

5            AND DEFENDANTS TYPICALLY MEET THAT BURDEN IN MAZZA, IN

6     DECKER, AND IN DARISSE BY PUTTING IN A PRETTY DETAILED APPENDIX

7     FLESHING OUT THE DIFFERENCES IN THE VARIOUS STATE LAWS.  THEY

8     ARE THEN REQUIRED TO SHOW THAT THE DIFFERENCES WOULD BE

9     MATERIAL ON THE FACTS OF THE CASE.

10           AND THEN THE COURT IS ASKED TO DETERMINE WHICH STATES'S

11    INTEREST WOULD BE MORE IMPAIRED BY APPLICATION OF THE OTHER'S

12    LAW.  AND THAT'S THE APPLICABLE LAW.

13           SO HERE, I THINK WE STOPPED AT STEP 1, BASICALLY.  WE

14    DON'T HAVE A DETAILED APPENDIX TO RESPOND TO.  INSTEAD, WHAT

15    THE DEFENDANTS ARE ASKING YOUR HONOR TO DO IS SHIFT THE BURDEN

16    TO THE PLAINTIFFS TO SHOW WHY DIFFERENCES ARE IMMATERIAL.  AND

17    THAT'S NOT HOW IT WORKS.

18           AND SO IT'S A VERY HARD ARGUMENT TO RESPOND TO, WHAT

19    DISCOVERY WOULD HELP YOU.  WELL, WE DON'T KNOW.  BUT AS A

20    STARTING POINT, TO THE EXTENT THAT SOME COURTS, AS THE COURT IN

21    MAZZA POINTED OUT, REQUIRES SCIENTER, SOME STATES REQUIRE

22    SCIENTER, OTHER STATES DON'T FOR FRAUDULENT CONCEALMENT COUNT,

23    DISCOVERY IS GOING TO BE RELEVANT TO THAT ISSUE.

24             THE COURT:  SO FRAUDULENT CONCEALMENT, IT SOUNDS AS

25     THOUGH YOU ACKNOWLEDGE THAT THERE'S NO NATIONWIDE CLASS THAT

1    WILL FALL UNDER A SINGLE LAW.  BECAUSE YOU SAID THAT IN YOUR

2    OPPOSITION AT PAGE 24 THAT THAT'S NOT WHAT YOU'RE DOING.  EACH

3    STATE'S LAW WOULD BE APPLICABLE.

4         MR. POLK:  THAT'S RIGHT.  BUT RIGHT NOW, SO WHAT I'M

5    ADDRESSING --

6         THE COURT:  SO THAT'S DIFFERENT THAN THE UCL/CLRA.

7         MR. POLK:  YES.

8      SO TO THE EXTENT THERE'S A CONSUMER PROTECTION STATUTE,

9    AND WE STRIPPED THOSE OUT OF THE COMPLAINT, WHICH SHOULD GIVE

10   YOU A PRETTY GOOD IDEA ABOUT THE SCOPE THAT WE ENVISION GOING

11   FORWARD.

12     TO THE EXTENT THERE'S A CONSUMER PROTECTION STATUTE WHICH

13   HAS NOT BEEN IDENTIFIED BY DEFENDANTS, BECAUSE THERE IS NO

14   APPENDIX, THAT REQUIRES SCIENTER AND CALIFORNIA DOESN'T, THEN

15   DISCOVERY AS TO SCIENTER, WHEN DEFENDANTS KNEW WHAT THEY KNEW,

16   IS GOING TO BE RELEVANT TO WHETHER THAT ELEMENT ON THE FACTS OF

17   OUR CASE IS MATERIAL.

18     AND THAT'S JUST ONE EXAMPLE.  WHAT I'M SAYING IS WE

19   HAVEN'T BEEN PROVIDED WITH AN ADEQUATE OPPORTUNITY ON OUR FACTS

20   TO ADDRESS THE CHOICE OF LAW ARGUMENT AS TO THE UCL AND CLRA.

21     NOW WE HAVE READ YOUR HONOR'S DECISION IN DARISSE.  WE

22   KNOW THERE ARE CERTAIN STATES THAT DON'T ALLOW CLASS ACTIONS,

23   AND I CAN ASSURE YOU THAT DISTINCTIONS LIKE THAT WILL BE

24   FACTORED IN TO THE CLASS DEFINITION THAT WE PROPOSE AT CLASS

25   CERTIFICATION.

```
1              THE COURT:  SO FOR EXAMPLE, YOU MIGHT CHOOSE AFTER

2     YOU DO YOUR OWN RESEARCH, TO EXCLUDE CERTAIN STATES.

3              MR. POLK:  YES.

4              THE COURT:  IS THAT WHAT YOU ARE SUGGESTING.

5              MR. POLK:  AND YOU KNOW, A GOOD EXAMPLE IS THE

6     SONG-BEVERLY WARRANTY ACT.  THAT CAN ONLY BE BROUGHT ON BEHALF

7     OF THE PEOPLE IN THE STATE.  THERE'S NO WAY WE INTEND TO BRING

8     THAT ON BEHALF OF THE NATIONWIDE CLASS.  WHAT WE DID IS WE TOOK

9     THE LIBERAL READING OF YOUR HONOR'S ORDER, THE STATUS OF

10    DISCOVERY IS WE HAVE DOCUMENT REQUESTS STILL, WE ARE CHASING

11    THE SAME ONES DOWN, NOTHING MORE.  AND WE SAID LET'S DEFER IT

12    IN LIGHT OF THE CASE LAW.

13         AND JUST ON CHOICE OF LAW, ONE OTHER THING, THERE ARE

14    COURTS THAT HAVE DECIDED CHOICE OF LAW ON THE PLEADINGS.

15              THE COURT:  OH, I KNOW, I'VE GOT A WHOLE RAFT OF

16    CASES HERE, AND FROM THIS DISTRICT.

17              MR. POLK:  RIGHT.

18         AND I THINK IT ALL REALLY COMES DOWN TO JUDGE ORRICK'S

19    DECISION IN FRENZEL.  AND I THINK THAT THE CASES ARE, EVERY ONE

20    OF THEM IS DISTINGUISHABLE, FRENZEL, GRANFIELD, COVER, LARSEN,

21    VAN MOURIK, THEY ARE ALL DISTINGUISHABLE ON THE SAME GROUNDS.

22    AND THE GROUNDS ARE THAT YOU HAD EXCLUSIVELY OUT-OF-STATE

23    PLAINTIFFS WHO PURCHASED OUT OF STATE BRINGING NATIONWIDE CLASS

24    CLAIMS UNDER CALIFORNIA LAW.

25         AND AS JUDGE ORRICK POINTED OUT, THAT WAS MATERIAL BECAUSE
```

1    THEY'RE INDIVIDUAL CLAIMS.  WE ARE GOING TO BE SUBJECT TO

2    DISMISSAL AND CHOICE OF LAW REQUIRING HIM TO ANALYZE IT AT THE

3    CHOICE OF LAW PHASE.  AND THE PIN SITE FOR THAT, I THINK IF YOU

4    LOOK AT IT, IT'S GOING TO TIE IT TOGETHER, IS 76 F.SUPP.3D,

5    999.  AND THE PIN IS 1,008.

