Daniel C. Girard (State Bar No. 114826)
Jordan Elias (State Bar No. 228731)
Adam E. Polk (State Bar No. 273000)
Trevor T. Tan (State Bar No. 281045)
**GIRARD SHARP LLP**
601 California Street, 14th Floor
San Francisco, California 94108
Tel: (415) 981-4800
*dgirard@girardsharp.com*
*jelias@girardsharp.com*
*apolk@girardsharp.com*
*ttan@girardsharp.com*

Benjamin F. Johns (*pro hac vice*)
Andrew W. Ferich (*pro hac vice*)
Zachary P. Beatty (*pro hac vice*)
Beena M. McDonald (*pro hac vice*)
**CHIMICLES SCHWARTZ KRINER**
 **& DONALDSON-SMITH LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633
*bfj@chimicles.com*
*awf@chimicles.com*
*zpb@chimicles.com*
*Interim Class Counsel*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| IN RE NEXUS 6P PRODUCTS LIABILITY LITIGATION | Case No. 5:17-cv-02185-BLF |
|---|---|
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, AND MEMORANDUM OF POINTS AND AUTHORITIES IN** |
| | Date: May 2, 2019<br>Time: 1:30 p.m.<br>Courtroom: 3, 5th Floor<br>Judge: Hon. Beth Labson Freeman |

**REDACTED - FILED UNDER SEAL**

# TABLE OF CONTENTS

I.     INTRODUCTION ................................................................................................................1

II.    STATEMENT OF ISSUES TO BE DECIDED ...............................................................2

III.   BACKGROUND ...............................................................................................................2

       A.    Plaintiffs' Allegations .............................................................................................2

       B.    The Parties Litigated Actively for a Year-and-a-Half Before Agreeing to
             Resolve the Case ....................................................................................................2

IV.    SUMMARY OF SETTLEMENT TERMS ......................................................................5

       A.    The Settlement Class ...............................................................................................5

       B.    Settlement Consideration .........................................................................................5

       C.    Distribution of Settlement Fund .............................................................................6

       D.    Class Notice ............................................................................................................9

       E.    CAFA Notice ........................................................................................................10

       F.    Release of Claims ..................................................................................................10

       G.    Attorneys' Fees and Expenses, and Service Awards for the Class
             Representatives ......................................................................................................10

       H.    The Settlement Administrator ...............................................................................11

V.     ARGUMENT ..................................................................................................................11

       A.    The 2018 Amendments to Rule 23(e) ...................................................................11

       B.    The Settlement Is Fair, Reasonable, and Adequate .............................................11

             1.    The Proposed Settlement Is the Product of Arm's Length Negotiations
                   Among Experienced Counsel. ..................................................................12

             2.    The Settlement Treats All Class Members Equitably. ..............................14

             3.    The Relief Under the Proposed Settlement Is Adequate. ..........................15

       C.    The Court Will Be Able to Certify the Class For Purposes of Settlement. .........18

             1.    The Class Members Are Too Numerous to Be Joined. ............................18

             2.    There Are Common Questions of Law and Fact. .....................................19

             3.    Plaintiffs' Claims Are Typical of the Class. ...........................................19

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:17-cv-02185-BLF

4.     Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Class. ....................................................................19

    a.     Plaintiffs Have No Conflicts of Interest and Have Diligently Pursued the Action on Behalf of the Other Class Members. ...............20

    b.     Interim Class Counsel Are Well Qualified. .........................................20

5.     The Requirements of Rule 23(b)(3) Are Met. .................................................20

    a.     Common Issues of Law and Fact Predominate for Settlement Purposes. ..............................................................................................21

    b.     A Class Action Is a Superior Means of Resolving This Controversy. .........................................................................................22

D.    The Proposed Class Notice and Plan for Dissemination Are Reasonable and Should Be Approved. ..................................................................................................22

VI.    CONCLUSION ..............................................................................................................23

**TABLE OF AUTHORITIES**

**Cases**

*Aguirre v. DirecTV, LLC*
   2017 WL 6888493 (C.D. Cal. Oct. 6, 2017) ...................................................................18

*Allapattah Servs., Inc. v. Exxon Corp.*
   188 F.R.D. 667 (S.D. Fla. 1999)
   *aff'd*, 333 F.3d 1248 (11th Cir. 2003), *and*
   *aff'd*, 545 U.S. 546 (2005).............................................................................................21

*Allen v. Bedolla*
   787 F.3d 1218 (9th Cir. 2015).........................................................................................11

*Amchem Prods. v. Windsor*
   521 U.S. 591 (1997) ........................................................................................................20

*Anderson v. Samsung Telecommunications Am., LLC*
   2014 WL 11430910 (C.D. Cal. Oct. 20, 2014) ........................................................16, 17

*Asghari v. Volkswagen Grp. of Am., Inc.*
   2015 WL 12732462 (C.D. Cal. May 29, 2015)...............................................................22

*Bisaccia* v. *Revel Systems Inc.*
   2019 WL 861425 (N.D. Cal. Feb. 22, 2019)...................................................................20

*Burden v. SelectQuote Ins. Servs.*
   2013 WL 1190634 (N.D. Cal. Mar. 21, 2013) ................................................................12

*Butler v. Sears, Roebuck & Co.*
   727 F.3d 796 (7th Cir. 2013)...........................................................................................22

*Date v. Sony Elecs., Inc.*
   2013 WL 3945981 (E.D. Mich. July 31, 2013) ................................................................9

*Davidson v. Apple, Inc.*
   2018 WL 2325426 (N.D. Cal. May 7, 2018) ..................................................................17

*Ebarle v. Lifelock, Inc.*
   2016 WL 234364 (N.D. Cal. Jan. 20, 2016) ...................................................................18

*Federal Ins. Co. v. Caldera Med., Inc.*
   2016 WL 5921245 (C.D. Cal. Jan. 25, 2016)..................................................................13

*Fitzhenry-Russell v. Keurig Dr. Pepper, Inc.*
   No. 5:17-cv-00564, (N.D. Cal. Jan. 10, 2019) ...............................................................15

*Free Range Content, Inc. v. Google, LLC*
  2019 U.S. Dist. LEXIS 47380 (N.D. Cal. Mar. 21, 2019) ............................................15

*Galitski v. Samsung Telecommunications Am., LLC*
  2015 WL 5319802 (N.D. Tex. Sept. 11, 2015) ...........................................................17

*Gascho v. Global Fitness Holdings, LLC*
  2014 WL 1350509 (S.D. Ohio Apr. 4, 2014) ...............................................................9

*Gold v. Lumber Liquidators, Inc.*
  323 F.R.D. 280 (N.D. Cal. 2017) ........................................................................19, 21

*Haag v. Hyundai Motor Am.*
  2019 WL 1029002 (W.D.N.Y. Mar. 5, 2019) .............................................................17

*Hanlon v. Chrysler Corp.*
  150 F.3d 1011 (9th Cir. 1998) ............................................................................19, 22

*Hays v. Eaton Grp. Attorneys, LLC*
  2019 WL 427331 (M.D. La. Feb. 4, 2019) ...............................................................12

*Hendricks v. StarKist Co.*
  2015 WL 4498083 (N.D. Cal. July 23, 2015) .............................................................16

*Horvath v. LG Electronics MobileComm U.S.A., Inc.*
  Case No. 3:11-cv-01576-H-RBB (S.D. Cal. Jan. 14, 2014)...........................................16

*In re American Express Financial Advisors Litigation*
  No. 04 Civ. 1773 (DAB) (S.D.N.Y.)..........................................................................9

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods. Liab. Litig.*
  2019 WL 536661 (N.D. Cal. Feb. 11, 2019)..........................................................11, 19

*In re Haier Freezer Consumer Litig.*
  2013 WL 2237890 (N.D. Cal. May 21, 2013) .............................................................18

*In re Lidoderm Antitrust Litig.*
  No. 3:14-md-02521-WHO (N.D. Cal. Feb. 21, 2017) ...................................................20

*In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. & Sales Practice Litig.*
  2017 WL 2911681 (E.D. Va. July 7, 2017) ...............................................................21

*In re Mego Fin. Corp. Sec. Litig.*
  213 F.3d 454 (9th Cir. 2000)................................................................................18

*In re MyFord Touch Consumer Litig.*
  No. 13-cv-03072-EMC (N.D. Cal. Mar. 28, 2019) .......................................................14

iv

*In re Oracle Sec. Litig.*
   1994 WL 502054 (N.D. Cal. June 16, 1994) ...............................................................14

*In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*
   2019 WL 359981 (E.D.N.Y. Jan. 28, 2019).................................................................11

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*
   2012 WL 7802852 (C.D. Cal. Dec. 28, 2012)............................................................22

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*
   2016 WL 3648478 (N.D. Cal. July 7, 2016) ..............................................................15

