EXHIBIT A

**CLASS ACTION SETTLEMENT AGREEMENT**
*In re Nexus 6P Products Liability Litigation*
**United States District Court**
**Northern District of California**
**Case No. 5:17-cv-02185-BLF**

## PREAMBLE

This Class Action Settlement Agreement ("Settlement Agreement," "Settlement" or "Agreement") is entered into by and among Plaintiffs Edward Beheler, Brian Christensen, Yuriy Davydov, Alex Gorbatchev, Rebecca Harrison, Zachary Himes, Kenneth Johnston, Taylor Jones, Justin Leone, Jonathan Makcharoenwoodhi, Anthony Martorello, James Poore, Jr., and Paul Servodio (collectively, "Plaintiffs"), the Settlement Class (as defined in § 1.46), Defendant Huawei Device USA, Inc. ("Huawei"), a Texas corporation with its principal place of business at 5700 Tennyson Parkway, Suite 600, Plano, Texas 75024, and Defendant Google LLC, a Delaware corporation with its principal place of business at 1600 Amphitheatre Parkway, Mountain View, California, as successor to Google Inc. ("Google") (collectively, Huawei and Google are referred to as "Defendants," and Plaintiffs, the Settlement Class, Huawei, and Google are referred to singularly as a "Party" or collectively as the "Parties"). This Settlement Agreement is intended by the Parties to fully, finally, and forever resolve, discharge, and settle the Released Claims (as defined in § 1.38) on the terms and conditions of this Agreement. It is subject to the final approval of the United States District Court for the Northern District of California (the "Court").

## RECITALS

The following recitals are incorporated by reference and are considered part of the Settlement Agreement:

A.      This putative class action was filed in the United States District Court for the Northern District of California under the caption *In re Nexus 6P Products Liability Litigation*, Case 5:17-cv-02185-BLF.

B.      Plaintiffs alleged claims against Huawei and Google in connection with the Nexus 6P (defined below) for breach of express warranty; breach of the implied warranty of merchantability; violations of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301 *et seq.*; deceit and fraudulent concealment; unjust enrichment; violations of the Song-Beverly Consumer Warranty Act for breach of implied warranty of merchantability, Cal. Civ. Code §§ 1791.1 & 1792; violations of the Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); violations of the Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA"); violations of the False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. § 501.204, *et seq.*; violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. §§505/1, *et seq.*; violations of the Illinois Uniform Deceptive Trade Practices Act, 815 Ill. Comp. Stat. §§ 510/1, *et seq.*; violations of the Indiana Deceptive Consumer Sales Act, Ind. Code §§ 24-5-0.5-1, *et seq.*; violations of the Michigan Consumer Protection Act, Mich. Comp. Laws § 445.903, *et seq.*; violations of New York General Business Law § 349, N.Y. Gen. Bus. Law § 349; violations of New York General Business Law § 350, N.Y. Gen. Bus. Law § 350; violations of the North Carolina Unfair and Deceptive Trade Practices Act, N.C. Gen. Stat. §§75-1.1, *et seq.*; violations of the North Dakota Consumer Fraud Act, N.D. Cent. Code §§ 51-15-01, *et seq.*; violations of the Ohio

Deceptive Trade Practices Act, Ohio Rev. Code §§ 4165.01, *et seq*.; violations of the Ohio Consumer Sales Practices Act, Ohio Rev. Code §§1345.01, *et seq.*; violations of the Pennsylvania Unfair Trade Practices and Consumer Protection Law, Pa. Stat. Ann. §§201-1, *et seq.*; violations of the Texas Deceptive Trade Practices Act, Tex. Bus. & Com. Code §§17.41, *et seq.*; violations of the Washington Consumer Protection Act, Wash. Rev. Code §§ 19.86, *et seq.*  ECF 28.

C.  Defendants moved to dismiss these allegations.  ECF 38, 39.

D.  On February 12, 2018, the Court granted Huawei's motion to dismiss for lack of personal jurisdiction, but with leave to amend.  ECF 113.

E.  On March 5, 2018, the Court granted-in-part and denied-in-part Defendants' motions to dismiss, with leave to amend in part.  ECF 115.

F.  Plaintiffs filed a Second Consolidated Amended Class Action Complaint ("SAC") on May 10, 2018, and alleged claims against Huawei in connection with the Nexus 6P for breach of express warranty under certain state laws; breach of the implied warranty of merchantability under certain state laws; violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*.; violation of the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792, *et seq*.; violation of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); violation of California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*. ("CLRA"); and fraudulent concealment under California, Florida, Indiana, New York, North Carolina, North Dakota, Ohio, Pennsylvania, Texas, and Washington law.  ECF 117.

G.  In the SAC, Plaintiffs alleged claims against Google in connection with the Nexus 6P for violation of the Song-Berverly Consumer Warranty Act, Cal. Civ. Code § 1792, *et seq.*; violation of the California UCL, Cal. Bus. & Prof. Code § 17200, *et seq.*; violation of California's CLRA, Cal. Civ. Code § 1750, *et seq.*; and fraudulent concealment under California, Indiana, New York, North Carolina, Ohio, Texas, and Washington law.  ECF 117.

H.  Defendants moved to dismiss these allegations.  ECF 134, 135.  The Court heard oral argument on Defendants' motions to dismiss the SAC on October 17, 2018. ECF 164.  The Parties reached this agreement before the Court ruled on those motions. ECF 177.

I.  Throughout the course of the litigation, the Parties engaged in formal and informal attempts at settlement, including one in-person mediation session with the Hon. Layn R. Phillips and Greg Lindstrom ("Phillips ADR"), on December 5, 2017. This mediation occurred prior to the Court's rulings on Defendants' motions to dismiss the Consolidated Amended Complaint (ECF 113, 115) and was unsuccessful.

J.  Before and after the hearing on Defendants' motions to dismiss the SAC, the Parties engaged in further discussions with Phillips ADR.  These discussions were successful, and the Parties came to an agreement in principle.

K.  Plaintiffs believe that Defendants are liable for the conduct at issue in the Action (defined below) and that Plaintiffs would have ultimately succeeded had this Action gone to trial. Nonetheless, Plaintiffs and Class Counsel (defined below) recognize that Defendants raised defenses as to both liability and damages, which created a material risk that Plaintiffs would not have prevailed. Plaintiffs and Class Counsel

have considered this risk and the uncertain outcomes associated with upcoming events in this litigation, such as the Court's ruling on Defendants' motions to dismiss the SAC, Defendants' oppositions to any motion for class certification, any motions for summary judgment by Defendants, trial, and any appeal that may have followed.  As a result, Plaintiffs believe that it is desirable that the Released Claims (defined below) be fully and finally compromised, settled, resolved with prejudice, and barred pursuant to the terms of this Agreement.

L.    Based on their comprehensive examination and evaluation of the law and facts at issue in the Action, Class Counsel have concluded that the terms and conditions of this Agreement are fair, reasonable, and adequate to resolve the claims alleged by the Settlement Class. Class Counsel believe that it is in the best interests of the Settlement Class to settle the claims raised in this Action pursuant to the terms of this Agreement.

M.    Defendants have at all times denied—and continue to deny—any and all alleged wrongdoing. Specifically, Defendants deny that the Nexus 6P is or was defective and that their conduct concerning the Nexus 6P violates any law, and they are prepared to continue their vigorous defenses, including at the motions to dismiss, class certification, summary judgment, and trial. Even so, taking into account the uncertainty and risks inherent in the motions to dismiss, class certification, summary judgment, and trial, Defendants have concluded that continuing to defend this Action would be burdensome and expensive.  Defendants believe that it is desirable and beneficial to fully and finally settle and terminate this Action in the manner specified in and upon the terms of this Agreement.

**IT IS THEREFORE HEREBY STIPULATED AND AGREED** by and among Plaintiffs, the Settlement Class, and Defendants, by and through their respective counsel, that, subject to final approval of the Court after a hearing as provided for in this Agreement, or as otherwise ordered by the Court, and in consideration of the benefits flowing to the Parties from the Agreement, that the Action and the Released Claims shall be fully and finally compromised, settled, and released, and the Action shall be dismissed with prejudice, upon and subject to the terms and conditions set forth in this Agreement.

## AGREEMENT

1.    **Definitions**

As used in this Settlement Agreement, the following terms have the special meanings below:

1.1     "Action" means the case entitled *In re Nexus 6P Products Liability Litigation*, Case 5:17-cv-02185-BLF, pending in the United States District Court for the Northern District of California.

1.2     "Affiliates," with respect to a party, means (i) all entities now or in the future controlling, controlled by or under common control with that party; (ii) all entities in the past controlling, controlled by or under common control with that party, for the period of time that such control exists or existed; and (iii) predecessors, successors or successors in interest thereof, including all entities formed or acquired by that party in the future that come to be controlled by that party.  For purposes of this definition, "control" means possession directly or indirectly of the power to direct or cause the direction of management or policies of a company or entity through the ownership of voting securities, contract, or otherwise, and "entities" includes all persons, companies, partnerships, corporations, associations, organizations, and other entities.

1.3     "Battery Drain" means when a Nexus 6P allegedly has a noticeable decrease in battery life, or shuts off suddenly even when its battery life icon shows that it is charged.

1.4     "Bootloop" means when a Nexus 6P allegedly begins randomly rebooting, and in some instances fails permanently in an endless bootloop cycle, where the phone constantly reboots without ever advancing to the home screen, and in some instances, may stop booting altogether.

