EXHIBIT H

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| IN RE NEXUS 6P PRODUCTS LIABILITY LITIGATION | Case No. 5:17-cv-02185-BLF<br><br>**DECLARATION OF CARLA PEAK ON SETTLEMENT NOTICE PLAN** |
|---|---|

I, Carla Peak, declare as follows:

1. My name is Carla Peak. I have personal knowledge of the matters set forth herein, and if called as a witness I could and would testify competently to them.

2. I am a nationally recognized expert in the field of legal notice and I have served as an expert in dozens of federal and state cases involving class action notice plans.

3. I am the Vice President of Legal Notification Services for KCC, LLC ("KCC"); a firm that specializes in comprehensive class action services, including legal notification, email and postal mailing campaign implementation, website design, call center support, class member data management, claims processing, check and voucher disbursements, tax reporting, settlement fund escrow and reporting, and other related services critical to the effective administration of class action settlements. With more than 30 years of industry experience,[1] KCC has developed efficient, secure and cost-effective methods to properly handle the voluminous data and mailings associated with the noticing, claims processing and disbursement requirements of these matters to ensure the orderly and fair treatment of class members and all parties in interest. Since 1984, KCC has been retained to administer more than 6,000 class actions and distributed settlement payments totaling well over $20 billion in assets.

4. KCC has administered class action administrations for such defendants as HP-Compaq, LensCrafters, United Parcel Service, Ford, Mitsubishi, Nissan, Whirlpool, ATI Video Cards, and Twentieth Century Fox. Further, KCC has been retained as the administrator in a variety of consumer matters. Some consumer case examples with which KCC has been involved include: *Eubank v. Pella Corporation*, No. 1:06-12-04481 (N.D. Ill.) (home windows); *Rikos v. The Procter & Gamble Co*. No. 11-cv-00226 (S.D. Ohio) (Align probiotics); *In Re: Rust-Oleum Restore Marketing, Sales Practices and Products Liability Litigation*, No. 1:15-cv-01364 (N.D. Ill.) (deck and concrete products); *In re Sears, Roebuck and Co. Front-Loading Washer Products Liability Litigation*, No. 1:06-cv-07023 (N.D. Ill.) (front-loading washing machines); *Lerma v. Schiff Nutrition International, Inc*., No. 1:13-CV-07747 (N.D. Ill.) (glucosamine supplement); *Cobb v. BSH Home Appliances Corp*., No. 8:10-CV-0711 (C.D. Cal.) (clothes washing machines); *Roberts v. Electrolux Home Products, Inc*., No. 8:12-CV-01644 (C.D.

---

[1] KCC acquired Gilardi & Co. LLC in 2015. This Declaration combines the class action notice and administration experience of both firms.

1  Cal.) (clothes dryers); *Cappalli v. BJ's Wholesale Club, Inc.*, No. 1:10-CV-00407 (D. R.I.) (club
2  memberships); *Stroud v. eMachines, Inc.*, No. CJ-2003-968 L (D. Ct. Cleveland Cnty, Okla.) (personal
3  computers); and *Shames v. The Hertz Corporation*, No. 07cv2174-MMA (S.D. Cal.) (rental car fees).

4      5.    Capitalized terms have the same meaning ascribed to them as in the Settlement
5  Agreement.

## EXPERIENCE RELEVANT TO THIS CASE

7      6.    I have personally been involved in many of the largest and most significant cases,
8  including *In re Anthem, Inc. Data Breach Litigation*, No. 5:15-md-02617 (N.D. Cal.), a national class
9  action involving an alleged data breach involving approximately 79 million people who had personally
10 identifiable information data stored on Anthem's databases; *In re: Skelaxin (Metaxalone) Antitrust
11 Litigation*, No. 1:12-md-02343 (E.D. Tenn.), a multi-state antitrust settlement involving both third party
12 payors and consumers that allegedly purchased or paid for the brand and generic version of the
13 prescription drug metaxalone; *Chambers v. Whirlpool Corporation*, No. 8:11-cv-01733 (C.D. Cal.), a
14 national product defect case involving claims relating to the alleged overheating of an automatic
15 dishwasher control board; *In re Trans Union Corp. Privacy Litigation*, MDL No. 1350 (N.D. Ill.), perhaps
16 the largest discretionary class action notice campaign involving virtually every adult in the United States
17 and informing them about their rights in the $75 million settlement relating to an alleged data breach;
18 and *In re Residential Schools Litigation*, No. 00-CV-192059 (Ont. S.C.J.), the largest and most complex
19 class action in Canadian history incorporating a groundbreaking notice program to disparate, remote
20 aboriginal persons qualified to receive benefits in the multi-billion dollar settlement.

