1                    UNITED STATES DISTRICT COURT

2                   NORTHERN DISTRICT OF CALIFORNIA

3                          SAN JOSE DIVISION

4

5                                    )   C-17-02185 BLF
                                     )
6        IN RE NEXUS 6P PRODUCTS      )   SAN JOSE, CALIFORNIA
         LIABILITY LITIGATION,        )
7                                    )   MAY 2, 2019
                                     )
8                                    )   PAGES 1-45
                                     )
9                                    )
                                     )
10

11

12                    TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE BETH LABSON FREEMAN
13                  UNITED STATES DISTRICT JUDGE

14

15     A P P E A R A N C E S:

16     FOR THE PLAINTIFF:      GIRARD SHARP
                               BY:  DANIEL C. GIRARD
17                                  ADAM E. POLK
                               601 CALIFORNIA STREET, 14TH FLOOR
18                             SAN FRANCISCO, CALIFORNIA  94108

19                             CHIMICLES, SCHWARTZ, KRINER & DONALDSON
                               BY:  BEENA M. MCDONALD
20                                  BENJAMIN F. JOHNS
                               361 WEST LANCASTER AVENUE
21                             HAVERFORD, PENNSYLVANIA  19041

22                 APPEARANCES CONTINUED ON NEXT PAGE

23     OFFICIAL COURT REPORTER:     LEE-ANNE SHORTRIDGE, CSR, CRR
                                    CERTIFICATE NUMBER 9595
24

25            PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY
                  TRANSCRIPT PRODUCED WITH COMPUTER

1

2      APPEARANCES (CONTINUED)

3

4      FOR DEFENDANT              DURIE TANGRI
       GOOGLE:                    BY:  JOSHUA H. LERNER
5                                      CATHERINE Y. KIM
                                  217 LEIDESDORFF STREET
6                                 SAN FRANCISCO, CALIFORNIA  94111

7      FOR DEFENDANT              COVINGTON & BURLING
       HUAWEI:                    BY:  LINDSEY C. BARNHART
8                                 3000 EL CAMINO REAL
                                  5 PALO ALTO SQUARE, SUITE 1000
9                                 PALO ALTO, CALIFORNIA  94306

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1        SAN JOSE, CALIFORNIA                    MAY 2, 2019

 2                    P R O C E E D I N G S

 3          (COURT CONVENED AT 1:32 P.M.)

 4              THE COURT:  GOOD AFTERNOON, EVERYONE.  PLEASE BE

 5     SEATED.  WELCOME.

 6          ALL RIGHT.  WE'LL CALL THE CASE.

 7              THE CLERK:  CALLING CASE 17-2185, IN RE NEXUS 6P

 8     PRODUCTS LIABILITY LITIGATION.

 9          COUNSEL, PLEASE STATE YOUR APPEARANCES.

10              MR. GIRARD:  GOOD AFTERNOON, YOUR HONOR.

11          DAN GIRARD.  WITH ME IS ADAM POLK, AND ALSO BEENA MCDONALD

12     FROM THE CHIMICLES FIRM.

13              THE COURT:  GOOD MORNING.  OR GOOD AFTERNOON.  I

14     GUESS WE'VE PAST THE MORNING.

15              MR. GIRARD:  AND MR. JOHNS ALSO.

16              MR. JOHNS:  GOOD AFTERNOON.

17              MR. LERNER:  GOOD AFTERNOON, YOUR HONOR.

18          JOSH LERNER AND CATHERINE KIM OF DURIE TANGRI ON BEHALF OF

19     GOOGLE.

20              THE COURT:  GOOD TO SEE ALL OF YOU.

21              MS. BARNHART:  LINDSEY BARNHART, COVINGTON & BURLING,

22     FOR HUAWEI.

23              THE COURT:  MS. BARNHART, WELCOME.

24          ALL RIGHT.  HERE WE ARE AT A PRELIMINARY APPROVAL.  IT'S

25     CLEAR TO ME THAT AN ENORMOUS AMOUNT OF WORK HAS GONE INTO THIS.
```

1    BEFORE WE GET STARTED, THERE WAS AN ISSUE WITH SEALING OF

2    VERY DISCRETE PORTIONS OF THE PAPERS, AND THE CONTENT IS

3    SOMETHING THAT I WOULD NORMALLY DISCUSS WITH YOU AT THIS

4    HEARING AS I EVALUATE WHETHER THE PROPOSED CLASS ACTION

5    SETTLEMENT IS FAIR AND REASONABLE.

6          SO I DON'T KNOW HOW YOU WANT TO PROCEED.

7          MR. LERNER:  I THINK, YOUR HONOR, FOR CONVENIENCE AND

8    YOUR EASE, THERE'S NO LONGER AN ISSUE AS TO THAT.  WE READ YOUR

9    ORDER AND UNDERSTAND IT, AND THE ONLY CAVEAT BEING, OBVIOUSLY,

10   WE THINK IT'S SPECIFIC TO THIS SITUATION AND, THEREFORE,

11   OBVIOUSLY WE MIGHT HAVE DIFFERENT ARGUMENTS ELSEWHERE.  BUT FOR

12   TODAY'S PURPOSES, WE'RE NOT RENEWING THE MOTION TO SEAL.

13         THE COURT:  THANK YOU.  I CERTAINLY DIDN'T WANT TO

14   BARGE INTO THAT DISCUSSION AND THEN HAVE A PROBLEM BECAUSE

15   IT -- ONE OF THE THINGS THAT I WANT TO BE COMFORTABLE WITH IS

16   THAT THIS SETTLEMENT IS FAIR AND REASONABLE, AND THAT DEPENDS

17   ON THE VALUE OF THE CASE IF WE'RE GOING TO TRIAL, AND THAT'S

18   ALL BUILT ON THE NUMBERS THAT WERE AT ISSUE.

19         SO ALL RIGHT.  LET'S PROCEED THEN.

20         MR. GIRARD, I'M GOING TO TURN TO YOU NOW.  YOUR PAPERS

21   WERE BEAUTIFULLY DONE.

22         MR. GIRARD:  THANK YOU.

23         THE COURT:  I REALLY APPRECIATE THE WORK THAT WENT

24   INTO THEM.

25         WHAT I'D LIKE TO DO, I'D LIKE TO HEAR FROM YOU FIRST, AND

1    FROM MR. LERNER AND MS. BARNHART IF THERE ARE ANY OTHER

2    COMMENTS.

3         AND THEN I'M GOING TO WALK THROUGH THE VARIOUS DOCUMENTS

4    WITH EITHER QUESTIONS OR SUGGESTIONS ON CHANGES.  THERE'S VERY

5    LITTLE.  THESE WERE VERY -- AS I SAID, THEY WERE VERY WELL

6    DONE.

7         BUT THAT'S SORT OF THE FORMAT OF HOW I WANT TO PROCEED

8    TODAY, SO I'M GOING TO TURN IT OVER TO YOU.

9              MR. GIRARD:  MAY I TAKE THE PODIUM?

10             THE COURT:  YES, PLEASE.

11             MR. GIRARD:  THANK YOU, YOUR HONOR.

12   I AM GLAD TO HEAR THAT YOU RECOGNIZE THAT IT REALLY IS A

13   CASE, FOR WHATEVER REASON, THAT TOOK AN EXTRAORDINARY AMOUNT OF

14   WORK TO PUT TOGETHER.

15             THE COURT:  UM-HUM.

16             MR. GIRARD:  AND VERY CAPABLE AND ATTENTIVE COUNSEL

17   ON THE OTHER SIDE, TWO DEFENDANTS, AND A COMMERCIAL INTEREST ON

18   THE PART OF THE DEFENDANTS IN EXACTLY HOW THE SETTLEMENT WAS

19   PRESENTED --

20             THE COURT:  UM-HUM.

21             MR. GIRARD:  -- WHICH I THINK IN THE END MADE FOR A

22   BETTER PRODUCT, BUT ALONG THE WAY PRESENTED A WHOLE SEPARATE

23   SET OF CHALLENGES IN TERMS OF PUTTING THIS TOGETHER.

24   I DON'T THINK WE HAVE MUCH TO ADD TO OUR PAPERS.

25             ONE THING I THINK THE COURT SHOULD BE AWARE OF, BECAUSE

1    THIS IS UNPRECEDENTED IN MY EXPERIENCE, IS WE HAVE OVER 1200

2    PEOPLE WHO HAVE CONTACTED US --

3            THE COURT:  OH, I SEE.

4            MR. GIRARD:  -- WHO HAVE READ ABOUT THE SETTLEMENT IN

5    THE PRESS AND WANT TO MAKE CLAIMS.

6            THE COURT:  HMM.

7            MR. GIRARD:  SO WE HAVE OBVIOUSLY BEEN RESPONDING TO

8    THAT.  PEOPLE HAVE FOUND THE CLAIM FORM IN THE FILE AND ARE

9    TRYING TO FILE IT.

10       SO WE'RE LOOKING FORWARD TO MOVING FORWARD WITH THIS AND

11   GETTING A REAL CLAIM FORM OUT THERE, BECAUSE THE ONE THAT'S IN

12   THE PAPERS IS OBVIOUSLY AN INDICATION, AND SO WE'LL GET IT

13   FILLED OUT AS SOON AS THE COURT ENTERS A PRELIMINARY APPROVAL

14   ORDER.

15           I LOOK FORWARD TO RESPONDING TO ANY QUESTIONS YOU HAVE.

16           THE COURT:  OKAY.

17           MR. GIRARD:  I DON'T HAVE ANYTHING TO ADD IN TERMS OF

18   THE MERITS OF THE SETTLEMENT.

19       I GUESS THE ONE THING I'LL SAY IS THERE'S ALWAYS AN

20   ELEMENT OF UNCERTAINTY IN TERMS OF HOW THE PUBLIC WILL REACT TO

21   THIS AND WHAT THE, THE VOLUME OF CLAIMS IS.  WE'VE RUN

22   SCENARIOS A LOT OF DIFFERENT WAYS IN TERMS OF HOW PEOPLE MAY

23   REACT.  I THINK IT'S GOING TO WORK OUT WELL, BUT WE'LL HAVE TO

24   SEE.

25           THE WAY THE TIMING ON THIS WORKS IS AT THE POINT WHERE YOU

1    WILL BE CONSIDERING FINAL APPROVAL, WE WILL HAVE PUT BEFORE YOU

2    A FAIRLY COMPREHENSIVE PRESENTATION ON HOW MANY CLAIMS THERE

3    ARE AND WHAT WE EXPECT THAT TO MEAN IN TERMS OF THE WAY THIS

4    WILL PAY OUT.

5             THE COURT:  DOES THE INITIAL REACTION TO THE PRESS

6    CAUSE YOU TO THINK THE RESPONSE RATE MAY BE HIGHER THAN YOU'VE

7    PREDICTED HERE, OR NOT?

8             MR. GIRARD:  YOU KNOW, I THINK -- IT WILL PROBABLY BE

9    ON THE HIGHER END.

10            THE COURT:  UM-HUM.

11            MR. GIRARD:  I DON'T THINK IT'S -- I MEAN, WE'LL SEE,

12   OBVIOUSLY.  BUT I THINK PEOPLE GENERALLY ARE -- AND I THINK

13   IT'S PROBABLY PARTLY A FUNCTION OF THE WORK THE COURTS ARE

14   DOING, BUT I THINK PEOPLE ARE FOLLOWING CASES LIKE THIS ONE

15   PRETTY ACTIVELY.

16            THE COURT:  YEAH.

17            MR. GIRARD:  THIS IS REAL MONEY PEOPLE STAND TO

18   RECOVER.  SO I THINK, YOU KNOW, WE'LL HAVE A VIGOROUS LEVEL OF

19   PARTICIPATION.

20        AND THE PLAN OF ALLOCATION, BY ITS NATURE -- WE SPENT A

21   TREMENDOUS AMOUNT OF TIME ON IT, THINKING ABOUT IT.  THERE ARE

22   SOME JUDGMENTS THAT ARE INHERENT TO IT, SO THERE ARE PEOPLE WHO

23   WILL INEVITABLY HAVE THEIR OWN VIEWS OF HOW IT COULD HAVE BEEN

24   DONE DIFFERENTLY.

25            BUT I THINK -- AND I'M HAPPY TO GO THROUGH IT IF YOU HAVE

