Daniel C. Girard (State Bar No. 114826)
Jordan Elias (State Bar No. 228731)
Adam E. Polk (State Bar No. 273000)
Trevor T. Tan (State Bar No. 281045)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, California 94108
Tel: (415) 981-4800
*dgirard@girardsharp.com*
*jelias@girardsharp.com*
*apolk@girardsharp.com*
*ttan@girardsharp.com*

Benjamin F. Johns *(pro hac vice)*
Andrew W. Ferich *(pro hac vice)*
Zachary P. Beatty *(pro hac vice)*
Beena M. McDonald *(pro hac vice)*
**CHIMICLES SCHWARTZ KRINER**
 **& DONALDSON-SMITH LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
*bfj@chimicles.com*
*awf@chimicles.com*
*zpb@chimicles.com*
*bmm@chimicles.com*

*Class Counsel*

## UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IN RE NEXUS 6P PRODUCTS LIABILITY LITIGATION | Case No. 5:17-cv-02185-BLF |
| | **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| | Date: October 10, 2019 |
| | Time: 1:30 p.m. |
| | Courtroom: 3, 5th Floor |
| | Judge: Hon. Beth Labson Freeman |

# **TABLE OF CONTENTS**

NOTICE OF MOTION AND MOTION .................................................................................. 1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................................... 2

    I.      INTRODUCTION ................................................................................................. 2

    II.    PROSECUTION AND SETTLEMENT OF THE ACTION ................................ 3

          A.    The Initial Round of Motions to Dismiss ................................................ 3

          B.    Discovery and the Second Round of Motions to Dismiss ............................ 4

          C.    The Settlement and Notice Results ............................................................. 6

    III.   ARGUMENT ......................................................................................................... 7

          A.    Class Counsel Should be Awarded Fees From the Common Fund ............. 7

          B.    The Percentage of Fund Method Should be Used to Calculate Class
               Counsel's Fees ............................................................................................... 7

          C.    Class Counsels' Requested Fee Award is Reasonable .................................. 9

               1.    Class Counsel Achieved an Excellent Result for the Class ........... 10

               2.    The Complexity, Expense, and Substantial Risk Borne by Class
                     Counsel ................................................................................................. 12

               3.    The Skilled and Superior Quality of Work Performed in Order
                     to Achieve the Settlement ................................................................ 14

               4.    Class Counsel Worked on a Contingent Basis ................................ 16

               5.    The Reaction of the Class Also Supports the Fee Request ............. 17

                6.    The Requested Fee Fits Squarely Within the Percentage of Fees
                       Awarded in Similar Cases ................................................................ 17

               7.    A Lodestar Cross-Check Confirms Class Counsel's Reasonable
                     Fee ......................................................................................................... 18

                     Request ................................................................................................. 18

           D.    Class Counsel Should be Reimbursed for Litigation Expenses ................. 21

          E.    The Court Should Grant a Service Award for Each Class
               Representative ............................................................................................... 22

    IV.   CONCLUSION ................................................................................................... 23

1

## <u>TABLE OF AUTHORITIES</u>

2

**Cases**

3

*Aguirre v. DirecTV, LLC*
    2017 WL 6888493 (C.D. Cal. Oct. 6, 2017) ................................................................ 14

4

*Allagas v. BP Solar Int'l., Inc.*
    2016 WL 9114162 (N.D. Cal. Dec. 22, 2016) ............................................................ 15

5

6

*Anderson v. Samsung Telecommunications America, LLC*
    2014 WL 11430910 (C.D. Cal. Oct. 20, 2014) .......................................................... 13

7

*Bellinghausen v. Tractor Supply Co.*
    306 F.R.D. 245 (N.D. Cal. 2015) ................................................................ 8, 16, 22

8

9

*Blackman v. O'Brien Envtl. Energy, Inc.*
    1999 WL 397389 (E.D. Pa. May 12, 1999) .............................................................. 11

10

*Boeing Co. v. Van Gemert*
    444 U.S. 472 (1980) ................................................................................................ 7, 8

11

12

*Bostick v. Herbalife Int'l of Am., Inc.*
    2015 WL 12731932 (C.D. Cal. May 14, 2015) ........................................................ 14

13

*Bower v. Cycle Gear, Inc*
    2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) .......................................................... 14

14

15

*Brown v. 22nd Dist. Agric. Ass'n*
    2017 WL 3131557 (S.D. Cal. July 21,  2017) .......................................................... 16

16

*Brown v. CVS Pharmacy, Inc.*
    2017 WL 3494297 (C.D. Cal. Apr. 24, 2017) .......................................................... 10

17

18

*Carlin v. DairyAmerica Inc.*
    380 F. Supp. 3d 998 (E.D. Cal. 2019) ................................................................ 16, 17

19

*Ching v. Siemens Indus.*
    2014 WL 2926210 (N.D. Cal. Jun. 27, 2014) .......................................................... 16

20

21

*Clark v. Advanceme, Inc.*
    2011 WL 13180308 (C.D. Cal. Mar. 28, 2011) .......................................................... 7

22

*Davidson v. Apple*
    2019 WL 2548460 (N.D. Cal. June 20, 2019) .......................................................... 13

23

24

*Eashoo v. Iovate Health Scis. U.S.A., Inc.*
    2016 WL 6205785 (C.D. Cal. Apr. 5, 2016) ............................................................ 11

25

26

*Gergetz v. Telenav, Inc.*
    2018 WL 4691169 (N.D. Cal. Sept. 27, 2018) ................................................ 8, 10, 17, 22

27

28

*Haag v. Hyundai Motor Am.*
  2019 WL 1029002 (W.D.N.Y. Mar. 5, 2019) ............................................................. 13

*Harrison v. E.I. DuPont De Nemours & Co.*
  2018 WL 5291991 (N.D. Cal. Oct. 22, 2018) ....................................................... 18, 21

*Hefler v. Wells Fargo & Co.*
  2018 WL 6619983 (N.D. Cal Dec. 18, 2018) ............................................................. 19

*Hendricks v. Starkist Co.*
  2016 WL 5462423 (N.D. Cal. Sept. 29, 2016)
  *aff'd sub nom.* 754 F. App'x 510 (9th Cir. Oct. 19, 2018) .................................... 18, 22

*Hensley v. Eckerhart*
  461 U.S. 424 (1983) ................................................................................................ 10

*Horvath v. LG Elecs. Mobilecomm U.S.A., Inc.*
  2013 WL 12307877 (S.D. Cal. Nov. 5, 2013) ........................................................ 2, 12

*In re Activision Sec. Litig.*
  723 F. Supp. 1373 (N.D. Cal. 1989) ........................................................................ 17

*In re Am. Apparel, Inc. S'holder Litig..*
  2014 WL 10212865 (C.D. Cal. July 28, 2014) ......................................................... 15

*In re Capacitors Antitrust Litig.*
  2018 WL 4790575 (N.D. Cal. Sept. 21, 2018) ....................................................... 8, 9

*In re Cathode Ray Tube (CRT) Antitrust Litig.*
  2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) .......................................................... 9, 10

*In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*
  2013 WL 12387371 (N.D. Cal. Nov. 5, 2013) ........................................................... 20

*In re Dynamic Random Access Memory Antitrust Litig.*
  2014 WL 12879521 (N.D. Cal. June 27, 2014) ......................................................... 20

*In re Heritage Bond Litig.*
  2005 WL 1594403 (C.D. Cal. June 5, 2005) ............................................................. 17

*In re Hyundai and Kia Fuel Econ. Litig.*
  926 F.3d 539 (9th Cir. 2019) ..................................................................................... 8

*In re iPhone Application Litig.*
  6 F. Supp. 3d 1004 (N.D. Cal. 2013) ........................................................................ 12

*In re Korean Air Lines Co., Ltd. Antitrust Litig.*
  2013 WL 7985367 (C.D. Cal. Dec. 23, 2013) ............................................................. 8

