1  Daniel C. Girard (State Bar No. 114826)
2  Jordan Elias (State Bar No. 228731)
   Adam E. Polk (State Bar No. 273000)
3  Trevor T. Tan (State Bar No. 281045)
   **GIRARD SHARP LLP**
4  601 California Street, Suite 1400
   San Francisco, California 94108
5  Tel: (415) 981-4800
6  Fax: (415) 981-4846
   *dgirard@girardsharp.com*
7  *jelias@girardsharp.com*
   *apolk@girardsharp.com*
8  *ttan@girardsharp.com*

9
   Benjamin F. Johns *(pro hac vice)*
10 Andrew W. Ferich *(pro hac vice)*
   Zachary P. Beatty *(pro hac vice)*
11 Beena M. McDonald *(pro hac vice)*
12 **CHIMICLES SCHWARTZ KRINER**
   **& DONALDSON-SMITH LLP**
13 One Haverford Centre
14 361 West Lancaster Avenue
   Haverford, PA 19041
15 Telephone: (610) 642-8500
   *bfj@chimicles.com*
16 *awf@chimicles.com*
   *zpb@chimicles.com*
17 *bmm@chimicles.com*

18
   *Class Counsel*
19
                        **UNITED STATES DISTRICT COURT**
20                      **NORTHERN DISTRICT OF CALIFORNIA**

21 IN RE NEXUS 6P PRODUCTS LIABILITY     Case No. 5:17-cv-02185-BLF
   LITIGATION
22                                       **PLAINTIFFS' NOTICE OF MOTION**
23                                       **AND MOTION FOR FINAL**
                                         **APPROVAL AND MEMORANDUM**
24                                       **OF POINTS AND AUTHORITIES IN**
                                         **SUPPORT THEREOF**
25
26                                       Date: October 10, 2019
                                         Time: 1:30 p.m.
27                                       Courtroom: 3, 5th Floor
                                         Judge: Hon. Beth Labson Freeman
28

1
2

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES .................................................................1

I.      INTRODUCTION ...........................................................................................................1

II.     BACKGROUND .............................................................................................................2

III.    CLASS NOTICE AND CLAIMS ADMINISTRATION ...............................................3

      A.    Notice and Settlement Administration..................................................................3

             a.    Direct Notice by Email and First-Class Mail................................3

             b.    The Dedicated Settlement Website, Publication Notice and Toll-Free Number. ..........................................................................4

      B.    Claims and Requests for Exclusion .....................................................................4

IV.    ARGUMENT...................................................................................................................5

      A.    Certification of The Proposed Settlement Class Is Appropriate ..........................6

             1.    The Rule 23(a) Prerequisites are Satisfied................................6

                  a.    The Class Members Are Too Numerous to Be Joined. .....6

                  b.    The Action Involves Common Questions of Law and Fact.........6

                   c.    Plaintiffs' Claims Are Typical of Those of the Class. .................7

                   d.    Plaintiffs and Their Counsel Will Fairly and Adequately Protect the Interests of Class Members.........................................7

             2.    Rule 23(b)(3) is Satisfied. ........................................................8

                  a.    Common Questions of Law and Fact Predominate. ......9

                  b.    A Class Action is a Superior Means of Resolving These Claims. .......................................................................................10

      B.    Notice to Class Members Was Reasonable and Adequate. ................................11

      C.    The Settlement Is Fair, Reasonable and Adequate, and Should be Finally Approved..............................................................................................................12

             1.    The Settlement Resulted from Informed, Arm's-Length Negotiations. ............................................................................13

              2.    The Relief Under the Settlement is Adequate and Balances the Risks and Expense of Trial. ....................................................16

i

a.  The Strength of Plaintiffs' Case and the Risk of Continuing Litigation Weighs in Favor of Approval...................................16

b.  The Settlement Amount Constitutes a Substantial, Immediate Recovery for the Class and Weighs in Favor of Approval. ........18

c.  The Experienced View of Counsel and Response of Class Members Weigh in Favor of Approval. ......................................19

d.  The Claims Process is Convenient and Effective, and the Requested Attorneys' Fees are Reasonable. .............................20

3.  The Settlement Treats All Class Members Equitably............................21

D.  The Plan of Allocation Is Fair, Reasonable, And Adequate and Should Be Finally Approved..........................................................................22

V.  CONCLUSION.............................................................................................23

ii

# TABLE OF AUTHORITIES

**Cases**

*Abdullah v. U.S. Sec. Assocs.*
  731 F.3d 952 (9th Cir. 2013) ................................................................................................9

*Allen v. Bedolla*
  787 F.3d 1218 (9th Cir. 2015) ..............................................................................................12

*Anderson v. Samsung Telecommunications Am., LLC*
  2014 WL 11430910 (C.D. Cal. Oct. 20, 2014) ....................................................................17

*Asghari v. Volkswagen Grp. of Am., Inc.*
  2015 WL 12732462 (C.D. Cal. May 29, 2015) ....................................................................10

*Banks v. Nissan N. Am., Inc.*
  301 F.R.D. 327 (N.D. Cal. 2013) .........................................................................................10

*Bautista v. Harvest Mgmt. Sub LLC*
  2014 WL 12579822 (C.D. Cal. July 14, 2014) ....................................................................20

*Bellinghausen v. Tractor Supply Co.*
  306 F.R.D. 245 (N.D. Cal. 2015) ...................................................................................11, 15

*Bisaccia v. Revel Systems Inc.*
  2019 WL 861425 (N.D. Cal. Feb. 22, 2019) .........................................................................8

*Black v. T-Mobile USA, Inc.*
  2019 WL 3323087 (N.D. Cal. July 24, 2019) ........................................................................5

*Bostick v. Herbalife Int'l of Am., Inc.*
  2015 WL 12731932 (C.D. Cal. May 14, 2015) ......................................................................8

*Bower v. Cycle Gear, Inc.*
  2016 WL 4439875 (N.D. Cal. Aug. 23, 2016) .....................................................................15

*Brown v. Hain Celestial Grp., Inc.*
  2016 WL 631880 (N.D. Cal. Feb. 17, 2016) ........................................................................16

*Chambers v. Whirlpool Corp.*
  214 F. Supp. 3d 877 (C.D. Cal. 2016) ..................................................................................16

*Class Plaintiffs v. Seattle*
  955 F.2d 1268 (9th Cir. 1992) ..............................................................................................13

*Couser v. Comenity Bank*
  125 F. Supp. 3d 1034 (S.D. Cal. 2015) ................................................................................20

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:17-CV-02185-BLF

*Cox v. Clarus Mktg. Grp., LLC*
   291 F.R.D. 473 (S.D. Cal. 2013) ................................................................8

*Davidson v. Apple, Inc.*
   2019 WL 2548460 (N.D. Cal. June 20, 2019) ...........................................17

*Edwards v. Nat'l Milk Producers Fed'n*
   2017 WL 3623734 (N.D. Cal. June 26, 2017) ...........................................11

*Ehret v. Uber Techs., Inc.*
   148 F. Supp. 3d 884 (N.D. Cal. 2015)........................................................9

*Federal Ins. Co. v. Caldera Med., Inc.*
   2016 WL 5921245 (C.D. Cal. Jan. 25, 2016)............................................14

*Free Range Content, Inc. v. Google, LLC*
   2019 WL 1299504 (N.D. Cal. Mar. 21, 2019) ...............................11, 14, 19

*Galitski v. Samsung Telecommunications Am., LLC*
   2015 WL 5319802 (N.D. Tex. Sept. 11, 2015) ..........................................17

*George v. Acad. Mortg. Corp.*
   369 F. Supp. 3d 1356 (N.D. Ga. 2019) .....................................................20

*Gold v. Lumber Liquidators, Inc.*
   323 F.R.D. 280 (N.D. Cal. 2017) ...............................................................7

*Hanlon v. Chrysler Corp.*
   150 F.3d 1011 (9th Cir. 1998)............................................................*passim*

*Hanon v. Dataproducts Corp.*
   976 F.2d 497 (9th Cir. 1992)......................................................................7

*Harrison v. E.I DuPont De Nemours & Co.*
   2018 WL 5291991 (N.D. Cal. Oct. 22, 2018) ............................................19

*Hefler v. Wells Fargo & Co.*
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018) .....................................21, 22

*Hendricks v. Ference*
   754 F. App'x 510 (9th Cir. 2018)..............................................................16

*Hendricks v. Starkist Co*
   2016 WL 5462423 (N.D. Cal. Sept. 29, 2016) .....................................16, 18

*Horvath v. LG Elecs. Mobile Comm U.S.A., Inc.*
   3:11-cv-01576-H-RBB (S.D. Cal. Jan. 14, 2014) ......................................19

iv

*In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*
2014 WL 12591624 (C.D. Cal. Jan. 10, 2014)............................................................22

