1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
Northern District of California

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| In re NEXUS 6P PRODUCTS LIABILITY LITIGATION | Case No.  17-cv-02185-BLF<br><br>**ORDER GRANTING (1) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT AND (2) PLAINTIFF'S MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**<br><br>[Re: ECF 214 and 215] |

In this is a putative class action, Plaintiffs Jonathan Makcharoenwoodhi, Alex Gorbatchev, Brian Christensen, Anthony Martorello, Edward Beheler, Yuriy Davydov, Rebecca Harrison, Zachary Himes, Taylor Jones, Paul Servodio, Justin Leone, James Poore, Jr., and Kenneth Johnston (collectively, "Plaintiffs") allege severe defects in their Nexus 6P smartphones.  *See generally* Second Consolidated Am. Class Action Compl. ("SCAC"), ECF 117.  Plaintiffs sued the companies that developed the phone – Huawei Device USA, Inc. ("Huawei") and Google LLC ("Google") (together "Defendants") – and bring seven causes of action for breach of warranty, violation of state laws, and violation of a federal statute.

Two motions are before the Court: (1) Plaintiffs' Motion for Final Approval of Settlement, Appr. Mot, ECF 215, and (2) Plaintiffs' Motion for Attorneys' Fees, Costs, and Service Awards, Fees Mot., ECF 214.  The Court heard argument on October 10, 2019.  For the reasons discussed below and those stated on the record at the hearing on the motions, the motions are GRANTED.

## I.    BACKGROUND

### A.    Facts

In 2015, Google and Huawei entered into a joint venture to develop, manufacture, market, and sell the Nexus 6P smartphone.  SCAC ¶ 75.  The Nexus 6P was launched on September 29,

2015, and Google and Huawei touted many of the superior features of the phone. SCAC ¶¶ 101-02. According to Plaintiffs, the Nexus 6P suffers from two defects which manifested shortly after launch. SCAC ¶ 113. First, Plaintiffs allege that some Nexus 6P devices "suffer[] from accelerated battery drain even when displaying a nearly full charge, freeze[], and ultimately fail[] permanently in an endless rebooting cycle" (the "Bootloop Defect"). SCAC ¶ 113. When the Bootloop Defect manifests, Plaintiffs allege that the Nexus 6P becomes nonoperational and all unsaved data is lost because the phone cannot proceed beyond the start-up screen. SCAC ¶ 114. Second, Plaintiffs allege that some Nexus 6P devices "experience accelerated battery drain" causing it to "shut off suddenly, and without warning, even when its battery life icon shows that it is charged" (the "Battery Drain Defect"). SCAC ¶ 115. When the Battery Drain Defect manifests, Plaintiffs allege that the Nexus 6P cannot be used as a mobile device because it is only operational if a user keeps the device connected to a power source. SCAC ¶ 117.

Plaintiffs allege that consumers began complaining about the Bootloop and Battery Drain Defects online as early as October 2015, and consumers began to complain directly to Google and Huawei as early as November 2015. SCAC ¶¶ 119-20. In addition, Plaintiffs allege that Huawei and Google knew of these defects before selling the Nexus 6P to Plaintiffs and other class members. SCAC ¶¶ 85-112. Moreover, Plaintiffs allege that Google and Huawei failed to adequately address the defects in the Nexus 6P. SCAC ¶¶ 127-37.

**B.    Procedural History**

This putative class action was commenced on April 19, 2017. ECF 1. On May 23, 2017, Plaintiffs filed a Consolidated Amended Complaint ("CAC") against Huawei and Google, which consolidated two cases: *Makcharoenwoodhi v. Huawei Techs. USA, Inc.*, No. 5:17-cv-2185-BLF (N.D. Cal filed Apr. 19, 2017), and *Christensen v. Huawei Device U.S.A. Inc.*, No. 5:17-cv-2336-BLF (N.D. Cal. Filed Apr. 25, 2017). *See* CAC, ECF 28. Defendants both moved to dismiss the CAC and strike the class allegations, ECF 38, 39, Huawei moved to dismiss Plaintiffs' claims for lack of personal jurisdiction, ECF 38, and Defendants jointly moved to stay discovery, ECF 41. On August 18, 2017, the Court granted Defendants' motion to stay discovery. ECF 84. On February 12, 2018, the Court granted Huawei's motion to dismiss for lack of personal jurisdiction

2

and granted Plaintiffs' request for jurisdictional discovery.  ECF 113.  On March 5, 2018, the

Court granted, largely without prejudice, Google's motion to dismiss in its entirety and Huawei's

motion in part.  ECF 115.  The Court denied Defendants' motions to strike Plaintiffs' class action

allegations.  ECF 115.

On May 10, 2018, Plaintiffs filed the SCAC.  ECF 117.  The SCAC alleges seven causes

of action for (1) breach of express warranty, (2) breach of the implied warranty of merchantability,

(3) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq*., (4) violation of the

Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792, *et seq*., (5) violation of the

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*., (6) violation of

California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750, *et seq*, and (7) fraudulent

concealment.  SCAC ¶¶ 152-239.

On May 31, 2018, Huawei withdrew its challenge to personal jurisdiction.  Second Joint

Case Management Statement at 2, ECF 125.  On June 19, 2018, the Court granted Plaintiffs'

motion to lift the discovery stay.  ECF 144.

On June 14, 2018, Huawei and Google moved to dismiss the SCAC and strike the class

action allegations.  ECF 133, 134.  Shortly after the hearing on these motions, the parties resumed

settlement negotiations, which led to an agreement in principle on November 27, 2018.  ECF 175.

The motions to dismiss were terminated without prejudice on January 16, 2019.  ECF 184.

C.     **Settlement Agreement, Allocation Plan, and Notice Plan**

On May 3, 2019, the Court granted Plaintiffs' motion for preliminary approval of the class

action settlement, *see* Order Granting Prelim. Approval of Settlement ("Prelim. Order"), ECF 204,

and on May 14, 2019, the Court approved Plaintiffs' notice plan, *see* ECF 209.  The class

includes: "all persons within the United States who purchased a Nexus 6P smartphone, other than

for resale, between September 29, 2015 and the date the Court grants Preliminary Approval of this

Settlement.  Excluded from the Settlement Class are (a) Huawei and Google, and their officers,

directors, employees, subsidiaries, and affiliates; (b) all judges assigned to this case and any

members of their immediate families; and (c) the parties' counsel in this litigation" (the

"Settlement Class").  Prelim. Order at 1; Decl. of Daniel C. Girard and Benjamin F. Johns, Class

United States District Court
Northern District of California

3

1    Action Settlement Agreement (the "Agreement"), Ex. A, § 1.46, ECF 194-2.  Plaintiffs were

2    appointed as class representatives and Girard Sharp LLP and Chimicles Schwartz Kriner &

3    Donaldson-Smith LLP were appointed as class counsel ("Class Counsel").  Prelim. Order at 2.

4            Under the Agreement, Defendants agreed to provide a settlement fund in the amount of

5    $9,750,000.  Agreement § 2.1.  Of the $9,750,000, the Settlement Class will receive what remains

6    after subtracting for notice and administrative expenses, attorneys' fees and expenses reimbursed

7    by the Court, applicable taxes, and service awards (the "Net Settlement Fund").  Agreement § 2.5.