6         SO WHAT WE WOULD REQUEST HERE IS WHAT NORMALLY HAPPENS,

7    WHICH IS ALLOWING US TO PROPOSE THE TAILORED CLASS DEFINITION

8    AT OR BEFORE THE TIME WE MOVE.  AND YOU KNOW, THAT'S THE

9    FORCELLATI CASE AND THE GOLD V. LUMBER LIQUIDATORS CASE.

10        THE COURT:  I'M SORRY, WHICH CASE?

11        MR. POLK:  THE GOLD V. LUMBER LIQUIDATORS CASE, AND

12    THE FORCELLATI CASE.

13        IF YOU LOOK AT PARAGRAPH 142 OF OUR COMPLAINT, WE

14    EXPLICITLY CARVE OUT AT THE END OF THAT PARAGRAPH, THE RIGHT

15    TO, WE SAY WE INTEND TO NARROW THIS.

16        THE COURT:  SO LET'S ADDRESS THE ISSUE THAT IS ALWAYS

17    OF CONCERN FOR ME IN CONTROLLING THE COURSE OF THE LITIGATION,

18    WHICH A LOT OF THESE CASES THAT DEAL WITH THE ISSUE AT MOTION

19    TO DISMISS, SAY IT'S IN THE COURT'S INHERENT POWER TO DO SO, IS

20    THE SPECTER OF 50 STATE DISCOVERY.

21        NOW, IT'S CONCERNING TO ME, BUT I DON'T ACTUALLY KNOW WHAT

22    THAT ENTAILS.  BECAUSE THERE CERTAINLY, IN A CHOICE OF LAW

23    ANALYSIS, WILL BE THE NEED TO PUT TOGETHER THESE APPENDIXES.

24        I BELIEVE IN THE FIRST ROUND, THERE WERE APPENDIXES FOR

25    THE STATES AT ISSUE.  AND MY GUESS IS THAT GIVEN THE DEPTH OF

1    YOUR FIRMS, YOU HAVE YOUR APPENDIXES AND YOU PROBABLY KEEP THEM

2    UP-TO-DATE.

3         SO IT'S LESS WORK FOR YOU BECAUSE YOU'VE PUT IT IN, THAN

4    IT WILL BE FOR ME IN ANALYZING IT.  SO I DON'T CONSIDER THAT

5    DISCOVERY, PUTTING TOGETHER THE LAW.  BUT WHAT DISCOVERY ARE

6    YOU GOING TO OPEN UP THAT THE DEFENDANTS, ON A 50 STATE LEVEL,

7    THAT IS REASONABLE HERE, OR SHOULD I NARROW THIS NOW?

8         MR. POLK:  WELL, YOU KNOW, SO LET'S TALK ABOUT

9    DISCOVERY.

10        AND THIS REALLY ISN'T PROPERLY BEFORE THE COURT, BUT WE

11   THINK THAT THE BULK OF THE DISCOVERY IS GOING TO BE COMMON,

12   IT'S GOING TO GO TO ROOT CAUSE WHICH WE REQUESTED IN JUNE OF

13   LAST YEAR, STILL HAVEN'T GOT.  IT'S GOING TO GO TO

14   ADVERTISEMENTS, AND WE LIMITED THAT TO EXAMPLES OF

15   ADVERTISEMENTS, AND IT'S GOING TO GO TO COMPLAINTS.

16        THE COURT:  SO LET'S TALK ABOUT ADVERTISEMENTS THEN

17   WE WILL HAVE TO KNOW WHERE THE ADVERTISEMENTS WERE VIEWABLE.

18        NOW IF THEY'RE ON THE INTERNET, IT'S EASY TO SAY THEY ARE

19   VIEWABLE EVERYWHERE.  BUT ADVERTISEMENTS TAKE MANY FORMS.  SO

20   YOU KNOW, I DON'T KNOW WHO REASONABLY IS EXPOSED TO WHAT.

21        MR. POLK:  RIGHT.  SO THAT'S WHY WE'VE LIMITED

22   ADVERTISEMENTS TO EXAMPLES AND ALLOWED DEFENDANTS TO LIMIT TO

23   STATEMENTS.

24        WE'VE INHERITED THE COMPLAINTS WHICH I THINK ARE ONE OF

25   THE AREAS WHERE YOU CAN REALLY HAVE A TON OF DISCOVERY, WE'VE

1    AGREED TO SAMPLING PROTOCOLS.  SO WE ARE TALKING ABOUT 12

2    DISCOVERY REQUESTS.  AND SO TO THE EXTENT THAT -- YOU KNOW,

3    WHAT'S HAPPENING HERE IS THAT THE DEFENDANTS ARE ASKING FOR A

4    BRIGHT LINE RULE THAT NATIONWIDE CLASSES ARE NOT OKAY, AND THE

5    CASES THAT WE CITE REFUTE THAT PREMISE.  SO WHAT WE WOULD ASK

6    FOR HERE IS --

7                    THE COURT:  SO THAT'S REALLY THE PROBLEM I HAVE.  I'M

8    GOING TO CIRCLE RIGHT BACK TO WHERE I STARTED.

9          I UNDERSTAND THE REQUEST TO CERTIFY A NATIONWIDE CLASS

10   WHERE EVERYONE IN THE COUNTRY FALLS UNDER THE UCL AND CLRA.

11   COMMON LAW, 50 STATES.  CHOICE OF LAW ISSUE ALONE.  THAT'S

12   FINE.  AND IS THAT WHERE THE NATIONWIDE CLASS BEGINS AND ENDS

13   IS ON THOSE TWO STATUTES?  AND ON THE FRAUDULENT CONCEALMENT

14   YOU ARE NOT EVEN ASKING FOR A NATIONWIDE CLASS BECAUSE YOU

15   ACKNOWLEDGE THAT EACH STATE'S LAW WOULD APPLY?

16                    MR. POLK:  WE ARE ASKING FOR A NATIONWIDE CLASS.

17   WHAT WE ARE ASKING TO DO LIKE THE COURT ALLOWED IN BUTLER AND

18   IN THE RUST-OLEUM CASE IS TO BE PERMITTED TO, IF NECESSARY,

19   PROPOSE SUBGROUPS OF STATES THAT HAVE COMMON ELEMENTS THAT WILL

20   BE MANAGEABLE FOR THE COURT AT CLASS CERTIFICATION.  BUT AGAIN,

21   WE NEED TO COMPLETE DISCOVERY TO DO THAT.

22          IF YOUR HONOR WANTS US TO GO BACK AND PLEAD A

23   CALIFORNIA-ONLY CLASS, WE WILL DO THAT, WE JUST DON'T THINK

24   IT'S THE RIGHT TIME YET.

25                    AND CAN I ADDRESS STANDING, YOUR HONOR?

1              THE COURT:  SURE, YES.

2              MR. POLK:  BECAUSE I THINK THAT WE ARE KIND OF

3       BLEEDING INTO THAT AS WE START TALKING ABOUT THE COMMON LAW

4       CLAIMS.

5              SO, YOU KNOW, I THINK THE BEST CASE TO LOOK AT, THE ONE

6       THAT REALLY BROUGHT IT HOME FOR ME, IS THE PECANHA V. HAIN

7       CASE.  AND I DON'T THINK WHEN YOU HAVE COMMON LAW CLAIMS

8       INSTEAD OF STATUTORY CLAIMS, WHICH WE STRIPPED OUT, THAT

9       ARTICLE THREE STANDING BASED ON STATE LAW DIFFERENCES, IS A

10      THING ANYMORE.  I DON'T THINK THAT THAT'S A REAL ARGUMENT THAT

11      YOU CAN MAKE.

12             AND SO CARRIER IQ, THAT'S THE MAIN CASE THAT THE

13      DEFENDANTS RELY ON.  THAT'S JUDGE CHEN, OKAY.  AND THEY HAVE 35

14      STATE LAW STATUTES AT ISSUE IN THAT CASE.  AND IN ANOTHER ONE

15      OF DEFENDANT'S CASES, THE CORCORAN CASE, THE COURT SAID, AND I

16      WANT TO READ THIS QUOTE TO YOU, "IN CASES INVOLVING STATUTORY

17      RIGHTS, THE PARTICULAR STATUTES AND THE RIGHTS IT CONVEYS GUIDE

18      THE STANDING DETERMINATION."  THIS MEANS THAT, AT A MINIMUM, A

19      PLAINTIFF MUST BE AMONG THE INJURED IN THE SENSE THAT SHE

20      ALLEGES THE DEFENDANTS VIOLATED HER STATUTORY RIGHTS.

21             AND THAT MAKES A DEGREE OF SENSE.  IF TENNESSEE SAYS WE

22      HAVE A STATUTE THAT'S GOING TO PROTECT OUR PEOPLE, SOMEBODY

23      FROM CALIFORNIA CAN'T MAKE A CLAIM UNDER TENNESSEE LAW.  SO

24      THAT'S A STANDING ISSUE.

25             SO COMING BACK TO CARRIER IQ, WHAT JUDGE CHEN HELD IN THAT

1   CASE WAS WHAT YOUR HONOR SEEMED TO BE INTIMATING, WHICH WAS,

2   WHY DO I KICK THIS CAN DOWN THE ROAD WHEN IT'S GOING TO POP

3   BACK UP AT CLASS CERTIFICATION NO MATTER WHAT, RIGHT?

4        SO HE DECIDED IN CARRIER IQ TO DEAL WITH STANDING NOW AND

5   TO BOUNCE THE CLAIMS OF THOSE PLAINTIFFS THAT DIDN'T LIVE IN

6   CERTAIN STATES WHERE THERE WERE CLAIMS INVOKED.

7        SO PECANHA IS A DECISION FROM JANUARY 24, 2018, IT'S

8   JUDGE CHEN AGAIN, OKAY.  AND HE SAYS, I WAS WRONG IN

9   CARRIER IQ.  AND THIS IS AT PAGE 8, THAT'S THE PIN CITE.  2018

10  WESTLAW 534299 AT PAGE 8.  OKAY.

11       AND HE SAYS, THE REASON I WAS WRONG WAS BECAUSE THERE'S

12  BEEN AN INTERVENING NINTH CIRCUIT DECISION BETWEEN CARRIER IQ

13  AND PECANHA V. HAIN.  AND THAT'S THE MELENDRES V. ARPAIO

14  DECISION, AND THAT'S 784 F.3D, 1254.  IT'S IN 2015.  IT'S

15  CONTROLLING.

16       AND THE COURT THERE HELD THAT THE ISSUE IS BETTER

17  ADDRESSED AS PART OF CLASS CERTIFICATION, REASONING THAT THE

18  APPROACH IS THE ONE ADOPTED BY MOST COURTS.

19       NOW, SINCE THEN, AND AFTER WE FINISH OUR BRIEFING THERE'S

20  BEEN A CRITICAL SECOND CIRCUIT DECISION THAT I WOULD ENCOURAGE

21  THE COURT TO READ.  AND THIS IS CALLED LANGAN V.

22  JOHNSON&JOHNSON, 897 F.3D 88, 92 TO 96.  THAT WAS DECIDED

23  JULY 24, 2018.  AND THIS IS THE MOST FULSOME TREATMENT OF THIS

24  STANDING FOR STATE LAW, THE STANDING OF ONE STATE'S RESIDENCE

25  TO BRING A CLAIM UNDER ANOTHER STATE'S LAWS THAT I'VE SEEN.

1    AND IT SURVEYS THE LAW.  IT'S A FOUR-PAGE DECISION.

2        AND WHAT THE COURT THERE BASICALLY SAYS IS LOOK, RULE 23

3    IS AN EXCEPTION TO STANDING, INHERENTLY.  AND THIS IS AN ISSUE

4    OF PREDOMINANCE, NOT AN ISSUE OF STANDING.  AND THE QUOTE I

5    WOULD LIKE TO READ FOR YOU, AND THEN I WILL SHUT UP ABOUT THIS

6    IS, "AS LONG AS THE NAMED PLAINTIFFS HAVE STANDING TO SUE THE

7    NAMED DEFENDANTS, ANY CONCERN ABOUT WHETHER IT IS PROPER FOR A

8    CLASS TO INCLUDE OUT-OF-STATE NONPARTY CLASS MEMBERS WITH

9    CLAIMS SUBJECT TO DIFFERENT STATE LAWS IS A QUESTION OF

10    PREDOMINANCE UNDER RULE 23(B)(3), NOT A QUESTION OF

11    ADJUDICATORY COMPETENCE UNDER ARTICLE III."

12        AND THE COURT GOES ON, "THIS APPROACH OF CONSIDERING

13    VARIATIONS IN STATE LAWS IS A QUESTION OF PREDOMINANCE UNDER

14    RULE 23(B)(3) MAKES SENSE.  FOR ONE, IT ACKNOWLEDGES THE

15    OBVIOUS TRUTH THAT CLASS ACTIONS NECESSARILY INVOLVE PLAINTIFFS

16    LITIGATING A JURISDICTION THAT THEY THEMSELVES WOULD NOT HAVE

17    STANDING TO LITIGATE."

18    SO THE PROBLEM WITH WHAT THE DEFENDANTS HAVE ASKED THE

19    COURT TO DO, WHICH IS JUST KICK EVERYBODY'S CLAIM WITHOUT

20    ANALYZING WHETHER THERE'S COMMON GROUND --

21    THE COURT:  SO WHEN YOU, AND THEN YOU WOULD SUGGEST

22    THAT THE PREDOMINANCE ANALYSIS WOULD COMPARE THE VARIOUS STATE

23    LAWS TO LOOK FOR SIMILARITIES AND DIFFERENCES AND PUT THEM IN

24    VARIOUS BUCKETS.

25    MR. POLK:  THAT'S EXACTLY IT.  SO IT WOULD BE

1      SUBGROUPS, WHICH IS SOMETHING THAT THE MANUAL FOR COMPLEX

2      LITIGATION CONTEMPLATES IN WHICH JUDGE POSNER IN BUTLER.  WE

3      HAVEN'T PROPOSED THOSE SUBGROUPS.

4          WHAT I'M ASKING HERE IS WE HAVE A WASHINGTON PLAINTIFF,

5      FOR EXAMPLE, AND YOU KNOW WE -- WHAT THE DEFENDANTS ARE ASKING

6      TO DO IS TO KICK HIS CLAIM AS OVERBROAD UNDER THE UCL WITHOUT

7      PROVIDING ANY ANALYSIS OF WHETHER WASHINGTON IS DIFFERENT FROM

8      CALIFORNIA.  I DON'T THINK IT IS ON THE FACTS OF THIS CASE, BUT

9      I DON'T KNOW BECAUSE I DON'T HAVE AN APPENDIX.

10         SO WHAT I WOULD ASK IS, YOU KNOW, IF YOUR HONOR WANTS US

11     TO MOVE FOR CLASS CERT AHEAD OF MOVING FOR CLASS CERT, WE CAN

12     DO THAT.  WHAT I DID WAS I READ YOUR ORDER AND I FOCUSED ON THE

13     SUBJECT CLAIMS AND FIXING THE DEFICIENCIES, AND THE RESULT IS 1

14     OUT OF 13 IMPLIED WARRANTY CLAIMS UNDER COMMON LAW IS NOW

15     CHALLENGED.  ONE, ON A FACTUAL BASIS.  TWO, OUT OF THE SIX

16     EXPRESS WARRANTY CLAIMS THAT WE BRING ARE CHALLENGED.  SO THE

17     VERY ARGUMENTS THAT THEY ARE MAKING REFUTE THE IDEA THAT WHAT

18     WE ARE DOING IS SOMETHING NOVEL OR CRAZY.

19         YOU KNOW, AND GOOGLE'S ARGUMENTS ARE MORE ACROSS THE BOARD

20     FRAUD ARGUMENTS THAT MY CO-COUNSEL IS GOING TO ADDRESS FOR YOU.

21         SO, YOU KNOW, THE OTHER THING I WOULD POINT OUT ON

22     STANDING, YOUR HONOR, REALLY QUICKLY, IS THAT THE CASES THAT

23     DEFENDANTS CITE WHERE STANDING HAS BEEN DECIDED ON THE

24     PLEADINGS, JUDGE CORLEY'S RECENT DECISION IN HINDSMAN, FOR

25     EXAMPLE, THOSE ARE ALSO DISTINGUISHABLE IN A SIMILAR WAY TO THE

1    FRENZEL CASE, EXCEPT THE OPPOSITE.

2              THE COURT:  SHE HAD NO CALIFORNIA --

3              MR. POLK:  NO, NO, IT'S THE OPPOSITE.

4              THE COURT:  SHE HAD ONLY CALIFORNIA.

5              MR. POLK:  CALIFORNIA, RIGHT.

6         SO IT'S SOMETHING THAT'S FACIAL THAT'S OBVIOUS THAT COULD

7    REQUIRE KICKING THE ENTIRE CASE, IT MAKES IT A 12(B)(6) ISSUE.

8         YOU DON'T HAVE THAT HERE.  WE HAVE 13 PLAINTIFFS FROM NINE

9    STATES.  SO IF THE COURT WANTS US TO NARROW, TO REPLEAD

10   SUBCLASSES OR TO SUBGROUP NOW, WE WILL DO THAT, BUT WHAT WE

11   HAVE BEEN DOING IS PURSUING THE DISCOVERY WE NEED FOR CLASS

12   CERTIFICATION AND GETTING OUR MOTION READY.  AND WE INTEND TO

13   SUBMIT THAT IN FEBRUARY.

14             THE COURT:  SO I DON'T SEE THE BENEFIT OF YOU

15   RE-PLEADING TO HAVE YOUR NATIONWIDE CLASS AND THE SUBCLASSES.

16   I THINK IT'S OBVIOUS WHAT THE POTENTIAL SUBCLASSES ARE, AND THE

17   SUBCLASSES WOULD BE LIMITED TO THE PLAINTIFFS THAT YOU HAVE AND

18   THEIR STATES.

19        I MEAN, IF YOU ARE DOING SUBCLASSES, THEN I THINK IT'S

20   UNDERSTOOD YOU NEED A PLAINTIFF WHO LIVES IN THAT STATE.  I

21   THINK --

22             MR. POLK:  BUT THERE'S A DIFFERENCE BETWEEN

23   SUBCLASSES AND SUBGROUPING.

24             THE COURT:  YES.  IF YOU ARE TRYING TO GROUP

25   FRAUDULENT CONCEALMENT, IF YOU SAY THESE 18 STATES' LAWS ARE

1      IDENTICAL ON ALL MATERIAL ELEMENTS, THAT WOULD BE A GROUPING,

2      YES.  AND I SEE WHAT YOU ARE SAYING THERE.  AND WE WOULD BE

3      DEALING WITH A PREDOMINANCE ISSUE.  IF IT WERE TO DEVOLVE BACK

4      TO WHERE YOU STARTED BEING A SEPARATE CLASS FOR EACH STATE,

5      JUST BASED ON STATE BOUNDARY, A CALIFORNIA CLASS, YOU KNOW, A

6      NEW YORK CLASS, A NORTH CAROLINA CLASS, THAT MIGHT BE

7      DIFFERENT.

8           MR. POLK:  RIGHT.  AND WE ALSO HAD HOWEVER MANY

9      CONSUMER PROTECTION, STATE CONSUMER PROTECTION STATUTES AND THE

10     STANDING ISSUE WAS DIFFERENT THEN BECAUSE OF THAT.

11          SO, YOU KNOW, WE DIDN'T FRONT LOAD CLASS CERTIFICATION, WE

12     DON'T THINK IT'S WARRANTED TO FRONT LOAD CLASS CERTIFICATION.

13          THE COURT:  AND YOU REASONABLY READ MY ORDER SAYING

14     THAT I WAS GOING TO DEFER THAT.

15          SO, YOU KNOW, I'M SURE YOU READ THE MOTION AND YOU

16     THOUGHT, WAIT A MINUTE, I THOUGHT WE DEALT WITH THIS OR I

17     THOUGHT THE JUDGE DEALT WITH THIS.

18          MR. POLK:  WE DID, BUT I WAS -- I WAS PREPARED TO

19     ADDRESS IT AGAIN.  AND YOU ARE NOT HEARING FROM ME, A STATEMENT

20     THAT WE ARE GOING TO MOVE FOR CERTIFICATION OF 50 STATE

21     SUBCLASSES OR SOMETHING LIKE THAT.  I THINK THAT THE APPROACH

22     THAT YOU'VE SEEN IN OUR PLEADING, WHICH IS A NARROWING

23     APPROACH, I MEAN, REALLY WHAT WE TRIED TO DO IS PRESENT A MORE

24     REALISTIC PICTURE OF THE SUBSTANTIVE CLAIMS THAT YOUR HONOR IS

25     GOING TO BE PRESENTED WITH AT CLASS CERTIFICATION.

```
 1              THE COURT:  RIGHT.

 2              MR. POLK:  IN AN ATTEMPT TO SETTLE THE PLEADINGS, AND

 3      WHAT WE GOT FOLLOWING THE PERSONAL JURISDICTION DEBACLE IS

 4      ANOTHER ATTEMPT AT A SILVER BULLET.

 5          BUT REALLY, YOU KNOW, WHERE IT ENDS UP IS LOOK, IF YOU

 6      WANT US TO PLEAD SUBGROUPS NOW, WE WILL DO IT NOW, WE JUST

 7      THINK IT'S PREMATURE.

 8              THE COURT:  SO LET ME JUST ASK YOU, LOOKING AT THE

 9      CLAIMS THEMSELVES, YOU ARE ASSERTING THAT THE COMPLAINT

10      ADEQUATELY ALLEGES THE NATIONWIDE CLASS FOR EACH OF THE CLAIMS.

11          SO YOUR FIRST CLAIM AGAINST HUAWEI IS FOR BREACH OF

12      EXPRESS WARRANTY.  SO EACH STATE HAS ITS OWN LAW ON EXPRESS

13      WARRANTY.

14              MR. POLK:  IT DOES.

15              THE COURT:  SO THAT'S NOT -- THAT WOULD BE THE SAME

16      AS THE FRAUDULENT CONCEALMENT ARGUMENT IN TERMS OF ANALYZING

17      WHICH STATE LAW.

18              MR. POLK:  IT WOULD.  AND YOUR HONOR HAS ALREADY SEEN

19      THAT WE'VE CULLED THAT DOWN BASED ON WHAT WE'VE DISCOVERED TO

20      DATE AND THE BENEFIT OF YOUR HONOR'S RULING.  AND THAT'S A

21      PROCESS THAT'S GOING TO CONTINUE, WE JUST AREN'T THERE.

22              THE COURT:  OKAY.  AND THE SECOND CLAIM WOULD BE THE

23      SAME WAY, THAT'S A BREACH OF IMPLIED WARRANTY OF

24      MERCHANTABILITY AGAINST HUAWEI.  AND SO YOU ALLEGE AGAIN EACH

25      INDIVIDUAL PLAINTIFF'S CLAIMS UNDER THE LAWS OF HIS OR HER
```