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*
   2016 WL 6778406 (N.D. Cal. Nov. 16, 2016).............................................................14

*In re: Sony VAIO Computer Notebook Trackpad Litigation*
   Case No. 3:09-cv-02109, (S.D. Cal. Aug. 7, 2017)....................................................15

*J.L. v. Cissna*
   2019 WL 415579 (N.D. Cal. Feb. 1, 2019).................................................................19

*K.H. v. Secretary of Dep't of Homeland Sec.*
   2018 WL 6606248 (N.D. Cal. Dec. 17, 2018) ............................................................10

*Kacsuta v. Lenovo (United States) Inc.*
   2014 WL 12585783 (C.D. Cal. Sept. 15, 2014)...............................................13, 18, 21

*Kulesa v. PC Cleaner, Inc.*
   2014 WL 12581769 (C.D. Cal. Feb. 10, 2014) ..........................................................13

*LaGarde v. Support.com, Inc.*
   2012 WL 13034899 (N.D. Cal. Nov. 2, 2012) ...........................................................13

*Linney v. Cellular Alaska P'ship*
   151 F.3d 1234 (9th Cir. 1998)...........................................................................13, 16

*Lockabey et al. v. Am. Honda Motor Co., et al.*
   No. 37-100-00087755-CBU-BT-CTL (Cal. Super.) ........................................................9

*Lynch v. Motorola Mobility LLC d/b/a Motorola, et al.*
   No. 1:16-cv-04524 (N.D. Ill.)......................................................................................9

*Mazza v. American Honda Motor Co.*
   666 F.3d 581 (9th Cir. 2012)....................................................................................17

*Mendez v. C-Two Grp., Inc.*
   2017 WL 1133371 (N.D. Cal. Mar. 27, 2017) ............................................................12

*Mendoza v. Hyundai Motor Co.*
  2017 WL 342059 (N.D. Cal. Jan. 23, 2017) ...................................................10, 15

*Mergens v. Sloan Valve Co.*
  2017 WL 9486153 (C.D. Cal. Sept. 18, 2017)...................................................20

*Mullins v. Premier Nutrition Corp.*
  2016 WL 1535057 (N.D. Cal. Apr. 15, 2016).....................................................22

*Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*
  221 F.R.D. 523 (C.D. Cal. 2004) .......................................................................13

*One Unnamed Deputy Dist. Attorney v. Cty. of Los Angeles*
  2011 WL 13128375 (C.D. Cal. Jan. 24, 2011)..................................................22

*Parsons v. Ryan*
  754 F.3d 657 (9th Cir. 2014).............................................................................19

*Pederson v. Airport Terminal Servs.*
  2018 WL 2138457 (C.D. Cal. Apr. 5, 2018).....................................................17

*Pulaski & Middleman, LLC v. Google, Inc.*
  802 F.3d 979 (9th Cir. 2015).............................................................................22

*Rodriguez v. Hayes*
  591 F.3d 1105 (9th Cir. 2010)...........................................................................19

*Spann v. J.C. Penney Corp.*
  314 F.R.D. 312 (C.D. Cal. 2016) ......................................................................16

*Staton v. Boeing Co.*
  327 F.3d 938 (9th Cir. 2003).............................................................................20

*Swinton v. SquareTrade, Inc.*
  2019 WL 617791 (S.D. Iowa Feb. 14, 2019) ...................................................11, 12, 18

*Tyson Foods, Inc. v. Bouaphakeo*
  136 S. Ct. 1036 (2016) ......................................................................................21

*Van Lith v. iHeartMedia + Entm't, Inc.*
  2017 WL 1064662 (E.D. Cal. Mar. 20, 2017)...................................................14

*Wahl v. Yahoo! INC.*
  2018 WL 6002323 (N.D. Cal. Nov. 15, 2018)...................................................23

*Wal-Mart Stores, Inc. v. Dukes*
  564 U.S. 338 (2011) ..........................................................................................19

*Walsh v. CorePower Yoga LLC*
   2017 WL 589199 (N.D. Cal. Feb. 14, 2017)..................................................................23

*Warner v. Toyota Motor Sales, U.S.A., Inc.*
   2016 WL 8578913 (C.D. Cal. Dec. 2, 2016)..................................................................22

*Wolin v. Jaguar Land Rover North Am., LLC*
   617 F.3d 1168 (9th Cir. 2010)......................................................................................22

**Statutes**

28 U.S.C. § 1715 ..................................................................................................iv, 10

**Rules**

Fed. R. Civ. P. 23 ..................................................................................................passim

1

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on May 2, 2019 at 1:30 p.m., or as soon thereafter as the matter may be heard by the Honorable Beth Labson Freeman of the United States District Court for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, California 95113, Plaintiffs will and hereby do move for entry of the proposed Preliminary Approval Order, and request that the Court set the following schedule for settlement proceedings:

| Event | Proposed Deadline |
|---|---|
| Class Action Fairness Act notice to state and federal officials, under 28 U.S.C. § 1715 | Within 10 days after filing of this motion |
| Notice campaign to begin, including website, email notice, and mailing short form notice | No later than 35 days after entry of preliminary approval order |
| Notice to be completed (the "Notice Date") | No later than 60 days after entry of preliminary approval order |
| Plaintiffs to move for attorneys' fees, expenses, and service awards | At least 35 days before the deadline for submitting objections |
| Deadline for the submission of objections and requests for exclusion | 60 days after the Notice Date |
| Deadline to File Claim (the "Claims Deadline") | 60 days after the Notice Date |
| Date on which settlement funds will be distributed to claimants (the "Distribution Date") | 30 days after the Effective Date |
| Plaintiffs to move for final approval of the settlement | At least 35 days before the final approval hearing |
| Fairness hearing | At least 35 days after the objection and exclusion deadline |

The Motion is based on this Notice of Motion, the incorporated memorandum of points and authorities, the Declaration of Daniel C. Girard and Benjamin F. Johns ("Pltf. Decl.") filed herewith, the record in this action, the argument of counsel, and any other matters the Court may consider.

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Plaintiffs seek preliminary approval of a $9,750,000 non-reversionary cash settlement that will resolve this multistate litigation and provide substantial compensation to consumers who purchased a Nexus 6P smartphone. The settlement was negotiated with an eye towards the Northern District's Procedural Guidance for Class Action Settlements ("Guidelines"),[1] and meets all the criteria for preliminary approval under Rule 23 of the Federal Rules of Civil Procedure. The settlement was reached in this nearly two-year-old case following an initial unsuccessful mediation and two rounds of briefing and argument on motions to dismiss. The parties developed a thorough understanding of the strengths and weaknesses of the case and conducted sufficient discovery to evaluate the weight of proof supporting the claims and defenses.

All Nexus 6P purchasers within the United States are eligible to participate. Class members can claim a share of the settlement fund by filing online or by mail. The plan of allocation allocates greater compensation to class members who allegedly experienced "bootloop" (when a Nexus 6P allegedly begins randomly rebooting, and in some instances fails permanently in an endless bootloop cycle, where the phone constantly reboots without ever advancing to the home screen, and in some instances, may stop booting altogether) or "battery drain" (when a Nexus 6P allegedly has a noticeable decrease in battery life, or shuts off suddenly even when its battery life icon shows that it is charged), while providing a more modest recovery to the significant group of consumers who own a Nexus 6P but have already been made whole through warranty replacements or never experienced either alleged condition and in many cases no longer use the phone (released in October 2015). Funds not otherwise claimed will be applied to pay insurance deductibles paid by class members who experienced the alleged product issues. Given typical participation rates in class actions, Class Counsel[2] believe the fund will be adequate to pay the maximum amounts allowable under the plan of allocation to all class members who make the minimal effort needed to participate.

---

[1] https://www.cand.uscourts.gov/ClassActionSettlementGuidance.

[2] Unless otherwise noted, capitalized terms have the meaning ascribed to them in the Settlement Agreement.

Continued litigation carried considerable risk of a lesser recovery or none at all. Defendants Huawei Device USA, Inc. and Google LLC vigorously deny liability. To prevail at trial, Plaintiffs would have had to survive Defendants' pending motions to dismiss, survive Defendants' future motions for summary judgment, win a motion to certify a multistate class, and overcome numerous defenses, including choice of law issues and Defendants' argument that they lacked sufficient knowledge to give rise to a duty to disclose. Even if Plaintiffs were to have prevailed at trial, fairly allocating a trial judgment would have required some form of claims procedure to ensure adequate compensation for class members who suffered the most allegedly debilitating product issues, in contrast to individuals who used the phone throughout its useful life without incident. Through the settlement, class members have the opportunity to achieve a certain recovery, and have the benefit of a consumer-friendly procedure with support from class counsel and an experienced claims administrator. The settlement is a win for consumers and merits preliminary approval.