1.5     "Claim" means a Settlement Class Member's written submission that may, if valid, entitle the Settlement Class Member to a Settlement Payment.

1.6     "Claimant" means a Settlement Class Member who has submitted a Claim that the Settlement Administrator has determined is valid and timely in accordance with the claims process described in § 3.

1.7     "Claim Form" means the document Settlement Class Members submit to make a Claim pursuant to this Agreement. The Claim Form will be available online at the Settlement Website, and the contents of the Claim Form will be approved by the Court.

1.8     "Claims Deadline" means the date by which Settlement Class Members must submit all Claims Forms for the Claim Forms to be timely. The Claims Deadline shall be 60 days after the Notice Date and shall be clearly stated in the Notice and on the Claim Form.

1.9     "Class Counsel" means Daniel C. Girard, Jordan Elias, Adam E. Polk, Trevor T. Tan, and Simon S. Grille of the law firm of Girard Sharp LLP, and Benjamin F. Johns, Andrew W. Ferich, Zachary P. Beatty, and Beena M. McDonald of the law firm of Chimicles Schwartz Kriner & Donaldson-Smith LLP.

1.10    "Class Representative(s)" means each and all of the named Plaintiffs in this Action: Edward Beheler, Brian Christensen, Yuriy Davydov, Alex Gorbatchev, Rebecca Harrison,

Zachary Himes, Kenneth Johnston, Taylor Jones, Justin Leone, Jonathan Makcharoenwoodhi, Anthony Martorello, James Poore, Jr., and Paul Servodio.

1.11    "Court" means the United States District Court for the Northern District of California, the Hon. Beth Labson Freeman presiding, or any judge who succeeds her as the judge in this Action.

1.12    "Cy Pres Recipients" means National Consumer Law Center or such other recipients as the Court may approve.

1.13    "Defendants' Counsel" means Simon J. Frankel and Lindsey Barnhart of the law firm Covington & Burling LLP for Huawei and Joshua H. Lerner, Ragesh K. Tangri, Eugene Novikov, and Catherine Y. Kim of the law firm of Durie Tangri LLP for Google.

1.14    "Distribution Date" means the date that Settlement Payments are distributed to Claimants. The Distribution Date shall be no more than 30 days following the Effective Date.

1.15    "Effective Date" means the first business day after both of the following conditions have occurred:

      (a)    Class Counsel and Defendants' Counsel have executed this Settlement Agreement.

      (b)    The Final Approval Order has become a final, non-appealable judgment approving the Settlement Agreement in all respects and is no longer subject to review, reconsideration, rehearing, appeal, petition for permission to appeal, petition for a writ of certiorari, or any other appellate review of any kind.

1.16    "Electronic Payment" means payment via an electronic payment option to be selected by Claimants on the Claim Form.  The electronic payment options are transfer via PayPal,

Zelle, or electronic transfer of funds between banks through the Automated Clearing House ("ACH") network.

1.17   "Email Notice" means the notice of the Settlement that is emailed to Settlement Class Members, providing a link to the Claim Form, a link to the Settlement Website, and contact information for the Settlement Administrator.

1.18   "Escrow Agent" means KCC LLC ("KCC"), or other neutral third party agreed to by the Parties.

1.19   "Exclusion List" means the list of all persons and entities who have timely and validly excluded themselves from the Settlement.

1.20   "Fee, Cost, and Expense Award" means the amount of attorneys' fees and reimbursement of costs and expenses awarded to Class Counsel by the Court from the Settlement Fund.

1.21   "Final Approval Order" means the final judgment and order to be entered by the Court, following the Final Fairness Hearing, which approves the Settlement and sets the amounts of the Fee, Cost, and Expense Award and the Service Awards.

1.22   "Final Fairness Hearing" means the Court hearing where the Plaintiffs will request that the Final Approval Order be entered approving this Agreement, and where Class Counsel will request that the Court approve the Fee, Cost, and Expense Award and the Service Awards. The Final Fairness Hearing must occur at least 35 days after the Objection and Exclusion Deadline, on such date as set by the Court.

1.23   "Huawei Counsel" means Simon J. Frankel and Lindsey Barnhart of the law firm of Covington & Burling LLP.

1.24    "Google Counsel" means Joshua H. Lerner, Ragesh K. Tangri, Eugene Novikov, and Catherine Y. Kim of the law firm of Durie Tangri LLP.

1.25    "Net Settlement Fund" means the Settlement Fund, reduced by the sum of the following amounts: Notice and Administrative Costs, any Service Awards, and any Fee, Cost, and Expense Award.

1.26    "Nexus 6P" means the Nexus 6P smartphone.

1.27    "Notice" means the notice of this proposed Settlement Agreement and of the Final Fairness Hearing, which will be disseminated to Settlement Class Members in accordance with the terms of this Agreement.

1.28    "Notice and Administrative Costs" means all costs and expenses actually incurred by the Settlement Administrator in the dissemination of Notice; the establishment of the Settlement Website; the administrative processing, handling, review, and payment of Claims; and all other expenses reasonably necessary for effective Notice and administration of the Settlement pursuant to the Preliminary Approval order.

1.29    "Notice Date" means the date on which Notice to Settlement Class Members is complete. The Notice Date shall be as soon as reasonably practicable, but no later than 60 days following Preliminary Approval.

1.30    "Objection" means the written notice that a Settlement Class Member may submit to the Court in order to object to the Settlement.

1.31    "Objection and Exclusion Deadline" means the date by which a Settlement Class Member must submit an Objection to this Agreement or an Opt-Out Form to the Settlement Administrator. The Objection and Exclusion Deadline shall be 60 days after the Notice Date.

1.32    "Objector" means a person or entity who submits an Objection.

1.33    "Opt-Out Form" means the form provided by the Settlement Administrator that Settlement Class Members must use to request exclusion from the Settlement.

1.34    "Plan of Allocation" means the plan for allocating the Net Settlement Fund set forth in **Exhibit 1** hereto, or such other plan for allocating the Net Settlement Fund as may be approved by the Court, subject to Section 7.6.  Any exhibits to this Agreement, including the Plan of Allocation set forth in Exhibit 1, are part of and are incorporated by reference into this Agreement.

1.35    "Preliminary Approval" means the Court's order finding that the Notice to the Settlement Class is justified by the Parties' showing that the Court will likely be able to approve the Settlement under FED. R. CIV. P. 23(e)(2) and certify the Settlement Class for purposes of judgment on the proposal.

1.36    "PST" means Pacific Standard Time. If a deadline with a time stated in PST occurs when Daylight Saving Time is in effect, this deadline's time will instead be governed by Pacific Daylight Time ("PDT").

1.37    "Rejected Claimant" means a person or entity who submitted a Claim that the Settlement Administrator deemed invalid or untimely.

1.38    "Released Claims" means any and all claims, complaints, demands, damages, debts, liabilities, actions, proceedings, remedies, causes of actions or suits, known or unknown, of whatever kind or nature, including but not limited to whether in law or in equity, under contract, tort or any other subject area, or under any statute, rule, regulation, order, or law, asserted or not asserted, arising out of or related to the Action or the subject matter of the Action, including but not limited to the claims or matters that have been asserted or could have been asserted in the Action relating to the Nexus 6P by Releasing Named Plaintiffs, or any of Plaintiffs' Affiliates or any of the Releasing Class Members.

<u>11</u>                                              **CLASS ACTION SETTLEMENT AGREEMENT**
*In re Nexus 6P Products Liability Litigation*
**United States District Court Northern District of California**
Case No. 5:17-cv-02185-BLF

1.39    "Releasees" means (i) Defendant Huawei Device USA, Inc. as well as all of Huawei's current or former directors, officers, members, administrators, agents, insurers, beneficiaries, trustees, employee benefit plans, representatives, servants, employees, attorneys, parents, subsidiaries, Affiliates, divisions, branches, units, shareholders, investors, contractors, successors, joint venturers, predecessors, related entities, and assigns, and all other individuals and entities acting on Huawei's behalf,  (ii) Defendant Google LLC, as well as all of Google's current or former directors, officers, members, administrators, agents, insurers, beneficiaries, trustees, employee benefit plans, representatives, servants, employees, attorneys, parents, subsidiaries, Affiliates, divisions, branches, units, shareholders, investors, contractors, successors, joint venturers, predecessors, related entities, and assigns, all other individuals and entities acting on Google's behalf, and (iii) Google North America Inc. (a subsidiary of Google), as well as all of Google North America Inc.'s current or former directors, officers, members, administrators, agents, insurers, beneficiaries, trustees, employee benefit plans, representatives, servants, employees, attorneys, parents, subsidiaries, Affiliates, divisions, branches, units, shareholders, investors, contractors, successors, joint venturers, predecessors, related entities, and assigns, all other individuals and entities acting on Google North America Inc.'s behalf.

1.40    "Releasing Class Members" means all Settlement Class Members, except those who appear on the Exclusion List, and each of their respective current or former directors, officers, trustees, beneficiaries, insurers, predecessors, successors, assigns, legatees, heirs, partners, agents, personal representatives, and all other individuals or entities acting on a Releasing Class Member's behalf.

1.41    "Releasing Named Plaintiffs" means the named Plaintiffs in this Action: Edward Beheler, Brian Christensen, Yuriy Davydov, Alex Gorbatchev, Rebecca Harrison, Zachary Himes,

Kenneth Johnston, Taylor Jones, Justin Leone, Jonathan Makcharoenwoodhi, Anthony Martorello, James Poore, Jr., and Paul Servodio, on behalf of themselves and each of their respective insurers, predecessors, successors, assigns, legatees, heirs, attorneys, agents, personal representatives, and all other individuals or entities acting on the Plaintiff's behalf.