21     7.    In forming my opinions, I draw from my in-depth class action case experience. I have
22 worked in the class action notification field for over 15 years. During that time, I have been involved in
23 all aspects in the design and implementation of class action notice planning, as well as the drafting of
24 plain language notice documents that satisfy the requirements of Rule 23 and adhere to the guidelines set
25 forth in the *Manual for Complex Litigation, Fourth* and by the Federal Judicial Center ("FJC").

26     8.    I have been involved with hundreds of cases, including the dissemination of notice around
27 the globe in more than 35 languages. My c.v., attached as **Exhibit 1**, contains numerous judicial

comments citing cases I have worked on, as well as articles I have written and speaking engagements where I have discussed the adequacy and design of legal notice efforts.

9. This declaration details the Settlement Notice Plan ("Notice Plan" or "Plan") proposed here for the Settlement in *In re Nexus 6P Products Liability Litigation*, Case No. 5:17-cv-02185-BLF, in the United States District Court for the Northern District of California. The facts in this declaration are based on my personal knowledge, my conversations with Plaintiffs' counsel, as well as information provided to me by my colleagues in the ordinary course of my business at KCC.

## NOTICE PLAN

10. The Notice Plan is designed to provide notice to the following Settlement Class:

> All persons within the United States who purchased a Nexus 6P smartphone, other than for resale, between September 29, 2015 and the date the Court grants Preliminary Approval of this Settlement.
>
> Excluded from the Settlement Class are (a) Huawei and Google, and their officers, directors, employees, subsidiaries, and Affiliates; (b) all judges assigned to this case and any members of their immediate families; and (c) the parties' counsel in this litigation.

11. Rule 23 of the Federal Rules of Civil Procedure directs that the best notice practicable under the circumstances must include "individual notice to all members who can be identified through reasonable effort."2 The proposed Notice Plan satisfies this requirement. The Notice Plan provides for emailing or mailing individual notice to all Class Members who are reasonably identifiable. In my opinion, providing individual notice to the Class satisfies the requirements of due process, including its "desire to actually inform" requirement.3

### *Individual Notice*

12. It is my understanding that email and/or mailing addresses exist in Huawei and Google's records, and the records of authorized retailers subpoenaed by Plaintiffs, for all or the substantial majority

---

2 FED. R. CIV. P. 23(c)(2)(B).

3 "But when notice is a person's due, process which is a mere gesture is not due process. The means employed must be such as one desirous of actually informing the absentee might reasonably adopt to accomplish it. The reasonableness and hence the constitutional validity of any chosen method may be defended on the ground that it is in itself reasonably certain to inform those affected…" *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).

of Settlement Class Members. This data will be used to send an Email Notice to Settlement Class Members that clearly and concisely summarizes the Settlement, and in the event the Email Notice is undeliverable or unopened, a Supplemental Postcard Notice. Both the Email and Postcard Notices will direct the recipients to a website dedicated to the Settlement where they can access additional information.

### *Email Notice*

13. The Email Notice will be disseminated to all potential Settlement Class Members for whom a facially valid email address is available. The Email Notice will be created using an embedded html text format. This format will provide easy-to-read text without graphics, tables, images and other elements that would increase the likelihood that the message could be blocked by Internet Service Providers (ISPs) and/or SPAM filters. Each Email Notice will be transmitted with a unique message identifier. If the receiving e-mail server cannot deliver the message, a "bounce code" will be returned along with the unique message identifier. For any Email Notice for which a bounce code is received indicating that the message was undeliverable, at least two additional attempts will be made to deliver the Notice by email. The Email will not contain an attachment, which can increase the risk of it being caught by a junk mail filter.

14. The Email Notice will include: contact information for Class Counsel to answer questions; a link to a Claim Form where Settlement Class Members can submit a Claim; a link to the Settlement Website; instructions on how to access the case docket via PACER or in person at any of the Court's locations; list contact information for the Settlement Administrator; and state the date of the Final Fairness Hearing, that the date may change without further notice, and advise Settlement Class Members to check the Settlement Website or the Court's PACER site to confirm that the date has not been changed. The Email Notice will also include: the Objection and Exclusion Deadline; the methods for opting out; the consequences of opting out; that written objections should be sent only to the Court; and make clear that the Court can only approve or deny the Settlement and cannot change the terms of the Settlement.

15. The Email Notice will include an embedded link to the settlement website. By clicking the link, recipients will be able to easily access a more detailed Notice, the Settlement Agreement, the Claim Form and other information about the settlement. They also will be able to file a claim online.

16. If KCC can reasonably determine that an Email Notice was not opened by a Settlement Class Member, KCC will send at least one additional Email Notice to such Settlement Class Member prior to the Supplemental Postcard Notice provision below.