```
 1    QUESTIONS ON IT.  I THINK IT BALANCES THE INTERESTS PRETTY WELL

 2    AND, YOU KNOW, BECAUSE ON ONE HAND, WE'RE TRYING TO MAKE IT

 3    REASONABLY TIED TO THE NATURE OF THE CLAIMS AND THE HARM AND TO

 4    PUT THE MONEY WHERE IT MAKES THE MOST DIFFERENCE, WHERE IT

 5    BELONGS.

 6              THE COURT:  YEAH.

 7              MR. GIRARD:  ON OTHER HAND, IF WE MAKE IT TOO

 8     COMPLICATED, IT'S SIMPLY GOING TO LEAD PEOPLE TO BE CONFUSED

 9     AND PUT OFF.

10        SO WE TRIED TO BALANCE THAT.  WE DID A LOT OF WORK WITH

11    DEFENSE COUNSEL ON IT.  WE SPENT A LOT OF TIME WITH THE CLAIMS

12    ADMINISTRATOR ON THE WAY THAT THE FORM IS PRESENTED SO THAT

13    IT'S AS EASY AS IT CAN POSSIBLY BE, CONSISTENT WITH SOME OF THE

14    JUDGMENTS WE HAVE TO MAKE IN ORDER TO GET THIS INFORMATION OUT

15    OF PEOPLE.

16              THE COURT:  OKAY.  SO THAT'S HELPFUL.  SO I DO HAVE

17     SOME QUESTIONS ON THE MECHANICS --

18              MR. GIRARD:  SURE.

19              THE COURT:  -- OF HOW THIS WORKS.

20        YOU'VE GOT, I BELIEVE, THREE CATEGORIES OF -- WELL, THERE

21    ARE MORE THAN THAT.  THERE ARE THREE GROUPS AND THERE ARE

22    SUBGROUPS WITHIN THEM.

23              MR. GIRARD:  RIGHT.

24              THE COURT:  GENERALLY IT LOOKS AS THOUGH YOU HAVE

25     PROVIDED A SLIDING SCALE OF PAYMENTS BASED ON THE HARM THAT
```

1     THESE CATEGORIES SUFFERED.

2             MR. GIRARD:  RIGHT.

3             THE COURT:  WOULD THAT BE ACCURATE?

4             MR. GIRARD:  THAT'S CORRECT.

5             THE COURT:  ALL RIGHT.  AND SO FOR THOSE WHO HAD THE

6     PROBLEM AND GOT A REPLACEMENT, OR HAD NO PROBLEM, THEY'RE

7     GETTING JUST A MODEST PAYMENT.

8             MR. GIRARD:  CORRECT.

9             THE COURT:  OKAY.  SO THEN WE GET TO THE SECOND

10    GROUP, HAD ONE OF THESE PROBLEMS, BUT DON'T HAVE DOCUMENTATION.

11        SO THAT IMMEDIATELY DRAWS MY ATTENTION TO, I DON'T

12    ACTUALLY UNDERSTAND WHAT DOCUMENTATION OF THE BOOTLOOP OR

13    BATTERY DRAIN SOMEONE WOULD HAVE.

14            MR. GIRARD:  SO IF YOU HAD A FAILURE LIKE THIS, YOU

15    WOULD NORMALLY EITHER HAVE E-MAILED THE COMPANY; REQUESTED A

16    REPLACEMENT PHONE; ASKED FOR WARRANTY SERVICE; SUBMITTED A

17    CLAIM WITH YOUR -- IF YOU HAD INSURANCE; E-MAILED THE COUNSEL

18    IN THE CASE, ASKED THEM IF YOU COULD JOIN THE CLASS ACTION, OR

19    SOMETHING LIKE THAT.

20        IT WOULD BE UNUSUAL, I THINK, TO HAVE A PHONE IN YOUR

21    POSSESSION BREAK AND NOT HAVE ANY WRITTEN RECORD WHATSOEVER OF

22    IT.

23        AND IT'S NOT LIKE THE PRE-E-MAIL ERA WHERE SOMEBODY MIGHT

24    HAVE MADE A NOTE AND THEN THROWN IT AWAY.  IF YOU SENT AN

25    E-MAIL, THAT REALLY SHOULD EXIST SOMEWHERE.  YOU COULD PULL IT

1    IF IT WAS THROUGH ANY OF THE TYPICAL E-MAIL SERVICES PEOPLE

2    USE, EVEN IF YOU DIDN'T HAVE IT IN YOUR ACTIVE E-MAILS IN YOUR

3    PHONE.

4         SEPARATELY, IF YOU GOT WARRANTY SERVICE, YOU WOULD HAVE

5    HAD AN RMA, YOU WOULD HAVE CORRESPONDENCE FROM THAT.

6         SO FAR WE HAVEN'T HEARD ANY SIGNIFICANT INDICATION --

7    THERE MAY BE PEOPLE WHO SAY, I JUST DON'T HAVE THAT.

8         AND WE'VE PROVIDED, AS AN ALTERNATIVE, A WAY FOR PEOPLE TO

9    STILL MAKE A CLAIM AND RECOVER UP TO $45 IF THEY HAD THE

10   BATTERY PROBLEM OR $75 IF THEY HAD THE BOOTLOOP PROBLEM AND

11   THEY HAVE NO DOCUMENTS.

12        SO THEY'RE NOT BEING COMPLETELY SHUT OUT.

13             THE COURT:  UM-HUM.

14             MR. GIRARD:  AND IF YOU'D LIKE, I CAN TAKE YOU

15   THROUGH THE LOGIC OF IT.

16             THE COURT:  WELL, I'M JUST TRYING TO UNDERSTAND.  SO

17   GROUP 1 ALL GOT REPLACEMENTS.

18             MR. GIRARD:  SO BASICALLY GROUP 1, THEY'RE THE PEOPLE

19   WHO HAD NOTHING HAPPEN AT ALL, AND THOSE PEOPLE ARE STILL

20   ELIGIBLE TO FILE A CLAIM.

21             THE COURT:  OKAY.

22             MR. GIRARD:  THERE ARE THE PEOPLE WHO HAD A BATTERY

23   FAILURE AND HAVE NO DOCUMENTS AT ALL, AND THOSE PEOPLE ARE --

24   STAND TO RECOVER BETWEEN $10 AND $45.

25             THE COURT:  OKAY.

1          MR. GIRARD:  AND THEN THERE ARE THE PEOPLE WHO HAD A

2     BOOTLOOP FAILURE AND ALSO HAVE NO DOCUMENTS, AND THEY'RE

3     ELIGIBLE TO RECOVER BETWEEN 20 AND 75.

4          THE COURT:  OKAY.

5          MR. GIRARD:  AND SO WHEN THE NOTICE GOES OUT AND THE

6     CLAIMS PERIOD RUNS, THE WAY THIS WORKS CONCEPTUALLY IS IN THE

7     FIRST INSTANCE, THE PEOPLE IN THAT GROUP 1 WOULD BE ALLOCATED

8     THEIR MINIMUM AMOUNT OF THEIR RECOVERY.

9          THE COURT:  OKAY.

10         MR. GIRARD:  AND THEN YOU GO TO GROUP 2.  GROUP 2 IS

11    PEOPLE WHO SUBMIT THE MINIMAL DOCUMENTATION NEEDED TO MAKE A

12    CLAIM FOR EITHER THE BATTERY OR THE BOOTLOOP PROBLEM, AND THE

13    CORRESPONDING VALUE THERE FOR THE BATTERY PROBLEM IS A FLAT

14    150, OR 325 FOR THE BOOTLOOP PROBLEM.

15         AND THEN THE THIRD GROUP IS PEOPLE WHO HAD MULTIPLE

16    FAILURES WHERE THE RECOVERY IS 400.

17         SO THE WAY IT WOULD WORK IS IN THE NEXT STAGE, WHATEVER

18    MONEY REMAINS FROM THE FIRST STAGE WOULD BE ALLOCATED TO THE

19    PEOPLE IN GROUP 2.  THE WAY WE RUN THE NUMBERS FOR GROUP 1, I

20    EXPECT THAT AMOUNT TO BE SOMEWHERE IN THE MILLION TO MILLION

21    AND A HALF DOLLARS THAT WOULD GO TO THAT FIRST GROUP.

22         THE BALANCE OF THE MONEY THEN WOULD BE ALLOCATED AMONG

23    THESE GROUP 2 CLAIMANTS.

24         THE COURT:  SO GROUP 1 IS AT THEIR MINIMUM AMOUNT?

25         MR. GIRARD:  THAT'S A MINIMUM AMOUNT.

1    THE COURT:  WHICH MAY GROW LATER AND COME BACK.

2    MR. GIRARD:  AND COME BACK, EXACTLY.

3    SO THEN IF THE CLAIMS IN THE GROUP 2 STAGE WERE TO EXHAUST

4    THE FUNDS, THOSE WOULD RATCHET DOWN, BUT WE THINK THAT'S

5    UNLIKELY.

6    THE COURT:  OKAY.

7    MR. GIRARD:  AND EVEN IF IT RATCHETED DOWN SOMEWHAT,

8    THESE WOULD STILL BE SUBSTANTIAL RECOVERIES.  I THINK EVEN IF

9    IT WAS 50 PERCENT OF THIS, BASED ON THE CASES WE'VE FOUND,

10   COURTS HAVE APPROVED THAT.

11   AND IN ONE OF THE OTHER CELL PHONE CASES -- REALLY THE

12   MINIMUM RECOVERIES HERE WOULD BE THE EQUIVALENT TO WHAT THE

13   GROUP 2 PEOPLE ARE GETTING UNDER THIS SETTLEMENT.

14   THE COURT:  SO LET ME ASK YOU, FOR GROUP 2 --

15   MR. GIRARD:  YES.

16   THE COURT:  -- THIS IS SOMEONE WHO HAD A PROBLEM --

17   MR. GIRARD:  CORRECT.

18   THE COURT:  -- THEY HAD DOCUMENTATION.  BUT IF THEY

19   GOT A REPLACEMENT, THEY'RE STILL GETTING --

20   MR. GIRARD:  THEY ARE STILL ELIGIBLE TO MAKE THAT

21   CLAIM, EXCEPT THAT IF THEY GOT A REPLACEMENT, THEN THEY KICK

22   BACK UP INTO THE UPPER CATEGORY BECAUSE THE VIEW OF THE -- AND

23   THIS WAS SOMETHING WE WENT BACK AND FORTH ON.  BUT THE

24   DEFENDANT'S VIEW IS IF THEY GOT A REPLACEMENT, THEY'RE REALLY

25   LIKE SOMEBODY --

1          THE COURT:  THEN THEY GO BACK TO 1A.

2          MR. GIRARD:  -- WHO NEVER HAD A FAILURE, EXACTLY.

3          THE COURT:  OKAY.

4          MR. GIRARD:  SO THEN IF THERE'S STILL MONEY LEFT OVER

5    AFTER THE SECOND STAGE, THEN WE DROP TO THE PEOPLE WHO PAID A

6    DEDUCTIBLE, AND THERE WE HAVE GOOD DATA.

7          THE COURT:  SO THAT WAS -- OKAY.  SO I'M GLAD YOU

8    SAID THAT, BECAUSE I MISUNDERSTOOD WHEN YOU'D THEN LOOK TO THE

9    INSURANCE DEDUCTIBLE GROUP.

10          MR. GIRARD:  RIGHT.

11          THE COURT:  SO IT'S BEFORE YOU GO BACK UP TO

12   GROUP 1 --

13          MR. GIRARD:  CORRECT.

14          THE COURT:  -- TO GIVE THEM MORE MONEY ABOVE THEIR

15   MINIMUM.

16          MR. GIRARD:  CORRECT.

17          THE COURT:  SO WHY IS IT -- IT'S THIS ONE INSURANCE

18   COMPANY, ASURION.  ARE THERE OTHER INSURANCE PROGRAMS FOR CELL

19   PHONES?

20          MR. GIRARD:  THAT'S THE QUESTION, AND WE WERE JUST

21   GOING BACK OVER THAT.  THE ANSWER IS NOT THAT WE KNOW OF.

22          THE COURT:  OKAY.

23          MR. GIRARD:  AND THIS ONE WE HAVE GOOD RECORDS ON.

24       AND SO THEY WERE THE INSURANCE COMPANY THAT, AS I

25   UNDERSTAND IT, WAS AFFILIATED WITH GOOGLE AND WE HAVE THOSE