*In re LendingClub Sec. Litig.*
  2018 WL 4586669 (N.D. Cal. Sept. 24, 2018) .......................................................... 21

*In re Lenovo Adware Litig.*
  2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) .................................................. 18, 19, 21, 22

iii

*In re Mego Fin. Corp. Sec. Litig.*
    213 F.3d 454 (9th Cir. 2000) ........................................................................ 14

*In re MyFord Touch Consumer Litig.*
    2018 WL 3646895 (N.D. Cal. Aug. 1, 2018) .................................................. 13

*In re Omnivision Techs., Inc.*
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ........................................................ 10

*In re Philips/Magnavox TV Litig.*
    2012 WL 1677244 (D.N.J. May 14, 2012) .................................................... 20

*In re Portal Software, Inc. Sec. Litig.*
    2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ............................................... 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*
    2013 WL 149692 (N.D. Cal. Jan. 14, 2013) .................................................. 20

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*
    2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) ............................................... 19

*In re Wash. Pub. Power Supply Sys. Litig.*
    19 F.3d 1291 (9th Cir. 1994) .......................................................................... 8

*In re Washington Pub. Power Supply Sys. Secs. Litig.*
    19 F.3d 1291 (9th Cir. 1994) ........................................................................ 16

*Jarrell v. Amerigas Propane, Inc.*
    2018 WL 1640055 (N.D. Cal. Apr. 5, 2018) ................................................. 17

*Jasper v. C.R. England, Inc.*
    2014 WL 12577426 (C.D. Cal. Nov. 3, 2014) ............................................... 16

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*
    2018 WL 2183253 (N.D. Cal. May 11, 2018) ............................................... 12

*Johnson v. Gen. Mills, Inc.*
    2013 WL 3213832 (C.D. Cal. June 17, 2013) .......................................... 18, 20

*Kakani v. Oracle Corp.*
    2007 WL 4570190 (N.D. Cal. Dec. 21, 2007) ............................................... 12

*Mauss v. NuVasive, Inc.*
    2018 WL 6421623 (S.D. Cal. Dec. 6, 2018) ................................................. 10

*McKibben v. McMahon*
    2019 WL 1109683 (C.D. Cal. Feb. 28, 2019) ............................................... 20

*Moreyra v. Fresenius Med. Care Holdings, Inc.*
    2013 WL 12248139 (C.D. Cal. Aug. 7, 2013) ............................................... 15

*Norris v. Mazzola*
    2017 WL 6493091 (N.D. Cal. Dec. 19, 2017) ............................................... 14

iv

*Opperman v. Kong Techs., Inc.*
  2017 WL 3149295 (N.D. Cal. July 25, 2017) ............................................. 12

*Paul, Johnson, Alston & Hunt v. Graulty*
  886 F.2d 268 (9th Cir. 1989) ................................................................ 9

*Peel v. Brooksamerica Mortg. Corp.*
  2015 WL 12745788 (C.D. Cal. Apr. 6, 2015) ............................................ 18

*Rodriguez v. W. Publ'g Corp.*
  563 F.3d 948 (9th Cir. 2009) ................................................................ 22

*Salamanca v. Sprint/United Mgmt. Co.*
  2018 WL 1989568 (N.D. Cal. Mar. 9, 2018) ............................................. 23

*Sheikh v. Tesla, Inc.*
  2018 WL 5794532 (N.D. Cal. Nov. 2, 2018) ............................................. 20

*Six Mexican Workers v. Arizona Citrus Growers*
  904 F.2d 1301 (9th Cir. 1990) .............................................................. 9

*Smith v. Am. Greetings Corp.*
  2016 WL 2909429 (N.D. Cal. May 19, 2016) ............................................ 11

*Spann v. J.C. Penney Corp.*
  211 F. Supp. 3d 1244 (C.D. Cal. 2016) .................................................. 17

*Staton v. Boeing Co.*
  327 F. 3d 938 (9th Cir. 2003) ............................................................... 7

*Tait v. BSH Home Appliances Corp.*
  2015 WL 4537463 (C.D. Cal. July 27, 2015) ............................................ 17

*Thomas v. MagnaChip Semiconductor Corp.*
  2018 WL 2234598 (N.D. Cal. May 15, 2018) ......................................... 9, 22

*Vincent v. Hughes Air West, Inc.*
  557 F.2d 759 (9th Cir. 1977) ............................................................... 8

*Vincent v. Reser*
  2013 WL 621865 (N.D. Cal. Feb 19, 2013) .............................................. 7

*Vizcaino v. Microsoft Corp.*
  290 F.3d 1043 (9th Cir. 2002) ....................................................... passim

*Wallace v. Countrywide Home Loans, Inc.*
  2015 WL 13284517 (C.D. Cal. Apr. 17, 2015) ......................................... 16

*Waller v. Hewlett-Packard Co.*
  295 F.R.D. 472 (S.D. Cal. 2013) .......................................................... 12

*Weeks v. Kellogg Co.*
  2013 WL 6531177 (C.D. Cal. Nov. 23, 2013) ........................................... 18

v

*Yastrab v. Apple Inc.*
    173 F. Supp. 3d 972 (N.D. Cal. 2016) ................................................................... 12

*Zepada v. PayPal, Inc.*
    2017 WL 1113293 (N.D. Cal. Mar. 24, 2017) ....................................................... 14

**Rules**

Fed. R. Civ. P. 23 .......................................................................................................... 1, 2, 7

Fed. R. Civ. P. 26 ................................................................................................................. 4

Fed. R. Civ. P. 54 ................................................................................................................. 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS AND SERVICE AWARDS
Case No. 5:17-cv-02185-BLF

## NOTICE OF MOTION AND MOTION

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 10, 2019 at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Beth Labson Freeman, United States District Judge for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, California 95113, Plaintiffs Jonathan Makcharoenwoodhi, Alex Gorbatchev, Brian Christensen, Anthony Martorello, Edward Beheler, Yuriy Davydov, Rebecca Harrison, Zachary Hines, Taylor Jones, Paul Servodio, Justin Leone, James Poore, Jr., and Kenneth Johnston ("Plaintiffs"), will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(h)(1) and 54(d)(2) for an Order awarding:

a.   Attorneys' fees to Class Counsel in the amount of $2,925,000, which is 30% of the $9,750,000 common fund settlement;

b.   Litigation expenses incurred in the prosecution of this case not to exceed $200,000; and

c.   Service awards[1] of $3,000 to each of the 13 class representatives.

This motion is based upon this notice of motion and motion, the accompanying memorandum of points and authorities, the Settlement, including all exhibits thereto, the Joint Declaration of Daniel C. Girard and Benjamin F. Johns ("Joint Decl."), and all other papers and records on file in this action, including those matters of which the Court may take judicial notice, and such other argument as the Court may consider.

---

[1] Capitalized terms have the same meaning as set forth in the definitions section of the Settlement Agreement.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Class Counsel move for (1) an award of attorneys' fees in the amount of $2,925,000 amounting to 30% of the settlement fund; (2) reimbursement of up to $200,000 in litigation expenses; and (3) payment of $3,000 in service awards to each of the 13 class representatives. The modest five percent increase to the 25% benchmark fee is justified by the result achieved and the time invested.   There have been few successful consumer class actions for alleged performance deficiencies in cellular phones.   The most analogous case, *Horvath v. LG Elecs. Mobilecomm U.S.A., Inc.*, No. 3:11-CV-1576-H (RBB), 2013 WL 12307877, at *1 (S.D. Cal. Nov. 5, 2013), settled on a claims-made basis for a flat $19 payment.   In contrast, the settlement here is a cash fund, fees are proportional to the amount recovered, and class members will receive up to $400 per claimant based on common sense distinctions in the severity and frequency of the failures they experienced.