*In re Anthem, Inc. Data  Breach Litig.*
327 F.R.D. 299 (N.D. Cal. 2018) ................................................................................11

*In re Apple iPhone/iPod Warranty Litig.*
2014 WL 12640497 (N.D. Cal. May 8, 2014) ............................................................10

*In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*
2019 WL 2554232 (N.D. Cal. May 3, 2019) ................................................................5

*In re Citric Acid Antitrust Litig.*
145 F. Supp. 2d 1152 (N.D. Cal. 2001)................................................................21, 22

*In re Extreme Networks, Inc. Sec. Litig.*
2019 WL 3290770 (N.D. Cal. July 22, 2019) .....................................................*passim*

*In re Hyundai & Kia Fuel Econ. Litig.*
926 F.3d 539 (9th Cir. 2019) ..........................................................................9, 11, 15

*In re Lenovo Adware Litig.*
2018 WL 6099948 (N.D. Cal. Nov. 21, 2018) ............................................................9

*In re Lenovo Adware Litig.*
2019 WL 1791420 (N.D. Cal. Apr. 24, 2019) ..........................................................12

*In re Mego Fin. Corp. Sec. Litig.*
213 F.3d 454 (9th Cir. 2000) ..............................................................................13, 15

*In re Netflix Privacy Litig.*
2013 WL 1120801 (N.D. Cal. Mar. 18, 2013) ..........................................................14

*In re Omnivision Techs., Inc.*
559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................................................19, 20

*In re Tableware Antitrust Litig.*
484 F. Supp. 2d 1078 (N.D. Cal. 2007)......................................................................21

*In re TracFone Unlimited Serv. Plan Litig.*
112 F. Supp. 3d 993 (N.D. Cal. 2015)................................................................16, 17

*In re Volkswagen "Clean Diesel" Mktg., Sales Practice & Prods. Liab. Litig.*
229 F. Supp. 3d 1052 (N.D. Cal. 2017)......................................................................12

*Isquierdo v. W.G. Hall, LLC*
2017 WL 4390250 (N.D. Cal. Oct. 3, 2017) ..............................................................9

v

*Jimenez v. Allstate Ins. Co.*
  765 F.3d 1161 (9th Cir. 2014) ................................................................................7

*Johnson v. Gen. Mills, Inc.*
  2013 WL 3213832 (C.D. Cal. June 17, 2013) ........................................................18

*Just Film, Inc. v. Buono*
  847 F.3d 1108 (9th Cir. 2017) ..............................................................................10

*Kearney v. Hyundai Motor Am.*
  2013 WL 3287996 (C.D. Cal. June 28, 2013) ........................................................15

*Kim v. Tinder, Inc.*
  2019 WL 2576367 (C.D. Cal. June 19, 2019) ..........................................................7

*Lagarde v. Support.com, Inc.*
  2013 WL 1283325 (N.D. Cal. Mar. 26, 2013) ..........................................14, 15, 17

*Larsen v. Trader Joe's Co.*
  2014 WL 3404531 (N.D. Cal. July 11, 2014) ........................................................18

*Leyva v. Medline Indus. Inc.*
  716 F.3d 510 (9th Cir. 2013) ................................................................................10

*Linney v. Cellular Alaska P'ship*
  151 F.3d 1234 (9th Cir. 1998) ........................................................................14, 19

*Littlejohn v. Ferrara Candy Co.*
  2019 WL 2514720 (S.D. Cal. June 17, 2019) ..........................................................6

*Low v. Trump Univ., LLC*
  246 F. Supp. 3d 1295 (S.D. Cal. 2017)
  *aff'd*, 881 F.3d 1111 (9th Cir. 2018) ....................................................................11

*Mergens v. Sloan Valve Co.*
  2017 WL 9486153 (C.D. Cal. Sept. 18, 2017) ........................................................8

*Messineo v. Ocwen Loan Servicing, LLC*
  2017 WL 733219 (N.D. Cal. Feb. 24, 2017) ..........................................................20

*Mullins v. Premier Nutrition Corp.*
  2016 WL 1535057 (N.D. Cal. Apr. 15, 2016) ........................................................11

*Nigh v. Humphreys Pharmacal, Inc.*
  2013 WL 5995382 (S.D. Cal. Oct. 23, 2013) ..........................................................8

*Noll v. eBay, Inc.*
  309 F.R.D. 593 (N.D. Cal. 2015) ....................................................................17, 19

vi

*Norris v. Mazzola*
    2017 WL 6493091 (N.D. Cal. Dec. 19, 2017) ........................................................12, 18

*Parsons v. Ryan*
    754 F.3d 657 (9th Cir. 2014) ........................................................................................7

*Pulaski & Middleman, LLC v. Google, Inc.*
    802 F.3d 979 (9th Cir. 2015) ......................................................................................10

*Rodriguez v. Hayes*
    591 F.3d 1105 (9th Cir. 2010) ......................................................................................6

*Rodriguez v. W. Publ'g Corp.*
    563 F.3d 948 (9th Cir. 2009) ...............................................................................11, 19

*Sadowska v. Volkswagen Grp. of Am., Inc.*
    2013 WL 9600948 (C.D. Cal. Sept. 25, 2013) .....................................................18, 20

*Sheikh v. Tesla, Inc.*
    2018 WL 5794532 (N.D. Cal. Nov. 2, 2018) ...............................................................14

*Spann v. J.C. Penney Corp.*
    211 F. Supp. 3d 1244 (C.D. Cal. 2016) ......................................................................11

*Spann v. J.C. Penney Corp.*
    314 F.R.D. 312 (C.D. Cal. 2016) ...............................................................................16

*Staton v. Boeing Co.*
    327 F.3d 938 (9th Cir. 2003) ........................................................................................7

*Torres v. Mercer Canyons Inc.*
    835 F.3d 1125 (9th Cir. 2016) ......................................................................................7

*Vizzi v. Mitsubishi Motors N. Am., Inc.*
    2010 WL 11508375 (C.D. Cal. Mar. 29, 2010) ...........................................................9

*Wal-Mart Stores, Inc. v. Dukes*
    564 U.S. 338 (2011) ....................................................................................................6

*White v. Experian Info. Sols., Inc.*
    2018 WL 1989514 (C.D. Cal. Apr. 6, 2018) ..............................................................21

*Wolin v. Jaguar Land Rover North Am., LLC*
    617 F.3d 1168 (9th Cir. 2010) ................................................................................7, 10

**Rules**

Fed. R. Civ. P. 23 ...............................................................................................*passim*

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on October 10, 2019, at 1:30 p.m., or as soon thereafter as the matter may be heard before the Honorable Beth Labson Freeman, United States District Judge for the Northern District of California, San Jose Division, located at 280 South 1st Street, San Jose, California 95113, Plaintiffs Jonathan Makcharoenwoodhi, Alex Gorbatchev, Brian Christensen, Anthony Martorello, Edward Beheler, Yuriy Davydov, Rebecca Harrison, Zachary Hines, Taylor Jones, Paul Servodio, Justin Leone, James Poore, Jr., and Kenneth Johnston ("Plaintiffs"), will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23 for an Order:

    a.  Granting final approval of the proposed Settlement Agreement (the "Settlement") with Defendants Huawei Device USA, Inc. and Google LLC ("Defendants"), and directing payments of the claims as set forth in the Settlement Agreement;

    b.  Finally determining that the Settlement Class, as defined in the Court's Preliminary Approval Order (ECF 204), and in the Settlement, satisfies the prerequisites for maintenance of a class action under Federal Rules of Civil Procedure 23(a) and (b)(3), and certifying the Settlement Class for settlement purposes;

    c.  Finally determining that the Settlement is fair, reasonable and adequate pursuant to Federal Rule of Civil Procedure 23(e); and

    d.  Dismissing this action with prejudice.

This motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, the Settlement, including all exhibits thereto, the Joint Declaration of Daniel C. Girard and Benjamin F. Johns ("Joint Decl."), the Supplemental Declaration of Andrew Perry ("Suppl. Perry Decl."), and all other papers and records on file in this action, and such other argument as the Court may consider.

### MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

On May 3, 2019, this Court granted preliminary approval of the proposed Settlement,[1] provisionally certified the proposed class pursuant to FED. R. CIV. P. 23(a) and 23(b)(3) for settlement purposes, directed notice to the class, and scheduled a final approval hearing for October 10, 2019. Plaintiffs filed a Motion for Attorneys' Fees, Costs, and Service Awards on July 26, 2019, detailing the history of this litigation and the Class's favorable reception of the settlement at the time.  Since then, the reaction of the class members to notice of the settlement has remained overwhelmingly positive— nearly 92,000 claim forms have been filed, 31 class members have excluded themselves, two class members filed a comment, and no objections have been filed.  Accordingly, Plaintiffs now submit this memorandum in support of final approval of the Settlement.