8    If these deductions are allowed in full, the Net Settlement Fund will be approximately $6,375,000.

9    The Net Settlement Fund will be allocated to claimants according to their "Claim Group."

10   Agreement, Plan of Allocation of Net Settlement Fund ("Plan of Allocation") § III.A.  Group 1

11   consists of claimants who purchased a Nexus 6P who do not allege a Bootloop or Battery Drain

12   Defect, who do not have documentation, or who submit insufficient documentation, of an alleged

13   Bootloop or Battery Drain Defect, or who received a Pixel XL smartphone as a replacement for

14   their Nexus 6P.  Plan of Allocation § III.B.1.  Within Group 1, those who did not experience an

15   alleged defect or who received a replacement Pixel XL smartphone will receive a minimum

16   payment of $5 and a maximum payment of $10 ("Group 1A").  Plan of Allocation § III.B.1.a.

17   Claimants who experienced an alleged Battery Drain Defect but who did not submit

18   documentation, or submitted insufficient documentation, will receive a minimum payment of $10

19   and a maximum payment of $45 ("Group 1B").  Plan of Allocation § III.B.1.b.  Lastly, claimants

20   who experienced an alleged Bootloop Defect but who did not submit documentation, or submitted

21   insufficient documentation, will receive a minimum payment of $20 and a maximum payment of

22   $75 ("Group 1C").  Plan of Allocation § III.B.1.c.

23           Group 2 includes class members who purchased a Nexus 6P and experienced an alleged

24   Bootloop or Battery Drain Defect and submitted sufficient documentation.  Plan of Allocation

25   § III.B.2.  Within Group 2, claimants who experienced an alleged Battery Drain Defect and

26   submitted sufficient documentation will receive a payment of up to $150.  Plan of Allocation

27   § III.B.2.a.  Within Group 2, claimants who experienced an alleged Bootloop Defect and

28   submitted sufficient documentation will receive a payment of up to $325.  Plan of Allocation

United States District Court
Northern District of California

4

1   § III.B.2.b.

2          Group 3 includes class members who purchased a Nexus 6P and submit evidence of

3   multiple alleged Bootloop or Battery Drain Defects across multiple Nexus 6P devices.  Plan of

4   Allocation § III.B.3.  Claimants in Group 3 will receive a payment of up to $400.  Plan of

5   Allocation § III.B.3.a.

6          In allocating the Net Settlement Fund amongst the Claim Groups, an amount sufficient to

7   make the minimum payments to all claimants in Group 1 will be set aside and reserved.  Plan of

8   Allocation § III.C.1.  The balance of the Net Settlement Funds will then be allocated amongst

9   Groups 2 and 3 according to the above payment structure; if the funds are insufficient to pay all

10  claimants in Groups 2 and 3, amounts allocated to those claimants will be proportionally reduced

11  according to the ratio of respective payments for each group so as to exhaust the fund.  Plan of

12  Allocation § III.C.1.  If additional funds remain, the balance will be distributed to claimants in

13  Group 1B, Group 1C, Group 2, and Group 3 who paid insurance deductibles to Assurant in

14  connection with a claim regarding an alleged Bootloop or Battery Drain Defect.  Plan of

15  Allocation § III.C.2.  If funds remain, the funds will be distributed on a *pro rata* basis to claimants

16  in Group 1 up to the respective maximum payments noted above.  Plan of Allocation § III.C.3.

17  Class Counsel will notify the Court of any remaining balance in the Net Settlement Fund after

18  these distributions.  Plan of Allocation § III.D.

19         The Court preliminarily approved, and the Settlement Administrator Kurtzman Carson

20  Consultants LLC ("KCC") and the parties complied with, the following notice process:

21  Defendants provided KCC with a list of individuals, as well as their physical and email addresses,

22  who purchased a Nexus 6P directly from Defendants; Class Counsel provided KCC with a list of

23  all individuals, as well as their physical and email addresses, who purchased a Nexus 6P from

24  authorized resellers, *see* Agreement § 4.1.3; KCC sent an email notice to all individuals on the

25  lists provided, *see* Agreement § 4.2; KCC sent a postcard notice to each individual for whom the

26  email notice failed and each individual for whom physical address information, but not email

27  address information, was available, *see* Agreement § 4.2.  In addition, notice was posted on a

28  website created for the settlement, and Class Counsel issued a press release providing notice.

United States District Court
Northern District of California

1   Agreement §§ 4.4, 4.5.  KCC also established a dedicated toll-free number for the settlement,

2   Appr. Mot., Decl. of Daniel C. Girard and Benjamin F. Johns ("Appr. Joint Decl."), Supp. Decl. of

3   Andrew Perry ("Appr. Perry Decl."), Ex. A, ¶ 4, ECF 215-1, and the Court later permitted non-

4   party Amazon.com, Inc. ("Amazon") to send direct email notice of the settlement to its customers,

5   ECF 212.

6        Between Amazon and KCC, either or both direct email and postcard notice was sent

7   successfully to 383,965 members of the Settlement Class.  Appr. Perry Decl.¶ 11.  In addition, on

8   or about June 7, 2018, Class Counsel issued a press release via *PR Newswire*, which was also

9   posted on the settlement website.  Appr. Perry Decl.¶ 4.  And, as of September 5, 2019, there were

10   approximately 183,296 unique visitors to the settlement website, and over 550,000 web pages

11   were presented to visitors.  Appr. Perry Decl.¶ 4.

12        Approximately 77% of the Settlement Class was contacted through the dissemination of

13   the email notice, postcard notice, website notice, and press release.  Appr. Perry Decl.¶ 11.

14        The deadline to submit claims, request exclusion, or file an objection was September 3,

15   2019.  Perry Decl. ¶ 14.  KCC reports that it received 31 opt-outs, zero objections, and two

16   comments.   Reply, Decl. of Daniel C. Girard and Benjamin F. Johns ("Reply Joint Decl."), Supp.

17   Decl. of Andrew Perry ("Reply Perry Decl."), Ex. 1, ¶¶ 2-3, ECF 217-2; Appr. Mot. at 4.  The

18   comments expressed the claimant's frustrations with Huawei's failure to fulfill its promise to

19   replace the Nexus 6P and the delay associated with the Court's approval process for the

20   settlement.  Appr. Joint Decl. ¶ 5.  In addition, KCC reported that it received 91,984 timely claim

21   forms.  Reply Perry Decl. ¶ 4.  Of the timely claim forms, 68,298 claimants made claims under

22   Group 1; 15,759 claimants made claims under Group 2; and 7,927 claimants made claims under

23   Group 3.  Reply Perry Decl. ¶ 4.

24        KCC and Class Counsel estimate that the full amount of the Net Settlement Fund will be

25   distributed to claimants, with no remainder for *cy pres*.  Reply Perry Decl. ¶ 5; Appr. Mot. at 5.