1    STATE, BUT FOR A NATIONWIDE CLASS, I GUESS YOU WOULD ALSO BE

2    MAYBE GROUPING THEM FOR SIMILARITIES, BUT NOT ASSERTING THEY

3    ALL FALL UNDER CALIFORNIA LAW.

4            MR. POLK:  CORRECT.

5        AND YOU KNOW, AGAIN, 1 OF 13 PLAINTIFFS IS CHALLENGED ON

6    THIS.  AND IT'S FOR A FACTUAL REASON, DESPITE A DECLARATION

7    THAT WE PUT IN, AND YOU KNOW, IN PROVED ALLEGATIONS.

8        SO WE THINK THIS CLAIM IS PARTICULARLY AMENABLE TO

9    SUBGROUPING IN THIS PARTICULAR CASE.

10            THE COURT:  RIGHT.  BECAUSE REALLY, MOST OF YOUR

11    CLAIMS ARE ASSERTED UNDER STATE LAW.

12            MR. POLK:  THAT'S RIGHT.

13            THE COURT:  THAT YOU WOULD -- I'M SORRY, I STOPPED IN

14    THE MIDDLE OF MY SENTENCE.  YES, THEY ARE ALL UNDER STATE LAW,

15    MAGNUSON-MOSS RELATES TO STATE LAW.

16        SO YOU'VE GOT TWO CLAIMS UNDER CLRA AND UCL WHERE YOU WILL

17    BE SEEKING TO INVOLVE A NATIONWIDE CLASS UNDER CALIFORNIA LAW

18    AND ALL OF THE OTHER CLAIMS, AND THERE ARE SIX OR SEVEN CLAIMS.

19            MR. POLK:  WELL, SONG-BEVERLY IS GOING TO BE

20    CALIFORNIA.

21            THE COURT:  SO YOU'VE PLED SEVEN CLAIMS, SONG-BEVERLY

22    IS CALIFORNIA, UCL, AND CLRA, TWO MORE THAT WOULD BE UNDER

23    CALIFORNIA LAW FOR THE NATION.

24        SO FOUR CLAIMS WOULD BE ANALYZED UNDER EACH STATE'S LAW

25    WITH GROUPING, THAT'S WHAT YOU ARE SUGGESTING, THAT'S WHERE YOU

1      THINK YOU ARE HEADED IN YOUR CLASS CERT.

2            MR. POLK:  THAT IS WHERE WE ARE HEADED, BUT I DON'T

3      KNOW THAT EVERY CLAIM IS GOING TO BE EVERY STATE'S LAW.

4            THE COURT:  RIGHT.  AND THAT'S FAIR.

5         SO UNDER EXPRESS WARRANTY, YOU MIGHT FIND THAT SOME

6      STATE'S LAW JUST DOESN'T EVEN GIVE YOU A PATH TO SUCCESS.  SO

7      YOU JUST WON'T EVEN ASSERT THAT.

8            MR. POLK:  SO IT WOULD BE ON BEHALF OF SUBGROUP 1 OR

9      SUBGROUP 2.

10           THE COURT:  IT COULD BE 38 STATES ALLEGED ON BEHALF

11     OF THE SIMILARITIES BASED ON THE MATERIAL ELEMENTS OF THEIR

12     STATE LAWS.

13           MR. POLK:  THAT'S RIGHT.

14           THE COURT:  SO THEN THERE'S ACTUALLY NO CHOICE OF LAW

15     ANALYSIS, IS WHAT YOU ARE SUGGESTING.

16           MR. POLK:  THAT'S RIGHT.

17        AND THESE ISSUES HAVE BEEN CONFLATED IN THE BRIEFING.  WE

18     COULD PULL THEM APART BETTER, ADMITTEDLY, IN OUR BRIEFING.  BUT

19     THERE'S ARGUMENTS IN THE DEFENDANT'S BRIEFING THAT THE

20     NATIONWIDE CLASS SHOULD BE DISMISSED BECAUSE IT'S OVERBROAD.

21        SO WHAT I'M SUGGESTING IS WHEN YOU PULL INTO THESE CASES,

22     THERE ARE TWO ANALYTICALLY DISTINCT CONCEPTS THAT ARE BROUGHT

23     TO BEAR.  CHOICE OF LAW, AND THAT'S WHAT YOU LOOKED AT WHEN YOU

24     ARE LOOKING AT THE CLRA AND THE UCL CLAIM APPLYING TO THE

25     NATIONWIDE CLASS, PREMATURE FOR THE REASONS I ALREADY

1   MENTIONED.  AND THEN STANDING, WHICH I THINK IS ALSO PREMATURE,

2   IT'S AN ISSUE OF PRO DOMINANCE.

3        AND THAT'S WHAT YOU LOOK AT WHEN YOU SAY WELL, IS IT FAIR

4   FOR MR. MAKCHAROENWOODHI, FROM CALIFORNIA, TO BRING CLAIMS FROM

5   MR. ABSENT CLASS MEMBER FROM SOUTH DAKOTA.  AND WE THINK THAT'S

6   PREMATURE AS WELL.

7             THE COURT:  AND YOU -- OKAY.

8             MR. POLK:  BUT LIKE I SAY, WE ARE OBVIOUSLY GOING TO

9   FOLLOW YOUR HONOR'S ORDER.  YOU ARE THE BOSS.  IF YOU WANT US

10  TO GO BACK --

11            THE COURT:  THANK YOU.

12            MR. POLK:  IF YOU WANT US TO GO REPLEAD SOMETHING, WE

13  ARE HAPPY TO DO THAT.  WE WOULD LIKE THE BENEFIT OF DISCOVERY,

14  AND WE WOULD LIKE THE OPPORTUNITY TO RESPOND TO AN ADEQUATELY

15  PRESENTED CHOICE OF LAW ANALYSIS THAT FOLLOWS MAZZA.  BUT IF

16  THAT'S NOT GOING TO HAPPEN, THAT'S NOT GOING TO HAPPEN, AND WE

17  CAN GO REPLEAD.

18            THE COURT:  ALL RIGHT.

19        THANK YOU.  THAT'S HELPFUL.  AND I HAVE TO -- YOU KNOW, I

20  WORRY THAT EVEN THOUGH I HAVE TO PUT TRIAL OUT SO MANY YEARS,

21  YOU SPEND TWO YEARS AT THE PLEADING STAGE, AND I DON'T THINK

22  THAT'S PRODUCTIVE.  AND I THINK IT PREVENTS CASES FROM BEING

23  RESOLVED.

24        BUT THE OTHER MAJOR ISSUE THAT I WAS CONCERNED ABOUT IS

25  WHETHER THE ALLEGATIONS ON PRE-SUIT KNOWLEDGE ARE SUFFICIENT TO

1    SUPPORT YOUR CLRA, UCL AND COMMON LAW FRAUD CLAIMS.

2         SO THAT'S THE OTHER BIG ISSUE HERE.  I THINK THE OTHER

3    ISSUES ARE IMPORTANT, BUT THEY ARE NOT AS -- I DON'T THINK THEY

4    ARE AS FAR REACHING IN THE VIABILITY OF THE PLEADING.

5         AND SO I KNOW THESE WERE DEFENDANT'S MOTIONS, I'M HARPING

6    ON THE PLAINTIFF BECAUSE THEY HAVE TO DEFEND THEIR PLEADING.

7    BUT LET'S MOVE OVER TO THE PRE-SUIT KNOWLEDGE CLAIMS.

8         I WILL JUST SAY THAT I FIND YOUR ALLEGATIONS ON THE

9    PRE-SUIT TESTING TO BE SPECULATIVE.  TO SAY THAT THIS -- YOU

10   IDENTIFY THE KINDS OF TESTING THAT WAS DONE, THAT THERE WAS

11   THERMAL TESTING, THAT THERE WAS -- AND ALL KINDS OF OTHER

12   TESTING.  AND THEN YOU SAY -- YOU MAKE A BIG LEAP THAT THIS

13   SHOULD HAVE, MIGHT HAVE, COULD HAVE IDENTIFIED THE DEFECT.

14        WHAT I WOULD HAVE EXPECTED WOULD BE SOME AUTHORITATIVE

15   ALLEGATION THAT THIS DEFECT IS FOUND UPON THERMAL TESTING.  AND

16   I THINK RULE 11 REQUIRES THAT.  SO I'M REALLY CONCERNED, YES,

17   YOU KNOW, LOOKING AT IT, COULD HAVE EXPOSED THE DEFECT.

18        AND I THINK IT'S FAIR TO INFER FROM YOUR PLEADING THAT AT

19   THIS STAGE, YOU HAVE NO KNOWLEDGE THAT THE TESTING ACTUALLY

20   EXPOSED THE DEFECT.  YOU ARE NOT ALLEGING THAT.  YOU ARE SAYING

21   THAT THERE WAS KNOWLEDGE THROUGH THE COMPLAINT BLOGS AND BOARDS

22   AND POSTINGS.  THAT'S SEPARATE.  WE WILL GET TO THAT.  THAT'S

23   REALLY A SEPARATE ISSUE.  SO I'M VERY CONCERNED THAT IT'S

24   PURELY SPECULATIVE ON THE TESTING.

25        ON THE COMPLAINTS THAT WERE RECEIVED, OF COURSE WE ARE

1       ANALYZING IT IN TERMS OF PREPURCHASE.  AND THAT'S KIND OF A

2       MOVING TARGET FOR THE VARIOUS PLAINTIFFS, BUT YOU CERTAINLY

3       HAVE -- YOU'VE IDENTIFIED A GROUP OF, I THINK 36 COMPLAINTS IN

4       THE FIRST TWO-MONTH PERIOD.  AND THE DEFENDANTS HAVE GONE

5       THROUGH THOSE VERY CAREFULLY AND IDENTIFIED WHY SOME OF THOSE

6       COMPLAINTS MAY OR MAY NOT HAVE PUT THEM ON NOTICE, AND I THINK

7       AT THE PLEADING STAGE THAT THAT -- I'M NOT GOING TO -- I THINK

8       THAT'S INAPPROPRIATE FOR ME TO ANALYZE THE CONTENT IN THAT WAY.

9            BUT I'M JUST -- I'M NEEDING TO BE SATISFIED THAT YOU'VE

10      MET YOUR PLEADING STANDARD, WHICH IT'S PRETTY LOW, BUT I'M

11      WORRIED ABOUT IT.

12           MR. JOHNS:  SURE.

13           SO THE PRE-RELEASE TESTING ALLEGATIONS, WHICH I WILL GET

14      INTO IN A MOMENT, IS JUST ONE OF TWO WAYS I THINK YOU ARE

15      ALLUDING TO THAT WE ARE TRYING TO SHOW THE TIME OF SALE

16      KNOWLEDGE.  THE OTHER ONE, THE BIG ONE AND THE SIGNIFICANT

17      DIFFERENCE BETWEEN THE LAST COMPLAINT AND THE CURRENT

18      COMPLAINT, ARE THESE ONLINE COMPLAINTS THAT WE HAVE ADDED.

19           SO WHEN WE WERE HERE BACK IN JANUARY, WE HAD A NUMBER OF

20      COMPLAINTS THAT WE TALKED ABOUT THAT WERE IN THE COMPLAINT, BUT

21      THEY WERE UNDATED, THEY WEREN'T IN ANY KIND OF CHRONOLOGICAL

22      ORDER.  I WENT BACK AND LOOKED AT IT, AND I THINK THE EARLIEST

23      COMPLAINT THAT HAD A DATE ON IT WAS FROM JUNE OF 2016.

24           AND IF YOUR HONOR WILL RECALL, WHAT WE SPENT MOST OF THAT

25      HEARING TALKING ABOUT WAS THESE ADMISSIONS BY GOOGLE THAT CAME

1    OUT IN SEPTEMBER OF 2016 WHERE THEY SAID THIS IS AN ISSUE, WE

2    ARE CONTINUING TO INVESTIGATE THIS, ET CETERA.

3         OF COURSE WE STILL HAVE THAT IN THE COMPLAINT, BUT WHAT'S

4    DIFFERENT IS WE HAVE, AS YOU NOTED, WE HAVE 36 COMPLAINTS, I

5    THINK 27 OF THEM WERE WITHIN THE FIRST TWO MONTHS FROM WHEN THE

6    PHONE WAS ISSUED.

7         YOU CORRECTLY NOTE THAT GOOGLE DOES CHALLENGE SOME OF

8    THOSE ON THE FACTS, BUT I WILL NOTE THAT THEY ALSO DON'T

9    CHALLENGE SOME OF THOSE.  THEY DON'T CHALLENGE 12 OF THOSE.

10   THEY DON'T CHALLENGE THE FIRST THREE COMPLAINTS THAT WE CITE IN

11   CHRONOLOGICAL ORDER, BEGINNING IN OCTOBER 2015.  THEY DON'T

12   CHALLENGE THE FIRST TWO OF THOSE WHICH SAY THAT GOOGLE WAS

13   CONTACTED BY THE PERSON.

14        AND AS FAR AS THE TIMING GOES, WITH RESPECT TO OUR

15   CLIENTS, MOST OF OUR CLIENTS BOUGHT THEIR PHONES IN 2016.  SO

16   WE'VE GOT ALL THIS COLLECTION OF COMPLAINTS WHICH IS A

17   REPRESENTATIVE SAMPLE.  WE COULD HAVE FILLED THIS COMPLAINT UP

18   WITH A NUMBER OF COMPLAINTS, BUT WE DIDN'T WANT TO DO THAT,

19   CONSISTENT WITH HOW WE PLED THE CLASS ALLEGATIONS.

20            THE COURT:  AND THEN YOU GET CRITICIZED FOR THERE

21    BEING SO FEW.

22            MR. JOHNS:  SO I THINK CONSISTENT WITH FALK V.

23    GENERAL MOTORS, JUDGE KOH'S OPINION IN DAVID, WE SATISFIED

24    THERE'S AN INFERENCE OF KNOWLEDGE.

25            AND IF I CAN JUST GO BACK TO WHERE I WAS ORIGINALLY GOING

```
 1        TO START ON THIS.

 2                THE COURT:  OKAY.  YES, I ABSOLUTELY WANT TO HEAR ON

 3        THAT.

 4                MR. JOHNS:  KOWALSKY V. HP IS IMPORTANT, IT'S ANOTHER

 5        JUDGE KOH OPINION.  AND THE STANDARD HERE IS WHETHER THE

 6        DEFENDANT SHOULD KNEW OR SHOULD HAVE KNOWN.  SO IT'S NOT JUST A

 7        SUBJECTIVE TEST.

 8            AND I BRING THAT UP BECAUSE THAT TIES INTO THE PRE-SUIT

 9        TESTING ALLEGATIONS.  THOSE WERE THINGS WE WERE ALLEGING BASED

10        ON ALL THE INFORMATION WE WERE ABLE TO GATHER IN THE PUBLIC

11        DOMAIN FROM ARTICLES AND CONSULTATIONS WITH OUR EXPERTS.

12            AND THE POINT OF TRYING TO TIE THOSE TWO THINGS TOGETHER

13        IS THAT EITHER THEY DID THOSE TESTS AND THEY DISCOVERED THESE

14        ISSUES, OR THEY DIDN'T DO THOSE TESTS, AND THAT WOULD SUPPORT

15        THE SHOULD HAVE KNOWN.

16                THE COURT:  WELL, NO.  THERE'S A THIRD POSSIBILITY

17        THAT I MENTIONED BEFORE.  THEY COULD DO THE TEST AND THE DEFECT

18        DIDN'T MANIFEST.

19            BECAUSE YOU HAVE NO ALLEGATION THAT SAYS THERMAL TESTING

20        WILL REVEAL THIS DEFECT, OR ANY OF THE OTHER, AND I'M SORRY I

21        DON'T HAVE THE LAUNDRY LIST OF TESTS THAT YOU ALLEGE, YOU

22        ALLEGE A NUMBER OF TESTS.

23            AND SO YOU ALLEGE DROPPING AND BENDING AND ALL OF THOSE

24        THINGS, AND NONE OF THEM IS TIED TO A FACTUAL STATEMENT THAT

25        PROPER THERMAL TESTING OR INDUSTRY STANDARD THERMAL TESTING
```