## II.   STATEMENT OF ISSUES TO BE DECIDED

Should the Court pursuant to Rule 23(e)(1)(B) authorize notice to the proposed class and schedule further settlement proceedings?

## III.   BACKGROUND

### A.   Plaintiffs' Allegations

This action involves allegations that Defendants knowingly produced, marketed, and sold a defective smartphone and that the defect prevented consumers from using the device as intended. According to the operative Second Amended Complaint (SAC), Huawei and Google entered into a joint venture agreement to produce the Nexus 6P and collaborated on designing, manufacturing, producing, marketing, and selling the phones. ECF No. 117 at ¶ 2. Plaintiffs alleged that the Nexus 6P is defective and that Defendants knew of the defect before selling the phones to Plaintiffs and other class members. *Id*. at ¶¶ 85-100. The alleged defect results in either or both bootloop and battery drain. *Id*. at ¶ 113.

### B.   The Parties Litigated Actively for a Year-and-a-Half Before Agreeing to Resolve the Case

On May 23, 2017, Plaintiffs filed a Consolidated Amended Complaint (CAC) against Defendants. ECF No. 28. The filing of the CAC followed the consolidation of two cases:

*Makcharoenwoodhi et al. v. Huawei Techs. USA, Inc. et al.*, No. 5:17-cv-2185-BLF (N.D. Cal. filed Apr. 19, 2017); and *Christensen v. Huawei Device U.S.A. Inc. et al.*, No. 5:17-cv-02336-BLF (N.D. Cal. filed Apr. 25, 2017). On June 7, the Court appointed Chimicles Schwartz Kriner & Donaldson-Smith LLP and Girard Sharp LLP as interim class counsel. ECF No. 34.

On June 30, Huawei and Google moved to dismiss the CAC and strike the class allegations. ECF Nos. 38, 39. Huawei also moved to dismiss Plaintiffs' claims for lack of personal jurisdiction (ECF No. 38 at 6-8), and Defendants jointly moved to stay discovery. ECF No. 41. The Court granted the stay motion over Plaintiffs' opposition on August 18, 2017. ECF No. 84.

The parties appeared for the initial case management conference on August 31, 2017. Before the conference, Plaintiffs prepared and served early document requests under Rule 26(d)(2), conducted a Rule 26(f) conference, and exchanged drafts of a stipulated protective order and a protocol for the discovery of electronically stored information. ECF No. 86 at 8-9. Before the initial conference the parties also submitted—and the Court entered—a stipulation agreeing to participate in private mediation by mid-December 2017. ECF Nos. 63, 81.

The parties appeared for mediation before Hon. Layn R. Phillips (Ret.) on December 5, 2017. Pltf. Decl., ¶ 9. Prior to mediation, the parties exchanged briefs addressing the claims and defenses. *Id*. Defendants also provided discovery about Nexus 6P sales and the alleged defect. *Id*. The mediation was unsuccessful, due in part to unresolved issues surrounding Huawei's personal jurisdiction challenge, the pending motions to dismiss, and the discovery stay. *Id*.

After a January 18, 2018 hearing, the Court granted Huawei's motion to dismiss for lack of personal jurisdiction without prejudice on February 12. ECF No. 113. On March 5, the Court entered a further order granting, largely without prejudice, Google's motion to dismiss in its entirety and granting Huawei's motion in part. ECF No. 115. In the February 12 order, the Court also granted Plaintiffs' request to take jurisdictional discovery as to Huawei. ECF No. 113 at 8. Soon after discovery into personal jurisdiction began, Huawei withdrew its challenge to jurisdiction. ECF No. 125.

On May 10, 2018, Plaintiffs filed the SAC, asserting express and implied warranty and consumer protection claims on behalf of a nationwide class. ECF No. 117. On June 11, soon after Huawei withdrew its personal jurisdiction defense and Plaintiffs filed the SAC, Plaintiffs moved to lift the

1   discovery stay. ECF No. 133. The Court granted that motion on June 19. ECF No. 144. The Court also

2   entered the protective order and ESI protocol on June 19. ECF Nos. 140, 141. The parties then began

3   discovery, serving document requests, interrogatories, and requests for admissions and issuing

4   subpoenas to 12 non-parties. Pltf. Decl., ¶¶ 14-15.

5         Class Counsel obtained, reviewed, and analyzed hundreds of documents from Defendants and

6   non-parties showing Nexus 6P advertising, product packaging, sales figures, customer service policies

7   and procedures, consumer complaints, and technical information. *Id*. at ¶ 14. Defendants deposed two

8   former Plaintiffs who had voluntarily dismissed their claims. *Id.* at ¶ 17. In late June and early July of

9   2018, Plaintiffs also subpoenaed documents showing Nexus 6P consumer complaints, repairs, insurance

10  claims, and sales volume from 12 non-parties—including uBreakiFix (a company that offers phone

11  repair services), and Assurant Inc. (the issuer of insurance policies for Nexus 6Ps sold by Google). *Id*. at

12  ¶ 15. Over the course of several months Class Counsel negotiated with subpoenaed non-parties over

13  compliance and reviewed the responsive productions. *Id*.  In addition, throughout the litigation Plaintiffs

14  retained and consulted with experts on the manufacture of electronic products and on damages. *Id*. at ¶

15  18.

16        Huawei and Google again moved to dismiss the claims, along with the class action allegations,

17  on June 14, 2018. ECF Nos. 134, 135. Plaintiffs opposed those motions on July 19, (ECF Nos. 148, 149)

18  and Defendants filed reply briefs on August 2. ECF Nos. 154, 155. The Court heard argument on those

19  motions on October 17. ECF No. 164. At the hearing, the Court inquired as to the progress the parties

20  had made in attempting to settle the case, and encouraged the parties to continue those efforts. 10/17/18

21  Hr'g Tr. at 63:24-65:6.

22        The parties then resumed their settlement negotiations. Several weeks of back-and-forth

23  ultimately led to an agreement in principle on November 27, 2018. ECF No. 175. The Court vacated the

24  existing case schedule on November 29, 2018 (ECF No. 177) and held a further case management

25  conference on January 16, 2019. ECF No. 182. The parties have devoted several months to negotiating

26  and documenting the settlement, including the plan of allocation, and signed their agreement on April

27  10, 2019. Pltf. Decl., ¶ 21.

28

1    **IV.    SUMMARY OF SETTLEMENT TERMS**

2         **A.    The Settlement Class**

3         The proposed settlement class includes all persons within the United States who purchased a

4    Nexus 6P smartphone, other than for resale, between September 29, 2015 and the date of preliminary

5    approval. *Id.*, Ex. A (Settlement Agreement) at § 1.46. Consistent with the Guidelines, the settlement

6    class is co-extensive with the proposed litigation class. The SAC defined the class to include "all

7    persons within the United States who purchased a Nexus 6P smartphone, other than for resale, between

8    September 29, 2015 and the present." ECF No. 117, ¶ 141. Thus, the only difference is that the class

9    period in the settlement class definition has an end date.

10        **B.    Settlement Consideration**

11        Consistent with this District's preference for all-cash, non-reversionary settlements, the parties

12   have negotiated payment of a fixed sum in exchange for a release of all claims that were or could have

13   been alleged in the case. Pltf. Decl., ¶ 22. Notice costs, administration expenses and attorneys' fees and

14   costs, and service awards awarded by the Court will be deducted from the fund. *Id.* The balance will be

15   applied to pay claims. *Id.* Plaintiffs will seek up to 30% of the fund in attorneys' fees, up to $200,000 in

16   reimbursement of expenses and service awards to the class representatives. *Id.* Notice and administration

17   expenses are not expected to exceed $250,000. *Id.* If these deductions are allowed in full, the settlement

18   will generate approximately $6,375,000 to pay class member claims. *Id.*

19        Plaintiffs believe the $9,750,000 settlement is a favorable result in relation to the potential

20   aggregate recoverable damages, had they obtained class certification and prevailed on their claims at

21   trial. The information available, as developed through discovery, indicates approximately

22   Nexus 6P smartphones were sold during the relevant time period. *Id.* at ¶ 23. The Nexus 6Ps were sold

23   at prices of $500 to $650 depending on the model. *Id.* The information available, as developed through

24   discovery, indicates approximately          reports from consumers generally correlated to the issues

25   alleged in the litigation, including multiple contacts from the same individual.  (Defendants believe that

26   this figure may be over-inclusive and under-inclusive due to variations in how customer contacts were

27   coded in Defendants' records).  *Id.* The information available, as developed through discovery, also

28   indicated approximately              smartphones were replaced with Nexus 6Ps or Pixel XLs—

1  Google's then-latest-generation, state of the art smartphone—through warranty adjustments or third

2  party insurer Assurant.  *Id.* Plaintiffs believe there are fewer than ███ phones (and more likely ███