1.42   "Residual Settlement Payment" means the amount the Cy Pres Recipient identified in § 1.12 shall receive from the Net Settlement Fund if any funds remain after Settlement Payments are made.

1.43   "Service Award" means the award sought by each Class Representative in consideration for their service during the course of the Action and subsequently approved by the Court. Any such Service Award is separate and apart from any Settlement Payments the Class Representative may receive as a result of submitting a Claim as a Settlement Class Member.

1.44   "Settlement Administrator" means KCC, the firm that will provide Notice and Claims administration services in connection with the Settlement Agreement.

1.45   "Settlement Amount" means Nine Million Seven Hundred Fifty Thousand Dollars ($9,750,000), which shall be paid to the Escrow Agent by Defendants, as detailed in § 2, below, as follows:

1.45.1 The "Advance" means the payment of Two Hundred Thousand Dollars ($200,000) to be paid within 30 business days after the entry of the Preliminary Approval Order; and

1.45.2 The "Balance" means the payment of Nine Million Five Hundred and Fifty Thousand Dollars ($9,550,000) to be paid within 30 business days after the entry of the Final Approval Order.

1.46    "Settlement Class" means all persons within the United States who purchased a Nexus 6P smartphone, other than for resale, between September 29, 2015 and the date the Court grants Preliminary Approval of this Settlement. Excluded from the Settlement Class are (a) Huawei and Google, and their officers, directors, employees, subsidiaries, and Affiliates; (b) all judges assigned to this case and any members of their immediate families; and (c) the parties' counsel in this litigation.

1.47    "Settlement Class Members" means members of the Settlement Class.

1.48    "Settlement Class Period" means the period from September 29, 2015 through the date the Court grants Preliminary Approval of this Settlement.

1.49    "Settlement Fund" means a cash fund of a total of $9,750,000 to be paid by Defendants in accordance with the terms of this Settlement Agreement.

1.50    "Settlement Payment" means the amount a Claimant shall receive from the Net Settlement Fund in accordance with the Plan of Allocation.

1.51    "Settlement Website" means a website created and maintained by the Settlement Administrator for the purpose of providing the Settlement Class with Notice of the proposed Settlement. This website will allow Settlement Class Members to submit Claims, update their contact information and payment method, and opt-out of the Agreement.

1.52    "Supplemental Settlement Agreement" means an agreement signed by the Parties, which provides Defendants the option to withdraw from the Settlement if an agreed upon number of Settlement Class Members who exclude themselves from the Class is exceeded, which number shall be submitted to the Court *in camera* or under seal, and kept confidential by the Parties unless the Court orders otherwise.

1.53     "Valid Claim" means a Settlement Class Member's written Claim that the Settlement Administrator has deemed valid and timely and accepted for Settlement Payment.

1.54     "Website Notice" means the formal legal notice of the proposed Settlement terms that will be hosted on the Settlement Website, as approved by Class Counsel, Defendants' Counsel, and the Court.

2.     **Settlement Relief**

2.1     Settlement Fund. Defendants' total financial commitment under this Agreement shall be $9,750,000.00. Within 30 business days after the entry of the Preliminary Approval Order, Defendants shall pay, or cause to be paid, the Advance by check or wire transfer to the Escrow Agent in accordance with the instructions to be provided by the Escrow Agent as necessary to make payments for initial Notice and Administrative Costs. Within 30 business days after the entry of the Final Approval Order, Defendants shall pay or cause to be paid, the Balance in accordance with the instructions to be provided by the Escrow Agent.  The Settlement Amount may be paid by wire transfer, by delivering to the Escrow Agent a check or checks payable to the Settlement Fund, by any combination of those methods, or in any other manner agreed upon by Plaintiffs and Defendants. Within seven (7) days of execution of this Agreement, the Escrow Agent will furnish to Defendants' Counsel adequate payment instructions consisting of wire transfer instructions, instructions for payment by check, and a completed IRS form W-9 for the Settlement Amount, including an address and tax ID number. The interest from this escrow account will accrue to the benefit of the Settlement Class if the Court grants final approval of the Agreement.  But, if the Court does not grant final approval of the Agreement, the interest and payment will be returned to Defendants less the portion of the amount applied to provide Notice to the Settlement Class.

2.2     Escrow.  The Escrow Agent will place the Settlement Fund in an interest-bearing account (the "Account") created by order of the Court intended to constitute a "qualified settlement fund" ("QSF") within the meaning of Section 1.468B-1 of the Treasury Regulations ("Treasury Regulations") promulgated under the U.S. Internal Revenue Code of 1986, as amended (the "Code"). Defendants shall be the "transferor" to the QSF within the meaning of Section 1.468B-1(d)(1) of the Treasury Regulations with respect to the Settlement Fund or any other amount transferred to the QSF pursuant to this Settlement Agreement. The Settlement Administrator shall be the "administrator" of the QSF within the meaning of Section 1.468B-2(k)(3) of the Treasury Regulations, responsible for causing the filing of all tax returns required to be filed by or with respect to the QSF, paying from the QSF any taxes owed by or with respect to the QSF, and complying with any applicable information reporting or tax withholding requirements imposed by Section 1.468B-2(l)(2) of the Treasury Regulations or any other applicable law on or with respect to the QSF. Defendants and the Settlement Administrator shall reasonably cooperate in providing any statements or making any elections or filings necessary or required by applicable law for satisfying the requirements for qualification as a QSF, including any relation-back election within the meaning of Section 1.468B-1(j) of the Treasury Regulations.

2.2.1    Defendants, Defendants' Counsel, and Releasees shall have no liability, obligation or responsibility with respect to the investment, disbursement, or other administration or oversight of the Settlement Fund or QSF and shall have no liability, obligation or responsibility with respect to any liability, obligation or responsibility of the Escrow Agent or Settlement Administrator, including but not limited to, liabilities, obligations or responsibilities arising in connection with the investment, disbursement or other administration of the Settlement Fund and QSF.

2.2.2    Defendants' transfers of their respective contributions to the Settlement Fund to the Escrow Agent shall constitute full and complete satisfaction of their obligations under this Agreement. Following the Defendants' transfers of their respective contributions to the Settlement Fund, no Defendant nor any Releasees shall have any liabilities, obligations or responsibilities with respect to the payment, disbursement, disposition or distribution of the Settlement Fund. Settlement Class Members shall look solely to the Settlement Fund for settlement and satisfaction against any Defendant and any Releasees of all claims that are released herein; Fee, Cost, and Expense Award; Notice and Administrative Costs; all Service Awards; and all administrative or other costs and expenses arising out of or related to the Action or the Settlement. Settlement Class Members shall not under any circumstances be entitled to any further payment from any Defendant or any Releasees with respect to the Released Claims, the Action or the Settlement. In the event that the Settlement Agreement becomes final and effective, payment of the Settlement Fund will fully satisfy any and all Released Claims. Except as provided by order of the Court, no Settlement Class Member shall have any interest in the Settlement Fund or any portion thereof.

2.3    All funds in the escrow account shall be deemed and considered to be *in custodia legis* of the Court, and shall remain subject to the jurisdiction of the Court until such time as such funds shall be distributed pursuant to the Agreement and/or further order(s) of the Court.

2.4    Taxes.  Notwithstanding any effort, or failure, of the Settlement Administrator or the Parties to treat the Account as a QSF, any tax liability, together with any interest or penalties imposed thereon, incurred by any Defendant or any Releasees resulting from income earned on the Settlement Fund or the Account or payments made from the Account (or the receipt of any payment under this paragraph) shall be reimbursed from the Account in the amount of such tax

liability, interest or penalties promptly upon and in no event later than five (5) days after any Defendant's or any Releasees' written request to the Settlement Administrator.

2.4.1    For avoidance of doubt, neither the Defendants nor any Releasees nor Class Counsel shall have any liability, obligation or responsibility whatsoever for tax obligations arising from payments to any Claimant, or based on the activities and income of the QSF. In addition, neither the Defendants nor any Releasees shall have any liability, obligation or responsibility whatsoever for tax obligations arising from payments to Class Counsel. The QSF will be solely responsible for its tax obligations. Each Claimant will be solely responsible for his or her tax obligations. Each Class Counsel attorney or firm will be solely responsible for his, her, or its tax obligations.

2.5    Disposition of the Settlement Fund. The Settlement Fund shall be applied as follows:

(i)    to pay all Notice and Administrative Costs;

(ii)    to pay the taxes described herein;

(iii)    after entry of the Final Approval Order, to pay the Fee, Cost, and Expense Award, and any Service Awards; and

(iv)    after the Effective Date, to distribute the Net Settlement Fund to Claimants in accordance with the Final Approval Order or any subsequent order of the Court.

2.6    Settlement Payments to Settlement Class Members.  After the Effective Date, Settlement Payments shall be made from the Net Settlement Fund to Settlement Class Members who submit Valid Claims in accordance with the Plan of Allocation.