### *Supplemental Postcard Notice*

17. KCC will send a Supplemental Postcard Notice to all Settlement Class Members to whom Email Notice bounced (as reasonably determined by KCC) and for whom a physical address is available, and all Settlement Class Members for whom the Parties provided a physical address but not an email address. The Supplemental Postcard Notice will include the Settlement Website and contact information for the Settlement Administrator. The Supplemental Postcard Notice will be sent via United States Postal Service ("USPS") first class mail. Prior to mailing, all mailing addresses will be checked against the National Change of Address ("NCOA") database maintained by the USPS.[4] Any addresses that are returned by the NCOA database as invalid will be updated through a third-party address search service. In addition, the addresses will be certified via the Coding Accuracy Support System ("CASS") to ensure the quality of the zip code and verified through Delivery Point Validation ("DPV") to verify the accuracy of the addresses. This address updating process is standard for the class action administration industry, as well as most promotional mailings that occur today.

18. Postcard Notices returned as undeliverable will be re-mailed to any new address available through postal service information, for example, to the address provided by the postal service on returned pieces for which the automatic forwarding order has expired, or to better addresses that may be found using a third-party lookup service or "skip-tracing." Upon successfully locating better addresses, Postcard Notices will be promptly re-mailed.

### *Press Release*

19. To build additional reach and extend exposures, a party-neutral informational Press Release will be issued through PR Newswire's USl commercial newswire service and will also be posted on the Settlement Website and Class Counsel's website. Although not measurable, the Press Release will

---

[4] The NCOA database contains records of all permanent change of address submissions received by the USPS for the last four years. The USPS makes this data available to mailing firms and lists submitted to it are automatically updated with any reported move based on a comparison with the person's name and known address.

serve a valuable role by providing additional notice exposures beyond those already provided by direct notice efforts.

### *Supplemental Digital Notices*

20. KCC will continuously monitor the success of the Email Notice, Supplemental Postcard Notice, and Press Release notice efforts. If KCC determines that less than 70% of the Settlement Class is reached through the individual notice efforts, KCC will implement a digital notice campaign. The digital notice campaign will consist of digital advertisements on a digital advertising network that is jointly agreed upon by the Parties. The online ads will include an embedded link to the case website, which, when clicked on will take the user to the settlement website. The total number of internet impressions delivered during the Supplemental Digital Notice, if needed, will be based upon what is needed to ensure a net combined direct notice and digital reach of at least 70%.

### *Case Website, Toll-free Telephone Number and Postal Mailing Address*

21. A dedicated website will be established for the Settlement where Settlement Class Members will be able to obtain detailed information about the case. The Settlement website will include: contact information for Class Counsel; contact information for KCC; the Claim Form and Opt-Out Form; answers to frequently asked questions; a list of important deadlines, including the Claims Deadline, the Objection and Exclusion Deadline, and the date of the Final Fairness Hearing; case documents, including motions for approval and for attorneys' fees and any other important documents in the case; and instructions on how to access the case docket via PACER or in person at any of the Court's locations. Importantly, Settlement Class Members will have the opportunity to file a claim on the case website. The case website address will be displayed in all notice documents and included as an embedded link in all digital notices.

22. A dedicated toll-free telephone number will also be established to allow Settlement Class Members to call for additional information, listen to answers to FAQs and request to have more information mailed to them. The toll-free telephone number will be provided in the Notice documents as well.

23. A dedicated post office box for correspondence about the Settlement will also be established and maintained, allowing Settlement Class Members to contact KCC by mail with any specific requests or questions about the Settlement, including requests for exclusion.

**CONCLUSION**

24. In class action notice planning, execution, and analysis, we are guided by due process considerations under the United States Constitution, by state and local rules and statutes, and by case law pertaining to the recognized notice standards under Rule 23. This framework directs that the notice program be optimized to reach the class and, in a settlement class action notice situation such as this, that the notice or notice program itself not limit knowledge of the availability of benefits—nor the ability to exercise other options—to class members in any way. All these requirements will be met in this case.

25. The Notice Plan will effectively reach at least an estimated 70% of the Class. In 2010, the Federal Judicial Center issued a Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide. This Guide states that, "the lynchpin in an objective determination of the adequacy of a proposed notice effort is whether all the notice efforts together will reach a high percentage of the class. It is reasonable to reach between 70–95%." Here, we have developed a Notice Plan that will readily meet that standard.

26. The Notice Plan described above provides for the best notice practicable under the circumstances of this case, conforms to all aspects of the Rule 23, and comports with the guidance for effective notice set out in the Manual for Complex Litigation, Fourth.

I declare under penalty of perjury that the foregoing is true and correct. Executed on April 10th, 2019, at Sellersville, Pennsylvania.

*Carla Peak*
———————————
Carla Peak