```
1       RECORDS AND CAN PAY THEM DIRECTLY WITHOUT PUTTING PEOPLE

2       THROUGH A SEPARATE CLAIMS PROCEDURE OF GO FIND YOUR DEDUCTIBLE

3       INFO.

4                   THE COURT:  OKAY.

5                   MR. GIRARD:  SO THAT SEEMED TO MAKE SENSE.

6             AND THEN --

7                   THE COURT:  SO YOU'LL DETERMINE THE NUMBER OF PEOPLE,

8       CLAIMANTS --

9                   MR. GIRARD:  RIGHT.

10                  THE COURT:  -- WHO HAVE THE DEDUCTIBLE AND YOU'LL

11      DIVIDE THE REMAINING MONEY AMONG THEM UP TO THE AMOUNT OF THE

12      DEDUCTIBLE?

13                  MR. GIRARD:  EXACTLY.

14                  THE COURT:  AND THEN IF THERE'S A LITTLE BIT LEFT,

15      YOU'LL THEN CIRCLE BACK TO GROUP 1?

16                  MR. GIRARD:  THAT'S PRECISELY IT.

17                  THE COURT:  OKAY.

18                  MR. GIRARD:  SO THIS WON'T HAPPEN IN SEPARATE STAGES.

19      THIS WILL OBVIOUSLY BE DONE ALL AT ONE POINT.

20                  THE COURT:  I UNDERSTAND THAT.

21                  MR. GIRARD:  BUT THAT'S THE CASCADE BASICALLY, THE

22      LOGIC OF IT.

23                  THE COURT:  OKAY.

24                  MR. GIRARD:  SO WE WENT BACK AND FORTH.  OBVIOUSLY

25      SOMEBODY COULD COME IN AND SAY, WELL, I THINK IT SHOULD BE DONE
```

1    THIS OTHER WAY, AND THIS IS THE WAY THAT WE THOUGHT MADE THE

2    MOST SENSE, AND I THINK IT'S LOGICAL.

3         YOU KNOW, IF THE QUESTION IS, WELL, WHAT'S THE STANDARD IN

4    EVALUATING THIS, I'VE BEEN CURIOUS ABOUT THAT, AND THE CASES

5    SAY THE STANDARD FOR EVALUATING A PLAN OF ALLOCATION IS THE

6    SAME AS THE STANDARD FOR EVALUATING A SETTLEMENT.  IT'S FAIR,

7    REASONABLE, AND ADEQUATE.

8              THE COURT:  RIGHT.

9              MR. GIRARD:  AND TO ME, THAT IMPLIES SOME LEVEL OF

10   DEFERENCE TO THE JUDGMENT OF THE PARTIES WHO HAVE LIVED THE

11   CASE DAY BY DAY, BUT IT OBVIOUSLY DOESN'T MEAN THAT THE COURT

12   IS DISQUALIFIED IN SOME WAY FROM HAVING ITS OWN VIEW.

13             THE COURT:  RIGHT.

14             MR. GIRARD:  I THINK THIS MAKES SENSE.

15             THE COURT:  OKAY.  AND SO THOSE WITH THE INSURANCE

16   DEDUCTIBLE ARE, BY DEFINITION, IN GROUP 1A BECAUSE THEY GOT A

17   REPLACEMENT?

18             MR. POLK:  THE QUALIFICATION THAT I THINK WE SHOULD

19   MAKE CLEAR IS THAT ONLY THOSE WHO RECEIVED THE PIXEL XL, WHICH

20   IS A NEWER VERSION OF THE PHONE, ARE GOING TO BE BUMPED INTO

21   THAT FIRST GROUP.

22        PEOPLE WHO JUST GOT ANOTHER NEXUS 6P ARE STILL ENTITLED TO

23   THE --

24             THE COURT:  SO THEY CAN STAY IN GROUPS B AND C?

25             MR. POLK:  EXACTLY.

 1                THE COURT:  OKAY.  THAT'S HELPFUL.

 2            MS. KIM?

 3                MS. KIM:  YES, YOUR HONOR.  WE WANTED TO CLARIFY THE

 4      SAME POINT, THAT IF YOU RECEIVED A REPLACEMENT, WHAT GROUP YOU

 5      END UP IN DEPENDS ON WHAT THAT REPLACEMENT WAS.

 6                THE COURT:  THANK YOU.  THAT'S HELPFUL.

 7                MR. GIRARD:  AND THE LOGIC THERE --

 8            IF YOU WANT TO FINISH THE THOUGHT, GO AHEAD.

 9                MS. KIM:  AND YOUR HONOR ALSO ASKED ABOUT WHY THE

10      PARTIES HAD AGREED TO REFUND INSURANCE DEDUCTIBLES THAT WERE

11      MADE THROUGH ASURION, AND WE WANTED TO CLARIFY THAT.

12        ASURION PROVIDED THE EXTENDED WARRANTY PLAN FOR THE

13      NEXUS 6P'S.

14                THE COURT:  OKAY.  THAT ALSO IS VERY HELPFUL.

15            ALL RIGHT.  SO THEN -- SO THAT'S -- I APPRECIATE THE

16      SOPHISTICATION OF THE REIMBURSEMENT TO PEOPLE BASED ON THE

17      DEGREE OF INJURY AND I THINK THAT'S APPROPRIATE.

18            I WASN'T SURE I UNDERSTOOD THE WAY THAT YOU ESTIMATED THE

19      VALUE OF THE CASE IF YOU WENT TO TRIAL, BECAUSE YOU TOLD ME

20      THAT -- AND AGAIN, I'M GOING TO DISPLAY THESE NUMBERS ON THE

21      RECORD.  YOU'RE OKAY WITH THAT?  EVERYONE'S COMFORTABLE WITH

22      THAT?

23                MR. GIRARD:  UM-HUM.

24                THE COURT:  THAT THE COST TO REPLACE 40,000 PHONES

25      WOULD BE $20 MILLION AT $500 DOLLARS A PHONE, BUT THERE WOULD

1    BE SOME DISCOUNT IN THE VALUE FOR A PERIOD OF USE.

2        BUT THEN YOU GO ON TO SAY THE VALUE OF THE CASE AFTER

3    TRIAL IS $30 MILLION BASED ON 500,000 PHONES SOLD, AND I DIDN'T

4    UNDERSTAND THOSE NUMBERS.

5        MR. POLK:  SO THE -- I THINK THAT YOU'RE SEEING A

6    COUPLE DIFFERENT -- I MEAN, THE VALUE OF THE CASE, HAD WE GONE

7    TO TRIAL, WHAT OUR PLAN WAS WAS TO USE A PRICE PREMIUM THEORY

8    OF DAMAGES.

9        THE COURT:  OKAY.

10        MR. POLK:  WE'RE NOT SURE WHETHER THE COURT WOULD

11    HAVE ACCEPTED THAT AND WHETHER DAMAGES WOULD HAVE BEEN AWARDED

12    ON AN AGGREGATE BASIS.

13        SO WHAT WE HAVE HERE IN, I THINK IT'S PARAGRAPH 23 OF THE

14    JOINT DECLARATION, WHICH IS REPEATED IN THE SETTLEMENT

15    BRIEFING --

16        THE COURT:  UM-HUM.

17        MR. POLK:  -- WE THINK APPROXIMATELY 500,000 PHONES

18    WERE SOLD BASED ON THE DISCOVERY THAT WE'VE TAKEN.

19        THE COURT:  UM-HUM.

20        MR. POLK:  OF THOSE, THERE WERE 100,000 COMPLAINTS.

21        THE COURT:  RIGHT.

22        MR. POLK:  AND, YOU KNOW, THOSE COULD BE PEOPLE NOT

23    NECESSARILY THAT EXPERIENCED THE BOOTLOOP, BUT THAT JUST

24    EXPERIENCED A RANDOM SHUTDOWN CAUSED BY A SOFTWARE UPDATE OR

25    WHATEVER.

1           THE COURT:  SURE.

2           MR. POLK:  WE ALSO KNOW THAT APPROXIMATELY 50- TO

3    80,000 SMARTPHONES WERE REPLACED BY THE DEFENDANTS THROUGH

4    EITHER ASURION, THE INSURANCE COMPANY, MAKING A WARRANTY CLAIM

5    WITH HUAWEI, OR GETTING AN RMA FROM GOOGLE.

6        SO WE THINK THAT THAT MEANS THAT THERE WERE APPROXIMATELY

7    20- TO 30,000 PEOPLE, DEDUCTING THE REPLACEMENTS FROM THE

8    100,000 COMPLAINTS, THAT WERE LEFT WITHOUT A REMEDY, THEY

9    DIDN'T GET A REPLACEMENT, THEY DIDN'T GET ANYTHING.

10          THE COURT:  OKAY.

11          MR. POLK:  AND SO, YOU KNOW, WHAT YOU THEN SEE IS

12    THAT THE COST TO REPLACE 40,000 PHONES AT $500 PER UNIT WOULD

13    BE $20 MILLION.

14          THE COURT:  RIGHT.

15          MR. POLK:  AND THAT'S ACCOUNTING FOR THE FACT THAT

16    THE NUMBERS AREN'T EXACT AND THAT THERE MAY BE REPEAT FAILURES

17    IN THE GROUP OF REPLACEMENT PHONES.

18        SO THAT'S HOW WE GOT TO THE $20 MILLION.

19        YOU KNOW, THERE COULD BE A NOMINAL AMOUNT THAT WOULD BE

20    AWARDED TO THE PEOPLE WHO NEVER EXPERIENCED THE FAILURE, WHICH

21    IS THE BULK OF THE PURCHASERS.  EVEN ASSUMING 100,000 IS THE

22    TRUE NUMBER, AND IT'S PROBABLY OVERINCLUSIVE --

23          THE COURT:  OKAY.

24          MR. POLK:  -- YOU HAVE 400,000 PEOPLE WHO, AS FAR AS