Initial class member reaction to the settlement is favorable.   There have been no objections, two opt-outs, and almost 60,000 claims filed with the claims administrator, a claims rate of approximately 15% (Class Counsel projected a 5% to 20% claims rate in their preliminary approval motion).   While an additional six weeks remains for class members to make claims, and some will inevitably criticize some aspect of the settlement or the claims process, the settlement complies in all respects with this District's class action guidelines, is carefully tailored to the harm alleged, and reflects the considered efforts of experienced counsel to craft a settlement that is a model for responsible application of Rule 23 in a consumer protection case.

The settlement was reached after two years of work opposite capable counsel for two multinational entities, who vigorously defended their clients, challenging multiple aspects of Plaintiffs' case, to the point of even testing (at the pleading stage) their right to maintain their claims as a class action.   The Court adjudicated two motions to dismiss and contentious proceedings over Defendants' motions to stay discovery pending resolution of challenges to the pleadings and personal jurisdiction.   Settlement negotiations were similarly contentious, with the parties devoting nearly five months to negotiating settlement terms, claims procedures, and

2

documentation.  Class Counsel analyzed documents produced by Defendants and non-parties pertaining to the Nexus 6P's advertising, sales figures, customer service and warranty policies and procedures, consumer complaints, and technical information.  Class Counsel consulted with technical experts and negotiated with defense counsel to overcome a number of logistical and practical challenges to developing and implementing a plan to fairly distribute the recovery among class members.  The time invested is a reflection of the effort required to litigate and resolve this case: Class Counsel's lodestar at this point is $3,848,190.50, meaning the requested fee represents a negative multiplier of .76%.  And significant work remains to complete the briefing in support of final approval and claims administration.

The Court should approve the requested award of attorneys' fees, reimbursement of expenses, and service awards to the named plaintiffs.

## II.   PROSECUTION AND SETTLEMENT OF THE ACTION

Plaintiffs brought class actions on behalf of Nexus 6P purchasers in April 2017— *Makcharoenwoodhi et al. v. Huawei Techs. USA, Inc., et al.*, No. 5:17-cv-2185-BLF (N.D. Cal.) and *Christensen v. Huawei Device U.S.A. Inc. et al.*, No. 5:17-cv-02336-BLF (N.D. Cal.).  Class Counsel filed the *Makcharoenwoodhi* and *Christensen* actions following widespread reports that the Nexus 6P smartphones allegedly experience bootloop issues, battery drain issues, or both, impairing or defeating their ability to use their phones.  Joint Decl. at ¶¶ 3-4.

Following a May Order consolidating the cases, the Court issued an Order appointing Girard Sharp LLP and Chimicles Schwartz Kriner & Donaldson-Smith LLP as interim class counsel.  ECF 34.  Since then, over the course of two years, Class Counsel have devoted more than 7,000 hours and advanced considerable out-of-pocket expenses to develop and prosecute the litigation and negotiate a favorable settlement for the Class.  Joint Decl. ¶¶ 31-40.

### A.   The Initial Round of Motions to Dismiss

On May 23, 2017, Plaintiffs filed the Consolidated Amended Complaint ("CAC").  ECF 28.  Motion practice followed immediately.  Defendants each filed separate motions to dismiss the CAC and strike the class allegations.  Among other arguments, Defendants' motions challenged Plaintiffs' breach of express and implied warranty claims, as well as the state-based

3

consumer protection claims (ECF 39), and Huawei's motion also challenged personal jurisdiction (ECF 38).  Defendants also moved to stay discovery.  ECF 41.  Plaintiffs opposed the motions to dismiss and stay.  ECF 46, 53.

The Court held an initial case management conference on August 31, 2017.  Prior to the conference, Plaintiffs prepared and served early document requests pursuant to FED. R. CIV. P. 26(d)(2), conducted a Rule 26(f) conference, and negotiated a protective order and protocol for the discovery of electronically stored information.  Joint Decl. ¶ 8.  Before the initial conference the parties also submitted a stipulation agreeing to participate in private mediation by mid-December which the Court entered.  ECF 63, 81.

The mediation was preceded by an exchange of briefs and discovery.  Joint Decl. ¶ 9.  On December 5, 2017, the parties participated in a full day mediation before Hon. Layn R. Phillips (Ret.).  The mediation was unsuccessful.  *Id.*

After argument on the first motions to dismiss, the Court granted Huawei's motion to dismiss for lack of personal jurisdiction with leave to amend, but also granted Plaintiffs' request for jurisdictional discovery.  ECF 113.  Separately, in an 88-page opinion, the Court granted in part and denied in part the motions to dismiss with leave to amend.  ECF 115.  Although the Court granted Google's motion to dismiss, it denied its motion to strike the class allegations.  *Id.* The Court upheld several of the Plaintiffs' express warranty claims against Huawei, the large majority of implied warranty claims against Huawei, and denied its motion to strike.  *Id.*  Soon after the Court's rulings—and following a series of meet and confer sessions with counsel for Huawei—Plaintiffs served Huawei with discovery concerning personal jurisdiction and Huawei withdrew its personal jurisdiction defense.  ECF 125.

**B.**     **Discovery and the Second Round of Motions to Dismiss**

On May 10, 2018, Plaintiffs filed the Second Amended Complaint ("SAC"), asserting breach of express and implied warranty and consumer protection claims on behalf of a nationwide class.  ECF 117.  After filing the complaint, Plaintiffs moved to lift the discovery stay.  Following briefing and argument on June 7, 2018, the Court granted Plaintiffs' motion, and discovery commenced.  ECF 144.

4

Immediately thereafter, Class Counsel engaged in discovery with Defendants and numerous non-parties, including the following:

- Serving and responding to multiple sets of document requests, interrogatories and requests for admission;
- Defending the depositions of two former Plaintiffs;
- Negotiating a Protective Order that was approved by the Court (ECF 141);
- Negotiating an ESI Protocol that was approved by the Court (ECF 140); and
- Negotiating the production of documents from defendants and 12 non-parties.

Joint Decl. ¶ 15.

Document discovery concerned Nexus 6P advertising, product packaging, sales figures, customer service policies and procedures, consumer complaints, insurance claims, and technical information. *Id.* at ¶ 16.   Discovery required numerous meet and confers with defense counsel to successfully negotiate the parameters of discovery and resolve disputes without requiring the involvement of the assigned magistrate judge. *Id.*  In addition, throughout the litigation Plaintiffs worked with their technical experts to investigate the alleged defect and prepare a draft report by evaluating the Nexus 6P and its internal components. *Id.*  Class Counsel also consulted with economic experts to develop and present a classwide damages methodology in preparation for class certification. *Id.*

On June 14, 2018, Huawei and Google filed a second round of motions to dismiss.  ECF 134, 135.  Plaintiffs opposed both motions.  ECF 148, 149.  Defendants replied (ECF 154, 155), and on October 17, the Court heard argument on the motions (ECF 164).  At the hearing, the Court cautioned that Plaintiffs would need to address the choice of law issues, indicated it would likely dismiss any Song-Beverly claim that relied on arguing Google was a manufacturer under the statute, and questioned the sufficiency of Plaintiffs' pre-sale knowledge allegations. *See* ECF 169, Oct. 17, 2019 Hr'g. Tr. at 8:6-9:11 & 58:2-63:13.  At the Court's suggestion, the parties resumed settlement discussions following the hearing. *Id.* at 63:24-65:6.

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 5:17-cv-02185-BLF

### C.   The Settlement and Notice Results

The parties reached an agreement in principle to resolve the case for a $9.75 million non-reversionary common fund on November 27, 2018.  ECF 175.  Class Counsel then devoted several months to negotiating and finalizing the stipulation of settlement, plan of allocation, and notice documentation.  Joint Decl. ¶ 21.  The Settlement offers all Claimants cash relief, with greater payments going to those Claimants who encountered the alleged defect and support their claim with documentation, and lesser payments going to those who did not experience the alleged defect, who have already been provided with a new, Pixel XL smartphone, or who do not support their claim with documentation:

- Claimants who did not experience the alleged issues or who were provided with a new Pixel XL smartphone will receive between $5 and $10;
- Claimants who attest to experiencing the alleged battery drain issue, but who do not support the claim with valid documentation will receive between $10 and $45;
- Claimants who attest to experiencing the alleged bootloop issue, but who do not submit valid supporting documentation will receive between $20 and $75;
- Claimants who attest to experiencing the alleged battery drain issue and submit valid documentation will receive up to $150;
- Claimants who attest to experiencing the alleged bootloop issue and submit valid documentation will receive up to $325; and
- Claimants who attest to multiple alleged battery or bootloop issues across multiple Nexus 6Ps and submit valid documentation will receive up to $400.