The Settlement is fair, reasonable, and adequate and represents a substantial recovery for the Settlement Class in the face of strenuous and continued opposition by Defendants.  The $9,750,000 Settlement delivers immediate relief to the Settlement Class of now nearly four-year-old Nexus 6P smartphones and far exceeds the recovery obtained in the most analogous case involving allegedly defective smartphones.  Absent the Settlement, the Settlement Class would continue to face significant litigation risk and delay—including various issues the Court raised in connection with Defendants' second motions to dismiss—and with respect to class certification, motions for summary judgment, trial and potential appeals.  The Settlement is the product of arms' length negotiations between experienced counsel.  The settlement terms, notice to the class, and the claims process have been

---

[1] Unless otherwise noted, capitalized terms have the meaning ascribed to them in the Settlement Agreement (ECF No. 194-2).

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:17-CV-02185-BLF

negotiated to satisfy the Northern District's Procedural Guidelines for Class Action Settlements ("Northern District's Guidelines").[2]

Under the supervision of Class Counsel, the claims administrator Kurtzman Carson Consultants ("KCC") has carried out the notice plan approved by the Court.  Through email and direct mail, KCC has disseminated notice to 326,500 class members.  Following the Court's approval (ECF 212), Amazon has also successfully emailed notice to another 57,000 class members.  The response to notice has been robust and the Settlement has been very well-received.  Should the Court grant final approval, more than 18% of the class (and nearly 24% of those who received direct notice) will be eligible for monetary benefits, a claims rate that is in line with the 5% to 20% rate projected in the preliminary approval motion.  Of the claims, an estimated 11,600 are eligible for substantial monetary payments of $150 or $325, and 5,000 are eligible for the maximum payment of $400, which represents close to a full refund.

Plaintiffs respectfully request that the Court grant final approval of the Settlement.

## II.     BACKGROUND

Class Counsel have detailed the background of this action in Plaintiffs' motion for preliminary approval ("Preliminary Approval Motion") (ECF 202) and motion for attorneys' fees, costs, and service awards ("Fee Motion") (ECF 214).  Plaintiffs accordingly provide the following case background only to the extent relevant to the instant motion.  *See* Northern District's Guidelines ("If the plaintiffs choose to file two separate motions, they should not repeat the case history and background facts in both motions.").

Plaintiffs agreed to resolve the case after two years of active litigation and an initial attempt at mediation before Judge Layn Philips (ret.).  ECF 214, Fee Motion at 3-7.  Plaintiffs' efforts in the case included fact and expert discovery, and motion practice.  *Id.* at 3-5.

---

[2] *See* UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, *Procedural Guidance for Class Action Settlements* (Dec. 5, 2018), https://www.cand.uscourts.gov/ClassActionSettlementGuidance.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:17-CV-02185-BLF

Plaintiffs filed their Preliminary Approval Motion on April 10, 2019.  ECF 194.  The parties appeared at the preliminary approval hearing on May 2, 2019.  ECF 203.  The Court granted Plaintiffs' motion for preliminary approval, provisionally certified the Settlement Class, and directed that notice be issued to class members on May 3, 2019.  ECF 204.

Plaintiffs filed their Fee Motion on July 26, 2019.  ECF 214.  In the motion, they provided the Court with the case background and the results of the notice and claims process to-date.  The current results of the notice and claims process are detailed below.  If the Court grants final approval of the settlement, Class Counsel will provide a post-distribution accounting within 21 days after the distribution of the settlement funds and payment of attorneys' fees.  Joint Decl. at ¶ 8.

## III.   CLASS NOTICE AND CLAIMS ADMINISTRATION

### A.   Notice and Settlement Administration.

The Court's order granting preliminary approval appointed KCC to serve as the Settlement Administrator and to provide notice to the Settlement Class.  ECF 204 at ¶ 8.  In addition, the Court authorized nonparty Amazon to directly email notice to its affected customers who purchased a Nexus 6P.  ECF 212.  As detailed in the Supplemental Declaration of Andrew Perry, submitted as Exhibit A to the Joint Declaration, the Notice Plan has been successfully implemented (ECF 194-2 § 4).  Settlement Class Members have been notified of their rights in the following ways.

### a.   Direct Notice by Email and First-Class Mail.

KCC caused the approved Notice and claim form to be emailed to 294,570 Settlement Class Members whose email addresses were furnished from Defendants' records or the records of resellers that Plaintiffs subpoenaed.  Suppl. Perry Decl. ¶ 6.  3,776 class members had the email notice returned as undeliverable.  *Id.* at ¶ 8.  Of these, 14 did not have a mailing address.  *Id.*  KCC then mailed Supplemental Postcard Notice to an additional 3,762 Settlement Class Members as to whom Email Notice was returned as undeliverable.  *Id.*

KCC also mailed the approved Notice to 34,870 Settlement Class Members whose physical address was available.  *Id.* at ¶ 7.  481 were returned by the United States Postal Service with forwarding addresses and KCC re-mailed the postcard Notice to the updated addresses.  *Id.* at ¶ 9.

3,413 postcard Notices were returned without a forwarding address and KCC searched for updated addresses for these records and 369 were updated and re-mailed. *Id.* at ¶ 10.

Additionally, Amazon confirmed to KCC that it directly emailed the approved Notice to 57,783 class members whose email addresses its records indicated purchased a Nexus 6P, and further confirmed successful email notice for 57,747 class members. *Id*. at ¶ 11.

In total between Amazon and KCC, and accounting for physical and email notices sent to the same Settlement Class Member, either or both direct Email and Supplemental Postcard Notice was successful to 383,965 of the approximately 500,000 Settlement Class Members. *Id*.

> **b.** **The Dedicated Settlement Website, Publication Notice and Toll-Free Number.**

KCC established and operates a dedicated Settlement Website ("Website"), www.Nexus6PSettlement.com, as well as a dedicated toll-free number. *Id*. at ¶ 4. These resources provide information about the Settlement and claims process to Settlement Class Members in real time and allow them to access to the claim form and other documents. *Id.* The Long Form Notice, Claim Form, Opt-Out Form, Preliminary Approval Motion, Order granting Preliminary Approval, Settlement Agreement, Second Amended Consolidated Complaint, and the Fee Motion and accompanying declaration have been posted on the Website for public viewing and download. *Id.* The website is included on all forms of Notice provided to Settlement Class Members, including Amazon's notice. ECF 214-6, 215, 216. As of September 5, 2019, there have been roughly 183,000 unique visitors to the Website, and over 550,000 web pages have been presented to visitors. Suppl. Perry Decl. at ¶ 4.

Additionally, on or about June 7, 2019, Class Counsel issued a press release via PR Newswire, which was also posted on the Website. *Id.*

Roughly 77% of the Settlement Class was contacted through the dissemination of direct Email Notice, Supplemental Postcard Notice, Website Notice and the Press Release. *Id.* at ¶ 11.

> **B.** **Claims and Requests for Exclusion**

The deadline to submit claims, request exclusion or file an objection was September 3, 2019. *Id*. at ¶ 14. 31 class members requested exclusion from the Settlement, only two class members filed a comment, and there have been no objections filed. *Id*. at ¶ 13.

The Claim form was designed in accordance with the Northern District's Guidelines and to allow for ease of use by Settlement Class Members to submit claims online or by mail.  ECF 194-1 at ¶¶ 27-35.  As of September 3, 2019, KCC has received 91,924 claims.  Suppl. Perry Decl. at ¶ 14. These claims are subject to review and audit by KCC.  ECF 194-2 at 49-50.  Claimants who submit forms that do not meet the submission requirements will be given notice and an opportunity to remedy any curable deficiencies.  *Id.*  Claimants who fail to establish class membership will not share in the Settlement.

Subject to KCC's review and audit of received claims, and assuming that 10% of the remaining claims will be deficient, approximately 67,600 claimants will receive the following estimated payments from the Net Settlement Fund: (1) approximately 7,250 claimants who did not experience an alleged bootloop or battery drain issue, or received a Pixel XL as a replacement, will receive approximately $5; (2) approximately 43,750 claimants who experienced an alleged battery drain or bootloop issue but did not submit documentation will receive approximately $10 (battery drain) or $20 (bootloop); (3) approximately 11,600 claimants who submitted documentation of an alleged bootloop and/or battery drain issue will receive approximately $150 (battery drain) or $325 (bootloop); and (4) approximately 5,000 claimants who have submitted documentation showing repeated alleged bootloop and/or battery drain issues on multiple Nexus 6P devices will receive $400.  Subject to KCC's review and audit of received claims, Class Counsel estimate that the full amount of the Net Settlement Fund will be distributed to claimants, with no remainder for cy pres.  Suppl. Perry Decl. at ¶ 15.