26   Class Counsel estimates that approximately 67,600 claimants will receive the following payments

27   from the Net Settlement Fund: (1) approximately 7,250 claimants will receive approximately $5 as

28   members of Group 1A; (2) approximately 43,750 claimants will receive approximately $10

1  (Battery Drain Defect) or $20 (Bootloop Defect) as members of Groups 1B or 1C; (3)

2  approximately 11,600 claimants will receive approximately $150 (Battery Drain Defect) or $325

3  (Bootloop Defect) as members of Group 2; and (4) approximately 5,000 claimants will receive

4  $400 as members of Group 3.  Appr. Mot. at 5.

5       On October 10, 2019, the Court held a hearing on the motions.  There were no objections

6  before the deadline and no objectors at the hearing.  The Court indicated on the record that both

7  motions would be granted.

## II.   MOTION FOR FINAL APPROVAL OF SETTLEMENT

9       To grant final approval of the class action settlement, the Court must determine that (1) the

10  class meets the requirements for certification under Federal Rule of Civil Procedure 23, and (2) the

11  settlement reached on behalf of the class is fair, reasonable, and adequate.  *See Staton v. Boeing*

12  *Co.*, 327 F.3d 938, 952 (9th Cir. 2003) ("Especially in the context of a case in which the parties

13  reach a settlement agreement prior to class certification, courts must peruse the proposed

14  compromise to ratify both the propriety of the certification and the fairness of the settlement.").

### A.   The Class Meets the Requirements for Certification under Rule 23

16     A class action is maintainable only if it meets the four requirements of Rule 23(a):

> (1)   the class is so numerous that joinder of all members is impracticable;
>
> (2)   there are questions of law or fact common to the class;
>
> (3)   the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
>
> (4)   the representative parties will fairly and adequately protect the interests of the class.

23  Fed. R. Civ. P. 23(a).  In a settlement-only certification context, the "specifications of the Rule –

24  those designed to protect absentees by blocking unwarranted or overbroad class definitions –

25  demand undiluted, even heightened, attention."  *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591,

26  620 (1997).

27     In addition to satisfying the Rule 23(a) requirements, "parties seeking class certification

28  must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."  *Id.* at 614.  Plaintiffs

United States District Court
Northern District of California

seek certification under Rule 23(b)(3), which requires that (1) "questions of law or fact common to class members predominate over any questions affecting only individual members" and (2) "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).

The Court concluded that these requirements were satisfied when it granted preliminary approval of the class action settlement.  *See* Prelim. Order.  The Court is not aware of any new facts which would alter that conclusion.  However, the Court reviews the Rule 23 requirements again briefly, as follows.

First, as to the Rule 23(a) prerequisites, the Court has no difficulty in concluding that the proposed class is too numerous because hundreds of thousands of Nexus 6P phones were sold and so joinder of all class members would be impracticable.  *See* Appr. Perry Decl. ¶ 11; *Littlejohn v. Ferrara Candy Co.*, No. 318CV00658AJBWVG, 2019 WL 2514720, at *3 (S.D. Cal. June 17, 2019) (finding numerosity satisfied where defendants sales numbered in the "hundreds of thousands").  The commonality requirement is also met because questions of law and fact common to the Settlement Class predominate over individualized questions.  These questions of law and fact include: whether the Nexus 6P is in fact defective, whether Defendants had a duty to disclose this issue and when that duty would have arisen, whether any allegedly concealed information was material to a reasonable consumer, and whether class members were harmed by Defendants.  Prelim. Order at 2.  Plaintiffs' claims are typical of the claims of the class because all claims arise from the same alleged violations related to the same allegedly defective Nexus 6P device.  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1020 (9th Cir. 1998) (concluding that typicality requires only that the claims of the class representatives be "reasonably co-extensive with those of absent class members").  Finally, to determine Plaintiffs' adequacy, the Court "must resolve two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 985 (9th Cir. 2011) (internal quotation marks and citation omitted).  The Court has no reservations regarding the abilities of Class Counsel or their zeal in representing the class, and the record discloses no

United States District Court
Northern District of California

1    conflict of interest which would preclude Plaintiffs from acting as class representatives.  Appr.

2    Joint Decl. ¶¶ 38, 42-43; *see* Appr. Mot. at 8.

3         Second, with respect to Rule 23(b)(3), the "predominance inquiry tests whether proposed

4    classes are sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at

5    623.   Here, all class members purchased a Nexus 6P phone that allegedly contained a common

6    defect – *i.e.*, the Battery Drain or Bootloop Defect – and all class members assert claims that arise

7    out of a common course of conduct by Defendants.  *See* Agreement § 1.46.  In addition, there are

8    common questions such as whether the Nexus 6P is in fact defective, whether Defendants had

9    knowledge of these alleged defects when they sold Plaintiffs the Nexus 6P phones, and whether

10   the alleged defects are material to a reasonable consumer.   These questions predominate. *See In*

11   *re Hyundai & Kia Fuel Econ. Litig*., 926 F.3d 539, 559 (9th Cir. 2019) ("[C]ommon course of

12   conduct by the defendant[] can establish predominance in nationwide class actions."); *In re*

13   *Lenovo Adware Litig*., No. 15-MD-02624-HSG, 2018 WL 6099948, at *6 (N.D. Cal. Nov. 21,

14   2018) (finding common questions predominated because defendants actions "affected all Class

15   Members in the same way through the same set of actions and decisions.").  Moreover, given this

16   commonality, and the number of potential class members, the Court concludes that a class action

17   is a superior mechanism for adjudicating the claims at issue.

18        Accordingly, the Court concludes that the requirements of Rule 23 are met and that

19   certification of the class for settlement purposes is appropriate.

20        **B.    The Settlement is Fundamentally Fair, Adequate, and Reasonable**

21        Federal Rule of Civil Procedure 23(e) "requires the district court to determine whether a

22   proposed settlement is fundamentally fair, adequate, and reasonable."  *Hanlon,* 150 F.3d at 1026.

23   In the Ninth Circuit, courts use a multi-factor balancing test to analyze whether a given settlement

24   is fair, adequate and reasonable.  That test includes the following factors:

25        the strength of the plaintiffs' case; the risk, expense, complexity, and likely
         duration of further litigation; the risk of maintaining class action status throughout
26        the trial; the amount offered in settlement; the extent of discovery completed and
         the stage of the proceedings; the experience and views of counsel; the presence of a
27        governmental participant; and the reaction of the class members to the proposed
         settlement.