1    WILL REVEAL THIS.

2         BECAUSE YOU COULD -- YOU'VE GOT THE PRODUCT NOW, YOU'VE

3    GOT THE ONES THAT HAD THE DEFECT.  AND SO YOU CAN, I WOULD

4    THINK, AND YOU ARE GOING TO HAVE TO REPLICATE THE PROBLEM TO

5    SHOW THE "SHOULD HAVE KNOWN," THAT'S WHERE I FOUND YOUR

6    PLEADING TO BE SPECULATIVE BECAUSE YOU ONLY SUGGEST THAT THIS

7    KIND OF TESTING COULD HAVE, MIGHT HAVE REVEALED IT.

8         SO WHAT CAN YOU DO ON THAT?

9         MR. JOHNS:  WELL, I THINK THE DISCONNECT IS WE CAN

10   CERTAINLY, AND WE ARE WORKING WITH EXPERTS ON TRYING TO OPEN UP

11   THE PHONES, LOOK AT THEM, RECREATE THE PROBLEM.

12        WHAT WE ARE TALKING ABOUT FOR PLEADING PURPOSES IS

13   SOMETHING THAT'S WITHIN THE DEFENDANT'S CONTROL AND KNOWLEDGE.

14        THE COURT:  TRUE.

15        MR. JOHNS:  AND WE HAVE THESE DISCOVERY REQUESTS THAT

16   HAVE BEEN OUTSTANDING SINCE LAST SUMMER, AS MR. POLK MENTIONED.

17   I THINK GOOGLE IS SUPPOSED TO REPORT TO THOSE IN FULL, OR AT

18   LEAST IN SIGNIFICANT PART AT THE END OF NOVEMBER.

19        SO SITTING HERE TODAY, IT WOULD BE IMPOSSIBLE FOR US TO

20   ALLEGE WITH ANY DETAIL ABOUT WHO SPECIFICALLY DID WHAT.  WE DID

21   THE BEST THAT WE COULD WITHIN THE CONFINES OF RULE 11 TO ALLEGE

22   WHAT WAS OUT THERE IN CONSULTATION WITH OUR EXPERT, LIKE I

23   SAID.

24        BUT AGAIN, THE PRERELEASE TESTING ALLEGATION IS NOT THE

25   ONLY WAY TO SHOW KNOWLEDGE.

1    THE COURT:  NO, OF COURSE IT'S NOT.

2    AND I HAVE TO LOOK AT THE TOTALITY OF THE ALLEGATIONS, NOT

3    SILO EACH OF THEM.  AND I'M DOING THAT, TRYING TO DO THAT AS

4    WELL.  BUT I JUST NEED TO TEST THIS ENOUGH TO SEE IF WE ARE

5    GOING TO MOVE FORWARD.

6    BECAUSE AS I SAY, THE CLASS ALLEGATIONS AND THE PRE-SUIT

7    KNOWLEDGE ARE, TO ME, THE TWO BIG ISSUES RAISED IN THESE

8    MOTIONS.  THE REST OF THEM ARE, THEY WON'T MAKE THE CASE GO

9    AWAY.  I GUESS THAT'S THE ONLY WAY I CAN SAY IT.  IT MAY NARROW

10   IT FURTHER, AND I'M GLAD TO HEAR ARGUMENT ON ANY OF THOSE

11   ISSUES, THESE WERE MY TWO ISSUES FOR TODAY.

12   MR. JOHNS:  WELL, I WOULD JUST -- THE LAST WORD

13   UNLESS YOU HAVE ADDITIONAL QUESTIONS FOR ME ABOUT IT, IS UNDER

14   BOTH, CONSISTENT WITH TWOMBLY AND JUDGE CHEN'S OPINION IN SLOAN

15   V. GENERAL MOTORS, WE ONLY NEED TO SHOW A PLAUSIBLE INFERENCE

16   OF THIS.

17   AND AGAIN, UNDER RULE 9(B), IF YOU ARE TALKING ABOUT

18   KNOWLEDGE, THAT'S SOMETHING THAT WE ARE PERMITTED TO ALLEGE

19   GENERALLY.

20   THE COURT:  ABSOLUTELY.  I UNDERSTAND THAT.

21   OKAY.  ALL RIGHT.  LET'S SHIFT GEARS, MAYBE WHERE WE WOULD

22   HAVE STARTED.  AND I HAVE A HARD STOP AT 11:00 BECAUSE I HAVE

23   ANOTHER HEARING.  BUT I HAVE SPENT A LOT OF TIME WITH THE

24   PLAINTIFFS.

25   SO MS. BARNHART, I DON'T KNOW WHETHER YOU ARE GOING TO

1      START OR MR. LERNER.  I AM -- IT'S GOING TO BE HARD TO GET ME

2      OFF MY PRIOR ORDER ON THE CLASS CERT.  AND IT'S WHY I EXPLORED

3      THAT CAREFULLY WITH MR. POLK, BUT I CERTAINLY WANT TO GIVE YOU

4      THE OPPORTUNITY TO GO BACK OVER THAT.

5          I UNDERSTAND THE PLEADING BETTER, AND MAYBE IT'S BEEN

6      ELUCIDATED FOR YOU AS WELL.  AND THE PRE-SUIT KNOWLEDGE -- OR

7      THE PRESALE KNOWLEDGE, AND ANY OF THE OTHER ISSUES THAT YOU

8      RAISE.

9          SO MS. BARNHART, DID YOU WANT TO START?

10         MS. BARNHART:  YES.  I WILL START WITH THE CLASS

11     ALLEGATIONS POINT.

12         THE COURT:  OKAY.

13         MS. BARNHART:  AND SO I THINK MR. POLK SAID WE WERE

14     SEEKING --

15         THE COURT:  I'M GOING TO NEED YOU TO PULL THAT

16     MICROPHONE CLOSER TO YOU.  I THINK IT MOVES.  I THINK THE WHOLE

17     THING YOU CAN PICK UP.  THEN YOU CAN STAND UP, AND YOU DON'T

18     HAVE TO LEAN INTO IT.  THANKS.

19         MS. BARNHART:  I BELIEVE I HEARD MR. POLK SAY THAT

20     THE DEFENDANTS ARE SEEKING A BRIGHT LINE RULE THAT NATIONWIDE

21     CLASSES ARE NEVER PERMITTED FOR THESE TYPES OF CLAIMS.

22         THAT'S NOT WHAT WE ARE SEEKING HERE.  WE ARE SEEKING --

23     WHAT WE ARE ARGUING IS THAT THIS CASE, THERE CAN'T BE A

24     NATIONWIDE CLASS.

25         THERE ARE OBVIOUS DEFECTS HERE, JUST LOOKING AT THE FACE

1    OF THE PLEADINGS, THERE ARE INTERNAL INCONSISTENCIES ACROSS

2    PLAINTIFF'S VARIOUS COMPLAINTS.

3         SO, AND THIS REALLY HIGHLIGHTS THE NEED TO CONDUCT WHETHER

4    IT BE CHOICE OF LAW OR NARROWING THE CLASSES, HOWEVER

5    PLAINTIFFS WANT TO CATEGORIZE WHAT'S NEEDED TO BE DONE NOW, THE

6    INTERNAL INCONSISTENCIES IN THIS COMPLAINT.

7         SO FOR EXAMPLE, THERE ARE TWO FORMER NAMED PLAINTIFFS,

8    PLAINTIFF BERRY AND PLAINTIFF TRAN, THEY REPRESENTED STATE LAWS

9    FROM MICHIGAN AND ILLINOIS, RESPECTIVELY.  THEY HAVE DROPPED

10   ALL OF THEIR INDIVIDUAL WARRANTY AND THE CONSUMER FRAUD CLAIMS

11   IN THE AMENDED COMPLAINT.  THEY HAD ASSERTED CLAIMS IN THE

12   PREVIOUS VERSION OF THE COMPLAINT.

13        SO AS A RESULT, THERE ARE NOW NO CLAIMS ALLEGED UNDER

14   ILLINOIS AND MICHIGAN LAW IN THE AMENDED COMPLAINT, YET THOSE

15   INDIVIDUALS ARE REPORTEDLY ENCOMPASSED IN THE NATIONWIDE CLASS

16   CLAIMS.

17             THE COURT:  SO THAT'S AN INTERESTING POINT, BECAUSE I

18   THOUGHT MR. POLK REALLY ADDRESSED THAT, THAT ULTIMATELY AT

19   CLASS CERT, THAT NATIONWIDE MIGHT EXCLUDE CERTAIN STATES BASED

20   ON THEIR LAWS.  HE'S ACKNOWLEDGED THAT WITHOUT DEFINING IT IN

21   THE COMPLAINT.

22             MS. BARNHART:  AND IF THAT'S THE CASE, THEN THERE

23   CERTAINLY IS NO REASON TO WAIT BECAUSE THIS IS AN IMMEDIATE

24   CONCESSION THAT THOSE STATES CANNOT BE ENCOMPASSED IN THE

25   ALLEGATIONS IN THIS COMPLAINT.

1          THE COURT:  WELL, HE DIDN'T IDENTIFY WHICH STATES, HE

2     ACKNOWLEDGED THAT THIS ISSUE MIGHT ARISE.

3          BUT THEN WE HAVE TO JUMP TO THE ISSUE THAT PLAINTIFFS URGE

4     THAT I CAN'T ANALYZE THE STATE LAWS ON CHOICE OF LAW UNTIL I

5     KNOW -- HAVE A BETTER OUTLINE OF THE MATERIAL ISSUES IN THE

6     CASE.

7          MS. BARNHART:  AND I SUPPOSE THAT'S WHERE I WAS GOING

8     IS THEY HAVE CONCEDED THAT ILLINOIS AND MICHIGAN LAWS ARE NOT

9     AT ISSUE.  THEY HAVE DROPPED THOSE CLAIMS IN THIS COMPLAINT.

10    THEY HAVE ALSO DROPPED CERTAIN OTHER SPECIFIC CLAIMS OF OTHER

11    PLAINTIFFS IN OTHER STATES.

12         SO THERE WERE CLAIMS UNDER ILLINOIS AND MICHIGAN LAW A

13    YEAR AGO IN THAT VERSION OF THE COMPLAINT.  THERE ARE NOW NONE.

14    AND SO THERE'S NO REASON TO WAIT TO SAY, WELL, ILLINOIS AND

15    MICHIGAN LAW CAN'T BE AT ISSUE FOR THE NATIONWIDE CLASS, THERE

16    CAN'T BE A SUBGROUPING THAT INCLUDES THOSE STATES.

17         THE COURT:  SO THIS ISN'T A CHOICE OF LAW ISSUE.  I

18    AGREE WITH MR. POLK.  THIS ISN'T CHOICE OF LAW BECAUSE NO ONE

19    IS ASKING ME TO APPLY ONE LAW TO ALL STATES.  THAT'S THE UCL

20    CLRA CLAIMS, BUT WE ARE NOT TALKING ABOUT THOSE RIGHT NOW.  ALL

21    OF THE OTHER CLAIMS PERTAIN, WOULD BE A THE UMBRELLA OF A

22    NATIONWIDE CLASS, BUT EACH STATE'S LAW WOULD BE HONORED AND

23    APPLIED.

24         AND THEN WHAT IS SUGGESTED, AND I'M NOT SURE I WILL EVER

25    BUY THIS, BUT WHAT IS SUGGESTED IS THAT THEN AT CLASS CERT THE

```
1       PLAINTIFFS WOULD ORGANIZE THE GROUPING.  SO I MIGHT HAVE A
2       SUBCLASS OF 18 STATES WHOSE EXPRESS WARRANTY LAWS ARE VIRTUALLY
3       IDENTICAL, AND I MIGHT HAVE ANOTHER GROUPING OF EXPRESS
4       WARRANTY STATES THAT ARE EQUALLY IDENTICAL TO THEMSELVES BUT
5       DIFFERENT THAN THE FIRST BUCKET.
6           THAT'S WHAT HE'S SUGGESTING IS THAT IT'S NOT CHOICE OF LAW
7       AT ALL, IT'S JUST GROUPING BECAUSE IT BECOMES A PREDOMINANCE
8       EVALUATION.
9           SO I DON'T KNOW, I DON'T EVEN CONSIDER THAT A NATIONWIDE
10      CLASS.  I MEAN, THEY ARE ORGANIZED BY THE INJURY.  BUT INJURY
11      IS DEFINED BY THE STATE LAW.  SO ONE COULD HAVE HAD A PHONE
12      WITH A BOOT LOOP WHO IS NOT INJURED UNDER THEIR OWN STATE'S
13      LAW.  THAT'S THE CHOICE OF LAW ISSUE.
14          SO CAN THEY GET ON THE BANDWAGON TO SOMEBODY ELSE'S STATE?
15      THOSE ARE THE STATES THAT WOULD DISAPPEAR.  AND THAT'S WHAT YOU
16      ARE SAYING IS THAT SOME STATES DON'T RECOGNIZE CLASS ACTIONS,
17      HAVE A SHORTER STATUTE OF LIMITATIONS, WE CAN THINK ABOUT, I
18      DON'T KNOW THE WHOLE CHART.
19              MS. BARNHART:  I'VE GOT A LAUNDRY LIST, YEAH.
20              THE COURT:  IT'S A LAUNDRY LIST.
21              MS. BARNHART:  AND THAT'S TRUE.  TO BE FRANK,
22      YOUR HONOR, WE DIDN'T KNOW THAT WAS THE CASE UNTIL 10 MINUTES
23      AGO.
24              THE COURT:  NO, I DIDN'T EITHER.
25              MS. BARNHART:  SO WE ACTUALLY DID THINK THIS WAS A
```

1    CHOICE OF LAW ISSUE BECAUSE THERE IS NO LAW SPECIFIED IN THE

2    COMPLAINT WITHOUT -- THE COURT ORDERED IN MARCH 2018 TO SPECIFY

3    WHAT LAW WAS GOING TO GOVERN THE NATIONWIDE CLASS.

4          THE COURT:  SO YOU PROPERLY IDENTIFIED, OR MAYBE IT

5    WAS MR. LERNER PROPERLY IDENTIFIED, NO I THINK IT WAS YOU, THAT

6    THE COMPLAINT DOESN'T ACTUALLY BRING ANY CLAIM UNDER A

7    NATIONWIDE CLASS.

8          MS. BARNHART:  CORRECT.

9          THE COURT:  AND I ALWAYS LOOK IN THE CLAIM ITSELF,

10   AND I WAS POINTED TO A PARAGRAPH THAT PRECEDES THE CLAIMS, I

11   THINK IT WAS 150.

12         MS. BARNHART:  IT DOES SAY THE LAW OF THE PLAINTIFF'S

13   RESPECTIVE STATES OF RESIDENCE APPLIES.  OF COURSE THE

14   PLAINTIFFS ARE ONLY THESE 13 PLAINTIFFS WITH TEN STATES.  SO IF

15   THAT'S THE CASE, THEN THIS IS NOT A NATIONWIDE CLASS, THIS IS A

16   TEN-STATE CLASS.

17         THE COURT:  SO LET ME ASK YOU THE MORE PRACTICAL

18   QUESTION, KNOWING THAT I DON'T WANT TO BE IN -- I AM IN A BOOT

19   LOOP OF CONSTANT COMPLAINTS AND MOTIONS TO DISMISS, AND I DON'T

20   LIKE IT, SO DOES IT REALLY MOVE THE BALL DOWN THE FIELD TO HAVE

21   PLAINTIFFS AMEND TO STATE ESSENTIALLY WHAT WE'VE HEARD IN

22   ARGUMENT TODAY?

23         MS. BARNHART:  YES, YOUR HONOR.

24     BECAUSE AS I SAID, WE DID NOT KNOW WHAT WAS AT ISSUE IN

25   THIS COMPLAINT UNTIL TODAY.  AND SO THAT CLARITY IS EXTREMELY

```
 1    HELPFUL NOT ONLY -- I BELIEVE YOUR HONOR PUT IT IN A WAY IN THE

 2    MARCH 2018 ORDER, IT'S VERY DIFFICULT FOR ME TO ANALYZE THESE

 3    CLAIMS WITHOUT KNOWING WHAT LAW IS AT ISSUE.  IT'S VERY

 4    DIFFICULT FOR DEFENDANTS TO DEFEND AGAINST THE CLAIMS IF THEY

 5    DON'T KNOW WHAT LAW IS AT ISSUE.

 6         AND SO TO CLARIFY THAT WE ARE DEALING WITH TEN STATE LAWS

 7    HERE, MAKES IT -- THAT WILL CLARIFY.

 8              THE COURT:  WE ARE DEALING WITH 50 STATE LAWS, IS

 9    WHAT I'M HEARING, ACTUALLY.

10         SO I TEND TO AGREE WITH YOU GOING AGAINST WHAT I REALLY

11    HATE ABOUT PLEADING STAGE, BECAUSE ALTHOUGH I AM CONFIDENT THAT

12    COUNSEL IS MAKING CLEAR REPRESENTATIONS OF THEIR INTENTIONS, I

13    DON'T WANT TO EVER GET INTO A DEBATE ON WHAT WAS SAID HERE,

14    WHAT BINDS THE CLIENTS.  I WOULD RATHER IT BE IN THE PLEADING,

15    IT PROTECTS EVERYBODY, FRANKLY.

16         AND SO IF THAT'S THE CASE, THEN I WOULD -- I MEAN, IN

17    FACT, I WOULD ALTERNATELY GRANT THE MOTION FOR MORE DEFINITE

18    STATEMENT BECAUSE I REALLY DON'T KNOW WHAT'S PLED HERE, THAT I

19    WOULDN'T DO THIS ANALYSIS AT THIS STAGE BECAUSE I DON'T KNOW

20    WHAT I'M ANALYZING, YOU DIDN'T KNOW WHAT YOU WERE DEFENDING.

21         IS THAT WHAT I'M HEARING?

22              MS. BARNHART:  THAT WOULD CERTAINLY HELP.

23              THE COURT:  BECAUSE THAT THEN TELLS ME THAT MAYBE WE

24    ARE DONE FOR TODAY AND I SHOULD DEFER RULING ON ANYTHING ELSE

25    UNTIL I GET AN AMENDED PLEADING.
```

```
 1        BUT MAYBE NOT, AND WE COULD, IF WE MOVE OFF OF THE CLASS
 2    ACTION, BECAUSE MAYBE WE'VE REACHED A POINT WHERE PLAINTIFFS
 3    HAVE GRACIOUSLY INDICATED THAT THEY WOULD, WITHOUT QUESTION, GO
 4    BACK AND ADDRESS THESE ISSUES, AND YOU'VE INDICATED IT WOULD BE
 5    HELPFUL, MAYBE THAT'S REALLY THE END OF IT FOR TODAY.  WHAT DO
 6    YOU THINK?
 7            MS. BARNHART:  I THINK THAT SOUNDS RIGHT FOR THE
 8    COMMON LAW CLAIMS, THE WARRANTY AND THE FRAUDULENT CONCEALMENT.
 9        ON THE UCL AND CLRA CLAIMS, I JUST WANT TO NOTE AGAIN IT'S
10    CLEAR NEWS TO US TODAY THAT CALIFORNIA LAW WOULD BE APPLIED
11    NATIONWIDE.
12        AND THAT IS SOMETHING THAT I -- DOES WELCOME A CHOICE OF
13    LAW ANALYSIS AT THIS PLEADING STAGE.  BECAUSE THERE ARE
14    INDIVIDUAL PLAINTIFFS THAT ARE ALLEGING CLAIMS UNDER THE UCL
15    AND THE CLRA, INDIVIDUALS WHO DO NOT RESIDE IN CALIFORNIA.
16            THE COURT:  RIGHT.
17            MS. BARNHART:  DID NOT PURCHASE THE PHONES IN
18    CALIFORNIA.
19        SO THERE ARE ACTUALLY TWO ISSUES WITH THOSE CLAIMS.
20        ONE, WHETHER THOSE STATUTES APPLY EXTRATERRITORIALLY
21    CONSISTENT WITH DUE PROCESS PRINCIPLES.  AND THEN ASSUMING THAT
22    HURDLE IS SURPASSED, THERE'S THE SECOND QUESTION OF WHETHER
23    UNDER CALIFORNIA CHOICE OF LAW PRINCIPLES, THOSE LAWS WOULD
24    GOVERN THE NONRESIDENT PLAINTIFF'S CLAIMS.
25            THE COURT:  SO HERE'S WHERE I THINK THE PLAINTIFFS
```