3  ███) that were the subject of reports and have not been replaced through one form of adjustment or

4  another.  *Id.* The cost to replace ███ phones at $500 per unit would be ███.  *Id.* But a full

5  $500 per phone recovery is unlikely given the need to discount the recovery for the period of use

6  enjoyed by the consumer prior to any performance issue manifesting.  *Id.*

7    Class Counsel purchased several new Nexus 6Ps for their experts to test after they had filed the

8  lawsuit, which had received coverage in the technical press. *Id.* at ¶ 24; e.g., David Kravets, Another

9  Android Flagship, the Nexus 6P, Ends up in a Class-Action Lawsuit, ARS Techica, April 20, 2017

10  (available at https://arstechnica.com/tech-policy/2017/04/another-android-flagship-the-nexus-6p-hit-

11  with-class-action-lawsuit/).  Class Counsel noted evidence that the purchase price following the filing of

12  the lawsuit and publication of the alleged defects was at least 12% lower than the original purchase

13  price. *Id.*; e.g., https://web.archive.org/web/20180301174051/https://www.walmart.com/ip/Total-

14  Wireless-Google-Nexus-6P-32GB-Prepaid-Smartphone-Silver/55091210.

15    Assuming a similar 12% "price inflation" measure applied to approximately ███ Nexus 6Ps

16  at an across the board price of $500, damages would fall in the range of ███. *Id.* at ¶ 25. A

17  settlement of $9,750,000 therefore represents a recovery of ███ of recoverable damages. *Id.*

18  Plaintiffs' estimate assumes the Court rules in favor of Plaintiffs on class certification, Plaintiffs prevail

19  on every claim and the Court accepts a price premium model and awards damages on an aggregate basis.

20  *Id.* If Plaintiffs prevailed at trial but the Court required any form of individualized damage prove up,

21  with class members having to come forward to establish whether or not they ultimately suffered any

22  damage depending on whether they experienced the alleged issues in or out of warranty, and whether

23  Defendants warranty adjustments made the class member whole, Class Counsel believe a victory at trial

24  would likely prove pyrrhic. *Id*. In contrast, the claims procedure made available under the Settlement

25  offers substantial recoveries to consumers who make the minimal effort needed to submit a claim. *Id.*

26    **C.**  **Distribution of Settlement Fund**

27    In developing the plan of allocation, counsel were confronted with a lack of comprehensive

28  records indicating which Nexus buyers experienced the alleged battery drain and bootloop problems,

1  whether those issues were addressed through delivery of a fully operational replacement device, whether

2  the buyer experienced a subsequent instance of battery drain or bootloop on the replacement device, and

3  whether that issue in turn was addressed to the buyer's satisfaction. *Id*. at ¶ 27. Given the lack of records

4  and the need to verify eligibility, address information, and payment preferences, all class members will

5  be asked to complete a simple claim form developed in consultation with the claims administrator. *Id*. at

6  ¶ 28.

7          The Claim Form will require each Claimant to confirm his or her current contact information

8  (names and email addresses will be prepopulated to the extent practicable) and certify that he or she

9  purchased a Nexus 6P not for resale. *Id*. at ¶ 29. The Claim Form will make clear that a claimant need

10 not have experienced alleged bootloop or battery drain to be eligible for payment. *Id*. Claimants who

11 experienced alleged bootloop or battery drain, moreover, do not have to submit documentation in order

12 to recover, but need only certify under oath that they experienced one or both alleged issues. *Id*. at ¶ 30.

13 Claimants are invited to submit supporting documentation, such as photographs, screenshots, emails,

14 customer service chat logs, repair records, insurance claims, or Return Merchandise Authorization

15 confirmations, and those who do will receive a substantially greater recovery. *Id*.

16         The Settlement Administrator will divide claimants into the following groups:

17         Group 1 includes class members who did not experience the alleged issues, who did not submit

18 supporting documentation of the alleged issues or who received a Pixel XL smartphone as a replacement

19 for their Nexus 6P. *Id*. at ¶ 31. Within this group, claimants who purchased a Nexus 6P that did not

20 experience alleged bootloop or battery drain, or who received a Pixel XL replacement, will receive a

21 minimum payment of $5 and a maximum payment of $10 ("Group 1A"). *Id*. Claimants who purchased a

22 Nexus 6P that they attest experienced alleged battery drain, but who did not submit valid supporting

23 documentation, will receive a minimum payment of $10 and a maximum payment of $45 ("Group 1B").

24 *Id.* Claimants who purchased a Nexus 6P that they attest experienced alleged bootloop, but who did not

25 submit valid supporting documentation, will receive a minimum payment of $20 and a maximum

26 payment of $75 ("Group 1C").  *Id.*

27         Group 2 includes class members who experienced an alleged battery drain or bootloop problem

28 and submit documentation.  *Id*. Claimants who purchased a Nexus 6P that they attest experienced

alleged battery drain, and who submitted valid supporting documentation, will receive a payment of up to $150 ("Group 2A"). *Id*. Claimants who purchased a Nexus 6P that they attest experienced alleged bootloop, and who submitted valid supporting documentation, will receive a payment of up to $325 ("Group 2B"). *Id*.

Group 3 includes class members who submit evidence of multiple alleged battery or bootloop problems across multiple Nexus 6Ps. These claimants will receive a payment of up to $400 ("Group 3"). *Id*.

In allocating the Net Settlement Fund, an amount sufficient to pay each Group 1A claimant $5, each Group 1B claimant $10, and each Group 1C claimant $20 will first be set aside and reserved to make those payments. *Id*. at ¶ 32. The balance of the fund will then be allocated among all Group 2A, Group 2B, and Group 3 Claimants according to the payment structure summarized above. *Id*. If the fund is insufficient to pay all Group 2A, Group 2B, and Group 3 claimants, the amounts allocated to these claimants will be proportionally reduced, so as to exhaust the fund, according to the ratio of the respective payments for each group. *Id*.

If any additional money remains in the fund, it will be distributed to Group 1B, 1C, 2A, 2B, or 3 claimants who paid insurance deductibles to Assurant in connection with a claim regarding an alleged bootloop or battery drain. *Id*. at ¶ 33. To determine which claimants qualify for such payments, the Settlement Administrator will use records that Assurant will provide on a confidential basis. *Id*. The remaining funds will be allocated to these claimants so as to reimburse the actual insurance deductible that each such claimant paid. *Id*. If the Net Settlement Fund is insufficient to reimburse the sum of the insurance deductibles these claimants paid, each will receive a payment, proportionally reduced based on the actual insurance deductible that each paid, so as to exhaust the fund. *Id*. The claims administrator will reimburse these deductibles without further claim forms or claimant information being submitted.

If additional money still remains, it will be distributed, on a *pro rata* basis, to Group 1A, Group 1B, and 1C claimants, up to the respective maximum payments noted above. *Id*. If additional money still remains at that point, Class Counsel will notify the Court and propose a reasonable alternative or alternatives for distribution of the remaining funds, subject to the approval of Defendants.  *Id*.

Plaintiffs expect that between 5% and 20% of class members will submit claims, and that of those class members who experienced a problem with their phone, a substantially higher percentage will make claims. *Id.* at ¶ 44. These projected rates are consistent with Class Counsel's experience, which includes cases with claims rates ranging from less than 1% to 50%. *See Lockabey et al. v. Am. Honda Motor Co., et al.*, No. 37-100-00087755-CBU-BT-CTL (Cal. Super.); *Lynch v. Motorola Mobility LLC d/b/a Motorola, et al.*, No. 1:16-cv-04524 (N.D. Ill.); *In re American Express Financial Advisors Litigation*, No. 04 Civ. 1773 (DAB) (S.D.N.Y.) Pltf. Decl., Ex. I (N.D. Cal. Guidance Chart). Class Counsel's experience has shown that claim submission rates are highly fact dependent and driven by factors such the nature of the case, the severity of the problem, the cost of the underlying product or service, the methods for notice, and the accessibility of the claim form. Pltf. Decl., ¶44, Ex. I*; see Date v. Sony Elecs., Inc.*, No. 07-15474, 2013 WL 3945981, at *9-10 (E.D. Mich. July 31, 2013) ( "many factors affect response rates and this ratio should not be given great significance.") (citation omitted); *Gascho v. Global Fitness Holdings, LLC*, No. 2:11-cv-436, 2014 WL 1350509, at *30 (S.D. Ohio Apr. 4, 2014) ( "response rates in class actions generally range from one to 12 percent").  Class Counsel have made every effort to make the claims process in this case as simple as possible, consistent with the parties' obligation to limit recovery to eligible claimants and ensure that class members who experienced the most severe problems receive the greatest recovery.