2.7    Defendants shall have no liability whatsoever with respect to: (i) any act, omission, or determination by Class Counsel, the Escrow Agent, or the Settlement Administrator, or any of their respective designees or agents, in connection with the administration of the settlement or

otherwise; (ii) the management, investment, or distribution of the Settlement Fund; (iii) the Plan of Allocation; (iv) the determination, administration, or calculation of claims to be paid to Claimants from the Settlement Fund; or (v) the payment or withholding of taxes or related expenses, or any expenses or losses incurred in connection therewith.  No person shall have any claim of any kind against Defendants with respect to the matters set forth in §§ 2.5 and 2.6 hereof; and the Releasing Class Members, Releasing Named Plaintiffs, and Class Counsel release Defendants from any and all liability and claims arising from or with respect to the administration, investment or distribution of the Settlement P Fund.

2.8     No person shall have any claim against Class Representatives, Class Counsel or the Settlement Administrator, or any other person designated by Class Counsel, based on determinations or distributions made substantially in accordance with this Agreement and the settlement contained herein, the Plan of Allocation, or further order(s) of the Court.

2.9     Default Payment Method. For each Claimant, the Settlement Administrator shall, by default, provide Settlement Payments in a single installment through an Electronic Payment option to be selected by Claimant on the Claim form.

> (i)     Settlement Class Members with Valid Claims who elect to receive an Electronic Payment, but fail to provide sufficient or correct information to permit such Electronic Payment, shall, after a reasonable attempt to resolve any such Settlement Payment issues, relinquish their right to Settlement Payments.

2.9.1   Option to Change Payment Method. Claimants may elect to change the Default Payment Method by which they receive their Settlement Payment and instead receive a physical check mailed to their address; Claimants may make this change when they submit the

Claim Form. The Claim Form will request any additional payment information necessary for the Settlement Administrator to provide the Settlement Payment through the method the Claimant elects. Settlement Class Members who elect to receive a physical check shall have 90 days from its date to cash that check.

2.9.2   Minimum Payment. Notwithstanding §§ 2.5-2.6 above, no Settlement Payment shall be made to a Claimant who has elected to receive a physical check instead of an Electronic Payment if the total amount of that Settlement Payment would be less than $2.00.  Any such monies shall be distributed equally to other Claimants (those who either elected to receive an Electronic Payment or who elected to receive a physical check, but whose claims exceed $2.00), provided that total payments to any Claimant do not exceed the maximum payment caps for each claim group set forth in the Plan of Allocation.

2.10   Distribution of Residual Funds. If, after the process outlined in §§ 2.5-2.6 above is completed, additional funds remain in the Net Settlement Fund, these funds, together with any funds from failed Electronic Payments and uncleared physical checks, shall be distributed as follows:

2.10.1  Failed Electronic Payments and Uncleared Checks. Any funds from failed Electronic Payments and uncleared physical checks shall be returned to the Net Settlement Fund and redistributed to Settlement Class Members for whom Electronic Payments or physical checks were successful on an equal basis, provided that total payments to any Claimant do not exceed the maximum payment caps for each claim group in the Plan of Allocation. Notwithstanding this provision, no Settlement Payment shall be made to a Settlement Class Member under this section if the amount of this payment would be less than $2.00 and the Claimant has elected to receive a physical check instead of an Electronic Payment.

2.10.2  If less than 100% of the Net Settlement Fund is distributed to Claimants following the redistribution described in § 2.10.1, the Parties will confer regarding the disposition of the balance of the Net Settlement Fund.  Such disposition may include additional notice to non-participating Settlement Class Members, further distributions to participating Settlement Class Members, or distribution to the Cy Pres Recipients, as approved by the Court. Plaintiffs' Motion for Preliminary Approval shall include a declaration detailing the means by which any proposed *cy pres* recipients were selected and how any *cy pres* funds will be used. The Cy Pres Recipient shall be selected so that Counsel and the Parties do not derive a direct or indirect benefit from the selection of such organization as the recipient of a charitable contribution.  There will be no *cy pres* distribution unless the Court finds that the parties have in good faith exhausted all reasonable efforts to distribute the Net Settlement Fund.

2.11    Timing of Payment. Settlement Payments from the Net Settlement Fund shall be distributed to Claimants within 30 days following the Effective Date.

3.    **Claims Process**

3.1    Claim Form. Each Settlement Class Member shall be entitled to submit a Claim for Settlement Payment as described in this section.

3.1.1   The Claim Form will be available on the Settlement Website and may be completed and submitted online or in hard copy sent by postal mail to the Settlement Administrator.

3.1.2   To the extent practicable, Claim Forms will be prepopulated with Settlement Class Member names and email addresses.

3.1.3   The Claim Form shall, among other terms: (a) require the Settlement Class Member to confirm or provide his or her current contact information; (b) invite the Settlement

Class Member to attach the documents and make the attestations under oath that are set out in the Plan of Allocation; and (c) require the Settlement Class Member to affirm under oath that the information they submit is, to the best of their knowledge, true and correct.

3.2     Deadline to File Claims. The Claims Deadline shall be 60 days after the Notice Date. To be considered timely, all Claims Forms must be submitted on the Settlement Website or mailed to the Settlement Administrator by the Claims Deadline, which shall be clearly stated in the Notice and on the Claim Form.

3.2.1     For Claim Forms submitted electronically on the Settlement Website, the deadline is 11:59 p.m. PST on the Claims Deadline.

3.2.2     For Claim Forms mailed to the Settlement Administrator, the Claims Form must be postmarked by 11:59 p.m. PST on the Claims Deadline.

3.2.3     Late Claims may be considered if deemed appropriate by the Settlement Administrator in consultation with Class Counsel, or if ordered by the Court.

3.3     Claims Review. The Settlement Administrator shall review all Claims to determine their validity and appropriate classification under the Plan of Allocation. The Settlement Administrator shall reject any Claim that does not comply in any material respect with the instructions on the Claim Form; is not submitted by a Settlement Class Member; is a duplicate of another Claim; is a fraudulent Claim; or is submitted after the Claims Deadline.  The Settlement Administrator shall confirm that all persons who submit Claims either (a) received Email Notice or Supplemental Postcard Notice or (b) submitted a proof of purchase for their Nexus 6P.  The Settlement Administrator shall cross-reference Claims against lists of Settlement Class Members provided by Class Counsel, Huawei and Google in accordance with § 4.1.3.  The Settlement Administrator shall cross-reference Claims against information provided by Google to determine,

to the extent possible, whether the Claimants who purchased a Nexus 6P from Google received a Pixel XL as a replacement device for a Nexus 6P. The Settlement Administrator shall cross-reference Claims in Group 3, as defined in the Plan of Allocation, against information provided by Google to determine, to the extent possible, whether Claimants in Group 3 who purchased a Nexus 6P from Google received a Nexus 6P as a replacement device for a Nexus 6P. The decision of the Settlement Administrator shall be final as to the determination of the Claimant's recovery, subject to § 3.6 below.

3.4     Curable Deficiencies. Notwithstanding § 3.3, above, prior to the rejection of a Claim Form, the Settlement Administrator shall communicate with the person or entity who submitted the Claim in an effort to remedy any curable deficiencies in the Claim Form.

3.5     Notification of Rejected Claims. Following any effort to resolve any curable deficiencies, the Settlement Administrator shall promptly notify all Rejected Claimants whose Claim Forms the Settlement Administrator proposes to reject, in whole or in part, and provide its reasons.

3.5.1   If the Claim Form was submitted online, the Rejected Claimant shall be notified by email at the email address provided.

3.5.2   If the Claim Form was submitted by postal mail, the Rejected Claimant shall be notified by email if the Settlement Class Member has provided an email address, or, if not, by postal mail at the physical address provided.

3.6     Claims Disputes and Inquiries. The Settlement Administrator shall notify Class Counsel and Defendants' Counsel of any disputes regarding the rejection of a Claim. Class Counsel and Defendants' Counsel may review any Claims rejected by the Settlement Administrator. If Class Counsel and Defendants' Counsel agree that a Claim was improperly

rejected, the Claim shall be deemed valid and paid. If Class Counsel and Defendants' Counsel do not agree as to whether a Claim was improperly rejected, the decision of the Settlement Administrator shall be final.

3.7     Claims Processing. As soon as reasonably possible after the Claims Deadline, after all Claims have been processed to determine their validity, the Settlement Administrator will provide Class Counsel and Defendants' Counsel with a list of Claimants with Valid Claims, including the Settlement Payment and claim group for each Claimant; the total number of Claimants in each claim group; and a list of all Claims it deems invalid or untimely.

3.8     Reporting and Claims Database. The Settlement Administrator will maintain a database of Claims, which will include all relevant information captured from Claimants' Claim Forms.

4.      **Notice and Administration**

4.1     Notice to the Settlement Class. Direct Notice of the Settlement will be made to Settlement Class Members as set forth below.

4.1.1   Notice shall be completed as soon as reasonably practicable, but no later than 60 days following entry of the Preliminary Approval order.

4.1.2   Notice shall be conducted in accordance with the Notice Plan. The content of all forms of Notice, as specified in §§ 4.2-4.6 below, will be jointly agreed to by the Parties.

4.1.3   Within ten (10) business days following entry of the Preliminary Approval Order, Huawei and Google shall provide to the Settlement Administrator, to the extent the information is reasonably available, lists of substantially all Settlement Class Members that purchased Nexus 6Ps directly from Huawei, Google or Google North America Inc., as well as their email addresses associated with their purchases, and their physical addresses associated with the

shipment.  Within ten (10) business days following entry of the Preliminary Approval Order, Class Counsel shall provide to the Settlement Administrator lists of all Settlement Class Members that purchased Nexus 6Ps from authorized resellers, as well as their email addresses and their physical addresses, to the extent the information is reasonably available.