25    WE KNOW, NEVER HAD AN ISSUE WITH THEIR PHONE, AT LEAST THAT'S

1    RELEVANT TO THIS CASE.

2        SO WE THINK THAT THE VALUE WOULD BE IN THE 20- TO

3    $30 MILLION RANGE.

4        THE COURT:  OKAY.  AND THOSE -- THAT 400,000 GROUP

5    WOULD BE ENTITLED -- WHO CLAIM THEY ARE ENTITLED TO AT LEAST

6    MINIMAL PAYMENT IN GROUP 1A.

7        MR. GIRARD:  CORRECT.

8        MR. POLK:  THAT'S RIGHT.

9        THE COURT:  OKAY.

10       MR. GIRARD:  THE OTHER THING WE DID IS, AS A

11   CROSS-CHECK, WE LOOKED AT THE FACT THAT WHEN THE CONTENTIONS

12   PEOPLE MADE ABOUT THE FAILURES OF THE PHONES HAD REALLY

13   PERMEATED THE PUBLIC CONSCIOUSNESS, THESE SAME PHONES WERE

14   BEING SOLD AT A DISCOUNT FROM THE ORIGINAL SALES PRICE, WHICH

15   WAS IN THE RANGE OF 12 PERCENT.  THAT'S AT PARAGRAPH 25.

16       AND SO WE RAN THOSE NUMBERS AND THEY SEEMED GENERALLY

17   CONSISTENT.

18       THE COURT:  OKAY.

19       MR. GIRARD:  AND THAT'S WHAT WE HAD.

20       OBVIOUSLY IF YOU HAD A 100 PERCENT SUCCESSFUL PRICE

21   PREMIUM THEORY, YOU COULD PRESUMABLY GET A MUCH BIGGER NUMBER.

22       BUT WE DIDN'T HAVE THAT WORKUP DONE, AND I DON'T THINK

23   IT'S REALLY THAT HELPFUL FOR THE PURPOSE OF THE COURT'S

24   EVALUATION BECAUSE I THINK THE NUMBERS MR. POLK WENT THROUGH

25   GIVE YOU A SENSE OF WHAT THE -- WHAT IT'S GOING TO TAKE TO

1    COMPENSATE THE PEOPLE WHO HAVE A NON-FUNCTIONAL PHONE, OR DID.

2             THE COURT:  OKAY.  NOW, I ASSUME THIS PHONE, THIS IS

3    AN OLD MODEL, IT'S NOT ON THE MARKET ANYMORE?

4             MR. POLK:  YEAH, THE DEFENDANT STOPPED SELLING THE

5    PHONE.  IT WAS RELEASED IN SEPTEMBER 2015, SO IT'S ABOUT FOUR

6    YEARS OLD.

7             THE COURT:  ALL RIGHT.  THAT IS HELPFUL.  THAT TAKES

8    ME -- NOW I UNDERSTAND AND AGREE WITH THE NUMBERS THAT YOU GAVE

9    ME.

10       THE -- WE'LL TALK ABOUT THE NOTICE.  GENERALLY THE FORM OF

11   NOTICE IS SORT OF THE GOLD STANDARD, SO I'M HAPPY WITH THAT.

12       THE ATTORNEYS' FEES ARE AT THE HIGHEST OF HIGH LEVELS

13   BECAUSE -- WE'LL WAIT AND SEE WHAT THE CLASS THINKS OF IT --

14   BUT THEY ARE WITHIN THE RANGE, SO I HAVE NO PROBLEM WITH THAT.

15       THE SERVICE AWARDS ARE MODEST THAT YOU'RE ASKING FOR.

16       THE SETTLEMENT ADMINISTRATOR, YOU WENT TO BID ON THIS?

17             MR. GIRARD:  WE DID.

18             THE COURT:  HOW DID YOU END UP WITH KCC?

19             MR. GIRARD:  WE PUT OUT FIVE RFP'S TO DIFFERENT

20   LEADING CLAIMS ADMINISTRATORS.  THERE WAS ONE THE DEFENDANTS

21   ASKED US TO TAKE OUT OF CONSIDERATION FOR THEIR OWN REASONS,

22   AND WE DID.

23             THE COURT:  UH-HUH.

24             MR. GIRARD:  THE -- OUT OF THE FIVE, THIS ONE WAS THE

25   LOW BIDDER.

1          THE COURT:  OKAY.

2          MR. GIRARD:  WE'VE WORKED WITH THEM IN THE PAST,

3    FOUND THEM TO BE CAPABLE AND FULLY QUALIFIED TO DO THE WORK.

4    THEY WERE THE LOW BIDDER BY A SIGNIFICANT AMOUNT, A SIGNIFICANT

5    ENOUGH AMOUNT THAT WE THOUGHT THEY WERE THE APPROPRIATE CHOICE.

6          THE COURT:  OKAY.

7          MR. GIRARD:  AND THEN THE DEFENDANTS HAD A SEPARATE

8    CONCERN ABOUT THE CONFIDENTIALITY OF THE CLASS MEMBER

9    INFORMATION THEY WOULD HAVE AND NEGOTIATED WITH THEM SEPARATELY

10   TO ENSURE THAT THEY WERE COMFORTABLE WITH HOW THE DATA WOULD BE

11   HANDLED AND THEY QUALIFIED FROM THE DEFENDANT'S PERSPECTIVE.

12         THE COURT:  OKAY.

13         MR. GIRARD:  SO THAT WAS THE PROCESS WE WENT THROUGH

14   HERE.

15         THE COURT:  WHEN YOU PUT THIS TOGETHER AND WE NOTIFY

16   THE CLASS OF THE COSTS, I APPROVE A MAXIMUM AMOUNT FOR THE

17   CLAIMS ADMINISTRATOR.

18         MR. GIRARD:  UM-HUM.

19         THE COURT:  HOW LIKELY AM I TO GET ADD-ON BILLS FROM

20   THEM?

21         MR. GIRARD:  YOU KNOW, THAT'S A GOOD QUESTION, AND

22   THE NUMBER WE HAVE IS A NOT-TO-EXCEED NUMBER.

23         THE COURT:  OKAY.

24         MR. GIRARD:  NOW, I SUSPECT THAT IF THEY THINK THAT

25   WE ASK THEM TO DO THINGS THAT WERE NOT CONSISTENT WITH THE

1   ORIGINAL BID WE SUBMITTED TO THEM, THEY MAY WANT TO MAKE A

2   REQUEST FOR COMPENSATION THERE.

3       SO IF THE NUMBER THAT'S IN THERE NOW, WHICH I BELIEVE --

4       MR. POLK:  IT'S $250,000.

5       THE COURT:  YEAH.

6       MR. GIRARD:  -- IS 250, IF THAT IS, FROM THE COURT'S

7   PERSPECTIVE, A CAP, WE MAY WANT TO GO BACK TO THEM.  BUT I

8   THINK THAT'S --

9       THE COURT:  SO I'VE SEEN IN OTHER CASES REQUESTS FOR

10  MORE FEES FOR THE ADMINISTRATOR ABOVE WHAT I APPROVED, AND I'M

11  IN A PARTICULARLY BAD SITUATION TO UNDERSTAND WHETHER THE

12  INITIAL BID WAS REASONABLE.

13      AND FOR ANY OF US WHO HAVE GONE TO BID, WHETHER IT'S FOR A

14  NEW KITCHEN IN OUR HOUSE OR FOR, YOU KNOW, BUILDING A WHOLE

15  BUILDING IN DOWNTOWN SAN JOSE, SOMETIMES THE LOW BIDDER IS LOW

16  BECAUSE THEY'RE GOING TO MAKE IT UP ON THE BACK END.

17      MR. GIRARD:  RIGHT.

18      THE COURT:  AND SO I -- BECAUSE OF THE WAY YOU'RE

19  STRUCTURING THIS, I DON'T KNOW THAT THEY'LL -- I MEAN, THEY'RE

20  GOING TO BE HOLDING ALL THE MONEY --

21      MR. GIRARD:  UM-HUM.

22      THE COURT:  -- AT THE END BEFORE THEY DISTRIBUTE IT,

23  HAVING APPORTIONED IT, AND IT'S NOT JUST A MATTER OF TAKING

24  FROM A CY PRES AWARD TO PAY THE ADMINISTRATOR.  I'LL BE TAKING

25  MONEY OUT OF THE POCKET OF THE CLAIMANTS.

1      SO I -- YOU KNOW, I DON'T -- I DON'T KNOW WHAT TO SAY ON

2   THIS, BUT I -- YOU KNOW, A NOT-TO-EXCEED IS REALLY WHAT I

3   EXPECT UNTIL I STARTED GETTING THESE OTHER CASES THAT ASKED FOR

4   MORE.

5         MR. GIRARD:  RIGHT.  WELL, IT'S WHAT I EXPECT, TOO,

6    AND I DON'T ANTICIPATE ANYTHING ABOVE AND BEYOND THAT.

7         AND TO THE NOTION OF MAKING IT UP ON THE BACK END, I THINK

8   THEY KNOW THEY WILL NOT -- THAT IT WILL NOT SIT WELL WITH US

9   BECAUSE I DON'T WANT TO BE IN THE POSITION OF COMING BACK TO

10  THIS COURT AND ASKING FOR MORE MONEY.

11        THE COURT:  AND I PRESUME I HAVE FULL AUTHORITY TO

12   SIMPLY DENY IT --

13        MR. GIRARD:  EXACTLY.

14        THE COURT:  -- EVEN IF IT'S REASONABLE.

15        MR. GIRARD:  RIGHT.

16        THE COURT:  AND THEN THEY CAN COME BACK TO YOU AND TO

17   GOOGLE AND HUAWEI, WHICH WOULD BE THROUGH YOU, TO PAY IT.

18      I MEAN, I'VE HAD SITUATIONS WHERE A GROUP OF CLASS MEMBERS

19  HAS BEEN INADVERTENTLY OMITTED FROM THE FIRST ROUND -- THOSE

20  THINGS HAPPEN -- AND THE CLAIMS ADMINISTRATOR CLEARLY SHOULD BE

21  COMPENSATED WHEN THEY HAVE TO GO BACK AND DO SOMETHING THEY'VE

22  ALREADY DONE ONCE.  THAT'S REASONABLE.

23      I DON'T KNOW THAT IT'S REASONABLE FOR THE CLASS TO PAY FOR

24  IT.

25        SO THOSE ARE -- YOU KNOW, THOSE THINGS HAPPEN.