*Id*. at ¶ 23.  Negotiations over the settlement terms took several months, with the parties devoting considerable effort to developing a claims procedure that appropriately balances competing considerations, including the need to concentrate the relief appropriately and minimize the burden on claimants of supporting their claims while deterring fraudulent or overstated claims.  *Id*. at ¶ 21.

Plaintiffs moved for preliminary approval of the Settlement on April 10, 2019, the Court heard argument on May 2, and granted preliminary approval on May 3, after directing the parties

6

to modify certain provisions of the notice documents.  ECF 193, 201, 204.  Following preliminary approval of the settlement, Class Counsel have consulted with the Settlement Administrator to ensure Class Members are notified of the settlement, including obtaining Court approval for Amazon to provide direct notice of the settlement (ECF 212), and have responded to Class Member inquiries about the claims process.  *Id*. at ¶ 24.

While the notice period closed on July 2, and the claims period is ongoing, notice was successful and the settlement has been well received.  To date, Plaintiffs have received 58,954 claims, representing a 15.4% claims rate.  *See* Declaration of Andrew Perry at ¶ 14.  As of the filing of this motion, there have been no objections and two opt outs.  *Id*. at ¶¶ 12-13.  The claims period closes on September 3, 2019, after which Plaintiffs will submit a reply brief updating the Court with the final number of claims, objections, and opt outs.  *Id*. at ¶ 28.

## III.   ARGUMENT

### A.   Class Counsel Should be Awarded Fees From the Common Fund

Rule 23(h) of the Federal Rules of Civil Procedure "states that 'the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement.'"  *Clark v. Advanceme, Inc.*, No. CV 08-3540-VBF(FFMX), 2011 WL 13180308, at *4 (C.D. Cal. Mar. 28, 2011).  It is well-settled that where counsel has created benefits or a common fund for a class, they are entitled to seek an award of fair and reasonable attorneys' fees for their services.  *See, e.g.*, *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980) ("[A] lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole.");  *see also Vincent v. Reser*, No. C-11-03572 CRB, 2013 WL 621865, at *4 (N.D. Cal. Feb 19, 2013);  *Staton v. Boeing Co.*, 327 F. 3d 938, 267 (9th Cir. 2003) ("[T]he common fund doctrine ensures that each member of the winning party contributes proportionally to the payment of attorney's fees.").

### B.   The Percentage of Fund Method Should be Used to Calculate Class Counsel's Fees

Class counsel who generate a common fund recovery for class members are entitled to reasonable attorney's fees from the fund as compensation for their services.  *Van Gemert*, 444

7

U.S. at 478; *Vincent v. Hughes Air West, Inc.*, 557 F.2d 759, 769 (9th Cir. 1977) ("a private plaintiff, or his attorney, whose efforts create, discover, increase or preserve a fund to which others also have a claim is entitled to recover from the fund the costs of his litigation, including attorneys' fees."). This "common fund doctrine," is rooted in the equitable notion that those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and efforts helped create it." *In re Wash. Pub. Power Supply Sys. Litig. (WPPS)*, 19 F.3d 1291, 1300 (9th Cir. 1994).

"Courts in this circuit determine attorney's fees in class actions using either the lodestar method or the percentage-of-recovery method." *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 570 (9th Cir. 2019) (*en banc*); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002); *Gergetz v. Telenav, Inc.*, No. 16-cv-04261-BLF, 2018 WL 4691169, at *6-7 (N.D. Cal. Sept. 27, 2018).

"The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees. . . ." *In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO AGRX, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013). "Indeed, the percentage-of-the-fund method in common fund cases is *preferred* when counsel's efforts have created a common fund for the benefit of the class." *In re Capacitors Antitrust Litig.*, No. 3:14-CV-03264-JD, 2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018) (emphasis in original); *see In re Korean Air Lines Co., Ltd. Antitrust Litig.*, No. CV 07-05107 SJO AGRX, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013) ("The use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit for awarding attorneys' fees and permits the Court to focus on a showing that a fund conferring benefits on a class was created through the efforts of plaintiffs' counsel."); *see also Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015) ("Because this case involves a common settlement fund with an easily quantifiable benefit to the class, the Court will primarily determine attorneys' fees using the benchmark method but will incorporate a lodestar cross-check to ensure the reasonableness of the award.").

1
2
3
4

In this case, the settlement is all-cash and the settlement amount is a fixed common fund of $9.75 million, so the benefit to the class is easily quantifiable, weighing in favor of determining attorneys' fees using the percentage of fund method. *Destefano v. Zynga, Inc.*, No. 12-cv-04007-JSC, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016).

5

**C.**   **Class Counsel's Requested Fee Award is Reasonable**

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

Class Counsel's requested fee amount of 30% is within "the usual range" of common fund cases. *Id.* at *16 (noting that attorneys' fees in common fund cases typically range from 20% to 30%); *Vizcaino*, 290. F.3d at 1047.  While the Ninth Circuit's "benchmark" percentage for an award of attorneys' fees in a class action is 25%, this is just the starting place, and the Court must determine the appropriate percentage by "tak[ing] into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048.  The benchmark is subject to adjustment based on the Court's analysis of the *Vizcaino* factors: "(1) the results achieved for the class; (2) the complexity of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience, and performance of counsel on both sides; (4) the contingent nature of the fee; and (5) fees awarded in comparable cases." *In re Capacitors*, 2018 WL 4790575, at *44 (citing *Vizcaino*, 290 F.3d at 1048-50); *see also In re Cathode Ray Tube (CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 4126533, at *4 (N.D. Cal. Aug. 3, 2016).  Accordingly, "[t]he benchmark should be adjusted when the percentage of recovery would be 'either too small or too large in light of the hours devoted to the case or other relevant factors.'" *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160-JST, 2018 WL 2234598, at *11 (N.D. Cal. May 15, 2018) (quoting *Six Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990)).  The Ninth Circuit has made clear that in considering the appropriate fee award, a court must guard equally against unreasonably low and high fee awards. *See Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 271-72 (9th Cir. 1989) (district court abused its discretion in awarding fee under the percentage method that was "too low and therefore an unreasonable award").

26
27
28

Here, all of the *Vizcaino* factors support an upward adjustment of the benchmark to 30%.

9

1

**1.**      **Class Counsel Achieved an Excellent Result for the Class**

2      "The most important factor is the results achieved for the class.  Outstanding results merit

3  a higher fee." *In re Cathode Ray Tube (CRT)*, 2016 WL 4126533, at *4 (citing *In re Omnivision*

4  *Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)); *Hensley v. Eckerhart*, 461 U.S. 424,

5  436 (1983) (noting "the most critical factor is the degree of success obtained").  Class Counsel

6  have estimated that the settlement represents a recovery of 32.5% of recoverable damages.  *See*

7  ECF 194 at 6.  And, as noted above, the number of claims filed is already on the higher end of

8  Class Counsel's projection.[2]  The settlement was achieved through adversarial litigation against

9  two Defendants represented by well-equipped counsel and constitutes an excellent result for the

10  class supporting an upwards adjustment of the benchmark.

11      The settlement provides monetary benefits to *all* Settlement Class members, providing the

12  greatest relief to those who suffered multiple alleged bootloop and/or battery drain issues.  Joint

13  Decl. at ¶¶ 22-23.  After deduction of the requested attorneys' fees and expenses, $6.375 million

14  remains, sufficient to pay Class Members in accordance with the Plan of Allocation.  *Id.* at ¶ 22.