## IV.    ARGUMENT

In order to grant final approval of a settlement, the Court must determine that the class meets the requirements for certification under Rule 23 (a) and (b) and determine that the proposed settlement is fundamentally fair, reasonable and adequate.  *See In re Chrysler-Dodge-Jeep Ecodiesel Mktg., Sales Practices & Prods. Liab. Litig.*, No. 17-md-02777-EMC, 2019 WL 2554232, at *1 (N.D. Cal. May 3, 2019).  The Court previously found that the requirements under Rule 23 (a) and (b)(3) "are likely to be satisfied for the Settlement Class."  ECF 204 at 2.  Since then, there have been no objections and no intervening events that would affect the Court's conclusion.  Accordingly, the Court should affirm its previous findings as to the requirements of Rule 23 (a) and (b).  *See, e.g., Black v. T-Mobile USA, Inc.*,

No. 17-CV-04151-HSG, 2019 WL 3323087, at *2 (N.D. Cal. July 24, 2019) ("Because no facts that would affect these requirements have changed since the Court preliminarily approved the class . . . this order incorporates by reference its prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval.").

### A. Certification of The Proposed Settlement Class Is Appropriate

Class certification is appropriate where the four Rule 23 (a) prerequisites (i.e., numerosity, commonality, typicality, and adequacy) are satisfied. FED. R. CIV. P. 23(a); *see In re Extreme Networks, Inc. Sec. Litig.*, No. 15-CV-04883-BLF, 2019 WL 3290770, at *4 (N.D. Cal. July 22, 2019). In addition to the prerequisites, the settling parties must also show that common issues predominate over individual issues under Rule 23(b)(3). *See In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *5.

### 1. The Rule 23(a) Prerequisites are Satisfied.

#### a. The Class Members Are Too Numerous to Be Joined.

A proposed class must be so numerous that joinder of all its members would be "impracticable." FED. R. CIV. P. 23(a)(1). It is undisputed that hundreds of thousands of Nexus 6P phones were sold in the United States. Numerosity is, therefore, readily satisfied. *See, e.g.*, *Littlejohn v. Ferrara Candy Co.*, No. 318CV00658 AJB WVG, 2019 WL 2514720, at *3 (S.D. Cal. June 17, 2019) (numerosity satisfied where there were "hundreds of thousands" of class members).

#### b. The Action Involves Common Questions of Law and Fact.

To satisfy Rule 23(a)(2)'s commonality requirement, the claims "must depend upon a common contention" such that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The Ninth Circuit construes this prerequisite "permissively," and it is satisfied with "shared legal issues" or "a common core of salient facts." *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010) (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998)). As the Court previously recognized, ECF 204 at 2, the common questions in this case include whether the Nexus 6P is defective; whether Defendants had a duty to disclose the alleged bootloop and battery drain issues with the Nexus 6P, and if so, when; whether the allegedly concealed information was material to a

1    reasonable consumer; and whether class members sustained harm as a result of Defendants' conduct.

2    Thus, commonality is satisfied here.  *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1165 (9th Cir.

3    2014) (commonality requires only a single significant question of law or fact).

4              **c.       Plaintiffs' Claims Are Typical of Those of the Class.**

5              Although the representative plaintiffs' claims "need not be substantially identical" to claims of

6    absent class members, they must be "reasonably coextensive" with the members they seek to represent.

7    *Torres v. Mercer Canyons Inc.*, 835 F.3d 1125, 1141 (9th Cir. 2016) (quoting *Parsons v. Ryan*, 754

8    F.3d 657, 685 (9th Cir. 2014)).  "Measures of typicality include 'whether other members have the same

9    or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs,

10   and whether other class members have been injured by the same course of conduct.'"  *Id.* (quoting

11   *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992)); *see also Wolin v. Jaguar Land*

12   *Rover North Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("Typicality can be satisfied despite

13   different factual circumstances surrounding the manifestation of the defect.").

14             As Plaintiffs and class members' claims arise from the same alleged violations related to the

15   same allegedly defective Nexus 6P phones, typicality is satisfied.  *See Kim v. Tinder, Inc.*, No. CV 18-

16   3093-JFW(ASX), 2019 WL 2576367, at *5 (C.D. Cal. June 19, 2019) (typicality is met when the

17   plaintiffs' claims "arise from the same factual circumstances and raise the same legal issues" as class

18   members); *see, e.g.*, *Gold v. Lumber Liquidators, Inc.*, 323 F.R.D. 280, 288-89 (N.D. Cal. 2017)

19   (typicality met where the plaintiffs' and class members' claims were based on the same allegedly

20   defective product and deceptive conduct).

21             **d.       Plaintiffs and Their Counsel Will Fairly and Adequately Protect the**

22                        **Interests of Class Members.**

23             The test for evaluating adequacy of representation under Rule 23(a)(4) is: "(1) Do the

24   representative plaintiffs and their counsel have any conflicts of interest with other class members, and

25   (2) will the representative plaintiffs and their counsel prosecute the action vigorously on behalf of the

26   class?"  *Staton v. Boeing Co.*, 327 F.3d 938, 957 (9th Cir. 2003).  Plaintiffs and their counsel have no

27   conflicts with class members and have vigorously prosecuted this case to a successful resolution.

28

Plaintiffs and class members were allegedly injured by the same conduct on the part of Defendants and Plaintiffs' interests in proving their claims against Defendants aligns with those of class members. They "have pursued the interests of the absent class members by retaining counsel with particular experience in consumer class actions and by assisting counsel with case investigation." *Cox v. Clarus Mktg. Grp., LLC*, 291 F.R.D. 473, 479 (S.D. Cal. 2013). In addition, they have actively participated in the litigation—including discovery—and kept in close contact with their attorneys throughout. *See* Pls.' Decls., in Support of Fee Motion, ECF 214-5. Nor are there any conflicts between Plaintiffs and the Class. *See Mergens v. Sloan Valve Co.*, No. CV-16-05255 SJO (SKx), 2017 WL 9486153, at *7 (C.D. Cal. Sept. 18, 2017) (request for service award does not create a fundamental conflict). Plaintiffs are therefore adequate class representatives.

Class Counsel are experienced consumer advocates, having represented consumers in a number of complex class actions over the past two decades. *See* ECF 34; *see also Bisaccia v. Revel Systems Inc.*, No. 17-cv-02533-HSG, 2019 WL 861425, at *4 (N.D. Cal. Feb. 22, 2019) (finding plaintiff's counsel adequate based on their extensive experience with federal class actions); *Nigh v. Humphreys Pharmacal, Inc.*, No. 12CV2714-MMA-DHB, 2013 WL 5995382, at *4 (S.D. Cal. Oct. 23, 2013) (counsel had "extensive experience in consumer litigation"). Class Counsel have used this experience to achieve a favorable outcome, including in briefing and arguing two rounds of motions to dismiss, opposing and then moving to lift the discovery stay, serving and responding to multiple discovery requests, defending depositions, and engaging in protracted settlement negotiations. *See* ECF 214-1 at ¶¶ 4-21; *see also Bostick v. Herbalife Int'l of Am., Inc.*, No. CV 13-2488 BRO (SHX), 2015 WL 12731932, at *14 (C.D. Cal. May 14, 2015) (adequacy satisfied where the plaintiffs and class counsel engaged in extensive discovery and multiple mediation and negotiation sessions). Since the Court granted preliminary approval and appointed Class Counsel, they have continued to diligently represent the class by overseeing implementation of the notice plan and settlement administration. ECF 214-1 at ¶ 38. Adequacy is thus satisfied.

### 2. Rule 23(b)(3) is Satisfied.

Rule 23(b)(3) requires that "questions of law or fact common to class members" must "predominate over any questions affecting only individual members," and the class action must be

8

"superior to other available methods for fairly and efficiently adjudicating the controversy." FED. R.

CIV. P. 23(b)(3).  Although the Rule lists several "pertinent" factors, the Court need not be concerned

with trial manageability when "certifying a settlement class, where, by definition, there will be no

trial." *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 557 (9th Cir. 2019) (*en banc*).  As the

Court provisionally found in its Order granting Preliminary Approval, common questions predominate

over individualized questions and a class action is superior to any alternatives, ECF 204 at ¶ 2.b., and

there have not been any changes that would alter that finding.  *See, e.g.¸ Isquierdo v. W.G. Hall, LLC*,

No. 15-CV-00335-BLF, 2017 WL 4390250, at *3 (N.D. Cal. Oct. 3, 2017).