28

1    *Id.* at 1026–27; *see also Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (discussing

2    *Hanlon* factors).

3            Recent amendments to Rule 23 require the district court to consider a similar list of factors

4    before approving a settlement, including whether:

5            (A) the class representatives and class counsel have adequately represented the class;

6            (B) the proposal was negotiated at arm's length;

7            (C) the relief provided for the class is adequate, taking into account:

8                    (i) the costs, risks, and delay of trial and appeal;

9                    (ii) the effectiveness of any proposed method of distributing relief to the

10                   class, including the method of processing class-member claims;

11                   (iii) the terms of any proposed award of attorney's fees, including timing of

12                   payment; and

13                   (iv) any agreement required to be identified under Rule 23(e)(3);

14           (D) the proposal treats class members equitably relative to each other.

15   Fed. R. Civ. P. 23(e)(2).

16           In the Advisory Committee notes to the amendment, the Advisory Committee states that

17   "[c]ourts have generated lists of factors to shed light" on whether a proposed class-action

18   settlement is "fair, reasonable, and adequate."  Advisory Committee Notes to 2018 Amendments,

19   Fed. R. Civ. P. 23(e)(2) ("2018 Advisory Notes").  The notes of the Advisory Committee explain

20   that the enumerated, specific factors added to Rule 23(e)(2) are not intended to "displace" any

21   factors currently used by the courts, but instead aim to focus the court and attorneys on "the core

22   concerns of procedure and substance that should guide the decision whether to approve the

23   proposal."  *Id.*; *cf. United States v. Vonn,* 535 U.S. 55, 64 n.6 (2002) ("[T]he Advisory Committee

24   Notes provide a reliable source of insight into the meaning of a rule . . . .").  Accordingly, the

25   Court applies the framework set forth in Rule 23 with guidance from the Ninth Circuit's

26   precedent, bearing in mind the Advisory Committee's instruction not to let "[t]he sheer number of

27   factors" distract the Court and parties from the "central concerns" underlying Rule 23(e)(2).

28           Because this settlement occurs before formal class certification, the Court must also ensure

1    that the class settlement is not the "product of collusion among the negotiating parties."  *In re*

2    *Bluetooth Headset Prods. Liab. Litig.*, 654 F. 3d 935, 946–47 (9th Cir. 2011).

3            i.    **Adequacy of Notice**

4            "Adequate notice is critical to court approval of a class settlement under Rule 23(e).

5    *Hanlon,* 150 F.3d at 1025.  For the Court to approve a settlement, "[t]he class must be notified of a

6    proposed settlement in a manner that does not systematically leave any group without notice."

7    *Officers for Justice v. Civil Serv. Comm'n of City & County of San Francisco,* 688 F.2d 615, 624

8    (9th Cir. 1982) (citation omitted).

9            The Court previously approved the parties' proposed notice procedures.  *See* Prelim. Order

10   at 3-5; ECF 209, 212.  In its motion for final approval, Plaintiffs state that Plaintiff, KCC, and

11   Amazon followed this approved notice plan.  Appr. Mot. at 11.  KCC sent an email notice to

12   294,570 class members, a postcard notice to 34,870 class members, and a postcard notice to 3,762

13   class members whose email notice was returned as undeliverable.  Appr. Perry Decl. ¶¶ 6-8.  In

14   addition, KCC also re-mailed postcard notices that were returned with forwarding addresses, and

15   searched for updated addresses and re-mailed 369 postcard notices that were returned without

16   forwarding addresses.  Appr. Perry Decl. ¶¶ 9-10.  KCC believes it sent direct notice to 326,519

17   class members.  Appr. Perry Decl. ¶ 10.  Moreover, Amazon sent an email notice to 57,783 class

18   members, and KCC established a settlement website that had 183,296 unique visitors and

19   presented over 554,491 web pages to visitors.  Appr. Perry Decl.  ¶¶ 4, 11.  Finally, Class Counsel

20   issued a press release via *PR Newswire*, which was also posted on the settlement website.  Perry

21   Decl. ¶ 4.

22           Class Counsel has represented that this notice process resulted in approximately 77% of

23   class members receiving notice, and courts have found that such a rate complies with Rule 23.  *See*

24   *Free Range Content, Inc. v. Google, LLC,* No. 14-CV-02329-BLF, 2019 WL 1299504, at *6 (N.D.

25   Cal. Mar. 21, 2019) ("Notice plans estimated to reach a minimum of 70 percent are constitutional

26   and comply with Rule 23." (brackets and internal quotation marks omitted)).  Moreover, this

27   notice process resulted in approximately 91,984 claim forms being filed, which is a claims rate of

28   over 18%.  Reply at 1.  This response rate is substantial.

United States District Court
Northern District of California

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court
Northern District of California

In light of these actions and the Court's prior order granting preliminary approval, the Court finds that the parties have provided sufficient notice to the class members.  *See Lundell v. Dell, Inc.*, Case No. 05-3970 JWRS, 2006 WL 3507938, at *1 (N.D. Cal. Dec. 5, 2006) (holding that notice via email and first class mail constituted the "best practicable notice" and satisfied due process requirements).

### ii.    **Rule 23(e)/*Hanlon* Factors**

#### a.    *Adequate representation, arm's length negotiation, extent of completed discovery, and stage of proceedings*

Turning to the Rule 23(e) factors, the Court first considers whether "the class representatives and class counsel have adequately represented the class" and whether "the proposal was negotiated at arm's length."  Fed. R. Civ. P. 23(e)(2)(A)–(B).  These considerations overlap with certain *Hanlon* factors, such as the non-collusive nature of negotiations, the extent of discovery completed, and the stage of proceedings.  *See Hanlon,* 150 F.3d at 1026.

As discussed above when certifying the class, the Court finds that Plaintiffs and Class Counsel have adequately represented the class.  In its Preliminary Approval Order, the Court found no evidence of a conflict between class representatives or counsel and the rest of the class.  Prelim. Order 2-3.  No evidence to the contrary has emerged.  Similarly, the Court found that counsel has vigorously prosecuted this action through dispositive motion practice – including two rounds of motions to dismiss, extensive discovery, and formal mediation.  Fees Mot., Decl. of Daniel C. Girard and Benjamin F. Johns ("Fees Joint Decl.") ¶¶ 15-16, ECF 214-1; Appr. Mot. at 254.  In addition, Plaintiffs consulted with technical experts about the alleged Bootloop and Battery Drain Defects and worked with economics experts to prepare a damages methodology for class certification.  Fees Joint Decl. ¶ 16.  The parties also exchanged briefs discussing the strengths and weaknesses of Plaintiffs' claims.  Fees Joint Decl. ¶ 18.  Furthermore, in its Motion for Final Approval, Class Counsel included information regarding settlement outcomes of analogous cases, *see* Appr. Mot at 19 (citing *Horvath v. LG Elecs. Mobile Comm U.S.A., Inc.*, No. 3:11-cv-01576-H-RBB, ECF 101 (S.D. Cal. Jan. 14, 2014) (approving settlement of $19 per claimant in class action alleging smartphones had similar defect)), further indicating that Class

1    Counsel had adequate information from which to negotiate the settlement, *see* 2018 Advisory

2    Notes.  Lastly, the Court finds that Class Counsel has continued to represent the class diligently by

3    complying with the notice plan and settlement procedures.  Appr. Mot. at 11.