1    MADE A LEGITIMATE REQUEST FOR THE NEED FOR DISCOVERY.  AND THAT

2    HAS TO DO WITH WHAT HAPPENED IN CALIFORNIA IN TERMS OF THE

3    MANUFACTURING AND ADVERTISING CONDUCT THAT IS AT THE HEART OF

4    THESE CLAIMS.

5         AND I THINK THAT'S PROBABLY LEGITIMATE.  AND IT GOES TO, I

6    MEAN, IT MAY ALSO GO TO SOME OTHER ISSUES AS WELL, SUCH AS WHO

7    IS THE MANUFACTURER, BECAUSE EACH OF YOU HAS A DIFFERENT VIEW,

8    AND I THINK THE WAY IT'S PLED, IT'S -- I WOULD HAVE TO LET IT

9    GET THROUGH THE PLEADING STAGE THAT GOOGLE IS A MANUFACTURER,

10   BECAUSE I FEEL LIKE I HAVE TO JUDGE -- APPLY THE DEFINITION TO

11   FACTS IN THE CASE.  AND I DON'T HAVE FACTS IN THE CASE, I JUST

12   HAVE ALLEGATIONS.

13        SO I'M NOT SURE IT'S TIME FOR THE CHOICE OF LAW ANALYSIS,

14   AND THIS CASE WILL TAKE YEARS, WHICH IS REALLY, I'M NOT SURE

15   HOW PRODUCTIVE THAT IS, BUT MY JOB IS TO GET IT RIGHT BASED ON

16   THE ISSUES YOU BRING TO ME.

17        SO I'M NOT INCLINED TO DO THE CHOICE OF LAW RIGHT NOW

18   BECAUSE I THINK PLAINTIFFS LEGITIMATELY HAVE THE RIGHT TO

19   DISCOVERY ON THEIR ARGUMENT THAT IT WOULD BE RELEVANT TO THE

20   DETERMINATION TO SEE WHAT CONDUCT OCCURRED IN CALIFORNIA FOR

21   CLASS MEMBERS WHO HAVE NO CONNECTION WITH CALIFORNIA.

22        CLEARLY THOSE WHO LIVE HERE CAN ASSERT THEIR CLAIMS UNDER

23   CALIFORNIA LAW, THOSE WHO BOUGHT PHONES HERE CAN TOO, EVEN IF

24   THEY'VE MOVED.  THAT'S STILL A LOT OF PEOPLE.

25             MS. BARNHART:  SO I AGREE THAT COULD BE RELEVANT TO

```
 1        THE EXTRATERRITORIALLY APPLICATION POINT, WHICH IS THE DUE

 2        PROCESS POINT.  BUT EVEN ASSUMING THAT IS SATISFIED, THE CHOICE

 3        OF LAW ANALYSIS DOESN'T DEPEND ON DEFENDANT -- I MEAN, WHAT

 4        COURTS HAVE FOUND, TIME AND TIME AGAIN, IS IT'S THE PLACE OF

 5        HARM, WHERE THE CONSUMER PURCHASED THE PHONE, WHERE THE

 6        CONSUMER READ THE MISLEADING ADVERTISING.  THAT'S THE LAW

 7        THAT'S GOING TO GOVERN THE CLAIM.  SO THERE IS NO NEED TO TELL

 8        WHERE THAT HAPPENED.  WE KNOW WHERE THAT HAPPENED.

 9             AND I WILL JUST SAY, GOING BACK TO YOUR HONOR'S POINT AS

10        TO WHETHER WE ARE DONE TODAY, I MEAN, I DO THINK THERE ARE,

11        EVEN WITHOUT A MORE DEFINITE STATEMENT AS TO THE GOVERNING LAW

12        OF CERTAIN OF THESE CLAIMS, THERE ARE, AND I WILL LET

13        MR. LERNER TALK TO THESE, THERE ARE CLAIMS THAT WE THINK SHOULD

14        BE DISMISSED OUTRIGHT.

15                  THE COURT:  I KNOW.

16             SO LET'S PIVOT THEN TO THE ISSUE OF PRESALE KNOWLEDGE.

17        AND AM I GOING TO GET MR. LERNER, IS HE TEED UP ON THIS ONE?

18        GOOD MORNING.

19                  MR. LERNER:  WE TRIED TO --

20                  THE COURT:  AND I'M GOING TO ASK YOU TO MOVE THAT

21        MICROPHONE TOWARD YOU.

22                  MR. LERNER:  SO YEAH, WE'VE SPLIT THESE UP,

23        ESSENTIALLY.  I WILL ADDRESS THE PRE-SUIT KNOWLEDGE THING JUST

24        TO AVOID FLIPPING BACK AND FORTH.

25             VERY QUICKLY ON THE CHOICE OF LAW, WHICH I THINK
```

1    MS. BARNHART DID A VERY GOOD JOB OF EXPLAINING, I JUST WANT TO

2    POINT OUT THAT I'M NOT AWARE OF ANY CASE THAT, TO YOUR POINT

3    ABOUT WHETHER OR NOT KIND WE ARE DONE HERE ON THE WAY THIS

4    PLEADING IS STRUCTURED, I'VE NEVER SEEN ONE NOR HEARD OF

5    ANYBODY KIND OF SAYING, LET US TELL YOU LATER.  THAT DIDN'T

6    GIVE US OR THE COURT ANYTHING TO ADDRESS.

7        AND THE REASON MOLLICONE, WHICH IS A CASE DIRECTLY ON

8    POINT THAT ADDRESSES COMMON LAW AND STATUTORY CLAIMS ON THE

9    STANDING POINT, BUT ALSO THE REASON COURTS DO THE CHOICE OF LAW

10   ANALYSIS NOW, IS THAT THE COST OF WHAT WE ARE DOING, APART FROM

11   JUST THE IMPACT ON THE COURT WITH THE PLEADINGS, IS PHENOMENAL.

12       THE IDEA THAT NOTHING HAS STARTED YET OR THERE ARE ONLY 12

13   DOCUMENT REQUESTS, I'M SURE NOTHING WAS INTENDED TO KIND OF GET

14   THE FACTS WRONG.  BUT LET'S BE CLEAR, WE ARE NEGOTIATING AND

15   HAVE NEGOTIATED LENGTHY SEARCH STRINGS.

16       MULTIPLE PEOPLE AND HUGE GROUPS OF LAWYERS ARE REVIEWING

17   LOADS OF DOCUMENTS.  THEY WANT THE PRODUCTION DONE BY THE END

18   OF NOVEMBER, WHICH PEOPLE ARE WORKING ON.  THE IDEA THAT THIS

19   DOESN'T HAVE COST, I THINK DOESN'T KIND OF PASS MUSTER.  AND.

20       I ALSO THINK THAT, PARTICULARLY AS JUDGE KOH AND

21   YOUR HONOR AND OTHERS HAVE ACKNOWLEDGED, THIS DISTRICT, BECAUSE

22   OF THE COMPANIES THAT ARE HERE, IS SEEING AN INFLUX OF CLASS

23   ACTIONS.

24       THE COURT:  SURE.

25       MR. LERNER:  AND ONE OF THE THINGS THAT'S HAPPENING

1    AS WE ADJUST TO THAT IS YES, ON THE PLEADINGS, WE OBVIOUSLY

2    HAVE TO TAKE THEM AS THEY'RE WRITTEN.  AND TO YOUR POINT, WE

3    HAVE TO ASSUME PEOPLE ARE ABIDING BY RULE 11.  BUT WE ALSO NEED

4    TO CALL BALLS AND STRIKES ON THINGS THAT, ON THEIR FACE, ARE

5    INEFFICIENT OR WRONG.

6         AND SO ON THIS POINT ABOUT THE REDO, I AGREE WITH YOU, WE

7    ALL NEED CLARITY, OR ELSE I ALMOST FEEL COMFORTABLE

8    GUARANTEEING, WHICH I TRY TO AVOID, THAT WE WILL HAVE A FIGHT

9    LATER ABOUT WHO SAID WHAT, WHEN THEY SAID OH, IT WON'T BE 50

10   STATES, AND WE ARE HERE ON CLASS CERT WITH 49.

11        THE COURT:  AND, YOU KNOW, NEITHER SIDE WANTS THAT

12   DEBATE.  AND IT'S INEVITABLE, ISN'T IT MR. LERNER, THERE WILL

13   BE A DISAGREEMENT ON WHAT WE HEARD TODAY.

14        AND I DON'T WANT EITHER OF YOU TO HAVE TO LIVE OR DIE ON A

15   TRANSCRIPT, I WOULD RATHER IT BE ON A PLEADING, BECAUSE THEN

16   YOU SIT DOWN WITH YOUR CLIENT AND YOU WORK IT OUT AND IT'S

17   REALLY WHAT YOU INTEND.  I'VE HAD LAWYERS MAKE SOME PRETTY BOLD

18   STATEMENTS IN COURT, ONLY TO GO HOME AND SAY, I CAN'T BE BOUND

19   BY THAT.

20        AND, YOU KNOW, LIFE IS TOO SHORT TO HAVE TO MAKE THESE

21   THINGS UP IN COURT AND THEN LIVE BY IT.  SO I AGREE WITH YOU ON

22   THAT.

23        I AM GOING TO REQUIRE A RE-PLEADING OF THE CLASS

24   ALLEGATIONS.  AND OBVIOUSLY FROM MY OPENING COMMENTS, I DIDN'T

25   UNDERSTAND IT EITHER.

1    SO, OKAY, LET'S MOVE ON TO THE PRESALE KNOWLEDGE, BECAUSE

2    IF THERE'S A CLEANUP OF THE PLEADINGS, WE ARE NOT GOING TO DO

3    IT PIECEMEAL.

4         MR. LERNER:  RIGHT.

5    SO ON THAT TOPIC, I, TO BE STRAIGHTFORWARD, HAVE KIND OF

6    SPENT THE LAST COUPLE OF DAYS, GIVEN THE VOLUME OF PAPER THE

7    COURT HAS RECEIVED ON BOTH THE FIRST MOTION AND THIS MOTION,

8    THINKING ABOUT HOW TO CLARIFY THAT ON THIS KNOWLEDGE POINT, WE

9    REALLY SHOULD, TO YOUR POINT, STOP THE REPETITION AND KIND OF

10   REALIZE WHERE WE ARE.

11   THE FIRST TIME AROUND AS TO GOOGLE, FOR EXAMPLE,

12   YOUR HONOR WROTE AN 88-PAGE MANUAL ON HOW THEY COULD FIX THIS.

13   AND WHAT YOU WILL FIND IF WE LOOK INTO IT IS THAT YOU EITHER

14   HAVE TO BREAK THE FACTS OR BREAK THE LAW IN ORDER TO ALLEGE,

15   PLAUSIBLY, KNOWLEDGE HERE.  IT JUST DOESN'T WORK WHEN YOU LOOK

16   AT BOTH THE FACTS AND THE LAW.

17   SO WITH RESPECT TO HOW THIS IS HAS UNFOLDED, WHEN THIS

18   COMPLAINT FIRST CAME TO YOUR HONOR, WHAT CAUGHT YOUR ATTENTION

19   IN THE FIRST COUPLE OF PAGES IS THEY DESCRIBED THESE ISSUES AS

20   SERIOUS.

21   AND IN THE FIRST COUPLE OF PAGES OF YOUR DECISION, YOU

22   DESCRIBED IT AS UNFORTUNATE THAT THERE ARE TWO DEFECTS THAT ARE

23   ACTIONABLE HERE, FROM A MERCHANTABILITY STANDPOINT.  ENOUGH TO

24   KIND OF GET OUT OF THE STABLE ON A CASE LIKE THIS ONE.  AND

25   WHAT THEY DESCRIBE AS ENDLESS BOOTLOOP, WHICH YOUR HONOR

```
1    DESCRIBED AS MAKING THE PHONE NONOPERATIONAL.

2         AND WHEN WE WERE HERE YOU HEARD OVER AND OVER, IT'S A

3    PAPER WEIGHT, YOUR HONOR, THIS TURNS THE PHONE INTO A PAPER

4    WEIGHT.

5         AND ON THE BATTERY DRAIN, IT WAS PRELIMINARY SHUT DOWN.

6    THIS THING DOES NOT WORK, IT WAS NONOPERATIONAL.  IT SUDDENLY

7    RUNS OUT OF BATTERY, AND IF YOU'RE ON THE STREET, YOU ARE

8    COMPLETELY OUT OF LUCK.  IT IS "DEAD UNTIL CONNECTED."

9         THAT'S WHAT GOT THEM OUT OF THE GATE ON THIS CASE IN TERMS

10   OF THIS ACTUALLY BEING A MERCHANTABILITY ISSUE.

11         THE COURT:  SURE.  ON MERCHANTABILITY, ABSOLUTELY,

12   BECAUSE A TEMPORARY REBOOTING IS ENTIRELY DIFFERENT THAN AN

13   ENDLESS BOOTLOOP, AND A BATTERY THAT DOESN'T LAST AS LONG AS I

14   WANT IT TO IS DIFFERENT THAN ONE THAT IS JUST DEAD.

15        SO CORRECT.  RIGHT.

16         MR. LERNER:  RIGHT.  YOU TOOK THE WORDS OUT OF MY

17   MOUTH.

18        SO THE COURT DISMISSED BASED ON A LACK OF KNOWLEDGE, AS TO

19   THE DESCRIPTION, OF THOSE DEFECTS WHICH WERE SERIOUS ENOUGH TO

20   GET OUT OF THE GATE.  THERE WASN'T KNOWLEDGE AS TO THOSE TWO,

21   AND YOU FOUND THAT A DOZEN OR SO COMPLAINTS -- SORRY, TWO DOZEN

22   OR SO COMPLAINTS WASN'T SUFFICIENT UNDER BERENBLAT AND BABA,

23   AND THERE'S A WHOLE BUNCH OF CASES LIKE THAT WHICH WE'VE

24   SIGHTED.

25         THE COURT:  SO I'VE GONE BACK AND LOOKED AT THOSE
```