### D.    Class Notice

The Settlement Administrator will provide direct notice using class member lists furnished by Defendants (for direct purchasers of Nexus 6Ps) and by Class Counsel from subpoenaed resellers (for class members who purchased Nexus 6Ps through authorized resellers). Pltf. Decl. Ex. A at § 4.1.3. Class members whose email addresses are identified on the lists provided to the Settlement Administrator will receive notice via email. *Id.* at § 4.2. Within 14 days after sending email notice, the Settlement Administrator will send postcard notices to: (1) each class member for whom the email notice failed to send or "bounced back"; and (2) each class member for whom physical address information, but not email information, is available.  *Id.* at § 4.3. Notice will also be posted on the settlement website, and Class Counsel will issue a press release providing notice of the settlement as well. *Id.* at § 4.4. Finally, supplemental online publication notice, using digital advertisements through

an advertising network to be agreed upon by the parties, will be provided if the Settlement Administrator

determines that less than 70% of the class has been notified through the individual notice efforts. *Id*. at §

4.6.

### E.     CAFA Notice

Defendants will direct the Settlement Administrator to provide notice to governmental

enforcement authorities, consistent with 28 U.S.C. § 1715. *Id*. at § 4.7.

### F.     Release of Claims

The proposed release applies to claims that were or could have been asserted in this action. *Id*. at

§ 1.38. Pursuant to the Guidelines, the release appropriately tracks the claims and nationwide class

proposed in the SAC. *See, e.g.*, *K.H. v. Secretary of Dep't of Homeland Sec.*, No. 15-CV-02740-JST,

2018 WL 6606248, at *4 (N.D. Cal. Dec. 17, 2018) ("Because the release is appropriately limited to

claims related to those litigated in this lawsuit, the Court finds it is sufficiently narrow to support

approval.").

### G.     Attorneys' Fees and Expenses, and Service Awards for the Class Representatives

Class Counsel will apply for an award of attorneys' fees and reimbursement of litigation costs,

together with service awards for the class representatives, at least thirty-five days before the due date for

objections. Pltf. Decl., ¶ 45. The fee application will be posted immediately on the settlement website.

Class Counsel intend to apply for a fee not to exceed 30 percent of the common fund, plus expenses. *Id*.

Class Counsel's total lodestar, as of April 5, 2019, is $3.5 million, representing 6,694 hours of work on

this matter. *Id*. Thus if counsel were to submit their fee application now, the multiplier corresponding to

an award of 30 percent of the fund would be approximately .83, a negative multiplier. *Id*. In addition,

Class Counsel anticipate seeking reimbursement of case expenses in an amount not to exceed $200,000.

*Id*.

Class Counsel also intend to apply for service awards of up to $3,000 for each of the class

representatives. *Id*. Each Plaintiff substantially assisted Class Counsel in preparing complaint

allegations, communicating with Class Counsel about case developments, and answering Defendants'

interrogatories and responding to their requests for production, including by gathering and producing

1   documents. *Id.*; *see, e.g., Mendoza v. Hyundai Motor Co.*, No. 15-cv-01685-BLF, 2017 WL 342059, at

2   *15 (N.D. Cal. Jan. 23, 2017) ("$5,000 is presumptively reasonable.") (citations omitted).

3        **H.    The Settlement Administrator**

4        Class Counsel retained KCC as the settlement administrator after sending requests for proposal

5   to five leading class action administrators. Pltf. Decl., ¶ 42. After receiving and analyzing all the

6   proposals, Plaintiff's counsel selected KCC as the low bidder. *Id.* Administrative costs will be paid from

7   the settlement fund. Class Counsel do not expect the costs of administration to exceed $250,000, or

8   2.5% of the settlement. *Id.* at ¶ 43. In addition to managing the notice program and receiving and

9   processing claims and opt-outs, KCC will maintain a dedicated settlement website containing links to

10  the notice, claim form, and all other relevant settlement documents. *Id.*

11  **V.    ARGUMENT**

12       **A.    The 2018 Amendments to Rule 23(e)**

13       The recent amendments to FED. R. CIV. P. 23 revised the approval process for class action

14  settlements. "Under the new Rule 23(e), in weighing a grant of preliminary approval, district courts must

15  determine whether 'giving notice is justified by the parties' showing that the court *will likely be able to*:

16  (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the

17  proposal." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720

18  (MKB) (JO), 2019 WL 359981, at *12 (E.D.N.Y. Jan. 28, 2019) (emphasis in original). Hence the Court

19  first determines whether it "will likely be able to: (1) approve the settlement proposal under Rule

20  23(e)(2); and (2) certify the proposed class"—and "[i]f these two elements are satisfied, the Court will

21  consider whether the parties' proposed method of giving notice satisfies the requirements set out in Rule

22  23(c)(2)(B)." *Swinton v. SquareTrade, Inc.*, No. 4:18-CV-00144-SMR- SBJ, 2019 WL 617791, at *5

23  (S.D. Iowa Feb. 14, 2019). Class Counsel respectfully submit that all of the requirements for preliminary

24  approval are met.

25       **B.    The Settlement Is Fair, Reasonable, and Adequate**

26       "[T]here is a strong judicial policy that favors settlements, particularly where complex class

27  action litigation is concerned.'" *In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Practices, & Prods.*

28  *Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 536661, at *5 (N.D. Cal. Feb. 11, 2019) (quoting *Allen*

*v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)). For purposes of determining whether a proposed settlement should be approved, amended Rule 23(e)(2) directs the Court to consider whether "the class representatives and class counsel have adequately represented the class"; "the proposal was negotiated at arm's length"; "the relief provided for the class is adequate"; and "the proposal treats class members equitably relative to each other." The Advisory Committee Notes make clear that these factors do not displace the "lists of factors" courts have traditionally applied to assess proposed class settlements. Instead, the enumerated factors under Rule 23(e)(2) "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment. Courts accordingly consider the Rule 23(e)(2) factors alongside the traditional factors. *See, e.g.*, *Swinton*, 2019 WL 617791, at *5; *Hays v. Eaton Grp. Attorneys, LLC*, No. CV 17-88-JWD-RLB, 2019 WL 427331, at *9 (M.D. La. Feb. 4, 2019).

At preliminary approval in the Ninth Circuit, courts generally ask whether "[1] the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, [2] has no obvious deficiencies, [3] does not improperly grant preferential treatment to class representatives or segments of the class, and [4] falls within the range of possible approval . . . ." *Burden v. SelectQuote Ins. Servs.*, No.: C 10-05966-SBA, 2013 WL 1190634, at *3 (N.D. Cal. Mar. 21, 2013) (citations omitted). Application of both the Rule 23(e)(2) and traditional factors demonstrates that the settlement here is fair, reasonable, and adequate and in the best interests of the class.

### 1.   The Proposed Settlement Is the Product of Arm's Length Negotiations Among Experienced Counsel.

Under Rule 23(e)(2), the Court considers whether the class representatives and class counsel adequately represented the class and whether the settlement proposal was negotiated at arm's length. "An initial presumption of fairness is usually involved if the settlement is recommended by class counsel after arm's-length bargaining." *Mendez v. C-Two Grp., Inc.*, No. 13-CV-05914-HSG, 2017 WL 1133371, at *4 (N.D. Cal. Mar. 27, 2017) (citation omitted). This presumption should apply here given that experienced counsel on both sides endorse the settlement, and it followed an all-day mediation with a respected neutral party. *See* FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment

1  (advising that "the involvement of a neutral . . . mediator or facilitator in those negotiations may bear on

2  whether they were conducted in a manner that would protect and further the class interests."); *Federal*

3  *Ins. Co. v. Caldera Med., Inc.*, No. 2:15-cv-00393-SVW-PJW, 2016 WL 5921245, at *5 (C.D. Cal. Jan.

4  25, 2016) ("The assistance of an experienced mediator in the settlement process confirms that the

5  settlement is non-collusive") (citation omitted); *Nat'l Rural Telecoms. Coop. v. DIRECTV, Inc.*, 221

6  F.R.D. 523, 528 (C.D. Cal. 2004) ("'Great weight' is accorded to the recommendation of counsel, who

7  are most closely acquainted with the facts") (citation omitted).

8        To negotiate a fair and reasonable settlement, "the parties [must] have sufficient information to

9  make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239

10  (9th Cir. 1998). The parties in this case reached their settlement after Plaintiffs had gained a thorough

11  understanding of the relevant law through complex motion practice, and of the relevant facts through

12  review and analysis of documents obtained during discovery—both formal and informal. Plaintiffs

13  scrutinized Defendants' document production in connection with the mediation before Judge Layn

14  Phillips, and after this Court lifted the discovery stay Plaintiffs obtained and reviewed hundreds of pages

15  of documents from Defendants and third parties, including advertisements, Defendants' internal

16  customer service notes and procedures, consumer complaints, and technical documents. These materials

17  addressed such key issues as the scope of the alleged issues, the extent and timing of Defendants'

18  knowledge of the alleged issues, whether and how Defendants could have disclosed them to class

19  members, and Defendants' procedures for servicing the Nexus 6P's warranty and responding to

20  customer complaints. *See, e.g.*, *LaGarde v. Support.com, Inc.*, No. 12-0609 (JSC), 2012 WL 13034899,

21  at *7 (N.D. Cal. Nov. 2, 2012) (presence of discovery supports conclusion that the plaintiffs were

22  sufficiently informed during settlement negotiations).