       4.1.4    All Notice and Administrative Costs shall be paid from the Settlement Fund.

    4.2     Direct Email Notice. Within twenty-one (21) days of receiving Settlement Class Members' contact information from Class Counsel and Defendants, as specified in § 4.1.3 above, the Settlement Administrator shall email Notice of the Settlement to all Settlement Class Members for which it has email addresses.

       4.2.1    The Email Notice will include contact information for Class Counsel to answer questions; will provide a link to a Claim Form where the Settlement Class Member can submit a Claim; will provide a link to the Settlement Website; will provide instructions on how to access the case docket via PACER or in person at any of the Court's locations; will list contact information for the Settlement Administrator; will state the date of the Final Fairness Hearing, clearly state that the date may change without further notice to the class, and advise Settlement Class Members to check the Settlement Website or the Court's PACER site to confirm that the date has not been changed.  The Email Notice will further advise Settlement Class Members of the Objection and Exclusion Deadline; methods for opting out; and the consequences of opting out. The Email Notice will further advise Settlement Class Members who wish to object to the Settlement to send their written objections only to the Court. The Email Notice shall make clear that the Court can only approve or deny the Settlement and cannot change the terms of the Settlement.

4.2.2    The Settlement Administrator will monitor the Email Notice process and optimize the delivery of the Email Notice to maximize the distribution of the Email Notice.

4.2.3    For Email Notices sent to Settlement Class Members that the Settlement Administrator can reasonably determine were not opened, the Settlement Administrator will send at least one additional Email Notice to such Settlement Class Members prior to the Supplemental Postcard Notice provision below (*see* § 4.3).   Class Counsel may with the concurrence of Defendants' Counsel direct the Settlement Administrator to send additional notice to Settlement Class Members to encourage the filing of claims.

4.3    Supplemental Postcard Notice. Within 14 days after the Email Notices in § 4.2 above have been completed, the Settlement Administrator will mail Supplemental Postcard Notice to all Settlement Class Members to whom Email Notice bounced (as reasonably determined by the Settlement Administrator) and for whom a physical address is available, and all Settlement Class Members for whom the Parties provided a physical address but not an email address. The Postcard Notice will include the Settlement Website and contact information for the Settlement Administrator.

4.4    Website Notice. Within ten (10) days of entry of the Preliminary Approval order, the Settlement Administrator will post the Website Notice in a user-accessible format on the Settlement Website.

4.4.1    Class Counsel, Defendants' Counsel, and the Settlement Administrator will jointly select the domain name for the Settlement Website.

4.4.2    The Settlement Website will include contact information for Class Counsel to answer questions; contact information for the Settlement Administrator; the Claim Form and Opt-Out Form; answers to frequently asked questions; a list of important deadlines, including the

Claims Deadline, the Objection and Exclusion Deadline, and the date of the Final Fairness Hearing; case documents, including motions for approval and for attorneys' fees and any other important documents in the case; and instructions on how to access the case docket via PACER or in person at any of the Court's locations.  The Settlement Website will clearly state that the Final Fairness Hearing date may change without further notice to the class, and advise Settlement Class Members to check the Settlement Website or the Court's PACER site to confirm that the date has not been changed.  The Settlement Website will advise Settlement Class Members of the consequences of opting out and will further advise Settlement Class Members who wish to object to the Settlement to send their Objections only to the Court.  The Settlement Website will make clear that the Court can only approve or deny the Settlement and cannot change the terms of the Settlement.  Defendants' Counsel and Class Counsel must agree to any additions or revisions to the Settlement Website design or content.

       4.4.3    The Settlement Website will remain active for at least 90 days following the Effective Date of the Settlement. However, the Settlement Administrator will disable online submissions through the Claim Form and the Opt-Out Form immediately following the Claims Deadline and the Objection and Exclusion Deadline.

    4.5    Press Release. Within twenty-one (21) days after KCC receives Settlement Class Members' contact information from Class Counsel and Defendants, as specified in § 4.1.3 above, Class Counsel will issue a Press Release, which Defendants' Counsel will have the opportunity to review and reasonably approve prior to publication, providing Notice of the Settlement, a link to the Settlement Website, and contact information for the Settlement Administrator.

       4.5.1    The Press Release will be issued through PR Newswire's USl commercial newswire service and will also be posted on the Settlement Website and Class Counsel's website.

4.6     Supplemental Digital Notice. In the unlikely event that the Settlement Administrator determines that less than 70% of the Settlement Class is contacted through dissemination of the Direct Email Notice, the Supplemental Postcard Notice, the Website Notice, and the Press Release, then, within seven (7) days after the Supplemental Postcard Notice in § 4.3 above has been completed, the Settlement Administrator will provide Supplemental Digital Notice to Settlement Class Members.

4.6.1   The Supplemental Digital Notice would include digital advertisements using programmatic purchasing, using an advertising network to be jointly agreed to by the Parties, to reach Settlement Class Members.

4.7     CAFA Notice. Not later than 10 days after this Settlement Agreement is filed with the Court, the Settlement Administrator, at Defendants' direction, shall serve notice of the Settlement and other required documents upon relevant government officials in accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715. Prior to the Preliminary Approval hearing, the Settlement Administrator shall provide proof of service of such notice for filing with the Court.

4.8     Settlement Administrator. The Settlement Administrator shall help implement the terms of the Settlement Agreement. The Settlement Administrator shall be responsible for:

(a)     Establishing, designing, and maintaining the Settlement Website, which will be accessible through commonly used internet service providers and will, among other things, be used for the electronic submission of Claim Forms;

(b)     Disseminating Notice, including Direct Email Notice, Supplemental Postcard Notice, Website Notice, Supplemental Digital Notice, as needed,

and CAFA Notice, in accordance with this Agreement, the Notice Plan, and the Court's orders;

(c)     Receiving and processing requests for Claim Forms, and promptly delivering Claim Forms to Class members who request them;

(d)     Monitoring and responding to inquiries from Settlement Class Members in a timely fashion and, where necessary, forwarding such written inquiries to Class Counsel;

(e)     Accurately and objectively describing the terms of the Agreement in communications with Settlement Class Members, including training its employees and agents accordingly;

(f)     Receiving and compiling Opt-Out Forms and any other correspondence requesting exclusion from the Settlement;

(g)     Receiving and processing Claims, including by maintaining a database of Claims and determining the eligibility of Claims for payment consistent with this Agreement or as otherwise ordered by the Court, and distributing Settlement Payments to Settlement Class Members;

(h)     Establishing appropriate claim auditing and verification protocols and procedures in consultation with Class Counsel;

(i)     Satisfying Defendants' requirements for cybersecurity and protection of customer information;

(j)     Providing periodic reports on Claims, Objections, Opt-Out Forms and any other requests for exclusion from the Settlement, and any other such

information that may be reasonably requested by Class Counsel and Defendants' Counsel;

(k)     Preparing a declaration attesting to compliance with the Notice requirements in this Agreement and providing such declaration to Class Counsel;

(l)     Seeking further clarification or authorization from Class Counsel when necessary for performance of its duties and the expenditure of cash from the Settlement Fund; and

(m)     Otherwise assisting with implementation and administration of the terms of this Settlement Agreement.

4.9     Administrative Costs Estimate. The Parties will obtain from the Settlement Administrator its best estimate of such anticipated administrative costs, which shall then be set aside from the Settlement Fund.

5.     **Objections and Exclusions**

5.1     Objections. Any Settlement Class Member who has not submitted a timely written Opt-Out Form and who wishes to object to the fairness, reasonableness, or adequacy of the Settlement, the Fee, Cost, and Expense Award, or the Service Awards must comply with the following requirements:

5.1.1     Content of Objections. All Objections and supporting papers must be in writing and must:

(a)     Clearly identify the case name and number, *In re Nexus 6P Products Liability Litigation*, Case 5:17-cv-02185-BLF;

(b)     Include the full name, address, telephone number, and email address of the person objecting;

(c)     Include the full name, address, telephone number, and email address of the Objector's counsel (if the Objector is represented by counsel);

(d)     State whether the objection applies only to the objector, to a specific subset of the class, or to the entire class, and also state with specificity the grounds for the objection; and

(e)     Be verified by an accompanying declaration submitted under penalty of perjury or a sworn affidavit.

5.1.2   Submission of Objections. Any Objections from Settlement Class Members regarding the proposed Settlement Agreement must be submitted in writing to the Court. If a Settlement Class Member does not submit a timely written Objection, the Settlement Class Member will not be able to participate in the Final Fairness Hearing.

5.1.3   Deadline for Objections. Objections must be submitted by the Objection and Exclusion Deadline, which is 60 days after the Notice Date.

(a)     If submitted through ECF, Objections must be submitted on this date by 11:59 p.m. PST.

(b)     If submitted by postal mail, Objections must be postmarked by the Objection and Exclusion Deadline. The date of the postmark on the envelope containing the written statement objecting to the Settlement shall be the exclusive means used to determine whether an Objection and/or intention to appear has been timely submitted. In the event a postmark is illegible or unavailable, the date of mailing shall be deemed to be three days

prior to the date that the Court scans the Objection into the electronic case docket.

(c)      Settlement Class Members who fail to submit timely written Objections in the manner specified above shall be deemed to have waived any objections and shall be forever barred from making any objection to the Agreement and the proposed Settlement by appearing at the Final Fairness Hearing, appeal, collateral attack, or otherwise.