1          AND, YOU KNOW, I KNOW THEY WANT -- I KNOW THEY WANT A GOOD

2     REPUTATION WITH THE COURT BECAUSE THEY WANT TO BE APPOINTED

3     AGAIN.  THEY CLEARLY WANT A GOOD REPUTATION WITH COUNSEL

4     BECAUSE YOU'RE THE ONES WHO START THE BALL ROLLING.

5          BUT FOR THE CLASS MEMBERS, THEY'RE ONE AND DONE ON THIS.

6          SO I JUST WANT TO MAKE SURE THAT WE'RE -- THAT I'M NOT

7     GOING TO GET BOMBARDED WITH TENS OF THOUSANDS OF DOLLARS OF

8     ADDITIONAL FEES.

9          MR. GIRARD:  I DON'T EXPECT THAT, AND I WOULD HAVE A

10     PROBLEM WITH THAT, YOUR HONOR, IF THAT'S WHAT --

11          THE COURT:  OKAY.  WELL, I GUESS -- I'M NOT GOING TO

12     ASK YOU TO DO A NOT-TO-EXCEED RENEGOTIATION, BUT I JUST WANT TO

13     BE CLEAR THAT I FEEL I HAVE FULL AUTHORITY TO SIMPLY DENY IT --

14          MR. GIRARD:  THANK YOU.

15          THE COURT:  -- SINCE THEY BID IT.

16          MR. GIRARD:  UNDERSTOOD.  YES, THANK YOU.

17          THE COURT:  AND BECAUSE THERE ARE OTHER POCKETS I

18     THINK THEY CAN REACH INTO IF THEY NEED TO BE PAID.

19          OKAY.  SO THAT'S EVERYTHING THAT I HAVE ON -- SORT OF AT A

20     HIGH LEVEL.

21          IS THERE ANYTHING ELSE -- AND I'M GOING TO GO THROUGH THE

22     SETTLEMENT AGREEMENT, THE RELEASE, AND A LOT OF THE -- THE

23     NITTY GRITTY THROUGH THE DOCUMENTS.

24          SO IS THERE ANYTHING ELSE AT A GENERAL LEVEL YOU'D LIKE TO

25     RAISE?

1              MR. GIRARD:  NO, YOUR HONOR.  THANK YOU.

2              THE COURT:  MR. LERNER, MS. BARNHART, ANYTHING ELSE

3      YOU'D LIKE TO RAISE?

4              MR. LERNER:  NO, ONLY ONE QUICK OBSERVATION, WHICH IS

5      I THINK THEY'RE REALLY THINKING ABOUT THE CASE IN TWO BUCKETS,

6      THERE WERE TWO THINGS THAT WERE UNIQUE.

7          FIRST, THE COURT PUT A HUGE AMOUNT OF EFFORT INTO THIS

8      CASE ON THE PLEADINGS END.  THERE WAS, OF COURSE, A 90-PAGE

9      OPINION.

10             THE COURT:  YES.

11             MR. LERNER:  AND THEN A VERY DETAILED HEARING.

12         AND I'M NOT MENTIONING THIS SOLELY BECAUSE WE APPRECIATE

13     IT, BUT ALSO BECAUSE IT INFORMED THE PARTIES AS TO HOW TO

14     HANDLE THIS AND WE, I THINK, HAD A LOT MORE CLARITY AS TO THE

15     STRENGTHS AND WEAKNESSES OF THE PARTIES' RESPECTIVE POSITIONS

16     BECAUSE OF THE AMOUNT OF WORK THAT WENT INTO IT ON THE FRONT

17     END.

18         AND SECOND IS JUST THAT, AS A MATTER OF CIVILITY, AS

19     MR. GIRARD MENTIONED AND MR. POLK MENTIONED, I THINK THE

20     PARTIES AT ANY POINT PROBABLY COULD HAVE, DURING THE SETTLEMENT

21     DISCUSSIONS, THROWN THEIR HANDS UP AND SAID THIS IS REALLY

22     HARD --

23             THE COURT:  YEAH.

24             MR. LERNER:  -- WORK HERE, AND PEOPLE DIDN'T DO THAT.

25             THE COURT:  GOOD.

1          MR. LERNER:  AND WE DIDN'T HAVE THE BENEFIT OF YOUR

2     HONOR OR SOMEBODY ELSE LOOKING OVER OUR SHOULDER TO DO THAT, SO

3     I THINK IT'S KIND OF -- IT WAS HARD WORK AND PEOPLE STUCK TO

4     IT.

5          THE COURT:  GOOD.  THANK YOU.

6          SO THE LAST QUESTION I HAVE BEFORE I GO TO THE DETAIL, I

7     DON'T BELIEVE THE NINTH CIRCUIT HAS ISSUED ITS EN BANC RULING

8     IN THE KIA/HYUNDAI CASE.  WE'RE DOING A NATIONWIDE CLASS, SO

9     ARE WE CROSSING OUR FINGERS AND WISHING ON A STAR HERE A LITTLE

10    BIT?

11         MR. GIRARD:  WELL, FUNNY YOU SHOULD ASK.  MR. POLK IS

12    WAITING TO ADDRESS THAT SPECIFIC POINT.

13         THE COURT:  OH, EXCELLENT.  YOU JUST WANTED ME TO

14    ASK.

15         MR. POLK:  SO I THINK THE CURRENT STATUS OF HYUNDAI

16    IS WHAT IT IS.  IT'S NOT CITABLE, IT'S NOT PERSUASIVE.

17         THE COURT:  UM-HUM.

18         MR. POLK:  WE THINK IT WAS WRONGLY DECIDED.

19         I THINK THAT THERE'S A GOOD DECISION IN THIS DISTRICT FROM

20    FEBRUARY, END OF FEBRUARY, BY JUDGE CHEN.  IT'S CALLED IN RE

21    CHRYSLER-DODGE-JEEP --

22         THE COURT:  YES, UH-HUH.

23         MR. POLK:  -- ECODIESEL MARKETING.  I DON'T KNOW IF

24    YOU'RE FAMILIAR WITH IT, BUT THE CITATION IS 2019 WEST LAW

25    536661.

1     AND WHAT THAT DECISION DOES IS IT REITERATES THE FINDING

2 IN ANCHEM THAT, YOU KNOW, HAVING A PLAN FOR TRIAL IS ONE THING.

3     BUT ONCE A CASE SETTLES, THE MANAGEABILITY CONCERNS

4 ATTENDANT TO CHOICE OF LAW DROP OUT BECAUSE THERE WILL BE NO

5 TRIAL.

6     THE COURT:  UM-HUM.

7     MR. POLK:  AND IT REALLY BECOMES AN ISSUE OF WHETHER

8 THERE'S A STRUCTURAL OR FUNDAMENTAL CONFLICT, LIKE IN THE

9 ANCHEM CASE.

10     THE CHRYSLER CASE WAS ALSO A CONSUMER FRAUD CASE.

11     THE COURT:  YEAH.

12     MR. POLK:  THEY DID HAVE A RICO CLAIM IN THAT CASE,

13 WHICH IS DIFFERENT THAN HERE.

14     BUT THE COURT MADE SIMILAR PREDOMINANCE FINDINGS TO THOSE

15 THAT WE ASKED THE COURT TO MAKE ON THIS RECORD.

16     THE COURT:  OKAY.

17     MR. POLK:  I WOULD ALSO SAY THAT HANLON, I THINK,

18 STILL REMAINS GOOD LAW, AND THAT CASE IS PRETTY CLEAR THAT

19 THE -- THE QUOTE THAT STICKS OUT TO ME IS, QUOTE,

20 "IDIOSYNCRATIC DIFFERENCES BETWEEN STATE CONSUMER PROTECTION

21 LAWS ARE NOT SUFFICIENTLY SUBSTANTIVE TO PREDOMINATE OVER THE

22 SHARED CLAIMS."

23     THE POINT IS, ALL THE CLASS MEMBERS HAD THE SAME PROBLEM:

24 THEY BOUGHT A PHONE THAT IS ALLEGED TO SUFFER FROM A LATENT

25 DEFECT, AND THEY ALLEGE TO HAVE OVERPAID AS A RESULT.

1        THE COURT:  OKAY.  WELL, THANK YOU.  I REALLY

2  APPRECIATE THAT.  I -- YOU KNOW, MY OPINION ON THE CORRECTNESS

3  OF THE DECISION WILL ALIGN EXACTLY WITH WHAT THE NINTH

4  CIRCUIT'S LAST WORD ON IT IS.

5        (LAUGHTER.)

6        THE COURT:  ALL RIGHT.  THAT'S HELPFUL.

7     AND, OF COURSE, IF ANYTHING CHANGES AT THE FINAL APPROVAL,

8  YOU KNOW, OF COURSE WE -- AND WE'LL CERTAINLY LOOK TO SEE IF

9  THERE ARE ANY OBJECTORS OR ANYTHING ELSE ON THAT.  BUT RIGHT

10  NOW I THINK IT LOOKS FINE.

11     I'M COMFORTABLE MOVING AHEAD, BUT I WANTED TO HEAR A

12  LITTLE BIT ABOUT THAT, SO I APPRECIATE THAT.

13        MR. GIRARD:  THANK YOU.

14        THE COURT:  OKAY.  SO I WOULD LIKE TO TURN TO THE

15  SETTLEMENT AGREEMENT NOW, AND AS I SAY, I LITERALLY GO THROUGH

16  THIS PAGE BY PAGE SO THAT I CAN TALK TO YOU ABOUT IT.

17        MR. GIRARD:  UM-HUM.

18        THE COURT:  AND I'M GOING TO START ON PAGE 11 OF THE

19  SETTLEMENT AGREEMENT ON "RELEASED CLAIMS."  OBVIOUSLY THE SCOPE

20  OF THE RELEASE IS VERY IMPORTANT.

21        MR. GIRARD:  RIGHT.

22        THE COURT:  AM I CORRECT THAT ANYONE WHO PURCHASED A

23  NEXUS 6P PHONE IS RELEASING CLAIMS OF ANY DEFECT OR PROBLEM

24  WITH THAT PHONE, REGARDLESS OF WHETHER IT WAS BATTERY DRAIN OR

25  BOOTLOOP, ANYTHING ELSE THAT -- CRACKED SCREEN, YOU KNOW,