15  Participating Class Members will receive a minimum of $5 to $10 (for those who didn't

16  experience the alleged defect at all) to a maximum of $325 per Nexus 6P smartphone ($400 for

17  those who experienced the alleged defect with two different devices).  ECF 194 at 6-9.

18      The recovery in relation to the maximum potential recovery is favorable and supports the

19  requested fee award.  *See id.* at 6; *see, e.g., Gergetz*, 2018 WL 4691169, at *7 (benchmark

20  increased to 30 percent of the $3.5 million gross settlement fund in taking into account the

21  exceptional results achieved among other factors); *Mauss v. NuVasive, Inc.*, No. 13cv2005 JM

22  (JLB), 2018 WL 6421623, at *6 (S.D. Cal. Dec. 6, 2018) (settlement that was "approximately 23

23  to 24 percent" of the maximum damages weighed in favor of upward adjustment of the

24  benchmark to 30 percent of the common fund); *Brown v. CVS Pharmacy, Inc.*, No. CV15-7631

25  PSG (PJWX), 2017 WL 3494297, at *6 (C.D. Cal. Apr. 24, 2017) (settlement of 27% of

26  maximum possible recovery weighed in favor of upward  adjustment from the benchmark); *Smith*

27

28  [2] Class members still have until September 3 to submit claims.

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 5:17-cv-02185-BLF

1    *v. Am. Greetings Corp.*, No. 14-cv-02577-JST, 2016 WL 2909429, at *8 (N.D. Cal. May 19,

2    2016) ("It is also notable that the settlement represents 20% of the class's maximum possible

3    recovery for all ten claims . . . ."); *see also Eashoo v. Iovate Health Scis. U.S.A., Inc.*, No. CV-15-

4    01726  BRO (PJWx), 2016 WL 6205785, at *9 (C.D. Cal. Apr. 5, 2016) ($2.5 million settlement

5    in a consumer  fraud case constituted "a significant recovery").

6            This case was hotly contested from the outset with Defendants each continuing to dispute

7    liability, opposing discovery, and moving to dismiss all of Plaintiffs' claims.  On the first round of

8    Rule 12(b)(6) briefing, Defendants raised an array of legal issues relating to choice of law, the

9    warranty and consumer protection laws of different states, and argued for striking (or dismissing)

10   the class allegations.  ECF 115.  On receipt of the Court's decision, Class Counsel resumed work

11   with their experts to refine their description of the alleged defect and address Defendants' pre-sale

12   knowledge arguments, and prepared an amended pleading addressing the issues identified by the

13   Court.  Joint Decl. at ¶ 13.  Identifying a precise definition of the defect was particularly work

14   intensive as Plaintiffs alleged the phones suffer from both bootloop and battery drain issues.

15   Defendants' second round of motions to dismiss were similarly wide-ranging, and again raised

16   difficult legal issues that required considerable legal research and briefing.  The modest upward

17   adjustment from the 25% benchmark sought in this case will not confer a windfall—the time

18   value of the hours Class Counsel have already devoted to this matter well exceeds the requested

19   fee.  *See Blackman v. O'Brien Envtl. Energy, Inc.*, No. CIV. A. 94-5686, 1999 WL 397389, at *2

20   n. 5 (E.D. Pa. May 12, 1999) (recognizing the risk of "penalizing attorneys [who] pursue cases

21   with smaller value while producing windfalls for those who pursue very valuable cases" and

22   noting that "it does not seem wise to adopt a rule with regard to attorney fee awards that results in

23   affirmatively discouraging attorneys from pursuing small yet meritorious cases.").

24           The settlement is particularly favorable considering the difficulties presented in the case—

25   including obstacles this Court has previously recognized such as choice of law issues associated

26   with a multistate class and the fact that the Court indicated it would likely dismiss any Song-

27   Beverly claim that relied on arguing Google was a manufacturer under the statute.  *See* ECF 169,

28   Oct. 17, 2019 Hr'g. Tr. at 8:6-9:11 & 58:2-63:13; *see, e.g.*, *Destefano*, 2016 WL 537946, at *17

                                              11

(result was "favorable considering the potential vulnerabilities of Lead Plaintiff's case"); *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC, 2018 WL 2183253, at *6 (N.D. Cal. May 11, 2018) (class counsel achieved "a strong result" where the defendant filed a motion to dismiss and the parties engaged in discovery).  The settlement also represents a favorable result because consumer class actions against cellular phone manufacturers are frequently dismissed and seldom result in significant monetary relief to class members. *See infra* at III.C.2.  The cash payments of up to $400 ($325 for a single device) compares favorably with the settlement in another case involving allegedly defective smartphones that froze, reset, and crashed. *See Horvath*, 2013 WL 12307877, at *1 ($19 cash payment for each valid claim).

   In view of the very real challenges facing Plaintiffs in this litigation, the Settlement is an excellent result for the Class that weighs heavily in favor of approval of the fee request.

   **2.**     **The Complexity, Expense, and Substantial Risk Borne by Class Counsel**

   The risk of litigation is also an important factor in determining a fair fee award. *Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant circumstance" when applying the percentage of fund method in calculating attorneys' fees.); *Destefano*, 2016 WL 537946, at *17 (approving requested attorneys' fees, in part, because the "risks associated with the case were substantial"). Consumer fraud class actions carry an inherent risk of being more uncertain than other types of class actions. *Kakani v. Oracle Corp.*, No. C 06-06493WHA, 2007 WL 4570190, at *4 (N.D. Cal. Dec. 21, 2007).  The risk is even greater in fraud actions against consumer electronics manufacturers, as such cases are routinely dismissed and rarely certified. *See, e.g.*, *In re iPhone Application Litig.*, 6 F. Supp. 3d 1004, 1007 (N.D. Cal. 2013) (granting summary judgment  and denying class certification as moot in case involving Apple's data collection practices); *Yastrab v. Apple Inc.*, 173 F. Supp. 3d 972, 976 (N.D. Cal. 2016) (dismissing with prejudice claims based on  software updates that purportedly removed features from phones); *Waller v. Hewlett-Packard Co.*, 295 F.R.D. 472, 484 (S.D. Cal. 2013) (declining to certify class where software update effectively mooted plaintiffs' claims); *Opperman v. Kong Techs., Inc.*, No. 13-CV-00453-JST, 2017 WL 3149295, at *13 (N.D. Cal. July 25, 2017) (denying class certification based upon purported security flaws in Apple's mobile applications).

12

1   In *Anderson v. Samsung Telecommunications America, LLC*, for example, the plaintiff

2   alleged that her phone would randomly freeze or turn off.   No. SACV 13-01028-CJC (JPRx),

3   2014 WL 11430910, at *1 (C.D. Cal. Oct. 20, 2014).   The court denied class certification,

4   concluding that because the freezing and power loss problems could have a variety of causes,

5   and the plaintiff had not shown it could be determined whether the specific problems were

6   covered by the warranty, commonality was not met.   *Id.* at 4-5.   In the absence of a settlement,

7   Defendants may have similarly argued that the random shut down and battery problems in this

8   case also have more than one possible cause and therefore no class could be certified.   And while

9   Plaintiffs are confident in their ability to do so, at class certification, the Court may not have

10  been persuaded that Plaintiffs had offered a viable damages model consistent with their theory of

11  liability.   Recently, in *Davidson v. Apple*, Judge Koh denied class certification in a defective

12  phone case on three occasions due to deficiencies in the plaintiffs' damages model, which—as

13  here—centered on an overpayment theory of damages.   No. 16-cv-04942-LHK, 2019 WL

14  2548460, at *19 (N.D. Cal. June 20, 2019) (denying class certification for the third time).