### a.    Common Questions of Law and Fact Predominate.

The predominance analysis "focuses on the relationship between the common and individual

issues in the case, and tests whether the proposed class is sufficiently cohesive to warrant adjudication

by representation." *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 894-95 (N.D. Cal. 2015) (quoting

*Abdullah v. U.S. Sec. Assocs.*, 731 F.3d 952, 964 (9th Cir. 2013)).  In the settlement context,

predominance is ordinarily satisfied when the claims arise out of the defendants' common conduct.  *See*

*In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 559 (citing *Hanlon*, 150 F.3d at 1022-23 ("We have

held that these types of common issues, which turn on a common course of conduct by the defendant,

can establish predominance in nationwide class actions.")).

All class members purchased Nexus 6P phones that allegedly contain a common defect and

assert claims arising out of a common course of conduct on the part of Defendants.  *See, e.g.*, *Vizzi v.*

*Mitsubishi Motors N. Am., Inc.*, No. SACV08-00650 JVS (RNBx), 2010 WL 11508375, at *3 (C.D.

Cal. Mar. 29, 2010) (granting final approval and finding predominance satisfied where the main issue

concerned an alleged defect and the consumer protection claims were based on sales and marketing

made to all class members); *In re Lenovo Adware Litig.*, No. 15-md-02624, 2018 WL 6099948, at *6

(N.D. Cal. Nov. 21, 2018) (holding predominance satisfied where class members were affected "in the

same way through the same set of [defendant's] actions and decisions").

As the Court has previously recognized, "[w]hether Huawei and Google had knowledge of the

defects at the time that Plaintiffs purchased their phones is a common thread through many of the

Plaintiffs' claims." ECF 115 at 7.  And threshold issues such as whether the Nexus 6P is defective and

9

whether the alleged bootloop and battery drain issues are material to a reasonable consumer will also drive the resolution of this litigation.  *See, e.g.*, *Wolin*, 617 F.3d at 1173 ("Common issues predominate such as whether Land Rover was aware of the existence of the alleged defect, whether Land Rover had a duty to disclose its knowledge and whether it violated consumer protection laws when it failed to do so."); *Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV13-02529 MMM (VBKx), 2015 WL 12732462, at \*15 (C.D. Cal. May 29, 2015) ("the common questions discussed above, i.e., whether the class vehicles were defectively designed, whether defendants were aware of the design defects, whether defendants had a duty to disclose those facts, and whether such facts were material to a reasonable consumer, 'present . . . significant aspect[s] of the case' that can be answered on a classwide basis.") (alterations in original); *Banks v. Nissan N. Am., Inc.*, 301 F.R.D. 327, 335 (N.D. Cal. 2013) ("[W]hile it is true that some vehicles' defects may have manifested in different ways, the issues of (1) whether Nissan was aware of the alleged defect, (2) whether Nissan had a duty to disclose its knowledge, and (3) whether Nissan violated consumer protection laws when it failed to do so, are common to the class and predominate over any individual issues."); *In re Apple iPhone/iPod Warranty Litig.*, No. CV-10-01610, 2014 WL 12640497, at \*6 (N.D. Cal. May 8, 2014) (common questions predominated as to warranty claims).

While there are individual questions concerning the amount of damages, the Ninth Circuit has repeatedly held that damages calculations "alone cannot defeat class certification." *Pulaski & Middleman, LLC v. Google, Inc.*, 802 F.3d 979, 987-88 (9th Cir. 2015); *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).  Thus, the predominance requirement is met.

### b.      A Class Action is a Superior Means of Resolving These Claims.

The concern "that the risks, small recovery, and relatively high costs of litigation" will "make it unlikely that plaintiffs would individually pursue their claims" goes to "the heart of why the Federal Rules of Civil Procedure allow class actions in cases where Rule 23's requirements are satisfied."  *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017) (internal quotation marks omitted).  In this case, a class action is superior under Rule 23(b)(3) because it represents the only realistic method for Nexus 6P owners to obtain relief.  Class members lack the incentive to bring their own cases against well-resourced Defendants who have strenuously denied liability, especially given the relatively small

potential recovery for each Nexus 6P owner and the "complex technical issues" concerning the source of the Nexus 6P's purported problems.  *See In re Anthem, Inc. Data  Breach Litig.*, 327 F.R.D. 299, 315 (N.D. Cal. 2018) ("Here, the amount at stake for individual Settlement Class Members is too small to bear the risks and costs of litigating a separate action.  Litigation costs would be quite high, given that the case involves complex technical issues and requires substantial expert testimony."); *Mullins v. Premier Nutrition Corp.*, No. 13-cv-01271-RS, 2016 WL 1535057, at *8 (N.D. Cal. Apr. 15, 2016).

### B.    Notice to Class Members Was Reasonable and Adequate.

"A binding settlement must provide notice to the class in a 'reasonable manner' and otherwise be 'fair, reasonable, and adequate.'"  *In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 567 (quoting FED. R. CIV. P. 23(e)(1), (2)).  "The notice must be reasonably certain to inform the absent members of the plaintiff class, but Rule 23 does not require actual notice."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 253 (N.D. Cal. 2015) (internal quotation marks omitted).  "Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."  *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (internal quotation marks omitted).

The Court previously approved the parties' proposed notice procedures for the class, which are in plain language and describe the terms of the settlement in sufficient detail, and include emails, postcards, press releases, and posting of the settlement website.  ECF 204 at ¶¶ 7-16; *see, e.g.*, *Spann v. J.C. Penney Corp.*, 211 F. Supp. 3d 1244, 1255 (C.D. Cal. 2016) (class notice that conformed with the court's order satisfied the requirements of Rule 23(c)); *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1312 (S.D. Cal. 2017) ("[T]he Court confirms its finding that through the mailing, emailing, and publication of the Class Notices in the form and manner ordered by the Court, Class Members have received the best practicable notice of the Settlement[.]"), *aff'd*, 881 F.3d 1111 (9th Cir. 2018).  As discussed above, Plaintiffs, KCC, and Amazon have followed the approved notice procedures.  *See supra* Section III.A.  Approximately 77% of class members received notice through direct email or postcard notice, which weighs in favor of finding that notice was adequate.  *See Free Range Content, Inc. v. Google, LLC*, No. 14-CV-02329-BLF, 2019 WL 1299504, at *6 (N.D. Cal. Mar. 21, 2019) (notice plan resulting in notice to 70% or more of class members was adequate) (citing *Edwards v.*

1   *Nat'l Milk Producers Fed'n*, No. 11-CV-04766-JSW, 2017 WL 3623734, at *4 (N.D. Cal. June 26,

2   2017)).  The settlement here reasonably and adequately provided notice to the class under the

3   circumstances.  *See, e.g.*, *In re Lenovo Adware Litig.*, No. 15-MD-02624-HSG, 2019 WL 1791420, at

4   *5 (N.D. Cal. Apr. 24, 2019).

5       **C.      The Settlement Is Fair, Reasonable and Adequate, and Should be Finally**

6            **Approved.**

7       The Ninth Circuit favors compromise and settlement of complex class actions.  *See In re*

8   *Volkswagen "Clean Diesel" Mktg., Sales Practice & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1061

9   (N.D. Cal. 2017) (citing *Allen v. Bedolla*, 787 F.3d 1218, 1223 (9th Cir. 2015)); *Norris v. Mazzola*, No.

10  15-CV-04962-JSC, 2017 WL 6493091, at *4 (N.D. Cal. Dec. 19, 2017) ("Judicial policy strongly

11  favors settlement of class actions.").  Accordingly, courts are to give:

12

13          proper deference to the private consensual decision of the parties. . . . [T]he

14          court's intrusion upon what is otherwise a private consensual agreement

15          negotiated between the parties to a lawsuit must be limited to the extent necessary

16          to reach a reasoned judgment that the agreement is not the product of fraud or

17          overreaching by, or collusion between, the negotiating parties, and that the

18          settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

19

20  *Hanlon*, 150 F.3d at 1027 (citation and internal quotations omitted).

21      A Court may approve the parties' settlement only after it determines that it is "fair, reasonable,

22  and adequate."  Fed. R. Civ. P. 23(e).  In making this determination, courts in this Circuit balance the

23  following factors: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely

24  duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the

25  amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings;

26  (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the

27  reaction of the class members to the proposed settlement.  *Hanlon*, 150 F.3d at 1026-27.  The recent

28  amendments to Rule 23(e) direct the Court to consider a similar list of factors:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

FED. R. CIV. P. 23(e)(2).  The Advisory Committee's notes clarify that this list of factors does not "displace" the *Hanlon* factors, "but instead aim to focus the court and attorneys on 'the core concerns of procedure and substance that should guide the decision whether to approve the proposal.'"  *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *6 (quoting FED. R. CIV. P. 23(e)(2) advisory committee's note to 2018 amendment).  An evaluation of both the *Hanlon* factors and the factors set forth in Rule 23(e) confirms that the Settlement is fair, reasonable, and adequate.  *See* ECF 202, at 11-18.