4         Plaintiffs likewise have actively participated in the prosecution of this case.  For example,

5    Plaintiffs worked with technical and economic experts, gathered and produced documents for

6    discovery, participated in multiple interviews with Class Counsel to respond to Defendants'

7    interrogatories, and participated in meetings with Class Counsel regarding the litigation and

8    settlement process.  Fees Joint Decl. ¶¶ 16, 41-42.  The Court, therefore, finds the adequacy of

9    representation weighs in favor of approval.

10        Additionally, the settlement in this case took place after Defendants produced discovery

11   and was the product of arm's length negotiations between experienced counsel with the aid of a

12   respected mediator.  Appr. Mot. at 14; *see Free Range Content, Inc*., 2019 WL 1299504, at *6

13   ("[T]he Court notes that a presumption of correctness is said to attach to a class settlement reached

14   in arm's-length negotiations between experienced capable counsel after meaningful discovery."

15   (brackets and internal quotation marks omitted)).

16        Furthermore, because the settlement agreement was negotiated prior to formal class

17   certification, "there is an even greater potential for a breach of fiduciary duty owed the class

18   during settlement."  *In re Bluetooth Headset Prod. Liab. Litig*., 654 F.3d 935, 946 (9th Cir. 2011).

19   The Agreement, therefore, "must withstand an even higher level of scrutiny for evidence of

20   collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing

21   the court's approval as fair."  *Id.*  Signs of collusion may include: (1) "disproportionate

22   distribution of the settlement, or when the class receives no monetary distribution but class

23   counsel are amply rewarded," (2) the existence of a "clear sailing" provision so that attorneys' fees

24   are paid separate and apart from class funds, and (3) "when the parties arrange for fees not

25   awarded to revert to defendants rather than to be added to the class fund."  *Id.* (internal quotation

26   marks omitted).

27        Here, there is no evidence of collusion.  Class Counsel request fees that are proportionate

28   to the settlement fund, there is no clear sailing provision, and no funds revert to Defendants.  *See*

United States District Court
Northern District of California

1   Fees Joint Decl. ¶¶ 33-38; Plan of Allocation § III.D; *see generally* Agreement.  And, as discussed

2   in greater detail below, the Court finds that the requested fees are in fact reasonable.  Thus, this

3   factors weighs in favor of approval.

4                  b.   *Strength of Plaintiffs' case, and costs, risks, and delay of trial and appeal*

5          In assessing "the costs, risks, and delay of trial and appeal," Fed R. Civ. P. 23(e)(2)(C)(i),

6   courts in the Ninth Circuit evaluate "the strength of the plaintiffs' case; the risk, expense,

7   complexity, and likely duration of further litigation; [and] the risk of maintaining class action

8   status throughout the trial."  *Hanlon*, 150 F.3d at 1026.  "Approval of a class settlement is

9   appropriate when plaintiffs must overcome significant barriers to make their case."  *Hendricks v.*

10  *Starkist Co*, No. 13-CV-00729-HSG, 2016 WL 5462423, at *4 (N.D. Cal. Sept. 29, 2016).

11  "Additionally, difficulties and risks in litigating weigh in favor of approving a class settlement,"

12  and "[g]enerally, unless the settlement is clearly inadequate, its acceptance and approval are

13  preferable to lengthy and expensive litigation with uncertain results."  *Id.*

14         Here, Plaintiffs faced significant obstacles in this case, including needing to survive

15  multiple motions to dismiss that raised important and complicated issues.  Indeed, the Court

16  granted some of these motions and expressed concerns with the sufficiency of some of Plaintiffs'

17  allegations as well as the choice of law issue associated with bringing a multi-state class.  *See* ECF

18  113, 115; ECF 169, Oct. 17, 2018 Hr'g Tr. at 8:6-9:11.  Plaintiffs would have faced similar risks

19  at trial.  As Plaintiffs explain in their motion, these obstacles include obtaining class certification,

20  prevailing on summary judgment, presenting a suitable damages model at class certification,

21  defending a certification order on appeal, surviving motions for decertification, determining the

22  underlying cause of the alleged Bootloop and Battery Drain Defects, and prevailing at trial and on

23  appeal.  Appr. Mot. at 16-18; *see Hendricks*, 2016 WL 5462423, at *4-5 (finding factor weighs in

24  favor of approval where "[p]laintiff would be required to successfully move for class certification,

25  survive summary judgment, and receive a favorable verdict capable of withstanding a potential

26  appeal.").  Throughout the course of this litigation, Defendants have vigorously defended against

27  Plaintiffs claims, and the Court has narrowed the claims significantly through the motion to

28  dismiss phase.  Appr. Mot. at 16-17; ECF 113, 115.

United States District Court
Northern District of California

The Court finds that this factor weighs in favor of approval.

### c. *Effectiveness of any proposed distribution method, terms of attorneys' fees, and supplemental agreements*

Next, the Court must consider "the effectiveness of any proposed method of distributing relief to the class," "the terms of any proposed award of attorney's fees," and "any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(ii)-(iv). As discussed in more detail below, the Court finds that the proposed award of attorneys' fees is reasonable, and there are no supplemental agreements.

In addition, the Court preliminarily approved the Plan of Allocation as being fair, adequate, and reasonable. Prelim. Order ¶ 5; *see In re Aftermarket Auto. Lighting Prod. Antitrust Litig.*, No. 09 MDL 2007-GW(PJWX), 2014 WL 12591624, at *4 (C.D. Cal. Jan. 10, 2014). A plan of allocation "need only have a reasonable, rational basis, particularly if recommended by experienced and competent counsel." *Id.* (internal quotation marks omitted).

Here, the Plan of Allocation was proposed by experienced counsel and has a reasonable and rational basis. The plan divides claimants into different groups based on the relative size of their potential claims and distributes funds based on these groups. Plan of Allocation § III.B. The Plan of Allocation calls for payments to be made in three steps: (1) all claimants in Group 1 will receive a minimum payment; (2) the balance of the Net Settlement Fund will then be allocated among claimants in Groups 2 and 3; and (3) the balance of the Net Settlement Fund will then be distributed amongst claimants in Groups 1B, 1C, 2, and 3 who paid insurance deductibles to Assurant in connection with a claim regarding an alleged Battery Drain or Bootloop Defect. Plan of Allocation § III.C. The Court finds that such a distribution plan is fair, adequate, and reasonable. *See Hefler v. Wells Fargo & Co.*, No. 16-CV-05479-JST, 2018 WL 6619983, at *12 (N.D. Cal. Dec. 18, 2018) (collecting cases approving distribution plans based on relative amount of damages suffered by class members); *see In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001) ("A plan of allocation that reimburses class members based on the type and extent of their injuries is generally reasonable.").