1    CASES, AND IT CAUSED ME TO THINK I DO HAVE MORE DETAIL, I HAVE

2    DATES ASSOCIATED WITH THE COMPLAINTS, SO I CAN LOOK AT THE

3    PERIOD OF TIME.

4         AND IN MOST OF THOSE CASES, IT WAS A FEW COMPLAINTS OVER

5    FIVE TO SEVEN YEARS.  HERE, I'VE GOT A SMALL NUMBER OF

6    COMPLAINTS, LET'S SAY IT'S 27 COMPLAINTS IN THE FIRST TWO

7    MONTHS.

8         SO I HAVE -- I CERTAINLY HAVE TO LOOK AT THAT DIFFERENTLY

9    THAN 80 COMPLAINTS OVER SEVEN YEARS IN THE CAR CASES WHERE

10   THERE ARE HUNDREDS OF THOUSANDS OF VEHICLES BEING SOLD, AND

11   THESE TRICKLE IN FIVE OR SIX A YEAR.

12        MR. LERNER:  CORRECT.  AND ON THAT POINT, LET ME

13   EXPLAIN WHAT THEY DID TO FIX THAT.

14        SO YOU HAVE TWO-DOZEN ORIGINALLY, BUT NO DESCRIPTION AS

15   PLAINTIFFS HAVE JUST SAID TODAY, OF KIND OF WHAT REALLY THEY

16   WERE.  AND YOU SAID THAT'S NOT SUFFICIENT UNDER THE EXISTING

17   CASE LAW.

18        THE COURT:  RIGHT.

19        MR. LERNER:  SO WHAT DID THE PLAINTIFFS DO?

20        IN THE SECOND AMENDED COMPLAINT, IN ORDER TO KEEP AN

21   ACTIONABLE DEFECT, THEY KEPT THOSE SAME DESCRIPTIONS.  THEY

22   KEPT THEM AS, YOU KNOW, YOU'RE CREATING A PAPER WEIGHT, THE

23   BOOTLOOP KILLS THIS THING, THE BATTERY DRAIN RENDERS IT DEAD

24   UNTIL YOU PLUG IT IN.  BUT THEN, AND THIS GOES TO YOUR HONOR'S

25   POINT ABOUT THE COMPLAINTS, IN ORDER TO GET A BIGGER NUMBER,

1    THEY CITED INTERNET COMPLAINTS, AND IN ORDER TO SATISFY, ONE

2    PRESUMES THE KIND OF DUTY OF CANDOR, THEY GAVE YOU WHERE THOSE

3    COMPLAINTS COME FROM.

4        AND TO YOUR POINT, WE WENT AND LOOKED AT THE COMPLAINTS,

5    NOT TO PARSE FACTS, TO ADDRESS THE FACE OF THE PLEADINGS

6    BECAUSE THEY CITE THEM.

7        AND AGAIN, I DON'T THINK THIS IS INTENTIONAL, I THINK THEY

8    WERE TRYING TO MEET THE COURT'S GUIDANCE, BUT I THINK IT'S

9    PRETTY SERIOUS THAT WHEN YOU ARE DONE LOOKING AT THOSE, YOU

10   DON'T HAVE 24 OR 27 OR ANYTHING ELSE, YOU HAVE 12.

11       AND IT IS ALARMING IF YOU LOOK AT APPENDIX A AND B OF OUR

12   BRIEFS THAT FOR BOOTLOOP, THEY CITED TO THE COURT COMPLAINTS

13   THAT SAY, IT TOOK ME A MINUTE TO FIGURE THIS OUT, THANKS.

14   THANKS, IT WORKED.  THANKS, IT STARTED.

15       THOSE ARE ON THE FACE OF THIS PLEADING.  AND IF YOU CULL

16   THOSE OUT, YOU ARE DOWN TO ANSWER YOUR HONOR'S QUESTION TO 12.

17   AND I'M NOT AWARE OF ANY CASE TIME FRAME OR OTHERWISE THAT SAYS

18   THAT'S ENOUGH.

19       BUT THE BIGGER PROBLEM HERE IS THAT, AS WE KIND OF SAID

20   FROM THE BEGINNING, I UNDERSTAND THE DESIRE TO FIND A CLAIM

21   THAT FITS THESE FACTS, BUT IT IS A SQUARE PEG, ROUND HOLE.  IN

22   ORDER TO FIND THE KNOWLEDGE, THEY ARE SUDDENLY SAYING DON'T

23   LOOK AT THE DEFECTS AS WE HAVE DESCRIBED THEM FOR YOU IN ORDER

24   TO STATE A CASE THAT'S SERIOUS, LOOK AND THIS IS WHAT

25   YOUR HONOR POINTED TO, LOOK AT SOMETHING COMPLETELY DIFFERENT,

1    I.E. THE COMPLAINTS ON THE INTERNET, OR OUR OPPOSITION BRIEF.

2         SO IN THEIR OPPOSITION BRIEF, WE SUDDENLY FLIP FROM THOSE

3    KIND OF FINITE DEFECTS TO, ON PAGE 10, OH, YEAH, IT "ALSO

4    CAUSES ACCELERATED DRAIN."

5         TO YOUR HONOR'S POINT, I THINK IT MIGHT HAVE BEEN YOUR

6    EXACT WORDS, RANDOM SHUTDOWNS OR FREEZING.  ON PAGE 11, RANDOM

7    REBOOTS OR DECREASE IN BATTERY LIFE.  THOSE ARE NOT ACTIONABLE

8    DEFECTS.  THERE ARE CASES THAT POINT OUT THAT THAT,

9    UNFORTUNATELY, HAPPENS TO ALL OF US.

10        AND WHAT IT DOES IS IT ALL OF THE SUDDEN CREATES THE

11   ABILITY TO SAY, OH, IF I EXPAND THE DEFINITION THAT BROADLY, OF

12   COURSE YOU HAVE KNOWLEDGE, OR OF COURSE YOU COULD HAVE TESTED

13   FOR IT.

14        AND THAT'S WHY ACTUALLY LOOKING AT WHAT'S BEING DONE HERE

15   IS SO IMPORTANT BECAUSE IT'S NOT ACTUALLY FOLLOWING THE COURT'S

16   ORDER.  THERE ARE NOT MORE COMPLAINTS THAT ADDRESS THESE

17   DEFECTS AS DESCRIBED.  AND THIS PROBLEM THEN PERVADES THE REST

18   OF THE CASE IN OUR ABILITY TO ATTACK IT.

19            THE COURT:  SO IN THE OPPOSITION PAPERS, THE

20    PLAINTIFFS SUGGEST THAT, IN FACT, THERE ARE THOUSANDS OF

21    COMPLAINTS AND THIS IS JUST REPRESENTATIVE.  SO I GUESS THEY

22    WOULD HAVE TO PLEAD THAT.  THEY DIDN'T PLEAD IT THAT WAY, I

23    DON'T BELIEVE.

24            MR. LERNER:  AND ALSO, WE KNOW -- AND THE REASON THEY

25    DIDN'T PLEAD IT, AND THIS IS ALSO SOMETHING THAT COMES UP, IS

1    IT'S EFFECTIVELY TRYING TO REARGUE SOMETHING YOUR HONOR HAS

2    ALREADY RULED ON.  YOUR HONOR ALREADY EXPLAINED THAT THE WILSON

3    CASE ADDRESSES DEFENDANT'S KNOWLEDGE OF AGGREGATE INFORMATION.

4         IT'S NOT ENOUGH TO SAY DEFENDANTS ARE AWARE OF THOUSANDS

5    OF X.  THE COURTS HAVE ALREADY HELD THAT'S NOT SUFFICIENT.  I

6    WILL ALSO ADD, BECAUSE IT'S VEXING TO ME, THAT WE HAVE HEARD A

7    LOT OF TIMES IN THIS COURT, YOUR HONOR, WE ARE GETTING

8    THOUSANDS OF COMPLAINTS, WE ARE GETTING THOUSANDS OF

9    COMPLAINTS.  TO YOUR POINT, IF THAT'S TRUE, PLEAD IT.  BUT IF

10   IT'S NOT, WHY ARE WE SEEING A BUNCH OF RANDOM INTERNET POSTS

11   THAT DON'T EVEN ADDRESS THESE SPECIFIC DEFECTS?

12        AND THIS IS NOT THE FIRST CHANCE, THIS CASE WAS FILED IN

13   TEXAS FIRST, IT WAS FILED, RE-FILED HERE MONTHS LATER WITH A

14   MONSTER OPINION THAT I WILL PUT ASIDE WHAT WE HAD TO DO, YOU

15   HAD TO WRITE A 90-PAGE OPINION.

16        THE COURT:  I RELISH HAVING TO DO THAT AGAIN.

17        MR. LERNER:  RIGHT.  NOW WE ARE HERE AGAIN IN ORDER

18   TO TRY AND CREATE KNOWLEDGE.  AND THERE ISN'T A BASIS TO DO IT

19   BASED ON HOW THIS CASE HAS BEEN SET UP.

20        WITH RESPECT TO TESTING, THEIR OWN CASES, THE WILDIN CASE

21   FOR EXAMPLE, AND OTHERS, TO YOUR HONOR'S POINT, YOU NOT ONLY

22   NEED TO SATISFY YOUR RULE 11 OBLIGATION TO AVOID JUST

23   SPECULATING ABOUT IT, BUT THE CASES ALSO SAY YOU NEED TO ALLEGE

24   A WAY THAT THE SPECIFIC TESTING WOULD HAVE IDENTIFIED THE

25   SPECIFIC PROBLEM, WHICH OF COURSE BRINGS US BACK TO IF YOU

1    VASTLY EXPAND THE DEFINITION OF YOUR PROBLEM, THEN YOU KIND OF,

2    IT'S A SHELL GAME.  IT'S NO LONGER ANYTHING THAT WE CAN SHOOT

3    AT.

4        SO ON THE KNOWLEDGE PIECE, I THINK THAT THE SHIFTING BACK

5    AND FORTH IN ORDER TO TRY AND CREATE A CLAIM SHOWS THAT WE

6    SHOULD FINALLY BE DONE HERE ON THOSE CLAIMS.

7        AND THE FINAL PIECE I WILL JUST MENTION IS ON THE SAFETY

8    HAZARD, I THINK THAT THE COURT IS NO DOUBT AWARE OF ALL THE

9    LAW, THERE'S BEEN A LOT OF IT LATELY.  I WILL JUST POINT OUT,

10   AGAIN, THAT EVEN IF YOU ACCEPT THEIR ARGUMENT, WHICH IS AFTER

11   HODSDON, YOUR HONOR ESSENTIALLY SHOULDN'T REQUIRE A SAFETY

12   HAZARD, WELL, WE HAVE TO KEEP READING HODSDON.

13       HODSDON SAYS THE DEFECT HAS TO GO TO A CORE FUNCTIONALITY.

14   IF I SUDDENLY EXPAND MY DEFINITION OF THE DEFECTS TO RANDOM

15   REBOOTS, FREEZING OR BATTERY DRAIN FROM SIX HOURS TO 4 HOURS,

16   THOSE ARE NOT CORE FUNCTIONALITIES.  AND YOU CAN'T HAVE IT BOTH

17   WAYS, WHICH IS AGAIN WHAT'S BEEN ATTEMPTED HERE IN ORDER TO

18   ALLEGE THE KNOWLEDGE POINT.

19       THE FINAL WAY, JUST TO DEAL WITH THE ELEMENTS OF ALL THESE

20   CLAIMS --

21           THE COURT:  BUT I DON'T THINK THEY'VE PLED THIS

22   EXPANDED DEFINITION OF THE DEFECTS, THEY'VE ONLY ARGUED IT;

23   WOULD YOU AGREE?

24           MR. LERNER:  CORRECT, CORRECT.

25       BUT I DO NOT THINK WE SHOULD PASS GO ON THIS AGAIN.  I

1    THINK THEY'VE HAD MULTIPLE CHANCES TO ALLEGE KNOWLEDGE.  AND I

2    THINK YOUR HONOR GAVE THEM A VERY DETAILED ROAD MAP AS TO HOW

3    TO DO IT AND THEY HAVE NOT DONE IT.  AND IT AFFECTS ALL OF

4    THESE CLAIMS.

5         VERY QUICKLY, THE LAST WAY IT INFLUENCES THIS IS --

6              THE COURT:  SO THE SAFETY HAZARD ISSUE, I WOULD SAY

7    THAT ON THE PLED DEFINITION OF THE DEFECTS, THAT I WOULD NOT

8    DISMISS FOR FAILURE TO ALLEGE A SAFETY HAZARD.  IF THE DEFECT

9    WERE TO BE EXPANDED, I WOULD HAVE TO LOOK AT THAT, BUT IT

10   HASN'T BEEN EXPANDED.  I DON'T EVALUATE THE ARGUMENTS IN THE

11   OPPOSITION.

12             MR. LERNER:  BUT THEN YOU WOULD NEVER GET THAT

13   BECAUSE YOU WOULDN'T HAVE KNOWLEDGE.

14             THE COURT:  THEN YOU HAVE A KNOWLEDGE PROBLEM, YES, I

15   AGREE.

16             MR. LERNER:  THE FINAL PIECE I WILL ADD ON THIS, JUST

17   IN TERMS OF HOW IT UNFOLDS, IS IF YOU LOOK AT, FOR EXAMPLE THE

18   OMISSION CLAIMS, AND YOU SAY, WELL, YOU SHOULD HAVE SAID IT ON

19   THE BOX OR YOU SHOULD HAVE SAID IT ON YOUR STARTUP SCREEN OR

20   YOU SHOULD HAVE SAID IT HERE OR THERE OR SOME OTHER PLACE,

21   WELL, SAID WHAT?

22        IF YOU LOOK AT ALL OF THE CASES THE PLAINTIFFS ARE RELYING

23   ON, THERE'S A SPECIFIC SOMETHING TO SAY.  THE SUNROOF, OR -- WE

24   ARE NO LONGER IN THAT UNIVERSE IN THEIR PAPERS IN ORDER TO GET

25   KNOWLEDGE.  WE ARE AT, EFFECTIVELY, YOU SHOULD HAVE SAID THE

1    PHARMACEUTICAL AD THAT WE ALL SEE LATE AT NIGHT ON TV ON YOUR

2    BOX, WHICH WOULDN'T FIT.  YOU SHOULD HAVE SAID IT COULD

3    RANDOMLY BOOT, IT COULD RANDOMLY FREEZE.  AND AT THAT POINT, A,

4    IT'S NOT CLEAR IT'S MATERIAL; BUT B, NOBODY COULD SAY WHETHER

5    OR NOT SOMEBODY WOULD HAVE RELIED ON IT OR NOT.

6         FINALLY, ON THE UNFAIR PRONG, WE'VE ALREADY TALKED ABOUT

7    UNLAWFULNESS, SO I WON'T REVISIT THAT, BUT ON THE UCL

8    UNFAIRNESS PRONG, WHAT IT REALLY BOILS DOWN TO IF YOU DISTILL

9    OUT ALL THE OTHER THINGS WE'VE TALKED ABOUT, IS THEY ARE

10   ALLEGING THAT YOU SHOULD FIND UNFAIRNESS BECAUSE THE TWO

11   COMPANIES WERE FAST TO MARKET.

12        THERE'S NO CASE THAT HOLDS THAT.  AND IF THERE WERE,

13   PARTICULARLY AGAIN, IN THIS DISTRICT, YOU WOULD HAVE A UCL

14   CLAIM ALMOST EVERY SINGLE TIME A WELL-KNOWN COMPANY HAD A --

15            THE COURT:  I DON'T THINK THE COURTS ARE GOING TO

16   DRAW A BRIGHT LINE ABOUT HOW MUCH TIME A COMPANY SHOULD SPEND

17   IN DEVELOPMENT.

18        I THINK THAT -- I MEAN, STANDING ALONE, FAST TO

19   DEVELOPMENT IS MEANINGLESS.  IF DISCOVERY UNCOVERS ADMISSIBLE

20   EVIDENCE THAT SHORTCUTS WERE TAKEN IN ORDER TO MEET MARKETING

21   DEADLINES, THAT'S A DIFFERENT MATTER.  BUT THEN I WOULD NEED TO

22   KNOW INDUSTRY STANDARDS FOR TESTING, INDUSTRY STANDARDS FOR,

23   WELL, FOR TESTING REALLY IS THE ISSUE HERE.

24        SO I AGREE WITH YOU ON THAT.  I'M NOT SURE THAT THE

25   PLEADING IS THAT STARK.  IT CERTAINLY IS PART OF A MUCH MORE

1    COMPLEX ARGUMENT ON THE KNOWLEDGE ISSUE, THAT BECAUSE THEY WERE

2    UNDER SUCH TIME PRESSURES, THEY IGNORED RED FLAGS.  I MEAN,

3    THAT'S WHAT ONE WOULD IMAGINE COULD COME UP.  I DON'T KNOW WHAT

4    ACTUALLY HAPPENED.

5         SO, YOU KNOW, I DON'T SEE IT AS A STAND ALONE.

6         MR. LERNER:  UNDERSTOOD.

7    I THINK MY POINT WAS IF YOU UNDERCUT THE FOUNDATION AND

8     THAT'S ALL THAT'S LEFT, THEN THAT'S NOT SUFFICIENT.

9         THE LAST POINT VERY QUICKLY, BECAUSE I KNOW YOU MENTIONED

10   IT, AND DISCUSSED YOUR INCLINATION TO LET IT PASS, I JUST WANT

11   TO STATE QUICKLY IN CASE IT'S BENEFICIAL.

12        ON SONG-BEVERLY, THIS AGAIN, IS AN AREA WHERE PREVIOUSLY

13   THE ALLEGATION WAS, TO QUOTE THE COURT, "THE COMPLAINT LABELS

14   HUAWEI AS THE MANUFACTURER IN MULTIPLE PLACES, AND

15   COLLABORATION IS NOT ENOUGH."

16        AND AS YOUR HONOR KNOWS BETTER THAN I DO, WE ARE NOT GOING