23        Further weighing in favor of the settlement, the parties reached their agreement only after

24  Plaintiffs retained multiple experts to investigate the alleged defect, evaluate and test the Nexus 6P, its

25  battery, and internal components, and develop preliminary damage theories. *See Kacsuta v. Lenovo*

26  *(United States) Inc.*, No. SACV 13-00316 CJC (RNBx), 2014 WL 12585783, at *5 (C.D. Cal. Sept. 15,

27  2014) (that class counsel hired engineering experts to test and analyze the computers at issue weighed in

28  favor of the settlement). Class Counsel's discovery and expert work enabled them to "enter[] the

1   settlement discussions with a substantial understanding of the factual and legal issues from which they

2   could advocate for their respective positions and which are necessary for a robust negotiation." *Kulesa v.*

3   *PC Cleaner, Inc.*, No. CV 12-0725 FMO (ANX), 2014 WL 12581769, at *10 (C.D. Cal. Feb. 10, 2014);

4   *see also Van Lith v. iHeartMedia + Entm't, Inc.*, No. 1:16-CV-00066-SKO, 2017 WL 1064662, at *16

5   (E.D. Cal. Mar. 20, 2017) ("The adversarial nature of these negotiations and the discovery performed by

6   the parties indicate that the settlement process is procedurally adequate."). But for the skill and

7   experience of counsel for all parties, this settlement would not have been possible within this two-year

8   period.

9              **2.       The Settlement Treats All Class Members Equitably.**

10             "'Approval of a plan of allocation of settlement proceeds in a class action . . . is governed by the

11  same standards of review applicable to approval of the settlement as a whole: the plan must be fair,

12  reasonable and adequate.'" *In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016

13  WL 6778406, at *3 (N.D. Cal. Nov. 16, 2016) (quoting *In re Oracle Sec. Litig.*, No. C-90-0931_VRW,

14  1994 WL 502054, at *1-2 (N.D. Cal. June 16, 1994). The Plan of Allocation here satisfies this standard.

15  The settlement treats all class members fairly and equally in relation to the strengths of their claims.

16  Each is invited to submit a Claim Form, and the Plan of Allocation establishes a uniform, objective

17  method for distributing awards that accounts for structural differences relating to claim value and

18  evidentiary support.

19             For purposes of setting recovery amounts, the Plan of Allocation makes common-sense

20  distinctions between: (1) class members who experienced an alleged defect and those who didn't; (2)

21  class members who received a Pixel XL as a replacement for their Nexus 6P and those who didn't; (3)

22  class members who experienced the more extreme alleged bootloop issue and those who experienced the

23  alleged battery drain issue; and (4) class members who experienced the alleged defect on multiple

24  phones and those who experienced it on one phone. Pltf. Decl., Ex. A at Ex. 1. Beyond accounting for

25  these distinctions, the plan of allocation fairly protects the interests of all parties in targeting relief to the

26  most injured class members by awarding more to those who provide some evidence to support their

27  statement that they experienced the alleged defect while giving class members the option of submitting

28  an undocumented claim.  *Id.*; *see* Order Granting Plaintiffs' Motion for Preliminary Approval of Class

1  Action Settlement, *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072-EMC (N.D. Cal. Mar. 28,

2  2019), ECF 526 at 4-5 (approving settlement paying lower dollar amount based on the strength of their

3  claims); *Free Range Content, Inc. v. Google, LLC*, No. 14-cv-02329-BLF, 2019 U.S. Dist. LEXIS

4  47380, at *7-8 (N.D. Cal. Mar. 21, 2019) (approving settlement which paid as low as $10 per class

5  member); Order Granting Motion for Final Approval of Class Action Settlement, *In re: Sony VAIO*

6  *Computer Notebook Trackpad Litigation*, Case No. 3:09-cv-02109, (S.D. Cal. Aug. 7, 2017), ECF 378

7  at 4 (approving settlement which paid $5 to class members whose laptops did not manifest the defect);

8  *see also,* Order Granting Preliminary Approval of Class Action Settlement, *Fitzhenry-Russell v. Keurig*

9  *Dr. Pepper, Inc.*, No. 5:17-cv-00564, (N.D. Cal. Jan. 10, 2019), ECF No. 335 at 3 (approving settlement

10 which paid class members $2 to $5.20 without proof of purchase or $40 with proof of purchase).

11        The Plan of Allocation will deter fraudulent claims and accounts for the reality that experiences

12 across the class varied in severity. The Plan of Allocation ensures the class members will be treated

13 equitably relative to each other and should be approved as fair, reasonable, and adequate.

14            **3.      The Relief Under the Proposed Settlement Is Adequate.**

15        In determining whether the class-wide relief is adequate under Rule 23(e)(2), the Court considers

16 "the costs, risks, and delay of trial and appeal"; "the effectiveness of any proposed method of

17 distributing relief to the class, including the method of processing class-member claims"; "the terms of

18 any proposed award of attorney's fees, including timing of payment"; and "any agreement required to be

19 identified under Rule 23(e)(3)."[3] This Court has recognized that "[a]pproval of a class settlement is

20 appropriate when 'there are significant barriers plaintiffs must overcome in making their case.'"

21 *Mendoza*, 2017 WL 342059, at *6 (N.D. Cal. Jan. 23, 2017) (citation omitted). Likewise, it is "well-

22 settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the

23 potential recovery that might be available to the class members at trial." *In re: Cathode Ray Tube (CRT)*

24 *Antitrust Litig.*, MDL No. 1917, Case No. C-07-5944 JST, 2016 WL 3648478, at *6 (N.D. Cal. July 7,

25 2016) (internal quotation marks and citation omitted).

26

27

28

_____

[3] There are no undisclosed side agreements to disclose under Rule 23(e)(3).

For the reasons set forth above, Plaintiffs believe that if they prevailed at trial and in a post-trial appeal, the class would obtain a judgment in the range of          . The $9.75 million thus represents approximately          of the total estimated measure of damage and a substantial percentage of any projected trial verdict. If the Court were to require any form of individualized prove up following a favorable verdict on liability, the total recovery would be greatly reduced. Particularly considering Defendants' liability defenses and class certification challenges, the settlement delivers a substantial recovery for the class. *See Linney*, 151 F.3d at 1242 (settlement amounting to a fraction of the potential total recovery was reasonable given the significant risks of going to trial); *Hendricks v. StarKist Co.*, No. 13-CV-00729-HSG, 2015 WL 4498083, at *7 (N.D. Cal. July 23, 2015) (settlement representing "only a single-digit percentage of the maximum potential exposure" was reasonable given the defenses and potential weaknesses in the plaintiffs' case). Furthermore, other cases alleging similar claims have resulted in much lower payments to customers than those contemplated here. *See, e.g.*, *Horvath v. LG Electronics MobileComm U.S.A., Inc.*, Case No. 3:11-cv-01576-H-RBB, Docket No. 101 (S.D. Cal. Jan. 14, 2014) (approving settlement of $19 per claimant in class action alleging smartphones had a defect causing them to "randomly freeze, crash, reset or power-off completely").

In this case, Defendants have vigorously denied liability from the outset. *See, e.g.*, *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016) ("The settlement the parties have reached is even more compelling given the substantial litigation risks in this case."). Defendants secured an order staying discovery pending the resolution of their motion to dismiss because the Court was concerned about the weakness of certain claims against Google as well as Huawei's jurisdictional challenge. ECF 84. After the briefing on the first motion to dismiss, the Court granted the motion as to virtually all of the nearly two dozen claims against Google and nearly all the claims against Huawei. ECF Nos. 113, 115. After briefing on the Second Amended Complaint, choice of law obstacles could have precluded certification of a broader class. The Court cautioned that before proceeding Plaintiffs would need to address the choice of law issues. Oct. 17, 2018 Hr'g Tr. at 8:6-9:11. Plaintiffs also faced risks specific to each Defendant—for example, Plaintiffs relied on the Song-Beverly Act, but Google disputed that it was the manufacturer of the Nexus 6P. ECF 135 at 2-4.

1    Plaintiffs would likely have faced considerable risks obtaining class certification or prevailing on

2    summary judgment.  *See, e.g., Anderson v. Samsung Telecommunications Am., LLC*, No.