5.1.4    Attendance at Final Fairness Hearing. Any Objector who timely submits an Objection has the option to appear and request to be heard at the Final Fairness Hearing, either in person or through the Objector's counsel. Any Objector wishing to appear and be heard at the Final Fairness Hearing must include a Notice of Intention to Appear in the body of the Objector's Objection. Objectors who fail to submit or include this Notice of Intention to Appear may not speak at the Final Fairness Hearing without permission of the Court.

5.1.5    Objectors' Attorneys' Fees and Costs. If an Objector makes an Objection through an attorney, the Objector shall be solely responsible for the Objectors attorneys' fees and costs.

5.1.6    No Solicitation of Settlement Objections. At no time shall any of the Parties or their counsel seek to solicit or otherwise encourage Settlement Class Members to submit written Objections to the Settlement or encourage an appeal from the Court's Final Approval Order.

5.2      Requests for Exclusion. The Notice shall advise all Settlement Class Members of their right to exclude themselves from the Settlement. This Settlement Agreement will not bind Settlement Class Members who opt-out of the Settlement.

5.2.1    How to Opt-Out. To request to be excluded from the Settlement, Settlement Class Members must timely submit a completed Opt-Out Form. This Opt-Out Form may be completed electronically on the Settlement Website or sent by postal mail to the Settlement Administrator.

5.2.2    Deadline to Opt-Out. To be excluded from the Settlement, the Opt-Out Form must be completed by the Objection and Exclusion Deadline, which is 60 days after the Notice Date.

(i)    If submitted electronically, the Opt-Out Form must be submitted no later than 11:59 p.m. PST on or before the Objection and Exclusion Deadline.

(ii)    If submitted by postal mail, the Opt-Out Form must be postmarked, no later than the Objection and Exclusion Deadline. The Settlement Class Member must pay for Postage.

5.2.3    Effect of Opt-Out. Any person or entity who falls within the definition of the Settlement Class and who validly and timely requests exclusion from the Settlement shall not be a Settlement Class Member; shall not be bound by the Settlement Agreement; shall not be eligible to make a Claim for any benefit under the terms of the Settlement Agreement; and shall not be entitled to submit an Objection to the Settlement.

5.2.4    Exclusion List. No later than 14 days after the Objection and Exclusion Deadline, the Settlement Administrator shall provide Class Counsel and Defendant's Counsel with a list of all persons and entities who have timely and validly excluded themselves from the Settlement. The Exclusion List shall be filed with the Court as part of the Motion for Final Approval.

5.2.5    Termination Clause. If the number of Settlement Class Members requesting exclusion exceeds a number agreed-to by the Parties in the Supplemental Settlement Agreement, then either Defendant may notify Class Counsel in writing that they have elected to terminate this Settlement Agreement.  Such notification of intent to terminate the Settlement Agreement must be provided a minimum of 7 days before the filing deadline for the motion seeking Final Approval. If this Settlement Agreement is terminated, it will be deemed null and void *ab initio* and § 7.5 below will apply. This confidential opt-out figure shall be communicated to the Court by the Parties via a sealed writing, in order to help discourage manipulation of the Settlement.

6.    **Releases**

6.1    No Admission of Liability. This Settlement Agreement is made in compromise of a dispute. Neither the Agreement nor anything that the Parties stated or did during the negotiation of the Agreement shall be construed or used in any manner as an admission of liability or evidence of any party's fault, liability, or wrongdoing. Defendants expressly deny any liability or wrongdoing whatsoever.

6.2    Named Plaintiffs' and Settlement Class Members' Release. Upon the Effective Date of this Agreement, all the Releasing Named Plaintiffs and Releasing Class Members shall release, forever discharge, will not in any manner pursue this Action, and shall be forever barred from asserting, instituting, or maintaining against the Releasees, any and all Released Claims, as defined in § 1.38 of this Agreement.

6.3    Release of Unknown Claims. Releasing Named Plaintiffs and Releasing Class Members fully understand that the facts on which this Settlement Agreement is executed may be different from the facts now believed by Releasing Named Plaintiffs, Releasing Class Members, and their Counsel to be true. Releasing Named Plaintiffs and Releasing Class Members expressly

accept and assume the risk of this possible difference in facts and agree that this Settlement Agreement remains effective despite any difference in facts. Releasing Named Plaintiffs and Releasing Class Members further agree that this waiver is an essential and material term of this release and the Settlement that underlies it and that without such waiver the Settlement would not have been agreed to.

6.4    Waiver of California Civil Code § 1542. As to the Released Claims only, Releasing Named Plaintiffs and Releasing Class Members expressly waive and relinquish, to the fullest extent permitted by law, the provisions, rights, and benefits of California Civil Code § 1542, or any other similar provision under federal or state law. Releasing Named Plaintiffs and Releasing Class Members understand that California Civil Code § 1542 states:

> *A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party.*

6.5    Enforcement. The Named Plaintiffs' and Settlement Class Members' Release shall not bar a claim, complaint, action, or proceeding for breach of this Settlement Agreement, for which the Court shall retain jurisdiction to resolve and enforce.

7.    **Court Approval of the Settlement**

7.1    Cooperation to Obtain Court Approval. The Parties will jointly take all reasonable steps necessary to secure the Court's approval of this Settlement. Class Counsel will draft and file the motions for Preliminary Approval and Final Approval. Defendant's Counsel will be provided with advance copies of these papers approximately 10 calendar days prior to filing, and may join the motions or file separate briefs in support of Preliminary and Final Approval of the Settlement.

Class Counsel will be provided with advance copies of any papers in support of preliminary or final approval Defendants propose to file at least two business days prior to filing.

7.2     Settlement Class. The Parties agree that, for purposes of this Settlement, this Action should be certified and proceed as a class action under Federal Rule of Civil Procedure 23(b)(3) for settlement purposes only. Class Counsel shall serve as counsel for the Settlement Class.

7.3     Preliminary Approval. Within 30 days after the execution of this Agreement, Plaintiffs, in consultation with Defendants, shall move the Court for an order:

      (a)     Finding that the Court will likely be able to approve the Settlement under Rule 23(e)(2);

      (b)     Finding that the Court will likely be able to certify the Settlement Class for purposes of entering the Final Approval Order; and

      (c)     Finding that Notice, including the form, manner, and content of the Direct Email Notice, Supplemental Postcard Notice, and Website Notice is justified; and

      (d)     Placing the Final Fairness Hearing on the Court's calendar, with the hearing being set at least 35 days after the Objection and Exclusion Deadline, subject to the Court's availability.

7.4     Final Approval. At least 35 days prior to the Final Fairness Hearing, Plaintiffs, in consultation with Defendants, shall move the Court for the Final Approval Order seeking:

      (a)     Final Approval of the Settlement, approving the terms of this Settlement to be fair, reasonable, and adequate and in the best interest of Settlement Class Members;

(b)     A finding that the Notice complied with the Settlement Agreement, all applicable law, and due process;

(c)     Distribution of the Settlement Fund and approval of the Settlement Payments and Residual Settlement Payments; and

(d)     Dismissal of the Action and entry of a Final Approval Order.

7.5     Effect If Settlement Not Approved. The Settlement Agreement is being entered into for settlement purposes only. If the Court does not grant Preliminary Approval, does not grant Final Approval, or if the Effective Date does not occur, this Settlement Agreement will be deemed null and void ab initio. In that event:

(a)     The Preliminary Approval Order and the Final Approval Order, to the extent they have been entered by the Court, will be vacated by operation of law;

(b)     The Parties will be restored to their respective positions immediately preceding execution of the Agreement, and any intervening Court rulings or decisions shall be vacated;

(c)     No term or condition of the Agreement, or any draft thereof, or any discussion, negotiation, documentation, or other part or aspect of the Parties' settlement discussions shall have any effect; nor shall any such matter be admissible in evidence for any purpose in the Action or any other proceeding; nor shall any such matter be used in the Action for any purpose whatsoever;

(d)     Defendants will retain all of their rights to object to any attempt by Plaintiffs to reference, cite to, or rely upon, in any way, the Agreement or any factual

or legal statement or conclusion within it, including as to the feasibility of the maintenance of the Action as a class action.

7.6     Modifications Suggested by the Court. If the Court (1) suggests any modifications to the Agreement or (2) conditions either Preliminary Approval or Final Approval on modifications to the Agreement, the Parties shall, working in good faith and consistent with the Agreement, endeavor to cure any such deficiencies identified by the Court. However, the Parties shall not be obligated to make any additions or modifications to the Agreement that would affect the benefits provided to Settlement Class Members, or the cost to or burden on Defendants, the content or extent of Notices required to Settlement Class Members, or the scope of any of the releases contemplated in this Agreement.  If the Court orders or proposes such additions or modifications, the Parties will each have the right to terminate the Settlement Agreement within 7 days from the date of the Court's order or proposal. If any Party elects to terminate the Settlement Agreement pursuant to this section, the Agreement will be deemed null and void ab initio and the provisions of § 7.5 will apply.

7.7     Notwithstanding the foregoing, the Parties will not be entitled to terminate this Settlement Agreement based on any order relating to Class Counsel's anticipated motion for a Fee, Cost, and Expense Award or to Plaintiffs' anticipated motion for Service Awards to the Named Plaintiffs, nor any appeal from such order or reversal or modification thereof.