```
 1        ANYTHING UNRELATED, THEY'RE RELEASING ALL CLAIMS ABOUT THIS
 2        PHONE FOREVER?
 3                MR. GIRARD:  I'M NOT SURE I AGREE WITH THAT.
 4                THE COURT:  OKAY, GOOD.  WELL, I WANT TO HEAR FROM
 5        YOU.
 6                MR. GIRARD:  MY VIEW IS THAT THEY'RE RELEASING CLAIMS
 7        THAT WERE ASSERTED ARISING OUT OF OR RELATED TO THE ACTION OR
 8        THE SUBJECT MATTER OF THE ACTION.
 9                THE COURT:  SO THE SUBJECT MATTER IS NOT THE PHONE.
10                MR. GIRARD:  IT'S THE ALLEGED DEFECTS IN THE CASE.
11                THE COURT:  THE DEFECTS.
12                MR. GIRARD:  SO IF, YOU KNOW, THE PHONE CREATED AN
13        INJURY, IT BLEW UP, FOR EXAMPLE, THAT WOULDN'T BE INCLUDED.
14                THE COURT:  SO WHAT ABOUT WHAT COULD HAVE BEEN
15        ASSERTED IN THE ACTION?
16                MR. GIRARD:  WELL, COULD HAVE BEEN ASSERTED, I THINK
17        THE WAY COURTS INTERPRET THAT IS NOT TO MEAN THAT YOU COULD
18        HAVE AMENDED IT AND ASSERTED A COMPLETELY DIFFERENT CLAIM THAN
19        THE ONES THAT WERE PLED.  BUT -- AND BY "CLAIM" I MEAN ARISING
20        OUT OF A DIFFERENT SUBJECT MATTER.
21            I THINK WHAT THAT MEANS IS THAT IT COULD HAVE BEEN
22        ASSERTED.  SO IF WE COULD HAVE PLED A RICO CLAIM OR SOME
23        OTHER --
24                THE COURT:  SO THEORY OF LIABILITY, BUT NOT A FACTUAL
25        DEFECT?
```

1          MR. GIRARD:  UNLESS IT WAS TIED TO THIS DEFECT IN

2     SOME WAY.

3          THE COURT:  OKAY.  SO -- ALL RIGHT.  I'M GOING TO

4     HEAR FROM THE DEFENDANTS ON THIS BECAUSE THEY ARE THE ONES WHO

5     WOULD --

6          MR. GIRARD:  YEAH.

7          THE COURT:  -- BE ASSERTING THE RELEASE.

8          MR. GIRARD:  AND JUST TO FINISH, BECAUSE THIS

9     FORMULATION OF ARISING OUT OF --

10          THE COURT:  YES.

11          MR. GIRARD:  -- HAS, I THINK, BEEN TRIED AND TRUE AS

12     BEING WITHIN THE TRANSACTIONAL RELATIONSHIP TEST FOR PURPOSES

13     OF CLAIM PRECLUSION AND IS THE SAME FORMULATION THAT YOU SEE IN

14     SECURITIES CASES AND THE LIKE.

15          SO THAT'S WHERE THAT COMES FROM.  THERE'S A REASON IT'S IN

16     THERE.

17          THE COURT:  AND I AGREE, IT'S VERY STANDARD LANGUAGE.

18          MR. GIRARD:  THANK YOU.

19          THE COURT:  MR. LERNER, WHAT DO YOU THINK?

20          MR. LERNER:  SO I DO THINK, AS MR. GIRARD OUTLINED,

21     WE DID INTEND THIS BASICALLY TO ENCOMPASS KIND OF WHAT PEOPLE

22     WOULD RATIONALLY BELIEVE COULD BE INCLUDED HERE.

23          AND I THINK, FOR EXAMPLE, ON OUR SIDE, IF LATE IN THE CASE

24     SOMEBODY HAD COME IN AND SAID, "WE'RE GOING TO ADD THIS

25     COMPLETELY UNRELATED NEW CLAIM," WE WOULD HAVE A BASIS UNDER

1     THE RULES TO OBJECT TO THAT AND WE THINK WE WOULD HAVE.

2          THE COURT:  OKAY.  SO MY EXAMPLE OF THE SCREEN

3     CRACKS, WHICH IS COMPLETELY PHYSICAL AND NOT PART OF THE

4     SOFTWARE, THAT'S WHY I GAVE THAT EXAMPLE, IT'S SO COMPLETELY

5     UNRELATED.

6          MR. LERNER:  RIGHT.  AND TO BE CLEAR, IN THIS CASE

7     BECAUSE -- AND YOU'LL REMEMBER THIS FROM THE HEARINGS ON THE

8     MOTION TO DISMISS --

9          THE COURT:  YEAH.

10          MR. LERNER:  -- BECAUSE OF KIND OF THE BREADTH OF THE

11     ISSUES AS THEY WERE DEFINED, I DON'T IMAGINE, STANDING HERE,

12     THAT A SCREEN CRACKING WOULD RESULT FROM THE DESCRIPTION OF

13     THESE CLAIMS IN THE CASE.

14          THE COURT:  RIGHT.

15          MR. LERNER:  BUT IF SOMEBODY CAME BACK AND SAID, IN

16     FACT, THINGS GET TOO HOT OR WHATEVER IT IS.

17          THE COURT:  GET TOO HOT, RIGHT.

18        OKAY.  ALL RIGHT.  THANK YOU.

19        LET ME MOVE ON TO PAGE 14, SECTION 1.6.  I THINK WE TALKED

20     ABOUT THAT.  THAT WAS THE NATIONWIDE CLASS.  I'M FINE WITH

21     THAT.

22        ON PAGE 19, SECTION 2.9(I), OR LITTLE I, IT WAS -- SO A

23     PERSON WHO ELECTS ELECTRONIC PAYMENT, BUT DOESN'T GIVE THE

24     CORRECT INFORMATION, RELINQUISHES THEIR RIGHT TO SETTLEMENT

25     PAYMENTS.

 1      I -- THERE'S NO OPTION TO COMMUNICATE WITH THEM TO ASK FOR

 2   CORRECT INFORMATION OR ALTERNATE PAYMENT?

 3          MR. GIRARD:  THEY WILL NORMALLY DO THAT.  THEY ALWAYS

 4   GO BACK TO PEOPLE AND ASK THEM TO CURE IF THERE'S A FAILURE

 5   LIKE THAT.  I THINK THE THOUGHT WAS IF THEY COULDN'T PIN THAT

 6   DOWN.

 7      BUT IT'S PRETTY EASY FOR THEM TO DO THAT, AND THEY WILL,

 8   AND THAT'S SOMETHING WE'VE TALKED ABOUT WITH THEM, THAT WE

 9   DON'T WANT SOMEBODY COMING BACK AND SAYING, "I DIDN'T GET MY

10   MONEY BECAUSE I DIDN'T PUT IN THE LAST DIGIT OF THE PAYMENT

11   INSTRUCTIONS."  SO THEY'LL GO BACK TO THOSE PEOPLE.

12          THE COURT:  BUT THERE'S NO OBLIGATION HERE, SO I HAVE

13   TO ASSUME THAT IF THE INFORMATION IS WRONG, IT'S DONE, IT'S

14   RELINQUISHED.

15          MR. GIRARD:  THAT'S NOT WHAT WE EXPECT THEM TO DO.

16          THE COURT:  I APPRECIATE THAT, BUT I'M JUST LOOKING

17   AT THE AGREEMENT.

18          MR. GIRARD:  SO MR. POLK IS POINTING OUT, IT'S AFTER

19   A REASONABLE ATTEMPT TO RESOLVE ANY SUCH SETTLEMENT PAYMENT

20   ISSUES.  IF YOU LOOK IN 2.9, LITTLE I --

21          THE COURT:  YEAH.

22          MR. GIRARD:  -- IN THE THIRD LINE -- OR THE SECOND

23   LINE UP FROM THE BOTTOM OF THAT INDENTED SPACE THERE.

24          THE COURT:  OKAY.

25          MR. GIRARD:  SO THAT "REASONABLE ATTEMPT TO RESOLVE"