15  Had the case continued, Google and Huawei—who contested virtually every aspect of the

16  case up to resolution—would have continued to defend their pending motions to dismiss, moved

17  to oppose certification of (or subsequently decertify) the multistate class, and moved for

18  summary judgment.   Even if Plaintiffs were able to certify a class and survive summary

19  judgment, they would then have faced a "battle of the experts" on both liability and damages at

20  trial along with lengthy delays associated with possible appeals.   *See, e.g.*, *Haag v. Hyundai*

21  *Motor Am.*, No. 12-CV-6521L, 2019 WL 1029002, at *4 (W.D.N.Y. Mar. 5, 2019) (finding

22  common issues did not predominate in a putative product defect class action, as "there is no basis

23  for the Court to infer that a reasonable consumer—let alone an entire class of consumers—would

24  have demanded a lower purchase or lease price if they were informed that they might have to

25  perform [auto part] replacement and maintenance . . . earlier than they otherwise expected.").

26  Plaintiffs also may have faced challenges related to the possible evolution of each Defendants'

27  knowledge during the relevant period when the Nexus 6P was sold.   *In re MyFord Touch*

28  *Consumer Litig.*, No. 13-cv-03072-EMC, 2018 WL 3646895, at *3-4 (N.D. Cal. Aug. 1, 2018)

13

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 5:17-cv-02185-BLF

(decertifying a consumer claim on this basis).  Had the Court not accepted Plaintiffs' damages model, and required an individual damages prove up, there is a real risk that participation would be minimal given the age of the Nexus 6P—it was released nearly four years ago—and the pace at which consumers replace smartphones.

In contrast with the years of possible delays and the uncertainty of obtaining any recovery at all, the settlement offers immediate relief and represents a win for consumers.  *See, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) ("difficulties in proving the case" favored settlement approval); *Aguirre v. DirecTV, LLC*, No. CV16-06836  SJO (JPRx), 2017 WL 6888493, at *15 (C.D. Cal. Oct. 6, 2017) (risk posed by summary judgment and continued litigation supported approval).  All Class Members have the opportunity to be part of the recovery and achieve relief with minimal effort using a simplified claim process.  In other words, "[g]iven the uncertainty that Plaintiffs would prevail on a motion for class certification, a full trial on the merits, and a likely appeal, this factor favors an upward adjustment from the benchmark."  *Bostick v. Herbalife Int'l of Am., Inc.*, No. CV 13-2488 BRO (SHX), 2015 WL 12731932, at *31 (C.D. Cal. May 14, 2015); *see Bower v. Cycle Gear, Inc*, No. 14-CV-02712-HSG, 2016 WL 4439875, at *7 (N.D. Cal. Aug. 23, 2016) (noting risks of obtaining class certification, surviving summary judgment, prevailing at trial, and "withstanding a potential appeal").

### 3. The Skilled and Superior Quality of Work Performed in Order to Achieve the Settlement

Class Counsel's proficiency in negotiating and presenting the Settlement also supports the requested fee.  *Norris v. Mazzola*, No. 15-cv-04962-JSC, 2017 WL 6493091, at *13 (N.D. Cal. Dec. 19, 2017) (noting that the skill required in extensive motion practice and discovery as well as the quality of work performed by highly experienced counsel supported the fee award).  "Class counsel [who] specialize in consumer class actions, and have served as counsel for classes of plaintiffs in a variety of substantive areas," can prove particularly beneficial.  *Zepada v. PayPal, Inc.*, No. C 10-2500 SBA, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017) (finding that class counsel's consumer class action expertise allowed for a result that "would have been unlikely if

14

entrusted to counsel of lesser experience given the "substantive and procedural complexities" and the "contentious nature" of the allegations that defendant improperly handled disputed transactions related to users accounts); *Allagas v. BP Solar Int'l., Inc.*, No. 3:14-cv-00560-SI (EDL), 2016 WL 9114162, at *2 (N.D. Cal. Dec. 22, 2016) (class counsel who are "highly experienced in prosecuting and settling complex class actions" factors in favor of requested fee).

Class Counsel are experienced in the prosecution of consumer class actions. *See* ECF 20-1, 20-2 (outlining Class Counsel's experience with consumer class actions and other complex litigation). The quality of their representation is reflected in the work they performed throughout the case and, ultimately, in the favorable settlement for the Class. *See Moreyra v. Fresenius Med. Care Holdings, Inc.*, No. SACV-10-517 JVS (RZx), 2013 WL 12248139, at *3 (C.D. Cal. Aug. 7, 2013) (noting that the result is "[t]he single clearest factor reflecting the quality of class counsels' services") (citation omitted). Class Counsel deployed their experience from the inception of the case by investigating the underlying facts, interviewing prospective class members, and consulting with experts about the source of the defect, all before filing the case. Joint Decl. at ¶ 4. Among other things, Class Counsel (a) prosecuted Plaintiffs' claims through two rounds of motions to dismiss (largely prevailing on the warranty claims against Huawei in the first motion); (b) opposed, and later lifted (by motion) the stay of discovery; (c) obtained (without the necessity of court intervention) written and document discovery from Defendants and numerous subpoenaed non-parties; (d) engaged and consulted with damages and technical experts; and (e) steered this class action to a favorable settlement. *Id.* at ¶¶ 6-21; *see Moreyra*, 2013 WL 12248139, at *3 (that "[t]he settlement was not reached lightly" and class counsel diligently investigated claims, conducted efficient discovery, and presented "well-researched legal arguments" supported the requested fee award).

Class Counsel accomplished the settlement despite opposition from experienced defense counsel, which further supports an upward adjustment of the fee. Joint Decl. at ¶¶ 6-18; *see In re Am. Apparel, Inc. S'holder Litig.*., No. CV-10-06352 MMM (JCGx), 2014 WL 10212865, at *22 (C.D. Cal. July 28, 2014) (the quality of opposing counsel should also be considered in evaluating the performance of class counsel); *see also Carlin v. DairyAmerica Inc.*, 380 F. Supp. 3d 998,

15

1021 (E.D. Cal. 2019) (finding the "breadth and depth" of counsel's experience and the "prosecution and management of a complex national class action" reflected in favor of an upward departure from the 25% benchmark); *Wallace v. Countrywide Home Loans, Inc.*, No. SACV-08-1463 JLS (MLGx), 2015 WL 13284517, at *9 (C.D. Cal. Apr. 17, 2015) (noting typical factors reflecting counsel's skill such as developing facts and legal claims, conducting discovery, reviewing documents, retaining experts, motion practice, and negotiating and drafting the settlement); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1047 (that class counsel helped plaintiffs overcome "weaknesses" in their case was a testament to their skill"); *Jasper v. C.R. England, Inc.*, No. CV 08-5266-GW(CWX), 2014 WL 12577426, at *8 (C.D. Cal. Nov. 3, 2014) (work withstanding challenges to defendant's liability demonstrated counsel's skill).

### 4.      Class Counsel Worked on a Contingent Basis

When Plaintiffs initiated this litigation, a favorable outcome was far from certain. Class Counsel's fee was entirely contingent. Joint Decl. at ¶ 34. The case has been pending for nearly two years, with Class Counsel advancing all necessary expenses and foregoing work on other matters. *Id.* at ¶¶ 34, 39. "When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment after years of litigation justifies a significant fee award." *Bellinghausen*, 306 F.R.D. at 261. The potential of receiving little or no recovery in the face of increasing risk weighs in favor of the requested fee. *See In re Washington Pub. Power Supply Sys. Secs. Litig.*, 19 F.3d 1291, 1299 (9th Cir. 1994) ("It is an established practice in the private legal market to reward attorneys of taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."); *Ching v. Siemens Indus.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *8 (N.D. Cal. Jun. 27, 2014) ("Courts have long recognized that the public interest is served by rewarding attorneys who assume representation on a contingent basis with an enhanced fee to compensate them for the risk that they might be paid nothing at all for their work."); *Brown v. 22nd Dist. Agric. Ass'n*, No. 15-cv-02578-DHB, 2017 WL 3131557, at *8 (S.D. Cal. July 21, 2017) (recognizing that "class counsel was forced to forego other employment in order to devote necessary time to this litigation" and the substantial risk associated with taking the matter on a contingent basis warranted "an upward adjustment to the fee award").