### 1.    The Settlement Resulted from Informed, Arm's-Length Negotiations.

The Court must ensure that the settlement is not "the product of collusion among the negotiating parties."  *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000); *see Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1290 (9th Cir. 1992).  And under Rule 23(e)(2)(A)-(B), the Court considers whether Plaintiffs and Class Counsel adequately represented the class and whether the proposal was negotiated at arm's length.  "These considerations overlap with certain *Hanlon* factors, such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings."  *In re Extreme Networks*, 2019 WL 3290770, at *6.

"Courts have afforded a presumption of fairness and reasonableness of a settlement agreement where that agreement was the product of non-collusive, arms' length negotiations conducted by capable

13

and experienced counsel." *In re Netflix Privacy Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at

*4 (N.D. Cal. Mar. 18, 2013). The presumption is warranted here because the settlement was reached

only after extensive motion practice and discovery had permitted the parties a full opportunity to make

an informed decision about settlement. *See Fee Motion, ECF 214 at 3-5; see also Linney v. Cellular

Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998) (finding final approval appropriate where the

parties have "sufficient information to make an informed decision about settlement") (citation omitted).

Because "the settlement negotiations were conducted free of collusion," the Court should evaluate the

final approval factors "under the presumption of fairness and reasonableness." *In re Netflix Privacy

Litig.*, No. 5:11-CV-00379 EJD, 2013 WL 1120801, at *4 (N.D. Cal. Mar. 18, 2013).

Preceding mediation, Defendants produced discovery about the Nexus 6P sales and alleged

bootloop and battery drain issues, and the parties exchanged briefs addressing the strengths and

weaknesses of Plaintiffs' claims. ECF 214-1 at ¶¶ 15-21. The parties attended a full-day mediation

session before Judge Phillips on December 5, 2017. *Id.*; *see* FED. R. CIV. P. 23(e)(2) advisory

committee's note to 2018 amendment (advising that "the involvement of a neutral . . . mediator or

facilitator in those negotiations may bear on whether they were conducted in a manner that would

protect and further the class interests"); *Free Range Content, Inc.*, 2019 WL 1299504, at *6 (holding

the presence of mediator weighs in favor of applying a presumption of correctness); *Federal Ins. Co. v.

Caldera Med., Inc.*, No. 2:15-cv-00393-SVW-PJW, 2016 WL 5921245, at *5 (C.D. Cal. Jan. 25, 2016)

(same).

At the time of settlement, the parties also had investigated and tested the strength of Plaintiffs'

claims through discovery (both informal and formal) and motion practice. Fee Motion, ECF 214 at 3-5;

*see Lagarde v. Support.com, Inc.*, No. 12-cv-0609 JSC, 2013 WL 1283325, at *7 (N.D. Cal. Mar. 26,

2013) (holding that parties were sufficiently informed where they "did engage in some motion practice

that . . . provided the parties with a better understanding of the information available to the opposing

side"). In addition to pre-suit investigation, shortly after the Court lifted the discovery stay, Plaintiffs

engaged Defendants and nonparties in discovery, including document requests, interrogatories, and

subpoenas. Fee Motion, ECF 214 at 5; *see Sheikh v. Tesla, Inc.*, No. 17-cv-02193-BLF, 2018 WL

5794532, at *5 (N.D. Cal. Nov. 2, 2018) (finding the presumption of correctness applied where pre-suit

investigation and informal discovery was conducted); *Lagarde*, 2013 WL 1283325, at *7 (noting presence of discovery supports conclusions that the plaintiffs were sufficiently informed during negotiations).

The settlement negotiations that took place following the hearing on Defendants' second round of motions to dismiss occurred after Class Counsel obtained information from Defendants' documents concerning the Nexus 6P's advertising, product packaging, sales figures, customer service policies and procedures, consumer complaints, insurance claims, and technical information. *See* Fee Motion, ECF 214 at 5. Plaintiffs, moreover, consulted with technical experts to investigate the alleged bootloop and battery drain issues and worked with damages experts to prepare a damages methodology for class certification. ECF 214-1 at ¶ 16; *see, e.g.*, *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (affirming settlement approval where "Class Counsel conducted significant investigation, discovery and research" and "had worked with damages and accounting experts throughout the litigation"). Thus, the settlement negotiations were informed and at arm's length. *See Kearney v. Hyundai Motor Am.*, No. SACV 09-1298-JST, 2013 WL 3287996, at *6 (C.D. Cal. June 28, 2013) (extent of discovery favored settlement when "the parties have engaged in formal and informal discovery during the two-year litigation" and class counsel independently investigated the problems and obtained information from the defendant concerning the extent of consumer complaints); *Bellinghausen*, 306 F.R.D. at 257 (noting that the parties had "litigated several motions to dismiss," engaged in "substantial formal and informal discovery," the plaintiffs had analyzed "hundreds of pages of documents" and reached a resolution only after several weeks of negotiations).

Finally, there are no indicia of collusion here. Counsel have requested a fee proportionate to the non-reversionary fund and within the range ordinarily granted in this Circuit, and there is no clear sailing provision. *See In re Extreme Networks*, 2019 WL 3290770, at *8. Thus, the Settlement "is not the product of collusion or fraud, but rather is the result of a successful arm's-length negotiation." *Bower v. Cycle Gear, Inc.*, No. 14-cv-02712-HSG, 2016 WL 4439875, at *5 (N.D. Cal. Aug. 23, 2016); *see In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d at 569.

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:17-CV-02185-BLF

2.     **The Relief Under the Settlement is Adequate and Balances the Risks and Expense of Trial.**

The relief Class Counsel obtained for class members further weighs in favor of final approval as it provides substantial, immediate relief for class members.  The settlement is an excellent result, especially when balanced against the risks and delays associated with continued litigation.

a.     **The Strength of Plaintiffs' Case and the Risk of Continuing Litigation Weighs in Favor of Approval.**

Under Rule 23(e)(2)(C)(i), courts in the "Ninth Circuit evaluate 'the strength of the plaintiff's case; complexity, and likely duration of further litigation; [and] the risk of maintaining class action status throughout the trial.'" *In re Extreme Networks*, 2019 WL 3290770, at *8 (quoting *Hanlon*, 150 F.3d at 1026).  "Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case." *Hendricks v. Starkist Co*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *4 (N.D. Cal. Sept. 29, 2016), *aff'd sub nom. Hendricks v. Ference*, 754 F. App'x 510 (9th Cir. 2018).

As detailed in their Preliminary Approval Motion and Fee Motion, Plaintiffs overcame significant challenges to achieve the Settlement.  Defendants vigorously defended themselves from the outset of the case and continued litigation would have undoubtedly presented significant risks and resulted in years of delays. *See, e.g.*, *Spann v. J.C. Penney Corp.*, 314 F.R.D. 312, 326 (C.D. Cal. 2016) ("The settlement the parties have reached is even more compelling given the substantial litigation risks in this case."); *Brown v. Hain Celestial Grp., Inc.*, No. 3:11-CV-03082-LB, 2016 WL 631880, at *6 (N.D. Cal. Feb. 17, 2016) (noting that the defendant "vigorously" disputed liability).

Among other things, the Court granted Huawei's first motion to dismiss for lack of personal jurisdiction without prejudice, and then entered a further order granting Google's first motion to dismiss in its entirety and granting Huawei's first motion in part.  ECF 113, 115.  In connection with Defendants' second motions to dismiss, the Court expressed concerns with the sufficiency of Plaintiffs' pre-sale knowledge allegations and the choice of law issues associated with bringing a multi-state class. *See* ECF 169, Oct. 17, 2018 Hr'g Tr. at 8:6-9:11; *see also, e.g.*, *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1001 (N.D. Cal. 2015) (noting that the defendant's arguments against a nationwide class was "not a frivolous argument" which supported final approval); *Chambers v.*

16

*Whirlpool Corp.*, 214 F. Supp. 3d 877, 888 (C.D. Cal. 2016) (similar).  Google further disputed that it was the manufacturer of the Nexus 6P under Song-Beverly and the Court indicated that it was likely to dismiss any Song-Beverly claim that relied on arguing that Google was a manufacturer under the statute.  *See* ECF 169, Oct. 17, 2018 Hr'g Tr. at 58:2-63:13; *cf. Noll v. eBay, Inc.*, 309 F.R.D. 593, 606 (N.D. Cal. 2015) (noting that a portion of the case had already been dismissed and the substantial "risk that the class would see no recovery at all" weighed in favor of approving the settlement).