15

1    This factor, therefore, weighs in favor of approval.

2              *d.   Equitable treatment of class members relative to each other*

3         Rule 23 also requires consideration of whether "the proposal treats class members

4    equitably relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Consistent with this instruction, the

5    Court considers whether the proposal "improperly grant[s] preferential treatment to class

6    representatives or segments of the class."  *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078,

7    1079 (N.D. Cal. 2007) (citation omitted).

8         Under the Agreement, class members who submit timely claims will receive payments

9    from the Net Settlement Fund based on their alleged claims and whether they submit sufficient

10   documentation.  Plan of Allocation § III.B.  In granting preliminary approval of the settlement, the

11   Court found that this proposed Plan of Allocation did not constitute improper preferential

12   treatment.  Prelim. Order ¶ 4.  The Court adheres to this view that the Plan of Allocation is

13   equitable and class representatives do not receive preferential treatment.  Although the class

14   representatives seek service awards, the service awards (as discussed below) are reasonable and do

15   not constitute inequitable treatment of class members.  *See Rodriguez v. W. Publ'g Corp.*, 563

16   F.3d 948, 958-59 (9th Cir. 2009).

17        This factors weighs in favor of approval.

18             *e.   Settlement amount*

19        "The relief that the settlement is expected to provide to class members is a central

20   concern," though it is not enumerated among the factors of Rule 23(e).  2018 Advisory Notes.

21   Thus, the Court considers "the amount offered in the settlement."  *Hanlon,* 150 F.3d at 1026.

22   "Crucial to the determination of adequacy is the ratio of 'plaintiffs' expected recovery balanced

23   against the value of the settlement offer.'"  I*n re Extreme Networks, Inc. Sec. Litig*., No. 15-CV-

24   04883-BLF, 2019 WL 3290770, at *9 (N.D. Cal. July 22, 2019) (quoting *In re Tableware,* 484 F.

25   Supp. 2d at 1080).  However, "[i]t is well-settled law that a cash settlement amounting to only a

26   fraction of the potential recovery does not per se render the settlement inadequate or unfair."

27   *Officers for Justice*, 688 F.2d at 628.

28        Here, the $9,750,000 settlement fund represents a substantial recovery for the class.  This

United States District Court
Northern District of California

amount represents 32.5% of estimated recoverable damages.  Appr. Mot. at 18; *see* ECF 194 at 6. In addition, class members are able to participate in the settlement without proof that they experienced either the Bootloop or Battery Drain Defect.  *See* Plan of Allocation § III.B.1; *see also  Johnson v. Gen. Mills, Inc.,* No. SACV 10-00061-CJC, 2013 WL 3213832, at *3 (C.D. Cal. June 17, 2013) (finding settlement that allowed recovery without proof of purchase to be "a good result for the class").  Other courts have found similar recoveries to be fair and reasonable.  *See, e.g.*, *Rodriguez*, 563 F.3d at 964 (finding settlement representing 30% of estimated damages was fair and reasonable); *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1242 (9th Cir. 1998) ("The fact that a proposed settlement may only amount to a fraction of the potential recovery does not, in and of itself, mean that the proposed settlement is grossly inadequate and should be disapproved.").

Accordingly, this factor weighs in favor of approval.

### f.   Counsel's experience

The Court also considers "the experience and views of counsel."  *Hanlon,* 150 F. 3d at 1026.  Class Counsel has extensive experience representing plaintiffs and classes in complex litigation and consumer class actions.  Appr. Mot. at 19; *see* ECF 20-1, 20-2.  That Class Counsel advocate in favor of settlement weighs in favor of approval.  *See Free Range Content, Inc.*, 2019 WL 1299504, at *7 ("Class counsel's views that the settlement is a good one is entitled to significant weight.").

### C.   Objections

"[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members."  *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) (citation omitted).  Here, Class Counsel and the Court received zero objections.  Reply Perry Decl. ¶ 3. Likewise, out of the 91,984 claim forms received before the deadline, there were only 31 requests to opt out.  Reply Perry Decl. ¶ 4.  This positive response from the class confirms that the settlement is fair and reasonable.

\* \* \*

Balancing the relevant factors, the Court finds the settlement fair and reasonable under Rule 23(e) and *Hanlon*.

**D.     CONCLUSION**

For the foregoing reasons, and after considering the record as a whole, the Court finds that notice of the proposed settlement was adequate, the settlement was not the result of collusion, and the settlement is fair, adequate, and reasonable.

Plaintiffs' Motion for Final Approval of the Settlement is GRANTED.

**III.   MOTION FOR AWARD OF ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**

Plaintiffs seek an award of attorneys' fees in the amount of $2,925,000, which is 30% of the common settlement fund, reimbursement of litigation expenses incurred up to $200,000, and a service award of $3,000 for each of the 13 class representatives.  The Court also considers the reasonableness of the Settlement Administrator's requested costs.

**A.     Attorneys' Fees**

**i.     Legal Standard**

"While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement, courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount."  *In re Bluetooth*, 654 F.3d at 941 (internal citations omitted).  "Where a settlement produces a common fund for the benefit of the entire class," as here, "courts have discretion to employ either the lodestar method or the percentage-of-recovery method" to determine the reasonableness of attorneys' fees.  *Id.* at 942.

Under the percentage-of-recovery method, attorneys are awarded fees in the amount of a percentage of the common fund recovered for the class.  *Id.*  Courts applying this method "typically calculate 25% of the fund as the benchmark for a reasonable fee award, providing adequate explanation in the record of any special circumstances justifying a departure," *id.* (internal quotation marks omitted), and "20-30% [i]s the usual range," *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002).  However, "[t]he benchmark percentage should be

18

1    adjusted, or replaced by a lodestar calculation, when special circumstances indicate that the

2    percentage recovery would be either too small or too large in light of the hours devoted to the case

3    or other relevant factors."  *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.3d 1301,

4    1311 (9th Cir. 2011).  To determine whether the benchmark should be adjusted – upward or

5    downward – courts consider five factors: "(1) the results achieved for the class; (2) the complexity

6    of the case and the risk of and expense to counsel of litigating it; (3) the skill, experience, and

7    performance of counsel on both sides; (4) the contingent nature of the fee; and (5) fees awarded in

8    comparable cases."  *In re Capacitors Antitrust Litig*., No. 3:14-CV-03264-JD, 2018 WL 4790575,

9    at *3 (N.D. Cal. Sept. 21, 2018) (citing *Vizcaino*, 290 F.3d at 1048-50).