17   TO -- IT'S ONE THING TO PLEAD AN ALTERNATIVE THEORY, IT'S

18   ANOTHER THING TO GO BACK COMPLETELY AND FLIP FLOP ON SOMETHING.

19        AND I THINK HERE WHAT'S HAPPENING IS, TO BE BLUNT, GETTING

20   A LITTLE BIT GREEDY, THEY KEPT HUAWEI IN ON THIS.  AND NOW WHAT

21   THEY ARE SAYING IS LET US EITHER LUMP GOOGLE AND HUAWEI

22   TOGETHER, WHICH THE COURT ALREADY SAID NO TO, OR FIND THAT

23   GOOGLE IS A MANUFACTURER BASED ON ONE OF TWO ARGUMENTS.  IT WAS

24   INVOLVED IN DESIGN OR DEVELOPMENT, AND THIS STATUTE DOES NOT

25   REFER TO DESIGN OR DEVELOPMENT, NOR WOULD IT MAKE ANY SENSE FOR

1     IT TO BECAUSE THE LAW VERY CLEARLY DIFFERENTIATES BETWEEN

2     MANUFACTURING AND DESIGN ISSUES IN ALMOST ALL AREAS OF LAW,

3     PARTICULARLY, OBVIOUSLY, DEFECTS.  MANUFACTURING AND DESIGN

4     DEFECTS ARE VERY DIFFERENT.  THERE'S NO REFERENCE TO DESIGN IN

5     THE STATUTE OR ANY OTHER CASE LAW INTERPRETING IT.

6          WITH RESPECT TO CONTROL OF THE PROCESS, THIS AGAIN IS THE

7     POINT I RAISED ABOUT KIND OF BREAKING THE FACTS.  THERE'S NO

8     DENIAL, AND I WAS A LITTLE SURPRISED TO FIGURE IT OUT, I WISH I

9     COULD TAKE CREDIT, BUT ONE OF MY COLLEAGUES DID, THERE'S NO

10    DENIAL THAT THIS IS BASED ON A REDDIT POST.  THE REDDIT POST AT

11    THE OUTSET SAYS THIS COULD HAVE LOTS OF INACCURACIES, NOT SURE

12    IT'S RIGHT.

13         IT THEN, EVEN IF YOU WERE TO CREDIT THAT AS THE BASIS FOR

14    A FEDERAL COURT ALLEGATION, IT THEN GOES ON TO SAY GOOGLE'S

15    MANUFACTURING PARTNER.  AND THEN EVEN IF YOU KEEP GOING THERE,

16    IT SAYS GOOGLE WAS ON THE LINE OR IT REQUIRED RECYCLING.

17         IN ORDER TO LET THIS CLAIM AS TO GOOGLE GO PAST THIS

18    STAGE, ONE OF TWO THINGS HAS TO HAPPEN.  WE EITHER HAVE TO

19    EXPAND THE STATUTE BEYOND WHAT IT SAYS --

20         THE COURT:  I DON'T GET TO DO THAT.  I HAVE A LOT OF

21    POWER, BUT IT'S NOT THAT BIG.

22         MR. LERNER:  OR WE HAVE TO FIND THERE HAS TO BE NEW

23    CASE LAW, BECAUSE THERE'S NO CASE THAT HAS COME ANYWHERE CLOSE

24    TO DOING THIS.

25         AND I WILL JUST ADD THAT THE RV CASE THAT WE CITED SAYS

```
 1        THAT EVEN BEING A PARTS MANUFACTURER IS NOT ENOUGH.  AND TO MY

 2        MIND, AND I'VE KEPT STRUGGLING WITH THIS, IF THAT'S TRUE, I

 3        CANNOT FIND A WAY THAT YOU COULD MAKE A LOGICAL LEAP TO MAKING

 4        THIS --

 5               THE COURT:  WELL, I AGREE WITH YOU ON THAT.  AND IT'S

 6        NOT AS THOUGH HUAWEI, IF FOUND LIABLE, COULDN'T PAY A FULL

 7        JUDGMENT, THESE ARE TWO MAMMOTH COMPANIES THAT WOULD HAVE THE

 8        WHEREWITHAL.

 9          AND NOT THAT THAT'S A REASON TO LET THE DEEP POCKETS STAY

10        IN, BUT I HEAR YOU ON THAT.  THE SONG-BEVERLY MAY ACTUALLY NEED

11        TO BE RE-PLED ANYWAY.

12          HOLD ON ONE SECOND.  EXCUSE ME.  I'M SORRY, MY 11:00

13        HEARING, I JUST HAD TO ATTEND TO THAT.

14          PUTTING ASIDE GOOGLE'S INTENTION THAT, BEING A

15        MANUFACTURER, IN THE OPPOSITION PAPERS, IT SEEMS TO HAVE BEEN

16        CLARIFIED THAT THE SONG-BEVERLY WILL ONLY BE BROUGHT ON BEHALF

17        OF PLAINTIFFS WHO PURCHASED IN CALIFORNIA.  THE PLEADING

18        ACTUALLY DOESN'T SAY THAT DOES IT.

19               MR. LERNER:  IT DOES NOT, AND I THINK EVERYBODY HAS

20        ALREADY SAID IT.

21               THE COURT:  SO WE JUST NEED TO CLEAN THAT UP.

22               MR. LERNER:  THERE'S A LOT WE ARE ALL LEARNING TODAY.

23               THE COURT:  OKAY.  SO I MEAN, A PARTICULAR PLAINTIFF

24        COULD FACTUALLY PLEAD I BOUGHT MY PHONE IN CALIFORNIA, AND THAT

25        COULD BE WRONG.  THAT'S FOR LATER.  BUT THERE WAS THE OTHER
```

```
 1      ISSUE OF --
 2                  MR. LERNER:  I CAN QUICKLY ADDRESS VERY QUICKLY.
 3                  THE COURT:  BECAUSE THAT MADE MY HEAD HURT.
 4                  MR. LERNER:  IT MAKES MINE HURT TOO.
 5          THE REQUIREMENT IS YOU NEED TO HAVE A CALIFORNIA PURCHASE.
 6      AND IN ORDER TO HAVE A CALIFORNIA PURCHASE, IT'S REALLY A
 7      QUESTION OF WHERE, UNDER THE STATUTE, TITLE PASSES.
 8          AND AS WE POINTED OUT AND BRIEFED, WHAT YOU HAVE THERE IS
 9      YOU NEED TO ADDRESS WHERE THE PRODUCT SHIPPED FROM.  AND THE
10      WAY THIS IS PLED BY THE TWO PLAINTIFFS AT ISSUE, IS ONLY THAT
11      THEY WERE IN CALIFORNIA, WHICH ISN'T ENOUGH.  AND THEY SAY,
12      WELL LOOK AT THE SEAGATE CASE, SEAGATE SAID THAT IF YOU PLED
13      THE ULTIMATE FACT, THAT IT WAS SHIPPED FROM CALIFORNIA, THEN
14      THAT WOULD BE ENOUGH.  BUT THEY DON'T EVEN DO THAT HERE.
15          NOW NORMALLY, TO BE STRAIGHTFORWARD, AS AN ISSUE OF
16      CREDIBILITY, I THINK WE WOULD HAVE LEFT THIS OUT BECAUSE THE
17      COURT IS BUSY AND IT IS A VERY TECHNICAL ISSUE, BUT WE ARE
18      HAVING PLAINTIFFS DROP OUT OF THIS CASE, AND I DON'T KNOW WHY.
19                  THE COURT:  SOMETIMES THEY JUST DON'T WANT TO BE
20       PLAINTIFFS ANYMORE.
21                  MR. LERNER:  COULD BE.  WE WILL FIGURE THAT OUT.
22          BUT PART OF IT IS BASED ON HOW COMPLEX THIS IS AND HOW
23      MANY PLAINTIFFS THERE ARE AND HOW MANY STATES, I SUSPECT, IS
24      THAT ACTUALLY PEOPLE ARE DOING WHAT THEY SHOULD, WHICH IS IF
25      FOLKS CAN'T ACTUALLY PLEAD THE ELEMENTS, THEY ARE DROPPING OUT.
```

1          THE COURT:  SURE.  THAT'S GOOD.

2          MR. LERNER:  SO THAT'S WHY THE ARGUMENT IS THERE.

3          THE COURT:  WELL, I TAKE THE POINT IT'S COMPLICATED,

4   I THINK IT'S AN ISSUE FOR SUMMARY JUDGEMENT.  I THINK THAT

5   ALLEGING THAT IT WAS PURCHASED IN CALIFORNIA IS ENOUGH, I DON'T

6   THINK THIS IS EXPENSIVE DISCOVERY.  I THINK WE'VE GOT -- WE ARE

7   LOOKING AT A CALIFORNIA CLASS, THAT'S UNDERSTOOD FOR

8   SONG-BEVERLY.

9          AND WHETHER -- I MEAN, THIS ISSUE MAY COME UP AGAIN ON

10  WHETHER THIS IS A PROPER CLASS BECAUSE OF THE INDIVIDUAL

11  DETERMINATIONS ON WHERE THE PHONES ARE PURCHASED AND WHERE

12  TITLE PASSES, BUT I'M GLAD TO BE ALERTED TO THE ISSUE.  AND I

13  APPRECIATE THAT BECAUSE I HAVE NEVER HEARD OF THIS BEFORE.  I'M

14  NOT WELCOMING HEARING ABOUT IT MUCH MORE BECAUSE IT'S REALLY

15  TECHNICAL, BUT DISCOVERY IS NOT HARD ON THIS, IS MY GUESS.

16         MR. LERNER:  IT'S NOT.  AND OBVIOUSLY, IF WE DEAL

17  WITH THE MANUFACTURER ISSUE, WE DON'T HAVE TO BURDEN YOU

18  WITH THAT.

19         THE COURT:  OKAY, I WANT TO WRAP THIS UP.  AND

20  CERTAINLY, I MEAN, I WILL ADDRESS ALL THE ISSUES, I DON'T MEAN

21  TO SAY I'M GOING TO JUST IGNORE THEM.

22         I THINK THAT PLAINTIFFS UNDERSTAND I'M GOING TO REQUIRE

23  THEM TO ALLEGE THE CLASS AS THEY BEST KNOW IT, AND OF COURSE

24  YOU ARE NEVER RESTRICTED IN WHAT YOU ACTUALLY SEEK IN

25  CERTIFICATION.

 1          AND ON THE PRESALE KNOWLEDGE, I'M GOING TO HAVE TO THINK

 2     ABOUT WHETHER I NEED THAT PLED MORE DIFFERENTLY OR NOT.  I'M

 3     NOT READY TO SAY WHAT I WANT TO DO THERE.  AND ON SAFETY

 4     HAZARD, I THINK WE'VE GOT THAT.

 5          YES, MS. BARNHART.

 6          MS. BARNHART:  JUST A COUPLE OF NOTES, YOUR HONOR.

 7          ON THE PRESALE KNOWLEDGE ISSUE, I DID WANT TO ADD THAT THE

 8     PLAINTIFFS STILL HAVE A LUMP PLEADING PROBLEM, A GROUP PLEADING

 9     PROBLEM.

10          THE COURT:  YEAH.

11          MS. BARNHART:  THEY HAVE REPLACED DEFENDANTS WITH

12     GOOGLE AND HUAWEI, WHICH DOESN'T QUITE HELP.  IT SORT OF IS THE

13     SAME SHORTHAND FOR, WE DON'T KNOW WHO DID IT, OR WE ARE NOT

14     GOING TO ATTEMPT TO PARSE OUT THE CONDUCT, WE ARE JUST GOING TO

15     ALLEGE TOGETHER.

16          AND THAT DOES MATTER FOR PURPOSES OF KNOWLEDGE IF CERTAIN

17     COMPLAINTS WERE DIRECTED TOWARDS ONE DEFENDANT AND NOT THE

18     OTHER, LUMPING THEM TOGETHER AS BUSINESS PARTNERS AND IMPUTING

19     LIABILITY OR KNOWLEDGE ON ONE OR THE OTHER BECAUSE OF THAT

20     RELATIONSHIP JUST ISN'T SUPPORTED BY THE CASE LAW, CERTAINLY

21     NOT ANY OF THE CASES THEY CITE IN THEIR OPPOSITION.  I JUST

22     WANTED TO RAISE THAT POINT AGAIN FOR THE COURT.

23          AND ON THE RE-PLEADING ISSUE, I JUST WANTED TO CLARIFY,

24     DOES THE COURT INTEND FOR THE PLAINTIFFS TO REPLEAD TO SAY

25     SIMPLY THAT THERE COULD BE A 50 STATE CLASS AND WE WILL REDUCE

```
 1      OR GROUP IT LATER, OR BECAUSE THEN --

 2              THE COURT:  I'M NOT GOING TO TELL THEM WHAT TO DO,

 3      I'M JUST GOING TO SAY I THINK IT'S REALLY CLEAR FROM THAT

 4      ARGUMENT THAT, AND I THINK I WOULD JUST STICK WITH THE WAY YOU

 5      BRIEFED IT, MS. BARNHART, THERE'S ACTUALLY NO NATIONWIDE CLASS

 6      PLED.  IT'S CLEARLY INTENDED THAT I CAN GLEAN THAT FROM THE

 7      TOTALITY OF THE PLEADING, BUT THAT'S NOT FAIR NOTICE.

 8          AND SO I JUST NEED IT PLED, IT CAN BE CONSISTENT WITH WHAT

 9      WE HEARD TODAY OR SOMETHING ELSE, I'M NOT HOLDING THE

10      PLAINTIFFS TO WHAT THEY SAID, IT'S JUST REALLY CLEAR THAT THEY

11      DO HAVE A PATH IN MIND AND IT NEEDS TO BE PLED THAT WAY.

12          SO AGAIN, I NEVER TELL ANYONE HOW THEY HAVE TO PLEAD IT.

13      I'M PROBABLY, YOU KNOW, THE SONG-BEVERLY NEEDS TO BE, I WILL

14      LOOK AT IT AGAIN, IT MAY NEED TO BE PLED CONSISTENT WITH THE

15      OPPOSITION BRIEF, AND I THINK IT'S PRETTY CLEAR EVERYONE KNOWS

16      WHAT THAT IS.  I'M PROBABLY GOING TO LET GOOGLE OUT ON

17      MANUFACTURER ISSUE, AND I MAY NOT ALLOW FURTHER PLEADING ON

18      THAT.  SAFETY HAZARD, I'M PROBABLY GOING TO LET GO AT THIS

19      POINT.  BUT THE PRESALE KNOWLEDGE WHICH IS, TO ME, CENTRAL TO

20      THE CASE, IS ONE I'M STRUGGLING WITH.  AND I DON'T KNOW HOW I'M

21      GOING TO RULE ON THAT.

22              MS. BARNHART:  OKAY.  UNDERSTOOD, YOUR HONOR.

23          IF THEY DO COME BACK AND ALL THEY DO IS REPLEAD ALL CLAIMS

24      ON BEHALF OF THE NATIONWIDE CLASS, I DO THINK WE ARE RIGHT BACK

25      WHERE WE ARE TODAY.  AND IT'S FURTHER KICKING THE CAN DOWN THE
```

```
1    ROAD.

2              THE COURT:  I WOULD BE SHOCKED IF THAT HAPPENS

3    BECAUSE THAT'S NOT THE REPRESENTATION I HAVE, OR AT LEAST IT

4    WILL BE DESCRIBED AS AND SUBCLASSES FOR SIMILAR -- FOR STATES

5    WHOSE LAWS ARE MATERIALLY SIMILAR, WHICH YOU MIGHT NOT FIND

6    MUCH OF A MODIFICATION, AND IT WOULDN'T TELL US WHICH STATES

7    THOSE ARE, BUT THEN MAYBE THAT'S WHEN WE DO THE HARD WORK ON

8    THIS.

9              MR. JOHNS:  YOUR HONOR, IF I COULD QUICKLY BE HEARD

10   ON A COUPLE OF POINTS RELATED TO KNOWLEDGE.

11        AND I KNOW MR. POLK IS ANXIOUS TO ADDRESS SOME OF THE

12   SONG-BEVERLY ISSUES QUICKLY.

13        BUT ALL I HAVE BEEN HEARING ARE FACTUAL RELATED ARGUMENTS

14   CONCERNING THE KNOWLEDGE ALLEGATIONS.  AND I WOULD ENCOURAGE

15   YOUR HONOR TO LOOK AT PARAGRAPH 29 AND PARAGRAPH 36.  THOSE ARE

16   ALLEGATIONS RELATED TO GORBATCHEV AND MARK COCHELLO,

17   RESPECTIVELY, AND THEY DESCRIBE HOW BOTH OF THOSE PLAINTIFFS

18   INITIALLY HAD TEMPORARY BOOTLOOPS, RANDOM SHUTDOWNS, AND

19   ULTIMATELY IT MANIFESTED IN A PERMANENT FATAL BOOTLOOP A MONTH

20   OR TWO MONTHS LATER.

21             THE COURT:  BUT THAT'S NOT ENOUGH.

22        IF A COMPLAINT SAYS I'M HAVING A TEMPORARY PROBLEM, HOW

23   DOES THAT PUT GOOGLE AND HUAWEI ON NOTICE THAT IT'S GOING TO

24   GROW INTO SOMETHING PERMANENT UNLESS THE CUSTOMER CALLS BACK

25   AND SAYS NO, IT'S JUST DEAD?
```