3    SACV1301028CJCJPRX, 2014 WL 11430910, at *1 (C.D. Cal. Oct. 20, 2014) (denying class

4    certification in case alleging smartphone "repeatedly experienced unintended, uninitiated power loss,

5    often accompanied by freezing"); *Galitski v. Samsung Telecommunications Am., LLC*, No. 3:12-CV-

6    4782-D, 2015 WL 5319802, at *1 (N.D. Tex. Sept. 11, 2015) (denying class certification in case

7    alleging smartphone suffered defect that caused it to "randomly freeze, shut down, reboot, and power

8    off"); *Haag v. Hyundai Motor Am.*, No. 12-CV-6521L, 2019 WL 1029002, at *4 (W.D.N.Y. Mar. 5,

9    2019) (finding that common issues did not predominate in a putative product defect class action, as

10   "there is no basis for the Court to infer that a reasonable consumer—let alone an entire class of

11   consumers—would have demanded a lower purchase or lease price if they were informed that they

12   might have to perform [auto part] replacement and maintenance . . . earlier than they otherwise

13   expected.").

14        In multiple motions to dismiss, Huawei and Google sought to strike or dismiss Plaintiffs' class

15   allegations. *See, e.g.,* ECF No. 154 at 6; ECF 155 at 12; *see Pederson v. Airport Terminal Servs.,* No.

16   EDCV-15-02400 VAP (SPx), 2018 WL 2138457, at *8 (C.D. Cal. Apr. 5, 2018) (concluding that

17   various risks such as the defendant's efforts to dismiss the class allegations and defenses that would

18   have precluded any recovery weighed in favor of approving the proposed settlement). As this Court

19   noted at the October 17, 2018 hearing, manageability hurdles arising from proceeding under the laws of

20   several states could have defeated or narrowed class certification on a litigation posture. *See* ECF No.

21   169, 10/17/18 Hr'g Tr. at 9:3-11; *Mazza v. American Honda Motor Co.*, 666 F.3d 581, 594 (9th Cir.

22   2012) (reversing class certification, concluding that common questions did not predominate, and

23   "hold[ing] that each class member's consumer protection claim should be governed by the consumer

24   protection laws of the jurisdiction in which the transaction took place."). Challenges associated with the

25   manifestation rate and with presenting a suitable damages model would have posed additional risks to a

26   class-wide recovery at trial. *See, e.g.*, *Davidson v. Apple, Inc.*, No. 16-CV-04942-LHK, 2018 WL

27   2325426, at *21 (N.D. Cal. May 7, 2018) (denying class certification due to problems with the

28   plaintiffs' damages model); *Anderson v. Samsung Telecommunications Am., LLC*, No. SACV 13-01028-

CJC(JPRx), 2014 WL 11430910, at \*5 (C.D. Cal. Oct. 20, 2014) ("Although the implied warranty claim does apply an objective standard as to whether repeated power loss and freezing rendered the Phones unfit for ordinary purposes, the claim is not susceptible to common proof.") (citation omitted).  There is also no dispute that Google provided functional Nexus 6P replacement phones and in some cases upgraded Pixel XL phones to ████████ of its customers.

To prevail, Plaintiffs would have had to withstand Defendants' motions to dismiss, obtain class certification, defend a certification order on appeal under Rule 23(f), survive motions for decertification and for summary judgment, and prevail at trial and in a likely post-trial appeal. By comparison, the settlement before the Court provides certain and relatively timely relief to the consumers who make up this class. *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("difficulties in proving the case" favored settlement approval); *see, e.g.*, *Kacsuta*, 2014 WL 12585783, at \*4 (C.D. Cal. Sept. 15, 2014) (risks arising from the defendant's vigorous defense where, as here, a motion to dismiss had been granted in part, weighed in favor of settlement); *Aguirre v. DirecTV, LLC*, No. CV16-06836 SJO (JPRx), 2017 WL 6888493, at \*15 (C.D. Cal. Oct. 6, 2017) (risk posed by summary judgment and continued litigation supported approval).

In contrast to the uncertainty and delays attendant to continued litigation, this settlement "provides a significant, easy-to-obtain benefit to class members" in the form of a cash payment to any Nexus 6P purchaser with a valid claim. *In re Haier Freezer Consumer Litig.*, No. 5:11-CV-02911-EJD, 2013 WL 2237890, at \*4 (N.D. Cal. May 21, 2013); *see also Ebarle v. Lifelock, Inc.*, No. 15-CV-00258-HSG, 2016 WL 234364, at \*8 (N.D. Cal. Jan. 20, 2016) (settlement that provides immediate benefits to class members has value compared to the risk and uncertainty of continued litigation). The parties' settlement falls within the range of reasonableness and should be preliminarily approved.

### C.    The Court Will Be Able to Certify the Class For Purposes of Settlement.

When a class has not been certified before settlement, the Court considers whether "it likely will be able, after the final hearing, to certify the class." FED. R. CIV. P. 23(e)(1) advisory committee's note to 2018 amendment; *see Swinton*, 2019 WL 617791, at \*5. This Court will likely be able to certify the proposed settlement class in connection with final approval.

#### 1.    The Class Members Are Too Numerous to Be Joined.

For certification of a class to be appropriate, its members must be so numerous that their joinder would be "impracticable." FED. R. CIV. P. 23(a)(1). It is undisputed that Defendants sold ███████ ████ of Nexus 6P phones in the United States. Numerosity is readily satisfied.

### 2.   There Are Common Questions of Law and Fact.

Rule 23 next requires common questions of law or fact. Fed. R. Civ. P. 23(a)(2). "Commonality is construed 'permissively' and is satisfied where, as here, class members share 'some . . . legal issues or a common core of facts.'" *J.L. v. Cissna*, No. 18-cv-04914-NC, 2019 WL 415579, at *9 (N.D. Cal. Feb. 1, 2019) (quoting Rodriguez v. Hayes, 591 F.3d 1105, 1122 (9th Cir. 2010)). The common questions in this case include, *inter alia*, whether the Nexus 6P is defective, whether Defendants had knowledge of the alleged defect (and if so, when), and whether Defendants had a legal duty to disclose the alleged defect. These questions are common to the class, capable of class-wide resolution, and "will resolve an issue that is central to the validity of each one of the claims in one stroke." *In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices, & Prod. Liab. Litig.*, 2019 WL 536661, at *5 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). Thus, the commonality requirement is met.

### 3.   Plaintiffs' Claims Are Typical of the Class.

"Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998). "The test of typicality is 'whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted). In this case, Plaintiffs and class members have the same types of claims stemming from the same alleged violations related to the same allegedly defective product. Typicality, therefore, is established. *See Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 288 (N.D. Cal. 2017) (typicality met where the plaintiffs and class members' claims were based on the same allegedly defective product and deceptive conduct).

### 4.   Plaintiffs and Class Counsel Will Fairly and Adequately Protect the Interests of the Class.

Two questions are relevant to adequacy of representation under Rule 23(a)(4): "(1) Do the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003). Plaintiffs and their counsel do not have any conflicts with class members and have vigorously prosecuted this case.

### a.   Plaintiffs Have No Conflicts of Interest and Have Diligently Pursued the Action on Behalf of the Other Class Members.

Plaintiffs have agreed to serve in a representative capacity, communicated diligently with their attorneys, produced documents and discovery responses, and helped prepare their complaint allegations. Plaintiffs will continue to act in the best interests of the other class members; there are no conflicts between Plaintiffs and the class. FED. R. CIV. P. 23(a)(4); *see Mergens v. Sloan Valve Co.*, No. CV16-05255 SJO (SKx), 2017 WL 9486153, at *6 (C.D. Cal. Sept. 18, 2017) (adequacy requirement met where the plaintiff had no interests antagonistic to the class).

### b.   Interim Class Counsel Are Well Qualified.

Interim Class Counsel are well qualified to serve as Class Counsel. Collectively, they have decades of experience successfully representing plaintiffs and classes in complex class action litigation, including in consumer product defect cases. *See* ECF No. 34; *Bisaccia* v. *Revel Systems Inc.*, No. 17-CV-02533-HSG, 2019 WL 861425, at *4 (N.D. Cal. Feb. 22, 2019) (finding plaintiff's counsel adequate based on their extensive experience with federal class actions); Order Granting Motions for Class Certification and Denying *Daubert* Motions, *In re Lidoderm Antitrust Litig.*, No. 3:14-md-02521-WHO (N.D. Cal. Feb. 21, 2017), ECF 670 at 29 n. 24 ("These firms have ably and vigorously litigated this case, and nothing has occurred to undermine my initial determination of their experience and adequacy."). These same firms were previously designated as interim co-lead counsel by the Court. Adequacy is thus satisfied.

### 5.   The Requirements of Rule 23(b)(3) Are Met.

As to the familiar predominance and superiority requirements, when "[c]onfronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems . . . for the proposal is that there will be no trial." *Amchem*

1   *Prods. v. Windsor*, 521 U.S. 591, 620 (1997) (explaining that Rule 23(b)(3)(D) drops out of the

2   analysis). As set forth below, the predominance and superiority requirements are met here.