8.     **Class Counsel's Fees, Costs, and Expenses**

8.1     Fee, Cost, and Expense Award. Class Counsel will file a motion with the Court seeking a portion of the Settlement Fund as payment of their reasonable attorneys' fees, plus reimbursement of actual costs and expenses, including experts and consultants, incurred in connection with prosecuting this Action. Defendants expressly reserve the right to oppose the

motion seeking a Fee, Cost, and Expense Award for any reason, at their discretion.  Class Counsel dispute Defendants' standing to oppose the Fee, Cost, and Expense Award. The Fee, Cost, and Expense Award is within the sole discretion of the Court, and if the award is less than the amount sought by Class Counsel, this will not be a basis for setting aside the Settlement.

8.2    Disclosure of Amounts Sought. In its Motion for Preliminary Approval of the Settlement and supporting papers, Class Counsel will provide the maximum amount of the Settlement Fund it will seek from the Court as attorneys' fees, as well as the total amount of costs and expenses (or best estimates for costs and expenses not yet charged) for which it will seek reimbursement. On or before the Notice Date, these amounts will also be disclosed in the Settlement Notice, which shall be posted on the Settlement Website.

8.3    Motion for Attorneys' Fees, Costs, and Expenses. At least 35 days prior to the Objection and Exclusion Deadline, Class Counsel will file a motion for award of attorneys' fees, costs, and expenses. Class Counsel's motion for attorneys' fees, costs, and expenses will also be posted on the Settlement Website.

8.4    Timing of Payment. If awarded by the Court, the Fee, Cost, and Expense Award shall be payable from the Settlement Fund within 30 days after the date of entry of the Final Approval Order, notwithstanding the existence of any Objections, pending or forthcoming appeals, or collateral attack on the Settlement, the Fee, Cost, and Expense Award, or the Service Awards. At least 30 days prior to payment of the Fee, Cost, and Expense Award, Class Counsel shall furnish Defendants' Counsel with all necessary payment and routing information to facilitate the transfer.

8.5    Clawback of Fee, Cost, and Expense Award. If the Final Approval Order is vacated, overturned, reversed, or rendered void or unenforceable as a result of an appeal, or if the Settlement Agreement is voided, rescinded, or otherwise terminated, then Class Counsel shall, within 30 days,

repay to Defendants the Fee, Cost, and Expense Award it received, plus interest Class Counsel earned on that amount, if any. For avoidance of doubt, Class Counsel shall have no obligation under any circumstances to reimburse Defendants for any sums paid to, or that are billed by, the Settlement Administrator for Settlement administration, Notice, or any other reason.

8.6     Partial Repayment. If the Fee, Cost, and Expense Award is reduced on appeal, but all other terms of the Settlement Agreement remain in full effect, Class Counsel shall only repay the portion of the Fee, Cost, and Expense Award by which it is reduced. This partial repayment of the Fee, Cost, and Expense Award shall be applied to the Net Settlement Fund and distributed in accordance with the terms of this Settlement Agreement. For avoidance of doubt, Class Counsel shall have no obligation under any circumstances to reimburse Defendants for any sums paid to, or that are billed by, the Settlement Administrator for settlement administration, notice, or any other reason.

8.7     Letter Agreement. As a condition precedent to Defendants' obligation to pay the Fee, Cost, and Expense Award per the timing set forth in § 8.4, Class Counsel shall deliver to Defendants' Counsel a letter agreement executed by the law firms of Girard Sharp LLP and Chimicles Schwartz Kriner & Donaldson-Smith LLP, acknowledging and agreeing to their obligations under this § 8 and agreeing to the jurisdiction of the Court for the purpose of enforcing this § 8.

8.8     Distribution of Fee, Cost, and Expense Award. Class Counsel shall have sole responsibility and discretion to distribute the Fee, Cost, and Expense Award to any other attorney or law firm that may claim they are owed attorneys' fees, costs, or expenses under the terms of this Settlement.

9.      **Service Awards**

9.1      Generally. Class Counsel will seek Service Awards for each Class Representative in consideration for their service during the course of the Action and commensurate with their participation in the Action.

9.2      Amount of Service Awards. Any Service Awards are subject to the approval of the Court and shall not exceed $3,000 per Class Representative. Any such Service Awards are separate and apart from any Settlement Payments the Class Representatives may receive as a result of submitting Claims as Settlement Class Members.

9.3      Motion for Service Awards. Class Counsel will provide the specific amounts it will seek in Service Awards for the Class Representatives at the same time it files its motion for attorneys' fees and expenses. This request for Service Awards will be filed at least 30 days prior to the Objection and Exclusion Deadline. It will also be posted on the Settlement Website.

9.4      No Condition of Support. Each Class Representative shall receive any Service Award they are awarded by the Court, irrespective of whether they support the terms of the Settlement.

9.5      Payment of Service Awards. If awarded by the Court, the Service Awards shall be payable from the Settlement Fund 30 days after the Effective Date of the Settlement. At least 30 days prior to payment of the Service Awards, Class Counsel shall furnish the Settlement Administrator with all necessary payment, routing, and tax information for the Class Representatives to facilitate the transfer.

10.     **Miscellaneous Terms**

10.1     Construction and Interpretation. The following additional terms shall govern the construction and interpretation of this Agreement.

10.1.1 Knowledge and Advice of Counsel. The Parties execute this Agreement freely and voluntarily and without acting under any duress or in reliance upon any threat made by or on behalf of any other Party.  Each Party has consulted with or has had an opportunity to consult with counsel of its own choice about the legal effect of entering into this Agreement, and executes this Agreement being fully informed as to its terms, content and legal effect.

10.1.2 Entire Agreement.  This Agreement constitutes the complete, final and exclusive embodiment of the entire agreement among Plaintiffs, the Settlement Class, Huawei, and Google with regard to the subject matter hereof, and supersedes all previous or contemporaneous agreements between Plaintiffs, the Settlement Class, Huawei, and Google relating to the Agreement's subject matter, with the exception of any separate agreements between Huawei and Google.  It is entered into without reliance on any statements, promises, warranties or representations, written or oral, other than those expressly contained herein, and it supersedes any other statements, promises, warranties or representations, with the exception of any statements, promises, warranties or representations contained in any agreements between Huawei and Google. For the avoidance of doubt, any and all exhibits to this Agreement, including the Plan of Allocation set forth in Exhibit 1, are part of and are incorporated by reference into this Agreement.

10.1.3 No Construction Against Any Party. The terms of the Settlement Agreement have been negotiated at arm's-length among knowledgeable parties represented by experienced counsel. The Parties agree that the normal rule of construction that any ambiguity in a document is construed against the drafting party shall not apply to the interpretation or enforcement of the Settlement Agreement, as the Parties each participated in the drafting of the Settlement Agreement.

10.1.4 Headings and Captions. The captions or headings in this Agreement are inserted for convenience, reference, and identification purposes only, and shall neither control, define, limit, nor affect any provisions of this Agreement.

10.1.5 Severability. The invalidity or unenforceability of any provision of this Agreement shall not affect the validity or enforceability of any other provision.  If any provision (or part of a provision) of this Agreement is found to be invalid, illegal or unenforceable, the rest of the Agreement shall remain in effect.

10.2 Specific Prohibitions. The following specific prohibitions shall apply to the Settlement Agreement as follows:

10.2.1 No Assignment. The Settlement Agreement, including any of the rights and duties of each Party under the Agreement, may not be assigned without prior written approval by the other Parties.

10.2.2 No Waiver. No Party will be treated as having waived any rights or privileges, including attorney-client privilege, as the result of the Settlement Agreement. Additionally, a waiver of any breach of the Settlement Agreement by any Party shall not be deemed to be a waiver by any Party of any other breach of the Agreement.

10.2.3 No Third-Party Beneficiaries. The Settlement Agreement does not confer any benefits on any third party.

10.3 Execution in Counterparts. This Agreement may be executed by the Parties in counterparts and exchanged by electronic means, including facsimile, PDF, and other electronic means, with the same effect as if all Parties had signed the same instrument.

10.4    Amendments. Any amendment must be in writing, signed by Class Counsel and Defendant's Counsel or Defendants, and expressly state that it is amending the Settlement Agreement.

10.5    Governing Law. All claims arising out of or relating to this Agreement will be governed, interpreted, enforced, construed and controlled by the laws of the State of California, without regard to principle of conflicts or choice of law provisions.

10.6    Enforcement and Jurisdiction. The Court shall retain exclusive jurisdiction to enforce, interpret, and implement the Settlement Agreement, including any alleged violations, any disputes, and the terms of any order entered pursuant to this Agreement.

* * * * *

Remainder of Page Intentionally Left Blank.  Signature Page to Follow.

## SIGNATORIES

IN WITNESS WHEREOF, each of the Parties hereto has reviewed and approved this Agreement and has caused this Agreement to be executed on its behalf by its duly authorized counsel of record or representative.

| | |
|---|---|
| Plaintiffs Edward Beheler, Brian Christensen, Yuriy Davydov, Alex Gorbatchev, Rebecca Harrison, Zachary Himes, Kenneth Johnston, Taylor Jones, Justin Leone, Jonathan Makcharoenwoodhi, Anthony Martorello, James Poore, Jr., and Paul Servodio<br><br>Agreed to: _____<br><br>Date: April 10, 2019<br><br>GIRARD SHARP LLP<br>By: Daniel C. Girard<br><br>Agreed to: _____<br><br>Date: 4.10.2019<br><br>CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP<br>By: Benjamin F. Johns<br><br>*Attorneys for Plaintiffs and the Proposed Class* | Defendant Google LLC<br><br>Agreed to: _____<br><br>Date: 4/10/2019<br><br>DURIE TANGRI LLP<br>By: Joshua H. Lerner<br><br>*Attorneys for Defendant Google LLC, as authorized and on behalf of Defendant Google LLC* |
| | Defendant Huawei Device USA, Inc.<br><br>Agreed to: _____<br><br>Date: April 10, 2019<br><br>COVINGTON & BURLING LLP<br>By: Simon J. Frankel<br><br>*Attorneys for Defendant Huawei Device USA, Inc., as authorized and on behalf of Defendant Huawei Device USA, Inc.* |

45                              **CLASS ACTION SETTLEMENT AGREEMENT**
*In re Nexus 6P Products Liability Litigation*
**United States District Court Northern District of California**
Case No. 5:17-cv-02185-BLF

EXHIBIT 1

**PLAN OF ALLOCATION FOR NET SETTLEMENT FUND**

*In re Nexus 6P Products Liability Litigation*, Case No. 5:17-cv-02185-BLF-VKD

The Net Settlement Fund will be distributed according to the following plan, subject to approval by the Court. All capitalized terms contained and not otherwise defined herein have the meanings ascribed to them in the Settlement Agreement dated April 10, 2019.