```
1      I THINK IS INTENDED TO ADDRESS THE CONCERN THAT SOMEBODY'S

2      BEING EFFECTIVELY FORFEITED OUT.

3              THE COURT:  ALL RIGHT.  THAT'S HELPFUL.

4          ALL RIGHT.  AND PAYMENTS OF LESS THAN $2, I THINK THAT'S A

5      VERY -- ON 2.9.2, THAT IS A REASONABLE AMOUNT TO SAY WE'RE NOT

6      PAYING LESS THAN $2.  IT COSTS MORE TO PROCESS.

7          AND 2.10.1 ALSO REQUIRES THE $2 MINIMUM AND THAT'S FINE.

8          AND THEN MOVING ON TO PAGE 21, THE DISTRIBUTION TO THE

9      CY PRES RECIPIENT, YOU'VE ELECTED, CHOSEN ONE RECIPIENT; IS

10     THAT CORRECT?

11             MR. GIRARD:  WE HAVE.  THAT'S WHAT WE'VE SUGGESTED,

12     AND WE GAVE YOU SOME BACKGROUND ON HOW WE GOT THERE --

13             THE COURT:  YES.

14             MR. GIRARD:  -- AND THE FACT THAT NONE OF US HAVE A

15     CONNECTION.

16             THE COURT:  THAT'S THE PLACE I START, SO THAT'S FINE.

17         IN TERMS OF -- I DON'T THINK I NEED TO DO ANYTHING MORE.

18     I DON'T DISAPPROVE OF WHAT YOU'VE SELECTED.  IT REALLY COMES

19     DOWN TO HOW MUCH MONEY IS LEFT --

20             MR. GIRARD:  EXACTLY.

21             THE COURT:  -- AS TO WHETHER OR NOT I'M WILLING TO

22     LET IT BE A CY PRES DISTRIBUTION.

23             MR. GIRARD:  EXACTLY.

24             THE COURT:  SO THAT'S SOMETHING FOR THE FINAL

25     APPROVAL, AND MAYBE BEYOND.
```

1          MR. GIRARD:  WE'LL SEE HOW THIS ALL WORKS OUT, BUT

2     IT'S CERTAINLY SOMETHING WE SPENT A LOT OF TIME TALKING ABOUT

3     AND HOPEFULLY HAVE IT ANTICIPATED.

4          THE COURT:  GOOD.

5      SO THEN I'M GOING TO PAGE 31 ON THE OBJECTORS, 5.1.3.

6     YOU'RE HAVING THE OBJECTORS SUBMIT THE OBJECTIONS TO THE COURT,

7     WHICH IS FINE, AND YOU'RE REQUIRING THAT THEY BE RECEIVED BY

8     THE POSTMARK DATE ON THE ENVELOPE.

9          FIRST A QUESTION TO COURT STAFF.  DOES THE COURT RETAIN

10     ENVELOPES OF DOCUMENTS SENT IN?

11          THE CLERK:  NO, YOUR HONOR.

12          THE COURT:  SO I HAVE A PROBLEM WITH -- I DIDN'T

13     THINK SO.  AND IT'S A BURDEN ON THE COURT.

14      SO I WAS -- I DON'T REALLY KNOW HOW TO DEAL WITH THIS

15     SECTION OF OBJECTORS NEEDING TO POSTMARK BY THE DEADLINE FOR

16     OBJECTIONS.  AND I'M LOOKING IN (B), 5.1.3.

17          MR. GIRARD:  YOU CAN JUST -- WE CAN MAKE THAT A

18     RECEIVED BY DATE AND YOU CAN -- WE CAN SUBMIT A SOMEWHAT

19     REVISED PROPOSED PRELIMINARY APPROVAL ORDER THAT SAYS "THE

20     COURT WILL TREAT OBJECTIONS AS TIMELY IF RECEIVED BY THE

21     DEADLINE DATE BY THE COURT CLERK."

22          THE COURT:  SO THEN YOU'RE GOING TO ADD THREE DAYS

23     FOR MAILING?  I MEAN, THAT'S THE -- THAT'S WHERE WE --

24          MR. GIRARD:  YEAH.

25          THE COURT:  AND I DON'T ACTUALLY HAVE A VIEW ON IT.

1    BUT THIS WON'T WORK.  AND THIS IS IN THE SETTLEMENT, SO

2    YOU WILL HAVE TO MODIFY THE SETTLEMENT AGREEMENT AS WELL.

3              MR. GIRARD:  WELL, I THINK YOU CAN JUST --

4              THE COURT:  I DON'T THINK IT'S A DEAL BREAKER KIND OF

5    CHANGE.

6              MR. GIRARD:  YOU CAN DO IT IN YOUR ORDER AND MODIFY

7    THE SETTLEMENT AGREEMENT IN YOUR ORDER.

8              THE COURT:  UM --

9              MR. GIRARD:  BUT I ASSUME -- WE CAN AMEND THE

10   SETTLEMENT AGREEMENT ALSO IF YOU'D LIKE.

11             THE COURT:  YEAH, I WOULD LIKE YOU TO AMEND THE

12   SETTLEMENT AGREEMENT.

13             MR. GIRARD:  OKAY.

14             THE COURT:  AS I SAY, I DON'T THINK IT'S A DEAL

15   BREAKER, MR. LERNER.

16             MR. LERNER:  AND SORRY TO BE SLOW, BUT JUST TO BE

17   CLEAR, WHAT WE'RE ALL CONTEMPLATING IS BASICALLY SAYING

18   WITHIN -- RECEIVED WITHIN THREE DAYS OF THE CUTOFF TO ALLOW FOR

19   MAILING?

20             THE COURT:  RIGHT.

21             MR. LERNER:  YES.

22             THE COURT:  THAT'S ALL.  THAT'S RIGHT.

23        AND THEN THE NOTICE IS GOING TO HAVE TO SPECIFY THAT -- SO

24   IF SOMEONE WALKS IT INTO THE COURT, IT'S GOT -- YOU KNOW,

25   AGAIN, THINGS GET SO COMPLICATED.  SO A CLAIMANT COULD -- OR AN

1    OBJECTOR COULD WALK INTO COURT.  DO THEY HAVE TO WALK IT IN BY

2    THE DUE DATE, OR IS THERE GOING TO BE A UNIFORM DUE DATE FOR

3    EVERYONE?

4         THESE THINGS CAUSE REAL PROBLEMS IF AN OBJECTOR WANTS TO

5    APPEAL LATER.

6              MR. GIRARD:  RIGHT.  I THINK THERE OUGHT TO BE A HARD

7    DEADLINE FOR RECEIVED BY THE CLERK OF THE COURT.

8              THE COURT:  I THINK A SINGLE --

9              MR. GIRARD:  AND THE TIMING WE'RE USING HERE, THIS IS

10   60 DAYS FROM THE EXPIRATION OF THE NOTICE DEADLINE.

11             THE COURT:  OKAY.

12             MR. GIRARD:  SO THERE'S ALREADY A LONGER TIME IN

13   THERE BECAUSE THE CASES SAY 35 DAYS IS ENOUGH.

14             THE COURT:  GOOD.

15             MR. GIRARD:  AND SO WE'RE OUT TO 60.  SO I THINK

16   WE'VE GIVEN PEOPLE ENOUGH TIME THAT YOU COULD SET A HARD BAR

17   DATE 60 DAYS OUT.

18             THE COURT:  THEN (A) AND (B) NEED TO BE COLLAPSED TO

19   REQUIRE RECEIPT BY THE COURT BY 11:59 P.M., AND SPECIFY IN THE

20   NOTICE THAT'S BY ECF, BY HAND, OR BY MAIL.  OF COURSE, THE

21   COURT HOURS ARE -- THEY'RE ONLY NORMAL COURT HOURS, SO IF

22   SOMEONE ARRIVES, I GUESS --

23        IS THERE AN OUTDOOR BOX?

24             THE CLERK:  THERE IS UNTIL 7:00 P.M.

25             THE COURT:  UNTIL 7:00.  SO IT MUST BE RECEIVED BY

1    THE COURT, YEAH.

2              MR. GIRARD:  SO RECEIVED BY THE COURT BY 11:59 P.M.,

3    ECF, WHETHER BY HAND OR MAIL -- ECF, HAND, OR MAIL?

4              THE COURT:  WELL, THEY CAN'T DO 11:59 BY HAND AND

5    MAIL.  THAT'S MY POINT.

6              MR. GIRARD:  OKAY.

7              THE COURT:  SO I JUST NEED THIS TO BE REALLY CLEAR.

8    I THINK IF YOU SPECIFY THAT THEY MUST BE RECEIVED BY THE COURT

9    ON THAT DAY, THE DAY IS THE DAY.

10             MR. GIRARD:  RIGHT.

11             THE COURT:  I DON'T THINK WE NEED TO DEFINE WHAT THE

12   DAY IS.

13             MR. POLK:  I THINK THAT'S RIGHT.  THE GUIDANCE

14   ACTUALLY HAS LANGUAGE THAT WE CAN CARRY OVER INTO HERE.

15             THE COURT:  GOOD.  SO I DO NEED THAT CHANGED, AND I'D

16   LIKE -- YEAH, THAT'S GREAT.

17        OKAY.  SO I'LL GET AN AMENDMENT ON THAT.

18        AND THEN GOING ON TO PAGE 34, WE TALKED ABOUT THE RELEASE.

19   I'M FINE ON THAT.

20        ALL RIGHT.  THEN I'M LOOKING AT EXHIBIT C, WHICH IS THE

21   CLAIM FORM.

22             MR. GIRARD:  UM-HUM.

23             THE COURT:  I ASKED YOU -- YOU GAVE ME A GOOD ANSWER

24   ON WHAT CONSTITUTES DOCUMENTATION.  I DON'T BELIEVE THE CLAIM

25   FORM DESCRIBES THAT, THOUGH, DOES IT?

1        MR. GIRARD:  IT DOESN'T.  IT'S DESCRIBED IN THE

2   NOTICE, AND GENERALLY WE TRIED TO AVOID PUTTING EXPLANATORY

3   MATERIAL IN THE CLAIM FORM --

4        THE COURT:  OKAY.

5        MR. GIRARD:  -- SO IT DIDN'T MAKE IT LONGER.

6        THE COURT:  OKAY.  I'M FINE WITH THAT, AND I GUESS I

7   DIDN'T SEE IT IN THE NOTICE.

8        LET'S GO TO EXHIBIT E THEN, BECAUSE THE CLAIM FORM ITSELF

9   IS VERY STRAIGHTFORWARD, AND I'M HAPPY WITH THAT.

10       THEN I'M LOOKING AT EXHIBIT E, WHICH IS THE NOTICE.

11       MR. GIRARD:  YOU KNOW, I THINK, AS A PRACTICAL

12   MATTER, THE WAY THIS WORKS IS IT'S ON THE WEBSITE BECAUSE MOST

13   OF THESE GET FILED ON-LINE, AND I MAY HAVE MISSPOKEN WHEN I

14   SAID IT WAS IN THE CLAIM FORM.

15       THE COURT:  SO I DON'T MIND IT -- SO THE NOTICE IS

16   THE SERIES OF QUESTIONS AND ANSWERS; RIGHT?

17       MR. GIRARD:  CORRECT.

18       THE COURT:  AND I THINK THAT'S FINE.  I THEN WOULD

19   LIKE A QUESTION AND ANSWER THAT IS, "HOW DO I PROVIDE

20   DOCUMENTATION?"

21       MR. GIRARD:  OKAY.

22       THE COURT:  I THINK THAT'S IMPORTANT, BECAUSE WHAT

23   YOU DESCRIBED, I COULDN'T ACTUALLY -- I MEAN, I IMAGINED SOME

24   OF THOSE THINGS, BUT IT'S A LITTLE BROADER.  YOU SENT AN

25   E-MAIL, A COPY OF AN E-MAIL COMPLAINING IS MAKING A COMPLAINT

1    ABOUT BOOTLOOP OR BATTERY DRAIN.  SO I THINK YOU SHOULD ADD

2    THAT.

3              MR. GIRARD:  SO THAT WOULD BE ON PAGE 6 AT

4    QUESTION 10, AND IF -- DO YOU WANT US TO MAKE IT A SEPARATE

5    QUESTION OR JUST SUPPLEMENT THE INFORMATION, "HOW CAN I GET A

6    PAYMENT?"

7              THE COURT:  I'D LIKE A SEPARATE QUESTION --

8              MR. GIRARD:  A SEPARATE QUESTION, OKAY.

9              THE COURT:  -- BECAUSE IT'S SO IMPORTANT.  IT'S A BIG

10   DIVIDE IN THE AMOUNT OF MONEY THEY GET AS TO WHETHER THEY HAVE

11   DOCUMENTATION OR NOT.

12             MR. GIRARD:  YEP.

13             THE COURT:  AND I DON'T ACTUALLY EXPECT THAT THE

14   CLAIMS ADMINISTRATOR WILL TAKE CLAIMS WITHOUT DOCUMENTATION AND

15   ASSUME THAT THEY NEED TO BE FOLLOWED UP TO SEE IF THEY'VE LEFT

16   SOMETHING OUT.

17             MR. GIRARD:  UNDERSTOOD, YOUR HONOR.

18             THE COURT:  SO I WOULD LIKE THAT ADDED.

19        ALL RIGHT.  WE'RE GETTING TO THE END HERE.

20        OH, EXHIBIT F IS THE NOTICE.  WHY IS THIS MARKED

21   "CONFIDENTIAL ATTORNEY WORK PRODUCT" AT THE TOP?

22             MR. POLK:  THAT SHOULD HAVE BEEN CARVED OUT, YOUR

23   HONOR.

24             THE COURT:  OKAY.

25             MR. POLK:  THAT'S A TYPO.  THIS IS THE POSTCARD