16

**5.**      **The Reaction of the Class Also Supports the Fee Request**

While the claims period remains open, the response of the Class to-date has been positive. As of the date of this motion, the claims rate exceeds 15%, surpassing typical response rates in class action settlements, which generally do not exceed 10%. *Tait v. BSH Home Appliances Corp.*, No. SACV10-0711 DOC (ANx), 2015 WL 4537463, at *8 (C.D. Cal. July 27, 2015). Class Counsel will provide the Court with final numbers in Plaintiffs' reply in support of this motion and in conjunction with Plaintiffs' motion for final approval to be filed on September 5.

"The absence of objections or disapproval by class members to Class Counsel's fee request further supports finding the fee request reasonable." *In re Heritage Bond Litig.*, No. 02-ML-1475 DT, 2005 WL 1594403, at *21 (C.D. Cal. June 5, 2005). As of the filing of this motion, no Class Members have objected to the Settlement or the request for attorneys' fees. The response of class members to this point favors the requested award. *See, e.g.*, *Jarrell v. Amerigas Propane, Inc.*, No. 16-cv-01481-JST, 2018 WL 1640055, at *3 (N.D. Cal. Apr. 5, 2018) ("[T]he Court now concludes that a slight upward adjustment—to 30% of the common fund—is warranted based on several factors, including the results achieved, the risk of non-recovery, and the fact that no class member has objected to the proposed award."); *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1264 (C.D. Cal. 2016) (although seven class members objected to the settlement, the number represented a very small number of those who received notice).

**6.**      **The Requested Fee Fits Squarely Within the Percentage of Fees Awarded in Similar Cases**

Class Counsel's fee request falls within the usual range of "20-30%" in common fund cases. *Vizcaino*, 290 F.3d at 1047; *see In re Omnivision Techs., Inc.*, 559 F. Supp. 2d at 1046 ("in most common fund cases, the award exceeds that [25 percent] benchmark"); *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989)) ("[A]bsent extraordinary circumstances that suggest reasons to lower or increase the percentage, the rate should be set at 30%."); *see also*, *e.g.*, *Gergetz*, 2018 WL 4691169, at *7 (30% awarded); *Carlin*, 380 F. Supp. 3d at 1022 (33.3%).

The requested fee award of 30% is also within the range awarded in consumer fraud class actions, which, as noted above, present special risks. *See, e.g.*, *Hendricks v. Starkist Co.*, No. 13-

17

cv-00729-HSG, 2016 WL 5462423, at *12-13 (N.D. Cal. Sept. 29, 2016) (finding award of 30%

reasonable in consumer fraud case), *aff'd sub nom. Hendricks v. Ference*, No. 16-16992, 754 F.

App'x 510 (9th Cir. Oct. 19, 2018); *Johnson v. Gen. Mills, Inc.*, No. ACV 10-00061-CJC, 2013

WL 3213832, at *6 (C.D. Cal. June 17, 2013) (awarding 30% in case involving CLRA and UCL

claims based on deceptive advertising); *Peel v. Brooksamerica Mortg. Corp.*, No. SACV-1179

JLS (RNBx), 2015 WL 12745788, at *6 (C.D. Cal. Apr. 6, 2015) (approving 29.3% attorneys'

fees award in case involving fraudulent omissions); *Weeks v. Kellogg Co.*, No. CV 09-08102

MMM RZX, 2013 WL 6531177, at *29-30 (C.D. Cal. Nov. 23, 2013) (concluding that 30% of

settlement fund was reasonable in consumer fraud case).

Under similar circumstances, Judge Gilliam recently concluded that an upward adjustment

from the benchmark to 30% was appropriate in *In re Lenovo Adware Litig.*, No. 15-MD-02624-

HSG, 2019 WL 1791420, at *8 (N.D. Cal. Apr. 24, 2019). As in this case, the settlement

provided "significant results for the class" in the form of a $8.3 million settlement fund and cash

relief to all class members, including greater amounts for class members who documented their

claims. *Id.* at *8. The case was heavily litigated from the beginning against defendants

represented by "highly skilled law firms with substantial resources" who "vigorously litigated the

case on behalf of Defendants . . . ." *Id.* The requested fee also represented a negative multiplier,

as "[t]he fee amount requested [was] significantly less than Class Counsel's fees would be if

calculated using the lodestar method." *Id.* The court concluded that in view of these various

factors and the complexity of the case, the requested 30% fee was reasonable. *Id.*

Class Counsel's requested fee award is in line with comparable settlements in district

courts throughout the Ninth Circuit and should be granted as reasonable.

### 7.     A Lodestar Cross-Check Confirms Class Counsel's Reasonable Fee Request

The Ninth Circuit encourages a lodestar calculation cross-check on the reasonableness of

attorneys' fees requested using the percentage of fund method. *Harrison v. E.I. DuPont De*

*Nemours & Co.*, No. 13-cv-01180-BLF, 2018 WL 5291991, at *6 (N.D. Cal. Oct. 22, 2018)

(citing *Vizcaino*, 290 F.3d at 1050). "Under the lodestar method, attorney's fees are calculated by

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 5:17-cv-02185-BLF

multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *Id.* (internal quotation marks and citation omitted).  The cross-check calculation, however, does not require "mathematical precision nor bean counting." *Id.*  Rather, the courts should "do rough justice" in performing the cross-check. *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal Dec. 18, 2018) (citations omitted). Reasonable hourly rates are the prevailing rates in this district for personnel of comparable skill, experience, and reputation. *Lenovo*, 2019 WL 1791420, at *8 (citations omitted); *see also Hefler*, 2018 WL 6619983, at *14 (rates from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates, and $245 to $350 for paralegals were reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prod. Liab. Litig.*, No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (billing rates ranging from $275 to $1600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals reasonable); *Destefano*, 2016 WL 537946, at *19 (approving billing rates ranging from $150 to $850 for attorneys).

Class Counsel's lodestar through June 30, 2019 is $3,848,190.50 as reflected in the below table:

| Firm | Hours | Lodestar |
|---|---|---|
| Chimicles Schwartz Kriner & Donaldson-Smith LLP | 3,216.30 | $1,582,705.00 |
| Girard Sharp LLP | 3,894.20 | $2,265,485.50 |
| **TOTALS** | **7,110.50** | **$3,848,190.50** |

*See* Joint Decl. at ¶ 37.[3]  The figures above do not account for time spent on or after July 1, 2019. *Id.* at ¶ 37; *see McKibben v. McMahon*, No. EDCV 14-2171 JGB (SPx), 2019 WL 1109683, at

---

[3] Class Counsel maintain contemporaneous detailed time records, which will be submitted at the Court's request, and their rates are consistent with those upheld by this Court.  Joint Decl. ¶¶ 35-36; *see, e.g., In re Lidoderm Antitrust Litig.*, No. 14-MD-02521-WHO, 2018 WL 4620695, at *2 (N.D. Cal. Sept. 20, 2018) (Girard Sharp); *In re Lenovo Adware Litig.*, 2019 WL 1791420, at *8 (Girard Sharp); *Rodman v. Safeway Inc.*, No. 3:11-cv-03003-JST, 2018 WL 4030558, at *6-7 (N.D. Cal. Aug. 23, 2018) (Chimicles); *Mendoza v. Hyundai Motor Co., Ltd*, No. 15-CV-01685-BLF, 2017 WL 342059, at *14 (N.D. Cal. Jan. 23, 2017) (Chimicles).

*13 (C.D. Cal. Feb. 28, 2019) (noting that class counsel's hours did not include "ongoing work with the Class Administrator and class members" and time in connection with final approval); *In re Philips/Magnavox TV Litig.,* Civil Action No. 09-3072 (CCC), 2012 WL 1677244, at *17 (D.N.J. May 14, 2012) (recognizing that time submitted in connection with a fee petition filed before final approval "does not include the fees and expenses . . . expended after [that date] on tasks such as preparing for and appearing at the fairness hearing.").