While most of Plaintiffs' implied warranty and some of Plaintiffs' express warranty claims against Huawei survived the first motion to dismiss, ECF 115 at 86, Plaintiffs would also have faced considerable risks obtaining class certification or prevailing on summary judgment.  *See, e.g.*, *Anderson v. Samsung Telecommunications Am., LLC*, No. SACV13-01028 CJC (JPRx), 2014 WL 11430910, at *1 (C.D. Cal. Oct. 20, 2014) (denying class certification in a case involving allegations of smartphones that suffered unexpected power loss and freezing); *Galitski v. Samsung Telecommunications Am., LLC*, No. 3:12-CV-4782-D, 2015 WL 5319802, at *1 (N.D. Tex. Sept. 11, 2015) (similar).  Plaintiffs would also have been required to present a suitable damages model at class certification which has been a major obstacle in another defective smartphone case.  *See Davidson v. Apple, Inc.*, No. 16-cv-04942-LHK, 2019 WL 2548460, at *19 (N.D. Cal. June 20, 2019) (denying class certification for the third time owing to deficiencies with the plaintiffs' damages model); *see also In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d at 1001 (concluding that difficulties with presenting a viable damages favored final approval).  Furthermore, determining the underlying cause of the purported bootloop and battery drain issues would have been costly and difficult, requiring multiple experts.  *See LaGarde*, 2013 WL 1283325, at *4 (factors weighed in favor of final approval where "Defendants challenged all of Plaintiffs' claims" and the claims required a technical understanding of the defendants' products which would have been "extremely costly, time consuming, and involved the hiring of additional experts, taking of additional written discovery, and numerous depositions").

The Nexus 6P was released nearly four years ago, but to have obtained a recovery absent the Settlement, Plaintiffs would have had to withstand Defendants' motions to dismiss, obtain class certification, defend a certification order on appeal under Rule 23(f), survive motions for decertification and for summary judgment, and prevail at trial (set for October 5, 2020) and then in a likely post-trial

17

appeal.  The settlement avoids prolonging the delay in recovery and instead provides certain and immediate relief to consumers.  *See, e.g.*, *Hendricks*, 2016 WL 5462423, at *4-5 ("To prevail, Plaintiff would be required to successfully move for class certification, survive summary judgment, and receive a favorable verdict capable of withstanding a potential appeal.  The risks and costs associated with class action litigation weigh strongly in favor of settlement."); *see also Sadowska v. Volkswagen Grp. of Am., Inc.*, No. CV 11-00665-BRO AGRX, 2013 WL 9600948, at *4 (C.D. Cal. Sept. 25, 2013) ("If the Court were deny approval for the settlement, there is a strong possibility that the class members would lose their chance at recovery entirely.").

> **b.**    **The Settlement Amount Constitutes a Substantial, Immediate Recovery for the Class and Weighs in Favor of Approval.**

"Crucial to the determination of adequacy is the ratio of plaintiffs' expected recovery balanced against the value of the settlement offer."  *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 3290770, at *9 (internal quotation marks and citation omitted); *see Norris*, 2017 WL 6493091, at *4 (noting that this is often considered the most important factor).  The $9.75 million Settlement (32.5% percent of estimated damages, *see* ECF 202 at 6) is a substantial recovery when considering the challenges detailed above.  ECF 202 at 6.  Additionally, class members were able to participate in the Settlement without being required to provide documentation showing that they experienced an alleged bootloop or battery drain issue.  *Cf. Johnson v. Gen. Mills, Inc.*, No. SACV 10-00061-CJC, 2013 WL 3213832, at *3 (C.D. Cal. June 17, 2013) (that class members could recover "without proof of purchase" supported the conclusion that the settlement was "a good result for the class"); *Larsen v. Trader Joe's Co.*, No. 11-CV-05188-WHO, 2014 WL 3404531, at *4 (N.D. Cal. July 11, 2014) (similar).

The Settlement represents an excellent result for class members that is appropriately tailored to their experience: (1) class members who didn't experience the alleged defect or who received an upgraded Pixel XL device, will receive approximately $5; (2) class members who documented their alleged battery drain or bootloop experience will receive approximately  $150 or $325, respectively, while those who didn't will still receive approximately $10 and $20 respectively; and (3) class members who experienced (and submitted documentation of) instances of alleged bootloop or battery drain issues on multiple devices will receive approximately $400.  Suppl. Perry Decl. at ¶ 15.

1    Conversely, if the Court were to require any form of individualized prove up following a favorable

2    verdict on liability, it is likely the total recovery would be greatly reduced given that the Nexus 6P was

3    first released in October 2015.

4        When considering Defendants' liability defenses and class certification challenges, the

5    settlement delivers a substantial recovery for the class.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d

6    948, 964 (9th Cir. 2009) (settlement representing 30% of estimated damages was fair and reasonable);

7    *Linney*, 151 F.3d at 1242 (settlement amounting to a fraction of the potential total recovery was

8    reasonable given the significant risks of going to trial); *Noll v. eBay, Inc.*, 309 F.R.D. 593, 606 (N.D.

9    Cal. 2015) ("Immediate receipt of money through settlement, even if lower than what could potentially

10   be achieved through ultimate success on the merits, has value to a class, especially when compared to

11   risky and costly continued litigation.").  Furthermore, the most analogous case involving allegedly

12   defective smartphones resulted in much lower payments to customers than those contemplated here.

13   *See, e.g.*, *Horvath v. LG Elecs. Mobile Comm U.S.A., Inc.*, No. 3:11-cv-01576-H-RBB, ECF 101 (S.D.

14   Cal. Jan. 14, 2014) (approving settlement of $19 per claimant in class action alleging smartphones had

15   a defect causing them to "randomly freeze, crash, reset or power-off completely").

16                    c.    **The Experienced View of Counsel and Response of Class Members**

17                          **Weigh in Favor of Approval.**

18        Courts within the Ninth Circuit also give weight to the experienced view of counsel and the

19   response of class members.  *Free Range Content, Inc.*, 2019 WL 1299504, at *7 ("Class counsel's

20   views that the settlement is a good one is entitled to significant weight."); *see, e.g.*, *In re Omnivision*

21   *Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008); *Harrison v. E.I DuPont De Nemours & Co.*,

22   No. 13-CV-01180-BLF, 2018 WL 5291991, at *5 (N.D. Cal. Oct. 22, 2018).  Class Counsel have

23   extensive experience representing plaintiffs and classes in complex litigation and consumer class

24   actions, (*see* ECF 20-1, 20-2), and Counsel unanimously support this Settlement.  *See* Joint Decl. at ¶ 7.

25        The overwhelmingly positive reaction from class members further weighs in favor of approval.

26   At the time of preliminary approval, using the proposed notice procedures, Plaintiffs anticipated

27   between a 5% to 20% claims rates based on their counsel's experience and similar cases.  ECF 202 at 9.

28   The claims rate, however, has proven to be at the high end of the anticipated spectrum.  There have

19

been nearly 92,000 claims filed representing a 18% claims rate with nearly 24% of class members who received notice filing claims.  Suppl. Perry Decl. at ¶ 14; *see, e.g.*, *In re Extreme Networks*, 2019 WL 3290770, at *7 (response rate of 14% was "substantial"); *Messineo v. Ocwen Loan Servicing, LLC*, 2017 WL 733219, at *7 (N.D. Cal. Feb. 24, 2017) (collecting cases and holding that a 9.26% claims rate "strongly favors final approval"); *Couser v. Comenity Bank*, 125 F. Supp. 3d 1034, 1044 (S.D. Cal. 2015) (noting "higher than average claims rate of 7.7%).

In addition, there have been no objections and only 31 opt outs.  Suppl. Perry Decl. at ¶¶ 12-13.  While two class members filed a comment expressing their frustration with the experiences they had with their Nexus 6P phones, they stress that it is "not an objection" and they do not object to any aspect of the settlement.  ECF 213; *see* Joint Decl. at ¶ 5; *see also In re Omnivision Techs.*, 559 F. Supp. 2d at 1043 ("[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."); *cf. Sadowska*¸ 2013 WL 9600948, at *5 (that only nine class members filed objections out of hundreds of thousands of class members weighed in favor of the settlement).

Further weighing in favor of approval, none of the federal officials and attorneys general to whom Defendants provided notice pursuant to the Class Action Fairness Act have objected to the settlement.  *See Bautista v. Harvest Mgmt. Sub LLC*, No. CV12-10004 FMO (CWx), 2014 WL 12579822, at *9 (C.D. Cal. July 14, 2014) (absence of objections to the CAFA notice supported approval); *George v. Acad. Mortg. Corp.*, 369 F. Supp. 3d 1356, 1373 (N.D. Ga. 2019).