10       Under the lodestar method, attorneys' fees are "calculated by multiplying the number of

11   hours the prevailing party reasonably expended on the litigation (as supported by adequate

12   documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."

13   *In re Bluetooth*, 654 F.3d at 941.  This amount may be increased or decreased by a multiplier that

14   reflects factors such as "the quality of representation, the benefit obtained for the class, the

15   complexity and novelty of the issues presented, and the risk of nonpayment."  *Id.* at 942.

16       In common fund cases, a lodestar calculation may provide a cross-check on the

17   reasonableness of a percentage award.  *Vizcaino*, 290 F.3d at 1050.  Where the attorneys'

18   investment in the case "is minimal, as in the case of an early settlement, the lodestar calculation

19   may convince a court that a lower percentage is reasonable."  *Id.*  "Similarly, the lodestar

20   calculation can be helpful in suggesting a higher percentage when litigation has been protracted."

21   *Id.*  Thus, even when the primary basis of the fee award is the percentage method, "the lodestar

22   may provide a useful perspective on the reasonableness of a given percentage award."  *Id.*  "The

23   lodestar cross-check calculation need entail neither mathematical precision nor bean counting,"

24   and courts "may rely on summaries submitted by the attorneys and need not review actual billing

25   records."  *Covillo v. Specialtys Cafe*, No. C-11-00594-DMR, 2014 WL 954516, at *6 (N.D. Cal.

26   Mar. 6, 2014) (internal quotation marks and citation omitted).

27          **ii.    Discussion**

28       The Court is satisfied that the request for attorneys' fees is reasonable.  Using the

19

1  percentage-of-recovery method, the Court starts at the 25% benchmark.  *See In re Bluetooth*, 654

2  F.3d at 942.  Plaintiffs request that the benchmark be adjusted upward to 30%, and so the Court

3  considers the *Vizcaino* factors.  The Court addresses each factor in turn.

4

5              a.   *Results achieved for the class*

6       The most critical factor is the results achieved for the class.  *See In re Omnivision Techs*,

7  559 F. Supp. 2d at 1046.  As previously discussed, the settlement represents 32.5% of recoverable

8  damages and allows all class members to receive a monetary benefit.  The recovery achieved here,

9  therefore, weighs in favor of an upward adjustment.  *See, e.g.*, *Mauss v. NuVasive, Inc.*, No.

10 13CV2005 JM (JLB), 2018 WL 6421623, at *6 (S.D. Cal. Dec. 6, 2018) (adjusting benchmark fee

11 upward to 30% where settlement recovery approximately 23 to 34% of damages); *Brown v. CVS*

12 *Pharmacy, Inc.*, No. CV15-7631 PSG (PJWX), 2017 WL 3494297, at *6 (C.D. Cal. Apr. 24,

13 2017) (adjusting benchmark fee upward to 30% where settlement recovery was approximately

14 27% of damages).

15             b.   *Risk of litigation*

16      Second, the Court considers the risk that Class Counsel faced in continuing with litigation.

17 "The risk that further litigation might result in Plaintiffs not recovering at all, particularly a case

18 involving complicated legal issues, is a significant factor in the award of fees."  *In re Omnivision*

19 *Techs.*, 559 F. Supp. 2d at 1046-47; *see Vizcaino*, 290 F.3d at 1048 ("Risk is a relevant

20 circumstance.").  As discussed above, Plaintiffs faced many obstacles if they continued to trial.

21 While at least some claims survived two motions to dismiss, the Court has not yet certified the

22 class and Defendants were likely to move for summary judgment.  In addition, Plaintiffs recognize

23 that they would have had to determine the underlying cause of both defects, present a suitable

24 damages model at class certification, survive motions for decertification, and prevail at trial.

25 Appr. Mot. at 16-18.  Thus, the risk that Plaintiffs would have recovered less, if anything, also

26 supports the upward adjustment.

27             c.   *Skill, experience, and performance of counsel*

28      Third, the Court considers the skill, experience, and performance of counsel.  Class

Counsel are experienced in the prosecution of consumer class actions, and "[s]uch expertise proved particularly beneficial in this action, in view of the substantive and procedural complexities involved in litigation and the protracted settlement process." *Zepeda v. PayPal, Inc*., No. C 10-1668 SBA, 2017 WL 1113293, at *20 (N.D. Cal. Mar. 24, 2017).  The quality of their work is reflected in the results achieved for the class.  Moreover, defense counsel is also experienced counsel who vigorously opposed Plaintiffs' claims, including by filing multiple motions to dismiss.  "That Plaintiffs' case withstood two such motions, despite other weaknesses, is some testament to [Class] Counsel's skill." *In re Omnivision Techs*., 559 F. Supp. 2d at 1047; *see Zepeda*, 2017 WL 1113293, at *20 ("Given the contentious nature of the action, the Court finds that the result achieved in this matter would have been unlikely if entrusted to counsel of lesser experience or capability.").  This factor, therefore, favors an upward adjustment.

### d.  Contingent nature of the fee

Fourth, Class Counsel represented Plaintiffs on a contingency basis, Fees Joint Decl. ¶ 34; thus, Class Counsel "bore the financial burden of pursuing the litigation for an extended period of time." *Zepeda*, 2017 WL 1113293, at *21.  This suit began over two years ago, and Class Counsel spent over 7,110 hours litigating the case, without receiving compensation.  Class Counsel also advanced over $150,000 in expenses related to prosecuting this action.  Fees Joint Decl. ¶ 39. "This substantial outlay, when there is a risk that none of it will be recovered, further supports the award of the requested fees." *In re Omnivision Techs*., 559 F. Supp. 2d at 1047.

### e.  Fees awarded in comparable cases

Fifth, the Court compares the fees awarded in comparable cases.  Plaintiffs' request for a 30% fee falls within the usual range of common fund cases, *see, e.g.*, *In re Activision Sec. Litig*., 723 F. Supp. 1373, 1377 (N.D. Cal. 1989) ("This court's review of recent reported cases discloses that nearly all common fund awards range around 30% . . . ."), and consumer fraud cases, *see, e.g.*, *Hendricks*, 2016 WL 5462423, at *12 (awarding 30% fee); *Peel v. Brooksamerica Mortg. Corp*., No. SACV1179JLSRNBX, 2015 WL 12745788, at *6 (C.D. Cal. Apr. 6, 2015) (awarding 29.3%); *Weeks v. Kellogg Co*., No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *30 (C.D. Cal. Nov. 23, 2013) (awarding 30%).  The awards in other cases, therefore, supports an award of 30% of the

settlement fund.