1          MR. JOHNS:  BECAUSE IT'S A SYMPTOM OF SOMETHING

2     THAT'S TO COME.

3          THE COURT:  IS IT?

4          MR. JOHNS:  THAT'S WHAT WE ALLEGE.

5          AND I WOULD ALSO ENCOURAGE YOU TO LOOK AT PAGE 24 OF THE

6     COMPLAINT, THERE'S A COMPLAINT DATED NOVEMBER 1ST, 2015, IT'S

7     THE SECOND ONE THAT WE ALLEGE.  AND THIS IS SOMEONE WHO

8     SPECIFICALLY REFERENCED CALLING GOOGLE WITH THE BOOTLOOP

9     PROBLEM, AND GOOGLE APPARENTLY THOUGHT IT WAS SIGNIFICANT

10    ENOUGH THAT THEY GAVE THE PERSON A NEW PHONE.

11         NOW THAT MIGHT HAVE HELPED THAT PERSON ALONG, BUT AS FAR

12    AS PLEADING KNOWLEDGE, THAT SHOWS THAT IN THE FALL OF 2015,

13    THERE WERE PEOPLE VOCALLY EXPRESSING THEIR CONCERNS ABOUT THIS

14    AND ACTUALLY CALLING GOOGLE IN THAT EXAMPLE.

15         THE COURT:  SO ON THE PRIOR POINT, YOU NEED A FACTUAL

16    ALLEGATION THAT TELLS ME THAT NOTICE OF BATTERY DRAIN IS

17    INDICATIVE OF BATTERY DEATH.  I DON'T KNOW THAT.  I MEAN, I

18    HAVE DAYS WHEN MY PHONE, WHICH IS NOT THIS PHONE, WHEN MY PHONE

19    IS EATING UP BATTERY AND I DON'T KNOW WHY, AND THE NEXT TWO

20    DAYS IT'S DOING JUST GREAT.

21         AGAIN, IF YOU CAN CONNECT THOSE DOTS IN A PLEADING, THAT'S

22    GREAT, BUT I DON'T KNOW THAT.  THAT'S LIKE SAYING IF I CALL MY

23    DOCTOR AND SAID I SNEEZED ONCE, HE'S GOING TO PUT ME IN

24    INTENSIVE CARE BECAUSE I COULD HAVE PNEUMONIA.  MAYBE, MAYBE A

25    SNEEZE IS ALWAYS THE PREDICATE TO PNEUMONIA, BUT HEALTH CARE IS

1    EXPENSIVE ENOUGH.

2            MR. JOHNS:  WELL RESPECTFULLY, YOUR HONOR, WE DO

3    ATTEMPT TO DO THAT IN PARAGRAPH 100 AND 113.

4            THE COURT:  I WILL LOOK AT BOTH OF THEM.

5            MR. JOHNS:  AND I KNOW I'VE SAID THIS BEFORE, BUT THE

6    FACT THAT THEY DON'T EVEN CHALLENGE 12 OF THESE COMPLAINTS IN

7    THE CHART THEY MADE, INCLUDING THE FIRST THREE IN THE BEGINNING

8    ONE THAT'S HAPPENED, WE THINK IS SIGNIFICANT.  I WON'T BELABOR

9    THAT.

10           THE COURT:  OKAY.

11           MR. JOHNS:  THE OTHER DISTINCTION YOU WERE TALKING

12   ABOUT SOME OF THESE OTHER CASES WHEN YOU WERE TALKING WITH

13   MR. LERNER ABOUT KNOWLEDGE AND ABOUT HOW SOMETIMES THEY, OVER A

14   LONG PERIOD OF TIME, WHERE THE COMPLAINTS WERE MADE.  BUT THE

15   OTHER THING THAT'S, I THINK, A DISTINGUISHING POINT IN THOSE

16   CASES, IS A LOT OF THOSE THERE'S NO EVIDENCE THE DEFENDANT

17   ACTUALLY RECEIVED THESE COMPLAINTS.  WHEREAS AGAIN, IN THIS

18   COMPLAINT THAT I JUST WAS TELLING YOU ABOUT WHERE SOMEONE

19   CONTACTED GOOGLE, WE'VE ALSO ALLEGED THAT GOOGLE WAS

20   ENCOURAGING PEOPLE TO CONTACT THEM AND MONITOR THESE THINGS.

21           THE COURT:  SURE.  I WOULD ACCEPT THE INFERENCE AND

22   THE ALLEGATIONS THAT THE PARTIES WERE AWARE OF THE COMPLAINTS

23   YOU IDENTIFY.  I DON'T THINK THAT'S REALLY THE ISSUE.  THE

24   QUESTION IS EVEN BEING AWARE OF ALL OF THOSE, IS THAT ENOUGH

25   UNDER THE LAW TO INFER KNOWLEDGE.  AND I'M NOT SURE YET.

```
 1          MR. JOHNS:  AND THE FINAL POINT I WOULD LIKE TO MAKE

 2     IS IN PARAGRAPH 3, WE DO ALLEGE THAT TENS OF THOUSANDS OF

 3     PEOPLE EXPERIENCE THE PROBLEM.

 4          THE COURT:  OKAY.  EXPERIENCE THE PROBLEM BEFORE THE

 5     PURCHASES AT ISSUE IN THE CASE?  I MEAN, YOU KNOW.

 6          MR. JOHNS:  IT DOESN'T SPECIFY THE TIME.

 7          THE COURT:  IT DOESN'T SPECIFY.  THAT'S WHY AN

 8     ALLEGATION LIKE THAT IS NOT VERY HELPFUL.

 9          ALL RIGHT.  I NEED TO WRAP THIS UP.  I WANT TO THANK YOU.

10          LET ME ASK A QUESTION.  OBVIOUSLY IT TOOK ME A LONG TIME

11     TO GET THE LAST ORDER OUT.  I CAN USE WHAT I HAD, BUT IT'S

12     GOING TO TAKE ME SOME TIME.  BUT THE REAL QUESTION FOR YOU IS

13     THERE WILL -- I AM GOING TO GIVE YOU LEAVE TO AMEND ON SOME, I

14     MAY CUT SOME THINGS OUT, BUT FROM THE TIME YOU RECEIVE MY

15     ORDER, HOW MUCH TIME WOULD YOU LIKE FOR AMENDMENT?

16          MR. POLK:  WE SHOULD BE ABLE TO DO IT IN, I WOULD SAY

17     30 DAYS.

18          THE COURT:  30 DAYS.

19          MR. POLK:  AT THE OUTER LIMIT.

20          AND YOUR HONOR, JUST, I KNOW YOU HAVE TO GO, GOOGLE WAS

21     NOT OUT OF THE CASE IF YOUR HONOR DETERMINES THEY ARE NOT A

22     MANUFACTURER.

23          THE COURT:  OH, I UNDERSTAND THAT.

24          MR. POLK:  OKAY.  ALL RIGHT.

25          THE COURT:  NO, NO, THAT'S JUST ON -- ABSOLUTELY THEY
```

```
1        ARE NOT.  THAT'S A SONG-BEVERLY ISSUE.

2               MR. POLK:  NOT EVEN UNDER SONG-BEVERLY IS MY POINT,

3        BECAUSE IT APPLIES TO SELLERS AS WELL, AND THEY WERE A SELLER

4        AS TO GORBATCHEV.  AND I BELIEVE THAT'S BRIEFED.  THAT'S CIVIL

5        CODE SECTION 1792.

6               MR. LERNER:  I WON'T REPEAT ALL OF OUR PAPERS ON IT

7        TO SORT IT OUT, BUT AS TO THE PLAINTIFFS THAT WERE NOT

8        PURCHASERS FROM US, YOU HAVE THE MANUFACTURING ISSUE.

9               THE COURT:  RIGHT.

10              MR. POLK:  THEY ARE NOT CONTESTING.

11              THE COURT:  THEY ARE NOT CONTESTING THAT, SURE.  I

12       APPRECIATE THAT.

13              MR. POLK:  THAT'S ALL I WAS POINTING OUT.

14          AND THERE'S A CITATION ERROR THAT HUAWEI POINTED OUT, AND

15       I JUST -- I THOUGHT IT WOULD BE HELPFUL FOR YOU TO CLARIFY

16       THAT.

17          AND THAT'S ON THE NEW YORK WARRANTY ARGUMENT.  THAT WAS

18       JUST A CITE CHECKING ERROR.  THE CITE ATTRIBUTED TO THE DONALD

19       V. SHINN FU CASE WAS MEANT TO CITE TO NUIJENS V. NOVY, AND

20       THAT'S 144 MISC.2D, 453, PIN SITE 456.

21          YOU KNOW, I THINK THAT THE PRINCIPLE IN BOTH CASES IS

22       OUTLINED IN THE CPC CASE, SO IF YOU LOOK AT THAT, WHICH IS

23       CITED, YOU WILL GET THERE.

24              THE COURT:  OKAY.  I APPRECIATE THAT.

25              WELL, YOU'VE ALL PUT A LOT OF WORK IN THIS.  LET ME ASK
```

```
1    YOU IN A CASE LIKE THIS, THE ATTORNEY BILLS RUN UP FAST, THE

2    COMPANIES ARE PUT TO GREAT EXPENSE AND DIVERT THEIR ENERGIES

3    FROM THINGS THAT WERE ON THEIR TO-DO LIST.  WHAT PROGRESS HAVE

4    YOU MADE ON ATTEMPTS TO SETTLE THE CASE?

5          MR. LERNER:  SO I WILL ADDRESS THAT QUICKLY, WITH A

6    DEFINITE EFFORT OBVIOUSLY NOT TO DISCLOSE ANYTHING, AND I WILL

7    INVITE MY COLLEAGUE, MR. POLK, TO CORRECT ME IF I GET ANYTHING

8    WRONG.

9        THE PARTIES, AS YOUR HONOR KNOWS, HAD A MEDIATION.  AS

10   OFTEN HAPPENS, THEY'VE KEPT GOING.  THE MEDIATOR THAT WE USED

11   IS WELL KNOWN, AND TO BE STRAIGHTFORWARD, GOOD AT HIS JOB AND

12   THEREFORE, HE'S KEPT AFTER US.  I WON'T DESCRIBE THE

13   INFORMATION THAT'S BEING EXCHANGED.

14         THE COURT:  NO, NO.

15         MR. LERNER:  BUT THE PARTIES ARE EXCHANGING

16   INFORMATION, AND INDEED THAT HAPPENED VERY, VERY RECENTLY.  I

17   THINK YESTERDAY OR LAST WEEK THERE WAS SOME EXCHANGE.  AND SO I

18   THINK WE'RE TRYING TO MOVE FORWARD ON THAT FRONT.

19       AND I, AGAIN, WON'T SPEAK FOR MR. POLK, BUT THE

20   UNDERSTANDING, AT LEAST MINE IS, THE PRODUCTION OF CERTAIN

21   INFORMATION BY THE DEFENDANTS WOULD RESULT IN THE RESPONSE FROM

22   THE PLAINTIFFS.  I THINK WE UNDERSTOOD THAT WOULD BE RELATIVELY

23   EFFICIENT, AND I WILL LET MR. POLK ADDRESS THAT.

24         THE COURT:  ALL RIGHT.

25         MR. POLK?
```

1          MR. POLK:  YEAH.  THAT'S RIGHT.  THAT'S EXACTLY WHERE

2     WE ARE.  WE ASKED FOR CERTAIN INFORMATION, IT'S COMING IN, AND

3     WE WILL RESPOND IN DUE COURSE.

4          THE COURT:  ALL RIGHT.  SO ACTIVE MEDIATION IS UNDER

5     WAY; IS THAT FAIR?

6          MR. LERNER:  I THINK THAT'S FAIR.

7          THE COURT:  OKAY.  BECAUSE IT RAISES THE INTERESTING

8     ISSUE FOR ME AT THIS POINT, IF THE PARTIES FELT THAT THERE WAS

9     SUFFICIENT PROGRESS GRANTING THE RELIEF REQUESTED BY THE

10    DEFENDANTS THAT THERE BE NO NATIONWIDE CLASS, COULD ACTUALLY

11    GET IN THE WAY OF THE KIND OF SETTLEMENT YOU MIGHT BE LOOKING

12    FOR.

13         SO I JUST WANT TO BE SURE THAT YOU WANT TO PROCEED ON BOTH

14    FRONTS.

15         MS. BARNHART:  YES.

16         MR. LERNER:  YES, YOUR HONOR.

17         AND I DEFINITELY UNDERSTAND THE CONCERN, I THINK IT'S COME

18    UP.  AND I WANTED TO ACTUALLY ANSWER ONE QUESTION YOU ASKED AT

19    THE VERY BEGINNING, WHICH IS HOW DOES ALL OF THIS MOVE THE BALL

20    FORWARD.

21         AND I DO THINK A RULING THAT CLARIFIES THINGS IS VERY

22    IMPORTANT FOR THE PARTIES TO NOT ONLY BE ABLE TO ADDRESS THE

23    COURT, BUT WITH RESPECT TO THE MEDIATOR, IF EVERYTHING IS UP IN

24    THE AIR, WE JUST DON'T KNOW.  AND SO EITHER WAY, I THINK IT'S

25    BETTER FOR THE PARTIES, BUT I DEFINITELY UNDERSTAND AND

1      APPRECIATE THE CONCERN.

2              THE COURT:  WELL, THANK YOU ALL.  I SAID A HARD STOP

3      AT 11, AND YOU HELPED ME OUT A LOT.  I APPRECIATE THAT.  YOU

4      WILL GET MY ORDER AT SOME POINT.

5              MR. POLK:  THANK YOU, YOUR HONOR.

6              MS. BARNHART:  THANK YOU.

7          (THE PROCEEDINGS WERE CONCLUDED AT 10:59 A.M.)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3

4                    **<u>CERTIFICATE OF REPORTER</u>**

5

6

7

8            I, THE UNDERSIGNED OFFICIAL COURT

9    REPORTER OF THE UNITED STATES DISTRICT COURT FOR

10   THE NORTHERN DISTRICT OF CALIFORNIA, 280 SOUTH

11   FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

12   CERTIFY:

13            THAT THE FOREGOING TRANSCRIPT,

14   CERTIFICATE INCLUSIVE, CONSTITUTES A TRUE, FULL AND

15   CORRECT TRANSCRIPT OF MY SHORTHAND NOTES TAKEN AS

16   SUCH OFFICIAL COURT REPORTER OF THE PROCEEDINGS

17   HEREINBEFORE ENTITLED AND REDUCED BY COMPUTER-AIDED

18   TRANSCRIPTION TO THE BEST OF MY ABILITY.

19

20

21

22

23

24   _____

25   SUMMER A. FISHER, CSR, CRR
     CERTIFICATE NUMBER 13185          DATED: 10/23/18