3

4               **a.     Common Issues of Law and Fact Predominate for Settlement
                         Purposes.**

5

6       The predominance inquiry tests the cohesion of the class, "ask[ing] whether the common,

7   aggregation-enabling, issues in the case are more prevalent or important than the non-common,

8   aggregation-defeating, individual issues." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045

9   (2016) (citation omitted). Predominance is ordinarily satisfied, for settlement purposes, when the claims

10  arise out of the defendant's common conduct. *See, e.g.*, *Gold*, 323 F.R.D. at 288 (predominance satisfied

11  where claims were based on "the same deceptive conduct"); *Kacsuta v. Lenovo (United States) Inc.*, No.

12  SACV-13-00316 CJC (RNBx), 2014 WL 12585783, at *3 (C.D. Cal. Sept. 15, 2014) (common issues

13  "significantly outweigh any individual questions" where the claims arise out of the "same alleged course

14  of conduct" by the defendant).

15      All class members purchased Nexus 6P phones that allegedly contain a common defect, which

16  Defendants are alleged to have fraudulently concealed. Common questions of law therefore predominate

17  for settlement purposes. Fraudulent concealment, a cause of action available to all class members, itself

18  "includes a similar set of elements: (1) misrepresentation or omission of a material fact, (2) a duty to

19  disclose, (3) intent to induce reliance and/or defraud, (4) some form of reliance, and (5) resulting

20  damages." *In re Lumber Liquidators Chinese-Manufactured Flooring Durability Mktg. & Sales Practice

21  Litig.*, No. 1:16MD2743 (AJT/TRJ), 2017 WL 2911681, at *7 (E.D. Va. July 7, 2017); *see also*

22  *Allapattah Servs., Inc. v. Exxon Corp.*, 188 F.R.D. 667, 673 (S.D. Fla. 1999), *aff'd*, 333 F.3d 1248 (11th

23  Cir. 2003), *and aff'd*, 545 U.S. 546 (2005) (holding that "factual disputes arising from the fraudulent

24  concealment doctrine can be properly resolved on a class-wide basis by the jury in deciding the

25  remaining class-wide issues, notwithstanding slight variations in state law as to how certain of the

26  elements are described.").

27      Further, common questions of fact abound with respect to Plaintiffs' warranty, unfair trade

28  practices, and consumer protection counts: whether the phones are defective; whether Defendants should

have disclosed the existence of the alleged bootloop and battery drain issues, and if so, when; whether

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:17-cv-02185-BLF

1   the allegedly concealed information was material to a reasonable consumer; and whether class members

2   sustained harm as a result of Defendants' conduct. *See Kacsuta*, 2014 WL 12585783, at *3

3   (predominating common issue was "the knowing sale of defective Class Computers"); *Butler v. Sears,*

4   *Roebuck & Co.*, 727 F.3d 796, 802 (7th Cir. 2013) ("There is a single, central, common issue of liability:

5   whether the [product] was defective."); *Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV13-02529

6   MMM (VBKx), 2015 WL 12732462, at *15 (C.D. Cal. May 29, 2015) (similar questions concerning a

7   defect and the defendant's knowledge predominated); *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No.

8   CV15-2171 FMO (FFMx), 2016 WL 8578913, at *7 (C.D. Cal. Dec. 2, 2016) (concluding that such

9   questions "would drive the resolution of t[h]e litigation"); *In re Toyota Motor Corp. Unintended*

10  *Acceleration Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 8:10-ML-2151 JVS (FMOx), 2012 WL

11  7802852, at *4 (C.D. Cal. Dec. 28, 2012) (similar). In contrast, the individual questions mostly relate to

12  damages and are less important; damages calculations "alone cannot defeat class certification." *Pulaski*

13  *& Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987-88 (9th Cir. 2015). Thus, common questions

14  predominate for settlement purposes.

15                 **b.      A Class Action Is a Superior Means of Resolving This Controversy.**

16          The superiority inquiry "requires the court to determine whether maintenance of this litigation as

17  a class action is efficient and whether it is fair." *One Unnamed Deputy Dist. Attorney v. Cty. of Los*

18  *Angeles*, No. CV 09-7931 ODW (SSX), 2011 WL 13128375, at *4 (C.D. Cal. Jan. 24, 2011); see *Wolin*

19  *v. Jaguar Land Rover North Am., LLC*, 617 F.3d 1168, 1175-76 (9th Cir. 2010). Here, given the

20  relatively low amount of the individual claims, class members are unlikely to bring individual lawsuits

21  against Huawei or Google. Furthermore, because the class members number in the ▮▮▮▮▮▮▮▮▮

22  ▮▮▮▮▮▮, class-wide resolution of their claims in a single action is efficient. *See Mullins v. Premier*

23  *Nutrition Corp.*, No. 13-CV-01271-RS, 2016 WL 1535057, at *8 (N.D. Cal. Apr. 15, 2016) ("Cases,

24  such as this, 'where litigation costs dwarf potential recovery' are paradigmatic examples of those well-

25  suited for classwide prosecution.") (citing *Hanlon*, 150 F.3d at 1023).

26          For these reasons, consistent with Rule 23(e)(1)(B), the Court will likely be able to certify the

27  settlement class in this case.

28          **D.      The Proposed Class Notice and Plan for Dissemination Are Reasonable and Should**
                **Be Approved.**

22

1      Rule 23(e)(1)(B) requires the Court to "direct notice in a reasonable manner to all class members

2 who would be bound by the proposal." In an action certified under Rule 23(b)(3), the Court must "direct

3 to class members the best notice that is practicable under the circumstances, including individual notice

4 to all members who can be identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B).

5      The notices presented here fully comply with Rule 23 and the due process mandates. Using plain

6 language, the proposed notices provide all information required under Rule 23(c)(2)(B). Pltf. Decl., Exs.

7 E-G. In crafting these notices Plaintiffs followed, as closely as possible, the notice language suggested in

8 the Guidelines. As discussed above at Page 9, the proposed notice program provides for direct email

9 notice as well as follow-up mechanisms for directly notifying class members of the settlement. The

10 settlement website will be a useful resource for class members—it will post the Claim Form, the long-

11 form notice, and key pleadings in the case, including the attorneys' fee application once it is filed. The

12 Settlement Administrator will also establish a toll-free number for class members to call with questions.

13 This plan provides the best notice practicable under the circumstances. *See, e.g.*, *Wahl v. Yahoo! INC.*,

14 No. 17-cv-02745-BLF, 2018 WL 6002323, at *3 (N.D. Cal. Nov. 15, 2018) (concluding that a notice

15 plan calling for direct email notice, followed by mailed notice to individuals to whom emails "bounced,"

16 constituted "the best notice practicable under the circumstances"); *Walsh v. CorePower Yoga LLC*, No.

17 16-CV-05610-MEJ, 2017 WL 589199, at *12 (N.D. Cal. Feb. 14, 2017) (approved notice plan provided

18 for a combination of mail and email using the most recent contact information available).

19 **VI.   CONCLUSION**

20      For the foregoing reasons, Plaintiffs respectfully request that the Court (1) grant preliminary

21 approval, (2) direct notice to the settlement class, and (3) set a schedule for settlement proceedings,

22 including the final fairness hearing.

23 Dated:  April 10, 2019          Respectfully submitted,

24      **GIRARD SHARP LLP**

25      */s/ Daniel C. Girard*

26      Daniel C. Girard (SBN 114826)
     Jordan Elias (SBN 228731)

27      Adam E. Polk (SBN 273000)
     Trevor T. Tan (SBN 281045)

28      601 California Street, Suite 1400

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

San Francisco, CA 94108
Telephone: (415) 981-4800
*dgirard@girardsharp.com*
*jelias@girardsharp.com*
*apolk@girardsharp.com*
*ttan@girardsharp.com*

Benjamin F. Johns (*pro hac vice*)
Andrew W. Ferich (*pro hac vice*)
Zachary P. Beatty (*pro hac vice*)
Beena M. McDonald (*pro hac vice*)
**CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
Fax: (610) 649-3633
*bfj@chimicles.com*
*awf@chimicles.com*
*zpb@chimicles.com*

*Interim Co-Lead Counsel for Plaintiffs*

1

## <u>CERTIFICATE OF SERVICE</u>

2      I, Daniel C. Girard, certify that on April 10, 2019, I caused the foregoing to be filed using the

3  Court's CM/ECF system, thereby causing it to be served upon all registered ECF users in this case. I

4  also caused a copy of the under seal documents to be served *via electronic mail* on counsel of record for

5  defendants.

6

7                                        */s/ Daniel C. Girard*

8                                        Daniel C. Girard

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:17-cv-02185-BLF