**I.    General Provisions**

A.    All class members are eligible to submit claims for a share of the Net Settlement Fund. Class members who do not receive notice by email or a postcard from the Settlement Administrator will need to provide proof of purchase to be eligible for payment. Documented claims pertaining to the issues alleged in the lawsuit will be entitled to a proportionally greater share of the Net Settlement Fund as set forth in Section III, below.

B.    Class members may submit completed Claim Forms by U.S. mail or through the Settlement Website.

C.    To be eligible for payment, claims must be submitted or postmarked no later than 60 days after the Notice Date. Late claims may be considered if deemed appropriate by the Settlement Administrator in consultation with Class Counsel, or if ordered by the Court.

D.    The Settlement Administrator will establish and maintain the Settlement Website, which will be accessible through commonly used internet service providers and will, among other things, be used for the electronic submission of Claim Forms. The Settlement Administrator will be responsible for receiving and processing requests for Claim Forms; promptly delivering Claim Forms to Class members who request them; establishing, in consultation with Class Counsel, appropriate claim auditing and verification protocols and procedures; and determining the eligibility of claims for payment consistent with this plan or as otherwise ordered by the Court.

**II.    The Claim Form**

A.    There will be one Claim Form, and each Nexus 6P may be the subject of only one claim. Class members who purchased multiple Nexus 6Ps may submit a separate claim for each Nexus 6P they purchased.

B.    To the extent practicable, Claim Forms will be prepopulated with Settlement Class member names and email addresses.

C.    The Claim Form will require each Claimant to confirm his or her current contact information and desired payment option, and to certify that he or she is within the United States and purchased a Nexus 6P, not for resale, and that all information provided is true and correct to the best of his or her knowledge.

D.    The Claim Form will clearly state that a Claimant need not have allegedly experienced Bootloop or Battery Drain to make a claim and be eligible for payment.

E.    The Claim Form will call for Claimant to answer the following questions, which shall be answered under oath:

       1.    Whether the Claimant is in the United States and purchased a Nexus 6P.

       2.    Whether the Claimant purchased the Nexus 6P for resale.

       3.    Whether the Claimant's Nexus 6P allegedly experienced Bootloop.

       4.    Whether the Claimant's Nexus 6P allegedly experienced Battery Drain.

       5.    Whether the Claimant received a replacement Nexus 6P after it allegedly experienced Bootloop and/or Battery Drain, and if so, whether the replacement Nexus 6P allegedly experienced Bootloop and/or Battery Drain.

       6.    Whether the Claimant received a Pixel XL as a replacement for a Nexus 6P.

F.    With respect to the questions posed in Sections II.E.3, II.E.4, and II.E.5, for each answer indicating that the Claimant's Nexus 6P or replacement Nexus 6P allegedly experienced Bootloop and/or Battery Drain, the Claimant will be prompted to provide supporting documentation.

       1.    Documentation to support a claim of alleged Bootloop and/or Battery Drain may consist of, without limitation, photographs, screenshots, emails, customer service chat logs, repair records, insurance claims, Return Merchandise Authorization ("RMA") confirmations, or other credible contemporaneous evidence of alleged Bootloop and/or Battery Drain ("Documentation"). The Claims Administrator may require a Claimant who submits only an RMA to submit additional supporting documentation if necessary to establish that the Claimant suffered alleged Bootloop and/or Battery Drain.

2.      With respect to each Claim supported by Documentation, the Claims Administrator will make a final determination as to whether the Documentation submitted is sufficient to verify the Claim.

**III.     Determination of Class Member Payments**

A.      The Settlement Administrator will determine which claims are eligible for payment and will sort each eligible claim into one of the three Claim Groups defined in Section III.B below.  Each claim will be allocated a portion of the Net Settlement Fund according to the Claim Group within which it falls.

B.      The Net Settlement Fund will be allocated based on the following Claim Group structure and parameters.

1.      <u>**Group 1**</u>**:  No alleged Bootloop or Battery Drain or Undocumented Alleged Bootloop or Battery Drain**

a.   Claimants who purchased a Nexus 6P that did not experience the alleged Bootloop or Battery Drain, or who received a Pixel XL device as a replacement for a Nexus 6P, will receive a minimum payment of $5 and a maximum payment of $10 ("Group 1A").

b.   Claimants who purchased a Nexus 6P that they attested experienced alleged Battery Drain, but who did not submit Documentation, or who submitted Documentation deemed insufficient by the Settlement Administrator pursuant to Section II.F.2 above, will receive a minimum payment of $10 and a maximum payment of $45 ("Group 1B").

c.   Claimants who purchased a Nexus 6P that they attested experienced alleged Bootloop, but who did not submit Documentation, or who submitted Documentation deemed insufficient by the Settlement Administrator pursuant to Section II.F.2 above, will receive a minimum payment of $20 and a maximum payment of $75 ("Group 1C").

d.  Any payments to Group 1A, 1B, and 1C Claimants in excess of the respective minimum payments stated in the prior three subsections will be determined based on the priority of payments stated in Section III.C below.

2.  **Group 2:  Documented Alleged Bootloop or Battery Drain**

a.  Claimants who purchased a Nexus 6P that they attested experienced the alleged Battery Drain, and who submitted Documentation deemed sufficient by the Settlement Administrator pursuant to Section II.F.2 above, will receive a payment of $150 ("Group 2A").

b.  Claimants who purchased a Nexus 6P that they attested experienced the alleged Bootloop, and who submitted Documentation deemed sufficient by the Settlement Administrator pursuant to Section II.F.2 above, will receive a payment of $325 ("Group 2B").

3.  **Group 3:  Multiple documented Alleged Bootloop or Battery Drain**

a.  Claimants who purchased a Nexus 6P that they attested experienced the alleged Bootloop and/or Battery Drain, who further attested that they received a replacement Nexus 6P that experienced the alleged Bootloop and/or Battery Drain, and who submitted Documentation of the alleged Bootloop and/or Battery Drain, with respect to both the original and replacement Nexus 6P, deemed sufficient by the Settlement Administrator pursuant to Section II.F.2 above, will receive a payment of $400 ("Group 3").

C.  **Priority of Payment**

1.  The Net Settlement Fund will be allocated as follows.  An amount sufficient to pay each Group 1A Claimant $5, each Group 1B Claimant $10, and each Group 1C Claimant $20 will be set aside and reserved to make those payments.  The balance of the Net Settlement Fund will then be allocated among all Group 2A, Group 2B, and Group 3 Claimants according to the payment structure stated in Sections III.B.2 and III.B.3 above.  If the Net Settlement Fund is insufficient to pay all Group 2A, Group 2B, and Group 3 Claimants according to the payment structure stated in Sections III.B.2 and III.B.3 above, the amounts allocated to those Claimants will be proportionally reduced, so as to exhaust the Net Settlement Fund, according to the ratio of the respective payments for each of those groups stated in Sections III.B.2.a, III.B.2.b, and III.B.3.

2.      If any additional funds then remain in the Net Settlement Fund, the balance of the Net Settlement Fund will be distributed to Claimants in Groups 1B, 1C, 2A, 2B, or 3 who paid insurance deductibles to Assurant for claims for Nexus 6Ps that allegedly experienced Bootloop or Battery Drain.   To determine which Claimants qualify for such payments, the Settlement Administrator will rely on records that Assurant will provide to it on a confidential basis.   The balance of the Net Settlement Fund will be allocated to these Claimants so as to reimburse the actual insurance deductible that each such Claimant paid for a claim for a Nexus 6P that allegedly experienced Bootloop or Battery Drain.  If the balance of the Net Settlement Fund is insufficient to reimburse the actual insurance deductibles that these Claimants paid, each such Claimant will receive a payment, proportionally reduced based on the actual insurance deductible each such Claimant paid, so as to exhaust the Net Settlement Fund.

3.      If any additional funds then remain in the Net Settlement Fund, the balance of the Net Settlement Fund will be distributed, on a *pro rata* basis, to Group 1A, Group 1B, and Group 1C Claimants, up to the respective maximum payments stated in Sections III.B.1.a, III.B.1.b, and III.B.1.c. above.

D.      If any additional funds would remain in the Net Settlement Fund after payment of all eligible claims, Class Counsel will notify the Court and propose a reasonable alternative or alternatives for distribution of the remaining funds, subject to the approval of Defendants.

E.      The Settlement Administrator will pay all eligible claims according to the above parameters, in a single installment, by check or electronic payment.