```
 1      NOTICE, SO THIS IS NOT THE --

 2              THE COURT:  I MEAN, I ASSUMED THAT IT WAS, BUT,

 3      AGAIN, I'M APPROVING THESE AS THOUGH THEY ARE WHAT'S GOING OUT.

 4      SO THANK YOU.

 5              MR. POLK:  YEAH.

 6              THE COURT:  SOMETIMES THOSE CAN GET OVERLOOKED IF

 7      THEY'RE NOT POINTED OUT.

 8          CLEARLY YOU HAVE, BY NECESSITY, MANY BLANK SPOTS FOR PHONE

 9      NUMBERS, WEBSITES, DATES, AND ALL.  OF COURSE YOU'LL GO THROUGH

10      IT WITH A FINE TOOTH COMB.

11              MR. POLK:  YES, I WILL.

12              THE COURT:  SO YOU'LL PROVIDE ME WITH A REVISED

13      NOTICE THAT SHOWS THE DOCUMENT, "HOW DO I PROVIDE

14      DOCUMENTATION?"

15          YOU'LL PROVIDE ME WITH A COPY OF THE MODIFICATION OF THE

16      SETTLEMENT AGREEMENT ON THE ISSUE OF THE DEADLINE FOR

17      OBJECTIONS.

18              MR. GIRARD:  UM-HUM.

19              THE COURT:  I THINK THOSE ARE REALLY THE ONLY THINGS

20      I'M ASKING YOU TO CHANGE.

21              MR. GIRARD:  I THINK THAT'S RIGHT.

22              THE COURT:  AND THE NOTICE -- AND THE NOTICE WILL

23      CORRESPOND ON THE NOTICE -- THE NOTICE FOR THE OBJECTION

24      DEADLINE.

25              MR. GIRARD:  I NEED TO CHECK THE PRELIMINARY APPROVAL
```

1    ORDER TO SEE IF IT NEEDS A CONFORMING CHANGE --

2              THE COURT:  IT PROBABLY DOES.

3              MR. GIRARD:  -- WITH REGARD TO OBJECTIONS.

4              THE COURT:  SO YOU'LL NEED TO DO THAT, ALL THAT.  I

5    WON'T SIGN THE ONE YOU GAVE ME.  I'LL WAIT FOR YOU TO GIVE ME

6    THIS NEW PACKET.

7              MR. GIRARD:  SO QUESTION FOR YOUR HONOR IN TERMS OF

8    TIMING AND PROVIDING YOU WITH AN ORDER THAT -- BECAUSE WE

9    CAN -- THERE'S REALLY ONE DATE THAT GOES INTO THE PRELIMINARY

10   APPROVAL ORDER --

11             THE COURT:  RIGHT.

12             MR. GIRARD:  -- WHICH IS THE FINAL FAIRNESS HEARING.

13             THE COURT:  YES.  WE'LL SET THAT TODAY.

14             MR. GIRARD:  GREAT.  AND SO WHAT I WAS THINKING IS IF

15   THE COURT IS PREPARED TO ENTER A PRELIMINARY APPROVAL ORDER

16   SUBJECT TO THE CHANGES THAT YOU'VE ORDERED, IF YOU THINK IT'S

17   POSSIBLE THAT THAT COULD ENTER TOMORROW, WE'VE RUN THE DATES

18   AND COULD SUGGEST TO YOU A POSSIBLE DATE FOR A FINAL FAIRNESS

19   HEARING, WHICH WOULD BE --

20             MR. POLK:  OCTOBER 10TH.

21             MR. GIRARD:  -- OCTOBER 10TH, WHICH IS -- IF WE'VE

22   RUN ALL THESE DATES OUT, IT'S A THURSDAY.

23             THE COURT:  OH, GOOD.  THAT'S THE DAY OF THE WEEK.

24        SO, I MEAN -- WHAT IS THE PRETRIAL SET ON OCTOBER 10TH?

25             THE CLERK:  THAT ACTUALLY WENT AWAY.  THERE'S NOTHING

```
 1    IN THE AFTERNOON.

 2              THE COURT:  THAT'S GREAT.  OCTOBER 10 WOULD BE GOOD

 3    THEN.

 4              MR. GIRARD:  PERFECT.

 5              THE COURT:  AND WE DO THOSE AT 1:30.

 6              MR. GIRARD:  THANK YOU.

 7        SO WE WILL GET THIS IN BY THE CLOSE OF BUSINESS TODAY OR

 8    FIRST THING TOMORROW IF THAT'S ACCEPTABLE TO THE COURT.

 9              THE COURT:  YOU'LL GET WHAT IN?

10              MR. GIRARD:  THE REVISIONS THAT WE'D PROMISED YOU.

11              THE COURT:  OH.  AS SOON AS YOU GIVE ME THE REVISIONS

12    AND A REVISED -- BECAUSE I'M GOING TO SIGN YOUR PROPOSED ORDER,

13    SO AS SOON AS WE GET IT, I'LL SIGN IT.

14              MR. GIRARD:  THANK YOU.

15              THE COURT:  BUT I'M NOT GOING TO SIGN SUBJECT TO THE

16    CHANGES.  THEY'RE MODEST AND I -- I JUST WANT TO -- I WANT TO

17    ACTUALLY SEE THE REVISED NOTICE SO THAT I'M COMFORTABLE WITH

18    IT.

19         (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

20              MR. GIRARD:  WE'RE JUST TALKING ABOUT SOME LOGISTICS

21    ON THE NOTICE.

22              THE COURT:  SURE.

23         (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

24              MR. GIRARD:  SO I THINK WE'RE -- EVERYBODY IS IN

25    AGREEMENT, WE CAN GET YOU THIS MATERIAL BY TOMORROW MORNING.
```

1          THE COURT:  THAT'S GREAT.  I'VE NEVER HAD ONE THAT

2     DIDN'T HAVE SOME CHANGES.  THIS IS ABOUT AS LIGHT AS THEY COME.

3          MR. GIRARD:  THANK YOU.

4          THE COURT:  YOU'VE REALLY DONE A BEAUTIFUL JOB ON IT.

5       SO THERE ARE JUST THOSE FEW CHANGES.  YOU'LL GIVE ME A

6     REVISED NOTICE.

7       I DON'T NEED AN ENTIRE NEW SETTLEMENT AGREEMENT.  I NEED

8     THAT ONE SECTION.  I NEED TO SEE THE LANGUAGE.  AND YOU'LL

9     SUBMIT IT AS APPROVED BY THE PARTIES.  I DON'T NEED COMPANY

10    SIGNATURES ON IT BECAUSE YOUR REPRESENTATION IS FINE.

11         MR. GIRARD:  THANK YOU.

12         THE COURT:  AND IT'S SO CLEARLY NOT A DEAL BREAKER,

13    I'M NOT WORRIED.

14         MR. GIRARD:  THANK YOU.

15         THE COURT:  BUT I DO WANT TO ACTUALLY SEE THE REVISED

16    NOTICE.

17         MR. GIRARD:  SURE.

18         THE COURT:  AND THEN THE OCTOBER 10 DATE IS FINE, SO

19    WE'LL JUST PLAN FOR THAT, WHICH IS -- I THINK THAT'S REALLY

20    EFFICIENT AND WE GOT THAT DONE.

21       MR. LERNER?

22       (DISCUSSION OFF THE RECORD BETWEEN COUNSEL.)

23         MR. GIRARD:  I THINK WE'RE GOOD.

24         THE COURT:  OKAY.  SO JUST BECAUSE I DO NEED TO MAKE

25    THESE FINDINGS, I WILL APPROVE, FOR SETTLEMENT PURPOSES, THE

1       NATIONWIDE CLASS AS IDENTIFIED IN THE PAPERS.  I DO FIND THAT

2       THE PROPOSED SETTLEMENT IS SERIOUS AND INFORMED AND

3       NON-COLLUSIVE.  THERE ARE NO OBVIOUS DEFICIENCIES.  THERE'S NO

4       IMPROPER PREFERENTIAL TREATMENT OF CLASS MEMBERS, AND IT FALLS

5       WITHIN THE RANGE OF POSSIBLE AWARDS.

6           I'M SATISFIED THAT THE CLASS COUNSEL THAT HAS BEEN

7       PROVISIONALLY APPOINTED AND APPOINTED FOR THIS CLASS IS

8       EXPERIENCED.

9           THIS CASE WAS SETTLED WITH THE HELP OF A NEUTRAL MEDIATOR

10      AND THAT, OF COURSE, WEIGHS IN FAVOR OF THE APPROPRIATENESS AND

11      ADEQUACY OF THE SETTLEMENT.

12          BASED ON THE PAPERS SUBMITTED TO THE COURT, I FIND THAT

13      THE INVESTIGATION AND DISCOVERY AND THE USE OF EXPERTS WAS

14      EXTENSIVE, ACTUALLY, AND DID PROVIDE COUNSEL WITH ADEQUATE

15      AND -- WELL, IT MAY BE MORE OF THE INFORMATION ON THE CLAIMS

16      AND VIABILITY OF THE CLAIMS THAN I OFTEN SEE.

17          AND SO IT IS LIKELY THAT I WILL APPROVE THIS SETTLEMENT AT

18      THE FINAL APPROVAL HEARING PURSUANT TO RULE 23 AND CERTIFY THAT

19      SETTLEMENT CLASS.

20          I FIND THAT THE NOTICE PROPOSED IS ADEQUATE WITH THE

21      MODEST CHANGES MADE, AND WE'VE SET OUR FINAL APPROVAL HEARING.

22          YOUR ORDER TRACKS THOSE FINDINGS, BUT I WILL -- AND I WILL

23      SIGN THAT AS SOON AS YOU SEND IT TO ME.

24          MR. GIRARD:  THANK YOU SO MUCH, YOUR HONOR.

25          THE COURT:  ALL RIGHT.  THANK YOU.

1           MR. GIRARD:  WE APPRECIATE THE CLOSE READ ON ALL THIS

2   AND THE OVERSIGHT.  THANK YOU AGAIN.

3           MR. LERNER:  THANK YOU.

4           THE COURT:  GOOD TO SEE ALL OF YOU.

5       (THE PROCEEDINGS WERE CONCLUDED AT 2:23 P.M.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2

3                      CERTIFICATE OF REPORTER

4

5

6

7          I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE UNITED

8     STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA,

9     280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO HEREBY

10    CERTIFY:

11         THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

12    A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

13    ABOVE-ENTITLED MATTER.

14

15

16    _____
      LEE-ANNE SHORTRIDGE, CSR, CRR
17    CERTIFICATE NUMBER 9595

18         DATED:  MAY 15, 2018

19

20

21

22

23

24

25