If the Court grants the $2,925,000 fee request, the multiplier on Class Counsel's lodestar will be approximately 0.76—a negative multiplier even though "[m]ultipliers of 1 to 4 are commonly found to be appropriate in common fund cases." *Sheikh v. Tesla, Inc.*, No. 17-CV-02193-BLF, 2018 WL 5794532, at *8 (N.D. Cal. Nov. 2, 2018) (citation omitted). Although Class Counsel have devoted almost two years to actively prosecuting the case, the requested fee is well below Class Counsel's lodestar. The fact that the lodestar cross-check reveals a negative multiplier indicates that the fee request is reasonable. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. M 07-1827 SI, 2013 WL 149692, at *1 (N.D. Cal. Jan. 14, 2013) ("The negative multiplier cross-check serves to confirm the reasonableness of the fees requested."); *In re Dynamic Random Access Memory (DRAM) Antitrust Litig.*, No. 1486, 2013 WL 12387371, at *12-13 (N.D. Cal. Nov. 5, 2013), *report and recommendation adopted sub nom. In re Dynamic Random Access Memory Antitrust Litig.*, No. C 06-4333 PJH, 2014 WL 12879521 (N.D. Cal. June 27, 2014) (performing lodestar calculation that represents a negative multiplier "is virtually sufficient to satisfy the cross-check requirement" and "supports the requested award of the benchmark fee."); *see, e.g., Johnson v. Gen. Mills, Inc.*, 2013 WL 3213832, at *6 (30% award was reasonable when the requested amount represented a negative lodestar multiplier); *In re Portal Software, Inc. Sec. Litig.*, No. C-03-5138 VRW, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) (noting that a negative multiplier on a lodestar cross-check "suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel.").

Class Counsel respectfully submit that it is appropriate for the Court to make an upward adjustment from the 25% benchmark in light of the favorable result achieved for the class; the significant risk and expense in undertaking the litigation; the skill and expertise of counsel; the contingent nature of the fee; the fees awarded in comparable cases; the two-year-long duration of this case to date; and the negative lodestar multiplier.

### D.   Class Counsel Should be Reimbursed for Litigation Expenses

In the motion for preliminary approval, Class Counsel indicated that they would seek reimbursement of up to $200,000 in litigation expenses. ECF 194 at 10. Attorneys are "entitled to recover as part of the award of attorneys' fees those out-of-pocket expenses that would normally be charged to a fee paying client." *Harrison*, 2018 WL 5291991, at *6 (citation omitted); *In re Lenovo Adware Litig.*, 2019 WL 1791420, at *9 (same). As submitted in detail in the attached Joint Declaration, to date, Class Counsel have collectively incurred $150,948.47 in expenses consisting of, among other things, legal research, document review platform costs, costs advanced in connection with experts, court reporting services, and other customary litigation expenses, and respectfully request to have these amounts reimbursed, as follows:

| Firm | Expenses |
|---|---|
| Chimicles Schwartz Kriner & Donaldson-Smith LLP | $78,912.23 |
| Girard Sharp LLP | $72,036.24 |
| **TOTAL** | **$150,948.47** |

See Joint Decl. at ¶¶ 37, 39-40. As with the lodestar figures, this chart does not include expenses incurred after July 1. *Id.* at ¶ 38. Class Counsel will provide their final total litigation expenses in the reply in support of this motion.

The expenses incurred were reasonable and necessary for prosecuting this case to a successful conclusion and courts have repeatedly found such expenses to be recoverable. *See, e.g., In re LendingClub Sec. Litig.*, No. C 16-02627 WHA, 2018 WL 4586669, at *3 (N.D. Cal. Sept. 24, 2018) (expenses such as expert and consultant fees, court fees, travel and lodging costs,

legal research fees, and copying expenses were reasonable and recoverable); *Thomas,* 2018 WL 2234598, at *4 (granting requests for costs consisting of "court fees, online research fees, postage and copying, travel costs, electronic discovery expenses, deposition costs, mediation charges, and travel costs").  Similar or even greater expenses have been approved by this Court in comparable class actions.  *See, e.g., In re Lenovo Adware Litig.*, 2019 WL 1791420, at *9 (granting more than $340,000 in costs); *Hendricks*, 2016 WL 5462423, at *13 (finding out-of-pocket costs of $155,799.96 "reasonable and properly expended").

### E.   The Court Should Grant a Service Award for Each Class Representative

Class Counsel also request that the Court approve a $3,000 service award for each of the 13 class representatives.  Service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Gergetz*, 2018 WL 4691169, at *7 (quoting *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009)).  Each of the 13 class representatives expended considerable effort on behalf of the class by actively monitoring the litigation, locating, sorting and producing personal records and providing information, responding to several sets of written discovery by both Defendants, and working and regularly communicating with Class Counsel over the course of two years to obtain the settlement.  Joint Decl. at ¶¶ 42-43.  They all agreed to put their names on a complaint in a case which received media coverage.  Each class representative has submitted a declaration describing their involvement in the case and the time and effort they have expended to further the interests of the class.  *See* Joint Decl., Ex. D.

The proposed $3,000 service award is consistent with other awards in this district, where "a $5,000 payment is presumptively reasonable." *Bellinghausen*, 306 F.R.D. at 267 ("Incentive awards typically range from $2,000 to $10,000."); *see, e.g.*, *Lenovo*, 2019 WL 1791420, at *9-10 ($5,000 service award); *Gergetz*, 2018 WL 4691169, at *30 ($5,000 service award); *Cuzick v. Zodiac U.S. Seat Shells, LLC*, No. 16-CV-03793-HSG, 2018 WL 2412137, at *5 (N.D. Cal. May 29, 2018) (awarding plaintiff $5,000 service award for active role in the case and assisting class

counsel); *Salamanca v. Sprint/United Mgmt. Co.*, No. 15-CV-05084-JSW, 2018 WL 1989568, at

*4 (N.D. Cal. Mar. 9, 2018) (approving $5,000 service award based on the plaintiff's time

assisting class counsel with mediation, providing information, and searching for and producing

documents).

### IV.  CONCLUSION

For the foregoing reasons, Plaintiffs and Class Counsel respectfully request that the Court

issue an Order awarding $2,925,000 in attorneys' fees, reimbursement of up to $200,000 in

litigation expenses, and service awards in the amount of $3,000 to each class representative.

Dated:  July 26, 2019                          Respectfully submitted,

**GIRARD SHARP LLP**

*/s/ Daniel C. Girard*
Daniel C. Girard (SBN 114826)
Jordan Elias (SBN 228731)
Adam E. Polk (SBN 273000)
Trevor T. Tan (SBN 281045)
601 California Street, Suite 1400
San Francisco, CA 94108
Telephone: (415) 981-4800
*dgirard@girardsharp.com*
*jelias@girardsharp.com*
*apolk@girardsharp.com*
*ttan@girardsharp.com*

Benjamin F. Johns (*pro hac vice*)
Andrew W. Ferich (*pro hac vice*)
Zachary P. Beatty (*pro hac vice*)
Beena M. McDonald (*pro hac vice*)
**CHIMICLES SCHWARTZ KRINER
 & DONALDSON-SMITH LLP**
One Haverford Centre
361 West Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
*bfj@chimicles.com*
*awf@chimicles.com*

23

1

2

3

*zpb@chimicles.com*
*bmm@chimicles.com*

*Class Counsel*

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2019, I electronically filed the foregoing document using this Court's CM/ECF system. All participants are registered CM/ECF users, and will be served by the CM/ECF system.

Dated: July 26, 2019                                        /s/ *Daniel C. Girard*
                                                                       Daniel C. Girard

PLAINTIFFS' MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS
Case No. 5:17-cv-02185-BLF