> **d.**     **The Claims Process is Convenient and Effective, and the Requested Attorneys' Fees are Reasonable.**

Rule 23(e)(2)(c)(ii) asks whether the methods of distribution and claims processing are effective.  Class members have received information regarding the Settlement benefits through the Court-approved notice program.  *See* ECF 204 at ¶ 5.  To obtain those benefits, class members need only submit a claim form, which was designed to be as convenient as possible and pre-populated to the extent practicable, and, depending on the class members' experience, certify or provide minimal documentation of the defects.  *See* ECF 194-2 at Ex. 1 (Plan of Allocation).  As evidenced by the substantial claims rate in this case and the distribution of claims among the different groups, the

1   methods of distribution are convenient and effective.  *See supra* Section III.B.  Thus, the Settlement's

2   method for processing claims and distributing relief is fair and reasonable.  *See, e.g.*, *Hefler v. Wells*

3   *Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *7 (N.D. Cal. Dec. 18, 2018).

4        Under Rule 23(e)(2)(C)(ii), the court must also consider whether the terms of the attorneys' fees

5   requested are reasonable.  As discussed more fully in the Fee Motion, Plaintiffs respectfully submit that

6   the requested fees and incentive awards are reasonable given the outstanding result achieved in this

7   complex case and the overwhelmingly favorable reaction of class members.  *See* Fee Motion, ECF

8   214.[3]

9        **3.    The Settlement Treats All Class Members Equitably.**

10       Rule 23(e)(2)(D) requires that the Court consider whether "the proposal treats class members

11  equitably relative to each other."  *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 183583, at *8.

12  The crux of the inquiry is whether the agreement "improperly grant[s] preferential treatment to class

13  representatives or segments of the class."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1079

14  (N.D. Cal. 2007) (citation omitted).  The modest requested service awards, which are below the range

15  generally awarded in this District (Fee Motion, ECF 214 at 22), "does not constitute inequitable

16  treatment of class members."  *In re Extreme Networks, Inc. Sec. Litig.*, 2019 WL 183583, at *8.

17       Nor does the Settlement grant preferential treatment to any other portion of the Class.  *See In re*

18  *Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) ("A plan of allocation that

19  reimburses class members based on the type and extent of their injuries is generally reasonable.").

20  Rather, the Settlement was structured to draw common sense distinctions based on the experiences of

21  class members.  It delivers the most complete relief to those class members who suffered more

22  extensive injuries and make a documented showing to support their claims while recognizing that some

23  class members prefer to accept a reduced recovery in exchange for filing a claim without supporting

24  documentation.  *See White v. Experian Info. Sols., Inc.*, No. 8:05-CV-01070, 2018 WL 1989514, at *11

26  [3] With respect to Rule 23(e)(2)(C)(iv), there are no agreements, other than the Settlement and the

27  Supplemental Settlement Agreement, ECF 194-3, required to be identified under Rule 23(e)(3).

28

**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:17-CV-02185-BLF**

1    (C.D. Cal. Apr. 6, 2018) ("Regarding the larger awards to Claimants who provide documentation of

2    actual damages, the Court finds that these awards are appropriate to compensate these Class members

3    for the greater injuries they suffered."). The Settlement makes common sense distinctions between

4    class members who experienced an alleged defect; experienced the more severe alleged bootloop issue;

5    received a replacement Pixel XL; and received multiple allegedly defective Nexus 6Ps. *See* ECF 194-1

6    at ¶¶ 27-35. All class members are entitled to receive monetary compensation and are placed on an

7    equal footing. The Settlement, therefore, does not favor any segment of class members over any other,

8    which supports final approval.

9           **D.**     **The Plan of Allocation Is Fair, Reasonable, And Adequate and Should Be Finally**

10                  **Approved.**

11          A plan for allocating class settlement funds is subject to the fair, reasonable, and adequate

12   standard that applies to approval of class settlement as a whole. *See In re Citric Acid Antitrust Litig.*,

13   145 F. Supp. 2d at 1154. A plan of allocation "need only have a reasonable, rational basis, particularly

14   if recommended by experienced and competent counsel." *In re Aftermarket Auto. Lighting Prod.*

15   *Antitrust Litig.*, No. 09 MDL 2007-GW(PJWX), 2014 WL 12591624, at *4 (C.D. Cal. Jan. 10, 2014)

16   (citation omitted). Settlement distributions that apportion funds based on the relative amount of

17   damages class members have suffered are fair and reasonable. *Hefler*, 2018 WL 6619983, at *12.

18          The Plan of Allocation calls for claims to be processed in three steps. First, an amount

19   sufficient to pay each Group 1A claimant $5, each Group 1B claimant $10, and each Group 1C

20   claimant $20 will first be set aside and reserved to make those payments. ECF 194-2, Ex. 1, at 3-4.

21   Second, the balance of the fund will then be allocated among all Group 2A (up to $150), Group 2B (up

22   to $325), and Group 3 (up to $400) Claimants. *Id*. Third, and only if the fund has not been exhausted,

23   the remainder will be distributed to Group 1B, 1C, 2A, 2B, or 3 claimants who paid insurance

24   deductibles to Assurant in connection with a claim regarding an alleged bootloop or battery drain issue.

25   *Id.* at 4-5.

26          The claims period has closed and nearly 92,000 claims have been submitted. Suppl. Perry Decl.

27   at ¶ 14. These claims are subject to review and approval by the claims administrator. ECF 194-2 at 49-

28   50. Of the total claims made to date, approximately 15,700 or 17% submitted claims for documented

battery drain and/or bootloop issues, and 8,000 or 9% submitted claims for repeated bootloop and/or battery drain issues.  Suppl. Perry Decl. at ¶ 14.  Of the remaining claimants, roughly 68,000 or 74% did not experience the defect, received a Pixel XL replacement device, or filed undocumented claims.  *Id*.  Based on information currently available, and assuming that all claims are valid, with an offset of 10% to account for invalid or deficient claims, $5.55 million would be set aside and reserved to first make payments to these three groups of claimants.  Approximately $825,000 will remain in the $6.375 million Net Settlement Fund.  As set forth in the Plan of Allocation, the remaining $825,000 will be automatically distributed to the members of the groups who paid qualifying insurance deductibles, *pro rata*, at which point the fund would be exhausted.  Suppl. Perry Decl. at ¶ 15.

The Court provisionally found this Plan of Allocation "fair, reasonable, and adequate and in the best interest of Plaintiffs and the other Settlement Class Members."  ECF 204 at ¶ 5.  There have been no objections to this plan, and Plaintiffs respectfully request the Court finally approve the Plan of Allocation.  In accordance with the Northern District's Guidelines, Plaintiffs will submit a post-distribution accounting to the Court within 21 days after the Settlement Fund is distributed to class members.

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court enter the proposed Final Order and Judgment and, thereby:

- Finally approving the proposed settlement, directing payment of the claims, and entering final judgment;
- Certifying the proposed Settlement Class;
- Appointing Plaintiffs as Class Representatives; and
- Appointing Girard Sharp LLP and Chimicles Schwartz Kriner & Donaldson-Smith LLP as Settlement Class Counsel

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:17-CV-02185-BLF

1   Dated: September 5, 2019

Restfully submitted,

2   **GIRARD SHARP LLP**

3   */s/ Daniel C. Girard*
     Daniel C. Girard (SBN 114826)
4   Jordan Elias (SBN 228731)
     Adam E. Polk (SBN 273000)
5   Trevor T. Tan (SBN 281045)
     601 California Street, Suite 1400
6   San Francisco, CA 94108
     Telephone: (415) 981-4800
7   *dgirard@girardsharp.com*
     *jelias@girardsharp.com*
8   *apolk@girardsharp.com*
     *ttan@girardsharp.com*
9
10

11  Benjamin F. Johns (*pro hac vice*)
     Andrew W. Ferich (*pro hac vice*)
12  Zachary P. Beatty (*pro hac vice*)
     Beena M. McDonald (*pro hac vice*)
13  **CHIMICLES SCHWARTZ KRINER**
       **& DONALDSON-SMITH LLP**
14  One Haverford Centre
     361 West Lancaster Avenue
15  Haverford, PA 19041
     Telephone: (610) 642-8500
16  *bfj@chimicles.com*
     *awf@chimicles.com*
17  *zpb@chimicles.com*
     *bmm@chimicles.com*
18
19

20  *Class Counsel*

21

22

23

24

25

26

27

28

24

PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT
CASE NO. 5:17-CV-02185-BLF