### f.   Reaction of the class

"The reaction of the class may also be a determining factor in the determining the fee award." *In re Omnivision Techs.*, 559 F. Supp. 2d at 1047.  Here, the claims rate was 18%, there were only 31 opt-opts, and there were no objections.  *See* Reply at 1; Reply Perry Decl. ¶¶ 2-3.  The fact that no objections have been received supports an upward adjustment.  *See Jarrell v. Amerigas Propane, Inc.*, No. 16-CV-01481-JST, 2018 WL 1640055, at *3 (N.D. Cal. Apr. 5, 2018) ("[T]he Court now concludes that a slight upward adjustment – to 30% of the common fund – is warranted based on several factors, including the results achieved, the risk of non-recovery, and the fact that no class member has objected to the proposed award.").

### g.   Lodestar cross-check

As a final check on the reasonableness of requested attorneys' fees, courts often compare the amount counsel would receive under the percentage-of-recovery method with the amount counsel would have received under the loderstar method.  *See In re Omnivision Techs.*, 559 F. Supp. 2d at 1047.  Here, Class Counsel spent a total of 7,110.5 hours on this case.  Fees Joint Decl. ¶ 35.  Based on the current usual and customary hourly billing rates of each firm, Class Counsel would have received $3,848,190.50 under the loderstar method.  Fees Joint Decl. ¶ 35.  This represents a negative multiplier of 0.76, and "courts have approved multipliers ranging between 1 and 4."  *In re Omnivision Techs.*, 559 F. Supp. 2d at 1047; *see Sheikh v. Tesla, Inc.*, No. 17-CV-02193-BLF, 2018 WL 5794532, at *8 (N.D. Cal. Nov. 2, 2018) ("Multipliers of 1 to 4 are commonly found to be appropriate in common fund cases.").

Comparison with the lodestar method therefore demonstrates that the requested 30% fee award is reasonable.  Accordingly, the Court approves an award of attorneys' fees in the amount of 30% of the common settlement fund, or $2,925,000.

### B.   Litigation Expenses

Plaintiffs seek up to $200,000 in litigation expenses.  The Court is likewise satisfied with Plaintiffs' request for litigation expenses.  An attorney is also entitled to "recover as part of the award of attorney's fees those out-of-pocket expenses that would normally be charged to a fee

22

paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks and citation omitted).  Here, Class Counsel have stated that their final total for litigation expenses is $152,023.14, Reply at 3, and Class Counsel have submitted an itemized list of expenses by category of expense incurred, *see* Fees Joint Decl., Ex. B; Reply Joint Decl., Ex. 2.  The Court has reviewed the list and finds the expenses to be reasonable.  Accordingly, the Court approves an award in the requested amount of $152,023.14.

### C.    Service Award

Plaintiffs request a service award in the amount of $3,000 for each of the 13 class representatives.  Service or incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958-59 (internal citation omitted).  "Incentive awards typically range from $2,000 to $10,000."  *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. 2015).  Service awards as high as $5,000 are presumptively reasonable in this district.  *See, e.g.*, *Camberis v. Ocwen Loan Serv. LLC*, Case No. 14-cv-02970-EMC2015 WL 7995534, at *3 (N.D. Cal. Dec. 7, 2015).

Here, each class representative expended considerable effort on behalf of the class.  For example, the class representatives actively monitored the litigation, located and produced documents for discovery, helped Class Counsel respond to written discovery, and regularly communicated with Class Counsel for two years to obtain the settlement.  Fees Joint Decl. ¶¶ 42-43; *see* Fees Joint Decl., Ex. C, ECF 214-4 (statements of each class representative describing their involvement).  Moreover, each class representative put their names on the complaint, which received media coverage.  Fees Mot. at 22.  Given the time and assistance the class representatives put into the case and the success of the recovery, a service award in the amount of $3,000 is reasonable.  *See Hayes v. MagnaChip Semiconductor Corp.*, No.14-cv-01160-JST, 2016 WL 6902856 at *10 (N.D. Cal. Nov. 21, 2016) (noting $5,000 service awards are presumptively reasonable in the Ninth Circuit); *In re Am. Apparel S'holder Litig.*, No. CV 10-06352 MMM, 2014 WL 10212865, at *34 (C.D. Cal. July 28, 2014) (awarding service award of $6,600 in

securities class action).

The Court concludes that the requested $3,000 award for each of the 13 class representatives is appropriate in this case.

### D.    Settlement Administrator Costs

The Court also holds that it is appropriate to award KCC its costs.  The Agreement contemplates that "[t]he Parties will obtain from the Settlement Administrator its best estimate of such anticipated administrative costs, which shall then be set aside from the Settlement Fund." Agreement § 4.9.  At the time Plaintiffs moved for preliminary approval of the settlement, Plaintiffs estimated that the costs of administration would not exceed $250,000.  Mot. for Prelim. Appr. at 11, ECF 194.  As of July 24, 2019, KCC's costs were $79,135.12.  Fees Perry Decl. ¶ 15. KCC anticipates that it will complete the claims review process on or before November 28, 2019, at which time KCC will submit a final declaration of its costs.  Reply Perry Decl. ¶ 6.

Given the somewhat complex nature of the allocation plan, the Court approves the awarding of costs to KCC in an amount not to exceed $250,000, subject to Plaintiffs submitting an accounting of such costs with a request that the Court approve the final amount.  Plaintiffs shall submit such a request by administrative motion **within 14 days of KCC's final accounting**.  If KCC does not reach this cap, the excess funds shall be distributed to the class claimants according to the provisions of the Agreement if practicable or distributed through *cy pres*.

## IV.    ORDER

For the reasons discussed above,

(1)    Plaintiff's Motion for Final Approval of Settlement is GRANTED; and

(2)    Plaintiffs' Motion for an Award of Attorneys' Fees, Costs, and Service Awards is GRANTED.  Plaintiffs are awarded attorneys' fees in the amount of $2,925,000, costs and expenses in the amount of $152,023.14, and service awards for each of the 13 class representatives in the amount of $3,000.

(3)    The Settlement Administrator costs are APPROVED in an amount not to exceed $250,000.

Without affecting the finality of this Order and accompanying Judgment in any way, the

1  Court retains jurisdiction over (1) implementation and enforcement of the Agreement until each

2  and every act agreed to be performed by the parties pursuant to the Agreement has been

3  performed; (2) any other actions necessary to conclude the Settlement and to administer,

4  effectuate, interpret, and monitor compliance with the provisions of the Agreement; and (3) all

5  parties to this action and Settlement Class members for the purpose of implementing and

6  enforcing the Agreement.

7         Within 21 days after the distribution of the settlement funds and payment of attorneys'

8  fees, the parties shall file a Post-Distribution Accounting in accordance with this District's

9  Procedural Guidance for Class Action Settlements.  The parties must seek approval from the Court

10  for any *cy pres* distributions.

11

12         **IT IS SO ORDERED.**

13

14  Dated: November 12, 2019

15

16  BETH LABSON FREEMAN
   United States District Judge